UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

THE CITY OF NEW YORK,

                                     Plaintiff,

                                                        Civil Action No. 23-5880 (LLS)

                  -against-

                                                        **<u>AMENDED COMPLAINT</u>**

MAGELLAN TECHNOLOGY, INC., ECTO WORLD,
LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER,
DONALD HASHAGEN, MAHANT KRUPA 56 LLC
d/b/a Empire Vape Distributors, NIKUNJ PATEL,
DEVANG KOYA, STAR VAPE CORP., NABIL
HASSEN, DORBES LLC, d/b/a Hydevapeofficial.com,
CHRISTIAN A. SMITH,

                                     Defendants.
-----------------------------------------------------------------------x

Plaintiff the City of New York by its counsel, Hon. Sylvia O. Hinds-Radix,

Corporation Counsel of the City of New York, respectfully alleges with knowledge of its own

actions and on information and belief as to the actions of others, as follows:

### <u>Nature of the Action</u>

1.      New York City (the "City") seeks injunctive and other equitable relief, damages

and penalties for the defendants' distribution and sale of flavored electronic nicotine delivery

devices, also known as "e-cigarettes."[1] The defendants violate nearly every federal, New York

---

[1] The term "electronic nicotine delivery system," often abbreviated as "ENDS," refers to a variety of devices – "vapes," "vaporizers," "vape pens," "hookah pens," "electronic cigarettes" "e-cigars," and "e-pipes" among others, that contain solutions containing nicotine ("e-liquids") for delivery of nicotine-containing aerosols to the user or "vaper."

Electronic nicotine delivery devices can be manufactured to resemble conventional cigarettes, cigars, or pipes, pens or even USB flash drives, but many devices bear little or no resemblance to traditional cigarettes. The devices may be re-fillable when the e-liquid is depleted or may be disposable, discarded after the e-liquid is consumed. The

State and New York City law applicable to the marketing, distribution, and sale of flavored e-cigarettes, the sales of which are prohibited under laws enacted by all three jurisdictions.

2.     Flavored disposable vaping devices ("FDVs") are one type of "electronic nicotine delivery device," or "e-cigarette" that use a battery to heat a nicotine-containing solution (an "e-liquid") to create an aerosol inhaled by the user as a substitute for the combustion-generated tobacco smoke of a conventional cigarette. E-liquids in their simplest formulation are mixtures of natural or most often synthetic nicotine dissolved in propylene glycol and vegetable glycerin. E-liquids can be formulated to produce a vapor tasting like tobacco but the vast majority, and those at issue here, are artificially flavored to impart to the inhaled aerosol exotic or evocative tastes of fruits, candy or desserts.

3.     Although this action  refers frequently to FDVs, the electronic nicotine delivery system favored by far among youth and the most intentionally directed to the youth  market, the City seeks relief for defendants' violation of laws applicable to e-cigarettes regardless of the type of device with which the violation is committed. Any non-FDA approved e-cigarette containing a flavored e-liquid is governed by the laws under which the City's claims are brought and the City seeks relief with respect to all such devices.

4.     Nicotine known to be a highly addictive substance with the ability comparable to heroin or cocaine to addict users.[2]  Nicotine is the principal driver of addiction to conventional cigarettes.  Most e-liquids provide nicotine levels far exceeding that of conventional cigarettes with more than 90% of disposable e-cigarettes sold in recent years in the United States contain

devices vary in the volume of the e-liquid they contain and are advertised and priced according to the approximate number of "puffs" the device provides.

[2] *See e.g.,* U.S. Dep't of Health and Human Servs., *The Health Consequences of Nicotine Addiction: A Report of the Surgeon General*, DHHS Publication Number (CDC) 88-8406 (1988)( https://profiles.nlm.nih.gov/101584932X423).

nicotine concentrations of 5% or higher, at least 2.5 times the maximum nicotine concentration allowed in Canada, the United Kingdom and the European Union.[3]

5.     Youth, *i.e.*, those up to approximately 25 years of age, are particularly vulnerable to nicotine addiction, which can harm the developing adolescent brain. The United States Surgeon General has branded "[t]obacco use [a]s a pediatric epidemic." Nine out of ten smokers begin by age 18, and eighty per cent who begin as teens will smoke into adulthood,[4] compelling the Surgeon General to warn that the "epidemic of youth e-cigarette use" may condemn a generation to "a lifetime of nicotine addiction and associated health risks."[5]

6.     By distributing devices that provide larger than normal doses of nicotine in a mild aerosol intentionally formulated to reduce or eliminate the harshness of burning tobacco and at the same time tasting pleasantly of fruit, candy or desserts FDV manufacturers and distributors have triggered the largest increases in youth nicotine use ever seen.[6]

7.     The major manufacturers of FDVs and the e-liquids with which they are filled are principally located in China: Shenzhen Weiboli Technology Co. Ltd, manufacturer of the best-selling "Elf Bar," 6099 Baoan Avenue, Baoan District, Shenzhen 518000 Guangdong, China; Shenzhen Daosen Vaping Technology Co., Ltd., manufacturer of the "Puff Bar," located at 10th Floor Junfeng Business Bldg., B5-1 Bldg., Fuyong Chongqing Rd., Shenzhen, China; and Shenzhen IVPS Technology Co., Ltd., manufacturer of the best-selling "Hyde" brand of FDVs

---

[3] Ali, et al, Trends in US E-cigarette Sales and Prices by Nicotine Strength, Overall and by Product and Flavor Type, 2017–2022, *Nicotine & Tobacco Research*, Volume 25, Issue 5, May 2023, Pages 1052–1056, https://doi.org/10.1093/ntr/ntac284

[4] *Preventing Tobacco Use Among Youth and Adults, A Report of the Surgeon General* at 1 (2012), https://www.hhs.gov/surgeongeneral/reports-and-publications/tobacco/index.html.

[5] *Surgeon General's Advisory on E-cigarette Use Among Youth,* available at https://www.cdc.gov/tobacco/basic_information/e-cigarettes/surgeon-general-advisory

[6] *Id.*

distributed by the present defendants, 101 Building B8, No. 2, Cengyao, Industrial Area, Yulv Community, Yutang Subdistrict, Guangming District, Shenzhen, China.

8.      The China-based manufacturers sell and ship their products directly or through middlemen to "master distributors" or sub-distributors in the United States. The defendants on information and belief import FDVs manufactured in China (and elsewhere), distributing the devices to retail stores that in turn sell FDVs to the public. Some distributors sell directly to the public from brick-and-mortar locations and/or Internet websites.

**PACT Act Violations**

9.      FDVs are defined as "cigarettes" within the meaning of the federal Prevent All Cigarette Trafficking ("PACT") Act, 15 U.S.C. § 375 *et seq*. FDVs, like all e-cigarettes and e-cigarette components, are accordingly regulated identically to conventional cigarettes, subject to the PACT Act's detailed conditions imposed on the non-face-to-face sales that the PACT Act defines as "delivery sales": any sale or delivery of an FDV to a "consumer" in which buyer and seller are not in one another's physical presence upon ordering or receiving the product. A "consumer" includes any person, corporation, company, association, firm or partnership purchasing cigarettes that is not "lawfully operating" a tobacco business.

10.     All or nearly all of the defendants' sales and deliveries are PACT Act delivery sales to consumers: No person to whom the defendants sell and deliver FDVs is "lawfully operating a tobacco business" because, *inter alia*, defendants distribute vape products to persons violating all or virtually all federal, New York State and New York City laws regulating e-cigarette sales.

**Racketeering Violations**

11.     Defendants conceal and conspire to conceal from federal, New York State and New York City authorities their FDV sales by failing, as required by the PACT Act; i) to register as delivery sellers with federal, state and City authorities; ii) to report to federal, New York State and City authorities the details of each delivery sale made into the State and City,; and iii) to identify their packages of FDVs as containing "cigarettes," or "vapor products" as required under federal and New York State law.

12.     Defendants thereby use or conspire to use the mails or wires to obtain money or property through false or fraudulent pretenses, in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  That conduct constitutes "racketeering activity" when undertaken with sufficient frequency by members of an "enterprise."  That racketeering activity injures the City in its business or property, *inter alia* in the form of damages incurred by the required disposal of defendants' products as hazardous waste, thereby constituting a violation of 18 U.S.C §§ 1961, 1962(c), 1962(d), the Racketeering Influenced Corrupt Organizations ("RICO") Act.

**New York State and City Law**

13.     "Flavored" vape products are products that have a taste or aroma other than that of tobacco, intended or reasonably expected to be used with or for consuming nicotine. *See* New York Public Health Law § 1399-mm-(1) ("PHL §1399-mm-(1)").

14.     PHL §1399-mm-(1) prohibits dealers in vapor products from selling or offering for sale at retail in New York any flavored vapor product to be used in connection with the consumption of nicotine. New York City Administrative Code § 17-715 (b) (**"Ad. Code § 17-715

(b)") prohibits any person from selling, offering for sale, or possessing with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid in the City.[7]

15.     New York Public Health Law § 1399-*ll* ("PHL §1399-*ll*"), with exceptions not relevant here, prohibits shipments of electronic vapor products except to licensed tobacco dealers holding a certificate of registration as a vapor products dealer under article twenty-eight-C of the tax law (a "Vape Certificate").

16.     The defendants offer for sale and sell, possess with intent to offer for sale or with intent to sell FDVs that they ship to persons in New York City who are not licensed to receive vapor product shipments.

## Public Nuisance

17.     The defendants sell or offer at retail flavored vapor products in New York City in violation of the PACT Act, the RICO statute, PHL § 1399-mm-(1), PHL § 1399-*ll,* and Ad. Code § 17-715 (b).

18.     The sale of flavored vapor products by the defendants endangers the health and safety of a large number of persons in New York City and thereby constitutes a public nuisance.

## Relief

19.     The violations of the law described above entitle the City to an order (i) enjoining the defendants from making delivery sales of FDVs into or in New York City in violation of the PACT Act, or otherwise violating PHL 1399-*ll,* PHL 1399-mm-(1) and the NYC Ad. Code § 17-715(b); (ii) awarding the City treble damages under the RICO statute, and attorneys' fees; (iii) awarding the City the civil penalties provided under the PACT Act and PHL § 1399-*ll,* and (iv) requiring the defendants to establish a fund to abate the public nuisance caused by their conduct.

---

[7] Both the State and City statutes permit the sale of tobacco flavored e-liquids.

**Jurisdiction and Venue**

20.     The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 378, 18 U.S.C. § 1961 *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

21.     Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims occurred in this district.

**Parties**

22.     The City is a municipal corporation organized under the laws of the State of New York.

23.     Magellan Technology Inc. ("Magellan") is a corporation formed under the laws of the State of New York with a principal place of business at 2225 Kenmore Avenue, Buffalo, NY 14207. Magellan sells electronic nicotine delivery devices, including Hyde-branded FDVs and flavored e-liquids, to the public in New York State and elsewhere and/or owns or controls other businesses that do so.

24.     Ecto World, LLC d/b/a Demand Vape ("Demand Vape") is a limited liability company formed under the laws of the State of New York with a principal place of business at 2225 Kenmore Avenue, Buffalo, NY 14207. Demand Vape sells electronic nicotine delivery devices, including FDVs and flavored e-liquids, to the public in New York State and elsewhere and/or owns or controls other businesses that do so.  Demand Vape sells FDVs to the public, *inter alia*, from the Internet website https://www.demandvape.com.

25.     Mathew J. Glauser is a citizen of the State of New York with a business address at 2225 Kenmore Avenue, Buffalo, NY 14207.  Glauser is the president of Magellan Technology Inc., the president, founder and chief strategy officer of Demand Vape, and an owner of Firmitas Solutions, LLC ("Firmitas").

*26.*     Firmitas is a nicotine product manufacturing facility and co-packer of bottled e-liquids and e-liquid "pods" for major e-cigarette brands. Firmitas has business addresses of 2225 Kenmore Ave Ste 110, Buffalo, New York 14207-1359 and 5604 Charles City Circle, Henrico, VA 23231.

27.     Donald Hashagen is a principal and part owner of Firmitas and is a citizen of the State of Virginia with a business address of 5604 Charles City Circle, Henrico, VA 23231.

28.     Mahant Krupa 56 LLC is a limited liability company formed under the laws of the State of New York doing business as Empire Vape Distributors ("Empire Vape") with a principal place of business located at 56-01 Maspeth Avenue, Maspeth, Queens 11378. Empire Vape sells electronic nicotine delivery devices, including FDVs and flavored e-liquids to the public in New York State and elsewhere and/or owns or controls other businesses that do so.  Empire Vape sells FDVs to the public, *inter alia*, from the Internet website https://empiresmokedist.com.

29.     Nikunj Patel is a principal of Mahant Krupa 56 and a citizen of the State of New York with a business address of 56-01 Maspeth Avenue, Maspeth, Queens 11378.

30.     Devang Koya is a principal of Mahant Krupa 56 and a citizen of the State of New York with a business address of 56-01 Maspeth Avenue, Maspeth, Queens 11378.

31.      Star Vape Corp. ("Star Vape") is a corporation formed under the laws of the State of New York with principal places of business at 416 4th Avenue, Brooklyn, New York, and 283 67th Street Brooklyn, New York, 11220.  Star Vape sells electronic nicotine delivery devices, including FDVs and flavored e-liquids at retail and at wholesale to the public throughout New York and elsewhere and/or owns or controls other businesses that do so. Star Vape sells FDVs to the public, *inter alia*, from the Internet website https://www.starvapecorp.com.

32.     Nabil Hassen is the Chief Executive Officer of Star Vape and a citizen of the State of New York with a business address of 416 4th Avenue, Brooklyn, New York.

33.     Dorbes LLC d/b/a Hydevapeofficial.com is a limited liability company formed under the laws of the State of Virginia with an agent for service of process located at 4000 Legato Road, Suite 1100, Roanoke, VA 22033-2893 and a principal place of business at 4653 Whipplewood Court, Roanoke, VA 24018. Dorbes LLC sells FDVs under the Hyde brand name over the internet from the website Hydevapeofficial.com.

34.     Christian A. Smith is a principal of Dorbes LLC and a citizen of the State of Virginia residing at 2777 Bluefield Blvd SW, Roanoke, VA 24015 or 4653 Whipplewood Court, Roanoke, VA 24018.

**Background**

**FDVs and the Tobacco Control Act**

35.     The most popular electronic nicotine delivery system among young people[8] is the FDV device, a battery-powered metal heating coil immersed in a plastic tank filled with a liquid usually containing nicotine – among the most addictive substance used by humans.  As with electronic nicotine delivery systems generally, suction on the device switches on the battery, which heats the liquid to produce a nicotine-laced aerosol inhaled by the user.

36.     Pursuant to the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §§ 387, *et seq.* ("Tobacco Control Act"), the FDA in 2016 adopted the "Deeming Rule," 21 C.F.R. § 1143.1, which subjects electronic cigarettes to the Tobacco Control Act and to the FDA's authority.  Electronic cigarettes are accordingly regulated by the FDA as "tobacco

---

[8] Cooper M, Park-Lee E, Ren C, Cornelius M, Jamal A, Cullen KA. Notes from the Field: E-cigarette Use Among Middle and High School Students — United States, 2022. MMWR Morb Mortal Wkly Rep 2022;71:1283–1285. DOI: http://dx.doi.org/10.15585/mmwr.mm7140a3.

products" under the Tobacco Control Act because they "contain[] nicotine from any source" and are "intended for human consumption." 21 U.S.C. § 321(rr)(1).

37.    The Tobacco Control Act requires manufacturers of tobacco products to obtain authorization from the FDA before any "new" tobacco product – a tobacco product not on the market as of February 15, 2007 – can be sold in the United States. No FDV product is known to have been commercially marketed in the United States as of February 15, 2007, and FDVs are accordingly all "new" tobacco products that must have "premarket review" by the FDA to obtain the "premarket authorization" that legalizes the device for sale in the United States. *See* 21 U.S.C. § 387j(a)(1)-(2). A new tobacco product without premarket authorization is an "adulterated product," 21 U.S.C. § 387(b) prohibited by the Tobacco Control Act from "introduction or delivery for introduction into interstate commerce. . ." 21 U.S.C. 331(a). The marketing and sale of any FDV without premarket authorization is a *per se* violation of 21 U.S.C. § 331(a). An FDV without premarket approval is also "contraband *per se*," *i.e.*, an item having no legal use and subject to seizure by law enforcement.

38.    The Tobacco Control Act requires premarket authorization of a new tobacco product to be denied unless the FDA finds that marketing the product is "appropriate for the protection of the public health." 21 U.S.C. § 387j(c)(2), (4).  Consistent with congressional findings that tobacco use by youth "is a pediatric disease of considerable proportions," Tobacco Control Act § 2(1), 123 Stat. at 1777, an applicant for premarket authorization of an FDV must show a net benefit to the public health by comparing the risk of youth initiation against the product's ability to reduce or end adult use of combustible tobacco.

39.     The FDA has to date authorized only tobacco-flavored and unflavored electronic nicotine delivery devices under the "net benefit" standard.[9] E-cigarettes, especially those with flavored e-liquids, present so substantial a risk of youth initiation that the FDA requires strong proof of a marked reduction in adult combustible tobacco use to meet the net benefit standard.

40.     To date, no FDV has met the standard.  The FDA has not authorized the marketing of any FDV (other than tobacco-flavored) and has denied dozens of applications for failure to prove the device meets the "net benefit" standard. All FDVs are thus now marketed unlawfully.

## FDV Use By Young Persons

41.      The primary driving force of the vaping epidemic among young people is "youth appeal and youth access to flavored tobacco products."[10] The long-standing yearly decline in youth smoking underwent a dramatic reversal in 2018, when it was found that more than one in four U.S. high school students reported use of a tobacco product in the past thirty days.

42.     In December 28, 2018, the National Adolescent Drug Trends Report issued by the University of Michigan reported that increases in adolescent e-cigarette use from 2017 to 2018 were the "largest ever recorded in the past 43 years for any adolescent substance use outcome in the U.S."[11] The percentage of 12th grade students reporting nicotine use nearly doubled between 2017 and 2018, with a 78% surge in the number of youth using electronic nicotine delivery

---

[9]    *See*   https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders ("To date, the FDA has authorized marketing of 45 products, including 23 tobacco-flavored e-cigarette products and devices.") (last visited June 30, 2023)

[10] *Id*.; "[FDVs] have rapidly become popular—especially among young people, who have overwhelmingly adopted flavored [FDVs] products as their tobacco products of choice." *Magellan Tech., Inc. v. United States FDA*, No. 21-2426, 2023 U.S. App. LEXIS 15016, at *3 (2d Cir. June 16, 2023).

[11] *National Adolescent Drug Trends in 2018*, Univ. of Mich. Inst. for Social Research (Dec. 17, 2018), http://monitoringthefuture.org/pressreleases/18drugpr.pdf.

devices that was "twice as large as the previous record for the largest-ever increase among 12th graders."[12] E-cigarette use by middle school students surged by 48%.

43.     By 2018, approximately 3.6 million middle and high school students used e-cigarettes regularly, with approximately 20% of 12th graders reporting e-cigarette use in the 30-day sample period.[13, 14] By late 2019, 5 million students reported active use of electronic nicotine delivery devices, with 27.5% of high school students and 10.5% of middle school students having used the devices within the thirty-day sample period.[15]

44.     By 2020, the FDA determined that two of the largest surveys of youth tobacco use performed in 2019 found e-cigarette use to have reached the highest levels ever recorded,[16] and that youth consumption of e-cigarettes had doubled among middle and high school students.[17]  In 2019, the total number of middle and high school students reporting current use of e-cigarettes surpassed five million for the first time in history.[18]

45.     Consistent with the national trend, youth e-cigarette consumption rates in New York City school remain higher than rates of combustible tobacco use. In 2021, 11% of NYC public high school students reported using an e-cigarette in the past month, while only 3%

---

[12] News Release, *Teens Using Vaping Devices in Record Numbers*, Nat'l Insts. of Health (Dec. 17, 2018) https://www.nih.gov/news-events/news-releases/teens-using-vaping-devices-record-numbers.

[13] *See* Jan Hoffman, *Addicted to Vaped Nicotine, Teenagers Have No Clear Path to Quitting*, N.Y. Times (Dec. 18, 2018), https://www.nytimes.com/2018/12/18/health/vaping-nicotine-teenagers.html.

[14] *Id*.

[15] National Youth Tobacco Survey, U.S. FDA (2019), https://www.fda.gov/tobacco-products/youth-andtobacco/youth-tobacco-use-results-national-youth-tobacco-survey; Karen Cullen et al., *e-Cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019).

[16] *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization*, U.S. FDA (Jan. 2020), https://www.fda.gov/media/133880/download.

[17] Karen A. Cullen et al., *E-cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019).

[18] *Id*.

reported smoking cigarettes. In 2018, 6.7% of public middle school students surveyed reported they were current users of electronic vapor products, while only 0.9% reported currently smoking cigarettes.[19]

46.     The substantial increase in youth smoking in the space of only one year[20] was considered remarkable because it occurred without an increase in the consumption of combustible tobacco products such as cigarettes or cigars. The increase in youth smoking was instead reflected solely as an increase in e-cigarette use.[21]   Use of all other tobacco products continued its decades-long decline while e-cigarette use increased 78% in one year[22] leading the Centers for Disease Control and Prevention ("CDC") described youth e-cigarette use to be an "epidemic."[23]

47.     The Surgeon General has explained that nicotine in e-cigarettes affects the developing brain and produces addiction in youth more easily than in adults as a result of the enhanced learning abilities of the developing brain.[24] The effects of nicotine exposure on the brain of youth and young adults include addiction, priming for use of other addictive substances,

---

[19] *2021 Youth Risk Behavior Survey*, Centers for Disease Control and Prevention (2021), available at https://www.cdc.gov/healthyyouth/data/yrbs/results.-htm.

[20]*Progress Erased: Youth Tobacco Use Increased During 2017-2018*, CDC (Feb. 11, 2019), https://www.cdc.gov/media/releases/2019/p0211-youth-tobacco-use-increased.html.

[21]*Tobacco Use By Youth Is Rising: E-Cigarettes are the Main Reason*, CDC (Feb. 2019), https://www.cdc.gov/vitalsigns/youth-tobacco-use/index.html.

[22] Scott Gottlieb, Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes, FDA (Nov. 15, 2018), https://www.                fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposednew-steps-protect-youth-preventing-access.

[23]Jerome Adams, *Surgeon General's Advisory on E-cigarette Use Among Youth*, CDC (Dec. 2018), https://ecigarettes.        surgeongeneral.gov/documents/surgeon-generals-advisory-on-e-cigarette-use-among-youth-2018.pdf.

[24] U.S. Surgeon General and U.S. Centers for Disease Control & Prevention, Office on Smoking and Health, *Know the Risks: E-Cigarettes and Young People* (2019), https://ecigarettes. surgeongeneral.gov/.

impaired impulse control, deficits in attention and cognition and mood disorders.[25] As a highly addictive, psychoactive substance targeting brain areas involved in emotional and cognitive processing, nicotine poses a particularly potent threat to the adolescent brain, as it can "derange the normal course of brain maturation and have lasting consequences for cognitive ability, mental health, and even personality."[26]

48.     In the summer of 2019, hundreds of otherwise healthy young adults began to appear in emergency rooms nationwide with dangerous respiratory damage, in which 1,080 lung injury cases associated with cannabis and nicotine e-cigarette products had been reported to the CDC as of October 1, 2019. Eighteen deaths from 15 states were confirmed. By December 2019, more than 2,500 reported cases of e-cigarette-related hospitalizations for lung injury were reported, including more than fifty confirmed deaths.[27] New York City alone experienced fifty cases of e-cigarette lung injury and four confirmed deaths. Cases continue nationwide and in New York City.

49.     E-cigarettes present hazards even to presumed non-vapers. According to the CDC, between April 1, 2022 and March 31, 2023, 7,043 e-cigarette exposure cases were reported to the National Poison Data System, a compilation of all cases reported to U.S. poison centers. The data showed a 32% increase in reported poisoning from e-liquid ingestion during this period, with nearly 90% of the cases in children less than five years old. The most reported brand

---

[25]  Menglu Yuan et al., *Nicotine and the Adolescent Brain*, 593 J. Physiology 3397 (2015), www.ncbi.nlm.nih.gov/pmc/articles/PMC4560573/.

[26] Natalia A. Goriounova & Huibert D. Mansvelder, *Short- and Long-Term Consequences of Nicotine Exposure During Adolescence for Prefrontal Cortex Neuronal Network Function*, 2 COLD SPRING HARBOR PERSP.MED. 12 (2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3543069/.

[27] Karen A. Cullen et al., *E-cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019).

involved was Elf Bar, a disposable e-cigarette available in a variety of flavors and sold by all or most of the present defendants.[28]

50.     The explosive increase in the use of electronic nicotine delivery devices among youth is believed attributable to the devices' high nicotine content, youth-friendly candy, fruit and dessert flavors, and amenability for surreptitious use, *i.e.*, the ability to use the devices "discreetly." Nearly 85% of current e-cigarette users used flavored e-cigarettes, with fruit flavors being the most popular, followed by candy, desserts, or other sweets.

51.     FDVs are adopted at a higher rate by youth when the devices contain flavored e-liquids. Adolescents whose first tobacco product was flavored are more likely to continue using tobacco products than those whose first product was not flavored. Flavored e-liquids were used by 81% of first-time users aged twelve to seventeen who had ever used electronic nicotine delivery devices; 85.3% of current youth users had used a flavored e-liquid in the past month; 81.5% of current youth users said they used electronic nicotine delivery devices "because they come in flavors I like." [29, 30] Another peer-reviewed study concluded that young adults who use electronic cigarettes are more than four times as likely to begin using regular cigarettes when compared with peers who have not used e-cigarettes.[31]

**52.**     Flavored e-liquids multiply the risk of nicotine addiction by making it easier and more pleasant to ingest nicotine, with e-liquids expressly formulated to make them more

---

[28]Tashakkori NA, Rostron BL, Christensen CH, Cullen KA. Notes from the Field: E-Cigarette–Associated Cases Reported to Poison Centers — United States, April 1, 2022–March 31, 2023. MMWR Morb Mortal Wkly Rep 2023;72:694–695. DOI: http://dx.doi.org/10.15585/mmwr.mm7225a5

[29] *See* Bridget K. Ambrose et al., *Flavored Tobacco Product Use Among US Youth Aged 12-17 Years, 2013-2014*, 314 JAMA1871 (2015).

[30] Karma McKelvey et al., *Adolescents and Young Adults Use in Perceptions of Pod-based Electronic Cigarettes*. 1 JAMA NETWORK OPEN e183535 (2018), https:// doi:10.1001/jamanetworkopen.2018.3535.

[31] *See* Brian A. Primack, et al. *Initiation of Traditional Cigarette Smoking after Electronic Cigarette Use Among Tobacco-Naïve US Young Adults*, 131 AM. J.MED. 443.e1 (2018).

palatable to novice smokers.[32] Adolescents whose first tobacco product was flavored are more likely to continue using tobacco products than those whose first product was not flavored.

**Flavor Bans**

53.     In 2009, the FDA banned flavored cigarettes (other than menthol) pursuant to its authority under the Tobacco Control Act. "Flavored cigarettes attract and allure kids into addiction," Health and Human Services Assistant Secretary Howard Koh, MD, MPH, said at a news conference held to announce the ban.[33] In January 2020, in response to "epidemic levels of youth use of e-cigarettes" the FDA banned flavored e-cigarette "pods"[34] (other than "tobacco" and "menthol" flavors), announcing a policy to prioritize enforcement against unauthorized flavored vape products, because the products are "so appealing" to children."[35]

54.     The federal flavor ban was followed by a New York State ban on sales of devices using flavored nicotine e-liquids, *see* PHL §1399-mm-(1), and comparable bans in California, Massachusetts, New Jersey, and Rhode Island.  Maine, Oregon, South Dakota, Utah, and Vermont have banned sales of any FDVs, flavored or not, over the Internet.[36] New York City has

---

[32] *See* U.S. Dep't of Health & Human Servs., *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease: A Report of the Surgeon General*, Chapter 4 (Centers for Disease Control and Prevention ed. 2010), https://www.ncbi.nlm.nih. gov/books/NBK53018/ #ch4.s92.

[33] Daniel J. DeNoon, FDA Bans Flavored Cigarettes: Ban Includes Cigarettes With Clove, Candy, and Fruit Flavors, WebMD (Sept. 22, 2009), https://www.webmd.com/smoking-cessation/news/20090922/fda-bansflavored-cigarettes#2.

[34] "Pods" are cartridges pre-filled with an e-liquid that can be inserted to refill a non-disposable e-cigarette much like with refilling a ball-point pen.

35 U.S. Food & Drug Admin., FDA Finalizes Enforcement Policy on Unauthorized Flavored Cartridge-Based Ecigarettes that Appeal to Children, Including Mint (Jan. 22, 2020), https://www.fda.gov/news-events/pressannouncements/   fda-finalizes-enforcement-policy-unauthorized-flavored-cartridge-based-e-cigarettes-appealchildren

36 Ali FR, Seidenberg AB, Crane E, Seaman E, Tynan MA, Marynak K. E-cigarette Unit Sales by Product and Flavor Type, and Top-Selling Brands, United States, 2020–2022. MMWR Morb Mortal Wkly Rep 2023;72:672–677. DOI:http://dx.doi.org/10.15585/mmwr.mm7225a1

enacted a complete ban on sales of flavored vapes, and a total of 378 jurisdictions –  counties, cities, towns, and villages, including Chicago IL, Los Angeles, San Diego, Sacramento, Oakland, and San Jose, CA, Boulder, CO, and Newark, NJ –  have imposed some form of restriction on flavored e-cigarette sales.

55.    Marketing FDVs to youth is propelled not only by flavoring nicotine solutions but by packaging the devices with images of popular cartoon characters for still further enhanced youth appeal.  Some devices are marketed as whimsical characters with so much appeal to young people as to require a cautionary label that the device is "Not a Toy."

**Enforcement Efforts**

56.    FDA Warning letters are an FDA enforcement mechanism indicating that the FDA considers a particular product or type of product to be an FDA-regulated tobacco product, or that there is a compliance issue with a company's conduct or product, or that the product appears to be an unauthorized new tobacco product.  As of January 31, 2023, the FDA has issued in excess of 75 warning letters to manufacturers and 585 warning letters to retailers for selling electronic nicotine delivery systems illegally and warning that persons manufacturing and distributing unauthorized vapor products risk injunctive and/or equitable relief, civil penalties, and damages.

57.    Recent enforcement efforts may have influenced a decline in youth FDV use. While the numbers of users remains unacceptable, by October 2022, FDA and the CDC released federal data from the 2022 National Youth Tobacco Survey showing that about 1 in 10 or more than 2.5 million U.S. middle and high school students had used e-cigarettes in the past 30-day sample period, specifically 14.1% (2.14 million) of high school students and 3.3% (380,000) of

middle school students reported current e-cigarette use, which represented a decline from earlier surveys.

58.     More than a quarter (27.6%) of the youth e-cigarette users in the 2022 Survey used an e-cigarette product every day, and more than 40% reported use in at least 20 of the last 30 days. FDVs were the most commonly used device – 55.3%. Hyde brand products, distributed by each defendant, were among the top four most popular brands.

59.     On or about May 13, 2023, the FDA issued an import or "Red List" alert authorizing U.S. Customs and Border Protection ("CBP") to seize without inspection particular brands of FDVs that did not have the required marketing authorization and thus are "adulterated" and illegal under the Federal Food, Drug and Cosmetic Act. The FDA's Red List targeted FDVs from more than 20 Chinese, Korean and U.S. companies and authorizes CBP to "detain, without physical examination, the tobacco products identified on the Red List of this Import Alert," including cigarettes … or any of … component parts [of a cigarette] that contain, as a constituent or additive, an artificial or natural flavor (other than tobacco or menthol)."[37]

60.     On May 31, 2023, FDA issued warning letters to an additional 30 retailers and a distributor for illegally selling various brands of FDVs, including the very popular Puff Bar, Esco Bar, and Hyde brand FDVs,[38] brands that are among the most commonly reported as used by youth e-cigarette users in the 2022 survey. These brands are available for sale on the websites of all of the present defendants.

---

[37] https://www.accessdata.fda.gov/cms_ia/importalert_501.html (last visited June 20, 2023).

[38] https://www.fda.gov/news-events/press-announcements/fda-conducts-retailer-inspection-blitz-cracks-down-illegal-sales-popular-disposable-e-cigarettes

### FDVs and the PACT Act

61.     The Internet's emergence as a commercial channel in the 1990s was rapidly exploited as a means of evading age restrictions and tax collection on cigarette sales, prompting the 2010 passage of the PACT Act, requiring, *inter alia*, age verification, pre-payment of taxes, identification of cigarette shipments, and compliance with state and local tobacco laws by persons selling cigarettes in "delivery sales" – sales or deliveries in other than face-to-face transactions – to a "consumer," *i.e.*, any buyer of cigarettes other than a person lawfully operating a tobacco business.

62.     Methods of nicotine delivery have changed substantially since the 2010 enactment of the PACT Act, with the CDC finding electronic nicotine delivery systems to be the dominant device among youth for accessing nicotine and further finding, with the FDA and the National Institutes of Health, that electronic nicotine delivery devices were freely available for purchase over the Internet. In 2020, Congress accordingly amended the PACT Act by enacting the "Preventing Online Sales of E-Cigarettes to Children Act," Pub. L. 116-260, 134 Stat. 3136 (2020), which applies the PACT Act to electronic nicotine delivery devices, accomplished simply by defining the devices as "cigarettes" within the meaning of the PACT Act's definition of that term.  *See* 15 U.S.C. § 375(1).  The provisions of the PACT Act thus apply identically to e-cigarettes as to traditional cigarettes using combustible tobacco.

### Actions of the Defendants

### Magellan Technology

63.     Defendant Magellan owns the trademarks of FDVs sold under the trade name "Hyde."  Magellan is the master distributor for all Hyde and Juno-branded products, some of which are manufactured for Magellan in China by Shenzhen IVPS Technology Co., Ltd., 101

Building B8, No. 2, Cengyao, Industrial Area, Yulv Community, Yutang Subdistrict, Guangming District, Shenzhen, China.

64.     On or about October 12, 2018, Magellan received a warning letter from the FDA stating that Magellan was manufacturing new tobacco products, including e-liquids, under the "Juno" name without having obtained the pre-market authorization required under the Tobacco Control Act.

65.     On or about October 6, 2022, following Magellan's submission of an application for pre-market authorization of several of its flavored products, the FDA determined that the applications lacked sufficient evidence to meet the net benefit standard – that the flavored products sufficiently benefitted adult users to outweigh the risk of youth initiation – and denied Magellan's premarket tobacco product applications, a decision recently affirmed by the Second Circuit Court of Appeals. *See Magellan Tech., Inc. v. United States FDA*, No. 21-2426, 2023 U.S. App. LEXIS 15016, at *3 (2d Cir. June 16, 2023).

66.     On information and belief, Magellan sells FDVs and other e-cigarette devices containing flavored e-liquids and/or flavored e-liquids that have not be granted pre-market authorization by the FDA.  Magellan's sales are made to sub-distributors and retailers operating brick-and-mortar stores and/or internet websites in New York City. The sub-distributors and retailers in turn sell the products to the public.  Magellan's sales all constitute delivery sales to consumers under the PACT Act.

67.     Magellan's Hyde products have been named as the predicate for hundreds of citations issued to retail stores for violating the New York City flavor ban, Ad. Code § 17-715 (b).

68.     A recent study of searches by brand name of the ten highest-volume e-cigarette websites that deliver to the public over the internet establish that Hyde-branded products were the fourth-most common search on those websites, comprising ten percent of the searches during the 12 months March 2022 to February 2023, equal to approximately 150,000 searches for the Hyde brand.

69.     Magellan's Hyde-brand flavored vapes are ubiquitous at smoke shops and convenience stores in New York City, having been observed for example at Yolo Smoke City, 1173 Lexington Avenue, N.Y., N.Y. on February 23, 2023, Convenience of Columbus, 550 Columbus Avenue, N.Y., N.Y. on February 23, 2023, Morris Park Convenience Store, 1048 Morris Park Avenue, Bronx, N.Y. on March 18, 2023, Garden Fresh Gourmet Deli, 969 Morris Park Avenue, Bronx, N.Y. on March 18, 2023, Hookah 2 Plus, 750b Morris Park Avenue, Bronx, N.Y. on March 18, 2023, LA Convenience Store, 101 Avenue A, N.Y., N.Y. on April 12, 2023, XXX Vape Shop, 26 Avenue C, N.Y., N.Y. on May 1, 2023

**Dorbes LLC and Christian A. Smith**

70.     Dorbes LLC and Christian A. Smith (collectively referred to as "Dorbes") own and operate the Internet website www.hydevapeofficial.com that exclusively offers and sells to the public Hyde FDVs, vape device components, and e-liquids for shipment to any purchaser capable of typing a birth date into a computer that shows them to be above the age of twenty-one (21).[39] Dorbes sells FDVs directly to the public, including persons residing at New York City addresses from the Hydevapeofficial.com website.

---

[39] The website's entry requirement requires a purchaser to "agree" that he or she had entered a birth date "verifying" an age over the age of 21.

71.     The Hydevapeofficial.com website received the fourth-highest number of visits of the ten highest-volume websites investigated in a recent study of e-cigarette websites, receiving approximately 144,000 visits in February 2023 alone.

72.     Until its recent closure, The Hydevapeofficial.com website encouraged customers to "Choose from our fabulous selection of Hyde flavors you'll love!"  Those flavors include:

**Breakfasts**

- OJ – Think of a tall glass of orange juice with a generous helping of ice to refresh you on a hot summer day. Or, as an accompaniment to the other breakfast vapes from Hyde. It's totally distinct from its Sparkling Orange, but every bit as enjoyable, if not more.

- Loops – Yep! You guessed it! This one's about your favorite breakfast cereal. Who says adults can't enjoy those rainbow-colored rings doused with creamy milk?

**Fruity**

- Peach Mango Watermelon – If you enjoy fruit salads, here's another one you must try. Golden peach chunks, golden mangoes cubes, and golden watermelon.

- Aloe Grape – Utterly original and unusual, but one of the current favorite Hyde flavors. You could try this one just for the fun of it. And, it certainly won't disappoint.

**Menthols**

- Banana Ice -Think luscious tropical fruits doused in a generous heap of icy crystals. Each whiff takes you on a journey across the planet with stops in the sunny climes of the tropics. Banana Ice is truly one of the all-time favorite Hyde flavors.

- Cola Ice – No movie-watching experience is complete without the all-time favorite staple of chilled soda and popcorn. And, that's where this flavor from Hyde takes you in an instant. With the perfect blend of sweetness and icy cool sensations.

- Spearmint – Just about every vaping e-liquid brand has its own version of the classic Spearmint. If you're expecting something very normal, prepare to be surprised.

**Desserts**

- Lemon Crumble – Each whiff of this e-juice flavor feels like you're digging into the sweet-sour tastes of a lemon tart complete with the crispy pastry. Don't be surprised if you can't wait to place the next order, in case you run out.

- Mango Peaches & Cream – If you loved the classic Strawberry and Cream from Hyde, you're going to welcome the new version with mangoes and peaches. Taste the richness of thick cream balanced with the sweetness of the king of fruits and the tartness of peaches.

**Coolers**

- Pink Lemonade – One of the most fabulous flavors, Pink Lemonade takes you back to your childhood when you set up chilled lemonade stands and ended up drinking most of it yourself! More than your taste buds, this one is also a celebration for your eyes.

- Minty O's – If you absolutely must have your after-dinner mint, reach for your Hyde instead. It's sweet and minty and refreshes you quickly. And, if you're looking for a palate cleanser in between courses at dinner, take a quick, discreet whiff.

**Candies**

- Tropical Gummy – Take a whiff of the Tropical Gummy from Hyde and you will be startled by the texture of gummy candy rolled into a vape. If you're a fan of Hyde's Neon Rain, you'll love this version of the rainbow candy.

https://hydevapeofficial.com/pages/flavor-descriptions (last visited June 19, 2023)

73. On or about May 8, 2023, the Hydevapeofficial.com website was accessed by computer. Following entry of a birth date for an age exceeding 21 years, a Peach Gummy-flavored Hyde Edge Recharge 3300 Puff Disposable device was purchased for $16.99 plus $5.40 shipping for delivery to a New York City residential address. The device was described as available in a total of 21 flavors, 9 of which appeared to be sold out at the time. The Hydevapeofficial.com website did not specify that an adult signature would be required upon delivery. No New York State or City taxes were collected at the time of purchase.

- 23 -

74.     On or about May 20, 2023, the FDV was delivered by USPS to the New York City residential address provided with the order, without requiring an adult signature upon delivery and without the package having been labelled as containing cigarettes, both mandated by the PACT Act.  The package did not identify the contents as "vapor products" as required by PHL § 1399-*ll*. The return address on the package was Hyde Official, #4273, 539 W. Commerce St., Dallas, TX 75208, a mail drop.[40]

75.     On or about May 15, 2023, the Hydevapeofficial.com website was accessed by computer.  Following entry of a birth date reflecting an age exceeding 21 years, two "Rainbow"-flavored Hyde N-Bar Mini 2500 Disposable 50 mg. Official Hyde Vapes were purchased for delivery to a New York City residential address. The Hydevapeofficial.com website did not specify that an adult signature would be required upon delivery. No New York State or City taxes were collected at the time of purchase.

76.     On or about May 26, 2023, the device was delivered by USPS to the New York City residential address provided with the order, without requiring an adult signature upon delivery and without the package having been labelled as containing cigarettes, both mandated by the PACT Act. The package did not identify the contents as "vapor products" as required by PHL § 1399-*ll*. The return address on the package was Hyde Official, #4273, 539 W. Commerce St., Dallas, TX 75208, a mail drop.

77.     On or about June 8, 2023, the Hydevapeofficial.com website was accessed by computer by entering a birth date reflecting an age exceeding 21 years. A "Cotton Cloudz"-

---

[40] The address listed on the package for "Hyde Official, #4273," – 539 W. Commerce St., Dallas, TX 75208 – is the address for PhysicalAddress.com, "an online mail and business address service that virtualizes your postal mail. We offer users a choice of standard and premium addresses, which may be used as a personal or business mailing address." https://physicaladdress.com/knowledge-base/what-is-physicaladdress-com-and-how-does-it-work/      (last visited May 27, 2023).

flavored Hyde N-Bar Mini 2500 Disposable 50 mg. Official Hyde Vape was purchased for $13.99 plus $5.40 shipping for delivery to a New York City residence. The website stated that the delivery would be made in a "discrete [*sic*] package" with "non-contact mailbox delivery." The Hydevapeofficial.com website did not specify that an adult signature would be required upon delivery. No New York State or City taxes were collected on the purchase.

78.      On or about June 20, 2023, the device was delivered by USPS to the New York City residential address provided with the order, without requiring an adult signature upon delivery and without the package having been labelled as containing cigarettes, both mandated by the PACT Act. The package did not identify the contents as "vapor products" as required by PHL § 1399-*ll*. The return address on the package was Hyde Official, #4273, 539 W. Commerce St., Dallas, TX 75208, a mail drop.

**79.**      Hydevapeofficial.com appears to sell and deliver FDVs nationwide without complying with the PACT Act requirements described above. In February 2023, the Hydevapeofficial.com website was accessed by computer by entering a birth date reflecting an age exceeding 21 years. A "Hyde Mystery Mix," was purchased and thereafter delivered to a residential address in Alabama. Similarly, a Strawberry Ice Cream flavored Hyde Edge Rave 4000 was purchased and thereafter delivered to a residential address in New Jersey. The return address on both packages was the same mail drop appearing on the above-described packages delivered to New York City. Alabama and New Jersey have enacted flavor bans for e-cigarettes.

### Ecto World, LLC, d/b/a "Demand Vape"

80.      Ecto World LLC d/b/a Demand Vape ("Demand Vape") is an online wholesaler and retailer of electronic nicotine delivery devices and e-liquids that is owned by defendant Matthew J. Glauser and located at 2225 Kenmore Ave., Buffalo, NY 14207. Demand Vape sells

FDVs and flavored e-liquids to sub-distributors, and retailers through a company sales team and through a website, https://demandvape.com/ (last visited June 19, 2023).

81.    Demand Vape in its own words is one of the largest, if not the largest, electronic cigarette distributor in the United States, offering approximately 30,000 products and selling to approximately 5,000 retailers in 49 states and internationally.  Demand Vape has approximately 280 employees, and a monthly payroll in the millions, with annual revenue between $500 and $600 million.  Demand Vape is a sister company to Magellan, which serves as Demand Vape's purchasing arm.

82.    The Demand Vape website displays an extensive selection of FDV devices, including Magellan-trademarked Hyde and Juno products that have been the subject of FDA warning letters as illegal, adulterated products.  Hyde FDVs are sold by Demand Vape in master case quantities of 200 or 300 vape devices as well as in display case quantities of 70 devices.

83.    According to Demand Vape, the Hyde brand of products was Demand Vape's largest seller several years ago but has since been eclipsed by another unapproved FDV known as an "Elf Bar."  Demand Vape's Elf Bar revenue alone exceeded $105,000,000 on sales of 13,329,920 FDVs for a gross profit of $11, 593, 591.85 in 2022.

84.    On information and belief, Demand Vape sells FDVs and other e-cigarette devices containing flavored e-liquids and/or flavored e-liquids that have not be granted pre-market authorization by the FDA.  The sales are made to sub-distributors and retailers operating brick-and-mortar stores and/or internet websites in New York City. Those retailers in turn sell the products to the public.  Demand Vapes' sales constitute delivery sales to consumers under the PACT Act.

**Mahant Krupa 56 LLC d/b/a "Empire Vape"**

85.     Mahant Krupa 56 LLC, doing business as Empire Vape Distributors, ("Empire Vape") is according to its website a "Wholesaler & Distributor of Tobacco & Tobacco Products," owned and controlled at least in part by defendants Nikunj Patel and Devang Koya. Empire Vape distributes FDVs at wholesale to conventional smoke and vape shops and convenience/grocery stores in New York City, including retail stores owned by Empire Vape in the City and in Connecticut, Delaware, Kentucky, Maryland, Massachusetts, New Hampshire, New Jersey, Ohio, Rhode Island, South Carolina, Tennessee, Texas, and Virginia that sell directly to the public.

86.     Empire Vape maintains a website offering a wide variety of FDVs, http://Empiresmokedist.com, with a website banner stating "FLAVOR BAN? NO WORRIES. WE GOT YOU." (last visited June 19, 2023)

87.     Empire Vape's website offers, *inter alia*, Magellan-trademarked Hyde products including 10 packs of Hyde Edge Recharge 3300 puff containing 5% nicotine in many flavors, including Banana Ice, Lush Ice, Blueberry and Cola, and 10 packs of Hyde N-Bar Disposable 4500 puff in Banana Cream, Brazmallows and Energize flavors.

88.     On March 23, 2021, the Office of the New York City Sheriff conducted an administrative inspection of Empire Vape at its 56-01 Maspeth Avenue, Maspeth, New York warehouse.  The inspection revealed thousands of units of FDVs as well as invoices indicating that the FDVs were being shipped to retail convenience stores in New York City and elsewhere.

Approximately 2015 flavored e-liquid "pods" were seized by the Sheriff, as were 4032 packages of "gray market" Juul vapes, which are illegal for sale in the U.S.[41]

89.     Included among the FDVs discovered by the Office of the Sheriff were Hyde FDVs in cases of 320 units each of Hyde Plus Disposable Strawberry & Cream, Neon Rain, Pina Colada, Blue Razz Ice, Pineapple Peach Mango, Pink Lemonade and Pineapple Ice, all designated as "Made in China."

90.     Hyde products that had been removed from cases and displayed as "10 packs" were also found, identified as Sour Apple Ice, Aloe Grape, Raspberry Watermelon, Lush Ice, Banana Ice, Peach Mango Watermelon, Strawberry Banana, and Honeydew Punch.

91.     Retail stores in New York City that are owned by or affiliated with Mahant Krupa/Empire Vape sell FDVs to the public. On or about May 13, 2023, a retail buyer entered Mahant 272 Inc., doing business as Smoke Vape & Lotto, 272-10 Union Turnpike, Queens, N.Y. 11040 and purchased a Strawberry Banana flavored "Elf Bar" brand FDV.

92.     On or about May 13, 2023, a retail buyer entered Pramukh 40, Inc., doing business as Pronto Lotto & Vape, 40-04 74th Street, Elmhurst, N.Y. 11373, and purchased a Strawberry Kiwi "BC5000" brand FDV.

93.     On or about May 16, 2023, a buyer entered Mahant 118 Inc., doing business as Smoke, Gift & Convenience a/k/a Jet Nation Convenience, 118 Mulberry St., New York, N.Y. 10013 and purchased a "Tropical" flavored Hyde N-Bar FDV.

94.     On or about May 16, 2023, a buyer entered Mahant 364 Inc., doing business as "Smoke Shop," 364 W 23rd St., New York, N.Y. 10011 and purchased a "Gumi"-flavor "Elf

---

[41] "Gray Market" goods are those produced by United States manufacturers licensed for sale outside of the United States only and illegal if sold within the United States.

Bar" brand FDV. The store worker stated to the purchaser that "All I have is clear" and slid a list of flavored products to select from.[42]

95.     On May 16, 2023, a buyer entered Mahant 239 Inc., doing business as "B" Smoke Shop, a/k/a Bentley Convenience Store, 239 9th Ave., New York, N.Y. 10001, and purchased a "Sunset"-flavored, "BC5000" FDV.

96.     On May 16, 2023, a buyer entered Mahant 979 Inc., doing business as "Tobacco Gift & Convenience," 979 1st Ave., New York, N.Y. 10022, and purchased a "Watermelon Ice"-flavored, "BC5000" FDV.

97.     On May 16, 2023, a buyer entered Pramukh 31 Inc., doing business as "E-Smoke & Beer," 31 St. Marks Pl., New York, N.Y. 10003 and purchased a Tropical Rainbow Blast flavored "Elf Bar" brand FDV.

98.     On May 16, 2023, a buyer entered Pramukh 235 Inc., doing business as "Village Vape & Cigar (Shisha International)," 171 W 4th St., New York, N.Y. 10014 and purchased a "Banana Ice" flavored Hyde Rebel FDV.

99.     On May 16, 2023, a buyer entered Pramukh 36 Inc., doing business as Midtown E Smoke & Convenience," 6 West 36th Street, New York, N.Y. 10018, and purchased a Miami Mint flavored "Elf Bar" brand FDV. During an earlier December 2022, visit to the store, the store worker claimed that as a result of a fine, the store did not sell flavors. At the May 16th sale the purchaser was handed a list of flavors from which to choose.

100.     On May 16, 2023, a buyer entered Pramukh 325 Inc., doing business as "3rd Ave. Food & Deli," 325 3rd Avenue, New York, N.Y. 10010, and purchased a "Watermelon Ice Cream" flavored Hyde Edge FDV.

---

[42] "Clear" refers to e-liquids without flavors.

**Star Vape**

101.    Star Vape distributes and sells FDVs and e-liquids at wholesale and retail in New York City, and sells both in a variety of flavors, including fruit and candy flavors.

102.    Star Vape maintains an Internet website at https://www.starvapecorp.com/ advertising many brands of FDVs for sale, including Hyde FDVs such as Hyde Edge, Hyde Rave and Hyde IQ. The Hyde products are available in such flavors as Watermelon Ice Cream, Cranberry Lime Fizz and Really Blueberry.

103.    The website offers wholesale purchasing only with a minimum order of $1000 and a minimum purchase of multi-unit boxes of FDVs. Star Vape's website does not sell individual FDVs. The sole method of payment for orders placed on the Star Vape website appears to be cash.

104.    Star Vape invoices obtained by the New York City Sheriff establish that Star Vape sells such FDV brands as Lava Plus 2000, Puff Strawberry Milkshake, Myle Drip Aloe Grape and Hyde Pina Colada, Blue Razz Ice, Strawberry Guava and Strawberry Kiwi in wholesale quantities to retail stores in the City.

105.    Star Vape invoices each contain a printed notice providing false legal advice that

> Flavored e-liquid in NY, NJ, MA, soley [*sic*] intended for online sales. Retail sales strictly prohibited. Purchaser responsible for compliance.

106.    Although correctly noting that retail sales of flavored e-liquids are "strictly prohibited," online or internet sales are also prohibited pursuant to PHL § 1399-*ll* and the PACT Act, contrary to Star Vape's legal advice.  Moreover, sellers such as Star Vape, not buyers of e-cigarettes who are responsible for compliance.

**Allegations Related to the PACT Act**

107.    The PACT Act defines an "electronic nicotine delivery system," 15 U.S.C. § 375(2)(A)(ii)(ll), as "any electronic device that, through an aerosolized solution, delivers nicotine, flavor, or any other substance to the user inhaling from the device.  Electronic nicotine delivery systems include e-cigarettes, vape pens, advanced refillable personal vaporizers, and any component, liquid, part, or accessory of any such device, regardless of whether the component, liquid, part, or accessory is sold separately from the device." 15 U.S.C. § 375(7)(A)-(C).[43]

108.    The PACT Act defines an electronic nicotine delivery system as a "cigarette" for purposes of the Act.  *See* 15 U.S.C. § 375(2).

109.    The PACT Act defines a "person" as an individual, corporation, company, association, firm, partnership, society, state government, local government, Indian tribal government, governmental organization of such a government, or joint stock company.

110.    The PACT Act defines a "consumer" as any person that purchases cigarettes, other than a person *lawfully operating* as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco. 15 U.S.C. § 375(4)(A)(B) (emphasis added).

111.    A "delivery sale" under the PACT Act is i) any sale of an e-cigarette to a consumer if the seller is not in the physical presence of the consumer when the order is placed, or ii) the seller is not in the physical presence of the consumer when the consumer obtains

---

[43] Electronic nicotine delivery devices do not include a product approved by the Food and Drug Administration for sale as a tobacco cessation product; or for any other therapeutic purpose. 15 U.S.C. § 375(7)(A)-(C). None of the FDVs sold by defendants qualify as such.

possession of the FDV; or iii) the FDV is delivered to the consumer by any method of remote delivery, such as common carrier.  15 U.S.C. § 375(5).

112.    The PACT Act defines a "delivery seller" as a person who makes a delivery sale. 15 U.S.C. § 375(6).

113.    The PACT Act requires any person shipping, selling, transferring, shipping for profit, advertising, offering for sale, or transferring FDVs in interstate commerce into a locality taxing the sale or use of cigarettes to file a statement with the Attorney General of the United States and the tobacco tax administrators of New York City and State setting forth the person's name, trade name, address of all places of business, telephone numbers, e-mail address, website addresses, and identifying an agent for service of process. 15 U.S.C. § 376.

114.    The PACT Act requires that by the 10th day of each calendar month any person shipping, selling, transferring, shipping for profit, advertising, offering for sale, or transferring FDVs in interstate commerce into a locality taxing the sale or use of cigarettes must  file with the New York State Department of Taxation & Finance, the New York City Department of Finance, and the New York City Corporation Counsel a memorandum or copy of an invoice describing each FDV shipment made into New York City during the previous calendar month, including the name and address of the person to whom the shipment was made, the brand, quantity thereof and name, address, and phone number of the person delivering the shipment, organized by city or town and zip code. 15 U.S.C. § 376.

115.    As applicable to New York State and City, the PACT Act requires any person selling, transferring, shipping for profit, advertising or offering for sale, transfer, or shipment FDVs in interstate commerce to comply with all state and local laws applicable to the sale of FDVs, including laws imposing excise taxes, licensing and tax-stamping requirements,

restrictions on sales to minors and other payment obligations or legal requirements relating to the sale, distribution, or delivery of e-cigarettes.

116.    The PACT Act requires any person that in interstate commerce sells, transfers, ships for profit, advertises or offers for sale, transfer, or shipment FDVs into a locality taxing the sale or use of cigarettes to comply with specific tax collection and package-labeling requirements, as if the delivery sale occurred entirely within that locality.

117.    Accordingly, the PACT Act requires any delivery seller making a delivery sale of e-cigarettes to a New York City consumer in New York City to, *inter alia*:

    a.  Comply with all laws governing the sale of FDVs in New York City and/or State. 15 U.S.C. § 376a(a)(3);

    b.  File with the officials of New York City designated by the PACT Act all reports required by the PACT Act.

    c.  Make certain that all applicable cigarette taxes have been paid to each jurisdiction into which the delivery sale is made. 15 U.S.C. §§ 376a(a)(4), (d);

    d.  Assure that the weight of FDVs sold, delivered, or caused to be delivered in a single sale or delivery does not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3);

    e.  Place notices identifying the package contents as cigarettes on the outside of the packages involved in FDV delivery sales. 15 U.S.C. §§ 376a (a), (b)(1), (2); and

    f.  Deliver FDVs by a method that requires the person to whom the delivery is made to provide age verification to the delivery service.  15 U.S.C. §§ 376a (a), 376a (b)(4).

118.    FDV sales made by Magellan, Demand Vape, Empire Vape, Star Vape and Dorbes  are sales to a consumer within the meaning of the PACT Act, 15 U.S.C. § 375(4) because no person purchasing FDVs from any defendant was a "lawfully operating" manufacturer, distributor, wholesaler, or retailer of cigarettes …." by reason of each purchasers' multiple violations of the law, including but not limited to violations of:

(i)      Tobacco Control Act

(ii)     PHL §1399-*ll*

(iii)    PHL §1399-mm-(1)

(iv)     NYC Ad. Code § 17-715(b)

(v)      Applicable tax laws

(vi)     the PACT Act itself

(vii)    RICO, 18 U.S.C. § 1961 *et seq*.

119.    FDV sales by Magellan, Demand Vape, Empire Vape, Star Vape and Dorbes are delivery sales within the meaning of the PACT Act because Magellan, Demand Vape, Empire Vape, Star Vape and/or Dorbes were not in the physical presence of the buyer when the orders were placed or delivered, or the deliveries were made by a means of remote delivery. *See* 15 U.S.C. § 375(5).

120.    Magellan, Demand Vape, Empire Vape, Star Vape and/or Dorbes each violate the PACT Act because in none of their delivery sales of FDVs to consumers did Magellan, Demand Vape, Empire Vape, or Star Vape identify the package contents on the outside of the packages as cigarettes.

121.    Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes each violate the PACT Act because their delivery sales of FDVs to consumers were of flavored vape products sold in violation of PHL § 1399-mm and Ad. Code § 17-715 (b) and thus did not comply with all laws governing the sale of FDVs in New York City and/or State, as required by 15 U.S.C. § 376a(a)(3).

122.    Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes each violate the PACT Act because in none of their delivery sales of FDVs to consumers did Magellan,

Demand Vape, Empire Vape, or Star Vape utilize a method of delivery requiring an adult signature upon delivery.

123.   All FDV sales by each of Magellan, Demand Vape, Empire Vape, and/or Star Vape violate the PACT Act because with respect to their delivery sales of FDVs to consumers Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes did not register as a delivery seller with the Attorney General of the United States or with the tobacco tax administrators of New York City and State.

124.   All FDV sales by each of Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes violate the PACT Act because with respect to their delivery sales of FDVs to consumers Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes did not report on the tenth day of each month their delivery sales in a memorandum to New York State, the New York City Department of Finance, and the Corporation Counsel of the City of New York.

125.   All FDV sales by each of Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes violate the PACT Act because no defendant made certain that all applicable taxes had been paid to each jurisdiction into which the delivery sale is made.

126.   All FDV sales by each of Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes violate the PACT Act because no defendant made certain that the weight of FDVs sold, delivered, or caused to be delivered in a single sale or delivery did not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3).

## **Allegations Related to RICO** .

127.   It is unlawful for any person employed by or associated with an enterprise engaged in or affecting interstate or foreign commerce to conduct or participate, directly or

indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1961 *et seq.*

128.     At all times relevant to this complaint, Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes have each been an enterprise within the meaning of 18 U.S.C. § 1961(4). Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes each engage in, and its activities affect, interstate or foreign commerce.

129.     Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes also operate jointly as an association-in-fact enterprise, hereafter referred to as the "FDV Enterprise." The FDV Enterprise engages in, and its activities affect, interstate or foreign commerce. Magellan, Demand Vape, Empire Vape, Star Vape, and/or Dorbes, and others unknown form an association in fact enterprise by functioning as a supply chain in which, *inter alia*, Magellan purchases for and directly supplies Demand Vape with FDVs, and Magellan and/or Demand Vape directly or indirectly supply Hyde brand FDVs to Empire Vape and Star Vape, which in turn supply consumers and/or retail stores with FDVs sold in New York City.

130.     At all times relevant to this complaint, Matthew J. Glauser, Donald Hashagen, Nikunj Patel, Devang Koya, Nabil Hassen, and Christian A. Smith (when referred to collectively, the "Individual Defendants") have each been a "person" associated with or a member of one or more of Magellan, Demand Vape, Empire Vape, Star Vape, or the FDV Enterprise.  Each Individual Defendant has operated or managed one or more of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or the FDV Enterprise through a pattern of racketeering activity.

## Predicate Offenses/ Racketeering Acts

131.    A mail or wire fraud violation is a RICO predicate offense. Any act indictable under 18 U.S.C. §§ 1341, 1343 *et seq*., *i.e*., mail and wire fraud is "racketeering activity" within the meaning of the RICO statute. *See* 18 U.S.C. § 1961(1).

132.    Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes each engage as a discrete enterprise in marketing, selling and distributing FDVs, including but not limited to sales of FDVs to New York City consumers that i) conceal from New York City officials the defendants' status as delivery sellers; ii) conceal from New York City officials the details of defendants' FDV delivery sales into New York City; and iii) conceal the fact that packages of FDVs defendants ship into the City contain cigarettes or vapor products.

133.    While associated with or a member of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes and/or the FDV Enterprise each Individual Defendant engages in the marketing, sale and distribution of FDVs, including but not limited to sales of FDVs over the Internet to New York City residents, by knowingly and intentionally directing one or more of the defendant enterprises or the FDV Enterprise to sell, ship and distribute FDVs to New York City residents while i) concealing from New York City officials each enterprise's status as a delivery seller of FDVs; ii) concealing the details of the delivery sales themselves; and iii) concealing the fact that the packages contain cigarettes or vapor products.

134.    Each delivery sale of an FDV to a New York City resident constitutes a violation of the mail or wire fraud statute and an act of racketeering as defined by the RICO statute. Each defendant enterprise and/or the FDV Enterprise committed more than two racketeering acts during the ten years preceding the filing of this complaint.

135.    The acts constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 consisting of two or more acts of racketeering activity having a common purpose within a ten-year period.

**The Purposes, Methods, and Means of Each Enterprise**

136.    The principal purpose of each defendant enterprise, *i.e.*, the Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or the FDV Enterprise has been to generate money for the enterprise and its members or associates by violating laws governing the shipment, distribution, and sale of FDVs in New York City and State. Each Individual Defendant, while a member or associate of one or more of the defendant enterprises or the FDV Enterprise sought to and did participate in achieving that purpose through various activities intended to earn money through concealed sales of FDVs to persons in New York City.

137.    At all times relevant to this complaint, without registering as a delivery seller, or providing the required documentation for FDV sales into New York City, or identifying shipments as containing cigarettes or vapor products, Magellan, Demand Vape, Empire Vape, Star Vape, and/or the FDV Enterprise received remote orders for FDVs from New York City residents and filled those orders knowing and intending that FDVs would be shipped, distributed and sold to New York City residents in shipments that defendants concealed from City officials.

138.    At all times relevant to this complaint each Individual Defendant participated in the conduct of the affairs of one of more of the defendant enterprises or the FDV Enterprise by operating or managing one or more of the enterprises to market, sell, ship, and distribute FDVs into New York City, or arrange therefor, while concealing the sales and shipments from City officials.

139.    At all times relevant to this complaint each Individual Defendant conducted the affairs of one or more of the defendant enterprises or the FDV Enterprise through a pattern of

racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), consisting principally of multiple and continuing instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 by concealing from City officials each enterprise's shipments of FDVs into New York City.

### Role of the Individual Defendants

140.    At all times relevant to this complaint, each Individual Defendant participated in the management and operation of one or more of the defendant enterprises or the FDV Enterprise by, among other things:

    a.   Engaging in the long-term planning and day-to-day activities required to sell, ship and distribute FDVs to New York City;

    b.   Arranging for one of more of the enterprises to sell, ship, transport and distribute FDVs to New York City residents or consumers;

    c.   Receiving orders for FDVs, and arranging for their sale by one or more of the defendant enterprises or the FDV Enterprise into New York City without i) registering as a delivery seller; ii) providing the information detailing each FDV delivery; and iii) identifying the contents of the deliveries as FDVs;

    d.   Engaging in the advertising and sale of FDVs over the Internet;

    e.   Employing and instructing other individuals to engage in all the above activities.

### Injury To Business or Property

141.    The City has sustained injury to its business or property, including but not limited to a growing hazardous waste problem caused by defendants' improperly disposed-of FDVs in parks and other City property.  The City has been forced to handle and dispose of FDVs and other illegal vape devices containing contain toxic chemicals designated as hazardous waste that must be disposed-of at greater cost to the City by special procedures required by law for hazardous waste. The City has also been forced to develop effective methods to address the toxic

electronic waste generated by e-cigarette devices and batteries.  The City further has been forced to take other steps and incurred additional costs to mitigate the harms to the public health caused by defendants' sales of FDVs into New York City.

## Allegations Related to Conspiracy to Violate RICO

142.    At all times relevant to this complaint, the Individual Defendants conspired among themselves and/or with others unknown to violate the provisions of 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d) by agreeing to further endeavors of one or more of the defendant enterprises or the FDV Enterprise that when completed, constituted mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

143.    At all times relevant to this complaint, each Individual Defendant agreed to a plan whereby one or more of the defendant enterprises or the FDV Enterprise would operate as a delivery seller of FDVs, obtain large quantities of FDVs to be sold to the New York City public without i) registering as a delivery seller; ii) providing to New York City officials information detailing each FDV delivery; and iii) failing to identify defendants' packages containing FDVs as cigarettes or vapor products.

144.    At all times relevant to this complaint, each Individual Defendant agreed that one or more of the defendant enterprises or the FDV Enterprise, each of which is an enterprise engaged in, and the activities of which affected, interstate or foreign commerce, would knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly and indirectly, in the conduct of the affairs of one or more of the defendant enterprises or the FDV Enterprise through a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(1), (5) consisting of acts of mail and wire fraud.

145.     Each Individual Defendant recognized that an essential element of their plan consisted of multiple violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. Each Individual Defendant agreed that certain of them would commit violations while others would engage in conduct intended to support and facilitate the violations and further agreed that certain conspirators would commit at least two acts of racketeering while conducting the affairs of one or more of the defendant enterprises or the FDV Enterprise.

### Allegations Related to Violation of N.Y. PHL § 1399-*ll*

146.     N.Y. PHL § 1399-*ll* (1) provides that in New York State, FDVs may be sold other than in face-to-face transactions only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government. Pursuant to N.Y. PHL 1399-*ll* a person engaged in the business of selling vapor products may deliver vapor products only to a person in the above categories and that holds a Vape Certificate.

147.     The FDVs sold by the defendants over the Internet were not shipped to an entity permitted by N.Y. PHL 1399-*ll* to receive remote cigarette deliveries and that holds a Vape Certificate.

148.     The defendants knowingly distributed FDVs to persons that do not hold Vape Certificates and/or that are not permitted by N.Y. PHL 1399-*ll* to receive remote cigarette deliveries.

149.     By knowingly delivering FDVs to persons in New York City other than those designated as the permissible recipients of vapor products set forth in PHL § 1399-*ll*, the defendants violated N.Y. PHL § 1399-*ll*.

## Allegations Related to Public Nuisance

150.   New York public policy against marketing e-cigarette products to minors is expressed in statutes and regulations, including but not limited to:

    i)    Public Health Law ("PHL") § 1399-bb(4), which prohibits any "person engaged in the business of selling or otherwise distributing electronic cigarettes" from providing free samples to anyone under 21 years of age

    ii)    PHL § 1399-cc(2)-(3) (prohibiting the sale of electronic cigarettes to persons under 18 years of age, amended in July 2019, to prohibit sales to those less than 21 years of age);

    iii)    PHL § 1399-dd, which places restrictions on the sale of electronic cigarettes from vending machines to prevent access by underage individuals; and

    iv)    PHL § 1399-dd-1, which places restrictions on electronic cigarette advertising in the proximity of schools.

151.   New York public policy against marketing electronic nicotine delivery devices to minors is further expressed in the New York State and City flavor bans, which are principally intended to prevent the use of electronic nicotine delivery devices by youth.  Pursuant to PHL §1399-mm-(1), no vapor products dealer shall sell or offer for sale at retail in New York any flavored vapor product to be used in the consumption of nicotine. Pursuant to New York City Administrative Code § 17-715 (b), it is unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

152.   Defendants' products create a growing hazardous waste problem from improper disposal in public places of devices containing chemicals that can be toxic or fatal if ingested in concentrated forms.[44]

---

[44] *See, e.g., How do I dispose of a JUUL pod?*, JUUL Labs, Inc., https://support.juul.com/hc/enus/ articles/360023529793-How-do-I-dispose-of-a-JUULpod- (last visited Mar. 3, 2020) ("JUUL pods should be recycled along with other e-waste."); American Acad. of Pediatrics, *Liquid Nicotine Used in E-Cigarettes Can Kill Children*, healthychildren.org, https://www.healthychildren.org/english/safety-prevention/at-home/pages/liquidnicotine-used-in-e-cigarettes-can-kill-children.aspx (last visited Mar. 3, 2020).

153.     FDVs and other illegal vape devices contain toxic chemicals that cannot be safely disposed of in the normal waste stream but must be disposed of as hazardous waste. The lithium-ion batteries powering the devices cannot be safely disposed of in the normal trash stream.[45]

154.     The defendants' sale and distribution of FDVs thus violates a host of federal, New York State and New York City laws representing the public policy of New York State and City and defendants' conduct injures the health and safety of a large number of persons in New York City.

155.     Defendants' conduct has accordingly created a public nuisance by unreasonably injuring the property, health, safety or comfort of a considerable number of New York City residents by creating a public health and safety hazard in the City through the promotion, distribution, marketing and sale of products that cause persistent youth and rising young adult addiction to nicotine, and potentially or actually contaminates City parks and public places with hazardous wastes.

156.     Defendants' conduct in marketing, distributing, and selling FDVs has been a substantial factor in bringing about the above-described public nuisance. But for Defendants' actions, FDV use by youth in the City would not be as widespread as today and the City would not be presented with the hazardous waste disposal burdens imposed by defendants' products.

## FIRST CLAIM FOR RELIEF

### Violation of the Prevent All Cigarettes Trafficking Act

157.     The City realleges paragraphs 1-156 above as if fully set forth herein.

---

[45] *See, e.g.*, JUUL Labs, Inc. (2020), https://support.juul.com/hc/en-us/articles/360023319614-What-kind-ofbattery-is-in-the-device- (last visited Feb. 3, 2020) ("JUUL uses a lithium-ion polymer battery. All portable electronics containing lithium-ion batteries present rare, but potentially serious safety hazards."); JUUL Labs, Inc. (2020), https://support.juul.com/hc/en-us/articles/ 360023366194-How-do-I-dispose-of-a-JUUL-device- (last visited Mar. 13, 2020) ("Unlike other e-cigarettes, JUUL isn't disposable and should be treated as a consumer electronic device. Follow your city's local recommendations for disposing of a lithium-polymer rechargeable battery.").

158.    At all times relevant to this complaint, without complying with the requirements for delivery sales, each of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and Smith made delivery sales of FDVs to consumers located in New York City by remote sales, transfers, shipments for profit, advertisements and/or offers to sell, transfer, or ship.

159.    As a direct result of the foregoing violations of the PACT Act by Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and Smith the City has suffered and continues to suffer damages, including money damages, including but not limited to the public health consequences of youth addiction and the required disposal of illegal vape products pursuant to the rules governing hazardous waste.

160.    Pursuant to the PACT Act, 15 U.S.C. § 375 *et seq*., the City, as a local government imposing a tax on cigarettes, is empowered to bring an action in federal district court to prevent and restrain violations of the PACT Act, and to obtain any other appropriate forms of relief, including civil penalties, equitable remedies, including but not limited to disgorgement of profits, and damages.

161.    The foregoing violations of the PACT Act by Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and Smith are ongoing and will continue into the future unless enjoined.

## SECOND CLAIM FOR RELIEF

### Violation of 18 U.S.C. § 1962(c)

162.    The City realleges paragraphs 1-161 as if fully set forth herein.

163.    New York City is a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

164.    Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes and the FDV Enterprise is each an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. §§

1962(c).  Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and the FDV Enterprise each engage in activities affecting interstate commerce and have done so at all times relevant to this complaint.

165.    Each Individual Defendant is a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

166.    Each Individual Defendant is associated with or employed by one or more of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or the FDV Enterprise. Each Individual Defendant conducts or participates in the management and operation of the affairs of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or the FDV Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), namely, multiple and repeated acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

167.    The acts of mail and wire fraud engaged in by Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or the FDV Enterprise constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the acts are related to one another, continuous and connected to one another as part of a plan to accomplish the uniform purpose of earning money from the sale and distribution of FDVs.  The repeated nature of the conduct and the threat of similar conduct occurring in the future make the acts continuous.

168.    New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(c) by Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes and/or the FDV Enterprise in that the City has been forced to incur expenses to eliminate the deleterious effects of FDVs on the City and its residents.

## THIRD CLAIM FOR RELIEF

### Violation of § 1962(d)

169.    The City realleges paragraphs 1-168 as if fully set forth herein.

170.    New York City is a "person" as defined in 18 U.S.C. § 1961(3).

171.    Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes and/or the FDV Enterprise is each an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. §§ 1962(d). Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and the FDV Enterprise each engage in activities affecting interstate commerce and have done so at all times relevant to this complaint.

172.    Each Individual Defendant is a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

173.    The Individual Defendants conspired with one another and/or with others as yet unknown to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or the FDV Enterprise through a pattern of acts that, when completed, would satisfy all of the elements of a racketeering act, to wit, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

174.    With knowledge that Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and the FDV Enterprise would engage in multiple and repeated acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, each Individual Defendant agreed among themselves and with others unknown that the affairs of Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and the FDV Enterprise would be conducted without registering as delivery sellers with City officials, without providing to City officials the required documentation regarding defendants' FDV sales into the City, and without identifying the package contents as cigarettes

or vapor products, all intended to conceal their illegal sale and distribution of FDVs in and into New York City.

175.   The scheme to sell and distribute FDVs in New York City without registering or providing required documentation or identifying package contents constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).   The acts are related, continuous, and connected to one another as part of a plan to accomplish a uniform purpose, which is the profiting from the sale of FDVs in New York City.   The repeated nature of the conduct during the period of the scheme and the threat of similar conduct occurring in the future make the acts continuous.

176.   New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(d).

### FOURTH CLAIM FOR RELIEF

**Violation of the N.Y. Pub. Hlth. L. §§ 1399-*ll***

177.   The City realleges paragraphs 1-176 as if fully set forth herein.

178.   PHL § 1399-*ll* (1) provides that in New York State FDVs may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government.

179.   PHL § 1399-*ll* (1) further provides that when a person engaged in the business of selling vapor products ships or causes to be shipped to any person in this state any vapor products intended or reasonably expected to be used with or for the consumption of nicotine, other than in the vapor products manufacturer's original container or wrapping, the container or wrapping must be plainly and visibly marked with the words "vapor products."

180.     Defendants knowingly shipped and/or caused to be shipped FDVs to persons in New York City whom those defendants knew were not (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government, who were not holders of Vape Certificates and in packages not marked with the words "vapor products."

181.     By knowingly shipping or causing to be shipped FDVs to persons in New York City and State other than those designated as the permissible recipients of cigarette deliveries set forth in N.Y. PHL § 1399-*ll*, defendants violated N.Y. PHL § 1399-*ll*.

182.     The City's corporation counsel is entitled to recover on behalf of the City the civil penalties provided by N.Y. PHL § 1399-*ll* (5) and to obtain such other relief as may be deemed necessary with respect to any cigarettes or vapor products shipped or caused to be shipped in violation of N.Y. PHL § 1399-*ll* to any person located within such political subdivision.

## FIFTH CLAIM FOR RELIEF

### Public Nuisance

183.     The City realleges paragraphs 1-182 as if fully set forth herein.

184.     Pursuant to PHL 1399-mm-(1), flavored vape products that are intended or reasonably expected to be used with or for consuming nicotine are banned from sale or being offered for sale at retail in New York State.

185.     Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes sell and offer for sale at retail flavored vapes thereby causing or contributing to a public nuisance, *i.e.*, a condition injurious to the health, safety, and welfare of large numbers of City residents through conduct that is ongoing, likely to produce permanent and long-lasting injury, and likely to continue indefinitely.

186.   By violating the ban on offering or selling at retail flavored vape products that was enacted by the New York State legislature on the basis of research showing that flavored vape products promote nicotine addiction in school-age children and others the harm to the public of the City is substantial, unreasonable, widespread, and ongoing, and outweighs any potential benefit of defendants' wrongful conduct.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against defendants as follows:

a. On the First Claim For Relief, pursuant to the PACT Act, 15 U.S.C. § 375 *et seq.* (i) permanently enjoining Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes and Smith from violating the PACT by engaging in delivery sales with consumers that do not meet all of the requirements of the PACT Act; (ii) ordering Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes to pay the City the civil penalties provided for by the PACT Act;

b. On the Second Claim For Relief, pursuant to the RICO statute, 18 U.S.C. § 1962(c) *et seq*., ordering Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes to pay the City three times the amount of the City's damages, together with attorneys' fees, caused by the defendants having conducted an enterprise through a pattern of racketeering activity;

c. On the Third Claim for relief, pursuant to the RICO statute, 18 U.S.C. § 1962(d), ordering Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes to pay the City three times the amount of the City's damages, together with attorneys' fees, caused by the defendants' having conspired to conduct an enterprise through a pattern of racketeering activity;

d. On the Fourth Claim For Relief, (i) permanently enjoining defendants from violating N.Y. Pub. Hlth. L. § 1399-*ll* by making remote sales of FDVs to unauthorized recipients; (ii) ordering defendants to pay the City the penalties provided for by N.Y. Pub. Hlth. L. § 1399-*ll*;

e. On the Fifth Claim For Relief, declaring that Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and Smith have caused, maintained and contributed to a public nuisance and requiring those defendants to abate the nuisance; and

   f. Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
    August 17, 2023

            **Hon Sylvia O. Hinds-Radix**
            Corporation Counsel of the
             City of New York
            Attorney for Plaintiff the City of New York
            100 Church Street, Room 20-99
            New York, New York 10007
            (212) 356-2032

     By: _____
        Eric Proshansky
        Krista Friedrich
        Elizabeth Slater
        Assistant Corporation Counsel