UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

The City of New York,                                   :

                                                        :        Case No. 1:23-cv-05880-LLS-OTW
            Plaintiff,                                  :
                                                        :
    -against-                                           :
                                                        :
Magellan Technology, Inc., et al.,                      :
                                                        :
            Defendants.                                 :
                                                        :
                                                        :
-------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MAGELLAN TECHNOLOGY, INC., ECTO WORLD, LLC, AND MATTHEW J. GLAUSER'S MOTION TO DISMISS

Eric N. Heyer (admitted *pro hac vice*)
Joseph A. Smith (admitted *pro hac vice*)
Anna Stressenger (admitted *pro hac vice*)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, DC 20036
Phone: 202.331.8800

Richard De Palma
THOMPSON HINE LLP
300 Madison Avenue
27th Floor
New York, NY 10017
Phone: 212.908.3969

*Counsel for Defendants Magellan Technology, Inc.; Ecto World, LLC, and Matthew J. Glauser*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

A.  FDA Regulation of Electronic Cigarettes ............................................................. 4

B.  New York State and New York City Regulation of Electronic Cigarettes. ........... 6

C.  The City's First Amended Complaint .................................................................... 6

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

A.  The City Fails to Plead a Plausible Claim for Violations of the PACT Act ......... 8

   1.  The City does not have standing to assert a PACT Act claim
       relating to electronic cigarettes because the City has not adopted an
       excise tax on electronic cigarettes. ........................................................... 8

   2.  The City has not alleged facts that would support a finding that
       Magellan and Demand Vape violated the PACT Act's reporting
       requirements. ............................................................................................. 9

   3.  The City has not alleged facts that would support a finding that
       Magellan and Demand Vape violated the PACT Act's delivery
       sales requirements. .................................................................................. 10

       a.  The City has not alleged facts showing Magellan or
           Demand Vape sold electronic cigarettes to "consumers." ........... 10

       b.  The City has not identified any sales by Magellan or
           Demand Vape that violated the PACT Act's requirements
           for "delivery sales." .................................................................... 13

B.  The City Fails to Plead a Plausible Claim for Violations of the RICO Act. ....... 14

   1.  The City's RICO Act claim fails because the City has not alleged
       that Defendants engaged in a fraudulent scheme to obtain money
       or property from the City. ........................................................................ 15

   2.  The City's RICO Act claim also fails because the City cannot
       show that Defendants' alleged actions caused the City's injuries. .......... 17

       a.  The City has not alleged facts that would establish "but for"
           causation. ................................................................................... 17

       b.  The City has not alleged facts showing proximate
           causation. ................................................................................... 19

Page

|  | 3. | The City's RICO Act claim also fails because the City has not identified specific instances of Defendants using mail carriers or interstate wires. | 21 |
| C. | | The City Fails to Plead a Plausible Claim for RICO Conspiracy. | 22 |
| D. | | The City Fails to Plead a Plausible Claim for Violations of N.Y. Public Health Law  § 1399-ll. | 22 |
|  | 1. | The City lacks standing to allege a violation of Section 1399-ll. | 22 |
|  | 2. | The City fails to allege facts supporting a violation of Section 1399-ll(1). | 23 |
| E. | | The City Fails to Plead a Plausible Public Nuisance Claim. | 24 |
| CONCLUSION | | | 26 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)...............................................................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................7, 14, 26

*Bascuna v. Elsaca*,
    927 F.3d 108 (2d Cir. 2019)...................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................7, 26

*Blair Candy Co. v. Altoona Area Sch. Dist.*,
    613 A.2d 159 (Pa. Commw. 1992) ..........................................................................................9

*Bostock v. Clayton Cty.*,
    140 S. Ct. 1731 (2020).............................................................................................................17

*Bragg v. Matanuska-Susitna Borough*,
    192 P.3d 982 (Alaska 2008).....................................................................................................9

*Breeze Smoke, LLC v. FDA*,
    18 F.4th 499 (6th Cir. 2021) ....................................................................................................2

*Ciminelli v. United States*,
    143 S. Ct. 1121 (2023).............................................................................................................15

*Cleveland v. United States*,
    531 U.S. 12 (2000)...................................................................................................................15

*Cook v. United States*,
    86 F.3d 1095 (Fed. Cir. 1996)..................................................................................................9

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
    902 F.3d 132 (2d Cir. 2018)...................................................................................................20

*Frederickson v. Luedtke Const. Co.*,
    427 F. Supp. 1309 (W.D. Mich. 1977) ..................................................................................12

*George v. Uninsured Empirs. Fund (In re George)*,
    361 F.3d 1157 (9th Cir. 2004) ..................................................................................................9

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010)...........................................................................................................19, 20

*Hicksville Water Dist. v. Philips Elec. North Am. Corp.*,
  No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342 (E.D.N.Y. Mar.
  29, 2018) ...............................................................................................................................24

*Holistic Candlers & Consumers Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012)...............................................................................................5

*Holmes v. Securities Investor Protection Corp.*,
  503 U.S. 258 (1992)..............................................................................................................17

*J.T. v. de Blasio*,
  500 F. Supp. 3d 137 (S.D.N.Y. 2020)......................................................................................8

*Johnson v. United States*,
  529 U.S. 694 (2000)..............................................................................................................12

*Kelly v. United States*,
  140 S. Ct. 1565 (2020).................................................................................................15, 16, 17

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004)..................................................................................................................13

*Lexmark Int'l v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)..............................................................................................................19

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
  171 F.3d 818 (3d Cir. 1999)..................................................................................................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013)....................................................................................................24

*Petitt v. Celebrity Cruises*,
  153 F. Supp. 2d 240 (S.D.N.Y. 2001)..............................................................................17, 19

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) .............................................................................................19

*Salute v. Stratford Greens Garden Apartments*,
  135 F.3d 293 (2d Cir. 1998)..................................................................................................12

*Targum v. Citrin Cooperman & Co., LLP*,
  No. 12-cv-6909, 2013 U.S. Dist. LEXIS 164585 (S.D.N.Y. Nov. 19, 2013)..........................21

*United States v. Figueroa*,
  165 F.3d 111 (2d Cir. 1998)..................................................................................................13

*United States v. Thompson/Center Arms Co.*,
   504 U.S. 505 (1992)...............................................................................................................13

*Vapor Tech. Ass'n v. FDA*,
   977 F.3d 496 (6th Cir. 2020) ...............................................................................................4

*Vicon Fiber Optics Corp. v. Scrivo*,
   201 F. Supp. 2d 216 (S.D.N.Y. 2002)..........................................................................17, 22

*Wade Park Land Holdings, LLC v. Kalikow*,
   589 F. Supp. 3d 335 (S.D.N.Y. 2022)..................................................................................8

**Statutes**

15 U.S.C. § 375.......................................................................................................3, 9, 10, 11

15 U.S.C. § 376.................................................................................................................. *passim*

15 U.S.C. § 376a.....................................................................................................8, 9, 10, 14

15 U.S.C. § 377......................................................................................................................13

15 U.S.C. § 378........................................................................................................................9

18 U.S.C. § 1341..............................................................................................................15, 21

18 U.S.C. § 1343..............................................................................................................15, 21

18 U.S.C. § 1961................................................................................................................3, 14

18 U.S.C. § 1962..............................................................................................................14, 22

18 U.S.C. § 1964....................................................................................................................17

21 U.S.C. § 387g.......................................................................................................................5

21 U.S.C. § 387j........................................................................................................................4

N.Y. Public Health Law § 1399-aa...............................................................................6, 23

N.Y. Public Health Law § 1399-bb ...................................................................................6

N.Y. Public Health Law § 1399-cc ..................................................................................12

N.Y. Public Health Law § 1399-*ll* ........................................................................... *passim*

N.Y. Public Health Law § 1399-mm-1 ................................................................6, 25, 26

N.Y. Public Health Law § 1399-oo .............................................................................................23

N.Y. Tax Law § 1183 ...........................................................................................................11, 13

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .............................................................................................8

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................7

81 Fed. Reg. 28974 (May 10, 2016) ..............................................................................................4

24 R.C.N.Y. § 28-02(b) ...................................................................................................................6

N.Y.C. Admin. Code § 11-1301 .....................................................................................................9

N.Y.C. Admin. Code § 11-1302 ...............................................................................................9, 22

N.Y.C. Admin. Code § 11-2001 .....................................................................................................9

N.Y.C. Admin. Code § 17-176 .......................................................................................................9

N.Y.C. Admin. Code § 17-702 .......................................................................................................9

N.Y.C. Admin. Code § 17-706 .......................................................................................................6

N.Y.C. Admin. Code § 17-715 .......................................................................................................6

N.Y.C. Admin. Code § 20-561(a) .................................................................................................11

A. Friedman, et al., *E-cigarette Flavor Restrictions Effects on Tobacco Product Sales* (Sept. 26, 2023), available at
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586701 ..........................................3, 18

CDC, *QuickStats: Percentage Distribution of Cigarette Smoking Status Among Current Adult E-Cigarette Users, by Age Group—National Health Interview Survey* (Mar. 10, 2023), https://perma.cc/TYR8-9KUV .............................................................3

Health Statistics, *Early Release of Selected Estimates Based on Data from the 2022 National Health Interview Survey* (Apr. 23, 2023),
https://perma.cc/D25X-2ASE ........................................................................................................2

National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes* (2018) .......................................................................................1

## INTRODUCTION

Defendants Magellan Technology, Inc. ("Magellan") and Ecto World LLC d/b/a Demand Vape ("Demand Vape"), are Buffalo, New York-based businesses engaged in the nationwide and international business-to-business sale and distribution of electronic cigarettes. *See* First Amended Complaint ("FAC"), ECF No. 20, ¶¶ 23-24. Defendant Matthew J. Glauser ("Glauser") is an officer of Magellan and Demand Vape. *Id*., ¶ 25.[1]

Electronic cigarettes are hand-held devices that enable a user to inhale an aerosol that contains nicotine.[2] Unlike traditional cigarettes, electronic cigarettes do not burn tobacco leaf or any other substance through combustion; rather, a nicotine-containing liquid (called "e-liquid") is heated by a battery-powered heating element and aerosolized to create the resulting "vapor" that users can inhale.[3]

Because electronic cigarettes do not expose users to toxins that are created by the burning of tobacco leaf, they present fewer health risks than do traditional cigarettes. *See, e.g.*, National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*,

---

[1] Movants Magellan, Demand Vape, and Glauser are collectively referred to herein as "Defendants."

[2] Electronic cigarettes are also referred to a "e-cigarettes," "electronic nicotine delivery systems" and "ENDS."

[3] The photograph below from the U.S. Food and Drug Administration's website shows examples of different types of electronic cigarettes:



National Academies Press, Summary at 1 (2018) ("While e-cigarettes are not without health risks, they are likely far less harmful than combustible tobacco cigarettes."); *accord Breeze Smoke, LLC v. FDA*, 18 F.4th 499, 505 (6th Cir. 2021) (noting that e-cigarettes "may provide a beneficial alternative to combustible cigarettes because they deliver nicotine without also bombarding the user's lungs with the toxins found in cigarettes"). The U.S. Food and Drug Administration ("FDA") itself has concluded that electronic cigarettes "are generally likely to have fewer and lower concentrations of harmful and potentially harmful constituents (HPHCs) than combustible cigarettes, and biomarker studies demonstrate significantly lower exposure to HPHCs among current exclusive [electronic cigarette] users than current smokers." *Wages and White Lion Investments L.L.C. v. FDA*, No. 21-60766, Joint Appendix at 92 (5th Cir. Jan. 14, 2022) (FDA Technical Project Lead Review of PMTAs issued to Wages & White Lion Investments LLC (citing National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, National Academies Press; 2018)).

According to the Centers for Disease Control ("CDC'), nearly six percent of U.S. adults currently use electronic cigarettes, whereas over eleven percent currently smoke combustible cigarettes.[4] Nationally, an overwhelming majority of electronic cigarette users use non-tobacco flavored electronic cigarettes.[5] And, most adult electronic cigarette users are former or current

---

[4] CDC, National Center for Health Statistics, *Early Release of Selected Estimates Based on Data from the 2022 National Health Interview Survey* (Apr. 23, 2023), https://perma.cc/D25X-2ASE.

[5] *See Wages and White Lion Investments L.L.C. v. FDA*, No. 21-60766, Joint Appendix at 88 (5th Cir. Jan. 14, 2022) (FDA Technical Project Lead (TPL) Review of PMTAs issued to Wages & White Lion Investments LLC (citing Schneller LM, Bansal-Travers M, Goniewicz ML, McIntosh S, Ossip D, O'Connor RJ. Use of Flavored E-Cigarettes and the Type of E-Cigarette Devices Used among Adult and Youth in the US-Results from Wave 3 of the Population Assessment of Tobacco and Health Study (2015-2016). *Int J Environ Res Public Health.* 2019; 16(16))) (FDA stating that approximately 77% of adult electronic cigarette users use non-tobacco flavored electronic cigarettes).

combustible cigarette smokers, including 92.8% of users over 45 years old—the age group most susceptible to near-term adverse health impacts from smoking combustible cigarettes.[6]

Despite the significant harm reduction potential of electronic cigarettes—including flavored electronic cigarettes—both the State and the City of New York have banned the retail sale of flavored electronic cigarettes to consumers. Even though FDA-funded researchers at Yale University's School of Public Health recently concluded that "any public health benefits of reducing [e-cigarette] use via flavor restrictions may be offset by public health costs from increased cigarette sales,"[7] the City of New York has filed this suit against Defendants and others, accusing them of violating federal and state statutes and of engaging in a public nuisance by selling flavored electronic cigarettes in New York City.

The City's histrionics[8] notwithstanding, the City's First Amended Complaint fails to state *any* plausible claim against Magellan, Demand Vape, or Glauser. As explained herein, the City lacks standing to assert a violation of the Prevent All Cigarette Trafficking Act of 2009, 15 U.S.C. § 375, *et seq.* ("PACT Act"), fails to allege facts that would support a finding that Magellan or Demand Vape violated the PACT Act's reporting requirements, and fails to allege that Magellan or Demand Vape violated the PACT Act's requirements relating to "delivery sales." The City fails to state a plausible Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.* ("RICO Act"), claim or RICO Act conspiracy because there is no allegation that Defendants

---

[6] CDC, *QuickStats: Percentage Distribution of Cigarette Smoking Status Among Current Adult E-Cigarette Users, by Age Group—National Health Interview Survey* (Mar. 10, 2023), https://perma.cc/TYR8-9KUV.

[7] A. Friedman, et al., *E-cigarette Flavor Restrictions Effects on Tobacco Product Sales* (Sept. 26, 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586701.[7]

[8] At a press conference announcing the filing of this action, the Mayor of the City of New York accused Defendants of "poison[ing] our children," the City's Corporation Counsel falsely claimed that "[m]any of the Defendants' products come in cartoon characters packaging that are so friendly to children [they require] a cautionary label that it is a not a toy," and another speaker alleged that Defendants are "gangsters" and "bloodthirsty profiteers." *See https://perma.cc/R7XU-RB5H.*

engaged in a fraudulent scheme to obtain money or property from the City or that Defendants'

alleged actions caused the City's claimed injuries. The City also fails to specifically plead instances

of Defendants' alleged use of mail carriers or interstate wires. The City similarly lacks standing to

allege a violation of Section 1399-*ll* of the New York Public Health Law and fails to allege a

plausible claim under Section 1399-*ll*(1) in any event, as Defendants are not accused of shipping

"cigarettes." The City's public nuisance claim is rooted in the allegation that Defendants engage

in the retail sale of electronic cigarettes to consumers, but the City makes no specific factual

allegations to support those claims. Indeed, the City specifically amended its original Complaint

to drop de-bunked allegations that Defendants unlawfully sold electronic cigarettes to New York

consumers through an online retail website.

As explained in detail herein, the First Amended Complaint fails to state a plausible claim

against Magellan, Demand Vape, and Glauser, and thus should be dismissed with prejudice.

## BACKGROUND

### A.     FDA Regulation of Electronic Cigarettes

FDA began regulating electronic cigarettes as "tobacco products" under the federal Food,

Drug, and Cosmetic Act ("FDCA") in August 2016. *See* 81 Fed. Reg. 28974 (May 10, 2016).  As

a result, those wishing to market electronic cigarettes must file a premarket tobacco application

("PMTA") with and obtain a marketing granted order from FDA before going to market. *See* 21

U.S.C. § 387j.  However, because millions of electronic cigarettes were already on the market prior

to August 2016, FDA's policy has been to exercise "enforcement discretion" for electronic

cigarettes with timely-filed PMTAs so long as those PMTAs are undergoing FDA review. *See*

*generally, Vapor Tech. Ass'n v. FDA*, 977 F.3d 496 (6th Cir. 2020).[9] Indeed, FDA has never

---

[9] FDA often exercises "enforcement discretion"—*i.e.*, refrains from bringing an enforcement action—for products
that do not have FDA marketing authorization. *See, e.g.*, FDA Compliance Policy Guide § 440.100 (describing how

initiated an enforcement action regarding an electronic cigarette that is the subject of a PMTA undergoing FDA review.[10]

As noted above, some electronic cigarettes create an aerosol that tastes like the smoke from a traditional tobacco cigarette. FDA has granted marketing authorization for a few such tobacco-flavored electronic cigarettes.[11] Other electronic cigarettes generate an aerosol that is not tobacco-flavored—*e.g.*, fruit flavored or menthol. FDA has not yet authorized any such "flavored" electronic cigarettes, although PMTAs for many such products—including many of Magellan's HYDE disposable electronic cigarette products—remain under FDA review.

FDA has the statutory authority to adopt a regulation through notice-and-comment rulemaking that would ban flavored electronic cigarettes (*e.g.*, fruit-flavored electronic cigarettes). *See* 21 U.S.C. § 387g(c). To adopt such a regulation, FDA would have to establish that banning flavored electronic cigarettes would result in a net benefit to the public health. *See id.* at § 387g(a)(3)(A). FDA has not proposed, let alone adopted, such a regulation.[12] It seems unlikely that FDA will propose a regulation banning flavored electronic cigarettes because, as noted above, FDA-funded researchers have found that any public health benefit resulting from such a ban may be offset by public health costs from increased combustible cigarette sales. *See supra n.7.*

---

FDA "intend[s] to exercise [its] enforcement discretion with regard to drugs marketed in the United States that do not have required FDA approval for marketing").

[10] FDA has initiated two types of enforcement actions—civil money penalty actions and injunction actions—for the distribution of unauthorized electronic cigarettes. *See* https://www.fda.gov/tobacco-products/compliance-enforcement-training/advisory-and-enforcement-actions-against-industry-unauthorized-tobacco-products#a. FDA has also issued "Warning Letters" for the distribution of unauthorized electronic cigarettes. *Id.* But FDA's position is that Warning Letters are "advisory" only and are not "are not final agency action" that can be challenged in court. *See* FDA Regulatory Procedures Manual, Chapter 4 at 4 (Jun. 2022); *accord Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012) (holding that an FDA Warning Letter was not subject to judicial review).

[11] *See* https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders.

[12] The City alleges that FDA has "banned flavored e-cigarette 'pods.'" (FAC at 16, ¶ 53; *see also* FAC at 16, ¶ 54 (alleging there is a "federal flavor ban")). But the only method by which FDA could lawfully "ban" flavored e-cigarettes (or any product for that matter) would through adoption of a regulation.

**B.      New York State and New York City Regulation of Electronic Cigarettes.**

New York State law permits the sale of electronic cigarettes, including flavored electronic cigarettes, to "vapor product dealers" who are licensed by the State. *See* N.Y. Public Health Law § 1399-*ll*(1), (1-a).[13] New York State law permits the sale of non-flavored (*i.e.*, tobacco-flavored) electronic cigarettes to retail customers who are at least 21 years old and prohibits the sale of flavored electronic cigarettes to retail customers of any age. *See* N.Y. Public Health Law §§ 1399-bb(4), 1399-mm-1(2).

New York City law permits the sale of non-flavored (*i.e.*, tobacco-flavored) electronic cigarettes to retail customers who are at least 21 years old and prohibits the sale of flavored electronic cigarettes. *See* N.Y.C. Admin. Code §§ 17-706(a-1), 17-715(1). However, New York City law expressly permits flavored electronic cigarettes to "be sold or offered for sale by wholesalers where the sale or offer for sale is made to an entity located outside the City." 24 R.C.N.Y. § 28-02(b).

**C.      The City's First Amended Complaint**

The City's First Amended Complaint does not allege a single direct-to-consumer retail sale of electronic cigarettes by Magellan, Demand Vape, or Glauser. The City identifies direct-to-consumer sales by other defendants in this case—Dorbes LLC and Christian Smith—operators of the website www.hydeofficial.com. *See* FAC, ¶¶ 70-79. But the City has not alleged any facts tying Defendants Magellan, Demand Vape, or Glauser to Dorbes, Smith, or www.hydeofficial.com. Nor could the City, as Magellan and Demand Vape have sued Dorbes, Smith, and www.hydeofficial.com. for cybersquatting and other causes of action in the U.S.

---

[13] "Vapor products" include electronic cigarettes. N.Y. Public Health Law § 1399-aa(17). A "vapor products dealer" is a "person licensed by the commissioner of taxation and finance to sell vapor products in this state." N.Y. Public Health Law § 1399-aa(18).

6

District Court for the Eastern District of Virginia. *See Magellan Tech., Inc. v. HydeVapeOfficial.com*, 23-cv-918 (E.D. Va.).

The City asserts five claims for relief based on Defendants' alleged sales of flavored electronic cigarettes to wholesalers and retailers in the City. First, the City alleges that those sales violated the PACT Act. Second, the City alleges that those sales violated the RICO Act in that the sales constituted a pattern of mail and wire fraud. Third, the City alleges that Defendants violated the RICO Act by conspiring to engage in the pattern of mail and wire fraud that is the basis of the City's substantive RICO Act claim. Fourth, the City alleges that Defendants' alleged sales of flavored electronic cigarettes to wholesalers and retailers in the City violated section 1399-*ll*(1) of New York State's Public Health Law. Fifth, the City alleges that Defendants' sales of flavored electronic cigarettes to wholesalers and retailers in the City constitute a "public nuisance." For the reasons explained below, the First Amended Complaint fails to state a plausible claim as to any of these potential causes of action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Courts should grant a Rule 12(b)(6) motion if the complaint fails to allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint has "facial plausibility" only "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

Federal Rule of Civil Procedure 9(b) requires claims alleging fraud to "state with particularity the circumstances constituting the fraud." This heightened pleading requirement applies to RICO claims that are based on allegations of mail or wire fraud. *See, e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 378 (S.D.N.Y. 2022) (stating in a RICO Act case that "[t]he elements of mail and wire fraud must be pleaded with particularity under Federal Rule of Civil Procedure 9(b)."). Moreover, "RICO claims premised on allegations of mail or wire fraud warrant particular scrutiny, because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 165 (S.D.N.Y. 2020). Indeed, "plaintiffs asserting RICO frequently miss the mark." *Id.*

## ARGUMENT

### A.   The City Fails to Plead a Plausible Claim for Violations of the PACT Act

In its First Claim for Relief, the City alleges that Magellan and Demand Vape violated the PACT Act by failing to comply with (1) the PACT Act's reporting requirements under 15 U.S.C. § 376, and (2) the PACT Act's "delivery sales" requirements under 15 U.S.C. § 376a. The City fails to plead a plausible PACT Act claim because (i) the City lacks standing to assert the claim; (ii) the City fails to allege facts that would support finding a violation of the PACT Act's reporting requirements; and (iii) the City fails to allege facts that would support a violation of the PACT Act's "delivery sales" requirements.

### 1.   The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes.

One of the PACT Act's "purposes" is to "increase collections of Federal, State, and local excise taxes on cigarettes [including electronic cigarettes] and smokeless tobacco." Pub. L. 111-

154, § 1(c)(5).[14] An "excise tax" is a tax "on the sale of a specified commodity measured by value or quantity, such as alcohol, tobacco, or motor fuel." *George v. Uninsured Empirs. Fund (In re George)*, 361 F.3d 1157, 1163 (9th Cir. 2004).[15]

The PACT Act authorizes local governments that levy an excise tax on cigarettes to bring district court actions for alleged PACT Act violations relating to those cigarettes. *See* 15 U.S.C. § 378(c)(1)(A).[16] Although the City levies an excise tax on traditional cigarettes and some other traditional tobacco products, the City does not levy an excise tax on electronic cigarettes.[17] Therefore, the City does not have standing under 15 U.S.C. § 378(c)(1)(A) to assert a PACT Act claim with respect to Magellan's and Demand Vape's sales of electronic cigarettes. This reason alone suffices for the Court to dismiss the City's PACT Act claim with prejudice.

## 2.    The City has not alleged facts that would support a finding that Magellan and Demand Vape violated the PACT Act's reporting requirements.

The PACT Act imposes certain reporting requirements on persons shipping cigarettes (including electronic cigarettes) "in interstate commerce, whereby such cigarettes are shipped into a State [or] locality" that taxes those cigarettes. *See* 15 U.S.C. § 376(a). The PACT Act defines "interstate commerce" as "commerce between a State and any place outside the State, commerce

---

[14] The PACT Act's definition of "cigarette" includes "an e-cigarette." *See* 15 U.S.C. § 375(2), (7)(B)(i).

[15] *Accord Cook v. United States*, 86 F.3d 1095, 1098 (Fed. Cir. 1996) ("Federal excise tax is a tax on the sale of a commodity.").

[16] 15 U.S.C. section 378(c)(1)(A) states that a local government "that levies a tax subject to section 376a(a)(3) of this title" may bring a district court action for violations of the PACT Act. Title 15 U.S.C. section 376a(a)(3) refers only to "excise taxes."

[17] *See* N.Y.C. Admin. Code §§ 11-1302(a) (excise tax on "cigarettes"), 1302.1(a) (excise tax on "tobacco products"— "cigars," "little cigars," "smokeless tobacco," "snus," "shisha," and "loose tobacco"). Electronic cigarettes do not fall under New York City's definition of "cigarettes" or "tobacco products." *See* N.Y.C. Admin. Code §§ 11-1301(1) & (19), 17-176(a)(6), 17-702(r). New York City has a sales and use tax on the retail sale of tangible personal property. *See* N.Y.C. Admin. Code § 11-2001(a). But such generally applicable sales and use taxes are not "excise taxes." *Cf. Bragg v. Matanuska-Susitna Borough*, 192 P.3d 982, 988-89 (Alaska 2008) (holding that a local tax on cigarettes was an excise tax, not a sales tax); *Blair Candy Co. v. Altoona Area Sch. Dist.*, 613 A.2d 159 (Pa. Commw. 1992) (same).

9

between a State and any Indian Country within the State, or commerce between points in the same State but through any place outside the State or through Indian country." 15 U.S.C. § 375(10)(A).

The City alleges that Magellan and Demand Vape shipped electronic cigarettes to distributors in New York City without complying with the PACT Act's reporting requirements. FAC, ¶¶ 123-124. But Magellan and Demand Vape are located in Buffalo, New York. *Id*., ¶¶ 23-24. And the City has not alleged any facts that would support a finding that Magellan or Demand Vape shipped electronic cigarettes from a location *outside* the State of New York to a location in the State of New York, or that any shipments of electronic cigarettes by Defendants originating in the State of New York travelled through any place outside of the State of New York or through "Indian Country" before reaching their ultimate destination in New York City. Therefore, the City has not alleged facts that would support a finding that Magellan or Demand Vape violated the PACT Act's reporting requirements.

### 3.     The City has not alleged facts that would support a finding that Magellan and Demand Vape violated the PACT Act's delivery sales requirements.

The PACT Act also places various requirements on persons making "delivery sales" of cigarettes (including electronic cigarettes). *See* 15 U.S.C. § 376a(a). A "delivery sale" is a non-face-to-face sale of cigarettes to a "consumer." 15 U.S.C. § 375(5). But the City has not alleged facts showing that Magellan or Demand Vape made sales to "consumers." And in any event, the City has not identified any specific sales by Magellan or Demand Vape that failed to meet the PACT Act's "delivery sales" requirements.

### a.     The City has not alleged facts showing Magellan or Demand Vape sold electronic cigarettes to "consumers."

Under the PACT Act, the term "consumer" means "any person that purchases cigarettes," but "does not include any person *lawfully operating* as a manufacturer, distributor, wholesaler, or

retailer of cigarettes." 15 U.S.C. § 375(4) (emphasis added). The PACT Act does not define the term "lawfully operating."

It is Defendants' position that the Court should interpret the term "lawfully operating" as meaning operating with any necessary state or local registration or license. *See* N.Y. Tax Law § 1183(a) ("Every person who intends to sell vapor products [*i.e.*, e-cigarettes] in this state shall receive from the commissioner a registration prior to engaging in such business."); N.Y.C. Admin. Code § 20-561(a) ("License required of electronic cigarette retail dealers."). Under that interpretation, the Court should dismiss the City's PACT Act claim because the City has not alleged facts demonstrating that Defendants sold electronic cigarettes to a distributor or retailer that lacked the required registration or license for selling electronic cigarettes.

The City's position appears to be that the Court should interpret the term "lawfully operating" as excluding a duly registered/licensed distributor or retailer if that business fails to comply with *any* federal, state, or local law applicable to electronic cigarettes. For at least three reasons, the Court should adopt Defendants' interpretation of the term "lawfully operating" and reject the City's interpretation of that term.

*First*, the PACT Act's legislative history indicates that Congress did not intend for the statute's "delivery sales" provision to cover sales to licensed distributors and retailers. The PACT Act revised the Jenkins Act, which excluded sales to "licensed" distributors and retailers and defined "licensed" as "authorized" by the state if the state had a statutory or regulatory authorization requirement. *See* 15 U.S.C. §§ 375(3), 376(a) (2009). When Congress passed the PACT Act, it gave no indication that the term "lawfully operating" was meant to be different than the term "licensed" in the Jenkins Act. In light of this history, the Court should interpret the term "lawfully operating" as meaning operating with any necessary registrations and licenses. *See*

11

*Johnson v. United States*, 529 U.S. 694, 710 (2000) (stating that "when a new legal regime develops out of an identifiable predecessor, it is reasonable to look to the precursor in fathoming the new law"); *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 823-24 (3d Cir. 1999) ("A prior statute's definition of the term will control if it is natural and reasonable to think that the members of legislature, in drafting the new statute, were influenced by the prior statute."); *Frederickson v. Luedtke Const. Co.*, 427 F. Supp. 1309, 1311 (W.D. Mich. 1977) ("Given the ambiguity in the statute it is appropriate to refer to earlier versions of the statute for aid in construction.").

*Second*, the City's position—that the term "lawfully operating" excludes a duly registered/licensed distributor or retailer if that business fails to comply with *any* federal, state, or local law applicable to electronic cigarettes—would lead to absurd results. *See Salute v. Stratford Greens Garden Apartments*, 135 F.3d 293, 297 (2d Cir. 1998) (stating that a court "may adopt a restricted rather than literal or usual meaning of a statute 'where acceptance of that literal meaning would lead to absurd results'") (quoting *Helvering v. Hammell*, 311 U.S. 504, 510-11 (1941)).

For example, the City's proposed interpretation of "lawfully operating" would mean that an electronic cigarette manufacturer's sale to a licensed electronic cigarette retailer would be a sale to a "consumer" if that retailer accidentally failed to lock a container in which it stores electronic cigarettes. *See* N.Y. Public Health Law § 1399-cc(7) (requiring electronic cigarettes to be stored behind the sales counter or in a locked container). Such a result would be absurd because a manufacturer cannot be expected to know that one of its retailer customers has accidentally failed to lock an electronic cigarette container. As another example, the City's proposed interpretation of "lawfully operating" would mean that an electronic cigarette manufacturer's sale to a registered electronic cigarette dealer would be a sale to a "consumer" if that dealer forgets to properly display

its certificate of registration. *See* N.Y. Tax Law § 1183(c) (requiring electronic cigarette dealer to publicly display it certificate of registration). Such a result would be absurd because a manufacturer cannot be expected to visit each of its retailer customers to ensure that their certificates of registration are properly displayed. The fact that the City's proposed interpretation of "lawfully operating" would lead to such absurd results warrants the Court's rejection of that proposed interpretation.

*Third*, because the PACT Act provides for criminal penalties, *see* 15 U.S.C. § 377, the Court should apply the "rule of lenity" and adopt the interpretation of the term "lawfully operating" that favors Magellan and Demand Vape. The rule of lenity provides that any "ambiguities concerning legislative intent in criminal statutes should be resolved in favor of the [defendant]." *United States v. Figueroa*, 165 F.3d 111, 119 (2d Cir. 1998). The rule of lenity applies not only in criminal cases, but also in civil suits when such suits are brought under a statute that has criminal penalties. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we interpret [a criminal] statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-518 (1992) (plurality opinion) (applying rule of lenity to a tax statute, in a civil setting, because the statute had criminal applications).

> **b.      The City has not identified any sales by Magellan or Demand Vape that violated the PACT Act's requirements for "delivery sales."**

Even if the City alleged facts that would demonstrate that Magellan or Demand Vape made "delivery sales" (which it has not), the Court should dismiss the City's PACT Act claim because the City has not identified a single sale by Magellan or Demand Vape that violated one of the PACT Act's requirements for "delivery sales."

13

For example, the City has not identified *a specific sale* where Magellan or Demand Vape failed to use PACT Act-compliant shipping labels. *See* 15 U.S.C. § 376a(b)(1). As another example, the City has not identified *a specific sale* by Defendants in which the total shipment exceeded ten pounds of product. *See* 15 U.S.C. § 376a(b)(3). Although the City alleges, in conclusory fashion, that Defendants never complied with the PACT Act's shipping label requirements or weight restrictions, *see* FAC, ¶¶ 120, 126, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B.     The City Fails to Plead a Plausible Claim for Violations of the RICO Act.

In its Second Claim for Relief, the City alleges that Defendants violated the RICO Act by engaging in a pattern of mail and wire fraud. *See* FAC, ¶¶ 5-6, 44-45, 127-140, 162-68.[18] The City alleges that Defendants committed mail and wire fraud by concealing their sales of electronic cigarettes from City authorities by failing to comply with the PACT Act's reporting requirements and failing to use PACT Act-compliant shipping labels. FAC, ¶¶ 11, 132-133. The City alleges that its RICO Act "injuries" are the costs it has incurred in cleaning up "improperly disposed-of" flavored electronic cigarettes "in parks and other City property" and unspecified "additional costs to mitigate the harms to public health caused by" flavored electronic cigarettes. FAC, ¶ 141. The City fails to plead a plausible RICO Act claim because: (i) the City fails to allege that Defendants engaged in a fraudulent scheme to obtain money or property from the City; (ii) the City fails to allege that Defendants' actions caused the City's claimed injuries; and (iii) the City fails to specifically plead instances of Defendants' alleged use of mail carrier or interstate wires.

---

[18] The RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" includes any act indictable under the federal mail fraud and wire fraud statutes. 18 U.S.C. § 1961(1)(B).

## 1.     The City's RICO Act claim fails because the City has not alleged that Defendants engaged in a fraudulent scheme to obtain money or property from the City.

The mail and wire fraud statutes prohibit any "scheme" to "defraud" another by "obtaining money or property" through "false or fraudulent pretenses" where the scheme involves the use of the mail, an interstate commercial carrier, or interstate wires. *See* 18 U.S.C. §§ 1341, 1343.[19] In order to obtain a conviction for mail or wire fraud, the government must prove that the "object" of the fraudulent scheme was to obtain money or property from the "victim" of the scheme. *See Cleveland v. United States*, 531 U.S. 12, 26 (2000) (stating that the mail fraud statute "requires the object of the fraud to be property in the victim's hands") (cleaned up); *id.* at 15 (stating that "for purposes of the mail fraud statue, the thing obtained must be property in the hands of the victim").[20]

Here, the City alleges that it has been deprived of property in the form of money spent to (1) clean up "improperly disposed-of" electronic cigarettes "in parks and other City property," and (2) "mitigate the harms to public health caused by" electronic cigarettes. *See* FAC at ¶ 141. The City does not allege that those expenditures were the "object" of Defendants' alleged scheme, let alone that Defendants benefited from those expenditures. At most, the City implies that those expenditures were incidental byproducts of Defendants' alleged scheme.

But in *Kelly v. United States*, 140 S. Ct. 1565, 1573 (2020), the Supreme Court held that a mail or wire fraud conviction "cannot stand where the loss to the victim is only an incidental byproduct of the scheme." 140 S. Ct. at 1573. The defendants in *Kelly*—public officials with

---

[19] *See also Bascuna v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) ("There are three essential elements to mail and wire fraud: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme.") (cleaned up).

[20] "Although *Cleveland* involved the mail fraud statute," the Supreme Court has "construed identical language in the wire and mail fraud statutes *in pari materia*." *Ciminelli v. United States*, 143 S. Ct. 1121, 1126 n.2 (2023) (quoting *Pasquanito v. United States*, 544 U.S. 349, 355 n.2 (2005)).

political ties to New Jersey's then-Governor Chris Christie—ordered the Port Authority to conduct a traffic study by realigning the toll lanes on the George Washington Bridge. *Id.* at 1568. Unbeknownst to the Port Authority, the true purpose of that order was to cause a traffic jam in Fort Lee, New Jersey as retaliation for the mayor of Fort Lee's refusal to support Christie's reelection bid. *Id.* The defendants were subsequently convicted of wire fraud on the theory that their fraudulent scheme resulted in the Port Authority spending money on traffic engineers and extra toll workers for the traffic study. *Id.* at 1572.

The Supreme Court reversed the convictions. The Court explained that "a scheme to usurp a public employee's paid time is one to take the government's property." *Id.* at 1572. For example, "a mayor [using] deception to get 'on-the-clock city workers' to renovate his daughter's new home" would qualify as a scheme to defraud the government of property. *Id.* at 1573. But neither of the defendants in *Kelly* "sought to obtain the services of the employees provided." *Id.* at 1574. The defendants "did not hope to obtain data that the traffic engineers spent their time collecting" for the traffic study, and the extra toll collectors "did nothing [the defendants] thought useful." *Id.* "The cost of the employee hours spent implementing [the defendants'] plan was" merely an "incidental byproduct" of that plan. *Id.* In short, "[b]ecause the scheme here did not aim to obtain" the Port Authority's "money or property," the defendants "could not have violated" the wire fraud statute. *Id.*

*Kelly* controls the case before this Court. Just like the prosecutor in *Kelly*, the City alleges only a scheme that was not designed to deprive the victim of money or property. Any losses to the City were nothing more than a byproduct of Defendants' alleged scheme. The Court should therefore dismiss the City's RICO Act claim. *See Kelley*, 140 S. Ct. at 1571 ("The wire fraud

16

statute thus prohibits only deceptive schemes to deprive the victim of money or property.")
(cleaned up).[21]

## 2.     The City's RICO Act claim also fails because the City cannot show that Defendants' alleged actions caused the City's injuries.

"A RICO complaint must allege both that defendant's alleged RICO violation was the 'but

for' cause" of "plaintiff's injury and that the violation was the legal proximate cause" of plaintiff's

injury. *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 218 (S.D.N.Y. 2002) (citing

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).[22] The City has alleged

neither "but for" causation nor proximate causation, nor could it do so.

### a.     The City has not alleged facts that would establish "but for" causation.

"But for" causation (also called "cause-in-fact") means that "a particular outcome would

not have occurred 'but for' the purported cause." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739

(2020); *accord Petitt v. Celebrity Cruises*, 153 F. Supp. 2d 240, 252 n.10 (S.D.N.Y. 2001). For at

least two reasons, the City has not alleged facts that would establish "but for" causation.

---

[21] In discussing the rule that a wire fraud "conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme," *Kelly*, 140 S. Ct. at 1573, the Court noted:

> Without that rule, as Judge Easterbrook has elaborated, even a practical joke could be a federal felony. *See United States v. Walters*, 997 F.2d 1219, 1224 (CA 7 1993). His example goes: "A emails B an invitation to a surprise party for their mutual friend C. B drives his car to the place named in the invitation," thus expending the cost of gasoline. *Ibid.* "But there is no party; the address is a vacant lot; B is the butt of a joke." *Ibid.* Wire fraud? No. And for the reason Judge Easterbrook gave: "The victim's loss must be an objective of the deceitful scheme rather than a byproduct of it." *Id.* at 1226.

*Kelly*, 140 S. Ct. at 1573 n.2 (cleaned up).

[22] The causation requirement is based on the language of the RICO Act's civil remedies provision, which states that a "person injured in his business or property *by reason* of a violation of section 1962" may bring a civil suit for such injury. 18 U.S.C. § 1964(c) (emphasis added); *see also Holmes*, 503 U.S. at 265-268 (holding that the "by reason of" language requires both "but for" causation and proximate causation).

*First*, the City does not (and cannot) allege facts showing that it would have spent less money cleaning up improperly disposed-of electronic cigarettes *but for* Defendants' alleged failures to file PACT Act reports and use PACT Act-compliant shipping labels. After all, filing PACT Act reports and using PACT Act-compliant shipping labels does not prevent the shipment of electronic cigarettes into New York City (nor do filing such reports or using such shipping labels prevent electronic cigarette users from improperly disposing of their electronic cigarettes).[23]

*Second*, the City does not (and cannot) allege facts showing that it would have spent less money on public health-related costs *but for* Defendants' alleged failures to file PACT Act reports and use PACT Act-compliant shipping labels. Again, filing PACT Act reports and using PACT Act-compliant shipping labels does not prevent the shipment of electronic cigarettes into New York City. And in any event, the City does not cite any evidence showing that reducing the availability of electronic cigarettes, including flavored electronic cigarettes, results in a net reduction in public health costs. Indeed, as noted above, FDA-funded researchers at the Yale School of Public Health recently found that "any public health benefits of reducing [electronic cigarette] use via flavor restrictions may be offset by public health costs from increased cigarette sales." A. Friedman, et al., *E-cigarette Flavor Restrictions Effects on Tobacco Product Sales* (Sept. 26, 2023), *supra* note 7.

---

[23] The Pact Act has two reporting requirements. First, sellers subject to the reporting requirements must file a one-time statement with federal and the relevant State and local authorities before they begin shipping products into another State. *See* 15 U.S.C. § 376(a)(1). The statement includes the seller's name, business address, telephone number, email address, website address, and the contact information for an in-state agent authorized to accept service on behalf of the seller. *Id.* Second, sellers subject to the reporting requirements must file a monthly memorandum with relevant State and local authorities that provides the name and address of persons to whom product was shipped during the previous month, the brand and quantity of the product shipped to each person, and the name, address, and phone number of the person delivering each shipment. *See* 15 U.S.C. § 376(a)(2)-(3). PACT Act compliant labels include the statement: "CIGARETTES/NICOTINE/SMOKELESS TOBACCO: FEDERAL LAW REQUIRES THE PAYMENT OF ALL APPLICABLE EXCISE TAXES, AND COMPLIANCE WITH APPLICABLE LICENSING AND TAX-STAMPING OBLIGATIONS." 15 U.S.C. § 376(b)(1). The PACT Act does not address labeling regarding proper methods of disposal of electronic cigarettes.

**b.    The City has not alleged facts showing proximate causation.**

Because the City has failed to allege facts that would establish "but for" causation, it has necessarily failed to allege facts that would establish proximate causation. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1350 (11th Cir. 2016) ("Unable to establish even but-for causation, such a plaintiff would be unable to meet the higher burden of showing that the racketeering activity proximately caused the plaintiff's injuries."); *Petitt*, 153 F. Supp. 2d at 252 n.10 (noting that "proximate cause is a more rigorous standard that includes ['but-for'] cause"). And even if the City had alleged facts that would establish "but for" cause, it has failed to allege facts that would establish proximate cause.

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). "A link that is 'too remote,' 'purely contingent,' or "indirect' is insufficient" to establish proximate cause in a RICO case. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plurality) (quoting *Holmes*, 503 U.S. at 271); *accord Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from defendant's unlawful conduct").

*Hemi Group*, 559 U.S. 1, is the leading RICO case on the issue of proximate cause in the context of alleged mail and wire fraud in the sale of cigarettes. In *Hemi Group*, the City of New York brought a RICO claim against defendant, an out-of-state cigarette dealer, on the theory that the defendant committed mail and wire fraud by selling cigarettes online to City residents without filing Jenkins Act reports with the State of New York. *See id.* at 7. The City further alleged that this fraud caused it to lose tax revenue because without the Jenkins Act reports—which the City

19

would have obtained from the State—the City was unable to track down defendant's customers and collect the City's cigarette excise tax from them. *Id.* at 15.[24]

In a four-justice plurality opinion, the Court held that the City's claim did not meet RICO's proximate cause requirement because "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud." *Id.* at 12.[25] Specifically, "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes," whereas "the conduct constituting the alleged fraud was [defendant's] failure to file Jenkins Act reports." *Id.* In short, "the City's harm was directly caused by customers, not [defendant]." *Id.; see also id.* at 18 ("The City's injuries here were not caused directly by the alleged fraud, and thus were not caused 'by reason of' it. The City, therefore, has no RICO claim.") (quoting 18 U.S.C. § 1964(c)).

Here, just as in *Hemi Group*, the City's alleged injuries were directly caused by the actions of third parties, not the alleged actions of Defendants. For example, "the conduct directly responsible for the City's harm"—costs incurred in cleaning up "improperly disposed-of" electronic cigarettes "in parks and other City property"—was electronic cigarette users' improper disposal of their products in parks and on other City property, whereas "the conduct constituting the alleged fraud was [Defendants' alleged] failure to file" PACT Act reports and alleged failure to use PACT Act-compliant shipping labels. Similarly, to the extent that the City has incurred a net increase in public health costs relating to City residents' use of electronic cigarettes (which in itself is highly questionable given the FDA-recognized substantially less harmful risk profile of electronic cigarettes versus combustible cigarettes and the CDC's data showing that the overwhelming majority of electronic cigarette users are current or former users of combustible

---

[24] The Jenkins Act did not require reports to be filed with local authorities.

[25] The Second Circuit follows the *Hemi* plurality opinion. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 145 n.12 (2d Cir. 2018).

cigarettes), it was those City residents' decision to use electronic cigarettes that directly caused the City to incur such a net increase in public health costs. Defendants' alleged fraud—*i.e.*, the alleged failure to file PACT Act reports and use PACT Act-complaint shipping labels—did not directly cause the City to incur a net increase in public health costs.

**3.      The City's RICO Act claim also fails because the City has not identified specific instances of Defendants using mail carriers or interstate wires.**

To establish that a defendant engaged in a pattern of mail fraud, a RICO plaintiff must identify two or more instances in which the defendant utilized the U.S. Postal Service or an interstate commercial carrier as part of the scheme to defraud. *See* 18 U.S.C. § 1341. To establish that a defendant engaged in a pattern of wire fraud, a RICO plaintiff must identify two or more instances in which the defendant utilized wires "in interstate or foreign commerce" as part of the scheme to defraud. *See* 18 U.S.C. §1343. *See also Targum v. Citrin Cooperman & Co., LLP*, No. 12-cv-6909, 2013 U.S. Dist. LEXIS 164585, \*19 (S.D.N.Y. Nov. 19, 2013) ("When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts.").

Here, the City has not alleged any instances in which Defendants utilized the U.S. Postal Service, an interstate commercial carrier, or interstate wires as part of their alleged scheme to defraud. The Court should, therefore, dismiss the City's RICO Act claim against Defendants.[26]

For the foregoing reasons, the Court should dismiss the City's RICO Act claim with prejudice.

---

[26] In the First Amended Complaint, the City only identifies specific instances in which defendants *other than* Magellan, Demand Vape, or Glauser used the United States mail to ship electronic cigarettes. *See* FAC at ¶¶ 73-78.

**C.      The City Fails to Plead a Plausible Claim for RICO Conspiracy.**

In its Third Claim for Relief, the City alleges that Defendants violated the RICO Act by conspiring to engage in the pattern of mail and wire fraud that is the basis of the City's substantive RICO Act claim (*i.e.*, the City's Second Claim for Relief). *See* FAC at ¶¶ 169-176).[27] But it is well settled that a RICO conspiracy claim must be dismissed where the plaintiff has not adequately pleaded an underlying substantive RICO claim. *See, e.g.*, *Vicon Fiber Optics Corp.*, 201 F. Supp. 2d at 221 ("Plaintiff's second claim is for RICO conspiracy, in violation of 18 U.S.C. § 1962(d). This claim fails because the underlying substantive RICO cause of action has been dismissed."). Therefore, because the City has not adequately pleaded a substantive RICO claim, the Court should likewise dismiss with prejudice the RICO conspiracy claim as to the Defendants.

**D.      The City Fails to Plead a Plausible Claim for Violations of N.Y. Public Health Law § 1399-*ll*.**

The City's Fourth Claim for Relief, alleging violations of New York Public Health Law § 1399-*ll*, should be dismissed because the City lacks standing and because the provision cited as the basis for the claim, N.Y. Public Health Law § 1399-*ll*(1), does not apply to electronic cigarettes or vapor products. *See* FAC, ¶¶ 178-179.

**1.      The City lacks standing to allege a violation of Section 1399-*ll*.**

Public Health Law § 1399-*ll* grants the attorney general and corporation counsel of a "political subdivision that imposes a tax on cigarettes or vapor products" standing to seek civil penalties for violations of the statute. N.Y. Pub. Health Law § 1399-*ll*(6). As noted above, *supra n.17*, New York City only taxes cigarettes, and does not impose an excise tax on vapor products. *See* N.Y.C. Admin. Code 11-1302. Public Health Law § 1399-*ll* distinguishes between cigarettes

---

[27] 18 U.S.C. § 1962(d) states: "It shall be unlawful for any person to conspire to violate any provisions of subsection (a), (b), or (c) of this section."

and vapor products, defining them separately and including statutory provisions specific to each

type of product. *See generally* N.Y. Pub. Health Law §§ 1399-*ll*.

> Under the Public Health Law, a "cigarette" is defined as

> "any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use, and consists of or contains: (a) any roll of tobacco wrapped in any substance not containing tobacco, or (b) tobacco, in any form, that is functional in the product, which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a **cigarette**; or (c) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a **cigarette** described in paragraph (a) of this definition."

N.Y. Public Health Law § 1399-oo.

In contrast, "electronic cigarette" or "e-cigarette" are defined separately as "an electronic device that delivers vapor which is inhaled by an individual user," N.Y. Pub. Health Law § 1399-aa(13), and "vapor products" are defined to include "any noncombustible liquid or gel, regardless of the presence of nicotine therein, that is manufactured into a finished product for use in an electronic cigarette, including any device that contains such noncombustible liquid or gel." N.Y. Pub. Health Law § 1399-aa(17). Because "electronic cigarettes" and "vapor products" are distinct from "cigarettes," and the City only imposes an excise tax on "cigarettes" and not "vapor products," the City lacks standing to enforce the vapor product-specific provisions of Public Health Law § 1399-*ll*.

### 2. The City fails to allege facts supporting a violation of Section 1399-*ll*(1).

Additionally, the provision that the City cites as the basis for the alleged violations, Public Health Law § 1399-*ll*(1), applies only to *cigarettes*, not to vapor products. *See* FAC, ¶¶ 178-179. N.Y. Public Health Law § 1399-*ll*(1) make it unlawful for "any person engaged in the business of selling *cigarettes*" to ship "any *cigarettes*" to anyone that is not a licensed tax agent or wholesale

23

dealer, an export warehouse proprietor or operator of a customs bonded warehouse, or agents of the federal or state government. *See* FAC, ¶ 178.

Regardless of whether the City's recitation of and reliance on this provision's restrictions were merely accidental or an intentional effort to establish standing, subsection (1) plainly does not apply to Defendants. Defendants do not sell cigarettes, nor does the City assert any factual allegations suggesting otherwise. Indeed, the City's allegations focus on alleged sales of "flavored disposable vaping devices," a type of "electronic nicotine delivery device" or "e-cigarette." *See, e.g.*, FAC, ¶¶ 23-24. Thus, Section 1399-*ll*(1), the provision cited by the City as the basis for its Fourth Claim for relief, provides no basis for a plausible claim against Defendants.

Because the City lacks standing to bring claims to enforce Public Health Law § 1399-*ll* and alleges violations of a facially inapplicable provision of the statute, the City's Fourth Claim for Relief should be dismissed.

**E.      The City Fails to Plead a Plausible Public Nuisance Claim.**

The City's Fifth Claim for Relief fails to state a plausible claim for public nuisance because the City has not alleged facts sufficient to conclude that Magellan or Demand Vape created or contributed to the alleged public nuisance.

To succeed on a public nuisance claim, the City must show that Magellan and Demand Vape's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave. Gourmet Foods v. Finlandia Ctr.*, 750 N.E.2d 1097, 1104 (N.Y. 2001)). The City must allege that the conduct or omissions of Magellan and Demand Vape created, contributed to, or maintained a public nuisance. *See Hicksville Water Dist.*

*v. Philips Elec. North Am. Corp.*, No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342, at *19 (E.D.N.Y. Mar. 29, 2018).[28]

The City's claim that a public nuisance exists, and that Defendants created or contributed to it, is rooted in the assertion that Magellan and/or Demand Vape violated New York Public Health Law § 1399-mm-1 by engaging in the *retail* sale of flavored vapor products to individual consumers. *See* FAC, ¶¶ 151-156; 184-186. But, unlike with the other defendants, the City does not allege—because it cannot truthfully do so—*any* detailed factual allegations relating to Magellan or Demand Vape's supposed retail sales of flavored vapor products. *See id*., ¶¶ 70-78 (specific allegations relating to Dorbes LLC's alleged online retail sales to individuals in New York City); 91-100 (specific allegations relating to Mahant Krup 56 LLC's alleged retail sales to individuals in New York City).

Instead, the City attempts to rely on general and conclusory allegations that Magellan and Demand Vape are retailers. *See, e.g.*, FAC, ¶¶ 80, 185. But even those allegations are contradicted by the City's repeated allegations that Defendants are "distributors" that make sales to "sub-distributors and retailers." *See, e.g.*, *id*., ¶¶ 63, 81, 84. In fact, the City's claim that Defendants engaged in a criminal enterprise is seemingly based on the notion that they are distributors that sell products to sub-distributors and retailers. *See, e.g.*, *id.*, ¶ 129.

Significantly, the City's claims relating to online retail sales against another defendant, Dorbes LLC, were originally made against Defendants. *Compare* FAC, ¶¶ 70-78, *with* Compl., ECF No. 1, ¶¶ 65-76. However, the City was forced to amend its complaint to assert those allegations against the proper party after Defendants provided them information showing the website at issue was operated by entities and individuals unaffiliated with Defendants and

---

[28] A third element exists for private plaintiffs asserting a claim for public nuisance and requires that they show they suffered a particular harm or special injury. *Id.*

Magellan sued those parties for trademark infringement and cybersquatting in the U.S. District Court for the Eastern District of Virginia. This information was readily available and easily discoverable through a basic investigation that the City failed to perform before it filed its original complaint.

Now, despite having no factual basis or specific allegations to support its conclusory claims that Magellan and Demand Vape engaged in retail sales of flavored vapor products in violation of Public Health Law § 1399-mm-1, the City continues to assert its public nuisance claim based on those purported violations. Because the City fails to plead "factual content that allows the [C]ourt to draw the reasonable inference that [Magellan and Demand Vape are] liable for the misconduct alleged," the Court should dismiss the City's Fifth Claim for Relief for public nuisance. *Iqbal*, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the City's claims against Defendants Magellan, Demand Vape, and Glauser.

Respectfully submitted,

THOMPSON HINE LLP

By: _____ /s/ Eric N. Heyer _____
     Eric N. Heyer (admitted *pro hac vice*)
     Joseph A. Smith (admitted *pro hac vice*)
     Anna Stressenger (admitted *pro hac vice*)
     1919 M Street, N.W., Suite 700
     Washington, DC 20036
     Phone: 202.331.8800
     Fax: 202.331.8330
     eric.heyer@thompsonhine.com
     joe.smith@thompsonhine.com
     anna.stressenger@thompsonhine.com

Richard De Palma
300 Madison Avenue
27th Floor
New York, NY 10017
Phone: 212.908.3969
Fax: 212.344.6101
richard.depalma@thompsonhine.com

*Counsel for Defendants Magellan Technology, Inc.;*
*Ecto World, LLC, and Matthew J. Glauser*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2023, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.

/s/ Eric N. Heyer