**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE CITY OF NEW YORK,

                  Plaintiff,

        -against-

MAGELLAN TECHNOLOGY, INC., ECTO WORLD,
LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER,
DONALD HASHAGEN, MAHANT KRUPA 56 LLC
d/b/a Empire Vape Distributors, NIKUNJ PATEL,
DEVANG KOYA, STAR VAPE CORP., NABIL
HASSEN, DORBES LLC, d/b/a Hydevapeofficial.com,
CHRISTIAN A. SMITH,

                  Defendants.

Case No. 23-cv-5880-LLS-OTW

 

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**BY MAHANT KRUPA 56 LLC, NIKUNJ PATEL & DEVANG KOYA**

Paul M. Eckles
Barry S. Zone
Philippe A. Zimmerman
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel. (212) 554-7800
Fax (212) 554-7700

*Attorneys for Defendants Mahant Krupa 56*
*LLC, Nikung Patel & Devang Koya*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT ALLEGATIONS AGAINST THE EMPIRE DEFENDANTS ...................... 3

ARGUMENT ....................................................................................................................... 4

I.     PLAINTIFF FAILS TO ALLEGE FACTS SUPPORTING A CLAIM THAT EMPIRE VIOLATED THE PACT ACT ....................................................................... 4

   A.  Plaintiff Fails to Allege Empire Made Sales in Interstate Commerce "Into New York" ... 6

   B.  New York City Is Not a Locality that Imposes an Excise Tax on E-Cigarettes. ............... 6

   C.  Plaintiff Fails to Allege Empire Made Any Sales to "Consumers" ................................... 7

   D.  Plaintiff Fails to Allege Empire Made Any Non-Compliant "Delivery Sales" ................ 8

II.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE A RICO CLAIM ........................... 8

   A.  Plaintiff Fails to Plead Any Underlying Violation of the Law ......................................... 9

   B.  Plaintiff Fails to Plead Fraud with Particularity ............................................................ 10

   C.  Plaintiff Fails to Allege that Empire Engaged in a Fraudulent Scheme to Obtain Money or Property from the City. ................................................................................................ 12

   D.  Plaintiff Fails to Allege The Requisite Connection Between any Predicate Act and Plaintiff's Purported Injury ......................................................................................... 13

     1.  Plaintiff has not alleged facts that would establish "but for" causation. ..................... 13

     2.  Plaintiff has not alleged facts showing proximate causation. ..................................... 14

   E.  Plaintiff Fails to Plead a Plausible Claim for RICO Conspiracy. .................................... 15

III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS .... 16

IV.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM FOR VIOLATIONS OF N.Y. PUBLIC HEALTH LAW § 1399-*LL*. .......................................................................... 17

   A.  Plaintiff Lacks Standing To Allege a Violation of Section 1399-ll. ................................ 17

   B.  Plaintiff Fails To Allege Facts Supporting a Violation of Section 1399-ll(1). ................ 19

V.    PLAINTIFF FAILS TO PLEAD A PLAUSIBLE PUBLIC NUISANCE CLAIM. ......... 19

   A.  Plaintiff Lacks Standing to Assert a Violation of § 1399-mm-l ..................................... 20

   B.  Plaintiff Pleads No Facts Supporting the Allegation that Empire Sells FDVs at Retail... 22

CONCLUSION .................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*532 Madison Ave. Gourmet Foods* v. *Finlandia Ctr.*,
  750 N.E.2d 1097 (N.Y. 2001) ........................................................................................ 19

*Allbrooks v. New York State Department of Corrections*,
  20-CV-8602 (LLS), 2021 WL 1225017 (S.D.N.Y. Mar. 31, 2021) ................................ 16

*Anza* v. *Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ...................................................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 8, 23

*Bascuna* v. *Elsaca*,
  927 F.3d 108 (2d Cir. 2019) ......................................................................................... 10

*Bayshore Cap. Advisors, LLC*,
  2023 WL 2751049 ......................................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 8

*Black v. Ganieva*,
  619 F.Supp.3d 309 (S.D.N.Y. 2022) .............................................................................. 10

*Bostock* v. *Clayton Cty.*,
  140 S. Ct. 1731 (2020)................................................................................................... 13

*Chinese Auto. Distributors of America, LLC v. Bricklin*,
  No. 07 Civ. 4113 (LLS), 2010 WL 1654265 (S.D.N.Y. Apr. 13, 2010) ........................ 16

*City of New York v. Milhelm Attea & Bros.*,
  No. 06-CV-3620 (CBA), 2012 WL 3579568 (E.D.N.Y. Aug. 17, 2012)............................ 4, 6

*City of New York v. Smokes-Spirits.com, Inc.*,
  911 N.E.2d 834 (Ct. App. 2009)............................................................................... 21, 22

*Cleveland* v. *United States*,
  531 U.S. 12 (2000) ........................................................................................................ 11

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) .............................................................................. 9

*Empire Merchs., LLC v. Reliable Churchill*,
  *LLP*, 902 F.3d 132 (2d Cir. 2018) ................................................................................. 15

*George v. Uninsured Empirs. Fund (In re George)*,
  361 F.3d 1157 (9th Cir. 2004) ......................................................................................... 6

*Halvorssen v. Simpson*,
  No. 218-CV-2683 (ENV) (RLM), 2019 WL 4023561 (E.D.N.Y. Aug. 26, 2019) ................ 9

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010) ................................................................................................ 5, 14, 15

*Hicksville Water Dist.* v. *Philips Elec. North Am. Corp.*,
  No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342 (E.D.N.Y. Mar. 29, 2018) ................. 19

*Holmes v. Parade Place, LLC*,
  No. 12-CV-6299 (GBD) (DF), 2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013)....................... 8

*Holmes* v. *Securities Investor Protection Corp.*,
  503 U.S. 258 (1992) .................................................................................................. 13, 14

*Kelly* v. *United States*,
  140 S. Ct. 1565 (2020)................................................................................................... 12

i

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006) ........................................................................................ 16
*Lawtone-Bowles v. City of New York, Dept. of Sanitation*,
    22 F.Supp 3d 341 (S.D.N.Y. 2014) ............................................................................. 16
*Lexmark Int'l* v. *Static Control Components, Inc.*,
    572 U.S. 118 (2014) .................................................................................................... 14
*Lundy v. Catholic Health System of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) ....................................................................................... 11
*Petitt* v. *Celebrity Cruises*,
    153 F. Supp. 2d 240 (S.D.N.Y. 2001) ........................................................................ 13
*Rajaratnam v. Motley Rice, LLC*,
    449 F.Supp. 3d 45 (E.D.N.Y. 2020) ............................................................................. 9
*Service Employees Int'l Union National Industry Pension Fund v. S&F Management*,
    No. 17-01737 (TSC) (RMM), 2018 WL 5044249 (D.D.C. Aug. 16, 2018) .................. 23
*Targum* v. *Citrin Cooperman & Co., LLP*,
    No. 12-cv-6909, 2013 U.S. Dist. LEXIS 164585 (S.D.N.Y. Nov. 19, 2013) ............... 10
*Vicon Fiber Optics Corp.* v. *Scrivo*,
    201 F. Supp. 2d 216 (S.D.N.Y. 2002) .................................................................. 13, 16

Statutes

15 U.S.C. § 375 ................................................................................................................ 4, 5
15 U.S.C. § 375(4)(B) ........................................................................................................... 7
15 U.S.C. § 376 .................................................................................................................... 5
15 U.S.C. § 376(a) ............................................................................................................... 5
15 U.S.C. § 375(5) ............................................................................................................... 7
15 U.S.C. § 376a .................................................................................................................. 7
15 U.S.C. § 376a(b)(1) and (3) ............................................................................................ 8
18 U.S.C. § 1962(d) ...................................................................................................... 15, 16
18 U.S.C. § 1964(c) ........................................................................................................... 13
18 U.S.C. § 1341 ................................................................................................................ 10
18 U.S.C. § 1343 ................................................................................................................ 10
28 USC 1367(c)(3) .............................................................................................................. 16
N.Y. Pub. Health Law § 1399 .................................................................................... passim

Rules

Fed. R. Civ. P. 12(b)(1)(6) .................................................................................................... 1

Regulations

24 R.C.N.Y. §28-02(b) ..................................................................................................... 3, 23

Other Authorities

N.Y.C. Admin. Code 11-1302 ............................................................................................ 17
N.Y.C. Admin. Code 11-1302(a) .......................................................................................... 6
N.Y.C. Admin. Code §§ 11-1301(1) & (19), 17-176(a)(6), 17-702(r) .................................. 6
N.Y.C. Admin. Code § 17-715, 17-717, 17-710(d) ............................................................ 20

Defendants Mahant Krupa 56 LLC ("Empire")[1] Nikunj Patel, and Devang Koya (collectively, the "Empire Defendants"), by their counsel, respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1)(6) to dismiss Plaintiff City of New York's Amended Complaint.

## PRELIMINARY STATEMENT

In its Amended Complaint, the City of New York ("NYC" or "City" or "Plaintiff") attempts to ensnare the Empire Defendants[2] into the City's frontal assault on the vaping industry. Plaintiff highlights the alleged societal harm caused by flavored disposable vaping devices ("FDVs"), while ignoring any benefits, and conclusorily asserts that all the defendants operate as a common enterprise without any factual allegations evidencing that the Empire Defendants work with or even have any connections with the other defendants. Consideration of Plaintiff's claims against the Empire Defendants requires a review of the sufficiency of the allegations related to the Empire Defendants and not those regarding other defendants or the purported societal ills of FDVs.

While there are a multitude of pleading deficiencies in the claims against the Empire Defendants, the principal flaws undermining all of the claims are that Empire is not an out-of-state distributor, but rather a local, New York City wholesaler, there are no well-pled factual allegations linking the Empire Defendants to the other defendants in connection with any

---

[1]  Plaintiff alleges that Mahant Krupa 56 LLC does business as "Empire Vape." As reflected by the website cited by NYC, Mahant Krupa 56 LLC does business under the name "Empire Smoke Distributors."  (Amended Complaint ("FAC") ¶ 28, citing https://empiresmokedist.com)

[2]  The Empire Defendants incorporate by reference (i) the background regarding electronic cigarettes and the regulation of electronic cigarettes (pp. 1-6) and (ii) legal standard (pp. 7-8) set forth in the Magellan Technology/Ecto World Memorandum of Law in Support of their Motion to Dismiss ("Magellan Memo"), ECF 53.

1

unlawful activity, and there is no well-pled factual allegation that the Empire Defendants sell or deliver vaping products to any unauthorized recipients.

As detailed herein, the Amended Complaint should be dismissed as against the Empire Defendants because Plaintiff fails to state a cognizable claim against them. *First*, the City's Prevent All Cigarettes Trafficking Act ("PACT Act") claim fails for four independent reasons:  (i) the PACT Act does not apply to local intra-city sales, (ii) the PACT Act applies only to deliveries into localities with an excise tax (and NYC does not have one), (iii) the PACT Act applies only to sales to "consumers" (and Empire is a wholesaler that sells exclusively to retailers), and (iv) there is no well-pled factual allegation that Empire made any non-complaint "delivery sales" of FDVs to customers in NYC.

*Second*, the City's RICO claims fail for a myriad of reasons including (i) they are derivative of NYC's PACT Act claim and hence fail for the same reasons its PACT Act claim fails, (ii) NYC fails to allege any instances in which Empire used the mail, much less two particularized instances in which the mail was used to perpetrate fraud, (iii) NYC fails to allege how any fraudulent scheme was used to obtain money or property from the City, and (iv) NYC fails to allege the requisite connection between any predicate acts and its purported injury, public health costs and cleanup costs in City parks.

Given the host of problems with NYC's PACT Act and RICO claims, which are the only basis for federal jurisdiction, the Court should exercise its discretion to decline supplemental jurisdiction over the City's remaining claims.  Declining supplemental jurisdiction is the "usual" course of action when federal-law claims are eliminated before trial.

In any event, even if the Court chooses to consider the City's state law claims, they also fail to state a claim.  There is no well-pled factual allegation that the Empire Defendants have

violated state or city law.  Wholesalers are allowed to sell vapor products to anyone possessing

"a certificate of registration as a vapor products dealer."  N.Y. Public Health Law ("PHL") 1399-

ll(1-a).  Wholesalers are also expressly allowed to sell FDVs "where the sale or offer for sale is

made to an entity located outside the City."  24 R.C.N.Y. §28-02(b).  There is no well-pled

factual allegation that Empire either (i) sells vapor products to anyone that is not a registered

vapor products dealer, or (ii) sells FDVs to anyone in NYC.  The City also lacks standing to sue

under the enumerated provisions of the Public Health Law and cannot use a public nuisance

theory to circumvent that shortcoming.  As a result, NYC's state claim claims should be

dismissed whether for lack of standing or on the merits.

### RELEVANT ALLEGATIONS AGAINST THE EMPIRE DEFENDANTS

The City alleges that, "Mahant Krupa 56 LLC is a limited liability company formed

under the laws of the State of New York doing business as Empire Vape Distributors [] with a

principal place of business located at 56-01 Maspeth Avenue, Maspeth, Queens 11378.  Empire

Vape sells electronic nicotine delivery devices, including FDVs and flavored e-liquids to the

public in New York State and elsewhere and/or owns or controls other businesses that do so.

Empire Vape sells FDVs to the public, *inter alia*, from the Internet website

https://empiresmokedist.com."  FAC ¶ 28.

The City uses the term "public" without specifying whether that includes end users or just

Empire's business customers.  Tellingly, while NYC alleges it was able to purchase FDVs

directly from another defendant and have them delivered to a residential address in New York

City, it makes no such allegation as to the Empire Defendants.  The City instead alleges that

Empire is a "Wholesaler & Distributor" that "distributes FDVs at wholesale to conventional

smoke and vape shops and convenience/grocery stores in New York City."  FAC ¶ 85.  The City

also alleges that an inspection in 2021 revealed "invoices indicating that [] FDVs were being shipped <u>to retail convenience stores</u> in New York City and elsewhere." *Id.* ¶ 88 (emphasis added).

While the City alleges that an unnamed buyer made in person purchases of FDVs at ten retail stores in New York City in May 2023, the only attempt to connect those purchases to Empire is the conclusory allegation that "[r]etail stores in New York City that are owned by or affiliated with Mahant Krupa/Empire Vape sell FDVs to the public." *Id.* ¶ 91.

Similarly, while the City includes the Empire Defendants in a purported "FDV Enterprise" encompassing all of the defendants, the City's only attempt to connect Empire to the other defendants it the conclusory allegation that "Magellan and/or Demand Vape directly or indirectly supply Hyde brand FDVs to Empire Vape and Star Vape, which in turn supply consumers and/or retail stores with FDVs sold in New York City." FAC ¶ 129.  In other words, Empire Vape acts as a wholesaler, which is its legitimate, lawful business.

## ARGUMENT

## I.  PLAINTIFF FAILS TO ALLEGE FACTS SUPPORTING A CLAIM THAT EMPIRE VIOLATED THE PACT ACT

The federal PACT Act, 15 U.S.C. §375, enacted in 2010, addressed the problem of cigarette shipments from low-tax states (or Native American reservations) to high-tax states intended to evade tax laws.  "The PACT Act was passed in order to: (1) provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling; (2) make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities; (3) increase collections of Federal, State, and local excise taxes on cigarettes and smokeless tobacco." *City of New York v. Milhelm Attea & Bros.*, No. 06-CV-3620

(CBA), 2012 WL 3579568, at *31 (E.D.N.Y. Aug. 17, 2012). (citing PACT Act findings, § 1(c)(3)-(5) (appended to 15 U.S.C. § 375). S*ee Hemi Group, LLC v. City of New York,* 559 U.S. 1, 4 (2010) (plurality) ("Federal law . . . requires out-of-state vendors . . . to submit customer information to the states into which they ship the cigarettes.").[3]

The PACT Act defines "Interstate Commerce" as "commerce between a State and any place outside the State, commerce between a State and any Indian country in the State, or commerce between points in the same State but through any place outside the State or through any Indian country."  15 U.S.C. § 375(10)(A).  As NYC acknowledges in its Amended Complaint, the "interstate commerce" requirement is reflected throughout the Act.  *See* FAC ¶ 113 ("The PACT Act requires any person shipping, selling, transferring, shipping for profit, advertising, offering for sale or transferring FDVs in interstate commerce into a locality taxing the sale or use of cigarettes to file a statement. . ..") (citing 15 U.S.C. §376) (emphasis added).  All of the PACT Act's reporting requirements, set forth in 15 U.S.C. §376, pertain to shipments "in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco . . . " (emphasis added).  Similarly, the requirements relating to "delivery sales," set forth in 15 U.S.C. §376(a), apply "to delivery sales into a specific State and place." (emphasis added).  The reporting requirement aids in the recovery of excise taxes because "the City is responsible for recovering, directly from the customers, use taxes on cigarettes sold outside New York." *Hemi Group,* LLC, 559 U.S. at 5.  There is no reason to require in-state vendors to file reports because "[w]hen purchasers buy cigarettes from in-state vendors, the seller is responsible for

---

[3]  In 2020, Congress amended the PACT Act to include regulations regarding the delivery and sales of electronic nicotine delivery systems (ENDS), which include e-cigarettes, "vapes", flavored and smokeless tobacco.

charging, collecting, and remitting the tax." *Id.* at 5 (citing N.Y. Tax Law. Ann. § 471(2).)

As demonstrated below, NYC's PACT Act claim both ignores the basic purpose of the Act and fails to satisfy any of the elements of a PACT Act claim, including (i) sales of electronic cigarettes in interstate commerce into a locality, (ii) that imposes excises taxes on electronic cigarettes, (iii) to consumers, (iv) in the form of a delivery sale.

### A. Plaintiff Fails to Allege Empire Made Sales in Interstate Commerce "Into New York"

Plaintiff's allegations fail to satisfy even the most basic of elements under the PACT Act –i.e., sales in interstate commerce into a locality. The City does not allege Empire made any deliveries in interstate commerce into New York City. Plaintiff specifically alleges that Empire's facility is located in Queens in New York City. FAC ¶ 88. As the "Empire" name suggests, Empire is a New York business. As a result, Empire's sales to New York customers fall entirely outside the scope of the PACT Act. NYC's attempt to impose PACT Act obligations on the Empire Defendants is refuted by both the stated purpose of the PACT Act and its statutory language.

### B. New York City Is Not a Locality that Imposes an Excise Tax on E-Cigarettes.

The purpose of the PACT Act is to combat tobacco trafficking and "increase collections of Federal, State, and local <u>excise</u> taxes on cigarettes and smokeless tobacco." *City of New York*, 2012 WL 3579568, at *31 (emphasis added). An "excise tax" is a tax "on the sale of a specified commodity measured by value or quantity, such as alcohol, tobacco, or motor fuel." *George* v. *Uninsured Empirs. Fund (In re George),* 361 F.3d 1157, 1163 (9th Cir. 2004). The City does not levy an excise tax on electronic cigarettes.[4] Accordingly, the PACT Act claim fails as a

---

[4] *See* N.Y.C. Admin. Code 11 - 1302(a) (excise tax on "cigarettes"), 1302.1(a) (excise tax on "tobacco products"— "cigars," "little cigars," "smokeless tobacco," "snus," "shisha," and "loose tobacco").

matter of law for this independent reason.

### C.    Plaintiff Fails to Allege Empire Made Any Sales to "Consumers"

The PACT Act applies only to sales to "consumers."  *See* 15 U.S.C. § 376a.  Under the PACT Act, a consumer "does not include any person lawfully operating as a manufacturer, distributor, wholesale, or retailer of cigarettes or smokeless tobacco."  15 U.S.C. §375(4)(B).  Here, the City's claim against the Empire Defendants fails because the City has not alleged facts showing that Empire made sales to "consumers."  As Plaintiff repeatedly alleges, Empire is a wholesaler that sells to retailers.

Plaintiff attempts to circumvent this limitation by alleging that the retail stores are themselves "consumers" because they are not "lawfully operating" their businesses.  FAC ¶ 118.  But Plaintiff does not allege that any of the retailers referenced in the Empire section of the Amended Complaint fail to have a "Vape Certificate" or otherwise lack any required license.  The City's position appears to be that the Court should interpret the term "lawfully operating" as excluding a duly registered/licensed retailer if that business fails to comply with *any* federal, state, or local law applicable to electronic cigarettes.  Such an interpretation would effectively make wholesalers guarantors that all of their customers are fully complying with all applicable laws.  As demonstrated in the Magellan Memo, that cannot be what Congress intended.  ECF 53 at 12-13.  It also would serve no purpose.  Any duly registered/licensed retailer is responsible for charging, collecting, and remitting applicable state and local taxes; imposing a reporting requirement on sales to them would not in any way assist in identifying in-state consumers who could otherwise evade applicable taxes.

---

Electronic cigarettes do not fall under New York City's definition of "cigarettes" or "tobacco products." *See* N.Y.C. Admin. Code §§ 11-1301(1) & (19), 17-176(a)(6), 17-702(r).

**D.      Plaintiff Fails to Allege Empire Made Any Non-Compliant "Delivery Sales"**

The PACT Act applies only to "delivery sales."  A "delivery sale" is a non-face-to-face sale of cigarettes. 15 U.S.C. § 375(5).  Plaintiff fails to adequately allege a non-compliant "delivery sale" to a customer in New York City.  *First*, even assuming the retail stores referenced in the Amended Complaint constitute "consumers" within the meaning of the PACT Act, Plaintiff fails to allege that those stores acquired FDVs from Empire.  FAC ¶¶ 91-100.  NYC alleges that a buyer entered each store and purchased a FDV, but there is no allegation how each store acquired the FDV.  *Second*, even if Plaintiff adequately alleged the retail stores purchased FDVs from Empire, there is no well-pled allegation that the purchases involved a "delivery," given that Empire's warehouse is located in New York City and it offers products for sale in person.

*Third,* even if the City alleged facts supporting an allegation that Empire made "delivery sales" (which it has not), the City has not identified a single sale by Empire that violated one of the PACT Act's requirements for "delivery sales" – whether by use of a shipping label that does not comply with the PACT Act or sending a shipment that exceeded ten pounds of product. *See* 15 U.S.C. § 376a(b)(1) and (3). The City's conclusory assertion, without identifying a single improper shipment, that Empire never complied with the PACT Act's shipping label requirements or weight restrictions is insufficient.  *See* FAC ¶¶ 120, 126. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**II.      PLAINTIFF FAILS TO ADEQUATELY ALLEGE A RICO CLAIM**

Civil RICO claims are seductive for litigants due to "the allure of treble damages,

attorney's fees, and federal jurisdiction." *Holmes v. Parade Place, LLC*, No. 12-CV-6299 (GBD) (DF), 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013). Therefore, RICO claims must be scrutinized as "[c]ourts have cautioned that RICO is as 'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *Rajaratnam v. Motley Rice, LLC*, 449 F.Supp. 3d 45, 64 (E.D.N.Y. 2020) (quoting *Halvorssen v. Simpson*, No. 218-CV-2683 (ENV) (RLM), 2019 WL 4023561, at *3 (E.D.N.Y. Aug. 26, 2019).

Here, the City alleges that the Empire Defendants violated the RICO Act by engaging in a pattern of mail and wire fraud relating to their purported PACT Act violations. *See* FAC ¶¶ 5-6,44-45, 127-140, 162-68. The City alleges that its purported RICO Act "injury to business or property" is the "growing hazardous waste problem caused by defendants' improperly disposed-of FDVs in parks and other City property" and unspecified "additional costs to mitigate the harms to public health caused by" FDVs. FAC ¶ 141. The City fails to plead a plausible RICO Act claim because: (i) it is based on Plaintiff's PACT Act claim, which fails as detailed above, (ii) the City fails to plead with particularity how Empire uses the mail or interstate wires in connection with a fraudulent scheme; (iii) the City fails to allege that Empire engaged in a fraudulent scheme to obtain money or property from the City; and (iv) the City fails to allege a causal connection between any predicate acts and any cognizable injury.

### A.    Plaintiff Fails to Plead Any Underlying Violation of the Law

As a threshold matter, Plaintiff's RICO claim is derivative of Plaintiff's PACT Act claim. FAC ¶¶ 11, 131-35. The City alleges that Empire committed mail and wire fraud by concealing its sales of electronic cigarettes from City authorities in violation of PACT Act reporting requirements and failing to use PACT Act-compliant shipping labels. FAC ¶¶ 11, 132-33. Because the PACT Act does not apply to Empire's sales to New York City customers (*supra* 4-

9

6), there can be no RICO claim premised on an alleged failure to comply with the PACT Act's reporting requirements.  In the absence of any underlying unlawful predicate act, the City's RICO claim fails as a matter of law.  *See, e.g.*, *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 443 (S.D.N.Y. 2019) (dismissing RICO claim based on predicate act of trade secret theft where underlying document hack did not contain any trade secrets); *Black v. Ganieva*, 619 F.Supp.3d 309 (S.D.N.Y. 2022) (where underlying allegations were not unlawful the use of the mail could not convert them into a predicate act for purposes of a RICO Act claim).

### B.    Plaintiff Fails to Plead Fraud with Particularity

The mail and wire fraud statutes prohibit any "scheme" to "defraud" another by "obtaining money or property" through "false or fraudulent pretenses" where the scheme involves the use of the mail, an interstate commercial carrier, or interstate wires. *See* 18 U.S.C. §§ 1341, 1343.[5]  To establish that a defendant engaged in a pattern of mail fraud, a RICO plaintiff must identify two or more instances in which the defendant utilized the U.S. Postal Service or an interstate commercial carrier as part of the scheme to defraud.  *See Targum* v. *Citrin Cooperman & Co., LLP,* No. 12-cv-6909, 2013 U.S. Dist. LEXIS 164585, *19 (S.D.N.Y. Nov. 19, 2013) ("When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts.").

Here, Plaintiff's RICO claim fails because it has failed to plead with particularity any mail or wire fraud in connection with a scheme to defraud as required by Rule 9(b).  The City

---

[5]  *See also Bascuna* v. *Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) ("There are three essential elements to mail and wire fraud: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme.") (cleaned up); *Bayshore Cap. Advisors, LLC*, 2023 WL 2751049, at *18 (same).

has not alleged that Empire made any misrepresentations to the City, retailers, consumers, or anyone else, that Empire concealed that it is in the business of selling vapor products to local businesses, or that Empire is failing to charge or pay any applicable taxes.  Nor has it identified any instances in which any of the Empire Defendants utilized the mail or a wire as part of any purported scheme to defraud.  *See Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("Plaintiffs must plead the alleged mail fraud with particularity, and establish that the mailings were in furtherance of a fraudulent scheme.").  The City identifies specific instances in which defendants *other than Empire* used the United States mail to ship electronic cigarettes.  *See* FAC at ¶¶ 73-78.  As to the Empire Defendants, however, the only allegation that even alludes to the use of mail is that an inspection in March 2021 "revealed thousands of units of FDVs as well as invoices indicating that the FDVs were being shipped to retail convenience stores in New York City and elsewhere."  FAC ¶ 88.  But the City does not identify any specific shipments and does not allege the shipments failed to comply with any regulatory requirements or that there was anything otherwise fraudulent about them, much less provide the specific details required by Rule 9(b).  *Id.* ("Plaintiffs here have not alleged what any particular Defendant did to advance the RICO scheme.  Nor have they otherwise pled particular details regarding the alleged fraudulent mailings.  Bare-bones allegations do not satisfy Rule 9(b).").  Because the City has failed to allege details regarding at least two uses of the mail or wires in connection with a scheme to defraud, its RICO claim against the Empire Defendants also fails for this independent reason.

11

**C.      Plaintiff Fails to Allege that Empire Engaged in a Fraudulent Scheme to Obtain Money or Property from the City.**

To obtain a conviction for mail or wire fraud, the government must prove that the "object" of the fraudulent scheme was to obtain money or property from the "victim" of the scheme. *See Cleveland* v. *United States,* 531 U.S. 12, 26 (2000) (mail fraud statute "requires the object of the fraud to be property in the victim's hands") (cleaned up); *id.* at 15 ("for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim").

The Supreme Court addressed the "object" requirement in *Kelly* v. *United States,* 140 S. Ct. 1565, 1573 (2020), and held that a mail or wire fraud conviction "cannot stand where the loss to the victim is only an incidental byproduct of the scheme."  The defendants in *Kelly*—public officials with political ties to New Jersey's then-Governor Chris Christie—ordered the Port Authority to conduct a traffic study by realigning the toll lanes on the George Washington Bridge. *Id.* at 1568.  The true purpose of that order was to cause a traffic jam in Fort Lee, New Jersey as retaliation for the mayor of Fort Lee's refusal to support Christie's reelection bid. *Id.* The defendants were subsequently convicted of wire fraud on the theory that their fraudulent scheme resulted in the Port Authority spending money on traffic engineers and extra toll workers for the traffic study. *Id.* at 1572.  The Supreme Court reversed the convictions because "[t]he cost of the employee hours spent implementing [the defendants'] plan was" merely an "incidental byproduct" of that plan. *Id.*  In short, "[b]ecause the scheme here did not aim to obtain" the Port Authority's "money or property," the defendants "could not have violated" the wire fraud statute. *Id.*

*Kelly* is directly on point.  As in *Kelly,* Plaintiff alleges a scheme that was not designed to obtain money or property from the victim.  The City's purported injuries – clean-up costs in

public parks and other generalized public health costs – do not benefit the Empire Defendants in any way and are, at best, incidental byproducts of Defendants' alleged scheme. The City's RICO Act claim therefore fails as a matter of law for this independent reason. *See Kelly,* 140 S. Ct. at 1571 ("The wire fraud statute thus prohibits only deceptive schemes to deprive the victim of money or property.") (cleaned up).

### D.   Plaintiff Fails to Allege The Requisite Connection Between any Predicate Act and Plaintiff's Purported Injury

"A RICO complaint must allege both that defendant's alleged RICO violation was the 'but for' cause" of "plaintiff's injury and that the violation was the legal proximate cause" of plaintiff s injury. *Vicon Fiber Optics Corp.* v. *Scrivo,* 201 F. Supp. 2d 216, 218 (S.D.N.Y. 2002) (citing *Holmes* v. *Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992)).[6] The City has alleged neither "but for" causation nor proximate causation, nor could it do so.

### 1.   Plaintiff has not alleged facts that would establish "but for" causation.

"But for" causation means that "a particular outcome would not have occurred 'but for' the purported cause." *Bostock* v. *Clayton Cty.,* 140 S. Ct. 1731, 1739 (2020); *accord Petitt* v. *Celebrity Cruises,* 153 F. Supp. 2d 240, 252 n.10 (S.D.N.Y. 2001). The City fails to allege facts that would establish "but for" causation for at least two reasons.

*First,* the City does not (and cannot) allege facts showing that it would have spent less money cleaning up improperly disposed-of electronic cigarettes *but for* the Empire Defendants' alleged failures to file PACT Act reports and use PACT Act-compliant shipping labels. The PACT Act's requirements, which deal with identifying shipments for tax collection purposes,

---

[6] The causation requirement is based on the language of the RICO Act's civil remedies provision, which states that a "person injured in his business or property *by reason* of a violation of section 1962" may bring a civil suit for such injury. 18 U.S.C. § 1964(c) (emphasis added); *see also Holmes,* 503 U.S. at 265-268 (holding that the "by reason of" language requires both "but for" causation and proximate causation).

13

have nothing to do with the disposal of electronic cigarettes.  Critically, filing PACT Act reports and using PACT Act-compliant shipping labels, does not prevent the shipment of electronic cigarettes into New York City and does not prevent electronic cigarette users from improperly disposing of their electronic cigarettes.

*Second*, the City does not (and cannot) allege facts showing that it would have spent less money on public health-related costs *but for* Defendants' alleged failures to file PACT Act reports and use PACT Act-compliant shipping labels.  Again, those requirements do not prevent the shipment of electronic cigarettes into New York City.  And in any event, the City does not cite any evidence showing that reducing the availability of electronic cigarettes, including FDVs, results in a net reduction in public health costs.

### 2.  Plaintiff has not alleged facts showing proximate causation.

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiffs injuries." *Anza* v. *Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006). "A link that is 'too remote,' 'purely contingent,' or "indirect' is insufficient" to establish proximate cause in a RICO case.  *Hemi Group,* 559 U.S. at 9 (2010) (quoting *Holmes,* 503 U.S. at 271); *accord Lexmark Int'l* v. *Static Control Components, Inc.,* 572 U.S. 118, 133 (2014) ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from defendant's unlawful conduct").

*Hemi Group,* 559 U.S. 1, addressed the issue of proximate cause in the context of alleged mail and wire fraud in the sale of cigarettes. In *Hemi Group,* the City of New York brought a RICO claim against an out-of-state cigarette dealer, on the theory that the defendant committed mail and wire fraud by selling cigarettes online to City residents without filing Jenkins Act reports with the State of New York. *See id.* at 7. The City alleged that this fraud caused it to lose

14

tax revenue because without the Jenkins Act reports the City was unable to track down defendant's customers and collect the City's cigarette excise tax from them. *Id.* at 15.

In a four-justice plurality opinion, the Court held that the City's claim did not meet RICO's proximate cause requirement because "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud." *Id.* at 12.[7]  Specifically, "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes," whereas "the conduct constituting the alleged fraud was [defendant's] failure to file Jenkins Act reports." *Id.* In finding the causal link too "attenuated," the Court noted that "the City's theory of liability rests not just on separate *actions*, but separate actions carried out by separate *parties*."  *Id.* at 10.

Here, as in *Hemi Group,* the City's alleged injuries were directly caused by separate actions of separate parties, who "improperly disposed-of" electronic cigarettes "in parks and other City property," resulting in the City incurring clean-up costs.  The City's purported injury does not "directly" flow from the conduct constituting the alleged fraud, i.e., Defendants' alleged failure to file PACT Act reports and alleged failure to use PACT Act-compliant shipping labels. Similarly, as to the City's speculative claim that the City has incurred a net increase in public health costs relating to City residents' use of electronic cigarettes, it was separate actions (use of electronic cigarettes) by separate parties (city residents) that directly caused the City to incur any net increase in public health costs.  Defendants' alleged fraud—*i.e.*, the alleged failure to file PACT Act reports and use PACT Act-complaint shipping labels—did not directly cause the City to incur a net increase in public health costs.

> ### E.    Plaintiff Fails to Plead a Plausible Claim for RICO Conspiracy.

The City also alleges that the Empire Defendants violated the RICO Act by conspiring to

---

[7] The Second Circuit follows the *Hemi* plurality opinion. *See, e.g., Empire Merchs., LLC* v. *Reliable Churchill LLP,* 902 F.3d 132, 145 n.12 (2d Cir. 2018).

engage in the pattern of mail and wire fraud that is the basis of the City's substantive RICO Act claim.  *See* FAC at ¶¶ 169-176.[8]  It is well settled that a RICO conspiracy claim must be dismissed where the plaintiff has not adequately pled an underlying substantive RICO claim. *See, e.g., Vicon Fiber Optics Corp.,* 201 F. Supp. 2d at 221 ("Plaintiffs second claim is for RICO conspiracy, in violation of 18 U.S.C. § 1962(d). This claim fails because the underlying substantive RICO cause of action has been dismissed."). Therefore, because the City has not adequately pled a substantive RICO claim, the Court should likewise dismiss with prejudice the RICO conspiracy claim.

## III.  THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Under 28 USC 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction.  "Once a district court's discretion is triggered under §1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction."  *Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted).  In *Kolari*, the Second Circuit vacated and remanded a district court decision where the court reached the merits of state law claims after dismissing the federal claims with prejudice.  The Second Circuit noted that the "federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources" and held that in the "'usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-

---

[8] 18 U.S.C. § 1962(d) states: "It shall be unlawful for any person to conspire to violate any provisions of subsection (a), (b), or (c) of this section."

16

law claims.'" (citation omitted).[9]

Here, the City relies on its federal PACT Act and RICO Act claims as the basis for federal jurisdiction.  But both claims fail for a multitude of reasons.  Further, the City does not cite either of its federal claims in its motion for a preliminary injunction, which suggests the relief it is seeking is based primarily on state law while relying on its federal law theories as a basis for federal jurisdiction.  Given that the case is at the pleading stage, there has not yet been a significant investment of judicial resources, and resolution of the state law claims will require the Court to address matters of statutory construction that are better left to state courts (infra 17-24), the Empire Defendants respectfully suggest that the Court should decline supplemental jurisdiction over the City's state law claims.

## IV.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM FOR VIOLATIONS OF N.Y. PUBLIC HEALTH LAW § 1399-*LL*.

The City alleges the Empire Defendants violated New York Public Health Law § 1399-*ll(1)*, by shipping "vapor products" to unauthorized (and unspecified) persons in New York City.  *See* FAC ¶¶ 178-81.  Plaintiff's claim should be dismissed because the City lacks standing and because the provision cited as the basis for the claim, N.Y. Public Health Law § 1399-*ll*(1), does not apply to electronic cigarettes or vapor products.

### A.     Plaintiff Lacks Standing To Allege a Violation of Section 1399-ll.

N.Y. Public Health Law § 1399-*ll(6)* grants the attorney general and corporation counsel

---

[9] *See, e.g.*, *Allbrooks v. New York State Department of Corrections*, 20-CV-8602 (LLS), 2021 WL 1225017 (S.D.N.Y. Mar. 31, 2021) (J. Stanton) (declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims for failure to state a claim); *Chinese Auto. Distributors of America, LLC v. Bricklin*, No. 07 Civ. 4113 (LLS), 2010 WL 1654265, at *2 (S.D.N.Y. Apr. 13, 2010) (J. Stanton) (dismissing federal securities fraud claims for failure to state a claim and declining to exercise supplemental jurisdiction over remaining state contract claims); *Lawtone-Bowles v. City of New York, Dept. of Sanitation,* 22 F.Supp 3d 341, 352-53 (S.D.N.Y. 2014) ("Having dismissed all of the claims over which this Court has original jurisdiction, declining to exercise supplemental jurisdiction over the state-law claims is appropriate at this early stage in the litigation.").

of a "political subdivision that imposes a tax on cigarettes or vapor products" standing to seek

civil penalties for violations of the statute.  As noted above, *supra n.4.* New York City taxes

cigarettes, but does not impose an excise tax on vapor products.  *See* N.Y.C. Admin. Code 11-

1302.  Public Health Law § 1399-*ll* distinguishes between cigarettes and vapor products,

defining them separately and including statutory provisions specific to each type of product.

*Compare* N.Y. Pub. Health Law § 1399-*ll*(1) (addressing cigarettes) and § 1399-*ll*(1)(a)

(addressing vapor products).

> Under the Public Health Law, a "cigarette" is defined as

> "any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use, and consists of or contains: (a) any roll of tobacco wrapped in any substance not containing tobacco, or (b) tobacco, in any form, that is functional in the product, which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette; or (c) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette described in paragraph (a) of this definition."

N.Y. Public Health Law § 1399-oo.

> In contrast, "electronic cigarette" or "e-cigarette" are defined separately as "an electronic

device that delivers vapor which is inhaled by an individual user," N.Y. Pub. Health Law § 1399-

aa(13), and "vapor products" are defined to include "any noncombustible liquid or gel,

regardless of the presence of nicotine therein, that is manufactured into a finished product for use

in an electronic cigarette, including any device that contains such noncombustible liquid or gel."

N.Y. Pub. Health Law § 1399-aa(17). Because "electronic cigarettes" and "vapor products" are

distinct from "cigarettes," and the City imposes an excise tax only on "cigarettes" and not "vapor

products," the City lacks standing to enforce the vapor product-specific provisions of Public

Health Law § 1399-*ll*.

**B.    Plaintiff Fails To Allege Facts Supporting a Violation of Section 1399-ll(1).**

The provision that the City cites as the basis for the alleged violations, Public Health Law § 1399-*ll*(1), applies only to *cigarettes,* not to vapor products.  *See* ¶¶ 178-79.  N.Y. Public Health Law § 1399-*ll*(1) make it unlawful for "any person engaged in the business of selling *cigarettes"* to ship "any *cigarettes"* to anyone that is not a licensed tax agent or wholesale dealer, an export warehouse proprietor or operator of a customs bonded warehouse, or agents of the federal or state government. *See* FAC ¶ 178.

Regardless of whether the City's recitation of and reliance on this provision's restrictions were merely accidental or an intentional effort to establish standing, subsection (1) plainly does not apply to the conduct alleged in the Amended Complaint, which is focused on alleged sales of "flavored disposable vaping devices," a type of "electronic nicotine delivery device" or "e-cigarette." *See, e.g.,* FAC ¶¶ 23-24. Thus, Section 1399-*ll*(1) provides no basis for a plausible claim against the Empire Defendants.

**V.    PLAINTIFF FAILS TO PLEAD A PLAUSIBLE PUBLIC NUISANCE CLAIM.**

To succeed on a public nuisance claim, the City must show that Empire's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 725 F.3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave. Gourmet Foods* v. *Finlandia Ctr.,* 750 N.E.2d 1097, 1104 (N.Y. 2001)). The City must allege that the conduct or omissions of Empire created, contributed to, or maintained a public nuisance. *See Hicksville Water Dist.*v. *Philips Elec. North Am. Corp.,* No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342, at *19 (E.D.N.Y.

19

Mar. 29, 2018).[10]

      The City's claim that a public nuisance exists, and that the Empire Defendants created or contributed to it, is rooted in the assertion that Empire violated New York Public Health Law § 1399-mm-l by engaging in the *retail* sale of flavored vapor products to individual consumers. *See* FAC ¶¶ 151-56; 184-86.  Plaintiff's public nuisance claim fails for, at least, two reasons: (i) Plaintiff lacks standing to assert a violation of Public Health Law § 1399-mm-l and cannot circumvent the lack of standing through a public nuisance claim, and (ii) there is no well-pled factual allegation that Empire sells FDVs at retail in New York City.

### A.      Plaintiff Lacks Standing to Assert a Violation of § 1399-mm-l

      As discussed above (pp. 17), certain provisions of the Public Health Law, including § 1399-ll, contain express authorization for Corporate Counsel to bring an action to recover civil penalties and "for such other relief as may be deemed necessary."  PHL § 1399-ll(6).  But there is no such authorization for violations of § 1399-mm-1.  To the contrary, § 1399-mm-1(3) states that, "Violations of this section <u>shall</u> be enforced pursuant to section thirteen hundred ninety-nine-ff of this article [addressing administrative hearings], except that any person may submit a complaint to an enforcement officer that a violation of this section has occurred."  *Id.*  (emphasis added).

      In the public nuisance section of the Amended Complaint, Plaintiff also cites New York City Administrative Code § 17-715, which likewise addresses the sale of flavored electronic cigarettes.  FAC ¶ 151.  But, as with § 1399-mm-1, there is no statutory basis for a claim by Corporate Counsel under §17-715, which instead is to be enforced through the City's own

---

[10] A third element exists for private plaintiffs asserting a claim for public nuisance and requires that they show they suffered a particular harm or special injury. *Id.*

administrative hearing process.  §17-715 falls under Subchapter 2 of Chapter 7 of the NYC

Administrative Code.[11] Subchapter 2 addresses "Enforcement" in §17-717 and has a detailed

description of how City departments "shall enforce the provisions of this subchapter" through

"administrative trials and hearings."  Conversely, Subchapter 1, which addresses other aspects of

tobacco sales and deliveries, contains a provision specifically authorizing the City to seek relief

in court.  §17-710(d) ("Whenever any person has engaged in any acts or practices which

constitute a violation of any provision of this subchapter . . . the city may make application to a

court of competent jurisdiction for any order enjoining such acts or practices and for an order

granting a temporary or permanent injunction, restraining order or other order enjoining such

acts or practices."). The absence of a corresponding provision in Subchapter 2 – the subchapter

at issue – demonstrates the City's intent for relief to be governed by the City's administrative

hearing process.

Plaintiff attempts to evade the Public Health Law's and Administrative Code's regulatory

structure by instead relying upon them as a basis for a public nuisance claim.  The City of New

York has unsuccessfully attempted to use public nuisance laws in the past to address tobacco-

related claims.  *See City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 840 (Ct. App.

2009) (addressing purported illegal shipments of cigarettes by out-of-state sellers in violation of

New York's Public Health Laws).  The Second Circuit "questioned the propriety of the City

bringing a public nuisance claim predicated upon Public Health Law § 1399-ll" and certified the

question to the New York Court of Appeals.  *Id.*  The Court of Appeals found the question to be

"one of pure statutory interpretation.  Based on its text and legislative history, we conclude that

---

[11]   Chapter 7 of the NYC Admin. Code is entitled "Regulation of Tobacco Products."  Subchapter 2 is
entitled "Regulation of the Sale of Flavored Tobacco Products, Flavored Electronic Cigarettes and
Flavored E-liquid, and Regulation of Age of Entry to Non-Tobacco Hookah Establishments."

the Legislature did not contemplate that section 1399-*ll* would be used as the predicate for public nuisance actions in cases—like the present—that primarily involve alleged tax evasion." *Id.* at 840.  The Court of Appeal noted that the "City's alleged injury-lost tax revenue-is a harm that is subject to thorough regulation, both by *section 1399-ll* as well as other laws not implicated here." *Id.* at 843.  The Court of Appeal concluded that "[t]he presence of a [comprehensive enforcement scheme] when coupled with the Legislature's clear expressions that the public health thrust of section 1399-*ll* was related to the prevention of underage smoking, persuades us that the Legislature did not intend its findings to authorize a public nuisance claim based primarily upon alleged tax evasion." *Id.* at 844.

Here, the issue of the sale of FDVs is subject to regulation in both the New York Public Health Law and the New York City Administrative Code and yet neither authorizes the City to seek the relief it is seeking in this action.  The fact that the New York legislature and New York City Council both authorized Corporate Counsel to seek relief in court for other tobacco-related violations of the New York Public Health Law and the NYC Administrative Code, but instead adopted alternative procedures to remedy violations of the specific provisions at issue here, demonstrates a clear intent not to allow purported violations of § 1399-mm-1 to provide a basis for a public nuisance action.

### B.  Plaintiff Pleads No Facts Supporting the Allegation that Empire Sells FDVs at Retail

Plaintiff makes the wholly conclusory allegation that, "Empire Vape sells electronic nicotine delivery devices, including FDVs and flavored e-liquids to the public in New York State and elsewhere and/or owns or controls other businesses that do so.  Empire Vape sells FDVs to the public, *inter alia*, from the Internet website https://empiresmokedist.com."  FAC ¶ 28.

22

*First,* the City does not include—because it cannot—*any* detailed factual allegations relating to Empire's supposed retail sales of FDVs.  Unlike certain other defendants, the City fails to cite any successful purchases of FDVs from Empire's website or otherwise allege that customers in New York City can purchase FDVs from Empire's website.  *See id.,* ¶¶ 70-78 (specific allegations relating to Dorbes LLC's alleged online retail sales to individuals in New York City).[12]

*Second*, while Plaintiff alleges that retail stores in New York City that sell FDVs "are owned by or affiliated with Mahant Krupa/Empire Vape" (FAC ¶ 91), the allegation is contradicted by the repeated allegation that Empire is a "distributor" or "wholesaler" (FAC ¶¶ 28, 85).  In the absence of any facts supporting the legal conclusion of "ownership" or the unexplained "affiliation," such as title, control, or profit participation, the conclusory legal conclusion can be ignored.  *Iqbal*, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  *See Service Employees Int'l Union National Industry Pension Fund v. S&F Management*, No. 17-01737 (TSC) (RMM), 2018 WL 5044249, at *5 (D.D.C. Aug. 16, 2018) ("Plaintiffs' assertion that 'all sites at issue in the complaint share an interrelation of operations, common management, centralized control of labor relations, and common ownership,' is conclusory and merely recites the factors pertinent to the single employer analysis."); *In re Roman Catholic Diocese of Rockville Centre, New York*, 651 B.R.399 (Bankr. S.D.N.Y. 2023) ("bare statements regarding a legal conclusion (i.e., the existence of an employment and/or agency relationship" were conclusory).

---

[12] The mere possession of FDVs by a wholesaler does not provide a basis for a claim.  Wholesalers are expressly allowed to sell FDVs "where the sale or offer for sale is made to an entity located outside the City."  24 R.C.N.Y. §28-02(b).

Because there is no well-pled factual allegation that Empire sells FDVs at retail in New York City, either through a website or in retail stores, its public nuisance claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Empire Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's PACT Act and RICO claims with prejudice and either decline to exercise supplemental jurisdiction over Plaintiff's state law claims, or, in the alternative, also dismiss them with prejudice.

Dated: October 27, 2023
New York, New York

Respectfully Submitted,

MOSES & SINGER LLP

  /s/ Paul M. Eckles
Paul M. Eckles
Barry S. Zone
Philippe A. Zimmerman
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800
peckles@mosessinger.com

*Attorneys for Defendants Mahant Krupa 56 LLC, Nikunj Patel & Devang Koya*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October 2023, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.


_/s/ Paul M. Eckles___