UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x


THE CITY OF NEW YORK,

                                        Plaintiff,

                  -against-

                                                    Civil Action No. 23-5880 (LLS)


MAGELLAN TECHNOLOGY, INC., ECTO WORLD,
LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER,
DONALD HASHAGEN, MAHANT KRUPA 56 LLC d/b/a
Empire Vape Distributors, NIKUNJ PATEL, DEVANG
KOYA, STAR VAPE CORP., NABIL HASSEN,
DORBES, LLC, d/b/a Hydevapeofficial.com, CHRISTIAN A.
SMITH,

                                        Defendants.

------------------------------------------------------------------------x


**MEMORANDUM OF LAW OF THE CITY OF NEW YORK IN OPPOSITION TO THE
MOTIONS TO DISMISS OF MAGELLAN TECHNOLOGY, INC., ECTO WORLD,
LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER, AND DONALD HASHAGEN**


                              **HON. SYLVIA O. HINDS-RADIX**
                              Corporation Counsel of the
                               City of New York
                              *Attorney for Plaintiff the City of New York*
                              100 Church Street, Room 20-99
                              New York, New York 10007
                              (212) 356-2032


Of counsel:
Eric Proshansky
Krista Friedrich
Elizabeth Slater

Assistant Corporation Counsels

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

POINT I

    THE CITY PLEADS A CLAIM FOR VIOLATIONS OF THE
    PACT ACT ...................................................................................................................7

        A.    The City Has The Power to Enforce the PACT Act ...................................7

                1.    The Plain Language of the PACT Act and Congressional
                      Intent Make Clear the City has PACT Act Standing ....................7

                2.    The City Imposes a Tax Applicable to E-Cigarettes .....................15

        B.    The Hyde Defendants Sell E-Cigarettes In Interstate
            Commerce and Must Report Sales Into New York City ...........................16

        C.    The City Plausibly Alleges The Hyde Defendants' Violation
            of the PACT Act's Delivery Sales Requirements .....................................21

                1.    "Lawfully Operating" Means Operating In Compliance
                      With The Law ..............................................................................21

                2.    The City Need Not, But Does, Allege Specific Sales ....................27

POINT II

    THE CITY HAS PLEADED RICO CLAIMS ............................................................28

        A.    The City Has Pleaded Fraudulent Ommissions .......................................29

        B.    The City Has Pleaded that the Hyde Defendants Use Interstate
            Wires .......................................................................................................30

        C.    The City Has Pleaded But-For Causation ................................................31

        C.    The City Has Pleaded Proximate Causation ............................................33

        D.    The City Has Pleaded Predicate Acts of Mail and Wire Fraud ...............35

POINT III

    THE CITY HAS STANDING TO ENFORCE PHL § 1399-*ll* .........................................38

    A.    Enforcement of PHL § 1399-*ll* Depends Upon Having a Cigarette *or* Vapor Products Tax ...........................................................39

    B.    The City's PHL § 1399-*ll* Claim Alleges E-cigarette, Not Cigarette Violations .........................................................................42

POINT IV

    THE CITY HAS PROPERLY AND CORRECTLY ALLEGED THAT THE HYDE DEFENDANTS ARE A SUBSTANTIAL CAUSE OF A PUBLIC NUISANCE ................................................................44

    A.    The Amended Complaint Alleges a Public Nuisance Caused by Far More Than Retail Sales .......................................................45

    B.    The City Pleads Each Public Nuisance Element Referenced by the Hyde Defendants ......................................................................47

    C.    The Hyde Defendants Are Liable For a Public Nuisance As Distributors of Flavored E-cigarettes ...........................................49

    D.    Liability For Public Nuisance Attaches To Multiple Contributors .......................................................................................52

POINT V

    THIS COURT HAS PERSONAL JURISDICTION OVER HASHAGEN ......................................................................................54

    A.    18 U.S.C. § 1965 Permits Assertion of Personal Jurisdiction Over Every Defendant, Including Hashagen ...........................................55

    B.    The City Is Entitled to Jurisdictional Discovery to Prove that the Court Has Personal Jurisdiction Over Hashagen Under CPLR § 302(a)(1) .......................................................................56

        1.  This Court Has Personal Jurisdiction Over Firmitas ....................................58

        2.  There Is a Colorable Basis that Magellan and Firmitas Are Agents of Hashagen .......................................................59

        3.  Due Process Would Be Met as to Hashagen ...............................60

CONCLUSION................................................................................ 61

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in opposition to the Motions to Dismiss of Magellan Technology, Inc., Ecto World, LLC, d/b/a Demand Vape, Matthew J. Glauser and Donald Hashagen ("Hashagen") filed October 17, 2023 (*Dkt. Nos*. 52-56) (collectively, the "Hyde Defendants").

## PRELIMINARY STATEMENT

The Hyde Defendants have recognized in other litigation concerning electronic cigarettes ("e-cigarettes") that "[t]he public interest . . . does not favor rewarding parties that eschew . . . regulatory oversight." *Dkt. No*. 42-1, Ex. G at 29. The defendants nonetheless ask the Court for just such a reward by permitting them to continue the nationwide distribution of flavored e-cigarettes unapproved by the federal Food and Drug Administration ("FDA"), illegally distributed under multiple federal statutes, illegal everywhere in New York State under New York State law and everywhere in New York City under New York City law.

The Hyde Defendants' annual e-cigarette revenue of $500-$600 million (*Dkt. No*. 42-1, Ex. F at 105:1-21) moves them to ignore their above-endorsed principle and seek to dismiss the City's Amended Complaint. That their principal goal is the preservation of revenue rather than compliance with the law is the only explanation for such faulty arguments as (i) allegations of nationwide sales of e-cigarettes are insufficient to plausibly allege sales "in interstate commerce" (*Hyde Mem.* at 9); (ii) "lawfully operating" does not mean operating in compliance with the law (*id.* at 11); (iii) in amending a statute to replace the word "licensed" with the term "lawfully-operating," Congress intended the amended statute to mean "licensed" (*id.*); (iv) despite plain language granting power to a local government with a tax on cigarettes to proceed under the PACT Act against "any person" for "violations," the City's cigarette tax does not permit enforcement as to e-cigarettes (*id.* at 17); (iv) despite plain language granting the enforcement power under the

New York Public Health Law to jurisdictions having "a tax on cigarettes *or* electronic cigarettes," the City's cigarette tax does not permit enforcement as to e-cigarettes (*id.* at 22); (v) allegations of the Hyde Defendants' operation of multi-million dollar businesses through internet websites do not plausibly allege two instances of use of the wires (*id.* at 21); and (vii) despite invoices documenting $200,000-worth of e-cigarettes shipped into New York City, the City cannot plausibly allege specific delivery sales into the City by the Hyde Defendants (*id*).

The number of separate statutes that empower the City to advance claims against the Hyde Defendants is testament to the gravity of harms with which all levels of government view flavored e-cigarette sales. The City has plausibly alleged claims under statutes expressly intended to prosecute such sales. Having "eschewed regulatory compliance," the Hyde Defendants should not be rewarded by allowing their continued sales.[1]

Finally, this Court should deny Hashagen's motion to dismiss for lack of personal jurisdiction because, in support of his arguments for dismissal, he offers facts that are flatly contradicted by public records, and he also provides facts that assist the City in making a *prima facie* argument for personal jurisdiction.

## BACKGROUND

In 2018, the long-standing yearly decline in youth smoking underwent a dramatic reversal, with a quarter of U.S. high school students reporting use of a tobacco product in the past thirty days. *Am. Compl.* ¶ 41. Flavored disposable vaping devices – a type of "electronic nicotine delivery

---

[1] The Hyde Defendants' disparage the City's Corporation Counsel for "falsely claimed that '[m]any of the Defendants' products come in cartoon characters packaging that are so friendly to children [they require] a cautionary label that it is a not a toy," *Hyde Mem.* at 3 n.8. But numerous defendants—not just the Hyde Defendants—were named in this lawsuit, and it is a fact that electronic cigarettes in child-friendly packaging are ubiquitous throughout the City. Attached as Exhibits A and B to the Declaration of Eric Proshansky, dated November 20, 2023 ("*Proshansky Decl.*"), are photographs of such packages. Exhibit B shows similar child-friendly e-cigarette devices released November 18, 2023 by the FDA.

device" or "e-cigarette" was the principal driver of the explosive growth in youth nicotine use.[2] *Id.* ¶¶ 2, 35, 41. The Center for Disease Control and Prevention ("CDC") found that the substantial increase in youth tobacco use had occurred without an associated increase in consumption of combustible tobacco products, meaning the increased use was attributable to e-cigarettes alone. *Id.* ¶ 46. So popular are e-cigarettes among youth that in 2019 the total number of middle and high school students using the devices was reported to have surpassed five million. *Id.* ¶ 44. New York City was not immune to this dismaying trend: in 2021, 11% of City public high school students reported using an e-cigarette in the past month. *Id.* ¶ 45.

The injurious effects of nicotine exposure among youth and young adults cannot be overstated. Youth and young adults exposed to nicotine are more likely to become nicotine-addicted than adults, to develop addictions to other substances, to experience mood disorders, and to suffer from impaired impulse control and deficits in attention and cognition. *Id.* ¶ 47. Nicotine can "derange the normal course of brain maturation and have lasting consequences for cognitive ability, mental health, and even personality." *Id.*

E-cigarettes can cause severe respiratory damage. *Id.* ¶ 48. By October 1, 2019, 1,080 lung injury cases associated with cannabis and nicotine e-cigarette products had been reported to the CDC. *Id.* There were also 18 deaths caused by lung injuries related to e-cigarette use reported in 15 different states. *Id.* By December 2019, there were more than 2,500 reported cases of e-cigarette-related hospitalizations for lung injury, including more than 50 confirmed deaths. *Id.* New York City has not been spared, having experienced 50 cases of e-cigarette lung injury and four confirmed deaths. *Id.* E-cigarettes also pose hazards to non-users. Between April 1, 2022 and

---

[2] The Amended Complaint referred to flavored electronic cigarettes with the acronym "FDVs," ("flavored disposable vaping devices"), a term the City has discarded in favor of the broader term "flavored e-cigarettes" or "flavored electronic cigarettes" because not all flavored e-cigarettes are "disposable," *i.e.*, discarded after use.

March 31, 2023, the National Poison Data System recorded 7,045 e-cigarette exposure cases, including a 32% increase in reported poisoning from e-liquid ingestion during this period, with nearly 90% of the cases in children less than five years old. *Id.* ¶ 49.

The massive increase in the use of e-cigarettes is attributable to their high nicotine content, their availability in candy, fruit and dessert flavors, and their ability to be used surreptitiously. *Id.* ¶ 50; *see also Magellan Tech., Inc. v. United States FDA*, 70 F.4th 622, 625 (2d Cir. 2023) (e-cigarettes have "rapidly become popular – especially among young people, who have overwhelming adopted flavored [e-cigarettes] as their tobacco products of choice"). Nearly 85% of current e-cigarette users used flavored e-cigarettes. *Id.* Youth are particularly attracted to flavors – flavored e-liquids were used by 81% of first-time e-cigarette users aged 12 to 17, and 85.3% of current youth users had used flavored e-liquid in the past month. *Id.* ¶ 51.

New York State and New York City have enacted laws directly targeting the public health crisis of youth e-cigarette use. New York State prohibits retail sales of devices using flavored nicotine e-liquids. *See* N.Y. Pub. Health Law § 1399-mm-(1) (hereinafter "PHL"). The broader New York City prohibitions bar sale, possession for sale or offering for sale of flavored vapes. *See* New York City Admin. Code § 17-715(b) (hereinafter "Ad. Code"). Numerous states and municipalities around the country have enacted similar bans. *Am. Compl.* ¶ 53.

At the federal level, the FDA has constructively banned flavored e-cigarettes; only tobacco-flavored e-cigarettes have obtained the FDA pre-market authorization required under the Family Smoking Prevention and Tobacco Control Act (the "Tobacco Control Act" or the "TCA") for the legal marketing of a tobacco product to the public. *See* 21 U.S.C. § 387(g)(a)(1)-(2); *see also Am. Compl*. ¶ 37. Without pre-market authorization, a flavored e-cigarette is an "adulterated product," prohibited from "introduction or delivery for introduction into interstate commerce." *See* 21 U.S.C.

§§ 331(a), 387b (6)(A). No flavored e-cigarette has been granted pre-market authorization by the FDA. Accordingly, other than tobacco-flavored, every single flavored e-cigarette, the principal stock-in-trade of the Hyde Defendants, is illegal for distribution or sale in the United States. *Am. Compl.* ¶¶ 37-38.

To curb the illegal proliferation of flavored disposable e-cigarettes, on July 10, 2023, the City brought the instant action against several e-cigarette distributors that sell to the public in New York State and elsewhere. *Dkt. No.* 1. On August 17, 2023, the City filed an Amended Complaint, following which defendants Star Vape Corp., Nabil Hassen, Dorbes LLC d/b/a Hydevapeofficial.com, and Christian A. Smith entered into Consent Orders requiring their cessation of any e-cigarette business in the City. *See Dkt. Nos.* 57, 66. On October 16, 2023, the City moved for a preliminary injunction against the remaining defendants. *See Dkt. Nos.* 41-50. The Hyde Defendants and Donald Hashagen moved to dismiss the City's Amended Complaint on October 17, 2023. *See Dkt. Nos.*, 52, 54.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In ruling on a motion to dismiss, a court may consider material extrinsic to a complaint if that material is appropriate for judicial notice. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293 (2d Cir. 2021) ("Courts may rely on judicial notice for the factual background of the case."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422-3 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). Materials properly subject to judicial notice include public filings. *See Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003). Judicially noticed documents are typically considered for the statements they contain,

and not for the truth of those statements. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (court takes judicial notice of documents "not to prove the truth of their contents" but "only to determine what the documents stated") (cleaned up).  However, judicially-noticed documents to which there is no objection may be accepted for their truth. *Perkins v. Comm'r*, 970 F.3d 148, 152 n.2 (2d Cir. 2020) (taking judicial notice of certain filings that concern the same parties and subject matter before the court and considering them for the truth of the matters asserted because neither party disputes the contents).

The City has moved for a preliminary injunction, and the abundant record accompanying the motion is now of record in this case. *See Dkt. Nos.* 41-50. Filings between the same parties in different cases may receive judicial notice. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969) (""[W]e may properly take judicial notice of the record in that [separate] litigation between the same parties who are now before us."); *Freshman v. Atkins*, 269 U.S. 121, 124 (1925) (the court may "take judicial notice of, and give effect to, its own records in another but interrelated proceeding").  *A fortiori*, facts of record between the same parties in the *same* case *i.e.*, those accompanying the City's motion for a preliminary injunction are proper subjects for judicial notice and consideration on this motion. *See Scaminaci v. Jaffrey*, 2022 U.S. Dist. LEXIS 60966, at *1 n.1 (S.D.N.Y. Mar. 31, 2022) ("The Court also takes judicial notice of certain earlier filings and undisputed facts that came before the Court in connection with Scaminaci's earlier motion for a preliminary injunction."), *rev'd on other grounds*, *Scaminaci v. Jaffrey*, 2023 U.S. App. LEXIS 2016 (2d Cir. 2023). Some courts have even held that a party "need not seek judicial notice of documents filed in the same case." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); *Jones v. Cty. of San Bernardino*, 2022 U.S. Dist. LEXIS 141961, at *6-7 (C.D. Cal. May 12, 2022). Because they are appropriate for judicial notice, materials filed

in support of the City's motion for a preliminary injunction are referred to herein. Especially on a motion to dismiss, the truth of the facts contained in these materials is immaterial, the salient point being the pleading of those fact.

## POINT I

### THE CITY PLEADS A CLAIM FOR VIOLATIONS OF THE PACT ACT

The Hyde Defendants argue that the City has not plausibly alleged violations of the PACT Act because the City does not have standing under the PACT Act because it does not have an excise tax on e-cigarettes; the City has not alleged facts that the Hyde Defendants violated any PACT Act reporting requirement; and the City has not alleged facts that the Hyde Defendants have violated any PACT ACT delivery sales requirement. *Hyde Mem.* at 8-13. None of these arguments has merit.

### A.  The City Has The Power to Enforce the PACT Act

The Hyde Defendants offer no support for their argument that absent a tax on e-cigarettes, the City is without power to enforce the PACT Act. *Hyde Mem.* at 8-9. The argument fails under elementary principles of statutory construction. In any event, the City has such a tax.

#### 1.  The Plain Language of the PACT Act and Congressional Intent Make Clear the City has PACT Act Standing

In 2010, long before the entry into the market of e-cigarettes, Congress enacted the Prevent All Cigarette Trafficking Act of 2009 (the "PACT Act") to:

> require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers; create strong disincentives to illegal smuggling of tobacco products; provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling; make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities; increase collections of Federal, State, and local excise taxes on cigarettes and smokeless tobacco; and prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal Internet or contraband sales.

Pub. L. No. 111-154 §§ (1)(c)(1)-(6), *codified* at 15 U.S.C. § 375 *et seq.* In 2020, when the youth e-cigarette epidemic exploded, Congress again addressed youth nicotine use, this time as a principal concern, and expanded the PACT Act's existing restrictions on cigarette sales to encompass e-cigarettes. *See Preventing Online Sales of E-Cigarettes to Children Act*, Pub. L. No. 116-260 § 602 (the "E-Cigarette Amendments"). The only purpose of the E-Cigarette Amendments is evidenced by the title: "Preventing Online Sales of E-Cigarettes to Children Act." Pub. L. No. 116-260 § 601. The E-Cigarette Amendments expanded the PACT Act's provisions to e-cigarettes and did so simply, by defining e-cigarettes, their constituent components, and the nicotine-laden "e-liquids" to be "cigarettes." *See* 15 U.S.C. § 375. The intent to be drawn from Congress's choice to define e-cigarettes as "cigarettes" is that Congress intended the PACT Act to apply identically to e-cigarettes as to conventional, tobacco-burning cigarettes.

The Hyde Defendants, directly contrary to this intent, and with no supporting authority, conjure up an imaginary dual enforcement regime whereby jurisdictions that tax conventional cigarettes are empowered to enforce the PACT Act, but only against cigarette sellers. Only jurisdictions that tax "e-cigarettes" are empowered to enforce the PACT Act against e-cigarette sellers. *See Hyde Mem.* at 8. This construction of course departs radically from the PACT Act's plain language. "Every exercise in statutory construction must begin with the words of the text." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003). "If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words." *See, e.g., Rubin v. United States*, 449 U.S. 424, 430 (1981); *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998). The Hyde Defendants have pointed to no ambiguity.

In the 2010 PACT Act, localities that taxed conventional cigarettes were empowered to sue PACT Act violators. The language granting that power was not touched by the E-Cigarette Amendments, and stated originally and post-amendment that:

> [A] local government . . . *that levies a tax subject to section 2A(a)(3) [15 USCS § 376a(a)(3)]*, through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations of this Act [15 USCS §§ 375 *et seq.*] by *any* person or to obtain any other appropriate relief from *any person for violations of this Act*.

*See* 15 U.S.C. § 378(c)(1)(A) (emphasis added). Ever since the enactment of the PACT ACT, the City has "levie[d] a tax subject to section 2A(a)(3) [15 USCS § 376a(a)(3)]." *Id.* That tax, codified at Ad. Code § 11-1302 has in the past gone unchallenged as the City's ticket of admission to PACT Act enforcement actions.[3] The Hyde Defendants even concede that the this tax has been sufficient to provide the City with enforcement powers under the PACT Act with respect to conventional cigarette sellers, *Hyde Mem.* at 9 n.17 & 1, n.22, a conclusion reflected in the City's many PACT Act enforcement actions. *See infra* n.12.

The plain language of the PACT Act in § 378(c)(1)(A) provides that an action to "prevent and restrain" PACT Act violations may be brought by a government that levies a "tax subject to section 2A(a)(3) [15 USCS § 376a(a)(3)]."[4] 15 U.S.C. § 376a(a)(3) reads as follows:

> (3) all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place, including laws imposing—
>
> (A) excise taxes;

---

[3] "There is hereby imposed and shall be paid a tax on: 1. All cigarettes possessed in the city for sale except as hereinafter provided; 2. The use of all cigarettes in the city." Ad. Code § 11-1302.

[4] The phrase "a tax subject to" 15 U.S.C. § 376a(a)(3), is something of an awkward locution. 15 U.S.C. § 376a(a) provides that "with respect to delivery sales into a specific State and place, each delivery seller shall comply with ... (3) all State, local, tribal, and other laws generally applicable to sales of cigarettes … including laws imposing – (A) excise taxes." So a tax "subject to" 15 U.S.C. § 376a(a)(3) is simply a tax law with which a delivery seller must comply.

(B) licensing and tax-stamping requirements;

(C) restrictions on sales to minors; and

(D) other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco.

First, tax laws are among the cigarette-related laws and regulations with which delivery sellers must comply, so that the City levies a cigarette tax that is "subject to" section 2A(a)(3) [15 USCS § 376a(a)(3). Second, the City's present action is one to "prevent and restrain" PACT Act violations *by any person*, here, e-cigarette sellers. Accordingly, under the plain language of the PACT ACT, the tax that has historically given the City PACT Act standing against conventional cigarette sellers, gives the City standing against e-cigarette sellers. Nothing in the amended PACT Act – the Hyde Defendants point to no language – contradicts the above plain language that a jurisdiction that levies a cigarette excise tax has the power to bring an action to prevent and restrain PACT Act violations against any person, which would include e-cigarettes sellers.

A separate section of the PACT Act, 15 U.S.C. 376a (c), further supports that enforcement power is not tied to whether a jurisdiction levies an e-cigarette tax. That section requires delivery sellers to keep records of any delivery sale, and make them available, *inter alia*,

> to tobacco tax administrators of the States, to local governments and Indian tribes that apply local or tribal taxes on cigarettes …. *to the attorneys general of the States, to the chief law enforcement officers of the local governments* … and to the Attorney General of the United States … to ensure the compliance of persons making delivery sales with the requirements of this Act.

15 U.S.C. § 376a (c) (emphasis added). The provision makes clear that delivery sellers must provide records to "tobacco tax administrators of the States, to local governments and Indian tribes *that apply local or tribal taxes on cigarettes,*" but also to "*the attorneys general of the States, to the chief law enforcement officers of the local governments* and Indian tribes, and to the Attorney General of the United States." The structure of that sentence plainly distinguishes between the

obligation to provide records to "local governments and Indian tribes *that apply local or tribal taxes on cigarettes,*" and the obligation to provide records to the "chief law enforcement officer of the local governments," without the requirement that the local government be one "that appl[ies] local or tribal taxes on cigarettes." Under the language of this provision, the local government need not have any tax, on cigarettes or e-cigarettes, to acquire delivery sales records.[5] In short, the City's access to the records, or at least the access of the Corporation Counsel,[6] does not require the presence of an e-cigarette tax, or any tax at all.[7] Moreover, because those records are made available to "ensure the compliance of persons making delivery sales with the requirements of this Act," this provision suggests that the chief law enforcement officer of a local government need not rely on any tax to be afforded enforcement powers. *Id.*

The absence of any change in the E-Cigarette Amendments affecting the City's enforcement powers under 15 U.S.C. § 378(c)(1)(A) further supports the conclusion that an "e-cigarette tax" is not a prerequisite to enforcement. Prior to amendment, the original language of the PACT Act empowered the City as a local government that levies a tax "subject to" 15 USCS § 376a(a)(3) to "bring an action in a United States district court to prevent and restrain violations of [the PACT Act] *by any person.*" 15 U.S.C. § 378(c)(1)(A) (emphasis added). That language was left unchanged by the E-Cigarette Amendments. E-cigarette sellers are certainly included in the term "*any person.*" Congress's decision to leave "any person" untouched is wholly inconsistent

---

[5] Section 15 U.S.C. § 376a (c) and section  15 U.S.C. § 378(c)(1)(A) are not redundant of one another with respect to the provision of records.  The former requires the local government to demand the records; the latter requires delivery-sellers to make the records available without a request.

[6] For purposes of the PACT Act, the Corporation Counsel of the city of New York has been held to be the chief law enforcement officer. *City of New York v. Chavez*, 2012 U.S. Dist. LEXIS 42792 at *7 n.6 (S.D.N.Y. 2012).

[7] As discussed below, the City requested delivery records under the authority of this section of all defendants, but none were produced.

with a contention that an e-cigarette tax is needed to enforce the PACT Act against e-cigarette sellers.

Construing the PACT Act as authorizing enforcement against any nicotine purveyor, even when a jurisdiction taxes conventional cigarettes but not e-cigarettes, also eliminates the clash with congressional intent created by the Hyde Defendants' proposed reading of the PACT Act. The original PACT Act was "aimed primarily at combating three evils: tobacco sales to minors, cigarette trafficking, and circumvention of state taxation requirements." *Gordon v. Holder*, 721 F.3d 638, 642 (2013) (quotation marks and citations omitted). When enactment of the PACT Act was under consideration, the House Judiciary Committee reiterated its concern that illegal cigarette smuggling "seriously harms public health by making cheaper tax-free cigarettes available, including to young people." *Prevent All Cigarette Trafficking Act of 2009* (Pact Act), H.R. Rep. No. 111-117 § 10 (May 18, 2009). If only jurisdictions with an e-cigarette tax have e-cigarette enforcement powers, the Congress's original concern with youth nicotine use would be undermined entirely because municipalities would be powerless to enforce the ACT against some of its biggest violators.

The PACT Act findings in 2010 expressed Congress's intent to "create strong disincentives to illegal smuggling of tobacco products" and "provide government enforcement officials with *more effective* enforcement tools to combat tobacco smuggling." *PACT Act*, Pub. L. No. 111-154 §§ (1)(c)(1)-(6) (emphasis added). Congressional concerns and goals apply no differently to e-cigarettes as to conventional cigarettes. Congress's "enforcement tools" would be no tools at all if municipalities with standing under the original PACT Act are now powerless to bring suit against e-cigarette sellers because they do not have a specific e-cigarette tax. Congress's goals are not

fostered, and instead *are* impeded by, layering onto localities an additional "hoop" to be jumped through to gain e-cigarette enforcement powers under the PACT Act.

Whether a jurisdiction imposes a specific "e-cigarette tax" is simply not relevant to the stated congressional goals: flavored e-cigarette use by youth is no less harmful because the devices are untaxed. The Hyde Defendants' construction eliminates PACT Act e-cigarette enforcement powers for any jurisdiction taxing cigarettes but not e-cigarettes. Such a significant deviation from precedent would be expected to come with some reason or benefit and yet Congress provided none in the form of findings or legislative history; and the Hyde Defendants certainly do not. The E-Cigarette Amendments were enacted at the height of skyrocketing e-cigarette use by children prompting calls for vigorous enforcement, *see supra* at 8, making it highly unlikely that Congress would have created a meaningless statute by reducing the number of jurisdictions with enforcement powers.[8]

The legislative history is of the E-Cigarette Amendments to the contrary, solidifying a conclusion that Congress did not intend for jurisdictions with a separate e-cigarette excise tax to be the sole enforcers of the PACT Act against e-cigarette-related violations. Congress's intent in

---

[8] Congressional action in the year of the PACT Act's enactment further strengthens the argument *against* holding e-cigarette enforcement powers contingent on an e-cigarette excise tax. When statutes address the same 'broader context" and are enacted for the same "general purpose," and at the same time, "the duty to harmonize them is particularly acute." *United States v. Gallenardo*, 579 F.3d 1076, 1083 (9th Cir. 2009). The TCA refers to "the use of tobacco products" by children in the United States as "a pediatric disease of considerable proportions," finding that "[v]irtually all new users of tobacco products are under the minimum legal age to purchase such products." *Family Smoking Prevention and Tobacco Control Act*, Pub. L. 111-31 §§ 2(1), 2(4). The TCA contained goals parallel to the central goal of the PACT Act: "[T]o strengthen legislation against illicit trade in tobacco products," *id.* § 3(10),by building powerful tobacco-control rules to reduce the use of tobacco products by youth on a national level. Federal, State, and local coordination in enforcing the PACT Act was a key element of that plan, evidenced by the PACT Act enforcement authority given to all of those levels of government. The Hyde Defendants provide no reason why Congress would in the E-Cigarette Amendments later reduce enforcement efforts by conditioning enforcement on the presence enactment of a specific e-cigarette excise tax, especially where TCA noted that past tobacco-regulation efforts had "failed adequately to curb tobacco use by adolescents."

passing the E-Cigarette Amendments was to make e-cigarettes subject to the same regulatory

scheme applicable to traditional cigarettes:

> Curbing internet sales is, therefore, one way for Congress to address the prevalent
> use of e-cigarettes by young people. Because the Jenkins Act regulates the delivery
> sale of cigarettes to minors – and the PACT Act extended the Jenkins Act to cover
> Internet sales – the amendments proposed by H.R. 3942 are an appropriate and
> effective vehicle *to extend coverage of the Jenkins Act to regulating the delivery
> sale of e-cigarettes.*

H.R. Rep. No. 116-120 (Oct. 18, 2019). That regulatory scheme includes state, local, and tribal

enforcement of the PACT Act. Congress did not add any language stating that municipalities need

to rely on a separate e-cigarette excise tax to enforce the amended PACT Act against e-cigarette

sellers. Accordingly, states that had standing under the original PACT Act continue to have

standing after the E-Cigarette Amendments. "[C]ourts presume that Congress will use clear

language if it intends to alter an established understanding about what a law means; if Congress

fails to do so, courts presume that the new statute has the same effect as the previous

version." *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 988 (7th Cir. 2001) (citing *Cottage Savs. Ass'n

v. Commissioner*, 499 U.S. 554, 562, (1991)).[9]

The Hyde Defendants unreasonably argue that at the same time that Congress defined e-

cigarettes as "cigarettes" it also, without comment, vitiated the e-cigarette enforcement powers of

localities (and Indian tribes). Congress had already recognized in the Tobacco Control Act that

past tobacco-regulation efforts have "failed adequately to curb tobacco use by adolescents," Pub.

L. 111-31 §§ 2(1), 2(4), and would not have wished to reduce enforcement by imposing the

pointless prerequisite of an e-cigarette tax. It is more reasonably concluded that Congress

---

[9] The imposition of a tax is certainly not a *sine qua non* for PACT Act enforcement powers. Cigarette manufacturers
and importers, which do not impose cigarette taxes, have virtually the same enforcement authority as state and
localities. *See* 15 U.S.C § 378 (d) (any person licensed to manufacture or import or warehouse tobacco products "may
bring an action in an appropriate United States district court to prevent and restrain violations of [the PACT] Act.").

understood that it could target e-cigarettes by replicating the same standing requirement used successfully against conventional cigarette sellers for the decade prior – any locality that already had a tax on cigarettes could simply bring to bear against e-cigarette sellers the same PACT Act enforcement powers used against conventional cigarettes. The only way to give full effect to the statutory purpose of the E-Cigarette Amendments is to conclude that cities like New York have the same enforcement authority under the PACT Act against e-cigarettes as for traditional cigarettes, evidenced by Congress's choice to define e-cigarettes as "cigarettes." *See Ankenbrandt v. Richards*, 504 U.S. 689, 700 (1992).[10]

## 2.  The City Imposes a Tax Applicable to E-Cigarettes

Even were the Court to construe the PACT Act to require an "e-cigarette tax" to enforce violations involving e-cigarettes, the City meets this requirement by levying a City sales tax on electronic cigarettes. *See* Ad. Code § 11-2001(a) ("There are hereby imposed and shall be paid all of the sales . . . taxes described in article twenty-eight of the tax law.").[11] PACT Act enforcement powers extend to a jurisdiction that imposes a tax "subject to section 2A(a)(3) [15 USCS § 376a(a)(3)]." Section 15 U.S.C. 376a(a)(3) states that cigarette sellers must comply with all "laws

---

[10] Congress is presumed to have been aware of case law concerning its statutes. *Canale v. Colgate-Palmolive Co.*,, 2017 U.S. Dist. LEXIS 4061, at *11 (S.D.N.Y. Jan. 10, 2017); *accord Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1330 (Fed. Cir. 2015) ("Congress is presumed to know the background against which it is legislating."); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) ( ("Congress is presumed to know the current legal landscape against which it legislates."). Congress is thus presumed to know that the City of New York has brought more PACT Act enforcement actions than the combined actions of all other federal, state and local jurisdictions. *See New York v. UPS*, 942 F.3d 554 (2d Cir. 2019); *City of N.Y. v. Nappi*, , 2021 U.S. Dist. LEXIS 238140 (S.D.N.Y. Dec. 10, 2021); *City of N.Y. v. United States Postal Serv.*, 519 F. Supp. 3d 111 (E.D.N.Y. 2021); *New York v. UPS*,, 2017 U.S. Dist. LEXIS 80907 (S.D.N.Y. May 25, 2017); *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019); *City of N.Y. v. Gordon*, 2018 U.S. Dist. LEXIS 86676 (S.D.N.Y. May 22, 2018); *City of N.Y. v. LaserShip, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2014); *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 142127 (E.D.N.Y. Sep. 30, 2013); *City of N.Y. v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103 (S.D.N.Y. Sep. 9, 2013); *City of N.Y. v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533 (E.D.N.Y. Aug. 17, 2012). Nothing in the E-cigarette Amendments suggests Congress would want to pull those teeth.

[11] Article 28 of the Tax Law provides for a sales tax on "(a) The receipts from every retail sale of tangible personal property." N.Y. Tax L. § 1105.

generally applicable to the sales of cigarettes, . . . *including* laws imposing excise taxes" (emphasis added). The word "including" indicates a "partial list," not an exhaustive list, *see Coyoy v. United States*, 526 F. Supp. 3d 30, 36 (D.N.J. 2021) (quoting *Black's Law Dictionary* (11th ed. 2019)), and a sales tax is thus included in "all laws." A sales tax also satisfies the standing requirement that a jurisdiction impose a tax "subject to" 15 U.S.C. § 376a(a)(3) because that section specifies that cigarette and electronic cigarette sellers must comply with "all State, local, tribal and other laws generally applicable to sales of cigarettes" in the State and place into which the products are to be delivered, including, *inter alia*, "*other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes*." 15 U.S.C. § 367a(a)(3)(D). A sales tax is certainly a payment obligation and a legal requirement relating to the sale of cigarettes, and thus a sales tax is "subject to" 15 USC § 376a(a)(3) in the sense that it is one of the provisions with which sellers must comply. Accordingly, the City meets the standing requirement of the PACT Act by imposing a tax "subject to" 15 U.S.C. § 376a(a)(3).

### B. The Hyde Defendants Sell E-Cigarettes In Interstate Commerce and Must Report Sales Into New York City

The Hyde Defendants argue that to state a PACT Act claim the City must allege that they shipped electronic cigarettes from a location *outside* of the State of New York (or through "Indian Country") to their "ultimate destination in New York City." *Hyde Mem.* at 9-10.

The argument – again – is unsupported by the PACT Act's plain language, omits crucial statutory language and ignores allegations of the Amended Complaint. In fact, the PACT Act's reporting requirements are not dependent upon whether a particular shipment of electronic cigarettes is shipped "from a location *outside* of the State of New York" into New York City. *Id.* Instead, the PACT Act requires reporting by "any person who sells, transfers, or ships for profit

cigarettes or smokeless tobacco in interstate commerce" when such persons ship cigarettes into a jurisdiction that taxes cigarettes. 15 U.S.C. §376(a) states that:

> Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless tobacco for such sale, transfer, or shipment [shall register with and file shipping reports to federal, state and local officials].

"Interstate commerce" is "commerce between a State and any place outside the State," 15 U.S.C. §375 (10), but the use of the term in the statute is a general one, to the effect that persons "in the business of shipping in interstate commerce" must file reports, not that a particular shipment must be from outside the state to trigger a reporting requirement. The statute provides that any person who ships cigarettes for profit, *i.e.*, regularly ships cigarette in interstate shipping must file reports when they ship cigarettes into a jurisdiction taxing cigarettes.[12]

The Hyde Defendants are incorrect in contending (*Hyde Mem.* at 9-10) that reporting applies only to sales routed through other states or Indian Country before delivery into New York City, and yet again offer a construction that cannot be squared either with congressional intent or with the language of the statute.

1.    **Contrary to Congressional Intent**. In enacting the PACT Act, Congress was especially concerned with "remote" sales, *i.e.*, non-face-to-face or "delivery sales." *See, e.g.*, *PACT Act*, Pub. L. No. 111-154 § (1)(c)(4) ("the sale of illegal cigarettes and smokeless tobacco over the Internet, and through mail, fax, or phone orders, makes it cheaper and easier for children to obtain tobacco products"). At the same time, Congress explicitly found that "*the intrastate sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate*

---

[12] The provision making the statute applicable to persons who ship "in interstate commerce" was likely included to assure that the legislation was within Congress' powers.

*commerce.*" *Id.* § 1(10). To implement a schema that does not require reporting for sales within a single state by distributors' otherwise generally engaged in interstate sales (which is what the Hyde Defendants argue for), would allow intrastate sales to escape PACT Act regulation and would defeat the reporting requirement of the PACT Act. All that a delivery seller need do to evade PACT Act reporting would be to have its orders delivered to the buyer from within the buyers' state. There is no basis to presume that Congress wished to exempt sales of cigarettes or e-cigarettes simply because an individual shipment by an interstate business did not cross state lines.

   **2.    Statutory Language** – Construing all of the language of 15 U.S.C. §376(a) together, as required by the rules of statutory construction, *Nat'l Ass'n of Tobacco Outlets v. City of N.Y.*, 27 F. Supp. 3d 415, 433 (S.D.N.Y. 2014), further strongly supports a conclusion that reporting requirements apply generally to entities engaged in interstate commerce, not to particular shipments. 15 U.S.C. §376(a) in addition to requiring reporting by "[a]ny person who sells … cigarettes … in interstate commerce," also requires reporting by any person "*who advertises or offers* cigarettes … *for such sale*," *id*. (emphasis added), with "such sale" being sales in interstate commerce. All that is required to trigger reporting is that a person "advertises" or "offers" cigarettes for sale in interstate commerce shipment, with no requirement that only the sales that cross state lines need be reported by one who advertises or offers for sale "in interstate commerce." This construction recognizes, as did Congress, that "*the intrastate sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate commerce*," *PACT Act*, Pub. Law 111-154 § 1(10), and thus are within congressional regulatory powers.  The reporting requirement is generally applicable to those who advertise or offer cigarettes for interstate sale; there is no reporting exemption that applies to sales that happen to be intrastate.

Still further statutory language rebuts the contention that shipments within a single state are exempt from reporting. Section U.S.C. 376a (c) provides:

c) **Records.**

(1) In general. Each delivery seller shall keep a record of any delivery sale, including all of the information described in section 2(a)(2) [15 USCS § 376(a)(2)], organized by the State, and within the State, by the city or town and by zip code, into which the delivery sale is so made.

* * *

(3) Access for officials. Records kept under paragraph (1) shall be made available to tobacco tax administrators of the States, to local governments and Indian tribes that apply local or tribal taxes on cigarettes or smokeless tobacco, *to the attorneys general of the States, to the chief law enforcement officers of the local governments* and Indian tribes, and to the Attorney General of the United States in order to ensure the compliance of persons making delivery sales with the requirements of this Act [15 USCS §§ 375 et seq.].

15 U.S.C. § 376a (c) (emphasis added).

The plain language of this section requires "each" delivery seller (the Hyde Defendants nowhere dispute that they are delivery sellers), to maintain records "of *any* delivery sale." There is no limitation of this requirement to delivery sellers that ship cigarettes "in interstate commerce," and there is affirmative language that reports are required for "*any*" delivery sale and "each" delivery seller. Delivery sellers must provide records of any delivery sale, interstate or not. The City's access to the records, or at least the access of the Corporation Counsel, does not require the records to be of sales in interstate commerce.

**3.**     **The Hyde Defendants Sell Cigarettes In Interstate Commerce** – The Amended Complaint is replete with allegations that the Hyde Defendants "sell cigarettes in interstate commerce" in distributing e-cigarettes from New York State to places outside of New York State and hence have reporting responsibilities to the City when they ship into the City. As to Magellan, the Amended Complaint alleges Magellan to be the "master distributor for all Hyde and Juno-

branded product" *Am. Compl.* ¶ 63.  As a master distributor, Magellan must engage in (*e.g.*, ship for profit) interstate commerce, and Magellan so admits.  *Dkt. No.* 42-1, Ex. J, ¶ 4 ("Magellan Technology, Inc., is a corporation headquartered in Buffalo, New York. Magellan distributes [e-cigarettes] nationwide, including in [Texas]").

Magellan also purchases product in China, and that product reaches New York City at Magellan's direction.  *Am. Compl.* ¶ 63.  Even if there is a Buffalo to New York City leg of that journey – Magellan cannot introduce facts extrinsic to the Amended Complaint – that portion of the trip is in interstate commerce. *See Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943) (intrastate activity remains interstate in character "[i]f there is a practical continuity of movement from the manufacturers or suppliers without the state" to warehouses and customers within the state); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 223 (2d Cir. 2002) (same); *Gao v. Jian Song Shi*, 2021 U.S. Dist. LEXIS 83716, *14 (E.D.N.Y. 2021) (allegations that restaurant "provided services and purchased and handled goods that moved in interstate commerce" sufficient to meet interstate commerce requirement). Magellan products shipped into New York City originate in China and are "in interstate commerce."

As to Demand Vape, the Amended Complaint alleges that Demand Vape "is an online wholesaler and retailer of electronic nicotine delivery devices and e-liquids," *Am. Compl.* ¶ 80, and "in its own words, is one of the largest, if not the largest, electronic cigarette distributor in the United States, offering approximately 30,000 products and selling to approximate 5,000 retailers in 49 states and international," *id.* ¶ 81. Demand Vape's website trumpets the fact that "Demand Vape products are available to customers within the United States with U.S. shipping addresses." https://demandvape.com/delivery-information (last visited October 27, 2023), and accordingly the website stands as an admission that Demand Vape "sells, transfers, or ships for profit cigarettes or

smokeless tobacco in interstate commerce." These allegations establish that the Hyde Defendants

not only "sell … for profit cigarettes … in interstate commerce" but also "advertise or offer for

sale" cigarettes in interstate commerce and must accordingly file PACT Act reports with the City.

If still more conclusive evidence of Demand Vape's interstate commerce is sought, the

Court may take judicial notice of the statement on Demand Vape's website that:

> Demand Vape products are available to customers within the United States
> with U.S. shipping addresses. Deliveries are supplied by The United States
> Postal Service (USPS) or UPS. Typically, any order placed by 2 PM Eastern
> Standard Time is shipped the same day. Everything else is shipped the next
> business day.

https://demandvape.com/delivery-information (last visited October 27, 2023). *See Brown v. Great*

*Neck Park Dist.*, 2023 U.S. Dist. LEXIS 51773, at *1 n.1 (E.D.N.Y. Mar. 27, 2023) (absent reason

to question exhibits' accuracy or reliability, court takes judicial notice on motion to dismiss of

exhibits taken directly from Defendant's website.").[13]

### C. The City Plausibly Alleges Violation of the PACT Act's Delivery Sales Requirements by the Hyde Defendants

The Hyde Defendants do not affirmatively state their compliance with the PACT Act's

delivery sales requirements, *Hyde Mem.* at 10-14, allowing an inference of their non-compliance.

The facts stated by the City in the Amended Complaint sufficiently allege that the Hyde

Defendants violate the PACT ACT by making unreported delivery sales to "consumers" – defined

as anyone other than a "lawfully operating" cigarette business. 15 U.S.C. § 375 (4). As shown

below, as a matter of law, not a single purchaser of flavored e-cigarettes from the Hyde Defendants

operates lawfully in the City and thus every single one is a "consumer."

### 1.     "Lawfully Operating" Means Operating in Compliance with the Law

---

[13] *Accord Seljak v. Pervine Foods, LLC*, 2023 U.S. Dist. LEXIS 36111, at *6 n.4 (S.D.N.Y. Mar. 3, 2023) ("The Court takes judicial notice of the numerous videos publicly available on defendant's website."); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 148 (S.D.N.Y. 2022) ("A court may also consider matters of which judicial notice may be taken... . including information on a party's publicly available website, as long as the authenticity of the site is not in dispute.").

A PACT Act "delivery sale" is "any sale of cigarettes or smokeless tobacco to a consumer" if the consumer and the seller are not physically in one another's presence when the product is ordered or received. *Id.* § 375(5)(A)-(B). A "consumer" is "any person that purchases cigarettes or smokeless tobacco," except for "lawfully operating" manufacturers, distributors, wholesalers, and retailers. *Id.* § 375(4).

The Hyde Defendants have manufactured their own definition of "lawfully operating," asserting, as usual without citation, that "lawfully operating" as used in the PACT Act means no more than the possession by an e-cigarette seller of "the required registration or license for selling electronic cigarettes." *Hyde Mem.* at 11.[14] That view i) runs counter to the plain meaning of "lawfully operating"; ii) has been rejected by prior court decisions on the subject; iii) and is inconsistent with the interpretation by the Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF"), the federal agency charged with administering and enforcing the PACT Act. But perhaps the most definitive rejection is found in the fact that it is Hyde Defendants' argument, not the City's that meets the legal definition of a statutory "absurd result."

    a.    **Plain Meaning** – A "fundamental canon of statutory construction" requires that, as here, an undefined word or phrase used in a statute is normally given its ordinary, common sense or natural meaning. *See Perrin v. United States,* 444 U.S. 37, 42 (1979). "Black's Law Dictionary defines 'lawful' as '[n]ot contrary to law[.]'" *California v. Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, *33 (E.D. Cal. Sept. 7, 2023) (quoting *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015) (quoting *Black's Law Dictionary* 152 & 965 (9th ed. 2009)).

---

[14] Even if the Hyde Defendants' definition of "lawfully operating" were correct, the City has shown that at least 90% of the e-cigarette retailers in the City, many of whom carry Hyde and Elf Bar products, are unlicensed. *Dkt. No.* 43, ¶ 8; Ex. A; *Dkt. No.* 46 ¶ 3 (City issued 4800 summonses for unlicensed sales of tobacco products, including e-cigarettes). All of those unlicensed businesses are "consumers" even under the Hyde Defendants' own formulation, incorrect as it is.

Accordingly, a "lawfully operating" tobacco business is one operating "not contrary to law," referring to "law" in general, not to "a" law and certainly not to a "licensing law." The Amended Complaint alleges that as a matter of law *no* purchaser of flavored e-cigarettes can by definition be "lawfully operating" because the purchases are all "contrary to law," namely the Ad. Code, which prohibits selling, offering for sale, or even possessing flavored e-cigarettes with intent to sell.  Ad. Code § 17-715. So too are sales by Hyde Defendant customers of flavored e-cigarettes without the FDA approval expressly denied to the Hyde Defendants' products and other flavored brands. The Hyde Defendants' customers, therefore, violate at least the City flavor ban and the other federal, and state laws alleged in the Amended Complaint and cannot conceivably be "operating lawfully" under the plain meaning of the term. *See Am. Compl.* ¶ 118.[15]

The decisions of several courts align with the City's interpretation. In *City of New York v. Hatu*, 2019 U.S. Dist. LEXIS 91576, *46-47 (S.D.N.Y. May 21, 2019), the court held that retailers operating in violation of numerous statutes – including the Contraband Cigarette Trafficking Act and N.Y. PHL § 1399-*ll* – as part of "an illegal cigarette distribution scheme" were not "lawfully operating" for purposes of PACT Act liability. *Id.* In *New York v. Grand River Enterprises Six Nations*, the court held that tribal cigarette wholesalers and resellers were not "lawfully operating"

---

[15] All of the the cases cited by the Hyde Defendants are inapposite. In *Johnson v. United States*, 529 U.S. 694 (2000), the Court did not replace a term used in a prior version of a statute with a new term – as the Hyde Defendants seek to do here by replacing "lawfully operating" with "licensed." In *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, the court held that if the "ordinary meaning of a statute" fails "to provide sufficient guidance," then the court can look to a prior statute. 171 F.3d 818, 823 (3d Cir. 1999); *see also Frederickson v. Luedtke Constr. Co.*, 427 F. Supp. 1309, 1310 (W.D. Mich. 1977) (same). Here, the ordinary meaning of "lawfully operating" does provide sufficient guidance – the Hyde Defendants merely pretend that it does not. Moreover, the court in *Liberty Lincoln-Mercury* was interpretating a word, the plain meaning of which was unclear, by considering a different, related statute that defined the same word. *Id.* at 824. Here, the Hyde Defendants are asking the Court to do something quite different – to replace a phrase whose plain meaning ("lawfully operating") is clear – with a completely different word ("licensed") *that was removed from the statute by amendment*. For the Hyde Defendants to provide authority for their argument they must cite cases illustrating that in amending statutes Congress will replace a term ("licensed") with a different term ("lawfully operating") but intending the statute's meaning to remain the same.

because they possessed untaxed cigarettes in violation of New York State's excise tax laws, despite being licensed by their tribe. 2020 U.S. Dist. LEXIS 236928, at *36-37 (W.D.N.Y. Dec. 15, 2020). And, in *California v. Azuma Corp.*, customers were held not to be "lawfully operating" because they were unlicensed, but also because they did "not remit applicable taxes to California." 2023 U.S. Dist. LEXIS 159790, at *31. Courts clearly construe the phrase "lawfully operating" to mean far more than having a "necessary state or local registration or license." *Hyde Mem.* at 11.

The meaning attributed by the City to "lawfully operating" is identical to ATF's construction of the PACT Act, which advises cigarette sellers that to be "lawfully operating," and therefore exempt from "delivery sales" requirements, a person must "comply with Federal, State, and Tribal Law." *See* Declaration of Eric Proshansky dated November 20, 2023 ("*Proshansky Dec.*"), Ex. C.[16] More to the point, ATF advises cigarette sellers that possession of appropriate Tribal licenses does not exempt the seller from compliance with applicable local, state, and Federal law and regulations. *Id.*; *see also Proshansky Decl.* Ex. D.

The City's position is also consistent with the PACT Act requirement that demands compliance by delivery sellers with the broadest possible range of cigarette-related laws. *See*, *e.g.*, 15 U.S.C. § 376a(a)(3) (delivery sellers must comply with "all State, local, tribal, *and other* laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place") (emphasis added). Congress would hardly mandate extremely broad legal compliance by delivery sellers but allow them to make delivery sales to "licensed" customers that freely violate the very same cigarette laws with which delivery sellers themselves must comply.

---

[16] Ltr. dated June 3, 2023 from Matthew J. Brown, Acting Chief, Operational Intelligence Division, to Administrator, Cigarette Distribution Business, 29 Palm Band of Mission Indians) at 2.

The Hyde Defendants' argument is that "lawfully operating" means the same thing as "licensed," *Hyde Mem.* at 11, which was the term used in the Jenkins Act prior to its amendment into the PACT Act. But statutes are amended to change (or clarify) their meaning, not to maintain the *status quo* but with new words. "Licensed" and "lawfully operating" have two very different meanings, with "licensed" in fact being far more limited than what it means to be "lawfully operating." In the pre-PACT Jenkins Act, Congress specified "licensed" when it wished licensure to serve as an exemption from reporting requirements. If Congress wished to continue specifying "licensed" to exempt reporting of delivery sale, it would have left the word untouched not changed it to "lawfully operating."

**b. The Hyde Defendants' Position, Not the City's, Yields an Absurd Result –** The Hyde Defendants' construction of "lawfully operating" flies in the face of the intent of the PACT Act and the E-Cigarette Amendments. The PACT Act is "aimed primarily at combating three evils: tobacco sales to minors, [illicit] cigarette trafficking, and circumvention of state taxation requirements." *Gordon*, 721 F.3d at 642; *supra* at 12. The E-Cigarette Amendments had as their principal purpose the protection of children from nicotine addiction. *See supra* at 8. The Hyde Defendants' interpretation of "lawfully operating" completely undermines these goals by, for example, deeming e-cigarette retailers that sell to minors as "lawfully operating," such that the Hyde Defendants would not have to report sales to them, as long as they are licensed. This defies common sense – licensure is not a license to violate the law.

The Hyde Defendants assert that requiring their customers to be "lawfully operating" as defined by the City, the courts and ATF would lead to "absurd results," because distributors like themselves cannot possibly know whether their customers comply with all laws. *Hyde Mem.* at 12-13. It is that very argument that yields the absurd result, allowing the Hyde Defendants to sell to

"licensed" customers that buy illegal products – flavored e-cigarettes – all while claiming the impossibility of knowing whether the customers were "lawfully operating." In reality, the moment the Hyde Defendants receive customer orders for the non-FDA approved, flavored electronic cigarettes prohibited under (at least) New York law they have everything they need to know, without more, that the customer is not "lawfully operating." The customer is hence a "consumer" and Hyde Defendants must report its sales to them.

The "rare cases" in which the "plain meaning of a statute may not be controlling," are those in which attributing a literal meaning to the statute would lead to "absurd results" by producing results "demonstrably at odds with the intentions of [the statute's] drafters." *Salute v. Startford Greens Garden Apts.*, 136 F.3d 293, 297 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)). This case is not one of those rare cases, but the opposite. The literal meaning of "lawfully operating" yields precisely the result sought by Congress – a prohibition on (or reporting of) the Hyde Defendants' shipments to tobacco businesses selling flavored e-cigarettes in violation of federal, state and local law. In asserting that the PACT Act exempts delivery sellers from reporting their delivery sales to an *unlawfully* operating customer solely on the ground that the customer is "licensed," it is the Hyde Defendants argue for an "application of a statute" that "will produce a result demonstrably at odds with the intentions of the drafters and hence absurd. *Salute*, 136 F.3d at 297.

**c.    The Rule of Lenity Is Inapplicable** – As to the Hyde Defendants' argument that the "rule of lenity" mandates a narrower reading of the statute (*Hyde Mem.* at 13), the Supreme Court has squarely held that, "the touchstone of the rule of lenity is statutory ambiguity." *Burgess*, 553 U.S. at 135 (quoting *Bifulco v. United States*, 4466 US. 381, 387 (1980)). There is no statutory

ambiguity in the term "lawfully operating." Accordingly, the rule of lenity and the cases cited by Defendants in support of its use do not apply.[17]

### 2. The City Need Not, But Does, Allege Specific Sales

The Hyde Defendants seek to impose a heightened pleading standard not required under the Federal Rules to identify delivery sales, asserting that the City must identify "*specific sale[s]*" by Defendants. *Hyde Mem.* at 14. As usual the Hyde Defendants offer no authority on the issue.

A complaint must contain "factual allegations" "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That standard "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (a plaintiff need only plead "factual information that makes the inference of culpability plausible").

The Amended Complaint goes far beyond this standard as to delivery sales by pleading that Magellan is a "master distributor" of Hyde Products, *Am. Compl*. ¶ 63, and Demand Vape services 5,000 retailers in 49 states. *Id.* ¶ 81. The Amended Complaint has already properly alleged for the above reasons that the Hyde Defendants' sales are delivery sales to consumers, *supra* at 21-24, because no Hyde Defendant customer operates lawfully in purchasing flavored e-cigarettes.

---

[17] The cases cited by the Hyde Defendants do not even rely on the rule of lenity. In *United States v. Figueroa*, the Second Circuit held that the defendant's "reliance on the rule of lenity is ... , also misplaced" because "the rule is inapplicable unless after a court has seized on everything from which aid can be derived, it is still left with an ambiguity."165 F.3d 111, 119 (internal quotations and citations omitted). Because plain meaning and congressional intent make clear that there is no statutory ambiguity at issue here, the rule of lenity plainly does not apply.

This showing is all the City needs to allege to reach the discovery stage because it "makes the inference of culpability plausible." *Arista*, 604 F.3d at 120.[18]

In any event, the City has provided abundant documentary evidence of the Hyde Defendants' specific sales. *See Dkt. No*. 42-1, Ex. S (Demand Vape invoices totaling $214,905 for sales of flavored e-cigarettes (including Hyde brand and Elf Bar) to Star Vape in Brooklyn between November 2020 and April 2023). Star Vape was not lawfully operating when those deliveries were made, *inter alia*, by its possession and offering for sale flavored e-cigarettes, a violation of Ad. Code § 17-715. Demand Vape's sales to Star Vape were sales to a consumer, and were delivery sales because the invoices on their face do not even suggest face-to-face sales or deliveries. *See* 15 U.S.C. § 375 (5) (defining "delivery sale").[19]

## POINT II

## THE CITY HAS PLEADED RICO CLAIMS

The Hyde Defendants do not dispute that failing to register with and disclose deliveries to the local governments into which cigarettes are shipped as required by the PACT Act (previously the Jenkins Act) constitutes mail or wire fraud. *See United States v. Contents of Accounts*, 629 F.3d 601, 604 (6th Cir. 2011) ("Numerous courts have addressed this issue over the years and every single one, without exception, has held that such a failure to report [under the Jenkins Act]

---

[18] Defendants' request for "specific sales" effectively seeks "documentary evidence" supporting its allegations at the pleading stage – a requirement courts have roundly rejected. *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) ("[D]ocumentary evidence generally is not required at the pleading stage.... We refuse ..., to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*."); *Chilcoat v. San Juan Cnty*., 41 F.4th 1196, 1219 (10th Cir. 2022) ("At the motion to dismiss stage, we are tasked with assessing plausibility, not proof."); *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 288-289 (E.D.N.Y. 2012) (plaintiff not required at the pleading stage "to present any evidence" of factual assertions).

[19] The above arguments are more than sufficient for the Court to reject the Hyde Defendants' demands for "specificity."  But, in addition, the Hyde Defendants are estopped from making any such argument.  The Hyde Defendants refused to comply with the City's demand for the records of delivery sales to which the City is entitled under 15 U.S.C. § 376a (c).  Those records would have revealed the Hyde Defendants' "specific" delivery sales and the Hyde Defendants cannot both withhold them and complain of their absence.

is actionable as mail fraud."); *City of N.Y. v. Smokes-Spirits.com, Inc.,* 541 F.3d 425, 446 (2d Cir. 2008) ("It is settled law in this Circuit that a Jenkins Act violation . . . may form the basis of a wire or mail fraud conviction), *rev'd on other grounds sub. nom. Hemi Group, LLC v. City of New York*, 559 U.S. 1 ( 2010). Instead, the Hyde Defendants argue that the City's RICO claims cannot stand because the City has not alleged (1) specific instances where they used mail carriers or interstate wires, (2) causation, and (3) that its injuries were the "object" of their scheme. All of these arguments fail.

### A. The City Alleges Fraudulent Omissions

The Hyde Defendants make passing reference to the Rule 9 (b) requirement of particularity in pleading mail and wire fraud, but never argue that the City has failed to meet this standard. *See Hyde Mem*. at 8. It deserves emphasis that the City alleges fraudulent *omissions. See Am*. *Compl*. ¶¶ 132, 133 (Hyde Defendants i) conceal from New York City officials the defendants' status as delivery sellers; ii) conceal from New York City officials the details of defendants' e-cigarette delivery sales; and iii) conceal the fact that the packages the Hyde Defendants ship into the City contain e-cigarettes). Fraud claims premised on concealment do not require the pleader to specify time, place or speaker, *Quintana v. B. Braun Med., Inc.*, 2018 U.S. Dist. LEXIS 123718, at *21 (S.D.N.Y. July 24, 2018), but require merely that the complaint specify: i) the omissions; ii) the person responsible; iii) the omissions' context and how the plaintiff was misled, and iv) what the defendant obtained as a result. *T.L.O. v. Monsanto Company*, 522 F.Supp.2d 524 (S.D.N.Y. 2007). An omission supports a cause of action for fraud if the non-disclosing party had a duty to disclose, here imposed by the PACT Act. *Id.* (internal citations omitted). Rule 9(b)'s requirements are relaxed as to matters particularly within the opposing party's knowledge, *Schlick v. Penn-Dixie*

*Cement Corporation*, 507 F.2d 374, 379 (2d Cir. 1974), which is the case here for the Hyde Defendants' concealed delivery sales.

The Amended Complaint pleads each of the above elements: i) The Hyde Defendants conceal their status as delivery-sellers and the details of each delivery sale; *Am. Compl.* ¶¶ 132-33; ii) one or more of the Hyde Defendants who failed to disclose, *id.* ¶¶ 11, 132, 143, 174; iii) the omissions accompany shipments of flavored e-cigarettes to City consumers, the concealment of which thwarts City enforcement actions; and iv) the omission permit the Hyde Defendants to evade detection and continue earning money from delivery sales of flavored e-cigarette to City consumers. *Id.* ¶¶ 113, 114, 117 (b).[20]

### B.  The City Has Pleaded that the Hyde Defendants Use Interstate Wires

The Hyde Defendants assert that the Amended Complaint contains insufficient allegations of their use of the U.S. Postal Service, interstate commercial carriers, or interstate wires. *Hyde Mem.* at 21. As an initial matter the City need not allege use of the mails or interstate commercial carriers at all because the Amended Complaint alleges Demand Vape to be "an online wholesaler and retailer of electronic nicotine delivery devices," meaning they are an Internet business, for which use of interstate wires is inescapable and supports a violation of 18 U.S.C. § 1343 for wire fraud.  *Am. Compl.* ¶ 80; *see also id.* (Demand Vape sells flavored products "*through a website*, https://demandvape.com"). Internet advertising alone – never mind sales – in furtherance of an alleged fraud "satisfies the interstate wire requirement of 18 U.S.C. § 1343." *Alkhatib v. N.Y. Motor Grp., LLC*, 2015 U.S. Dist. LEXIS 72055, at *41 (E.D.N.Y. June 3, 2015); *DNJ Logistic*

---

[20] Should the Hyde Defendants continue to assert that the sales on which the City's mail and wire fraud predicate offenses rest are not sufficiently particularized, their invoices documenting sales to Star Vape remedy the issue. *See Dkt. No.* 42-1, Ex. S (Demand Vape invoices for $214,905 for sales of flavored e-cigarettes, including Hyde brand and Elf Bar, to Star Vape in Brooklyn between November 2020 and April 2023). Moreover, the Hyde Defendants are estopped from arguing lack of specificity by their refusal to respond to the City's lawful request to produce the very documents the absence of which they complain.  *See supra*  n.21.

*Group, Inc. v. DHL Express (USA), Inc.*, 2010 U.S. Dist. LEXIS 15439, at *18 n.4 (E.D.N.Y. Feb 19, 2010) (wire fraud adequately pleaded even though plaintiff and defendant were in New York because "recent cases appear to treat any use of the internet as sufficiently interstate in nature").

### C. The City Has Pleaded But-For Causation

A RICO violation must be a "but-for" cause of the plaintiff's injury, *i.e.*, absent the violation, the plaintiff would not have been injured. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "But-for causation is almost always a factual issue," *Davis v. United States*, 670 F.3d 48, 53 (1st Cir. 2012), not properly resolved by a court on a motion to dismiss. "But for" is also "a *de minimis* standard of causation, under which even the most remote and insignificant force may be considered the cause of an occurrence." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 161 (3d Cir. 2017).[21]

The City has more than sufficiently alleged that the Hyde Defendants' conduct was the but-for cause of the City's injury. The PACT Act requires the Hyde Defendants to have *registered with the City* as a shipper of e-cigarettes into the City. *See* 15 U.S.C. § 376 (a) (1)-(3). The Hyde Defendants did not do so. *Am. Compl.* ¶ 132 (violations include "conceal[ing] from New York City officials the defendants' status as delivery sellers"). If the Hyde Defendants had done so their status as delivery sellers would have been revealed, and the City could have taken the enforcement measures (such as this lawsuit) necessary to shut down or drastically reduce their deliveries of tobacco products into the City, reducing the City's injuries. Had the Hyde Defendants not

---

[21] The Hyde Defendants attempt to usurp the role of the jury in arguing that "filing PACT Act reports and using PACT Act-compliant shipping labels does not prevent the shipment of electronic cigarettes into New York City." *Hyde Mem.* at 14. In making this *ipsi dixit* argument they argue – without support – that *as a matter of law* the City's factual allegations cannot support an inference of but-for causation. However, whether or not the Hyde Defendants' failure to meet the PACT Act requirements is a but-for cause of the City's injuries is not a question of law, it's a question of fact for the jury. *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013) ("The determination of whether retaliation was a "but-for" cause ... , is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact.").

concealed themselves as e-cigarette sellers, the City would not have had to absorb the expense of e-cigarette disposal, as alleged in the Amended Complaint. *Am. Compl*. ¶ 12 (Defendants' "racketeering activity injures the City in its business or property, *inter alia* in the form of damages incurred by the required disposal of defendants' products as hazardous waste"); *see also id.* ¶ 141.

The Hyde Defendants' assertion that the City must *plead* "facts showing that it would have spent less money cleaning up improperly disposed-of electronic cigarettes" but for the Hyde Defendants' concealment and delivery of flavored e-cigarettes, *Hyde Mem.* at 18, is contrary to Rule 8, which does not require plaintiff to "plead evidence . . . in detail." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). "It is axiomatic that under Rule 8(a), a plaintiff is not required to prove his or her case at the pleading stage. *White v. Cty. of Suffolk,* 2021 U.S. Dist. LEXIS 203508, at *8-9 (E.D.N.Y. Oct. 19, 2021). "[M]ore extensive pleading of fact[s] is not required" under Rule 8 because the Federal Rules "provide other devices besides pleadings that will serve to define the facts and issues." *Wynder*, 360 F.3d at 77 (quoting *Scutti Enters., LLC. v. Park Place' Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003). The City is permitted all favorable inferences on a Rule 12(b)(6) motion. It can be inferred that the Hyde Defendants dumping of hazardous waste in City stores for distribution to the public creates costs for the City that exceed the expenditures, if any, sustained by the City if the Hyde Defendants did not make those deliveries.

The inference to be drawn from the Amended Complaint's factual allegations is that but for the Hyde Defendants' deliveries by mail into the City, *as well as* their failures to register with the City and disclose particular deliveries, the e-cigarette presence in the City would be sharply reduced compared to circumstances in which deliveries were concealed, resulting in reduced costs of hazardous waste disposal. As factual allegations, these statements are of course accepted as true, *Rabin*, 746 F.3d at 62, and plead "but-for" causation.

### D.  The City Has Pleaded Proximate Causation

A RICO violation must proximately cause the plaintiff's injury, *i.e.*, "there [must be] a direct relationship between the plaintiff's injury and the defendant's injurious conduct." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). The Hyde Defendants join the chorus of litigants who have inappositely and unsuccessfully raised *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), as relevant to proximate cause in the City's RICO claims.[22] *Hemi Group* does not support the Hyde Defendants' argument that the City has not alleged proximate cause.

*First, Hemi Group* is inapplicable to the City's RICO claim because that case was decided before passage of the PACT Act. The *Hemi Group* decision depended in large measure on the absence of a duty by cigarette shippers to register with the City as a cigarette shipper and to provide the City with the "Jenkins Act" reports (now known as PACT Act reports) documenting cigarette shipments into the City. When *Hemi Group* was decided, "Hemi's obligation was to file the Jenkins Act reports with the State, not the City." *Id.* at 11. "Hemi Group committed fraud only insofar as it violated the Jenkins Act by failing to report the names and addresses of New York purchasers to New York State." *Id.,* 559 U.S. at 18.  *Hemi Group* was thus decided principally on a state of the law that no longer exists. The PACT Act now requires the Hyde Defendants to register with the City as shippers of e-cigarettes and to provide monthly descriptions of shipments into the City. 15 U.S.C. § 376 (a) (1)-(3).

---

[22] *See City of N.Y. v. Gordon*, 155 F. Supp. 3d 411, 426 (S.D.N.Y. 2015) (granting the City summary judgment under RICO despite defendants' citation to *Hemi Group*); *City of N.Y. v. LaserShip, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2014) (denying motion to dismiss RICO claim despite defendants' citation to *Hemi Group*); *City of New York v. Chavez*, 2012 U.S. Dist. LEXIS 42792 at *7 n.6 (S.D.N.Y. 2012) ("[D]efendants' reliance on *Hemi Group* was inapt."); *City of N.Y. v. Gordon*, 1 F. Supp. 3d 94, 113 (S.D.N.Y. 2013) ("*Hemi Group*, however, is easily distinguished from this case.").

*Second*, in *Hemi Group,* the Court held the City's RICO claim to be insufficiently direct for proximate cause purposes because the Court believed the City's injury to arise from the decisions of City residents not to pay the taxes that would have been revealed by the Jenkins Act reports. Thus, even if there were an obligation to report sales to the City, the Court believed that "any harm to the City would still be caused directly by the customers' failure to pay their taxes." *Hemi Group*, 559 U.S. at 16.  The Hyde Defendants attempt to mimic the facts in *Hemi Group* by mischaracterizing the City's present injury as caused by the improper disposal of e-cigarettes by third-parties, not by concealed shipments into the City. *Hyde Mem.* at 20.  But the City's injury is not principally from improper disposal of e-cigarettes by users, nor does the City so allege. Instead, the City alleges that the Hyde Defendants' products are ubiquitous in City stores and are regularly seized by the City Sheriff.  *Am. Compl.* ¶¶ 88, 89. The Sheriff's office must (as required by environmental laws) contract for the more costly disposal of seized e-cigarettes as hazardous waste. The City's injury occurs from the direct seizure by the New York City Sheriff of e-cigarettes *from the retail stores supplied by the Hyde Defendants*, not from City residents tossing away e-cigarettes. *Am. Compl.* ¶ 141. *Hemi Group*'s proximate cause holding is inapplicable to this case because the City's injury is caused directly by the Hyde Defendants, not City residents.

Through fraudulent concealment, the Hyde Defendants preserved their opportunity to fill City retail stores with a form of hazardous waste that the City must dispose of at City expense. *Am. Compl.* ¶ 66 ("Magellan's sales are made to sub-distributors and retailers operating brick-and-mortar stores and/or internet websites in New York City."); *id*. ¶ 69 ("Magellan's Hyde-brand flavored vapes are ubiquitous at smoke shops and convenience stores in New York City"). There is nothing indirect about that injury; it is the presence of illegal flavored e-cigarettes that compels City enforcement actions through product seizures, with the attendant costs of hazardous waste

disposal. *Id.* ¶ 67 ("Magellan's Hyde products have been named as the predicate for hundreds of citations issued to retail stores for violating the New York City flavor ban"). "[T]he compensable injury flowing from a [RICO] violation necessarily is the harm caused by the predicate acts." *Hemi Group*, 559 U.S. at 13. The City sustains losses of money or property because the Hyde Defendants conceal their spreading of tobacco products throughout the City.

The proximate cause analysis in *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *42 (S.D.N.Y. May 31, 2019) is fully applicable here, despite the difference in the quality of the final injury. *Hatu* addressed a supply chain quite similar to that here, in which a distributor supplied retailers with untaxed, illegal cigarettes. The retailers sold the cigarettes to traffickers who then bootlegged them into the City. The *Hatu* court after noting that "[p]roximate cause in the RICO context requires 'some direct relation between the injury asserted and the injurious conduct alleged,'" 2019 U.S. Dist. LEXIS 91576, at *42 (quoting *Hemi Group*, 559 U.S. at 9), rejected the argument that the conduct at issue was too indirect, holding that

> Hatu placed North Carolina-taxed cigarettes in the hands of his co-conspirators expecting and intending that they would reach New York, where they would be sold without application of New York taxes. Under these circumstances, New York State and City's loss in tax revenue from the illegal sale of under-taxed cigarettes is an economic injury that flows predictably and in a straight line from Hatu's acts.

That the particular form of the injury differs here is of no relevance to a proximate cause analysis, which looks to the "directness" of the injury, which is the same here as in *Hatu*: the Hyde Defendants place flavored e-cigarettes in the hands of City retailers intending that they reach New York City, where they are sold illegally and injure the City through required disposal costs.

### E.  The City Has Pleaded Predicate Acts of Mail and Wire Fraud

"[T]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (cleaned up); *United States*

*v. Hatch*, 926 F.2d 387, 392 (5th Cir. 1991) ("The focus of the mail fraud statute is upon the use of the mail to further a scheme to defraud."). The Hyde Defendants argue that the City has not pleaded a RICO claim predicated on wire or mail fraud absent allegations that the object of the fraud was to obtain the City's money or property, *Hyde* Mem. at 15-17, relying solely on *Kelly v. United States*, 140 S. Ct. 1565 (2020), and *Cleveland v. United States*, 531 U.S. 12 (2000). As shown below, no such allegation is required. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 615 (N.D. Cal. 2020) (finding *Kelly* did not foreclose plaintiffs' RICO claims where "the scheme was to secure the money and property of the end consumer").

The Hyde Defendants rely solely on *Kelly* and *Cleveland* to support their argument, both of which are inapplicable to the facts of this case. The *Kelly* decision involved the infamous "Bridgegate" plot by New Jersey officials to use a fake "traffic study" to cause traffic disruptions as political payback against a local official who refused to endorse the governor. 40 S.Ct. at 1569-1571. The plotters' wire fraud convictions were overturned because the Court ruled that the federal fraud statutes are applicable to "state or local official's fraudulent schemes" only if the schemes are "for obtaining money or property." *Id.* (citing 18 U. S. C. § 1343). The scheme in *Kelly* did not seek money or property but instead was a "quintessential exercise of regulatory power," *i.e.*, "a scheme to alter [] a regulatory choice," which the Court had held in *Cleveland* "is not one to appropriate the government's property" within the ambit of federal fraud statutes. 140 S. Ct. at 1572. The Court stated that the wire fraud statute cannot be used to "set standards of disclosure and good government for local and state officials." *Id.* (internal quotations omitted). The Court's central concern was that, because governance frequently involves regulatory choice, property fraud prosecutions for every lie by a state or local official would result in "a sweeping expansion of

federal criminal jurisdiction." *Cleveland*, 531 U.S. at 24; *United States v. Weigand*, 482 F. Supp. 3d 224, 236 (S.D.N.Y. 2020) ("*Kelly* concerned public corruption and the misuse of regulatory power, holding that an allegedly corrupt state regulatory decision, where no actual money changed hands, did not have as its object money or property.") The *Kelly* concerns are of course not present here. The Hyde Defendants' scheme involves neither regulatory choice nor the honesty *vel non* of government officials but in fact is a garden-variety scheme to obtain money through fraudulent omissions.

In any event, there is a fundamental flaw with the Hyde Defendants' argument: they conflate the City's injuries with the alleged object of the scheme. The City *has not* asserted that the *object* of the Hyde Defendants' scheme was to deprive the City of "property in the form of money spent to (1) clean up improperly disposed-of electronic cigarettes . . . [or] (2) mitigate the harms to public health caused by electronic cigarettes." *Hyde Mem.* at 15 (internal quotations omitted), although those factors *injure* the City, for purposes of RICO. The City has in fact alleged that the "uniform purpose" of the Hyde Defendants' scheme was to "profit[] from the sale of" flavored e-cigarettes "in New York City." *Am. Compl.* ¶ 175. The scheme is straightforward – the fraudulent concealment of shipments and sales of flavored e-cigarettes to New York City retailers allows the Hyde Defendants to obtain money from the sales of those products, unhindered by enforcement actions.  This sufficiently alleges wire fraud whether or not the City's injuries were the main goal or any goal. As the Second Circuit has held, "the wire and mail fraud statutes" are not limited "to schemes in which the party whose money or property is the object of the scheme is the same party to whom a fraudster seeks to deceive." *See United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016). Here, the money or property fraudulently acquired is that of the Hyde Defendants' customers.

The mail fraud statute has been used for decades to prosecute frauds in which the fraudulent representations did not reach the entity whose property the scheme sought to obtain. *See,* e.g., *United States v. Seidling*, 737 F.3d 1155 (7th Cir. 2013) (scheme to obtain money from opposing parties by deceiving state small claims court); *United States v. McMillan*, 600 F.3d 434 (5th Cir. 2010) (scheme to obtain money from insureds by deceiving state health insurance regulators); *United States v. Blumeyer*, 114 F.3d 758 (8th Cir. 1997) (scheme to defraud insurance policyholders and brokers by deceiving state insurance regulator); *United States v. Granberry*, 908 F.2d 278 (8th Cir. 1990) (scheme to obtain job as a school bus driver by deceiving state driver's licensing authority). That application of the statute continues post-Kelly. *United States v. Martinez,* 2023 U.S. Dist. LEXIS 27535, *6 (S.D.N.Y. Feb. 17, 2023); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 573 F. Supp. 3d 459 (D. Mass. 2021) (plaintiffs sufficiently pled a mail fraud predicate under RICO by asserting that defendants' fraud affected the property interests of individuals and entities other than the government).[23] Accordingly, because the Hyde Defendants' misconstrue the City's allegation as to the object of the scheme, their motion to dismiss the City's RICO claims must be denied.

## POINT III

## THE CITY HAS STANDING TO ENFORCE PHL § 1399-*ll*

The Hyde Defendants' argument for the City's supposed lack of power to enforce PHL § 1399-*ll* because of the absence of a City tax on e-cigarettes closely tracks the same failed argument used with respect to PACT Act enforcement powers. *Hyde Mem.* at 22-23. As they did with the

---

[23] The Hyde Defendants also argue that the City's claim for RICO conspiracy must be dismissed because the City's substantive RICO claim fails. *Hyde Mem.* at 22. However, for the reasons set forth above, the City has plausibly alleged a substantive RICO claim. Therefore, it's conspiracy claim cannot be dismissed.

PACT Act, the Hyde Defendants ignore the Public Health Law's plain language even though that language in this instance makes the argument still less persuasive.

### A. Enforcement of PHL § 1399-*ll* Depends Upon Having a Cigarette <u>*or*</u> Vapor Products Tax

The City's enforcement authority is set forth in PHL § 1399-*ll* (6):

> The attorney general may bring an action to recover the civil penalties provided by subdivision five of this section and for such other relief as may be deemed necessary. In addition, *the corporation counsel of any political subdivision that imposes a tax on cigarettes <u>or</u> vapor products* … may bring an action to recover the civil penalties provided by subdivision five of this section and for such other relief as may be deemed necessary with respect to <u>***any***</u> cigarettes or vapor products …. shipped, caused to be shipped or transported in violation of this section to any person located within such political subdivision.

The Hyde Defendants recognize that "New York City . . . taxes cigarettes." *Hyde Mem.* at 22. That admission ends the debate for the reasons given *supra* at 9-10. The plain language could not be any clearer; *if* a jurisdiction has a cigarette tax or an e-cigarette tax, *then* the corporation counsel of that jurisdiction is entitled to bring an action with respect to "any" cigarette or vapor products. A court cannot deviate from the plain meaning of a statute. *Saks,* 316 F.3d at 345.

The meaning of the word "or" in the Public Health Law forecloses the Hyde Defendants' argument even more definitively than did the plain language analysis in the case of the PACT Act. The Public health Law provides enforcement authority to a jurisdiction with a tax on cigarettes *or* vapor products. "Or" is defined to mean:

> **1.**
> **a.** Used to indicate an alternative, usually only before the last term of a series : *hot or cold; this, that, or the other.*

https://www.thefreedictionary.com/or. Another definition of "or" is that it is

> *used to introduce another possibility;* Is your sister older or younger than you? Are you coming or not? Is it a boy or a girl?

https://www.oxfordlearnersdictionaries.com/us/definition/english/or_1 (original emphasis)

> **1.** You use **or** to link two or more *alternatives*.
> "Tea or coffee?" John asked.

*https://www.collinsdictionary.com/us/dictionary/english/or* (emphasis added). The focus in the definition of "or" to providing "alternatives," or "other possibilities," makes it helpful to review the definition of "alternative":

> **Alternative**
>
> 1. Countable Noun – If one thing is an alternative to another, the first can be found, used, or done *instead of* the second.
>
>  New ways to treat arthritis may provide an alternative to painkillers

*https://www.collinsdictionary.com/us/dictionary/english/alternative* (emphasis added).

> **Alternative**
>
> The word "alternative" means *another option* (*i.e.*, it does not replace the original). It can be used as a noun or an adjective.

*https://www.grammar-monster.com/easily_confused/alternate_alternative.htm* (emphasis added). Thus, the word "or" provides for alternatives, which in the PHL means that if the City does not tax e-cigarettes, it has "another option," "an alternative," one thing "*instead of* the second" *i.e.*, a tax on cigarettes (which the City does have), that serves as an alternative to an e-cigarette tax and hence empowers the City to enforce § 1399-*ll.*

Despite these clear definitions, The Hyde Defendants nonetheless argue:

> Because "electronic cigarettes" and "vapor products" are distinct from "cigarettes," and the City only imposes an excise tax on "cigarettes" and not "vapor products," the City lacks standing to enforce the vapor product-specific provisions of Public Health Law § *1399-ll.*

*Hyde Mem.* at 23. That cigarettes are "distinct from" e-cigarettes is virtually a *non sequitur* and the Hyde Defendants do not explain why the different definitions have any significance. The word "or" introduces "other possibilities," or "alternatives," or one thing "instead of" another, *i.e.*, if

there is no e-cigarette tax, an "alternative" or "other possibility" will work "instead." "Alternatives" or "other possibilities" must of course be distinct from one another and be defined differently – that is what makes them alternatives. If the choices were not different, they would not be "alternatives" or "other possibilities."  The Hyde Defendants' argument again fails as a matter of plain language. The word "or" in PHL § 1399-*ll* falls between cigarettes "or" vapor products and therefore introduces *other possibilities*; if one does not work, the other substitutes. If the City has no tax on vapor products the *alternative* gateway to PHL § 1399-*ll* standing is a tax on cigarettes and hence the City "may bring an action." PHL § 1399-*ll*(6).

The Hyde Defendants attempt to portray cigarettes and e-cigarettes as "distinct" by inventing such fanciful characterizations of PHL § 1399-*ll* as containing "*vapor product-specific provisions*" and doubling-down on their incorrect assertion that "Public Health Law§ *1399-ll* distinguishes between cigarettes and vapor products, defining them separately and including statutory provisions specific to each type of product." *Hyde Mem.* at 22-23. But there are virtually no "vapor-product specific" provisions of PHL § 1399-*ll*. The Hyde Defendants' vague citation to "*see generally N.Y. PHL §§ 1399-ll*" certainly does not designate any such provisions. *See id*. Section 1399-*ll* does contain two subsections that separate the prohibition on dealer shipments of cigarettes (§ 1399-*ll* 1) from the prohibition on dealer shipments of vapor products (§ 1399-*ll* 2). But that is the only "vapor-specific provision" found in § 1399-*ll*. The remaining provisions of § 1399-*ll* treat cigarettes and vapor products together.[24] The notion that § 1399-*ll* "includes statutory

---

[24] For example, the prohibition against shipment by common carriers (as opposed to dealers) makes no such distinction, instead prohibiting in the same subsection (§1399-*ll* 2) common carriers from shipping "cigarettes or vapor products." Likewise, § 1399-*ll* 3, places in the same sub-section the language required on the package exteriors for both cigarettes and vapor products. Of still greater significance, § 1399-*ll* 4 instructs police officers who "discover any cigarettes *or* vapor products" being illegally transported, to seize "such cigarettes *or* vapor products," subjecting "such cigarettes *or* vapor products" to a forfeiture action under certain procedures as if those [procedures] specifically provided for forfeiture of "cigarettes *or* vapor products." Subsection 1399-*ll* 5 specifies the same criminal and civil

provisions specific to each type of product" is plainly a product of the Hyde Defendants' imagination.[25]

The single case addressing this topic holds both e-cigarettes and e-liquids to be "tobacco products" as that term is used in the Public Health Law, and regulated in the same manner. *People v. Hart*, 66 Misc. 3d 649, 657 (Glens Falls City Ct., Warren Cty. 2019), held that an indictment alleging the sale of a nicotine-containing e-cigarette capsule was a sale of "tobacco in any form" to an underage person. The Public Health Law defined "tobacco products" to mean *inter alia*, "one or more cigarettes" and made no mention of vapor products. *Id.* at 655. But the court in *Hart* found an equivalency between cigarettes and vapor products, further undercutting the Hyde Defendants' argument.[26]

### B.  The City's PHL § 1399-*ll* Claim Alleges E-cigarette, Not Cigarette Violations

The Hyde Defendants' remark that "the provision that the City cites as the basis for the alleged violations, Public Health Law § 1399-*ll* (l), applies only to *cigarettes*" warranting dismissal of the City's PHL claim, *Hyde Mem.* at 23, is frivolous, or worse.

---

penalties for violations of § 1399-*ll* regardless of the product at issue ($100 a pack for cigarettes or $100 for each vapor product).

[25] The Hyde Defendants claim that there are "statutory provisions specific to each type of product" is also wrong as to other sections within Article 13-F. Those sections, like § 1399-*ll* itself, do not contain provisions "specific to" cigarettes and e-cigarettes but address the two products without distinction. *See* PHL § 1399-bb – "Distribution of *tobacco products*, *vapor products*, or herbal cigarettes without charge"; PHL § 1399-dd – "Sale of t*obacco products*, herbal cigarettes or *electronic cigarettes* in vending machines." PHL § 1399-hh – "*Tobacco and vapor product* enforcement"; PHL § 1399-ii – "*Tobacco and vapor product* use prevention and control program"; PHL § 1399-jj – "Evaluation requirements" ("The commissioner shall evaluate the effectiveness of the efforts by state and local governments to reduce the use of *tobacco products and vapor products*"); PHL § 1399-kk – "Annual *tobacco and vapor product* enforcement reporting" (all emphasis added). Tobacco and vapor products are addressed together, adding further weight to the City's position that enforcement authority is provided to jurisdictions that impose a cigarette "*or*" a vapor products tax so that the absence of an e-cigarette tax is irrelevant.

[26] The defendant in *Hart* offered essentially the same argument as the Hyde Defendants, asserting that the New York State Department of Health has given differing definitions to e-cigarettes and tobacco products under Public Heath Law § 1399-aa. According to the defendant's argument, because the statute provides different definitions for "tobacco" and "e-cigarettes," e-cigarettes and e-liquids are not tobacco products. *Hart*, 66 Misc. 3d at 654. The court rejected the argument observing that the definitions do not state or even permit an inference that e-cigarettes and e-liquids are *not* tobacco products. *Id.* at 655.

New York Public Health Law § 1399-*ll* consists of two subdivisions, with § 1399-*ll* (1) addressing conventional cigarettes and § 1399-*ll* (2) addressing vapor products. The Amended Complaint consistently references "PHL § 1399-*ll*" generally, except on two occasions where it inadvertently references § 1399-*ll* (1). The Hyde Defendants assert this mistake vitiates the entire claim. *Id.* But "Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, *or to cite the correct one* . . . Factual allegations alone are what matters." *Wynder*, 360 F.3d at 77 (cleaned up); *see also Quinones v. City of Binghamton*, 997 F.3d 461, 468 (2d Cir. 2021) ("[T]o stave off threshold dismissal for want of an adequate statement of their claim," plaintiffs are "required to do no more" than "state[] simply, concisely, and directly events that, they allege[], entitle them to damages.").

The Amended Complaint expressly seeks to enjoin the Hyde Defendants' violations of "PHL § 1399-*ll*," *Am. Compl*. ¶ 19; seeks penalties for those violations under "PHL § 1399-*ll*," *id*.; refers to packages of Hyde product delivered into the City without complying with "PHL § 1399-*ll*," *id.* ¶¶ 74, 76, 78; notes the prohibition on internet sales by "PHL § 1399-*ll*," *id.* ¶ 106; references the Hyde Defendants' violation of the PACT Act by their failure to comply with "PHL § 1399-*ll*," *id.* ¶ 118; contains a heading "Allegations Related to Violation of N.Y. PHL § 1399-*ll*," *id.* ¶¶ 145-146;[27] sets forth a provision in "PHL § 1399-*ll*" applicable to "vapor products," (*id.* ¶ 146); makes three (3) references to provisions of "PHL § 1399-*ll*," *id.* ¶¶ 147, 148, 149); and asserts that the Hyde Defendants' non-compliance with those provisions "violated N.Y. PHL § 1399-*ll*," *id.* ¶ 149. "The Fourth Claim for Relief" to which the Hyde Defendants refer is for

---

[27] Paragraph 146 of the Amended Complaint references N.Y. PHL § 1399-*ll* (1) but incorrectly refers to a violation related to electronic cigarettes. N.Y. PHL § 1399-*ll* (2) contains the identical language, but makes the provision appliable to vapor products,

"*Violation of the N.Y. Pub. Hlth. L. § 1399-ll*." *Id.* ¶¶ 176-177. The City's claim is made through the statement that

> By knowingly shipping or causing to be shipped E-cigarettes to persons in New York City and State other than those designated as the permissible recipients of cigarette deliveries set forth in *N.Y. PHL § 1399-ll*, defendants violated *N.Y. PHL § 1399-ll.*

*Id.* ¶ 182. The "Wherefore" clause of the amended complaint seeks:

> d. On the Fourth Claim For Relief, (i) permanently enjoining defendants from violating N.Y. Pub. Hlth. L. § 1399-*ll* by making remote sales of [e-cigarettes] to unauthorized recipients; (ii) ordering defendants to pay the City the penalties provided for by N.Y. Pub. Hlth. L. § 1399-*ll*.

*Id.* at 49.

Citations to "PHL 1399-*ll*" necessarily includes both the vapor products provision, PHL § 1399-*ll* (2), and the conventional cigarette provision, PHL § 1399-*ll* (1). The Hyde Defendants are capable of inferring which of the two subsections apply to them and cannot claim to be blindsided by "aspects of the case which may not have otherwise been clear on the basis of the complaint." *Smith v. Campbell*, 782 F.3d 93, 99 (2d Cir. 2015) (citing *Johnson*, 574 U.S. at 11). The Hyde Defendant's argument, therefore, runs counter to Rule 8 and cannot provide the basis for dismissal.

## POINT IV

## THE CITY HAS PROPERLY AND CORRECTLY ALLEGED THAT THE HYDE DEFENDANTS ARE A SUBSTANTIAL CAUSE OF A PUBLIC NUISANCE

Lacking any meritorious basis to dismiss the City's public nuisance claim, the Hyde Defendants adopt two tactics, neither of which succeeds. First, they misstate the City's claim in a more vulnerable form – *i.e.*, create a straw man – and then proceed to battle that weaker, albeit imaginary foe. *See Hyde Mem.* at 24. The Hyde Defendants pretend that the City's public nuisance claim asserts that the Hyde Defendants cause a public nuisance only by "engaging in *retail* sale of

flavored e-cigarettes in violation of PHL 1399-mm-(1)." *Id.* (emphasis in original). Second, the Hyde Defendants strive to make that straw man plausible by omitting dozens of allegations in the Amended Complaint's describing a public nuisance. Once the mischaracterizations and omissions are corrected through actual reference to the Amended Complaint, it is apparent that Hyde Defendants are properly pleaded to be a substantial cause of an unreasonable (or *per se*) interference with a common public right that causes injury to a considerable number of City residents.

### A. The Amended Complaint Alleges a Public Nuisance Caused by Far More Than Retail Sales

The Hyde Defendants recognize that to succeed on a public nuisance claim:

> the City must show that Magellan and Demand Vape's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 725 F .3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave. Gourmet Foods v. Finlandia Ctr.,* 750 N.E.2d 1097, 1104 (N.Y. 2001)). The City must allege that the conduct or omissions of Magellan and Demand Vape created, contributed to, or maintained a public nuisance. *See Hicksville Water Dist. v. Philips Elec. North Am. Corp.,* No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342, at* 19 (E.D.N.Y. Mar. 29, 2018).

*Hyde Mem.* at 24.[28] The Amended Complaint does precisely that, and far more, recognizing that the Fifth Claim for Relief, "Public Nuisance," commences by the City "realleg[ing] paragraphs 1-182 as if fully set forth herein." *Am. Compl.* ¶ 183. The Hyde Defendants seek to strip that language of its plain import by pretending that the City's nuisance allegations are "rooted" in an "assertion that Magellan and/or Demand Vape violated New York PHL § 1399-mm-l by engaging in the

---

[28] The Hyde Defendants' exposition of public nuisance accords with New York law: A public nuisance "is an offense against the State" "consist[ing] of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to ... endanger or injure the property, health, safety or comfort of a considerable number of persons," *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 101 (2d Cir. 2013) (quoting *Copart Indus. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568, (1977)).

*retail* sale of flavored vapor products to individual consumers." *Hyde Mem.* at 25. But this is not

true as illustrated below:

> 8. The defendants on information and belief import [e-cigarettes] manufactured in China (and elsewhere), *distributing the devices to retail stores that in turn sell [e-cigarettes] to the public.*

> 66. On information and belief, Magellan sells [e-cigarettes] and other e-cigarette devices containing flavored e-liquids and/or flavored e-liquids that have not be granted pre-market authorization by the FDA. *Magellan's sales are made to sub-distributors and retailers operating brick-and-mortar stores and/or internet websites in New York City. The sub-distributors and retailers in turn sell the products to the public.*

> 69. *Magellan's Hyde-brand flavored vapes are ubiquitous at smoke shops and convenience stores in New York City*, having been observed for example at Yolo Smoke City, 1173 Lexington Avenue, N.Y., N.Y. on February 23, 2023, Convenience of Columbus, 550 Columbus Avenue, N.Y., N.Y. on February 23, 2023, Morris Park Convenience Store, 1048 Morris Park Avenue, Bronx, N.Y. on March 18, 2023, Garden Fresh Gourmet Deli, 969 Morris Park Avenue, Bronx, N.Y. on March 18, 2023, Hookah 2 Plus, 750b Morris Park Avenue, Bronx, N.Y. on March 18, 2023, LA Convenience Store, 101 Avenue A, N.Y., N.Y. on April 12, 2023, XXX Vape Shop, 26 Avenue C, N.Y., N.Y. on May 1, 2023.

> 81. Demand Vape is one of the largest, if not the largest, electronic cigarette distributor in the United States, offering approximately 30,000 products and *selling to approximately 5,000 retailers* in 49 states and internationally.

> 84. On information and belief, Demand Vape sells [e-cigarettes] and other e-cigarette devices containing flavored e-liquids and/or flavored e-liquids that have not be granted pre-market authorization by the FDA. *The sales are made to sub-distributors and retailers operating brick-and-mortar stores and/or internet websites in New York City. Those retailers in turn sell the products to the public.*

*Id.* ¶¶ 8, 66, 69, 81, 84 (all emphasis added). Plainly, the City does not allege "only" retail sales,

but in fact the allegations are that the Hyde Defendants *distribute to* retailers the flavored e-

cigarettes which the retailers distribute to the public.

**B. The City Pleads Each Public Nuisance Element Referenced by the Hyde Defendants**

The Hyde Defendants correctly state, "[t]o succeed on a public nuisance claim the City must show that Magellan and Demand Vape's conduct amounts to a substantial interference with the exercise of a common right of the public." *Hyde Mem.* at 24. The City alleges that flavored e-cigarettes Hyde and other e-cigarette brands distributed by the Hyde Defendants and found in the City contribute to an "epidemic of youth e-cigarette use," *Am. Compl*. ¶¶ 5, 46, 53, and create significant health risks, *id.* ¶¶ 5, 47, including health risks caused by hazardous wastes. Conduct "that involves a significant interference with the public health" qualifies as an "unreasonable interference with a right common to the general public." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 647 (N.D. Cal. 2020) ("*Juul Labs*") (quoting *Restatement (Second) of Torts* § 821B) (applying New York law). "[A] public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit." *New York Trap Rock Corp. v. Town of Clarkstown,* 299 N.Y. 77, 83-84 (1949); *In re Opioid Litigation*, 2018 N.Y. Misc. LEXIS 2428 (Sup. Ct. Suffolk Cty. 2018) (finding injury to the public health to be a right common to the general public). By pleading that the Hyde Defendants injure the health of City residents, the City pleads a "substantial interference with the exercise of a common right of the public," which the Hyde Defendants acknowledge is an element integral to a public nuisance claim. *Hyde Mem.* at 24.

The Hyde Defendants specify that the interference with the right common to the public must be such as to "endanger[] or injur[e] the property, health, safety or comfort of a considerable number of persons." *Id.* That too is amply alleged by the Amended Complaint's citation to the dozens of scientific papers detailing the negative health consequences of "vaping," the papers addressing the large number of youth that engage in vaping, and the allegation of 150,000 annual

internet searches for Hyde products. *Am. Compl.* ¶¶ 41-52, 68. The City has alleged a danger of injury to the health of a considerable number of persons. *See also City of N.Y. v. Milhelm Attea & Bros., Inc.,* 550 F. Supp. 2d 332, 350 (E.D.N.Y. 2008) ("The New York State legislature has explicitly found that "shipments of cigarettes sold via the Internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare … and to the economy of the state.").

Finally, according to the Hyde Defendants, "[t]he City must allege that the conduct or omissions of the Hyde Defendants created, contributed to, or maintained a public nuisance." *Hyde Mem.* at 24. That too is more than sufficiently pleaded by the allegations that Magellan imports flavored e-cigarettes into the United States and distributes the devices to stores that sell to the public, *Am. Compl.* ¶ 63, that the Hyde Defendants sell flavored vapor products to sub-distributors or retailers in New York City, *id*. at ¶ 66; that Demand Vape sells flavored e-cigarettes, including Magellan's Hyde products to distributors and retailers operating brick-and-mortar stores and/or internet websites in New York City and the products are then sold to the public, *id*. at ¶ 84; that Demand Vape is one of the largest, if not the largest, electronic cigarette distributor in the United States, offering approximately 30,000 products and selling to approximately 5,000 retailers in 49 states, *id*. at ¶ 81, that Hyde products are both commonly found in City stores,  and have served as a basis for hundreds of summonses issuing for violating the City prohibition on flavored e-cigarettes. *Id*. at ¶¶ 67. 69. *See also Dkt. No.* 46 at ¶ 8 (In 2022, City issued 2524 summonses consisting of 18,342 counts for sales of flavored e-cigarettes).

Having correctly identified the elements of a public nuisance claim, the Hyde Defendants then contradict themselves by imposing on the City elements of common law public nuisance that are non-existent. *Hyde Mem.* at 24. The Hyde Defendants do so by claiming that their liability for

public nuisance must somehow entail "retail sales" of flavored e-cigarettes. *Id.* at 25, 26. But the City needs no such allegations to state a public nuisance claim. PHL §1399-mm-(1), (2) does indeed refer to "retail sales," but the City has not brought a cause of action under that statute. Nor is the City's public nuisance claim "rooted" in that statute. *Id.* at 4, 25. Instead, the City's public nuisance claim is "rooted" in common law; a common law public nuisance need not arise from "retail sales," or arise from a violation of PHL § 1399-mm-(1) or arise from any statute at all. A public nuisance arises from *conduct* that is intentional and unreasonable. *Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.,* 2023 U.S. Dist. LEXIS 48925, at *34 (S.D.N.Y. Mar. 22, 2023). The Hyde Defendants at first correctly formulated the final element of a public nuisance as an allegation "that the conduct or omissions of Magellan and Demand Vape created, contributed to, or maintained a public nuisance," *Hyde Mem.* at 24, and cannot now add an element that the nuisance must arise from "retail sales" in violation of a statute.[29]

### C. The Hyde Defendants Are Liable For a Public Nuisance As Distributors of Flavored E-cigarettes

The Hyde Defendants' mischaracterization of the public nuisance as caused by "retail sales" attempts to create an impression that these defendants are not a "substantial cause" or "substantial contributor" to the nuisance because they purportedly do not sell directly to the public. *See Hyde Mem.* at 25-26. That argument has been advanced by product manufacturers and distributors and uniformly rejected in cases addressing the liability of "upstream" product manufacturers or distributors that are several steps away from the final site of injury caused by the

---

[29] In any event, the City has alleged violation of other statutes, notably PHL § 1399-*ll*, and the Ad. Code. *Am. Compl.* ¶¶ 14-17, 118, 122. Those violations establish a nuisance *per se*, which has a strict liability standard, and requires no allegations other than allegations of the violations themselves. *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1985); *State v Fermenta ASC Corp.*, 238 AD2d 400, 403 (2d Dep't 1997); *accord Sorenson v. Newark Star Ledger*, 2004 U.S. Dist. LEXIS 14781, at *4 (S.D.N.Y. July 30, 2004). "Violations of the penal law may properly constitute evidence of a nuisance *per se*." *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 644 F. Supp. 2d 201, 216 (E.D.N.Y. 2009).

offending product. However, simply put, a manufacturer/distributor defendant's conduct need not be the immediate or final cause of a nuisance. *See, e.g.*, *Suez Water,* 2023 U.S. Dist. LEXIS 48925, at *17-21; *Juul Labs,* 497 F. Supp. 3d at 649; *In re Nat'l Prescription Opiate Litig. - West Boca Medical Center*, 452 F. Supp. 3d 745, 774 (N.D. Ohio 2020); City *of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 282 (E.D.N.Y. 2004); *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 420 (2002); In *re MTBE Prod. Liab. Litig.*, 739 F. Supp. 2d 576, 596 (S.D.N.Y. 2010).

Where, as here, a defendant's conduct "remains the dominant and relevant fact absent which the public nuisance would not have resulted where and under the circumstances it did," liability attaches for setting in motion the sequence of events resulting in injury to the public. *Beretta U.S.A. Corp.*, 315 F. Supp. 2d at 282. Self-evidently, the e-cigarette nuisance in the City could not have arisen absent Magellan's import of Hyde products into the country, and Demand Vape distributing them to the City retailers. *Accord Juul Labs,* 497 F. Supp. 3d at 649 (Juul need not have controlled its flavored e-cigarettes at the moment of sale to be liable for nuisance).

The e-cigarette nuisance is caused by conduct that creates and maintains a thriving marketplace in flavored e-cigarettes in New York City. Magellan, for Hyde products, and Demand Vape for e-cigarettes generally, including Hyde, intentionally create that market by importing, marketing, and distributing e-cigarettes, for financial gain. *See, e.g.*, *In re Nat'l Prescription Opiate Litig. - West Boca Medical Center*, 452 F. Supp. 3d at 774 ("Defendants had control over the instrumentality of the nuisance by virtue of their control over their own … marketing, distribution, or dispensing practices."); *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 420 (2002) (party need not have controlled firearms at the moment that harm occurred, where the complaint alleged that appellees "created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market").

It is immaterial for purposes of stating a public nuisance claim that Magellan and Demand Vape do not sell directly to the public – if indeed that is the case. Under New York law, manufacturers at the origin of a supply chain that ultimately causes harm are liable in nuisance when the evidence shows the manufacturer, having sold the product to an identified third party, continues the sales knowing that the third-party's continued use of the product will result in a nuisance. *Suez Water,* 2023 U.S. Dist. LEXIS 48925, at *47. "Substantial participation" in a nuisance is invariably established where a defendant distributor "had knowledge that its product would be used in a manner that would create a nuisance, but … sold the product directly and continuously to the person engaged in the nuisance-creating activity after acquiring the knowledge that that person was creating a nuisance." *Id.* at 49.

The Hyde Defendants fit that template perfectly and provide an even stronger example of a public nuisance whose origin can be traced definitively back to a manufacturer or major distributor.  Magellan i) is the principal (if not the sole) importer into the United States and trademark owner of Hyde flavored e-cigarettes which were identified in City retail stores. *See Dkt. No*. 43-1; *Dkt. No*. 47-1; ii) Hyde e-cigarettes – along with dozens of other brands – are supplied by Demand Vape directly or through sub-distributors to City retail stores, *Dkt. No*. 42-2, Ex. S; iii) the Hyde Defendants have actual or constructive knowledge that City retail stores or sub-distributors sell e-cigarettes to the public – that is the very reason that the Hyde Defendants supply e-cigarettes to sub-distributors or retailers; and iv) the Hyde Defendants know young people are avid customers for flavored e-cigarettes, and that Hyde and Elf Bar products are best-sellers, *Dkt. No*. 42-1, Ex. D at 26 (Magellan-owner Glauser understands the concern that sweet-flavored e-cigarettes appeal to teens); *Dkt. No*. 42-1, Ex. F. at 88:18-21 (Elf Bar is "unequivocally number one in the United States"). Magellan and Demand Vape were thus "substantially certain" that the

flavored e-cigarettes they sell enter the hands of the public, including the youthful public.  The

facts here present a stronger case for liability than those in which chemical manufacturers are held

liable for groundwater contamination. In those cases the chemical contaminant is generic, and the

specific manufacturer typically unidentifiable.[30] Here, the Hyde Defendants are expressly

identified with the Hyde and Elf Bar products presently found in City stores, and there is no

question as to the manufacturer or distributor of the product responsible for the nuisance.

### D.  Liability for Public Nuisance Attaches to Multiple Contributors

The Hyde Defendants cannot escape public nuisance liability by asserting that other brands

of e-cigarettes cause the harm at issue. A defendant can be just one of multiple sources of a

nuisance and qualify as a substantial cause. *Andrick v. Saint-Gobain Performance Plastics Corp.*,

2018 U.S. Dist. LEXIS 103594 (N.D.N.Y. June 21, 2018); *NAACP*, 271 F. Supp. 2d at 493

("Where multiple actors contribute to a public nuisance, equity can reach actors whose conduct

standing alone might not be actionable."). "Nuisance liability caused by an activity will attach not

only to the defendant that carries on the activity but also to the defendant that participates to a

substantial extent with others in carrying it on." *Restatement (Second) of Torts* § 834 & cmt. a; *see

also Penn Ctr. Transp. Co. v. Singer Warehouse & Trucking Corp.*, 86 A.D.2d 826 (1st Dep't

1982) ("Everyone who creates a nuisance or participates in the creation or maintenance thereof is

liable for it.").[31]

> Where it is difficult or impossible to separate the injury caused by one
> contributing actor from that caused by another and where each contributing
> actor's responsibility individually does not constitute a substantial interference

---

[30] *See, e.g.*, *Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 2023 U.S. Dist. LEXIS 48925, at *28 (S.D.N.Y. Mar. 22, 2023); *Locust Valley Water Dist. v. Dow Chem. Co.*, 465 F. Supp. 3d 235, 238, 240 (E.D.N.Y. 2020).

[31] *Accord Hine v. Aird-Don Co.,* 232 A.D. 359 (3d Dep't 1931) ("Everyone who creates a nuisance or participates in the creation or maintenance thereof is liable for it."); *McNulty v. Ludwig & Co.,* 153 A.D. 206, (2d Dep't 1912) (once a public nuisance is established "all who participated in creating or maintaining such nuisance were jointly and severally liable for it"); *Uggla v. Brokaw,* 117 A.D. 586 (1st Dep't 1907) (well settled "that everyone who creates a nuisance, or participates in the creation or maintenance thereof, is liable for it.").

with a public right, defendants may still be found liable for conduct creating in
the aggregate a public nuisance if the suit is one for injunctive relief.

*City of N.Y. v. Artisan Vapor Franchise LLC*, 2020 U.S. Dist. LEXIS 205315, at *6 n.4 (E.D.N.Y.

Nov. 2, 2020) (e-cigarette sales) (quoting *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247

F.R.D. 296, 347 (E.D.N.Y. 2007)); *accord New York v. Juul Labs*, 2022 N.Y. Misc. LEXIS 4983,

at *31-32 (Sup. Ct. N.Y. Cty. July 14, 2022) (proximate cause considerations relaxed where

defendants in a position to anticipate and to prevent a public nuisance caused by their joint efforts

to market and promote products).

The Hyde Defendants remain liable for public nuisance despite the presence of other e-

cigarette sellers that contribute to the nuisance, as long as the Hyde Defendants are a substantial

factor in causing the nuisance. The substantial factor test considers a defendant's conduct in light

of i) contributing factors for which the defendant was not responsible; ii) whether the defendant's

contribution was continuous, up to the time of harm; and iii) the lapse of time since the defendant's

contribution. *In re MTBE Prod. Liab. Litig.*, 739 F. Supp. 2d 576, 596 (S.D.N.Y.

2010). Foreseeability of harm is also a consideration in the substantial factor analysis. *Suez Water,*

2023 U.S. Dist. LEXIS 48925, at *17-21 (citing *Hain v. Jamison*, 28 N.Y.3d 524 (2016) (whether

an act is a "substantial cause of the plaintiff's injuries … turns upon questions of foreseeability").

The Hyde Defendants are a substantial factor in causing the nuisance: Magellan imports

flavored e-cigarettes into the United States from China and transfers them to Demand Vape, which

distributes them nationally, including to New York City sub-distributors, such as Empire Vape,

which in turn sell them to retailers, and then to the public. The Hyde Defendants are a substantial

factor because City retail stores can only supply the market with illegal flavored Hyde e-cigarettes

because the Hyde Defendants have established a supply chain stretching from China to the City

that distributes flavored vapes to City retailers. Although other e-cigarette sellers contribute,

Demand Vape touts itself as the largest, or among the largest e-cigarette distributor in the nation, selling 30,000 e-cigarette products to 5000 retailers nationwide. *Am. Compl*. ¶ 81; *Dkt. No*. 42-1, Ex. F at 86:20-87:12. Magellan imports into the United States and is a master distributor of Hyde products, which are ranked as the third-most popular brand among youth in a 2022 survey. *Dkt. No*. 42-1, Ex. B at 19. Demand Vape is also "master distributor" of Elf Bar, the number one selling brand in the U.S. *Dkt. No*. 42-1, Ex. F at 88:13-21. The Hyde Defendants have been operating in the e-cigarette industry since 2011, *Dkt. No*. 42-1, Ex. F at 86:6-7, and the conduct of the Hyde Defendants' is current and ongoing in that Hyde products (and other products sold by Demand Vape such as Elf Bar) are presently found in City stores. *See Dkt. No*. 43-1; *Dkt. No*. 47-1. The attraction of youth to flavored e-cigarette is too well-known to make the youth sales element of the public nuisance anything other than foreseeable. *See Dkt. No*. 42-1, Ex. D (Glauser understands the concern over youth flavor preferences)

Notably, the Hyde Defendants' opposition to the public nuisance claim has not asserted a *de minimis* role or posited a more substantial player. The City has plausibly alleged that the Hyde Defendants are a substantial cause of a public nuisance. Their motions to dismiss that claim, and the City's other claims, should be denied.

## POINT V

## THIS COURT HAS PERSONAL JURISDICTION OVER HASHAGEN

Mr. Hashagen's Rule 12(b)(2) must at the outset denied if the Court has sustained the City's RICO claim, its Third Cause of Action. RICO provides for nationwide service of process against all members of an enterprise so long, as here, there is jurisdiction over one defendant.

Even absent jurisdiction under 18 U.S.C. § 1965(b), Mr. Hashagen's motion must be denied on the basis of the significant disparity between the facts he offers and those the City has developed from public records. Hashagen's assertions that Firmitas Solutions, LLC ("Firmitas")

has never had a New York address, *Hashagen Decl.*¶ 7, and that "he has never been an owner, officer, director, or employee of Magellan, has no authority to make any business decisions on behalf of Magellan, and has never received any compensation from Magellan," *Hashagen Mem.* at 3, are flatly contradicted by documentary evidence. Magellan's Articles of Incorporation and 2023 Annual Report filed with Virginia's State Corporation Commission list Mr. Hashagen as an Executive Vice President and as Magellan's registered agent. *See Proshansky Decl.*, Ex. E at 3, 8. Several other filings show Mr. Hashagen to be a Director of Magellan. *Proshansky Decl.*, Ex. G.

Mr. Hashagen also claims that "Firmitas does not have and has never had a business address in New York." *Hashagen Decl.*¶ 7. That statement is directly contradicted by documents filed with the Virginia State Corporation Commission, which shows Firmitas' business address to be the same as Magellan's. *See Proshansky Decl.*, Ex. F.

Separately, Hashagen avers that Firmitas transacts business in New York as "a contract manufacturer of nicotine-containing e-liquids" for Magellan. *Hashagen Decl.* ¶¶ 6, 9-15. Rather than providing a basis for dismissal, to the extent the above arguments do not establish jurisdiction over Mr. Hashagen, this latter admission provides a dispositive basis for jurisdictional discovery.

A.   **18 U.S.C. § 1965 Permits Assertion of Personal Jurisdiction Over Every Defendant, Including Hashagen**

Mr. Hashagen recognizes that 18 U.S.C. § 1965(b) "permit[s] nation-wide service of process" when, as here, personal jurisdiction is established as to at least one defendant. *Hashagen Mem.* at 6-7; *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 314-315 (S.D.N.Y. 2010). Hashagen argues only that the provision does not apply because the City has not stated a RICO claim. *Hashagen Mem.* at 7.  Because the City has plausibly alleged RICO claims against the Hyde Defendants, who as New York entities cannot dispute personal jurisdiction, *see Daimler AG v. Bauman*, 571 U.S. 117 (2014), Hashagen is subject to personal jurisdiction in New York.

"[A] a civil RICO action can be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *PT United Can Co. v. Crown Corp & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998) (cleaned up), and where the "the ends of justice" so require, *id. See also Zito v. Leasecomm Corp.,* 2004 U.S. Dist. LEXIS 19778, at *62 (S.D.N.Y. Sep. 30, 2004). The ends of justice criterion is met where "it would be impracticable to bring all co-defendants together in a single action because no district court could exercise personal jurisdiction over all of them." *Nat'l Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 86 F. Supp. 2d 137, 140 (E.D.N.Y. 2000); *accord Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 413 (S.D.N.Y. 1998). Hashagen has not shown that all of his co-defendants would have sufficient contacts with any one state such that jurisdiction would be proper in the absence of nationwide service of process. Nor has he made any showing that he would be unduly compromised by litigating in this district. *See Zito*, 2004 U.S. Dist. LEXIS 19778, at *64-65.  His awareness of 18 U.S.C. § 1965(b) means he has waived those arguments. Jurisdiction is accordingly acquired over Hashagen through 18 U.S.C. § 1965(b).

### B.    The City Is Entitled to Jurisdictional Discovery to Prove that the Court Has Personal Jurisdiction Over Hashagen Under CPLR § 302(a)(1)

"At the pleading stage, prior to discovery, a plaintiff need only make a *prima facie* showing that jurisdiction exists." *Porco v. Phoenix Bldg. Corp.*, 2019 U.S. Dist. LEXIS 85701, *5 (S.D.N.Y. May 21, 2019); *see also Weissman v. Seiyu, Ltd.*, 2000 U.S. Dist. LEXIS 509, *9 (S.D.N.Y. Jan. 18, 2000). "Courts may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction." *Porco*, 2019 U.S. Dist. LEXIS 85701, *5 (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 81 (2d Cir. 2001)). When no discovery has been conducted, "the Court must construe the pleadings and affidavits in the light most favorable

to the plaintiff." *Weissman*, 2000 U.S. Dist. LEXIS 509, *9 (citing *CutCo Industries*, *Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

Even absent a *prima facie* showing of personal jurisdiction, a court may order discovery if the opportunity to develop a full record through discovery could establish jurisdiction. *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014). Courts should provide ample opportunity to develop jurisdictional evidence through discovery, *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003), when, as here, a colorable basis for jurisdiction is alleged and could be confirmed by discovery, *Leon*, 992 F. Supp. 2d at 195.

The City's allegations as amplified by Mr. Hashagen himself constitute a "colorable basis for personal jurisdiction" pursuant to New York's long-arm statute, CPLR § 302(a); to the extent they do not already serve to establish jurisdiction, at a minimum they entitle the City to jurisdictional discovery. *Id.* A New York court may exercise personal jurisdiction over a foreign defendant, "who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state," CPLR 302(a)(1), a showing requiring two elements: (1) the defendant – either in person or through an agent – must have transacted business within the state; and (2) the claim asserted must arise from that business activity. S*ole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006). Under CPLR § 302(a)(1), a single act can establish jurisdiction. *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006). The defendant need not be present in state, nor have personally sent goods into the state to be subject to personal jurisdiction. *City of N.Y. v. Old Dominion Tobacco Co., Inc.*, 2023 U.S. Dist. LEXIS 182413, at *7 (E.D.N.Y. Aug. 30, 2023).

The first CPLR § 302(a)(1) requirement is met by showing "purposeful activity" – *i.e.*, "some act by which the defendant [or its agent] purposefully avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). The second is met by showing "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York," *Best Van Lines*, 490 F.3d at 246 (internal quotations omitted), *i.e.* the cause of action must arise from the "acts which are the basis of jurisdiction." *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *14 (S.D.N.Y. May 31, 2019) (citing C.P.L.R. § 302(a)(1)). The relation between the transaction and the legal claim need not rise to the level of causation; "the inquiry under the statute is relatively permissive," as long as the transaction is not "completely unmoored" from the claim. *Licci v Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 330 (2012) (answering questions certified from the Second Circuit).

The City's allegations demonstrate – and Hashagen confirms – that the two requirements for personal jurisdiction under CPLR § 302(a)(1) are met as to Firmitas itself. The City also articulates a "colorable basis" that this Court has personal jurisdiction over Hashagen pursuant to an agency theory under CPLR § 302(a)(1) because Firmitas (and perhaps Magellan) acted as Hashagen's agents when conducting activities in New York.[32]

### 1.    This Court Has Personal Jurisdiction Over Firmitas

There is certainly no dispute that this Court has personal jurisdiction over Firmitas, which shares a New York business address with Magellan and Demand Vape. *See Am. Compl.* ¶¶ 23-27; *Proshansky Decl.* Ex. F. Hashagen states that Firmitas is a "contract manufacturer of nicotine-containing e-liquids*," Hashagen Decl.* ¶ 6, *Dkt. No*. 55, and that "Firmitas' customers," *including Magellan*, "are nicotine-containing e-liquid distributors/brands." Firmitas ships completed e-

---

[32] Having set forth a "colorable basis" for long-arm jurisdiction over Hashagen under CPLR 302(a)(1) sufficient to warrant discovery, the City reserves its right to assert that personal jurisdiction exists under sections 302(a)(2) and (a)(3)(ii) should discovery reveal that jurisdiction lies under these sections as well.

liquid orders to its customers' distribution centers, *id.* ¶¶ 9, 12, and specifically "Firmitas ships its orders for Magellan *to Magellan's distribution center in Buffalo, New York*," *id.*¶ 15 (emphasis added). The admission that Firmitas ships contracted-for products into New York State establishes purposeful availment of the New York market. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (jurisdiction appropriate in New York where defendant has served a market for its products there).  Firmitas' shipment of nicotine-laced e-liquids to e-cigarette manufacturer Magellan in New York is certainly not "completely unmoored" from the claim against the remaining Hyde Defendants.  Firmitas may well be shipping the e-liquids that Magellan uses in the Hyde or Juno products found in City stores. Discovery is warranted because a "full factual record" is needed to examine Firmitas' status as Hashagen' s agent,  *Leon*, 992 F. Supp. 2d at 194, and to determine Magellan's status in that respect as well.

### 2. There Is a Colorable Basis that Magellan and Firmitas Are Agents of Hashagen

The allegations in Amended Complaint and the Magellan's public corporate records are "a sufficient start toward establishing" an agency theory of personal jurisdiction over Hashagen under CPLR § 302(a)(1).  *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 809 (S.D.N.Y. 2017).  A corporation acts as a principal's agent if the corporation engages in purposeful activities in the State "for the benefit of and with the knowledge and consent" of principals that exercised some control over the corporation. *Kreutter v. McFadden Oil Cor*p., 71 N.Y.2d 460, 467 (1988). The key is "whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation, and not merely some corporate employees who played no part in it." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (internal quotations omitted). Corporate officers are "primary actors" as "the driving force behind the corporation's business activities" or when the principal is a part-owner of the corporation. *New York v. Mt.*

*Tobacco Co.*, 55 F. Supp. 3d 301, 314 (E.D.N.Y. 2014) (internal quotations omitted); *see also Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 985 (S.D.N.Y. 1992) (exercising agency jurisdiction where officer was alleged to have been involved in the day-to-day business operations of the corporation, "including the manufacture and sale of the accused product").

Hashagen admits to being Firmitas's Executive Vice President. *Hashagen Decl.* ¶ 4. Magellan's Articles of Incorporation and 2023 Annual Report filed with Virginia's State Corporation Commission designate Hashagen as Magellan's Executive Vice President, registered agent and a director. *See Proshansky Decl.*, Ex. E at 3, 8; Ex. G. In this role, Hashagen could have "operated or managed" Firmitas and Magellan, *Am. Compl.* ¶ 130, and would have had knowledge of and consented to such company actions as the sale and distribution of e-cigarettes or e-liquids by Magellan or Firmitas to New York State and City. These facts entitle the City to jurisdictional discovery examining Hashagen's control over Magellan and Firmitas. *See Mt. Tobacco*, 55 F. Supp. 3d at 314 (allegations regarding defendant's "high-level position within King Mountain" were "sufficient to warrant jurisdictional discovery").  The bar for a grant of jurisdictional discovery is not high: In *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391 (1976), the New York Court of Appeals reversed a denial of jurisdictional discovery, finding discovery warranted merely on a plaintiff's allegations that "an agency relationship existed between Aroostook and Irving and, from the pleadings and affidavits, it was obvious that their position was not frivolous." *Licci,* 20 N.Y.3d at 336 (brackets omitted).

### 3.    Due Process Would Be Met as to Hashagen

If discovery confirms that Magellan and Firmitas are indeed agents of Hashagen, then federal due process as to him would be met as well.  Due process requires a defendant to have "minimum contacts" with the forum state, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945). Ordinarily, where personal jurisdiction is permitted under New York's long-arm statute, the requirements of constitutional due process are met. *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013) (cases where "personal jurisdiction [is] permitted under the long arm-statute" but "prohibited under due process analysis" are "rare").

Here, Hashagen's contacts with the New York through sales of nicotine containing e-liquids and/or e-cigarettes by Magellan and/or Firmitas are purposeful activities establishing minimum contacts. *See Chloe*, 616 F.3d at 167 (sales of defendant's "designer handbags into New York" satisfied federal due process). Exercising jurisdiction over Hashagen would not offend "traditional notions of fair play and substantial justice" because appearing in New York either imposes no special or unusual burden, *Foot Locker Retail, Inc. v. SBH, Inc.*, 2005 U.S. Dist. LEXIS 599, *1 (S.D.N.Y. Jan. 18, 2005) or any burden would be substantially outweighed by New York's "manifest interest in providing effective means of redress for its residents" affected by a public health crisis fueled in part by Hashagen's products. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 22 (1957).

## CONCLUSION

For all the reasons set forth above, the City of New York respectfully requests that the Court i) deny in their entirety the Hyde Defendants' motions to dismiss pursuant to Rule 12(b)(6); and/or ii) grant the City jurisdictional discovery against defendant Donald Hashagen.

Dated: New York, New York
November 20, 2023

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 20-099
New York, New York 10007
(212) 356-2032

By:_____

     Eric Proshansky
     Krista Friedrich
     Elizabeth Slater

     Assistant Corporation Counsels