UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

THE CITY OF NEW YORK,

                                    Plaintiff,

                    -against-

                                                          Civil Action No. 23-5880 (LLS)

MAGELLAN TECHNOLOGY, INC., ECTO WORLD, LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER, DONALD HASHAGEN, MAHANT KRUPA 56 LLC d/b/a Empire Vape Distributors, NIKUNJ PATEL, DEVANG KOYA, STAR VAPE CORP., NABIL HASSEN, DORBES, LLC, d/b/a Hydevapeofficial.com, CHRISTIAN A. SMITH,

                                    Defendants.

-------------------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE CITY OF NEW YORK IN OPPOSITION TO THE MOTION TO DISMISS OF MAHANT KRUPA 56 LLC, NIKUNJ PATEL and DEVANG KOYA**

                                        **HON. SYLVIA O. HINDS-RADIX**
                                        Corporation Counsel of the
                                        City of New York
                                        *Attorney for Plaintiff the City of New York*
                                        100 Church Street, Room 20-99
                                        New York, New York 10007
                                        (212) 356-2032

Of counsel:

Eric Proshansky
Krista Friedrich
Elizabeth Slater

Assistant Corporation Counsels

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 2

LEGAL STANDARDS ............................................................................................. 2

POINT I

       THE CITY PLAUSIBLY ALLEGES VIOLATIONS OF
       THE PACT ACT BY THE EMPIRE DEFENDANTS .................................... 2

       A.    The Empire Defendants Mischaracterize the Intent of
             the PACT Act.................................................................................... 3

       B.    The Empire Defendants  Sell Cigarettes In Interstate
             Commerce Within the Meaning of 15 U.S.C. §376(a) ................... 5

       C.    The City Has Plausibly Alleged that Empire Vape
             Made Sales to "Consumers" ........................................................... 8

       D.    The City Has Plausibly Alleged that Empire Vape
             Made Non-Compliant "Delivery Sales" ........................................ 8

POINT II

       THE CITY HAS SUFFICIENTLY PLEADED RICO
       CLAIMS ...................................................................................................... 11

       A.    The City Has Pleaded Mail and Wire Fraud and Done
             So With Requisite Particularity .................................................... 11

       B.    The City Plausibly Alleges Instances of Use of the
             Mails and Wires. ............................................................................ 13

       B.    The City Has Pleaded But-For Causation.................................... 14

       C.    The City Has Pleaded Proximate Causation. ............................... 14

POINT III

       THE CITY HAS STANDING TO ENFORCE N.Y. PUB.
       HEALTH LAW § 1399-*ll*........................................................................ 14

i

A.    Enforcement of PHL § 1399-*ll* Depends Upon Having
a Cigarette *or* Vapor Products Tax ..............................................................14

B.    The City's PHL § 1399-*ll* Claim Alleges E-cigarette,
Not Cigarette Violations .................................................................................14

POINT IV

THE CITY HAS PLAUSIBLY ALLEGED THAT THE
EMPIRE DEFENDANTS ARE A SUBSTANTIAL CAUSE
OF A PUBLIC NUISANCE ....................................................................................15

A.    The Amended Complaint Alleges a Public Nuisance
Caused by Far More than Retail Sales.........................................................17

B.    The City Plausibly Alleges Each Element of a Public
Nuisance Claim ...............................................................................................22

C.    The Empire Defendants Are Liable for a Public
Nuisance as Distributors of Flavored E-Cigarettes....................................23

CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Pages**

*532 Madison Ave. Gourment* [*sic*] *Foods* v. *Finlandia Ctr.*,
750 N.E.2d 1097 (N.Y. 2001)............................................................................16

*Abbatiello v. Monsanto Company*,
522 F. Supp. 2d 524, 533-534 (S.D.N.Y. 2007) ..............................................12

*Alkhatib v. N.Y. Motor Grp. LLC*,
2015 U.S. Dist. LEXIS 72055 (E.D.N.Y. June 3, 2015) ....................................7

*Arias-Zeballos v. Tan*,
2006 U.S. Dist. LEXIS 78884 (S.D.N.Y. Oct. 26, 2006) ....................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................8

*Bilyou v. Dutchess Beer Distribs., Inc.*,
300 F.3d 217 (2d Cir. 2002)................................................................................6

*Brown v. Great Neck Park Dist.*,
2023 U.S. Dist. LEXIS 51773 (E.D.N.Y. Mar. 27, 2023)..................................13

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
247 F.R.D. 296 (E.D.N.Y. 2007) ......................................................................20

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
644 F. Supp. 29 201 (E.D.N.Y. 2009) ..............................................................20

*City of N.Y. v. Artisan Vapor Franchise LLC*,
2020 U.S. Dist. LEXIS 205315 (E.D.N.Y. Nov. 2, 2020)..................................20

*City of N.Y. v. Chavez*,
2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012) ..................................11

*City of N.Y. v. Dennis*,
2022 U.S. Dist. LEXIS 689 (S.D.N.Y. Jan. 3, 2022)..........................................11

*City of N.Y. v. FedEx Ground Package Sys.*,
91 F. Supp. 3d 512 (S.D.N.Y. 2015)..................................................................11

*City of N.Y. v. Gordon*,
155 F. Supp. 3d 411 (S.D.N.Y. 2015).................................................................11

*City of N.Y. v. Gordon*,
    2018 U.S. Dist. LEXIS 86676 (S.D.N.Y. May 22, 2018)......................................................11

*City of N.Y. v. Hatu*,
    2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019)...................................................5, 11

*City of N.Y. v. Khashman*,
    2017 U.S. Dist. LEXIS 8492 (E.D.N.Y. Jan. 20, 2017) ....................................................11

*City of N.Y. v. LaserShip, Inc.*,
    33 F. Supp. 3d 303 (S.D.N.Y. 2014).................................................................................11

*City of N.Y. v. Old Dominion Tobacco Co., Inc.*,
    2023 U.S. Dist. LEXIS 182413 (E.D.N.Y. Aug. 30, 2023)................................................11

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008)..............................................................................................12

*City of N.Y. v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616 (2009) .................................................................................................19, 20

*City of N.Y. v. United States Postal Serv.*,
    519 F. Supp. 3d 111 (E.D.N.Y. 2021) ................................................................................3

*City of N.Y. v. Beretta U.S.A. Corp.*,
    315 F. Supp. 2d 256 (E.D.N.Y. 2004) ..............................................................................23

*City of N.Y. v. Milhelm Attea & Bros., Inc.*,
    550 F Supp 2d 332 (EDNY 2008) ....................................................................................21

*Cochran v. Esola*,
    67 F.2d 91 (9th Cir. 1933) ..................................................................................................6

*Connecticut v. Am. Elec. Power Co.*,
    582 F.3d 309 (2d Cir. 2009)..............................................................................................16

*Davis v. United States*,
    670 F.3d 483 (1st Cir. 2012) .............................................................................................14

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)...............................................................................14

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022)...............................................................................13

*Gordon v. Holder*,
    721 F.3d 638 (2013)............................................................................................................3

iv

*Hemi Grp., LLC v. City of N.Y.*,
  559 U.S. 1 (2010) ................................................................................12, 14

*Hicksville Water Dist.v. Philips Elec. North Am. Corp.*,
  2018 U.S. Dist. LEXIS 53342 ...........................................................16

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992) ...........................................................................14

*Lemke v. Farmers' Grain Co.*,
  258 U.S. 50 (1922) ...............................................................................6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013) ................................................................16

*N.J. Dep't of Envtl. Prot. v. Atl. Richfield Co.*,
  2014 U.S. Dist. LEXIS 28287 (S.D.N.Y. Mar. 3, 2014) ...................16

*New York v. UPS*,
  131 F. Supp. 3d 132 (S.D.N.Y. 2015) ...............................................11

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014) ..................................................................9

*Quintana v. B. Braun Med., Inc.*,
  2018 U.S. Dist. LEXIS 123718 (S.D.N.Y. July 24, 2018) ...............12

*Schlick v. Penn-Dixie Cement Corp.*,
  507 F.2d 374 (2d Cir. 1974) ..............................................................13

*Seljak v. Pervine Foods, LLC*,
  2023 U.S. Dist. LEXIS 36111 (S.D.N.Y. Mar. 3, 2023) ...................13

*T.L.O. v. Monsanto Co.*,
  522 F.Supp.2d 524 (S.D.N.Y. 2007) .................................................12

*United States v. Clarke*,
  979 F.3d 82 (2d Cir. 2020) ..................................................................7

*United States v. Harris*,
  548 F. App'x 679 (2d Cir. 2013) .........................................................7

*United States v. MacEwan*,
  445 F.3d 237 (3d Cir. 2006) ................................................................7

*United States v. Pomerico*,
  2008 U.S. Dist. LEXIS 77783 (E.D.N.Y. Oct. 3, 2008) .....................8

*Wallace v. Currin*,
  95 F.2d 856 (4th Cir. 1938) ...........................................................................6

*Walling v. Jacksonville Paper Co.*,
  317 U.S. 564 (1943) .....................................................................................6

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) ........................................................14

**Statutes**

15 U.S.C. 375(2) .....................................................................................4, 5

15 U.S.C. 376a .....................................................................................10, 11

15 U.S.C. §376(a) .......................................................................................5

15 U.S.C. § 378(d) ......................................................................................3

18 U.S.C. § 1343 .........................................................................................7

Admin. Code § 17-706 ................................................................................20

Admin. Code § 17-715 .........................................................................10, 19

Fed. R. Civ. P. 9(b) ....................................................................................13

Fed. R. Civ. P. 12 (b)(6) ......................................................................14, 24

N.Y. PHL § 1399-cc (3) .............................................................................21

N.Y. PHL § 1399-ll .................................................................14, 15, 20, 21

N.Y. PHL § 1399-mm-1 ....................................................................10, 15, 18

**Other Authorities**

*PACT Act*, Pub. L. No. 111-154 ..............................................................3, 6

*Preventing Online Sales of E-Cigarettes to Children Act*,
  Pub. L. No. 116-260 .................................................................................4

*Restat. 2d of Torts*, § 821C ...............................................................16, 17

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in opposition to the Motion to Dismiss of Mahant Krupa 56 LLC, Nikunj Patel, and Devang Koya (collectively, the "Empire Defendants") filed October 27, 2023 (*Dkt. Nos*. 63-64).

## PRELIMINARY STATEMENT

The Empire Defendants' motion to dismiss (*Dkt. No*. 63-64) is little more than a cut and paste of the Hyde Defendants' arguments (*Dkt. No*. 52-53), which are not improved in a second reading. Accordingly, the City, in opposing the Empire Defendants' motion, relies principally on its *Memorandum of Law in Opposition to the Hyde Defendants* (*Dkt. No*. 69-70) (hereafter "City's Hyde Opposition" or "City Hyde Opp.").  Empire's arguments, like those of the Hyde Defendants, rest for the most part on a straw man technique in which Empire mischaracterizes the City's positions and then argues against those mischaracterizations.

As for those arguments unique or somewhat unique to the Empire Defendants, i) an assertion that Empire's New York City location transforms sales to New York City residents into purely intrastate commerce for purposes of the PACT Act and RICO commerce is contrary to more than 100 years of precedent that assesses a commodity's entire commercial trajectory – here beginning in China – in determining whether trade is "in interstate commerce"; ii) the assertion that as a wholesale distributor Empire cannot be held liable for retail sales argues impermissibly with the facts of the Amended Complaint but more fatally is a *non sequitur* in the face of allegations that Empire's liability lies in its wholesale distribution of e-cigarettes; iii)  a contention that the City "makes no allegations of sales to consumers" fails: the only entities exempt from classification as "consumers" are "lawfully operating" tobacco businesses. Any tobacco business purchasing a flavored e-cigarette in New York City from the Empire Defendants violates federal, state and City law and cannot be "lawfully operating"; iv) objecting that the restricting of sales by

wholesalers who necessarily know the content of their own flavored e-cigarette shipments to "lawfully operating" businesses transforms the wholesalers into "guarantors" of their customer's compliance is absurd because that result is in complete accord with the purpose of the PACT Act to prohibit those very sales.

## BACKGROUND

The background to this action seeking to curtail the distribution of flavored e-cigarettes prohibited within the City's borders under federal, state and City law has been set forth at length in the City's opposition to the Hyde Defendants' motion to dismiss to which the City respectfully directs the Court's attention. *See City Hyde Opp*. (*Dkt. No*. 70 at 2)

## LEGAL STANDARDS

The legal standards applicable to this motion are set forth at length in the City's opposition to the Hyde Defendants motion (*Dkt. No*. 70 at 5), to which the City respectfully directs the Court's attention.

## POINT I:  THE CITY PLAUSIBLY ALLEGES VIOLATIONS OF THE PACT ACT BY THE EMPIRE DEFENDANTS

The Empire Defendants' PACT Act arguments are largely lifted from those of the Hyde Defendants.  The City accordingly incorporates by reference its rebuttal of those arguments, *City Hyde Opp.* at 7- 28, but also addresses further errors in the Empire Defendants' arguments.

### A.    The Empire Defendants Mischaracterize the Intent of the PACT Act

The Empire Defendants kick-off with a mischaracterization of the PACT Act's purposes that is designed to further their position that an e-cigarette tax is a pre-requisite to the City's authority to enforce the PACT Act against e-cigarette sellers.  Empire thus asserts that the Act was limited to "address[ing] the problem of cigarette shipments from low-tax states (or Native American reservations) to high-tax states intended to evade tax laws."  *Empire Mem*. at 4.

Although that was certainly *a purpose* of the PACT Act, the characterization omits at least one-third of the impetus for the Act's passage, described by the D.C. Court of Appeals as intended to "combat[] three evils: *tobacco sales to minors*, cigarette trafficking, and circumvention of state taxation requirements." *Gordon v. Holder*, 721 F.3d 638, 642 (D.C. Cir. 2013) (emphasis added, quotation marks and citations omitted); s*ee City of N.Y. v. United States Postal Serv.*, 519 F. Supp. 3d 111, 116 (E.D.N.Y. 2021) (to address the "three evils" spawned by the Internet (tobacco sales to minors, illicit cigarette trafficking, and circumvention of state taxation requirements), "Congress imposed new restrictions on 'delivery sales'" which must now comply *inter alia* with "restrictions on sales to minors").  The congressional findings accompanying the PACT Act are to the same effect:

> Findings:

> \* \* \*

>> (4)  the sale of illegal cigarettes and smokeless tobacco over the Internet, and through mail, fax, or phone orders, makes it cheaper and easier for children to obtain tobacco products;

>> (5)  the majority of Internet and other remote sales of cigarettes and smokeless tobacco are being made without adequate precautions to protect against sales to children.

*PACT Act*, Pub. L. No. 111-154 §§ (1)(b)(4)-(5).  These concerns self-evidently have nothing to do with the protection of tax revenues, a concern the Empire Defendants over-emphasize to support the notion that a jurisdiction's e-cigarette enforcement authority is contingent on its imposition of an e-cigarette tax.[1]  Protection of tax revenue was not even mentioned in the 2020 amendments to the PACT Act (the "E-Cigarette Amendments"), which were necessitated when it had become clear that e-cigarettes had escaped the regulatory protections introduced by the 2009 PACT Act.  In

---

[1] *See City Hyde Opp.* at 14 n.8 (pointing out that cigarette manufacturers that are without power to impose taxes nonetheless are afforded authority under the PACT Act, 15 U.S.C. § 378(d), to bring enforcement actions for violations involving either conventional or e-cigarettes).

2020, Congress expanded the PACT Act to regulate the new and overwhelmingly popular e-cigarettes, expressing the amendments' principal purpose through the top-line prominence of the title *Preventing Online Sales of E-Cigarettes to Children Act*. *See* Pub. L. No. 116-260 § 602. The Empire Defendants' anchoring proposal that PACT Act enforcement authority requires imposition of an e-cigarette tax gets no support from an examination of the PACT Act's purposes, where the Act's drafters accorded youth access to nicotine restrictions a prominence *equal to* revenue protection in the 2009 PACT Act. The Empire Defendants' argument is further undercut by the E-Cigarette Amendments which had prohibiting youth access to e-cigarettes as their sole purpose.

At the time of the 2020 E-Cigarette Amendments, the City possessed PACT Act enforcement authority that was already in successful operation by virtue of the 2009 PACT Act. *See City Hyde Opp*. at 15 n.10. In seamlessly applying that authority to e-cigarette enforcement – accomplished by the simple technique of defining e-cigarettes as "cigarettes" (15 U.S.C. 375(2)) – Congress could hope to achieve the PACT Act's youth-protective goals and in a manner that in no way impaired the PACT Act's revenue-protective goals. Including e-cigarettes as within the City's PACT Act enforcement authority protects against nicotine use by minors in whatever form that use takes. On the other hand, conditioning enforcement authority against e-cigarette sellers on the imposition of an e-cigarette tax reduces the overall, national level of enforcement against underage nicotine use – without any counterbalancing benefit to the PACT Act's other goals. Indeed, a principal flaw in the defendants' proposal that an e-cigarette tax is a prerequisite to e-cigarette enforcement is the absence of any evident purpose in imposing such a condition; neither the Empire Defendants nor the Hyde Defendants point to one and none can be discerned in any of the congressional writings concerning the PACT Act.

Congress may well have concluded with respect to PACT Act enforcement that "if it ain't broke, don't fix it." Maintaining without change the same enforcement powers existing before e-

cigarettes were brought within the jurisdiction of the PACT Act achieves the purposes of the E-Cigarette Amendments in better regulating youth nicotine use, with no downside.

**B.  The Empire Defendants Sell Cigarettes in Interstate Commerce Within the Meaning of 15 U.S.C. § 376(a)**

The Empire Defendants incorrectly contend that the City fails to allege that Empire ships e-cigarettes in "interstate commerce," as required for PACT Act jurisdiction.  *Empire Mem*. at 6. The argument rests entirely on the faulty assumption that a business located in New York City cannot as a matter of law make sales "in interstate commerce" to New York City customers.  *Id.*

The PACT Act requires any person who "sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce" to comply with the PACT Act's reporting requirements when shipping cigarettes into a jurisdiction that taxes "cigarettes;" e-cigarettes are "cigarettes" under the PACT Act.  *See* 15 U.S.C. § 376(a); 15 U.S.C. § 375(2).  With respect to particular delivery sales, "[t]he PACT Act does not require delivery sales to have occurred in interstate commerce."  *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, *48 (citing 15 U.S.C. § 375(5)(A)).

The City has already refuted the two-fold flaw in any contention that the only actionable violations of the PACT Act are individual sales in which the final sale that is the basis for the PACT Act claim must cross a state line.  *See City Hyde Opp.* at 16-19.  The PACT Act's language in 15 U.S.C. § 376(a) best accords with congressional intent to impose PACT Act compliance on entities that are "in the business of" shipping cigarettes in interstate commerce. As long as a delivery seller's shipments are generally "in interstate commerce," as required to trigger Congress's regulatory powers, individual shipments by that seller that do not cross a state line are nonetheless regulated under the PACT Act.  It is likely that explains Congress's express recognition that "the intrastate sale of illegal cigarettes and smokeless tobacco over the Internet

has a substantial effect on interstate commerce." *PACT Act*, Pub. L. No. 111-154 § 1(10).  The Empire Defendants' alternative reading would allow delivery sellers to evade the PACT Act's restrictions simply by structuring individual shipments so that they are made from the buyer's home state.

A separate flaw leading the Empire Defendants' argument to fail even if "in interstate commerce" were to require each individual sale to cross a state line is that "interstate commerce" embraces circumstances in which the final delivery occurs in the same state in which a purchase was made, but the commodity at issue has previously moved (or will in the future move) in interstate commerce, *i.e.*, has crossed state lines prior to the sale or will do so after the sale.  *See City Hyde Opp.* at 20; *Walling v. Jacksonville Paper Co*., 317 U.S. 564, 569 (1943) (intrastate activity remains interstate in character "[i]f there is a practical continuity of movement from the manufacturers or suppliers without the state" to warehouses and customers within the state); *Lemke v. Farmers' Grain Co*., 258 U.S. 50, 55 (1922) (although wheat might have been diverted to a local market, the course of business was interstate and that determined the interstate character of the transactions); *Bilyou v. Dutchess Beer Distribs., Inc*., 300 F.3d 217, 223 (2d Cir. 2002) (although carriage of goods took place entirely within the State of New York, that was merely one leg of a route to an out-of-state destination; transportation was part of the interstate movement of goods); *Wallace v. Currin*, 95 F.2d 856 (4th Cir. 1938) (power of Congress to regulate sales unaffected by fact that small part of tobacco sold on auction tobacco market was destined for local manufacturers or even for local consumption); *Cochran v. Esola*, 67 F.2d 91, 95 (9th Cir. 1933) ("That some of the apples might have been sold in the state of Washington does not detract from the interstate character of the shipments from the time they left the [Washington] growers, provided 'the course of business' establishes that the shipments were interstate in character.").  The City has provided

extensive allegations, and indeed evidence, that the Empire Defendants' "course of business" is interstate: "Empire Vape distributes FDVs at wholesale to conventional smoke and vape shops and convenience/grocery stores in New York City, including retail stores owned by Empire Vape in the City *and in Connecticut, Delaware, Kentucky, Maryland, Massachusetts, New Hampshire, New Jersey, Ohio, Rhode Island, South Carolina, Tennessee, Texas, and Virginia*." *Am Compl.* ¶ 85.

The Amended Complaint further alleges that the Empire Defendants operate over the Internet, which alone is sufficient to establish that a business operates "in interstate commerce" within the meaning of The PACT Act.   Even where a purchaser and a seller are physically located in the same state, their transaction will be deemed interstate if the internet is used, as it is alleged to be here.  "The interstate commerce element of the statute is satisfied by the use of the internet to transmit … files." *United States v. Clarke*, 979 F.3d 82, 93 n.6 (2d Cir. 2020).  The Internet is "a system that is inexorably intertwined with interstate commerce" and "because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce." *United States v. Harris*, 548 F. App'x 679, 682 (2d Cir. 2013) (quoting *United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) (interstate jurisdictional element satisfied by transmission over the internet, regardless of whether the transmission actually crosses state lines, because the internet is an instrumentality and channel of interstate commerce)); *Alkhatib v. N.Y. Motor Grp. LLC,* 2015 U.S. Dist. LEXIS 72055, at *41 (E.D.N.Y. June 3, 2015) (internet advertising in furtherance of an alleged fraud "satisfies the interstate wire requirement of 18 U.S.C. § 1343"); *United States v. Pomerico*, 2008 U.S. Dist. LEXIS 77783 (E.D.N.Y. Oct. 3, 2008) (finding that "use of the Internet satisfies the interstate commerce element").

**C.  The City Has Plausibly Alleged that Empire Vape Made Sales to "Consumers"**

The Empire Defendants – like the Hyde Defendants – assert that the City has not plausibly alleged that they made any retail sales to "consumers" within the meaning of the PACT Act because the City has not alleged that any retail purchaser of the Empire Defendants' product lacked a "vape certificate" or any other required license.  *Empire Mem.* at 7.  This argument fails for the reasons stated in the City's opposition to the Hyde Defendants' motion to dismiss, which the City incorporates here.  *See City Hyde Opp.* at 21-27.  The Empire Defendants argument that the City's interpretation of the definition of "lawfully operating" would "effectively make wholesalers guarantors that all of their customers are fully complying with all applicable laws" is nonsensical given that the moment the Empire Defendants "receive customer orders for … non-FDA approved, flavored electronic cigarettes prohibited under (at least) New York law, they … know … that the customer is not 'lawfully operating.'"  *Id.* at 26.

**D.  The City Has Plausibly Alleged that Empire Vape Made Non-Compliant "Delivery Sales"**

The Empire Defendants, like the Hyde Defendants, seek to impose the heightened pleading standard that the City has already rebutted as an improper demand for  "specifics,"  as opposed to "enough facts to state a claim to relief that is plausible on its face." *City Hyde Opp.* at 27-28 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)); *see also id.* at 28 n.18.  The Empire Defendants contend that the absence of facts to show that flavored e-cigarettes were purchased from or delivered by Empire Vape in a non-face-to-face transaction or that Empire violated any particular delivery sales requirement means that City has not alleged non-compliant delivery sales in violation of the PACT Act.  *Empire Mem.* at 8.  But even a glance at the Amended Complaint demonstrates that these facts have been provided, and indeed supplemented, in City filings permissibly considered on this motion.  *See Dkt. Nos*. 42-2 at 31, 32, 33 (flavored e-cigarettes sold

on Empire website, present at warehouse, *and documented in sales invoices*). There is no requirement that the City plead a particular non-compliant sale. To so require would be to require the pleading of evidence, rather than plausible allegations of misconduct.

The key allegations of Empire's delivery sales in the Amended Complaint are that "on March 23, 2021, the Office of the New York City Sheriff conducted an administrative inspection of Empire Vape," finding "thousands of units of [e-cigarettes] *as well as invoices indicating that the [e-cigarettes] were being shipped to retail convenience stores in New York City* and elsewhere." *Am. Compl.* ¶ 88 (emphasis added). Indeed, one such invoice is included as an exhibit in the City's motion for a preliminary injunction. *See Dkt. No.* 42-2 at 33. To the extent the Empire Defendants seek to argue that the non-face-to-face element of its deliveries has not been alleged, the allegation that "*the [e-cigarettes] were being shipped to retail convenience stores*" is taken as true and cannot be contested on this motion. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Arias-Zeballos v. Tan*, 2006 U.S. Dist. LEXIS 78884, *36 (S.D.N.Y. Oct. 26, 2006) ("[F]actual contentions … can only be resolved at trial."). Accordingly, it is sufficient for the City to have alleged that an investigation uncovered "invoices indicating that the FDVs were being *shipped* to retail convenience stores" (to say nothing about the plausible inference that non-face-to-face purchases were made through Empire's website) to plausibly plead that the Empire Defendants make delivery sales. These facts are sufficient to permit the Court to "draw the reasonable inference" that the Empire Defendants do indeed ship flavored electronic cigarettes to retailers – who for the reasons stated above, *supra* at 8, are "consumers" – in New York City. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations are certainly not merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

The Empire Defendants' complaint that the City has not identified their "delivery sales" with sufficient precision, *Empire Mem*. at 8, is even more disingenuous given that the City demanded that the Empire Defendants make available the delivery sales records that PACT Act section 15 U.S.C. § 376a (c) requires they provide. *See Decl. of Eric Proshansky*, *dated Nov. 27, 2023* ("Proshansky Decl."). As also noted for the Hyde Defendants, having refused to comply with the City's demand for records that would have evidenced specific delivery sales, the Empire Defendants cannot then complain of insufficiently particularized identification of their delivery sales. *See City Hyde Opp.* at 28 n.19.

The Empire Defendants' contention that the City has failed to demonstrate that "Empire never complied with the PACT Act's shipping label requirements or weight restrictions," *Empire Mem.* at 8, may well be entirely true *for now,* but it is utterly irrelevant. The Empire Defendants – as delivery sellers – must comply with *all* laws "generally applicable to sales of cigarettes," 15 U.S.C. 376a(a)(3), which they unquestionably do not do by offering for sale, selling, and shipping flavored e-cigarettes in violation of PHL § 1399-mm-1 and Ad. Code 17-715(b). *See Am. Compl.* ¶ 121. And again, the City does not merely *allege* these facts – it provides evidence. *See Am. Compl.* ¶ 84 ("Flavor ban? No worries, we got you.")[2]; *Dkt. No*. 42-2 at p. 30, 31, 33 (flavored products present at and shipped from Empire). The City's allegations go far beyond what is needed to allege that the Empire Defendants are engaged in delivery sales that fail to comply with the PACT Act's delivery sales requirements – it is unnecessary to show now that the Empire Defendants fail to comply with every single delivery sale requirement such as weight restrictions or package labeling, merely that they do not comply with "all" requirements.

---

[2] Of interest, Empire removed this message from its website following the filing pf the City's complaint, suggesting knowledge of guilt.

## POINT II

### THE CITY HAS SUFFICIENTLY PLEADED RICO CLAIMS

The decisional burden on this Court stemming from the Empire Defendants' correct observation that "RICO claims must be scrutinized," *Empire Mem.* at 9, is eased by the near unanimous decisions denying Rule12 (b)(6) challenges to the City's racketeering pleadings in tobacco cases.[3]

### A. The City Has Pleaded Mail and Wire Fraud and Done So With Requisite Particularity

The Empire Defendants first premise an argument for dismissal of the City's RICO claim on the purported inapplicability of the PACT Act to Empire's in-state sales to City residents, which Empire contends vitiates the RICO predicates of mail and wire fraud. *Empire Mem.* at 9. As established above, Empire's in-city sales are "in interstate commerce." *Supra* at 5-7. Thus, Empire was required to file PACT Act reports with the City for sales to City residents, and the failure to do so establishes a prima facie case of mail or wire fraud. Independently, the PACT requires delivery sales reports to be disclosed to the City's Corporation Counsel whether or not sales occur in interstate commerce, pursuant to 15 U.S.C. 376a(c), the language of which does not limit disclosure of delivery sales to sales "in interstate commerce," and the omission of which would independently establish the RICO predicates of mail and wire fraud.

The Empire Defendants also argue that the City does not allege with sufficient particularity two instances in which those defendants utilized the mails or wires in a scheme to defraud the City.

---

[3] *City of N.Y. v. Old Dominion Tobacco Co., Inc.*, 2023 U.S. Dist. LEXIS 182413 (E.D.N.Y. Aug. 30, 2023); *City of N.Y. v. Dennis*, 2022 U.S. Dist. LEXIS 689 (S.D.N.Y. Jan. 3, 2022) (default judgment); *Hatu*, 2019 U.S. Dist. LEXIS 91576; *City of N.Y. v. FedEx Ground Package Sys.*, 91 F. Supp. 3d 512 (S.D.N.Y. 2015); *City of N.Y. v. Gordon,* 2018 U.S. Dist. LEXIS 86676 (S.D.N.Y. May 22, 2018); *City of N.Y. v. Khashman*, 2017 U.S. Dist. LEXIS 8492 (E.D.N.Y. Jan. 20, 2017) (default judgment); *New York v. UPS*, 131 F. Supp. 3d 132 (S.D.N.Y. 2015); *City of N.Y. v. LaserShip, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2014); *City of N.Y. v. Chavez*, 2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012). *See also City of N.Y. v. Gordon*, 155 F. Supp. 3d 411 (S.D.N.Y. 2015) (awarding the City summary judgment under RICO);

*Empire Mem.* at 10. As noted previously, the City need not have alleged affirmative misrepresentations; failure to register with and disclose deliveries to the authorities of jurisdictions into which cigarettes are shipped constitutes mail or wire fraud *per se*. *City Hyde Opp. at* 28-30 (*citing, e.g., City of N.Y. v. Smokes-Spirits.com, Inc.,* 541 F.3d 425, 446 (2d Cir. 2008) ("It is settled law in this Circuit that a Jenkins Act violation … may form the basis of a wire or mail fraud conviction.") *rev'd on other grounds sub. nom. Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). The *Hemi Group* decision said as much:

> [A]s the majority points out, we must assume for present purposes that an intentional failure to file Jenkins Act reports counts as mail fraud (at least where the failure is part of a scheme that includes use of the mails).… The Court of Appeals here so held. *City of New York* v. *Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (CA2 2008). And no one has challenged that holding.

*Id.* at 20 (Breyer, J., dissenting).

The City has thus alleged fraudulent *omissions* by the Empire Defendants, *Am. Compl.* ¶¶ 132, 133, and specifically their concealment from City officials of i) their status as delivery sellers; ii) the details of their e-cigarette delivery sales; and iii) that the packages they ship within the City contain e-cigarettes. In alleging omissions, the City need not specify time, place or speaker, *Quintana v. B. Braun Med., Inc.*, 2018 U.S. Dist. LEXIS 123718, at *21 (S.D.N.Y. July 24, 2018), merely what has been omitted and by whom, the context of the omissions, how the omissions misled the City, and what the Empire Defendants obtained from the omissions, *Abbatiello v. Monsanto Company*, 522 F. Supp. 2d 524, 533-534 (S.D.N.Y. 2007). Through their omissions of information identifying their role as delivery sellers and their e-cigarette sales into the City, the Empire Defendants were able to forestall the City's enforcement efforts, thereby enhancing their profits from the sale of products that may neither sold nor offered for sale in the City.

An omission supports a cause of action for fraud if the non-disclosing party had a duty to disclose, *id.* at 534, which is the case here because the PACT Act imposes such a duty. Moreover, Rule 9(b)'s requirements are relaxed as to matters particularly within the opposing party's knowledge, *Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976 (1975), as is certainly true for the Empire Defendants' own delivery sales.

Finally, as noted, *supra* at 10, the Empire Defendants cannot complain of a lack of specificity regarding their omissions where they refused to respond to the City's express demand for the required documentation containing the particulars about their own sales into the City. *See Proshansky Decl.* ¶ 3.

### B.  The City Plausibly Alleges Instances of Use of the Mails and Wires

The Empire Defendants mistakenly assert that the City does not allege their use of the U.S. Postal Service, interstate commercial carriers, or interstate wires. *Empire Mem.* at 11. This is specious. The City has alleged that Empire engages in sales and advertising over the Internet, an allegation that both serves to establish that Empire does business in interstate commerce, and that also satisfies the use of the wires to perpetuate the fraud. *Am Compl.* ¶¶ 86, 140 (d) (asserting defendants "[e]ngag[ed] in the advertising and sale of [e-cigarettes] over the Internet"); *see also City Hyde Opp.* at 30-31. The City has provided direct evidence of the Empire Defendants' use of the Internet to advertise and sell flavored e-cigarettes, *see Dkt. No.* 42-2, Ex. N, and Empire has not rebutted that evidence. *See Brown v. Great Neck Park Dist.*, 2023 U.S. Dist. LEXIS 51773, at *1 n.1 (E.D.N.Y. Mar. 27, 2023) (absent reason to question accuracy or reliability, court takes judicial notice on motion to dismiss of exhibits "taken directly from Defendants' website").[4]

---

[4] *Seljak v. Pervine Foods, LLC*, 2023 U.S. Dist. LEXIS 36111, at *6 n.4 (S.D.N.Y. Mar. 3, 2023) ("The Court takes judicial notice of the numerous videos publicly available on defendant's website."); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 148 (S.D.N.Y. 2022) ("A court may also consider matters of which judicial notice may be taken …

**C.  The City Has Pleaded But-For Causation.**

A RICO plaintiff must show a RICO violation to be a "but-for" cause of the plaintiff's injury, *i.e.*, absent the violation, the plaintiff would not have been injured.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The City here incorporates by reference its arguments on but-for causation. *City Hyde Opp.* at 31-32. "But-for causation is almost always a factual issue," *Davis v. United States*, 670 F.3d 483 (1st Cir. 2012), and hence not properly considered on a motion to dismiss.   We add to that argument only that in *Hemi Group*,

> no one denies that Hemi's [failure to file Jenkins Act reports] as a "but-for" condition of New York City's loss.… [H]ad Hemi told New York State the truth about its New York City customers, New York City would have written letters to the purchasers and obtained a significant share of the tobacco taxes buyers owed.

*Hemi Group,* 559 U.S. at 22 (Breyer, J., dissenting).

**D.  The City Has Pleaded Proximate Causation**

The Empire Defendants make the same arguments regarding proximate causation that the Hyde Defendants make.  Thus, the City refers the Court to its opposition to the Hyde Defendants' motion and incorporates its arguments relating to proximate causation here. *City Hyde Opp.* at 33-35.

**POINT III**

**THE CITY HAS STANDING TO ENFORCE N.Y. PUB. HEALTH LAW § 1399-*ll***

**A.  Enforcement of PHL § 1399-*ll* Depends Upon Having a Cigarette *or* Vapor Products Tax**

---

including information on a party's publicly available website, as long as the authenticity of the site is not in dispute."); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination."  (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006))).

The Empire Defendants argument for the City's supposed lack of standing to enforce *N.Y. PHL* § 1399-*ll* (*Empire Mem.* at 17-18) does not differ from the Hyde Defendants' argument on that issue.  Thus, the City refers the Court to its opposition to the Hyde Defendants' motion and incorporates its arguments relating to standing under the PHL here. *City Hyde Opp.* at 39-42.

### B.  The City's PHL § 1399-*ll* Claim Alleges E-cigarette, Not Cigarette Violations

The Empire Defendants go so far as to adopt the obviously frivolous argument made by the Hyde Defendants (*Hyde Mem.* at 23) as to a *de minimis* typographical error in citing to PHL § 1399-*ll* (1) in the face of numerous citations to PHL §1399-*ll* generally, which bars the shipment of e-cigarettes. *City Hyde Opp.* at 42-44.  If the Empire Defendants wish to claim that "they were blindsided by" the City's reference to PHL §1399-*ll* (1) and did not realize that the Amended Complaint was targeting electronic cigarettes, they are free to so assert. The City respectfully suggests that the Court may wish to apply to the Hyde and Empire Defendants' other arguments a variant of the principle *noscitur a sociis*:  arguments are judged by the company they keep.

### POINT IV

### THE CITY HAS PLAUSIBLY ALLEGED THAT THE EMPIRE DEFENDANTS ARE A SUBSTANTIAL CAUSE OF A PUBLIC NUISANCE

The Empire Defendants largely repeat the arguments of the Hyde Defendants with respect to public nuisance, asserting that the City's

> public nuisance claim fails for, at least, two reasons: (i) [The City] lacks standing to assert a violation of Public Health Law § 1399-mm-l and cannot circumvent the lack of standing through a public nuisance claim, and (ii) there is no well-pled factual allegation that Empire sells FDVs at retail in New York City."

*Empire Mem*. at 20.  Both "reasons" betray a thorough misunderstanding of a common law nuisance claim, which neither requires "standing" under a statute nor that the Empire Defendants

engage in retail sales to be liable for contributing to a public nuisance. The Empire Defendants do correctly set out the elements of a public nuisance claim:

> To succeed on a public nuisance claim, the City must show that Empire's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 725 F.3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave. Gourmet* [*sic*] *Foods v. Finlandia Ctr.,* 750 N.E.2d 1097, 1104 (N.Y. 2001)). The City must allege that the conduct or omissions of Empire created, contributed to, or maintained a public nuisance. *See Hicksville Water Dist. v. Philips Elec. North Am. Corp.,* 2018 U.S. Dist. LEXIS 53342, at *19 (E.D.N.Y.

*Empire Mem*. at 19. Notably, the elements do not specify anything about "standing" under any statute, nor reference any particular conduct such as "retail sales."

In *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 366 (2d Cir. 2009), *rev'd on other gnd*s, *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011), the Second Circuit adopted the *Restatement 2d of Torts* as authority to find that the City of New York had standing to bring a public nuisance claim. The court looked to Restatement 2d Section 821C, "Who can recover for public nuisance," which provides:

> (2) In order to maintain a proceeding to enjoin or abate a public nuisance, one must:
>
> \*\*\*
>
> (b) have the authority as a public official or public agency to represent the state or a political subdivision in the matter …
>
> *a. Remedies for public nuisance*. The original remedies for a public nuisance were a prosecution for a criminal offense or a suit to abate or enjoin the nuisance brought by or on behalf of the state or an appropriate subdivision by the proper public authority.

*Restat. 2d of Torts* § 821C.  In a public nuisance suit, the public entity is the modern representative of the sovereign. *N.J. Dep't of Envtl. Prot. v. Atl. Richfield Co.*, 2014 U.S. Dist. LEXIS 28287, at

*5 (S.D.N.Y. Mar. 3, 2014).  Here, the Corporation Counsel certainly has "the authority as a public official … to represent the … state or a political subdivision in th[is] matter."  *Restat. 2d of Torts* § 821C; *see also N.Y.C. Charter* § 394.

The allegations of public nuisance by the City reference the elements of a public nuisance in a way that closely parallel Empire's own formulation of those elements:

> 155. Defendants' conduct has accordingly created a public nuisance by unreasonably injuring the property, health, safety or comfort of a considerable number of New York City residents by creating a public health and safety hazard in the City through the promotion, distribution, marketing and sale of products that cause persistent youth and rising young adult addiction to nicotine, and potentially or actually contaminates City parks and public places with hazardous wastes.
>
> 156. Defendants' conduct in marketing, distributing, and selling FDVs has been a substantial factor in bringing about the above-described public nuisance. But for Defendants' actions, FDV use by youth in the City would not be as widespread as today and the City would not be presented with the hazardous waste disposal burdens imposed by defendants' products.

*Am. Compl.* ¶¶ 155-156.[5]  These allegations track precisely what the Empire Defendants themselves set forth as what the City must prove.

### A.    The Amended Complaint Alleges a Public Nuisance Caused by Far More than Retail Sales

Like the Hyde Defendants, the Empire Defendants attempt to avoid their responsibility as substantial contributors to a public nuisance by asserting that the City has alleged a public nuisance caused by "retail sales," and that they are distributors, not retail sellers.  *Empire Mem*. at 22.  This argument fails for the same reason that the Hyde Defendants' argument does:  the City has alleged that the Empire Defendants' contribution to a public nuisance goes far beyond mere "retail sales."

---

[5] These elements are expanded upon throughout the Amended Complaint by factual allegations that provide further plausibility to the foregoing allegations. *See City Hyde Opp.* at 46.

The most prominent allegations of the Amended Complaint are that Empire is a wholesale distributor selling to retail stores, which Empire itself concedes (*Empire Mem.* at 4), not that Empire itself solely engages in retail sales:[6]

> 8.      The China-based manufacturers sell and ship their products directly or through middlemen to "master distributors" or sub-distributors in the United States. The defendants on information and belief import FDVs manufactured in China (and elsewhere), *distributing the devices to retail stores that in turn sell FDVs to the public.* Some distributors sell directly to the public from brick-and-mortar locations and/or Internet websites.

> 85.     Mahant Krupa 56 LLC, doing business as Empire Vape Distributors, ("Empire Vape") is according to its website a "Wholesaler & Distributor of Tobacco & Tobacco Products," owned and controlled at least in part by defendants Nikunj Patel and Devang Koya. *Empire Vape distributes FDVs at wholesale to conventional smoke and vape shops and convenience/grocery stores in New York City*, including retail stores owned by Empire Vape in the City and in Connecticut, Delaware, Kentucky, Maryland, Massachusetts, New Hampshire, New Jersey, Ohio, Rhode Island, South Carolina, Tennessee, Texas, and Virginia that sell directly to the public.

> 88.     On March 23, 2021, the Office of the New York City Sheriff conducted an administrative inspection of Empire Vape at its 56-01 Maspeth Avenue, Maspeth, New York warehouse. *The inspection revealed thousands of units of FDVs as well as invoices indicating that the FDVs were being shipped to retail convenience stores in New York City and elsewhere.*

*Am. Compl.* ¶¶ 8, 85, 88.

Like the Hyde Defendants, the Empire Defendants ignore that the City's public nuisance claim is premised on conduct beyond "retail sales," making straightforward allegations that the Empire Defendants *distribute to* retailers the flavored e-cigarettes that the retailers sell to the public.  Because the City's public nuisance claim is premised on far more than "retail sales," the argument that the City cannot "predicate" a public nuisance enforcement action (whatever that means) under PHL § 1399-

---

[6] There are some allegations of retail sales by Empire, which are to be taken as true, and may not be contradicted by the Empire Defendants for purpose of this motion. *See Am. Compl.* ¶¶ 91-100.

mm-1 and Ad. Code § 17-715, *Empire Mem.* at 18-22, is a red herring.[7]   Parsing the various

prerequisites to the enforcement of particular statutes such as PHL § 1399-mm-1 and Ad Code §

17-715 (*Empire Mem*. at 20-21) as if they also serve as standing requirements for a public nuisance

claim is utterly irrelevant because the City has not brought any claims under those statutes.

Likewise, whether or not the City has plausibly alleged Empire Vape owns the retail stores listed in

the Amended Complaint, *see Hyde Mem.* at 22-23, is irrelevant to whether the City states a claim for

public nuisance.   What is dispositive here is that the Amended Complaint alleges the Empire

Defendants to be a substantial cause of an unreasonable injury to a public right through  "distributing

the devices to retail stores that in turn sell [e-cigarettes] to the public,"  *Am. Compl*.  ¶ 8, and by

"distribut[ing]  [e-cigarettes]  at  wholesale  to  conventional  smoke  and  vape  shops  and

convenience/grocery stores in New York City," *id.* ¶ 85.

      The above error by the Empire Defendants results from their apparent misunderstanding of

the import of the Amended Complaint's references to the various State and City laws that prohibit

or restrict sales of e-cigarettes.  *See  id*. ¶¶ 150-151.  Those references are not offered to provide

a basis for "standing."   As shown above, the only standing requirement for the City's public

nuisance claim is the Corporation Counsel's status as "the authority as a public official to represent

the political subdivision."   The State and City laws relating to e-cigarettes are cited as descriptive

of "New York public policy against marketing e-cigarette products to minors expressed in statutes

and regulations," *id.* ¶ 150, and "New York public policy against marketing electronic nicotine

delivery devices to minors [as] … expressed in the New York State and City flavor bans," *id.* ¶

151.  The statutes are also evidence of the public right with which the Empire Defendants interfere.

Citation to prohibitions related to e-cigarettes are persuasive that a public nuisance has indeed been

---

[7] The Empire Vape Defendants rely heavily on *City of N.Y. v. Smokes-Spirits.com*, *Inc.*, 12 N.Y.2d 616 (2009) to argue that the City cannot bring a public nuisance claim premised on PHL § 1933-mm-1. But because the City is not doing so, *Smokes-Spirits.com* is inapplicable, as well as for the reasons detailed above.

identified by the pleader.  *See City of N.Y. v. Artisan Vapor Franchise LLC,* 2020 U.S. Dist. LEXIS

205315, at *5 (E.D.N.Y. Nov. 2, 2020) ("[T]he fact that the City passed Administrative Code §

17-706, prohibiting the sale of e-cigarettes to people under the age of twenty-one *further supports*

the allegation that a public nuisance exists.").  Statutes are also cited and relevant because they

may constitute "evidence of a nuisance *per se.*"  *City of N.Y. v. A-1 Jewelry & Pawn, Inc*., 644 F.

Supp. 2d 201, 216 (E.D.N.Y. 2009).  When the conditions giving rise to a nuisance are also a

violation of a statutory prohibition, those conditions constitute a nuisance *per se*, and the issue of

the reasonableness of the Defendants' conduct and the weighing of the relative interests of the

plaintiff and defendant is precluded because the legislature has, in effect, already struck the balance

in favor of the innocent party.  *City of N.Y. v. A-1 Jewelry & Pawn, Inc*., 247 F.R.D. 296, 355

(E.D.N.Y. 2007).

        The Empire Defendants' offer of *City of N.Y. v. Smokes-Spirits.Com, Inc*., 12 N.Y.3d 616

(2009) to defeat the City's public nuisance claim is unavailing.  In *Smokes-Spirits*, the Second

Circuit certified to the New York Court of Appeals the question "[m]ay the City assert a common

law public nuisance claim that is predicated on N.Y. Public Health Law § 1399-ll?"  As noted

above, the City in this action does not "predicate" its common law public nuisance claim on a

particular statute.[8]  In any event, *Smokes-Spirits* is so easily distinguished from the matter at hand

that the Empire Defendants themselves provide the dispositive distinction:

> The Court of Appeal concluded [in *Smokes-Spirits*] that "[t]he
> presence of a [comprehensive enforcement  scheme] when coupled
> with the Legislature's clear expressions that the public health thrust
> of section 1399-ll *was related to the prevention of underage*

---

[8] It is unclear what either court meant by a public nuisance claim as "predicated" on a statutory claim; neither court
explained what was meant by that term. A public nuisance claim does not require a statutory violation as a predicate
to the claim, as for example under RICO. It may be that the courts sought to determine whether a statutory prohibition
served to provide evidence of a particular public right. If so, interference with that right could reasonably be deemed
a public nuisance.  In *Smokes-Spirits*, the New York Court of Appeals apparently concluded that tax evasion is not
properly classified as a "public nuisance" based on the policy expressed in PHL § 1399-*ll*, which the court viewed as
principally concerned with underage smoking.

> *smoking*, persuades us that the Legislature did not intend its findings
> to authorize a public nuisance claim *based primarily upon alleged
> tax evasion*."

*Empire Mem*. 21-22 (emphasis added). The Empire Defendants thus recognize that the *Smokes-Spirits* decision turned on the Court of Appeal's belief that a statute primarily intended, in the Court's view, to address youth smoking was not a basis to define tax evasion as a public nuisance.

*See Smokes-Spirits*, 12 N.Y.3d at 628-630.  Footnote 5 of the decision makes this point quite clear:

> We acknowledge that a different result might be reached if the City's
> complaint alleged that defendants had made unauthorized shipments
> to minors (*cf. City of New York v. Milhelm Attea & Bros., Inc*., 550
> F. Supp. 2d 332, 349 (E.D.N.Y. 2008) (finding public nuisance
> claim viable in action against cigarette wholesalers where City
> alleged "that sellers of unstamped cigarettes are 'major suppliers' to
> underage smokers, and these sellers fail to comply with N.Y. Public
> Health Law § 1399-cc (3), which requires proof of age"). But no
> such allegations appear in the complaints here.

*Smokes-Spirits*, 12 N.Y.3d at 629 n.5.  Of course here, the Amended Complaint makes precisely those allegations.

Neither of the two issues seen as impediments to a public nuisance claim by the Court of Appeals in *Smokes-Spirits* are present in this case – quite the opposite.  To the extent the City's public nuisance claim in this case is "predicated on" a statute – i.e., that the public nuisance claim closely aligns with the purpose of the statute – the City seeks through its public nuisance claim to fulfill the purpose of the various state and local statutes  pertaining to e-cigarettes – prevent rampant youth and underage nicotine use – the anomaly identified in *Smokes-Spirits* in which a policy against youth smoking is applied to define tax evasion as a public nuisance is absent here. As stated in *Smokes Spirits*, "the Legislature's passage of section 1399-*ll* was predominantly intended to "prevent young people in New York from becoming addicted to cigarettes." 12 N.Y.3d at 628.  The City's present public nuisance claim aligns perfectly with that statutory goal, so that the statute stands as an endorsement of classifying or defining sales of flavored e-cigarettes as a

public nuisance.  And of course in the present case the "different result [that] might be reached if the City's complaint alleged that defendants had made unauthorized shipments to minors," *Smokes-Spirits*, 12 N.Y.3d at 629 n.5, is fulfilled many times over by the Amended Complaint's central emphasis on youth sales of flavored e-cigarettes as the unreasonable injury to the property, health, safety or comfort of a considerable number of New York City residents that are remedied by the public nuisance claims.

> **B.**      **The City Plausibly Alleges Each Element of a Public Nuisance Claim**

Like the Hyde Defendants, the Empire Defendants correctly state that the City must plead that their conduct "amounts to a substantial interference with the exercise of a common right of the public." *Empire Mem.* at 19 (citation omitted).   The same allegations relating to the negative health consequences of vaping that plausibly plead a "substantial interference with the exercise of a common right to the public" by the Hyde Defendants also plausibly plead such substantial interference by the Empire Defendants. *See City Hyde Opp.* at 47-48.  The City's arguments against the Hyde Defendants apply equally to the Empire Defendants and are thus incorporated here.  *Id.*

In addition, the City has more than sufficiently alleged that "the conduct or omissions of Empire created, contributed to, or maintained a public nuisance," *Empire Mem.* at 19, by asserting that the Empire Defendants "import FDVs manufactured in China (and elsewhere)" and distribute them to retail stores, *Am. Compl.* ¶ 8, sell flavored e-cigarettes to sub-distributors or retailers in New York City, *id.* ¶ 85, and sell flavored e-cigarettes, including Hyde products, through a website that contains no restriction on sales to New York, *id.* ¶¶ 86-87, Dkt. No. 42-2 at 31.  The City further alleges that the New York City Sheriff's Office– via an inspection – found "thousands of units of FDVs as well as invoices indicating that the FDVs were being shipped to retail convenience stores in New York City and elsewhere."  *Id.* ¶¶ 88-90; Dkt. No. 42-2 at 30.

As the City stated in its opposition to the Hyde Defendants' motion to dismiss, the City does not need to allege that the Empire Defendants' contributed to a public nuisance through direct retail sales. *City Hyde Opp.* at 48-49. Thus, for the reasons set forth above, the City's allegations are sufficient to allege a public nuisance claim against the Empire Defendants as distributors of the flavored e-cigarettes inundating the City.

### C.    The Empire Defendants Are Liable for a Public Nuisance as Distributors of Flavored E-Cigarettes

As set forth in greater detail in the City's opposition to the Hyde Defendants' motion to dismiss, distributors, like the Empire Defendants, are liable for a public nuisance even if they are (1) "several steps away from the final site of injury caused by the offending product," and (2) one of several sources of a nuisance. *City Hyde Opp.* at 49-54 (collecting cases).

The City's allegations plausibly allege that the Empire Defendants' conduct is a "dominant and relevant fact absent which the public nuisance would not have resulted where and under the circumstances it did." *Id.* at 50 (quoting *City of N.Y. v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 282 (E.D.N.Y. 2004)). This is because the e-cigarette nuisance in the City could not have arisen absent the importation and distribution of popular flavored e-cigarettes by players such as the Hyde and Empire Defendants, whose products wind-up in the hands of youth and underage vapers. *Am. Compl.* ¶¶ 8, 85, 88-90. The Empire Defendants' conduct is intentional because they have "actual or constructive knowledge that City retail stores … sell e-cigarettes to the public" because "that is the very reason that" they "supply e-cigarettes to … retailers." *City Hyde Opp.* at 51.

Finally, that the Empire Defendants may be one of several distributors or wholesalers of flavored e-cigarettes does not help them evade a public nuisance claim because, as with the Hyde Defendants, they are still a "substantial factor in causing the nuisance." *Id.* at 53. The Empire Defendants sell flavored e-cigarettes, including Hyde products, to retailers. *Am. Compl.* ¶¶ 85-90. City retail stores "can only supply the market with illegal flavored … e-cigarettes" because

distributors, like the Empire Defendants, contribute to "a supply chain stretching from China to the City that distributes flavored vapes to City retailers." *City Hyde Opp.* at 53.  The New York City Sheriff has found thousands of units of flavored e-cigarette and e-liquids at Empire Vape's warehouse. *Am. Compl.* ¶ 88.  Included among those products were the most third most-popular brand of flavored e-cigarettes (Hyde).  *Am. Compl.* ¶¶ 89-90; Dkt. 42-2 at 30.  The Empire Defendants also market the most popular brand of flavored e-cigarettes (Elf Bar) on their website. Dkt. No. 42-2 at 31.  As with the Hyde Defendants, "the attraction of youth to flavored e-cigarettes is too well-known to make the youth sales element of the public nuisance anything other than foreseeable." *City Hyde Opp.* at 54.

As with the Hyde Defendants, the Empire Defendants do not attempt to assert a *de minimis* role in the proliferation of flavored e-cigarettes throughout New York City.  *Id*.  One can thus infer that their role is not.  This and the reasons set forth above demonstrate that the City has plausibly alleged that the Empire Defendants are a substantial cause of a public nuisance.  Their motion to dismiss that claim should be denied.

## CONCLUSION

For all the reasons set forth above, the City of New York respectfully requests that the Court deny in their entirety the motion to dismiss pursuant to Rule 12(b)(6) of defendants of Mahant Krupa 56 LLC, Nikunj Patel and Devang Koya.

Dated: New York, New York
November 27, 2023

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
   City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 20-099
New York, New York 10007
(212) 356-2032

By: _____s/_____
     Eric Proshansky
     Krista Friedrich
     Elizabeth Slater

     Assistant Corporation Counsels