UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

                    Plaintiff,

       -against-

MAGELLAN TECHNOLOGY, INC., ECTO WORLD,
LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER,
DONALD HASHAGEN, MAHANT KRUPA 56 LLC
d/b/a Empire Vape Distributors, NIKUNJ PATEL,
DEVANG KOYA, STAR VAPE CORP., NABIL
HASSEN, DORBES LLC, d/b/a Hydevapeofficial.com,
CHRISTIAN A. SMITH,

                    Defendants.

Case No. 23-cv-5880-LLS-OTW

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY MAHANT KRUPA 56 LLC, NIKUNJ PATEL & DEVANG KOYA

Paul M. Eckles
Barry S. Zone
Philippe A. Zimmerman
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel. (212) 554-7800
Fax (212) 554-7700

*Attorneys for Defendants Mahant Krupa 56
LLC, Nikung Patel & Devang Koya*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I. PLAINTIFF FAILS TO ALLEGE FACTS SUPPORTING A CLAIM THAT EMPIRE VIOLATED THE PACT ACT ...................................................................... 2

 A. Plaintiff Fails to Allege Empire Made Sales in Interstate Commerce "Into" a Jurisdiction that Imposes an Excise Tax on E-Cigarettes ............................................ 2

 B. Plaintiff Fails to Allege Empire Made Any Sales to "Consumers" ............................. 5

 C. Plaintiff Fails to Allege Empire Made Any Non-Compliant "Delivery Sales" ............ 7

II. PLAINTIFF FAILS TO ADEQUATELY ALLEGE A RICO CLAIM ............................ 7

 A. Plaintiff Fails to Plead Any Underlying Violation of the Law ..................................... 7

 B. Plaintiff Fails to Plead Fraud with Particularity ........................................................ 8

 C. Plaintiff Fails to Allege that Empire Engaged in a Fraudulent Scheme to Obtain Money or Property from the City. ................................................................................. 9

 D. Plaintiff Fails to Allege The Requisite Connection Between any Predicate Act and Plaintiff's Purported Injury ....................................................................................... 10

  1. Plaintiff has not alleged facts that would establish "but for" causation. ..................... 10

  2. Plaintiff has not alleged facts showing proximate causation. ...................................... 10

 E. Plaintiff Fails to Plead a Plausible Claim for RICO Conspiracy. ................................ 12

III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS .... 13

IV. PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM FOR VIOLATIONS OF N.Y. PUBLIC HEALTH LAW § 1399-*LL*. ................................................................... 13

 A. Plaintiff Lacks Standing To Allege a Violation of Section 1399-ll. ............................. 13

 B. Plaintiff Fails To Allege Facts Supporting a Violation of Section 1399-ll(1). ............. 14

V. PLAINTIFF FAILS TO PLEAD A PLAUSIBLE PUBLIC NUISANCE CLAIM. ......... 15

 A. Plaintiff Lacks Standing to Assert a Violation of § 1399-mm-l ................................... 15

 B. Plaintiff Pleads No Facts Supporting the Allegation that Empire Sells FDVs at Retail... 16

CONCLUSION ................................................................................................................... 17

<u>**TABLE OF AUTHORITIES**</u>

PAGE(S)

Cases

*Bilyou v. Dutchess Beer Distribs., Inc.*,
300 F.3d 217 (2d Cir. 2002)...................................................................................... 3
*California v. Azuma Corp.*,
2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sept. 8, 2023)........................................ 6
*City of N.Y. v. Smokes-Spirits.com, Inc.*,
12 N.Y.3d 616 (2009) .......................................................................................... 15, 16
*City of New York v. Gordon*,
1 F. Supp. 3d 94 (S.D.N.Y. 2013) ........................................................................ 12
*City of New York v. Gordon*,
155 F. Supp. 3d 411 (S.D.N.Y. 2015)...................................................................... 12
*City of New York v. Hatu*,
2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 21, 2019)........................................ 6
*City of New York v. Fedex Ground Package System, Inc.*,
91 F.Supp. 3d 512  (S.D.N.Y. 2015) ...................................................................... 16
*City of New York v. Lasership, Inc.*,
33 F. Supp. 3d 303 (S.D.N.Y. 2014)........................................................................ 12
*Cochran v. Esola*,
67 F.2d 91 (9th Cir. 1933) ...................................................................................... 3
*Empire Merchants, LLC v. Reliable Churchill,*
*LLP*, 902 F.3d 132 (2d Cir. 2018).......................................................................... 12
*Hemi Group, LLC v. City of New York,*
559 U.S. 1 (2010)...................................................................................................... 12
*In re Methyl Tertiary Butyl Ether Prods Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013).................................................................................... 17
*Kelly v. United States,*
140 S. Ct. 1565 (2020)............................................................................................ 9
*Lemke v. Farmers' Grain Co.*,
258 U.S. 50 (1922).................................................................................................. 3
*New York v. Grand River Enterprises Six Nations*,
2020 U.S. Dist. LEXIS 236928 (W.D.N.Y. Dec. 15, 2020)................................ 4, 6
*New York v. Mountain Tobacco Co.*,
942 F.3d 536 (2d. Cir. 2019).............................................................................. 3, 4
*O'Brien v. National Property Analysts Partners*,
719 F. Supp. 222 (S.D.N.Y. 1989) ...................................................................... 1, 11
*Rosado-Acha v. Red Bull Gmbh,*
2016 WL 3636672 (S.D.N.Y. Jun. 29, 2016) ...................................................... 1, 7
*City of New York v. Hatu,*
2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019)...................................... 11
*Wallace v. Currin*,
95 F.2d 856 (4th Cir. 1938) .................................................................................. 3

*Walling v. Jacksonville Paper Co.*,
  317 U.S. 564 (1943) ............................................................................................. 3

Statutes

15 U.S.C. §376 .................................................................................................................. 4
15 U.S.C. §376(a), app. ................................................................................................ 4, 8
15 U.S.C. § 375(10)(A) .................................................................................................... 3
N.Y. Public Health Law § 1399-*ll* ........................................................... 1, 12, 13, 14, 15

Regulations

24 R.C.N.Y. §28-02(b) ........................................................................................ 1, 10, 16

Other Authorities

N.Y.C. Admin. Code 11-1302 ....................................................................................... 13

## PRELIMINARY STATEMENT

The Empire Defendants demonstrated in their opening brief in support of their motion to dismiss the Amended Complaint that, as a New York City-based wholesaler of e-cigarettes, most of the City of New York's legal theories simply do not apply.  Further, there are neither well-pled factual allegations that the Empire Defendants sell or deliver vaping products to any unauthorized recipients, nor any allegations linking the Empire Defendants to the other defendants in connection with any unlawful activity.

The City of New York employs a variety of strategies in its opposition.  First, it ignores what it does not like.  Despite submitting 78 pages of combined briefing in opposition to the Empire and Magellan motions to dismiss for failure to state a claim, the City fails to acknowledge or address that (i) wholesalers are allowed to sell vapor products to anyone possessing "a certificate of registration as a vapor products dealer" (N.Y. Public Health Law ("PHL") 1399-ll(1-a)), or (ii) wholesalers are expressly allowed to sell FDVs "where the sale or offer for sale is made to an entity located outside the City" (24 R.C.N.Y. §28-02(b)).

Second, implicitly acknowledging the deficiency of the Amended Complaint, the City repeatedly refers to material it submitted in connection with its motion for a preliminary injunction.  That material is not properly before the Court on this motion and should, accordingly, be disregarded.  *See Rosado-Acha v. Red Bull Gmbh*, 2016 WL 3636672, at *8 (S.D.N.Y. Jun. 29, 2016) (refusing to consider declaration submitted by plaintiff in connection with court's consideration of a motion to dismiss).

Third, the City appears to seek to improperly and implicitly supplement or amend many of the allegations of its Amended Complaint based on arguments presented in its opposition brief.  *See O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to

dismiss"). For example, the City now asserts that its "injury" is not based on e-cigarettes that have been improperly disposed of in city parks (which is exactly what it alleges in the Amended Complaint), but rather on Sheriff seizures of FDVs from retailers (which is never alleged, let alone mentioned, in the Amended Complaint).

Fourth, time and again the City in its opposition insists that elements or requirements underlying its claims are not actually required. The PACT Act's interstate commerce requirement does not require sales in interstate commerce; the PACT Act's requirement of sales into a jurisdiction imposing an excise tax on the products does not require either sales into a jurisdiction or an excise tax on the products; wire or mail fraud based on a fraudulent concealment theory does not require any actual fraud or concealment; statutory provisions addressing the standing of Corporation Counsel are irrelevant to whether Corporation Counsel has standing; and a public nuisance claim based on illegal retail sales of FVDs does not require any retail sales of FVDs.

As explained further below, the City's claims all fail as a matter of law.

## ARGUMENT

### I.  PLAINTIFF FAILS TO ALLEGE FACTS SUPPORTING A CLAIM THAT EMPIRE VIOLATED THE PACT ACT

#### A.  Plaintiff Fails to Allege Empire Made Sales in Interstate Commerce Into a Jurisdiction that Imposes an Excise Tax on E-Cigarettes

In their opening brief, the Empire Defendants demonstrated that the PACT Act addresses the problem of tax evasion stemming from cigarette shipments from low-tax states to high-tax states by requiring that out-of-state vendors register and file reports detailing their shipments in interstate commerce into jurisdictions imposing an excise tax on the tobacco products at issue. (Mot. at 4.) The Empire Defendants further demonstrated that Empire is a NYC business, that its intracity sales to New York customers do not fall within the PACT Act's definition of interstate

commerce, and that New York City does not impose an excise tax on e-cigarettes.  The City's

PACT Act claim thus fails because there is no allegation that the Empire Defendants have (a)

shipped e-cigarettes in interstate commerce (b) into a jurisdiction that imposes an excise tax on

e-cigarettes.

In its opposition, the City argues that (i) Congress's power to regulate "interstate

commerce" is not limited to transactions that themselves cross state lines and includes sales

made over the internet, (ii) another purpose of the PACT Act was to prevent deliveries to minors,

and (iii) it is irrelevant that the City of New York has not passed an excise tax on e-cigarettes

because e-cigarettes fall within the definition of cigarettes.  The City's first two points are red

herrings, and its third point is simply wrong.

First, the "interstate commerce" cases cited by the City on pages 6-7 of its opposition –

none of which deals with the PACT Act[1] – stand for the proposition that Congress has the *power*

to address segments of an interstate delivery that occur intrastate and sales that occur over the

internet. But the Empire Defendants' argument is not that Congress lacks the power to regulate

its business.  Rather, the issue is that the PACT Act itself defines "interstate commerce" as

"commerce between a State and any place outside the State, commerce between a State and any

Indian country in the State, or commerce between points in the same State but through any place

outside the State or through any Indian country."  15 U.S.C. § 375(10)(A).

The City ignores that the Second Circuit squarely addressed the interpretation of

"interstate commerce" in the context of the PACT Act in *New York v. Mountain Tobacco Co.*,

---

[1] *See Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943) (addressing scope of interstate commerce under the Fair Labor Standards Act); *Lemke v. Farmers' Grain Co.*, 258 U.S. 50, 55 (1922) (addressing whether the North Dakota Grain and Inspection Act is an unlawful regulation of and burden upon interstate commerce); *Bilyou v. Dutchess Beer Distribs., Inc*., 300 F.3d 217, 223 (2d Cir. 2002) (addressing whether plaintiff was exempt from overtime pay under the interstate commerce exemption under the Fair Labor Standards Act); *Wallace v. Currin*, 95 F.2d 856 (4th Cir. 1938) (addressing whether the Tobacco Inspection Act of 1935 was a valid regulation of interstate commerce); *Cochran v. Esola*, 67 F.2d 91, 95 (9th Cir. 1933) (addressing scope of interstate commerce under the Produce Agency Act).

942 F.3d 536 (2d. Cir. 2019).  The issue in *Mountain Tobacco* was whether shipments from an Indian reservation in Washington State to an Indian reservation in New York State were made in "interstate commerce" for PACT Act purposes.  The Second Circuit did not simply observe that the businesses engage in interstate commerce or cite precedent addressing the scope of Congress's power to regulate interstate commerce.  To the contrary, it quoted the specific definition of interstate commerce set forth in the PACT Act, cited applicable principles of statutory construction (e.g., focusing on the plain meaning of the statute's text and resolving ambiguities to avoid absurd results), and parsed the statute's text to determine whether the deliveries at issue fell within the PACT Act's definition of interstate commerce.  *Id.* at 545-7. *See also New York v. Grand River Enterprises Six Nations*, 2020 U.S. Dist. LEXIS 236928, at *36-37 (W.D.N.Y. Dec. 15, 2020) ("the Second Circuit found the PACT Act's definition of 'interstate commerce' 'sweeps broadly to encompass all commerce <u>except that which is purely intrastate</u>.'") (emphasis added).  Here, it is the City that is proposing an absurd interpretation that cannot be reconciled with the statute's text.  Empire's deliveries to New York customers are not just purely intrastate, but also purely intracity, and do not meet the PACT Act's definition of interstate commerce.

Second, while it is true that a purpose of the PACT Act was to address tobacco sales to minors, the PACT Act's reporting requirements, set forth in 15 U.S.C. §376, are specifically tied to its purpose in combatting tax evasion.  The reporting requirements pertain to shipments "in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped <u>into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco</u> . . . . " (emphasis added).  Similarly, the requirements relating to "delivery sales," set forth in 15 U.S.C. §376(a), apply "to delivery sales <u>into a specific State and place</u>." (emphasis

added).  If Congress had intended to adopt the City's much more expansive interpretation that the reporting requirement applies to all deliveries by any business engaged in interstate commerce, it could simply have said that without any references to shipments into jurisdictions that impose taxes.

Third, the City concedes that NYC does <u>not</u> impose an excise tax on e-cigarettes.  The City instead argues the lack of an excise tax on e-cigarettes is irrelevant because the City imposes an excise tax on cigarettes.  The City's theory makes no sense.  The City is arguing that an excise tax on conventional cigarettes triggers a duty on e-cigarette sellers to file reports with tax administrators that do not tax e-cigarettes.  While the City argues that Defendants are proposing a deviation in how e-cigarettes are treated as compared to cigarettes, it is the City itself that deviates in how it treats them:  it imposes an excise tax on cigarettes, but not e-cigarettes.  The structure, text, and purpose of the PACT Act clearly establish that there are obvious consequences for the City's disparate treatment of cigarettes and e-cigarettes.  Finally, the City also halfheartedly argues that it imposes a *sales* tax on e-cigarettes and that a sales tax should be enough to provide it PACT Act enforcement powers.  But the PACT Act addresses differentials in *excise* taxes between competing jurisdictions.  It makes no reference to sales taxes and the City fails to cite any authority supporting its unprecedented position.  (Mag. Opp. at 15.)

### B.    Plaintiff Fails to Allege Empire Made Any Sales to "Consumers"

In their opening brief, the Empire Defendants demonstrated that the PACT Act only applies to sales to "consumers" and consumers "does not include any person lawfully operating as a manufacturer, distributor, wholesale, or retailer of cigarettes or smokeless tobacco."  (Mot. at 6.)  Because Empire is a wholesaler that sells exclusively to licensed retailers, the City's PACT Act claim against the Empire Defendants fails as a matter of law.

In its opposition, Plaintiff argues that retail stores constitute "consumers" if they are not "lawfully operating" their businesses.  (Opp. at 8; Magellan Opp. at 21-27.)  The City argues that mere licensure is insufficient and that a retailer constitutes a "consumer" under the PACT Act if it is violating any law.  But the City fails to cite a single case in which a licensed retailer was found to be a "consumer."  In *City of New York v. Hatu*, 2019 U.S. Dist. LEXIS 91576, *46-47 (S.D.N.Y. May 21, 2019), the court denied a motion to dismiss a PACT Act claim where the customers were not licensed retailers, but rather "transporters of cigarettes from North Carolina to New York."  In *California v. Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, at *31 (E.D. Cal. Sept. 8, 2023), the court found "[b]ecause [defendant's] customers do not have licenses and do not remit applicable taxes to California, they are not lawfully operating and are therefore, consumers as defined by the PACT Act."  As to the tribal retailers in *Azuma Corp*, the court found they "do not have a state license under either the Licensing Act or the Tax Law, both of which are required under state law."  *Id.*  The focus of numerous courts on whether the retailers were licensed shows that, notwithstanding the City's argument, licensure is a critical issue.

Similarly, the issue in *New York v. Grand River Enterprises Six Nations*, 2020 U.S. Dist. LEXIS 236928, at *36-37 (W.D.N.Y. Dec. 15, 2020), was whether tribal retailers needed to comply with state law.  The court concluded that "[t]he lawfulness of Defendants' cigarette-related activities is, for PACT Act purposes, . . . properly determined by Defendants' compliance or lack thereof with New York, not tribal law."  *Id.*

Even the City does not appear to seriously contend that *any* violation of the law would suffice to turn a licensed retailer into a "consumer."  The City's main argument is that if Empire was selling its customers illegal products then it would necessarily know that its customers were not "lawfully operating" their businesses.  Even if knowledge of illegal sales suffced to convert

6

retailer customers into "consumers" (which is not the law), the City's claim would still fail because it has not adequately pled that Empire made illegal sales of FVDs to any customers.[2]

### C. Plaintiff Fails to Allege Empire Made Any Non-Compliant "Delivery Sales"

In their opening brief, the Empire Defendants demonstrated that the PACT Act applies only to "delivery sales" and Plaintiff fails to adequately allege a non-compliant "delivery sale" by Empire to a customer in New York City.  Plaintiff fails to allege that any stores acquired their FDVs from Empire, that any purchases of FDVs from Empire by local stores involved a "delivery" as opposed to a pickup, or that any delivery by Empire violated the PACT Act's delivery requirements, such as an inadequate shipping label.

In its opposition, the City argues it has "supplemented" its allegations "in City filings permissibly considered on this motion."  (Opp. at 8.)  Yet, the assertion that documents outside the complaint can be considered is plain wrong.  *See Rosado-Acha*, 2016 WL 3636672, at *8 (refusing to consider declaration submitted by plaintiff in connection with court's consideration of a motion to dismiss).  On a motion to dismiss, the issue is the sufficiency of the allegations of fact, not an absence of evidence.  The only allegation in the Amended Complaint that relates to the subject is that invoices were discovered at Empire's facility in 2001, but there is no mention of PACT Act delivery requirements.  (AC ¶ 88.)

## II.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE A RICO CLAIM

### A.   Plaintiff Fails to Plead Any Underlying Violation of the Law

In their opening brief, the Empire Defendants demonstrated that because the PACT Act does not apply to Empire's sales to New York City customers, there can be no RICO claim premised on an alleged predicate act of failing to comply with the PACT Act's reporting

---

[2] The City also makes the irrelevant point that the ATF advises cigarette sellers that possession of appropriate Tribal licenses does not exempt the seller from compliance with applicable local, state, and Federal laws and regulations. (Mag. Opp. at 24.)  But the Empire Defendants are not arguing that retailers are exempt from any applicable laws.

requirements.  (Mot. at 10.)

In its opposition, the City makes the bizarre argument that the PACT Act's reporting requirements exist regardless of whether the PACT Act applies to intracity sales and that the failure to file reports can still "independently establish the RICO predicates of mail and wire fraud."  (Opp. at 11.)  That is simply wrong.  The PACT Act's reporting provisions incorporate both the interstate commerce element and the requirement of shipments into a jurisdiction taxing the products.  15 U.S.C. § 376(a).  Thus, in the absence of any underlying PACT Act violation, the City's RICO claim necessarily fails as a matter of law.

### B.      Plaintiff Fails to Plead Fraud with Particularity

In their opening brief, the Empire Defendants demonstrated that a RICO plaintiff must plead with particularity how the defendant utilized the mail or wires as part of a "scheme" to defraud another through "false or fraudulent pretenses."  (Mot. at 10.)

In opposition, the City acknowledges its obligation to allege the elements of mail or wire fraud, but is unable to identify sufficiently particularized factual allegations in the Amended Complaint supporting a cognizable claim based on a purported fraudulent scheme.  In fact, there is a fundamental inconsistency in the City's arguments.  It argues that the "wire" requirement is satisfied by Empire publicly advertising FDVs on its website while simultaneously arguing that Empire fraudulently concealed it was selling FDVs.  (Opp. at 13; Magellan Opp. at 30-31.)  The Empire Defendants do not dispute that it is *possible* for the use of the internet to satisfy the wires requirement, but a fraudulent scheme still needs to be pled with particularity.  Similarly, the City cites precedent for the proposition that the failure to file Jenkins reports *could* constitute fraudulent concealment in support of a mail fraud claim.  But the City does not actually allege there was any fraudulent concealment or that it was deceived in any way.  Empire is an e-cigarette wholesaler licensed by New York City, it maintains a public website displaying its

8

inventory, and the City inspected its warehouse in 2001.  Thus, the City's argument that Empire was able to "forestall the City's enforcement efforts" through "omissions of information" that would reveal it was selling e-cigarettes in New York City is rebutted by its own allegations that the Empire publicly advertised FDVs on its website and its failure to allege any fraud with particularity.

### C.   Plaintiff Fails to Allege that Empire Engaged in a Fraudulent Scheme to Obtain Money or Property from the City.

In their opening brief, the Empire Defendants established that to obtain a conviction for mail or wire fraud, the government must prove that the "object" of the fraudulent scheme was to obtain money or property from the "victim" of the scheme.  (Mot. at 12.)  The Supreme Court addressed this issue at length in *Kelly* v. *United States,* 140 S. Ct. 1565, 1572-73 (2020), where it reversed convictions based on the Chris Christie bridge-gate scandal and held that, "The wire fraud statute thus prohibits only deceptive schemes to deprive the victim of money or property."

The City completely ignores this argument in its opposition to the Empire Defendants' motion.  In its opposition to the Magellan Motion, the City argues that, although its purported injury stems from disposal costs, the purpose of the scheme was for Defendants to profit from selling more FVDs.  (Mag. Opp. at 35-38.)  The City's argument misses the point.  While there is some authority that wire or mail fraud may include "deceptions intended to deprive another of money or property," there is no allegation that anyone was "deprived" of money as a result of any fraud.  This is not a situation where fraudulent statements may have been directed at one person (e.g., an insurance commissioner) while another person (e.g., consumer) was overcharged and "deprived" of money.  The only "victim" under Plaintiff's theory is the City, and the only injury alleged in the Amended Complaint is the City's supposed clean-up costs.

9

**D.    Plaintiff Fails to Allege The Requisite Connection Between any Predicate Act and Plaintiff's Purported Injury**

**1.    Plaintiff has not alleged facts that would establish "but for" causation.**

In their opening brief, the Empire Defendants demonstrated that there is no connection between Empire's purported failures to comply with PACT Act reporting requirements and the City's purported injuries stemming from hazardous waste clean-up costs or public health spending.

In its opposition, the City argues that that if the Empire Defendants had registered with the City that its status as a delivery seller would have been "revealed," such that the City could have taken enforcement measures to shut down or reduce deliveries into NYC.   (Opp. at 14; Mag. Opp. at 31-32.)  As discussed above, the City's theory that it was a secret that Empire was selling e-cigarettes is belied by the City's own allegations, including that the allegedly prohibited products were openly marketed on Empire's website.  *Supra* 8.  Moreover, filing reports would not have prevented Empire from selling e-cigarettes.  Wholesalers are allowed to sell vapor products to anyone possessing "a certificate of registration as a vapor products dealer."  N.Y. PHL 1399-ll(1-a).  Wholesalers are also expressly allowed to sell FDVs "where the sale or offer for sale is made to an entity located outside the City."  24 R.C.N.Y. §28-02(b).  As a result, the notion that if Empire had simply registered with the City and filed PACT Act reports that the City would have spent less money cleaning up e-cigarettes improperly disposed of by third-parties or spent less money on public health is not credible.

**2.    Plaintiff has not alleged facts showing proximate causation.**

In their opening brief, the Empire Defendants demonstrated that in order to satisfy RICO's proximate causation requirement a plaintiff must allege that the purported violations led directly to plaintiff's injuries.  Harm that is indirect, attenuated, remote, or caused by the actions

10

of third-parties, fails to satisfy the requirement. The City's hypothetical alleged injury stemming from improperly disposed of e-cigarettes in City parks fails all of these tests. (Mot. at 15-16.) The Empire Defendants are not the proximate cause of some unknown e-cigarette user's littering in a City park.

In its opposition, the City disingenuously argues that Defendants are "mischaracterizing the City's present injury as caused by the improper disposal of e-cigarettes by third-parties, not by concealed shipments into the City." (Mag. Opp. at 34.)[3] The City argues that its actual injury stems from the Sheriff's seizure of illegal FVDs from retail stores and that the Sheriff must "contract for the more costly disposal of seized e-cigarettes as hazardous waste." (*Id.*) This newly identified injury is theoretical and was not alleged in the Amended Complaint. As noted above, the City is not permitted to use its brief in opposition to a motion to dismiss to supplement or amend the allegations of its Amended Complaint. *See O'Brien*, 719 F. Supp. at 229 ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss").

This is the complete paragraph in the RICO section of the Amended Complaint titled "Injury to Business or Property":

> 141. The City has sustained injury to its business or property, including but not limited to a growing hazardous waste problem caused by defendants' improperly disposed-of FDVs in parks and other City property. The City has been forced to handle and dispose of FDVs and other illegal vape devices containing toxic chemicals designated as hazardous waste that must be disposed-of at greater cost to the City by special procedures required by law for hazardous waste. The City has also been forced to develop effective methods to address the toxic electronic waste generated by e-cigarette devices and batteries. The City further has been forced to take other steps and incurred additional costs to mitigate the harms to

---

[3] Rather than responding to Empire's motion on this issue, the City instead strategically incorporates its opposition to Magellan's motion. Contrary to its argument in opposition to Magellan's motion, Empire is not a manufacturer of e-cigarettes, and its products are hence not "ubiquitous" at stores throughout the City.

the public health caused by defendants' sales of FDVs into New York City.[4]

There is no mention anywhere in the Amended Complaint of the seizure of e-cigarettes from

retail stores, much less an allegation that such seizures are the basis of the City's injury.

The City also attempts to distinguish *Hemi Group, LLC v. City of New York,* 559 U.S. 1,

4 (2010) (plurality), which applied the proximate causation requirement in the context of a

failure to file Jenkins Acts reports.  The purported distinction regarding changes where reports

are required to be filed is immaterial.  As is the case here, *Hemi Group* involved injury stemming

from third-party actions, which the Supreme Court squarely held fails the proximate cause test.

*See also Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132 (2d Cir. 2018)

(holding no proximate cause where liquor distributor with exclusive distribution contract sued

competitor for sales into plaintiff's exclusive territory because competitor's sales did not

necessarily lead to lost sales).  The City's effort to rely on *City of New York v. Hatu*, 2019 U.S.

Dist. LEXIS 91576, at *42 (S.D.N.Y. May 31, 2019), is completely misplaced.  In *Hatu*, the

defendant was an out-of-state supplier that provided untaxed cigarettes to its local co-conspirator

who illegally sold the cigarettes without collecting taxes.  In that case, there was a direct

connection between the conduct of the defendant and the city's injury in the form of lost tax

revenue.[5]

### E.    Plaintiff Fails to Plead a Plausible Claim for RICO Conspiracy.

In their opening brief, the Empire Defendants demonstrated that a RICO conspiracy

claim must be dismissed where the plaintiff has not adequately pled an underlying substantive

---

[4] The allegation is consistent with the City's allegation in support of its nuisance claim that Defendants sell products that "potentially or actually contaminates City parks and public places with hazardous wastes."  (AC ¶ 155.).)

[5] *See also City of New York v. Gordon*, 155 F. Supp. 3d 411, 425-26 (S.D.N.Y. 2015) (finding direct connection between shipment of untaxed cigarettes in violation of the CCTA and City's lost tax revenue); *City of New York v. Lasership, Inc.*, 33 F. Supp. 3d 303, 312 (S.D.N.Y. 2014) (same); *City of New York v. Gordon*, 1 F. Supp. 3d 94, 113 (S.D.N.Y. 2013) (failure of cigarette sellers to collect and remit required taxes was direct cause of City's lost tax revenue).

RICO claim.  (Mot. at 17.)  The City fails to address this argument in its opposition to the Empire Motion and argues in its opposition to the Magellan Motion only that it has adequately alleged a substantive RICO claim.  (Mag. Opp. at 38 n. 23.)  Thus, there is no dispute that if the Court finds that Plaintiff's substantive RICO claim fails then its conspiracy claim necessarily fails as well.

## III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

In their opening brief, the Empire Defendants demonstrated that the normal course when all federal claims are dismissed before trial is for the court to decline supplemental jurisdiction over any remaining state claims.  In its opposition brief, the City fails to respond to this argument and implicitly concedes that jurisdiction depends on the viability of its federal law claims.

## IV.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM FOR VIOLATIONS OF N.Y. PUBLIC HEALTH LAW § 1399-*LL*.

### A.   Plaintiff Lacks Standing To Allege a Violation of Section 1399-ll.

In their opening brief, the Empire Defendants demonstrated that the City lacks standing to seek civil penalties for violation of N.Y. PHL § 1399-*ll* because standing is limited to those political subdivisions that impose a tax on the applicable products and, while New York City taxes cigarettes, it does not impose an excise tax on vapor products.  *See* N.Y.C. Admin. Code 11-1302.  (Mot. at 19.)

In its opposition, the City proffers an interpretation, much like its PACT Act interpretation, that if a political subdivision imposes a tax on either cigarettes <u>or</u> vapor products, it may bring an enforcement action on all cigarette and vapor products regardless of whether the political subdivision imposes a tax on the product at issue.  (Mag. Opp. at 39.)  The City bases this implausible interpretation solely on the fact that in the statute the word "or" appears between cigarettes and vapor products.  But the word "or" quite obviously makes clear that a jurisdiction

does not need to have an excise tax on both cigarettes and vapor products in order to pursue an enforcement action on whichever product there is an alleged violation.  Otherwise, a defendant could cite the absence of a tax on vapor products as a basis to deny standing in an action about cigarettes, which would make no sense.  The City also ignores the following language in the provision: "with respect to any cigarettes or vapor products . . . caused to be shipped or transported in violation of this section to any person located within such political subdivision." *Id.* (emphasis added).  In other words, the statute applies to whichever product is shipped in violation of an applicable excise tax.  Thus, because the City imposes an excise tax only on "cigarettes" and not "vapor products," the City lacks standing to enforce the vapor product-specific provisions of N.Y. PHL § 1399-*ll*.

### B. Plaintiff Fails To Allege Facts Supporting a Violation of Section 1399-ll(1).

In their opening brief, the Empire Defendants demonstrated that the provision that the City cites as the basis for the alleged violations, N.Y. PHL § 1399-*ll*(1), applies only to *cigarettes,* not to vapor products.  *See* ¶¶ 178-79.

In its opposition, the City claims that this was a typographical error and it meant to cite to PHL Law § 1399-*ll(2)*.  The City suggests that the Empire Defendants are engaged in gamesmanship in addressing the Amended Complaint as filed.  But a review of the Amended Complaint reveals that rather than a typographical error, the citation was intentional.  The Amended Complaint quotes extensively from § 1399-*ll(1)* including references to "licensed cigarette tax agents" and "export warehouse proprietors," which have nothing to do with vapor products.  (AC ¶ 146.)  In any event, § 1399-*ll(2)* does not address vapor products either.  Although it is hard to fathom that the City would now inadvertently cite yet another incorrect provision, the provision that deals with vapor products is PHL Law § 1399-*ll*(1-a).  Regardless, there is no basis to grant leave to amend to correct the asserted error(s), because Plaintiff has also

failed to allege facts supporting a violation of §1399-*ll(1-a)*.  The provision expressly allows shipments to persons who have "a certificate of registration as a vapor products dealer under article twenty-eight-C of the tax law."  Here, there is no well-pled factual allegation that the Empire Defendants have sold, shipped or delivered vapor products to anyone in New York City not possessing a Vape Certificate.  Again, the City fails to identify a single delivery, much less provide the factual detail necessary to determine that the recipient was an unauthorized recipient.

## V.      PLAINTIFF FAILS TO PLEAD A PLAUSIBLE PUBLIC NUISANCE CLAIM.

### A.      Plaintiff Lacks Standing to Assert a Violation of § 1399-mm-l

In their opening brief, the Empire Defendants demonstrated that certain provisions of the N.Y. PHL authorize Corporation Counsel to redress violations in court and other provisions – namely, the ones at issue in this case – instead provide that violations "shall" be addressed through administrative hearings.  The same is true with respect to the N.Y.C. Administrative Code, wherein certain provisions contain authorization for Corporation Counsel to pursue violations in court and other provisions – again, the ones at issue – provide for violations to be addressed through administrative hearings.  (Mot. at 22-23.)

In its opposition, Corporation Counsel does not dispute the Empire Defendant's description of the statutes.  It instead argues that the regulatory structures are all irrelevant.  Corporation Counsel argues that it may pursue claims based on any conduct on a public nuisance theory regardless of any standing provisions in relevant statutes.  But it fails to cite any cases that actually stand for that proposition.  Corporation Counsel's theory also suggests that *City of N.Y. v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616 (2009), in which the Court of Appeals considered Corporation Counsel's ability to pursue a public nuisance claim predicated on a violation of N.Y. PHL § 1399-ll, was a massive waste of time.  Under Corporation Counsel's theory, it could have pursued a claim based on the exact same conduct at issue in *Smokes-Spirits* regardless of the

underlying statute.  But, as in *Smokes-Spirits*, the statutes in question are the only basis for the City's contention that the defendants' conduct amounts to a "substantial interference with the exercise of a common right of the public."

The City also seeks to distinguish *Smokes-Spirits* by noting that the Court of Appeals stated it might have reached a different result if the plaintiff's complaint alleged that defendants had made unauthorized shipments to minors.  The City seizes upon this comment and argues that "[o]f course here, the Amended Complaint makes precisely those allegations."  (Opp. at 21.) The City is again playing fast and loose with the allegations asserted in the Amended Complaint. There are no allegations in the Amended Complaint that Empire has sold e-cigarettes to minors. *Cf. City of New York v. Fedex Ground Package System, Inc.,* 91 F.Supp.3d 512, 530 (S.D.N.Y. 2015) (granting motion to dismiss public nuisance claim and holding "[d]espite these attempts to distinguish the instant action from *Smokes–Spirits,* Defendant points out that Plaintiffs have *not* specifically pleaded that FedEx made unauthorized shipments to minors.").  Once again, Empire is a wholesaler and is allowed to sell vapor products to anyone possessing "a certificate of registration as a vapor products dealer."  N.Y. PHL 1399-ll(1-a).

### B.   Plaintiff Pleads No Facts Supporting the Allegation that Empire Sells FDVs at Retail

In their opening brief, the Empire Defendants demonstrated that the City's nuisance claim is premised on retail sales of FDVs, which allegedly lead to consumers improperly disposing of FDVs in City parks, and there are no well-pled factual allegations that Empire either sells FDVs at retail or controls any retailer that does.  (Mot. at 25.)

In its opposition, the City once again effectively seeks to impermissibly supplement or again amend the allegations of its Amended Complaint.  The City accuses the Empire Defendants of mischaracterizing the City's public nuisance claim as being premised on "retail

sales."  But these are the three paragraphs set forth in the Amended Complaint under the City's

public nuisance claim:

> 184.    Pursuant to PHL 1399-mm-(1), flavored vape products that are intended or reasonably expected to be used with or for consuming nicotine are banned from sale or being offered for sale <u>at retail</u> in New York State.

> 185.    Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes sell and offer for sale <u>at retail</u> flavored vapes . . .

> 186.    By violating the ban on offering or selling <u>at retail</u> flavored vape products . . .

(A.C. ¶¶ 184-86) (emphasis added).  And there is a good reason the City focuses on retail

sales of FDVs in the Amended Complaint – they are the only e-cigarette sales that are

completely banned and they are the only means by which the City could even attempt to

plausibly allege that an e-cigarette business had engaged in conduct that directly

contributed to a "substantial interference with the exercise of a common right of the

public."  *See In re Methyl Tertiary Butyl Ether Prods Liab. Litig*., 725 F.3d 65, 121 (2d

Cir. 2013).[6]  Because there is no well-pled factual allegation that Empire sells FDVs at

retail in New York City, either through a website or in retail stores, its public nuisance

claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Empire Defendants respectfully request that the Court

grant their motion to dismiss Plaintiff's PACT Act and RICO claims with prejudice and either

decline to exercise supplemental jurisdiction over Plaintiff's state law claims, or, in the

alternative, also dismiss them with prejudice.

Dated: December 11, 2023

---

[6] As demonstrated in the Magellan MTD, there is considerable debate whether e-cigarettes, including FDVs, have a net-positive impact on public health given they contribute to a decline in the use of conventional cigarettes.

New York, New York

Respectfully Submitted,

MOSES & SINGER LLP

 /s/ Paul M. Eckles
Paul M. Eckles
Barry S. Zone
Philippe A. Zimmerman
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800
peckles@mosessinger.com

*Attorneys for Defendants Mahant Krupa 56 LLC, Nikunj Patel & Devang Koya*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of December 2023, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.

_/s/ Paul M. Eckles____