UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X:

The City of New York,

                    Plaintiff,

      -against-

Magellan Technology, Inc., et al.,

              Defendants.

------------------------------------------------------ X

Case No. 1:23-cv-05880-LLS-OTW

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS MAGELLAN TECHNOLOGY, INC., ECTO WORLD, LLC, AND <u>MATTHEW J. GLAUSER'S MOTION TO DISMISS</u>

Eric N. Heyer (admitted *pro hac vice*)
Joseph A. Smith (admitted *pro hac vice*)
Anna Stressenger (admitted *pro hac vice*)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, DC 20036
Phone: 202.331.8800

Richard De Palma
THOMPSON HINE LLP
300 Madison Avenue
27th Floor
New York, NY 10017
Phone: 212.908.3969

*Counsel for Defendants Magellan Technology, Inc., Ecto World, LLC, and Matthew J. Glauser*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

A.     The City Fails to Plead a Plausible Claim for Violations of the PACT Act. .................... 3

    1.     The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes. 3

    2.     The City has not alleged facts that would support a finding that Magellan and Demand Vape violated the PACT Act's reporting requirements. ......................... 4

    3.     The City has not alleged facts that would support a finding that Magellan and Demand Vape violated the PACT Act's delivery sales requirements. .................. 6

        a.     The City has not alleged facts showing Magellan or Demand Vape sold electronic cigarettes to "consumers." ........................................................ 6

        b.     The City has not identified any sales by Magellan or Demand Vape that violated the PACT Act's requirements for "delivery sales." ..................... 8

B.     The City Fails to Plead a Plausible Claim for RICO Act Violations ................................ 9

    1.     The City's RICO Act claim fails because the City has not alleged that Defendants engaged in a fraudulent scheme to obtain money or property from the City (or any other alleged "victim"). ..................................................................................... 9

    2.     The City's RICO Act claim also fails because the City cannot show that Defendants' alleged actions caused the City's injuries. ........................................ 12

    3.     The City's RICO Act claim also fails because the City has not identified specific instances of Defendants using mail carriers or interstate wires. .......................... 14

C.     The City Fails to Plead a Plausible Claim for RICO Conspiracy. ................................... 15

D.     The City Fails to Plead a Plausible Claim for Violations of N.Y. Public Health Law § 1399-*ll* ....................................................................................................................... 15

    1.     The City lacks standing to enforce N.Y. PHL § 1399-*ll* against Defendants. ...... 15

    2.     The City fails to allege facts supporting a violation of N.Y. PHL § 1399-*ll*(1) or (1-a). ................................................................................................................... 17

E.     The City Fails to Plead a Plausible Public Nuisance Claim ........................................... 20

CONCLUSION ................................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alkhabit v. N.Y. Motor Grp., LLC*,
   2015 U.S. Dist. LEXIS 72055 (E.D.N.Y. June 3, 3015) ........................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................8

*California v. Azuma Corp.*,
   2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sept. 7, 2023).........................................7

*City of New York v. Hatu*,
   2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019)..........................................7

*Cleveland v. United States*,
   531 U.S. 12 (2000)............................................................................................9

*DNJ Logistic Group, Inc., v. DHL Express (USA), Inc.*,
   2010 U.S. Dist. LEXIS 15439 (E.D.N.Y. Feb. 19, 2010).........................................14

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010)..............................................................................................13

*In re Juul Labs, Inc., Mktg. Sales Practices & Prod. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ...............................................................11

*K.D. v. White Plains Sch. Dist.*,
   921 F. Supp. 2d 197 (S.D.N.Y. 2013)..........................................................10, 13

*Kelly v. United States*,
   140 S. Ct. 1565 (2020)...............................................................................9, 10

*LaFace v. Eastern Suffolk BOCES*,
   349 F. Supp. 3d 126 (E.D.N.Y. 2016) ...............................................................12

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..........................................................................13

*Liu Jo S.P.A. v. Jenner*,
   630 F. Supp. 3d 501 (S.D.N.Y. 2022).........................................................10, 13

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998).................................................................................15, 16

*New York v. Grand River Enterprises Six Nations*,
  2020 U.S. Dist. LEXIS 236928 (W.D.N.Y. Dec. 15, 2020) ................................................7

*Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*,
  2003 U.S. Dist. LEXIS 6851 (N.D.N.Y. Apr. 24, 2003) ................................................22

*People v. Hart*,
  66 Misc. 3d 649 (Glens Falls City Ct., Warren Cty. 2019) ................................................17

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  573 F. Supp. 3d 459 (D. Mass. 2021) ................................................11

*Salute v. Stratford Greens Garden Apartments*,
  135 F.3d 293 (2d Cir. 1998)................................................8

*Scott v. City of New York Dep't of Corr.*,
  641 F. Supp. 2d 211 (S.D.N.Y. 2009), *aff'd*, 445 F. App'x 389 (2d Cir. 2011)....................21

*Southwick Clothing LLC v. GFT (USA) Corp.*,
  2004 U.S. Dist. LEXIS 25336 (S.D.N.Y. Dec. 15, 2004) ................................................21

*United States Dep't of Labor v. Triplett*,
  494 U.S. 715 (1990)................................................10

*United States v. Blumeyer*,
  114 F.3d 758 (8th Cir. 1997) ................................................11

*United States v. Granberry*,
  908 F.2d 278 (8th Cir. 1990) ................................................11

*United States v. Greenberg*,
  835 F.3d 295 (2d Cir. 2016)................................................10

*United States v. Martinez*,
  2023 U.S. Dist. LEXIS 27535 (S.D.N.Y. Feb. 17, 2023) ................................................11

*United States v. McMillan*,
  600 F.3d 434 (5th Cir. 2010) ................................................11

*United States v. Seidling*,
  737 F.3d 1155 (7th Cir. 2013) ................................................11

*United Transp. Union v. AMTRAK*,
  588 F.3d 805 (2d Cir. 2009)................................................16

**Statutes**

15 U.S.C. § 375(4) ................................................7

15 U.S.C. § 375(5) .................................................................................................6

15 U.S.C. § 375(10) .............................................................................................5, 6

15 U.S.C. § 376 ...................................................................................................4, 6

15 U.S.C. § 376a ...........................................................................................3, 4, 6, 8

15 U.S.C. § 378(c)(1)(A) .........................................................................................3

18 U.S.C. § 1341 ...................................................................................................14

18 U.S.C. § 1964(c) ...............................................................................................10

Fla. Stat. 569.32 .....................................................................................................7

N.Y. Penal Law § 260.21 ........................................................................................17

N.Y. Public Health Law § 1399-*ll* ........................................................... *passim*

**Other Authorities**

U.S. Const. art. II, § 3 ...........................................................................................11

Fed. R. Civ. P. 9(b) .................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...........................................................................................8

Fed. R. Civ. P. 12(d) ...............................................................................................8

## **INTRODUCTION**

Faced with the failure of its First Amended Complaint ("FAC") to allege a single plausible claim against Defendants Magellan Technology, Inc. ("Magellan"), Ecto World, LLC d/b/a Demand Vape ("Demand Vape"), and Matthew J. Glauser ("Glauser"), the City of New York (the "City") engages in fanciful interpretations of applicable statutes that lack any authoritative support and attempts to remedy the defects in its claims by transparently asserting and arguing new facts and theories in its memorandum in opposition to Defendants' motion to dismiss. The Court should reject the City's impermissible *post hoc* attempt to salvage its facially deficient claims.

The City's claims for violations of the Prevent All Cigarette Trafficking ("PACT") Act fail because (i) the City lacks standing to assert the claims because it does not impose an excise tax on "Electronic Nicotine Delivery Systems," or electronic cigarettes; (ii) the City has not alleged facts that would support a finding that Magellan or Demand Vape has violated the PACT Act's reporting requirements; and (iii) the City has not alleged facts that would support a finding that Magellan or Demand Vape violated the PACT Act's delivery sales requirement because there are no facts to support sales to "consumers" and the City has not identified any sales that violate the statute's requirements for "delivery sales."

The City's attempt to plead a viable RICO Act violation against Defendants also falls short. The City has not alleged—and cannot allege—that Defendants engaged in a fraudulent scheme to obtain money or property from either the City (as originally pled) or any other alleged "victim" (under the City's new claim theory). The City also cannot satisfy RICO's causation requirement by showing that Defendants' actions caused any claimed injuries for the City. Finally, under the applicable Rule 9(b) pleading standard, the City has also failed to identify any specific instances of Defendants using mail carriers or interstate wires, as required for mail fraud or wire fraud.

1

And, because the City cannot plead a viable substantive RICO Act violation, its claim for a RICO conspiracy necessarily also fails.

Having premised its claim for violations of N.Y. Public Health Law § 1399-*ll* on subsection (1)—which addresses only traditional combustible cigarettes, and not e-cigarettes—the City changes course in its opposition and claims it was really alleging a claim under Subsection (1-a). Either way, the City's claim fails the plausibility test, as the City lack standing to assert a claim against these Plaintiffs for shipments of vapor products and, even if the City had standing, it fails to plead sufficient facts to support such a claim.

Finally, trying to rehabilitate its claim for public nuisance, the City attempts to further re-write its First Amended Complaint through its opposition. Though the First Amended Complaint, on its face, premises the claim on *retail* sales of flavored electronic cigarettes to youth, because Magellan and Demand Vape have not engaged in those direct-to-consumer sales, in its opposition, the City resorts to now claiming that their mere distribution of electronic cigarettes to businesses in the City supports a plausible public nuisance claim. The City's case for other crucial elements of a valid public nuisance claim, including causation, also fall short.

For these reasons, which are explained in further detail below, the Court should grant Defendants' motion and dismiss the City's First Amended Complaint.

## ARGUMENT

**A.    The City Fails to Plead a Plausible Claim for Violations of the PACT Act.**

**1.    The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes.**

In their opening memorandum, Defendants argued that the City does not have standing to bring its PACT Act claim because the City does not levy an excise tax on electronic cigarettes. *See* ECF 53 at 15-16 (noting that 15 U.S.C. § 378(c)(1)(A) authorizes local governments that levy an excise tax on cigarettes to bring district court actions for alleged PACT Act violations relating to those cigarettes).[1] In its opposition, the City concedes that it does not levy an excise tax on electronic cigarettes, but says that it has standing to bring its PACT Act claim because it levies an excise tax on traditional (combustible) cigarettes. ECF 72 at 10, *et seq.*

According to the City, when Congress added electronic cigarettes to the PACT Act in 2020, it could not have intended to leave municipalities that do not levy excise taxes on electronic cigarettes without standing to enforce the PACT Act with respect to electronic cigarettes. *See* ECF No. 72 at 15 (arguing that "Congress's 'enforcement tools' would be no tools at all if municipalities with standing under the original PACT Act are now powerless to bring suit against e-cigarette sellers because they do not have a specific e-cigarette tax.").

But when Congress passed the PACT Act in 2010, it clearly intended to leave many municipalities without standing to enforce the PACT Act—*i.e.*, municipalities that did not levy excise taxes on traditional cigarettes. In other words, Congress decided that municipalities that did not levy an excise tax on the relevant product (there, combustible cigarettes) would not have standing to bring a claim for sales of that product that violated the PACT Act. So, it makes sense

---

[1] 15 U.S.C. § 378(c)(1)(A) states that a local government "that levies a tax subject to section 376a(a)(3) of this title," may bring a district court action for violation of the PACT Act.  Section 376a(a)(3) refers only to "excise taxes," not "sales taxes."

that in 2020 Congress decided that municipalities that do not levy an excise tax on electronic cigarettes would similarly not have standing to bring a claim for sales of electronic cigarettes that allegedly violate the PACT Act.

The City also argues that PACT Act standing extends to municipalities that apply any tax, including a standard sales tax, to electronic cigarettes. ECF 72 at 18. But the relevant PACT Act provision refers only to "excise taxes." 15 U.S.C. § 376a(a)(3)(A). If Congress had meant to give standing to municipalities that levy "any taxes" on electronic cigarettes, it would have said "any taxes" rather than "excise taxes."

Because the City does not levy an excise tax on electronic cigarettes, it lacks standing to pursue its PACT Act claim and that claim must be dismissed.

### 2. The City has not alleged facts that would support a finding that Magellan and Demand Vape violated the PACT Act's reporting requirements.

The PACT Act imposes certain reporting requirements on a "person who sells, transfers or ships . . . cigarettes . . . in interstate commerce, whereby such cigarettes are shipped into a State [or] locality" that taxes those cigarettes. 15 U.S.C. § 376(a). The City says that these reporting requirements apply to intrastate shipments if the person also ships *other* cigarettes across state lines. ECF 72 at 19. The City is wrong.

The phrase "whereby such cigarettes are shipped into a State [or] locality" modifies the phrase "sells, transfers or ships . . . cigarettes . . . in interstate commerce." In other words, the cigarettes that are the basis of an alleged violation (*i.e.,* the ones that are shipped into the relevant State or locality) must be cigarettes shipped in interstate commerce. Indeed, the definitions section of the PACT Act states: "A sale, shipment, or transfer of cigarettes . . . *that is made in interstate commerce*, as defined in this [Act], shall be deemed to have been made into the State, place, or

locality in which such cigarettes . . . are delivered." 15 U.S.C. § 375(10)(B) (emphasis added).[2] In short, the reporting requirements apply only for shipments of cigarettes in interstate commerce into a State or locality that taxes those cigarettes.

This conclusion is further bolstered by the guidance provided by the federal agency charged with enforcing the PACT Act, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). In a Frequently Asked Questions page on its website, ATF states as follows:

> Do we need to file a monthly PACT Act report in states that do not apply taxes to ENDS products?
>
> No. Monthly reports for electronic nicotine delivery systems only need to be filed in states, localities and Indian territories that tax the sale or use of ENDS, not with ATF.[3]

There are many states and localities (including New York City) that impose excise taxes on traditional cigarettes, but not on electronic cigarettes, or ENDS. If ATF's interpretation were consistent with that of the City, ATF would direct regulated entities to file monthly reports for all jurisdictions that tax the sale or use of traditional cigarettes, even if they did not also tax ENDS products. But ATF's stated position is that monthly reports are not required in such states.

The City also argues that the PACT Act's reporting requirements apply to intrastate shipments of cigarettes if those cigarettes previously traveled in interstate commerce. But the City does not cite any PACT Act cases for that proposition. Instead, the City cites only Fair Labor

---

[2] The PACT Act defines "interstate commerce" as "commerce between a State and any place outside the State, commerce between a State and any Indian country in the State, or commerce between points in the same State but through any place outside the State or through Indian country." 15 U.S.C. § 375(10)(A).

[3] https://www.atf.gov/alcohol-tobacco/qa/do-we-need-file-monthly-pact-act-report-states-do-not-apply-taxes-ends-products (Oct. 28, 2021).

Standards Act (FLSA) cases.[4] Those cases deal with whether a business' activities as a whole are sufficiently interstate in character to render the business' employees entitled to the protections of the FLSA; they do not deal with reporting requirements for individual shipments of goods.

The City also argues that the PACT Act's reporting requirements apply to intrastate shipments because the Pact Act requires "delivery sellers" to keep certain records relating to "delivery sales" and to make those records available to relevant governmental authorities. ECF 72 at 22. But the reporting requirements and delivery sales requirements are in different sections of the PACT Act. *Compare* 15 U.S.C. § 376 ("Reports to State tobacco tax administrator") *with* 15 U.S.C. § 376a ("Delivery sales"). Moreover, shipments in "interstate commerce" are not synonymous with "delivery sales." *Compare* 15 U.S.C. § 375(10) (defining "interstate commerce") *with* 15 U.S.C. § 375(5) (defining "delivery sale"). In any event, the fact that persons making "delivery sales" are required to keep certain records and make those records available to the government under one section of the statute does not mean that purely interstate sales are subject to the reporting requirements in another section of the statute.

### 3. The City has not alleged facts that would support a finding that Magellan and Demand Vape violated the PACT Act's delivery sales requirements.

#### a. The City has not alleged facts showing Magellan or Demand Vape sold electronic cigarettes to "consumers."

The City requests that the Court interpret the PACT Act term "lawfully operating" as excluding a properly registered/licensed distributor or retailer if that business fails to comply with *any* federal, state, or local law, rather than interpret the term as meaning operating with any necessary state or local registration or license. The Court should reject that request.

---

[4] *See* ECF 72 at 23 (citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217 (2d Cir. 2002); *Gao v. Jian Song Shi*, 2021 U.S. Dist. LEXIS 83716 (E.D.N.Y. Apr. 30, 2021)).

None of the PACT Act cases cited by the City addresses the issue presented here – whether a properly registered/licensed cigarette business becomes a "consumer" solely because it fails to comply with any federal, state, or local law. Neither *City of New York v. Hatu*[5] nor *California v. Azuma Corp.*[6] involved properly registered/licensed cigarette businesses. And in *New York v. Grand River Enterprises Six Nations*[7] (a magistrate judge report and recommendation), the primary issue was whether tribal sovereignty shielded defendants from certain New York State tax collection laws.

The City concedes that the Jenkins Act excluded sales to "licensed" distributors and retailers, but says that when Congress revised the Jenkins Act by passing the PACT Act, Congress meant to radically expand the statute's coverage to include sales to licensed distributors and retailers who fail to comply with *any* federal, state, or local law applicable to cigarettes. ECF 72 at 28. But the City cites nothing in the PACT Act's legislative history indicating that Congress intended such a radical expansion of the statute's coverage. Indeed, as regards electronic cigarette products, the City's contention ignores the fact that numerous jurisdictions, including the states of Michigan and Arizona, have never imposed any specific licensing requirement for e-cigarette products, while other states, like Florida, *see* Fla. Stat. 569.32, only impose a license requirement for certain activities relating to such products, such as retail sales. The fact that, depending on its situs, a distributor or retailer of electronic cigarettes could be lawfully operating without a license further supports why the semantic shift from "licensed" to "lawfully operating" did not evidence a change in Congress's intent regarding the meaning of 15 U.S.C. § 375(4).

---

[5] 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019).

[6] 2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sept. 7, 2023).

[7] 2020 U.S. Dist. LEXIS 236928, *35 (W.D.N.Y. Dec. 15, 2020).

The City fails to address Defendants' argument that the City's proposed interpretation of the statute would lead to absurd results, such as that a sale to a licensed retailer would constitute a "delivery sale"—*i.e.*, a sale to a "consumer"—if that retailer accidentally forgets to lock a storage container or properly display its certificate of registration. ECF 53 at 19. The fact that the City's proposed interpretation would lead to absurd results warrants the Court's rejection of that interpretation. *See Salute v. Stratford Greens Garden Apartments*, 135 F.3d 293, 297 (2d Cir. 1998).

       **b.**    **The City has not identified any sales by Magellan or Demand Vape that violated the PACT Act's requirements for "delivery sales."**

In their opening memorandum, Defendants noted that the City had not identified specific sales where Magellan or Demand Vape failed to comply with requirements for delivery sales, such as the requirement to use PACT Act compliant shipping labels or the requirement that no shipment exceed ten pounds of product. *See* ECF 53 at 21 (citing 15 U.S.C. § 376a(b)(1), (3)). In its opposition, the City argues that it satisfies the *Twombly*/*Iqbal* standard by alleging that "Magellan is a 'master distributor' of Hyde Products and that Demand Vape services 5,000 retailers in 49 states. ECF 72 at 30. But such statements hardly constitute "factual content" from which one could reasonably infer that Defendants made delivery sales in New York City that did not comply with the PACT Act's requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a complaint has "facial plausibility" only when a "plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (emphasis added).[8]

---

[8] The City also refers to documents outside of the pleadings. But documents outside the pleadings cannot defeat a Rule 12(b)(6) motion to dismiss. *Cf.* Fed. R. Civ. P. 12(d).

The City fails to state a plausible PACT Act claim and its First Claim for Relief should be dismissed.

**B.      The City Fails to Plead a Plausible Claim for RICO Act Violations**

Although the City attempts to impermissibly modify the substance of its RICO Act claims through its opposition to Defendants' motion to dismiss, as explained below, neither the City's original RICO Act claim nor the modified version thereof claimed in the City's opposition states a plausible claim.

**1.      The City's RICO Act claim fails because the City has not alleged that Defendants engaged in a fraudulent scheme to obtain money or property from the City (or any other alleged "victim").**

As Defendants have noted, ECF 53 at 22-23, the Supreme Court has made clear there can be no finding of mail or wire fraud unless the "object" of the defendant's fraudulent scheme was to obtain money or property from the "victim" of the scheme. *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) ("The wire fraud statute prohibits only deceptive schemes to deprive the victim of money or property.") (cleaned up); *Cleveland v. United States*, 531 U.S. 12, 26 (2000) (stating that the mail fraud statute "requires the object of the fraud to be property in the victim's hands") (cleaned up); *id.* at 15 (stating that "for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim").

The First Amended Complaint alleges that *the City* was the victim of Defendants' alleged mail and wire fraud. Specifically, the "Injury to Business or Property" section of the FAC states the RICO Act "injuries" in this case are the City's unspecified "additional costs to mitigate the harms to public health caused by" flavored electronic cigarettes and the costs the City has incurred in cleaning up "improperly disposed-of" flavored electronic cigarettes "in parks and other City property." *See* FAC, ¶ 141. But as Defendants have observed, ECF 53 at 23, such incidental City expenses cannot sustain a mail or wire fraud claim because the City does not allege that those

expenses were the object of Defendants' alleged scheme. *See Kelly*, 140 S. Ct. at 1573-74 (holding that government expenses resulting from defendants' alleged wire fraud could not sustain wire fraud conviction because those expenses were not the object of defendants' alleged scheme but were instead only an "incidental byproduct" of the scheme).

In its opposition, the City changes its RICO theory. The City now contends that it is *not* the victim of Defendants' allegedly fraudulent scheme, and that the victims are instead the businesses that purchase Defendants' products. ECF 72 at 40. But for at least three reasons, the City's new legal theory does not save its RICO claim from dismissal.

*First*, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 517 (S.D.N.Y. 2022) (Stanton, J.) (quotation and citation omitted); *accord K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.") (citation omitted).

*Second*, a plaintiff in a civil lawsuit does not have Article III standing to bring a claim to vindicate the rights of someone else. *See, e.g.*, *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) ("Ordinarily, of course, a litigant must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (cleaned up). Indeed, the RICO statute states that a civil RICO claim may be brought only by a party that is itself injured by the alleged RICO violation. *See* 18 U.S.C. § 1964(c) ("Any person *injured in his business or property* by reason of a violation . . . may sue therefor . . . " (emphasis added)).

The City cites several *criminal* cases in which the Justice Department obtained wire fraud convictions based on false statements to someone other than the defendant's victim. *See, e.g.*, *United States v. Greenberg*, 835 F.3d 295 (2d Cir. 2016) (defendant convicted of wire fraud based

on false statements to banks that enabled him to defraud credit card holders).[9] But such cases do not raise Article III concerns because the Constitution gives the Executive Branch standing to bring prosecutions for violations of criminal statutes regardless of whether the government is itself a victim of the violation. *See* U.S. Const. art. II, § 3 (stating that the President "shall take Care that the Laws be faithfully executed"). The Constitution, however, does not give the City standing to bring *civil* RICO Act claims based on alleged wire fraud where someone other than the City was the victim of the alleged fraud.

The City also cites two civil RICO cases from district courts outside of the Second Circuit.[10]  But in neither of those cases did the court hold that false statements or omissions to a RICO plaintiff allowed that plaintiff to recover on the grounds that those statements or omissions harmed a third party.[11]

*Third*, the City has not alleged any facts that would support a finding that Defendants defrauded the businesses to whom Defendants allegedly sold their products. In fact, the FAC alleges RICO violations against some of those same entities (i.e., Star Vape) as co-defendants. The City cites no authority for the proposition that a co-defendant in a wire fraud case can be the "victim" of the wire fraud.

---

[9] *See also United States v. Seidling*, 737 F.3d 1155 (7th Cir. 2013) (criminal case); *United States v. McMillan*, 600 F.3d 434 (5th Cir. 2010) (same); *United States v. Blumeyer*, 114 F.3d 758 (8th Cir. 1997) (same); *United States v. Granberry*, 908 F.2d 278 (8th Cir. 1990) (same); *United States v. Martinez*, 2023 U.S. Dist. LEXIS 27535 (S.D.N.Y. Feb. 17, 2023)

[10] *In re Juul Labs, Inc., Mktg. Sales Practices & Prod. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 573 F. Supp. 3d 459 (D. Mass. 2021).

[11] Both *Juul Labs* and *Ranbaxy* involved plaintiffs alleging they were harmed by defendants' false statements/omissions to a third party. *See Juul Labs*, 497 F. Supp. 3d at 614; *Ranbaxy*, 573 F. Supp. 3d at 465. They did not involve plaintiffs alleging false statements or omissions made to them harmed a third party.

2.      **The City's RICO Act claim also fails because the City cannot show that Defendants' alleged actions caused the City's injuries.**

In their opening memorandum, Defendants argued that the City had not set forth facts that would support a finding that Defendants' alleged fraudulent conduct was the but-for cause or proximate cause of the City's alleged RICO injuries—"additional costs to mitigate the harms to public health caused by" flavored electronic cigarettes and the costs the City has incurred in cleaning up "improperly disposed-of" flavored electronic cigarettes "in parks and other City property." *See* ECF 53 at 17; FAC, ¶ 141.

In its opposition, the City does not respond to Defendants' argument with respect to public health costs. This is unsurprising because, as Defendants previously noted, the latest research indicates that "any public health benefits of reducing [electronic cigarette] use via flavor restrictions may be offset by public health costs from increased cigarette sales." ECF No. 53 at 25 (quoting A. Friedman, et al., E-cigarette Flavor Restrictions Effects on Tobacco Product Sales (Sept. 26, 2023)).

In any event, "courts in this circuit have found that a plaintiff's failure to respond to contentions raised in a motion to dismiss constitute abandonment of those claims." *LaFace v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2016) (cleaned up) (collecting cases). So, to the extent the City's RICO Act claim is based on an alleged net increase in public health related costs, the City has abandoned the claim.

Although the FAC alleges that the City's other injury is cleanup costs for "improperly disposed-of FDVs in parks and other City property," FAC at ¶ 141, the City's opposition says "the City's injury is not principally from improper disposal of e-cigarettes by users, nor does the City so allege," ECF 72 at 37. The City's opposition offers a new damages theory—that the City Sheriff's Department incurs costs when disposing of seized e-cigarettes as hazardous waste. *Id.*

Defendants suspect that the City has abandoned its initial theory because that theory alleges the injury was caused directly by third parties—*i.e.,* e-cigarette users who improperly dispose of their e-cigarettes—and the Supreme Court has held that there is no RICO proximate cause when injuries are directly caused by third parties. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 12 (2010); ECF 53 at 27.

But a plaintiff may not amend its complaint through an opposition to a motion to dismiss. *Liu Jo S.P.A.*, 630 F. Supp. 3d at 517; *K.D.*, 921 F. Supp. 2d at 209 n.8. Ironically, the *Hemi* court chided the City for asserting a proximate cause theory that was not alleged in its complaint. *See* 559 U.S. at 16 ("In a final effort to save its claim, the City has shifted course before this Court.").

In any event, the City's new damages theory also fails as a matter of law. In "any suit on a statute," the plaintiff "must show," *inter alia*, "that the harm done was one the statute was meant to prevent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 284 (2d Cir. 2006) (cleaned up). In other words, a plaintiff must show that "the harm that occurred" was "the mischief that the statute sought to avoid." *Id.* (cleaned up).

The City alleges that Defendants committed wire fraud by not complying with PACT Act requirements. As the FAC notes, Congress enacted the PACT Act to combat on-line sales of cigarettes to minors and avoidance of cigarette excise taxes. *See* ECF 20 at ¶¶ 61-62. But there is no indication that Congress enacted the PACT Act to address municipal costs for disposing of e-cigarettes, whether such costs are incurred by a sheriff's department or a parks department. In short, because municipal costs for disposal of e-cigarettes is not "the mischief that the" PACT Act "was meant to avoid," the City's new damages theory also fails as a matter of law.

13

3.    **The City's RICO Act claim also fails because the City has not identified specific instances of Defendants using mail carriers or interstate wires.**

In its opposition, the City concedes that it has not identified two or more instances in which Defendants utilized the U.S. Postal Service or interstate commercial carriers in their alleged scheme to defraud. ECF 72 at 33. Therefore, the City has not adequately pleaded predicate acts of mail fraud. *See* 18 U.S.C. § 1341.

Citing two Eastern District of New York cases, the City argues in its opposition that it has adequately pleaded RICO predicate acts of wire fraud because the City has alleged that Defendant Demand Vape is an "Internet business." ECF 72 at 33 (citing *Alkhabit v. N.Y. Motor Grp., LLC*, 2015 U.S. Dist. LEXIS 72055 (E.D.N.Y. June 3, 3015), and *DNJ Logistic Group, Inc., v. DHL Express (USA), Inc.*, 2010 U.S. Dist. LEXIS 15439 (E.D.N.Y. Feb. 19, 2010)).

But those cases stand only for the proposition that use of the Internet can meet the interstate commerce requirement of the wire fraud statute. They do not stand for the proposition that simply alleging that a defendant is an "Internet business" satisfies the requirement to identify two or more specific instances in which a defendant utilized the Internet as part of a scheme to defraud. Indeed, plaintiffs in both those cases identified specific instances in which the defendant utilized the Internet as part of a scheme to defraud. *See Alkhabit*, 2015 U.S. Dist. LEXIS 72055, *41 (stating that "because each plaintiff . . . responded to an internet advertisement posted by the dealership defendants, plaintiffs allege a pattern of use of the interstate wires in furtherance of the fraud"); *DNJ Logistic Group*, 2010 U.S. Dist. LEXIS 15439, *18 ("Turning to the claim of wire fraud, plaintiff has detailed several statements it believes illustrate wire fraud with particularity.").

For these reasons, the City's RICO Act claim must be dismissed.

**C.      The City Fails to Plead a Plausible Claim for RICO Conspiracy.**

As previously noted, a RICO conspiracy claim must be dismissed where a plaintiff has not adequately pleaded an underlying substantive RICO claim. ECF 53 at 29. Therefore, because the City has not adequately pleaded a substantive RICO claim, the City's RICO conspiracy claim must also be dismissed. *Id.*

**D.      The City Fails to Plead a Plausible Claim for Violations of N.Y. Public Health Law § 1399-*ll***

The City likewise fails to plead a plausible claim for violations of N.Y. Public Health Law § 1399-*ll*. The City lacks standing because it does not impose an excise tax applicable to vapor products and, even if it did have standing, the City fails to allege facts supporting a violation of either the subsection the City cites in the FAC, Subsection (1), or Subsection (1-a) of Section 1399-*ll*.

**1.      The City lacks standing to enforce N.Y. PHL § 1399-*ll* against Defendants.**

In their opening memorandum, Defendants establish that the City lacks standing to bring a claim under N.Y. PHL § 1399-*ll* due to the City's lack of an excise tax applicable to vapor products, and that, even if the City does have standing, it has not alleged facts to support a claim under § 1399-*ll*(1), the provision cited in its Fourth Claim for Relief. ECF 53 at 22-24.

The City's opposition offers an interpretation that would erase any distinction between cigarettes and e-cigarettes or vapor products. *See* ECF 72 at 38-44. The City's interpretation would render meaningless and superfluous the New York Legislature's use of separate terms and provisions to address these different products in contravention of fundamental principles of statutory interpretation. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 609 (1998) ("Statutory interpretations that render superfluous other provisions in the same enactment are strongly disfavored."). The City argues that because Section 1399-*ll*(6) uses the word "or" between

"cigarettes" and "vapor products," a political subdivision that has a tax on only one type of these products can enforce a violation of both Section 1399-*ll*(1), which restricts sales and shipments of cigarettes, and Section 1399-*ll*(1-a), which restricts sales and shipments of vapor products. *Id.* But a reading of the section as a whole suggests that the use of "or" results in the more natural reading of Section 1399-*ll*, which would allow a political subdivision that taxes cigarettes to enforce a violation of Section 1399-*ll*(1), a political subdivision that taxes vapor products to enforce a violation of Section 1399-*ll*(1-a), and a political subdivision that taxes both types of products to enforce both subsections. *See United Transp. Union v. AMTRAK*, 588 F.3d 805, 812 (2d Cir. 2009) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.") (citing *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)).

It is not "fanciful characterization," as the City claims, *see* ECF 72 at 41, but the plain language of the statute as a whole that makes clear that "cigarettes" are distinct from e-cigarettes and vapor products under Section 1399-*ll*. In contending that there are "virtually no 'vapor-product specific' provisions" of N.Y. PHL § 1399-*ll*, the City ignores that subsections (1), (1-a), (2), (3), and (5) each either provide specifically for cigarettes, for vapor products, or separately state the requirements, restrictions, or penalties applicable to each product type. If the Legislature had intended "cigarettes" and "vapor products" to be the same, or to be treated the same, then the Legislature would have had no need to establish requirements and restrictions for vapor products separately from cigarettes. Indeed, the Legislature could have simply defined "vapor product" as falling within the meaning of "cigarette" for purposes of Section 1399-*ll* or replaced both terms in Section 1399-*ll* with the term "tobacco product."

Indeed, the decision to define cigarettes and vapor products as separate products underscores why the City's reliance on *People v. Hart*, 66 Misc. 3d 649 (Glens Falls City Ct., Warren Cty. 2019), is misplaced. The City invokes *Hart* to support its contention that "e-cigarettes" and "cigarettes" are the same, and that the Legislature's decision to separately define and distinguish "e-cigarettes," "vapor products," and "cigarettes," is meaningless and irrelevant. *See* ECF 72 at 42. But there, the court was determining whether "e-cigarettes" were "tobacco products" for purposes of N.Y. Penal Law § 260.21's prohibition on the sale of "tobacco in any form to a child," not whether "cigarettes" and "vapor products" are the same under N.Y. PHL § 1399-*ll*. *See Hart*, 66 Misc. at 654-57. The *Hart* court looked to the definition of "tobacco product," a naturally broader category than "cigarette," which includes not only cigarettes or cigars but also "any other tobacco product." *Id.* at 655. The court then looked to the FDA's classification of vapor products and e-cigarettes as tobacco products, before determining that e-cigarettes were thus "tobacco in any form." *Id.* at 657.

But Defendants are not disputing that e-cigarettes or vapor products are "tobacco products." And Section 1399-*ll* does not use the term "tobacco products"; rather, it distinguishes between "cigarettes" and "vapor products." The language of the statute selected by the Legislature thus makes clear that the more natural reading of Section 1399-*ll*(6)—that a political subdivision may enforce Section 1399-*ll* only against entities subject to the particular excise tax imposed by that subdivision—is the correct one. Because the City does not impose an excise tax on vapor products, it lacks standing to enforce Section 1399-*ll* against Defendants.

### 2. The City fails to allege facts supporting a violation of N.Y. PHL § 1399-*ll*(1) or (1-a).

The City suggests, ECF 72 at 45, that it is "frivolous, or worse" for Defendants to move to dismiss the City's Fourth Claim for Relief based on the subsection of N.Y. PHL § 1399-*ll* that the

City itself not only cites but from which it directly quotes in its First Amended Complaint. *See*

ECF 20 at ¶¶ 178-79. Subsection (1) states as follows:

> It shall be unlawful for any person engaged in the business of selling cigarettes to ship or cause to be shipped any cigarettes to any person in this state who is not: (a) a person licensed as a cigarette tax agent or wholesale dealer under article twenty of the tax law or registered retail dealer under section four hundred eighty-a of the tax law; (b) an export warehouse proprietor pursuant to chapter 52 of the internal revenue code or an operator of a customs bonded warehouse pursuant to section 1311 or 1555 of title 19 of the United States Code; or (c) a person who is an officer, employee or agent of the United States government, this state or a department, agency, instrumentality or political subdivision of the United States or this state and presents himself or herself as such, when such person is acting in accordance with his or her official duties. For purposes of this subdivision, a person is a licensed or registered agent or dealer described in paragraph (a) of this subdivision if his or her name appears on a list of licensed or registered agents or dealers published by the department of taxation and finance, or if such person is licensed or registered as an agent or dealer under article twenty of the tax law.

N.Y. PHL § 1399-*ll*(1).

But it is a different subsection, Subsection (1-a), of Section 1399-*ll* that relates to vapor

products. Subsection (1-a) provides as follows:

> It shall be unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) a person that receives a certificate of registration as a vapor products dealer under article twenty eight-C of the tax law; (b) an export warehouse proprietor pursuant to chapter 52 of the internal revenue code or an operator of a customs bonded warehouse pursuant to section 1311 or 1555 of title 19 of the United States Code; or (c) a person who is an officer, employee or agent of the United States government, this state or a department, agency, instrumentality or political subdivision of the United States or this state and presents himself or herself as such, when such person is acting in accordance with his or her official duties. For purposes of this subdivision, a person is a licensed or registered agent or dealer described in paragraph (a) of this subdivision if his or her name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance, or if such person is licensed or registered as an agent or dealer under article twenty eight-C of the tax law.

N.Y. PHL § 1399-*ll*(1-a).

The two subsections allow for shipments to clearly distinct and different entities. Compliance with Subsection (1-a) would still potentially leave a shipper in violation of Subsection (1), and vice versa; if the shipper complied with the parties identified in Subsection (1), but not Subsection (1-a), the shipper would be in violation of 1399-*ll*. And here, the City's claim that it "inadvertently" referenced the wrong subsection, *see* ECF No. 72 at 43, is at odds with the First Amended Complaint's specifically utilizing language taken directly from Subsection (1) when it alleges that Defendants violated Section 1399-*ll* by knowingly shipping vapor products to persons in New York City who were not "licensed cigarette tax agents" or "permissible recipients of cigarette deliveries," ECF 20 at ¶¶ 180-181. The City similarly cites to Section 1399-*ll*(1) and references "cigarette tax agents," and "remote *cigarette* deliveries" in the section of its First Amended Complaint titled "Allegations Related to Violation of N.Y. PHL § 1399-*ll*." ECF 20 at ¶¶ 146-148. Even in its memorandum in opposition, the City does not cite the correct subsection of N.Y. PHL § 1399-*ll*, citing to Section 1399-*ll*(2), which applies to common and contract carriers of cigarettes and vapor products, *see* ECF 72 at 43-44, and not Subsection (1-a), which applies to vapor product sales and shipments.

The City has not alleged facts to support a violation of either Section 1399-*ll*(1) *or* Section 1399-*ll*(1-a) by these Defendants. The factual allegations, and not conclusory assertions, cited in the City's memorandum in opposition, ECF 72 at 43, and misrepresented as relating to the Defendants, relate instead to other defendants, including Dorbes LLC and Christian Smith, ECF 20 at ¶¶ 74, 76, 78, and Star Vape, *id*. at ¶ 106, all of which are parties with whom the City has already settled.[12] Accordingly, the City's Fourth Claim for Relief should be dismissed.

---

[12] The Court may take judicial notice of the fact that, on July 13, 2023, Magellan and Demand Vape filed a lawsuit against Dorbes and Smith in the U.S. District Court for the Eastern District of Virginia for, *inter alia*, trademark infringement and violations of the Federal Anti-Cybersquatting

**E.      The City Fails to Plead a Plausible Public Nuisance Claim**

Rather than acknowledge that it failed to appropriately amend its Complaint to reflect its supposed allegations, the City attempts to distract the Court by improperly arguing the merits of its baseless public nuisance claim and facts that are not alleged. Defendants thoroughly address the City's unsupported and factually inaccurate public nuisance arguments in their Opposition to the City's Motion for Preliminary Injunction. *See* ECF 80. Instead, as is the purpose of a motion to dismiss, Defendants focused their motion and this reply on the City's actual allegations in the First Amended Complaint.

The plain language of the City's "Fifth Claim for Relief" for "Public Nuisance" establishes that the City is alleging that Defendants are creating a public nuisance by engaging in unauthorized *retail* sales. *See* FAC ¶¶ 184-186. The City alleges:

> 184.    Pursuant to PHL 1399-mm-(1), flavored vape products that are intended or reasonably expected to be used with or for consuming nicotine are banned from sale or being offered for sale at retail in New York State.

> 185.    Magellan, Demand Vape, Empire Vape, Star Vape, and Dorbes sell and offer for sale at retail flavored vapes[,] thereby causing or contributing to a public nuisance, *i.e.*, a condition injurious to the health, safety, and welfare of large numbers of City residents through conduct that is ongoing, likely to produce permanent and long-lasting injury, and likely to continue indefinitely.

> 186.    By violating the ban on offering or selling at retail flavored vape products that was enacted by the New York State legislature on the basis of research showing that flavored vape products promote nicotine addiction in school-age children and others the harm to the public of the City is substantial, unreasonable, widespread, and ongoing, and outweighs any potential benefit of defendants' wrongful conduct.

That is the entirety of the specific allegations of the City's Fifth Claim for Relief. There is no reference to any alleged violation of any other statute, nor is there even any reference to

---

Consumer Protection Act as a result of their use of the internet domain name HydeVapeOfficial.com. *See* Complaint, ECF 1, in *Magellan Technology, Inc., et al. v. HydeVapeOfficial.com, et al.*, Case No. 1:23-cv-00918 (E.D. Va.). That case remains pending.

Defendants creating or contributing to a public nuisance by engaging in distribution or non-retail sales. While the City may allege in other portions of the FAC that Defendants engage in distribution, that only adds to the confusion because the City includes in its public nuisance claim other defendants that may or do engage in retail sales. In fact, the only change to its Fifth Claim for Relief from the City's original Complaint is the addition of Defendant Dorbes, the party who Defendants had to identify for the City as responsible for the online retail website from which the City's investigators bought Hyde-branded vapor products. *Compare* Compl. ¶¶ 181-183 *with* FAC ¶¶ 184-186. The City's original Complaint erroneously claimed Defendants sold disposable e-cigarettes via a website; however, with a few hours' worth of investigation Defendants—who themselves never owned or controlled the web domain or site at issue—identified the owner and operator based on payment information that was readily available to the City had it conducted an adequate investigation.

Apparently, when the City amended its original complaint, if failed to fully amend it such that the Fifth Claim for Relief stated the actual basis for the public nuisance claim against Defendants. The City cannot now amend its complaint a second time through its opposition to Defendants' motion to dismiss. *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd*, 445 F. App'x 389 (2d Cir. 2011); *accord Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 U.S. Dist. LEXIS 25336, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in Plaintiff's opposition papers, and hence such new allegations and claims should not be considered.").

Nor is it "self-evident," as the City breezily claims, that Defendants caused or contributed to any alleged public nuisance. *See* ECF 72 at 50. Indeed, the City itself argues that the public nuisance existed long before any Hyde products were ever sold. *See id*. at 2-4. The City's

contention that Defendants are a substantial factor in causing the nuisance is also undercut by the City's own evidence, which reflects that vapor product distributors and retailers within the City purchase products directly from China, completely excising Defendants from the supply chain. *See* ECF 50 at 24. Defendants also do not sell to defendant Empire Vape. *See* ECF 80 at 35. Contrary to the City's contention otherwise, there absolutely is a fundamental "question as to the manufacturer or distributor of the product responsible for the nuisance." *See* ECF 72 at 52. The parties responsible for the claimed public nuisance are the retailers that purchase products from parties other than Defendants and then sell flavored disposable e-cigarettes to youth in violation of City statute, as well as individual adult retail purchasers that buy products at retail and then turn around and make them available to underage individuals.

Defendants are "entitled to know the bases for plaintiff's charges" against them. *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, 2003 U.S. Dist. LEXIS 6851, *13 (N.D.N.Y. Apr. 24, 2003). The "burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are." *Id*. Yet, as pled, the City's Fifth Claim for Relief contradicts the other allegations in the First Amended Complaint, as well as those the City now attempts to plead through its opposition. The City's public nuisance claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants Magellan, Demand Vape, and Glauser's motion to dismiss and dismiss the City's First Amended Complaint as to these Defendants.

Respectfully submitted,

THOMPSON HINE LLP

Dated: December 21, 2023        By: _____/s/ Eric N. Heyer_____
                                Eric N. Heyer (admitted *pro hac vice*)
                                Joseph A. Smith (admitted *pro hac vice*)
                                Anna Stressenger (admitted *pro hac vice*)
                                1919 M Street, N.W., Suite 700
                                Washington, DC 20036
                                Phone: 202.331.8800
                                Fax: 202.331.8330
                                eric.heyer@thompsonhine.com
                                joe.smith@thompsonhine.com
                                anna.stressenger@thompsonhine.com


                                Richard De Palma
                                300 Madison Avenue
                                27th Floor
                                New York, NY 10017
                                Phone: 212.908.3969
                                Fax: 212.344.6101
                                richard.depalma@thompsonhine.com

                                *Counsel for Defendants Magellan Technology, Inc.,*
                                *Ecto World, LLC, and Matthew J. Glauser*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2023, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.


        /s/ Eric N. Heyer