UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                  Plaintiff,

                -against-

MAGELLAN TECHNOLOGY, INC., ECTO WORLD, LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER, DONALD HASHAGEN, MAHANT KRUPA 56 LLC d/b/a Empire Vape Distributors, NIKUNJ PATEL, DEVANG KOYA, STAR VAPE CORP., NABIL HASSEN, DORBES, LLC, d/b/a Hydevapeofficial.com, CHRISTIAN A. SMITH,

                              Defendants.

Civil Action No. 23-5880 (LLS)

------------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK
IN SUPPORT OF A PRELIMINARY INJUNCTION**

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
 City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 4

I.    E-CIGARETTES GENERALLY ................................................................................ 4

II.   GOVERNMENT     REGULATION     OF     ELECTRONIC
CIGARETTES .............................................................................................................. 6

     A.    FDA Regulation of Electronic Cigarettes ........................................................6

     B.    New York State and New York City Regulation of Electronic
Cigarettes ..........................................................................................................8

III.  DEFENDANTS' ROLES AND OPERATIONS ........................................................8

STANDARD OF REVIEW ................................................................................................ 9

ARGUMENT

I.    THE CITY HAS SHOWN A PROBABLE OR A SUBSTANTIAL
LIKELIHOOD OF SUCCESS ON THE MERITS ............................................... 13

     A.    The City Is Not Engaged In Enforcement of the Federal Food,
Drug, and Cosmetic Act ...................................................................................13

     B.    The Hyde Defendants Violate New York City Administrative
Code § 17-715 ..................................................................................................15

          1.   Defendants Magellan, Glauser, and Hashagen sell, or offer
for sale e-cigarette products or e-liquids to New York City
Businesses. ...........................................................................................15

          2.   Defendant Demand Vape Has Sold and Continues to Sell
Flavored E-cigarettes and E-liquids in New York City ......................17

     C.    The City Has Shown a Substantial Likelihood of Success on
its Public Nuisance Claim. ...............................................................................20

          1.   The Hyde Defendants' Conduct Constitutes Nuisance Per
Se ..........................................................................................................22

**Page**

2. The City Does Not Need to but Has Made a Substantial
   Showing of Intentional Conduct .........................................................24

3. The Hyde Defendants' Conduct Unreasonably Interferes
   With A Public Right..........................................................................30

II.   THE BALANCE OF EQUITIES STRONGLY FAVORS THE CITY ........................... 34

    A.   The Hyde Defendants Cannot Suffer Irreparable Harm ...........................35

III.   DISCOVERY............................................................................................. 37

CONCLUSION .................................................................................................. 38

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                               **<u>Pages</u>**

*3M Co. v. HSBC Bank USA, NA*,
   No. 16-5984, 2016 U.S. Dist. LEXIS 189249
   (S.D.N.Y. Oct. 20, 2016) ................................................................. 37-38

*Alami v. Volkswagen of Am., Inc.*,
   97 N.Y.2d 281 (2002) ....................................................................... 36

*Axt v. Hyde Park Police Dep't*,
   162 A.D.3d 728 (2d Dept. 2018) ...................................................... 35

*Branch v. W. Petro., Inc.*,
   657 P.2d 267 (Utah 1982) ............................................................. 22, 24

*California v. Azuma Corp.*,
   2023 U.S. Dist. LEXIS 159790
   (E.D. Cal. Sep. 7, 2023) .................................................................. 11

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
   247 F.R.D. 296 (E.D.N.Y. 2007) ............................................ 14, 21, 22, 23, 24

*City of N.Y. v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) ............................................... 23

*City of N.Y. v. FedEx Ground Package Sys.*,
   13 Civ. 9173 (ER), 2017 U.S. Dist. LEXIS
   24733 (S.D.N.Y. Feb. 21, 2017) ...................................................... 19

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*,
   597 F.3d 115 (2d Cir. 2010)........................................................... 10, 12

*City of N.Y. v. Milhelm Attea & Bros., Inc.*,
   550 F. Supp. 2d 332 (E.D.N.Y. 2008) ............................................... 7

*Copart Indus. v. Consol. Edison Co. of N.Y.*,
   41 N.Y.2d 564 (1977) ....................................................................... 21

*F. Hoffmann-La Roche Ltd v. Empagran S.A.*,
   542 U.S. 155 (2004)......................................................................... 35

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ......................................................... 11

*H. R. Moch Co. v. Rensselaer Water Co.*,
   247 N.Y. 160 (1928) .................................................................... 5, 36

**Cases**                                                                                  **Pages**

*Janik v. City of Dallas,*
 1998 U.S. Dist. Lexis 7075 (N.D. Tex. May 12, 1998) ........................................................ 15

*Janki Bai Sahu v. Union Carbide Corp.,*
 528 F. App'x 96 (2d Cir. 2013) ............................................................................................ 21

*Matter of Jones v Berman,*
 37 N.Y.2d 42, 53 (1975),
 *aff'd* 189 Misc. 2d 243, 244 (App. Term 2001) .................................................................... 30

*JTH Tax, LLC v. Agnant,*
 62 F. 4th 658 (2d Cir. 2023) ........................................................................................ 9-10, 12

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.,*
 497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................................ 14, 16

*Kopec v. Hempstead Gardens, Inc.,*
 696 N.Y.S.2d 53
 (N.Y. App. Div. 2d Dept. 1999) ........................................................................................... 16

*LensCrafters, Inc. v. Wadley,*
 248 F. Supp. 2d 705 (M.D. Tenn. 2003) ........................................................................... 7-8

*Levinson v. Cello Music & Film Sys.,*
 No. 98-9630, 1999 U.S. App. LEXIS 26871
 (2d Cir. Oct. 22, 1999) .......................................................................................................... 35

*Levola v. Fischer,*
 403 F. App'x 564 (2d Cir. 2010) .......................................................................................... 35

*M3 USA Corp. v. Qamoum,*
 2021 U.S. Dist. LEXIS 105923 (D.D.C. June 7, 2021) ........................................................ 12

*In re Madoff,*
 590 B.R. 200 (Bankr. S.D.N.Y. 2018) ................................................................................. 38

*Manigualt v. ABC Inc.,*
 No. 17-7375, 2018 U.S. Dist. LEXIS 112766
 (S.D.N.Y. June 21, 2018) ...................................................................................................... 12

*Mastrio v. Sebelius,*
 768 F.3d 116 (2d Cir. 2014) ................................................................................................. 10

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,*
 883 F.3d 32 (2d Cir. 2018) ................................................................................................... 10

**Cases**                                                                                      **Pages**

*NAACP v. AcuSport, Inc.*,
   271 F. Supp. 2d 435 (E.D.N.Y. 2003) ....................................................24, 26, 27

*New York v. Grand River Enters. Six Nations*,
   No. 14-CV-910A(F), 2020 U.S. Dist. LEXIS
   236928 (W.D.N.Y. Dec. 15, 2020) ......................................................................19

*New York v. Shore Realty Corp.*,
   759 F.2d 1032 (2d Cir. 1985)................................................................ 15-16, 21

*New York v. United States Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020)..............................................................................34, 35

*In re Opioid Litig.*,
   2018 N.Y. Misc. LEXIS 2428 (Sup. Ct. Suffolk Cty. June 18, 2018)....................14

*People v. Balmuth*,
   178 Misc. 2d 958 (Crim. Ct. 1998)......................................................................30

*People v. JUUL Labs, Inc.*,
   No. 452168/2019, 2022 N.Y. Misc. LEXIS 11127
   (N.Y. Cty. July 5, 2022)......................................................................................15

*Riggs v. Palmer*,
   115 N.Y. 506 (1889).........................................................................................36

*Roe v. Critchfield*,
   2023 U.S. Dist. LEXIS 140737 (D. Idaho Aug. 10, 2023)............................... 11-12

*Rural & Migrant Ministry v. United States EPA*,
   565 F. Supp. 3d 578 (S.D.N.Y. 2021)..................................................................35

*Russell Reynolds Assocs., Inc. v. Usina*,
   2023 U.S. Dist. LEXIS 79149
   (S.D.N.Y. May 5, 2023)......................................................................................38

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015)..............................................................................10

*SEC v. Unifund SAL*,
   910 F.2d 1028 (2d Cir. 1990).............................................................................12

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*,
   502 U.S. 105 (1991).........................................................................................36

**Cases**                                                                                        **Pages**

*Suez Water New York Inc. v. E.I. du Pont de Nemours & Co.*,
   2023 U.S. Dist. LEXIS 48925 ...................................................................24, 26, 30

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995)......................................................................................10

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015)...............................................................................35

*United States v. Bell*,
   584 F.3d 478 (2d Cir. 2009)................................................................................24

*United States v. Morrison*,
   521 F. Supp. 2d 246. (E.D.N.Y. 2007) .................................................................7

*United States v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 1 (D.D.C. 2006)..........................................................................4

*Vapor Train 2 LLC v. United States FDA*,
   No. 6:22-cv-00429 (E.D. Tex. Nov. 25, 2022),
   Dkt. No. 19............................................3, 6, 8, 9, 13, 14, 23, 29, 33, 34, 35, 36

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008)..................................................................................................9

*Woods v. Town of Tonawanda*,
   2020 U.S. Dist. LEXIS 61948
   (W.D.N.Y. Apr. 8, 2020) ....................................................................................24

**Statutes**

24 R.C.N.Y. § 28-02(b) ...........................................................................28, 29, 30

24 R.C.N.Y. § 28-02(b)(1)...............................................................................2, 28

15 U.S.C. § 375(4) ....................................................................................................19

15 U.S.C. § 375(5) ....................................................................................................19

15 U.S.C. § 375(10)(B)........................................................................................17, 18

15 U.S.C. § 376a .................................................................................................17, 19

**Statutes**                                                                    **Pages**

15 U.S.C. § 376a(a)(3) ...........................................................................................18

21 U.S.C. § 331(a) .................................................................................................34

21 U.S.C. § 387(6)(A) ............................................................................................34

21 U.S.C. § 387(g)(a)(1)-(2) ..................................................................................34

21 U.S.C. § 387g(a)(3)-(4) .....................................................................................34

FD&C Act § 902(6)(A) ..........................................................................................13

Fed. R. Civ. P. 26 ..................................................................................................38

Fed. R. Civ. P. 28-02(b)(1) ...................................................................................29

Fed. R. Civ. P. 65 ..................................................................................................38

FTC Act § 5 ...........................................................................................................15

N.Y.C. Admin. Code § 17-715 ..............................................................15, 22, 23, 29

N.Y.C. Admin. Code § 17-715(b)..........................................1, 15, 17, 18, 19, 29, 32

N.Y.C. Admin. Code § 17-715(b)(1) .................................................................20, 21

N.Y.C. Admin. Code § 17-717 ..............................................................................21

N.Y. Pen. L. § 15.05 (1) .........................................................................................24

N.Y. PHL 1399-ll ...................................................................................................14

N.Y. PHL § 1399-m-1 ............................................................................................32

N.Y. PHL § 1399-mm-1 .........................................................................................32

N.Y. PHL§ 1399-mm-1(2) ....................................................................................31

N.Y. U.C.C. § 2-401(1)..........................................................................................20

**Other Authorities**

*Cons. Appropriations Act*, 2022, Pub. L. No. 117-103, Division P, Subtitle B §
    111(d)(3) ...................................................................................................3, 34

*Restatement (Second) of Torts* § 825 cmt. d & illus. .................................................24

Plaintiff the City of New York (the "City"), respectfully submits this reply memorandum of law in support of its motion for a preliminary injunction against defendants Magellan Technology, Inc., Ecto World, LLC, d/b/a Demand Vape, Matthew J. Glauser, and Donald Hashagen (collectively, the "Hyde Defendants").

## INTRODUCTION

Magellan, a principal importer into the United States of the "Hyde" flavored e-cigarette brand popular with children, and Demand Vape, self-described as perhaps the largest distributor of e-cigarettes in the Nation, ask the Court for leave to continue sales into New York City of products prohibited under federal, state and City law.  The Hyde Defendants do so in the face of their own recognition that "*[t]he public interest ... does not favor rewarding parties that eschew federal regulatory requirements – like FDA premarket authorization.*" *See Decl. of Eric Proshansky* ("*Proshansky Decl.*"), *Dkt. No*. 42-1, *Ex* G. at 28. The FDA has expressly denied premarket authorization to Hyde products and essentially all other flavored e-cigarettes sold by Demand Vape.[1] *Proshansky Decl*., *Dkt. No*. 42-1, *Ex*. A at JA-1.  Even so, the arguments the Hyde Defendants' offer to allow their continued illegal sales into the City are simply wrong.

The Hyde Defendants have not refuted the City's clear showing that they and their customers operate in violation of Ad. Code §17-715(b), prohibiting "sell[ing] or offer[ing] for sale, or … possess[ion] with intent to sell or offer for sale, any flavored electronic cigarette."  Regardless of where Demand Vape is physically located, the Hyde Defendants' sales do not occur "in Buffalo," because the U.C.C.'s private contract law is overridden by the PACT Act's dictate that

---

[1] *See https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders* (no flavored e-cigarettes or e-liquids other than tobacco flavored have been granted)

e-cigarette sales are deemed to occur in the locality into which the e-cigarettes are delivered, and require compliance with the laws of that jurisdiction.

Nor can the Hyde Defendants legitimize their sales into New York City through 24 R.C.N.Y. §28-02 (b) (1), which purportedly allows flavored e-cigarette sales by City distributors *in* the City to entities *outside* the City. *See Mem. of Law in Opp. To Pl. Mot. for Prelim. Inj. filed By Def. Magellan Tech., Inc., Ecto World, LLC, Matthew J. Glauser, and Donald Hashagen* ("*Hyde Opp.*") *Dkt. No*. 80. The sale by the Hyde Defendants to a distributor in New York City remains a violation of the Administrative  Code as a sale in the City, regardless of the speculative subsequent disposition of the product by the Hyde Defendants' in-City customers. Still more fatal to the argument, 24 R.C.N.Y. §28-02 (b) (1) is void as inconsistent with the Administrative Code, which provides no exceptions for out-of-city sales.

The Hyde Defendants do not refute the City's clear showing that they cause or contribute to a public nuisance. The Hyde Defendants' operations violate the Administrative Code (and many other statutes), thereby satisfying the elements of a claim for nuisance *per se, i.e.,* a claim in which the elements of intent or unreasonableness need not be shown because the defendant's conduct constitutes a statutory violation. In any event, the City has provided clear evidence that the Hyde Defendants have engaged in intentional conduct by showing that they have actual knowledge of the entry of their product into New York City and yet continue to sell into the City. The Hyde Defendants' denial of "specific knowledge of illegal sales to youth by … their customers in the City," *Hyde Opp*. at 27, is obviously false because the City has provided them with that knowledge, in detail, in its moving papers. Yet their sales continue.

The Hyde Defendants representation that they now restrict flavored e-cigarettes sales "to *retailers* based in New York City," *Id*. at 33 (emphasis added), effectively admits not only their

prior retail sales but also the ability to control the sales and is a red herring.  The Hyde Defendants' sales documented here by the City are to *wholesalers* in (and outside) the City. Those entities, if not the Hyde Defendants' themselves, supply City retailers.  If the Hyde Defendants genuinely sought to address their contribution to the public nuisance they cause in the City they would agree to a consent order terminating sales to *wholesalers* identified as supplying City retailers.

Regarding the balancing of the equities, the Hyde Defendants will not suffer irreparable harm.  The City has no sovereign immunity from suit.  Money damages would be recoverable available should the Hyde Defendants' speculative, non-immediate concern of injury from a wrongfully-issued injunction come to pass. *Id*., at 37-38.  Regarding Glauser and Hashagen, those Defendants cannot avoid injunctive relief by concealing their conduct behind the corporate veil. A corporate officer who controls corporate conduct is liable for the torts of the corporation, including nuisance.

Finally, the Hyde Defendants take issue with the City's designation of their products as "intrinsically illegal." *Hyde Opp*. 37. But that designation derives from the federal government not the City: "As of July 13, 2022, it is unlawful to market non-tobacco nicotine products like Magellan's without FDA authorization." *Defs.' Response in Opp. to Pls.' Mot. for a TRO and Prelim. Inj*. at 8, *Vapor Train 2 LLC v. United States FDA*, No. 6:22-cv-00429 (E.D. Tex. Nov. 25, 2022), *Dkt. No.* 19 (citing *Cons. Appropriations Act*, 2022, Pub. L. No. 117-103, Division P, Subtitle B § 111(d)(3)). The FDA, not the City, is also the source describing Hyde Rebel, Hyde Retro, and Hyde Edge as "adulterated" and "misbranded" under the Food, Drug and Cosmetics Act and as "marketed unlawfully" and "subject to enforcement action." *Ltr. dated May 31, 2023*

*from Center for Tobacco Products, United States to TheSY, LLC d/b/a Elemente Vape.*[2]  If the Hyde Defendants believe the term "intrinsically illegal" is inaccurate, their complaint should be directed to the FDA, not the City.

**BACKGROUND**

### I.    E-Cigarettes Generally

In praising the health benefits of inhaling "Strawberry Pineapple Coconut," "Raspberry Watermelon," and "Peach Blueberry" nicotine vapors under the heading "Background" and not "Facts," the Hyde Defendants implicitly recognize the irrelevance of the pile of scientific literature cited in their memorandum. *Hyde Opp.* at 2-8. Over 375 US localities and seven states have already determined that there is no "net benefit" to marketing flavored e-cigarette by enacting prohibitions or restrictions on the sale of flavored nicotine solutions.  Persisting to argue the point in the face of the U.S. Congress's contrary view is of no relevance to this Court's deciding whether to enjoin sales into New York City of the Hyde Defendants' flavored e-cigarettes. Based on the statutes enacted, whether there is a benefit to public health from the sale of flavored e-cigarettes is no longer up for debate, period.  The Hyde Defendants are free to offer research to urge legislative change, but not in this forum.  But they cannot resist enforcement of statutory prohibitions on flavored e-cigarettes by re-arguing the scientific conclusions on which those statutes are based.[3]

---

[2]https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/thesy-llc-dba-element-vape-653609-05312023.

[3] Although further scientific debate is moot given the decisions already made by legislatures, the Hyde Defendants' omission of the many studies addressing the characteristic contamination of e-cigarettes by such heavy metal carcinogens as cadmium, lead, arsenic, nickel and others is notable. *See, e.g.*, Marla Broadfoot, E-cigarettes expose users to toxic metals such as arsenic, *Environmental Factor* (Feb. 2022), https://factor.niehs.nih.gov/2022/2/feature/3-feature-e-cigarettes-and-toxic-metals.

Traditional scientific discourse requires representation that proponents have no conflicts of interest. The Hyde Defendants' annual revenues of hundreds of millions of dollars from the sale of flavored e-cigarettes is reflected in the one-sided nature of their "science" argument and is consistent with the tobacco

The more pertinent "Background" here is the research-based determinations forming the basis for the *Preventing Online Sales of E-Cigarettes to Children Act*, which extended the PACT Act's regulation of traditional tobacco products to e-cigarettes:

> The market for tobacco products has changed since enactment of the PACT Act in 2010 and there are particular concerns about the growing use of e-cigarettes among young people. According to the Centers for Disease Control and Prevention (CDC), e-cigarettes have been the most commonly used tobacco product among youth since 2014 …. The 2018 National Youth Tobacco Survey (NYTS) found an alarming surge in the use of e-cigarettes by youth in just one year: between 2017 and 2018, there was a 78% increase in e-cigarette use among high school students and a 48% increase among middle school students …. Of the 5 million youth who used any tobacco product in 2018, over 3.6 million youth used e-cigarettes in 2018.

*H.R. Rep.* No. 116-260 at 2 (Oct. 28, 2019).  The Hyde Defendants assert that e-cigarette use among youth, which the CDC has labelled a "pediatric epidemic,"[4] is not as bad as it once was. *Hyde Opp*. at 8. Whether or not that is the case, the dispositive point for this motion would be whether the Hyde Defendants' have contributed to that decline by complying with laws intended to regulate flavored e-cigarettes. Regardless,

> The dangers of underage e-cigarette use *persist*: the 2022 National Youth Tobacco Survey revealed that more than 2.5 million high school and middle school students currently use e-cigarettes, with 1 in 4 using an e-cigarette daily. Disposable devices with flavors, like those offered by Magellan, are underage users' preferred device: more than 85% of youth users prefer flavored e-cigarettes with fruit, candy, and desserts being the most popular flavors.

---

industry's well-documented history of misrepresenting the health effects of tobacco use.  *See generally United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) (documenting the tobacco industry's efforts to deny the negative health effects of smoking).

[4]  Surgeon General's Advisory on E-cigarette Use Among Youth, CDC (Dec. 2018), https://www.cdc.gov/tobacco/basic_information/e-cigarettes/surgeon-general-advisory/index.html

*Defs.' Response in Opp. to Pls.' Mot. for a TRO and Prelim. Inj.*, *Vapor Train 2 LLC*, No. 6:22cv-00429 (E.D. Tex. Nov. 25, 2022), *Dkt. No.* 19 at 22 (citing *Results from Annual National Youth Tobacco Survey*, U.S. Food & Drug Admin. (Nov. 10, 2022), https://perma.cc/HG7K-NYUW.)

## II.    GOVERNMENT REGULATION OF ELECTRONIC CIGARETTES

### A.    FDA Regulation of Electronic Cigarettes

The Hyde Defendants attempt to legitimize their product by relying on the FDA's enforcement history. *Hyde Opp.* 9-11. But their interpretation of that history has been refuted by the FDA itself.

In *Vapor Train 2 LLC v. United States FDA*, the Hyde Defendants' challenged the FDA's refusal to accept its pre-market tobacco application, arguing that the "FDA has an unstated policy that … allow[s] the continued marketing of unlawful products while a timely-filed application is pending" and "has never even issued a Warning Letter regarding a non-tobacco nicotine [e-cigarette] with a timely submitted [Pre-market Tobacco Application] still pending." *See Defs.' Surreply in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj.*, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Dec. 9, 2022) at 2, *Dkt. No.* 30. The FDA adamantly disagreed with that interpretation, stating that it "*has no policy that shelters unauthorized new tobacco products with timely pending applications from enforcement*." *Id.* at 3 (emphasis added).[5]

---

[5] Even after that rebuttal by the FDA, the Hyde Defendants persist in this case in again offering an irrelevant argument related to FDA enforcement:

> FDA has never initiated an enforcement action against an electronic cigarette that is the subject of a PMTA undergoing FDA review and continues to allow the importation of e-cigarettes into the United States so long as a PMTA is pending for the subject products[,]

*Hyde Opp.* at 9-10, despite that argument having been expressly rebutted by the FDA:

The Hyde Defendants' contend that "the FDA has never initiated an enforcement action against an electronic cigarette that is the subject of a PMTA undergoing FDA review." *Hyde Opp.* at 9-10.  The FDA certainly takes enforcement actions against other e-cigarette brands marketed by the Hyde Defendants, such as Elf Bar. On December 14, 2023, the FDA announced that it seized approximately "1.4 million units of unauthorized e-cigarette products, including brands such as Elf Bar." *News Release, FDA, Joint Federal Operation Results in Seizure of More than $18 Million of Illegal E-Cigarettes* (Dec. 14, 2023), https://www.prnewswire.com/news-releases/joint-federal-operation-results-in-seizure-of-more-than-18-million-in-illegal-e-cigarettes-302015799.html.[6]

Nevertheless, as explained the below, FDA's enforcement choices are wholly irrelevant here. *See infra* at 12.  The City is not enforcing any statute for which the FDA has co-enforcement authority.  The City proceeds under City, State and common law, as well as the PACT Act.  The City is not required to have the same enforcement goals or limitations as the FDA.[7]

---

[6] The FDA further stated:

> Upon examining shipments, all of which originated in China, the team found various brands of illegal flavored disposable e-cigarette products. According to recently released 2023 National Youth Tobacco Survey (NYTS) data, disposable e-cigarettes are the most commonly used e-cigarette type among U.S. youth and nearly nine out of 10 current e-cigarette users (89.4%) used flavored e-cigarettes, with fruit flavors being the most popular, followed by candy, desserts, or other sweets; mint; and menthol.

*News Release, FDA, Joint Federal Operation Results in Seizure of More than $18 Million of Illegal E-Cigarettes* (Dec. 14, 2023), https://www.prnewswire.com/news-releases/joint-federal-operation-results-in-seizure-of-more-than-18-million-in-illegal-e-cigarettes-302015799.html.

[7] Overriding any argument by Hyde Defendants that FDA enforcement policy has any bearing here is that "an enforcement decision by [an agency] does not serve to obviate … legislation." *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 347 (E.D.N.Y. 2008); *United States v. Morrison,* 521 F. Supp. 2d 246, 254. (E.D.N.Y. 2007) ("[T]he failure of the executive branch to enforce the law is not the same as saying that the legislative branch has repealed it."); *LensCrafters, Inc. v. Wadley,* 248 F. Supp. 2d 705, 737

B.      **New York State and New York City Regulation of Electronic Cigarettes**

The Hyde Defendants' "Background" exposition of applicable New York law is a study in inconsistency. After recognizing that New York State and City "prohibit[] the sale of flavored electronic cigarettes," *Hyde Opp.* at 11, the Hyde Defendants first contend that the sales of their flavored e-cigarettes "occur exclusively" in Buffalo, which of course is in New York State. *Id.* at 12. They also cannot disavow the description of their mission as making flavored e-cigarettes available to "retailers across New York," – "most importantly, [to] ensur[ing] that retailers across New York can offer" flavored e-cigarettes.[8]

**III.   Defendants' Roles and Operations**

There are significant factual discrepancies in the "Background" section of the Hyde Defendants' Memorandum of Law concerning their "roles and operations."

Magellan states that it "does not engage in the sale of any e-cigarette products or e-liquids, flavored or unflavored, *to any person other than its affiliate, Defendant Demand Vape.*" *Hyde Opp.* at 12 ((emphasis added). In its verified complaint against the FDA in *Vapor Train*, however, Magellan affirmatively represented that it "distributes [e-cigarette] products nationwide, including in this [Texas] district. *Magellan* is the master distributor of all Hyde- and JUNO-branded ENDS products." *Compl*. ¶ 4, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Nov. 3, 2022), *Dkt. No*. 1. (emphasis added). Defendant owner Glauser himself has stated that, "[f]rom the time [Magellan] launched each of the above Hyde- and JUNO-branded products until the Refuse to Accept Order issued on October 6, 2022, we had sold the subject products to more than retailer

_____

(M.D. Tenn. 2003) (no basis to find "that the avowed benefits of a statute duly enacted by the legislature may be undermined by poor enforcement on the part of the executive branch").

[8]Jon Glauser, N.Y. Daily News (Oct. 7, 2023), https://www.nydailynews.com/2023/10/07/eric-adams-unfair-attack-on-vaping-nyc-lawsuit-against-legal-companies-is-wrong/

customers nationwide [*sic*]." *Decl. of M. Jonathan Glauser* at ¶ 8, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Nov. 7, 2022), *Dkt. No*. 7. [9]  The complaint in *Vapor Train* further confirms Magellan's retail sales: "Plaintiff Vapor Train 2 LLC is a Texas limited liability company headquartered and with *two retail stores* in Longview, Texas. Until FDA issued the RTA order, Vapor Train purchased Hyde-branded [e-cigarette] products *from Magellan* and sold them to consumers at retail through its two stores." *Compl*. ¶ 5, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Nov. 3, 2022), *Dkt. No*.1 (emphasis added). This suggests that Magellan sells to customers other than Demand Vape.

These contradictions regarding Magellan's retail sales raise questions as to the accuracy of representations of fact by the Hyde Defendants.[10]

## STANDARD OF REVIEW

Among the elements required to issue a preliminary injunction is the movant's "*likelihood of success*" on the merits. *See, e.g. Winter v. NRDC, Inc*., 555 U.S. 7, 20 (2008) (emphasis added). Magellan incorrectly contends that the City must meet the less commonly-applied heightened standard of "a clear or substantial" likelihood of success on the merits, *JTH Tax, LLC v. Agnant*, 62 F. 4th 658, 667 (2d Cir. 2023) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).[11]

---

[9] This appears to be a typographical error that omitted the actual number of retail customers to whom Magellan sold, but nonetheless sufficiently indicates that Magellan does sell to retail customers. Elsewhere, Glauser has suggested sales to 5000 retailers nationwide but attributes the sales to Demand Vape. *Proshansky Decl*. Ex. F at 87:5-12 (*Dkt. No*. 42-2).

[10] The City has previously pointed to statements of fact by the Hyde Defendants that are flatly contradicted by their own public filings. *See Pl.'s Mem. of Law in Response to Defs.' Mot. to Dismiss,* at 54-55 (*Dkt. No*. 70).

[11] The heightened standard also requires "a strong showing of irreparable harm," but because the City need not show irreparable harm at all, *City of N.Y. v. Golden Feather Smoke Shop, Inc*., 597 F.3d 115 (2d Cir. 2010)it need not make a strong showing.

Courts apply the heightened standard where (1) the plaintiff seeks an injunction providing "substantially all of the relief [sought] in the litigation, [that] cannot be meaningfully undone in the event that the enjoined party prevails at trial on the merits," or (2) the plaintiff seeks a "mandatory injunction," *i.e.*, an injunction that "alters the *status quo* by 'commanding some positive act.'" *Id.* (citing *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34-35 (2d Cir. 1995)). "A heightened standard is imposed in such circumstances, in part, because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them." *Id.* (citation omitted).

The Hyde Defendants press for the application of the heightened standard by arguing that the City seeks a mandatory injunction – a change to the *status quo*.[12]  *Hyde Opp.*  at 15-16.  That is incorrect the *status quo* cannot consist of a set of circumstances marked by continuing non-compliance with the law.  The *status quo* is the "last actual, peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014)).  Ongoing violations of the law cannot be considered an "uncontested" status, *i.e.*, compliance with the law cannot be a "change" in the status quo where compliance is always implicitly demanded of all persons and is inherently the *status quo*.

The Hyde Defendants urge that the injunction "would alter the status quo by requiring Defendants to cease all sales to New York City-based companies." *Hyde Opp.* at 16.[13]  But the

---

[12] The Hyde Defendants do not contend  that the City seeks all of the relief sought in the Amended Complaint. Thus, the City is not subject to the heightened standard on that basis.

[13] The Hyde Defendants assert in conclusory fashion that the injunction would also "includ[e] distributors that lawfully sell flavored e-cigarettes to other distributors and retailers outside of New York City." *Hyde Opp.* at 16.  But no such sales lawfully exist because even sales outside the City are barred by the Administrative Code, as explained below.  Such sales also violate one or more sections of the PACT Act,

HYDE defendants' continuous and ongoing violations of multiple statutes can hardly be deemed the "*status quo,*" and the caselaw so holds.  In *California v. Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sep. 7, 2023), the state sought injunctive relief against a cigarette seller that for many years engaged in sales that "allegedly … contravened both federal and state cigarette laws."  The defendant cigarette-seller argued that California sought a mandatory injunction "because the injunction would alter the status quo that has been maintained for approximately five years—the continuation of Azuma's cigarette business while the state sought its compliance."  *Id.* at *24-25.  The court noted that "the status quo is not simply any situation before the filing of the lawsuit, but rather the last uncontested status that preceded the parties' controversy."  *Id.* at *25 (internal quotations omitted).  The court then rejected the defendant's argument, concluding that the last uncontested status was the circumstance prior to the defendant's non-compliance with the law:  "[v]iewing the chronology correctly, the last uncontested status is before [the defendant] began its allegedly illicit cigarette business." *Id.*  at *25-26 (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("In this case, the status quo ante litem existed before [defendant] began using its allegedly infringing logo.")).

Generally, courts look to the circumstances in place not immediately before the filing of the lawsuit intended to halt conduct, but before the occurrence of the offending act.  *See, e.g.*, *Roe v. Critchfield*, 2023 U.S. Dist. LEXIS 140737 (D. Idaho Aug. 10, 2023) (status quo with respect to passage of allegedly unconstitutional law is circumstance before passage of the law); *M3 USA Corp. v. Qamoum*, 2021 U.S. Dist. LEXIS 105923 (D.D.C. June 7, 2021) (where employees had been violating non-compete agreement for 1 1/2 years, the status quo was circumstance before

---

the Tobacco Control Act, or the laws of the 375 US localities and six states that, in addition to New York State, have adopted restrictions on sales of flavored electronic nicotine.

they began to do so).  The violations of law here cannot be considered the *status quo*, nor can requiring compliance with the law be considered "particularly burdensome." *JTH Tax*, 62 F. 4th at 650.  Thus, the City's preliminary injunction is not a mandatory injunction, and the Court should decline to apply the heightened standard.[14]

## ARGUMENT

## I    THE CITY HAS SHOWN A PROBABLE OR A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. The City Is Not Engaged In Enforcement of the Federal Food, Drug, and Cosmetic Act

The Hyde Defendants' assert that by characterizing them as selling "adulterated" e-cigarettes the City is impermissibly enforcing the Federal Food, Drug, and Cosmetic Act ("FD&C Act"). *Hyde Opp*. at 17-18. But merely referring to the undeniable fact that the FD&C Act itself

---

[14] The Hyde Defendants' reliance on *Golden Feather* is misplaced. In *Golden Feather*, the City sought an injunction enjoining certain sales of untaxed cigarettes by an Indian tribe. 597 F.3d at 117. While the Second Circuit noted that "the City must make a 'clear' and 'substantial showing of a likelihood of success,'" at the time of the suit the law was unresolved as to whether the defendants' conduct violated the governing statutes. *See id.* at 121-25 (analyzing as a necessary element to the injunction whether New York tax law imposed a tax on cigarettes sold by reservation vendors and noting "New York State has a somewhat labored history as it concerns taxing sales of cigarettes on Native American reservation lands"). The law was so unsettled then that Second Circuit certified to the New York Court of Appeals two questions of law necessary to determine whether the preliminary injunction was meritorious. *Id.* at 127-28.  No such legal uncertainties exist here.

Likewise *SEC v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) and *Maniqualt v. ABC Inc.*, 2018 U.S. Dist. LEXIS 112766 (S.D.N.Y. June 21, 2018) are distinguishable.  In *Unifund SAL*, the SEC sought a preliminary injunction against certain corporations that would enjoin future securities violations, freeze their accounts, and bar disposal or alteration of their books and records.  910 F.2d at 1029.  The Second Circuit opined that "the prohibition against future securities law violations is among the sanctions that we have characterized as having grave consequences" because "[s]uch an order subjects the defendant to contempt sanctions if its subsequent trading is deemed unlawful and also has serious collateral effects." *Id.* at 1040.  For these reasons, the court found that barring future securities violations "accomplish[d] significantly more than preservation of the status quo." *Id. Maniqualt* involved restraints on First Amendment rights, and the court applied the heightened standard where a *pro se* plaintiff sought expansive injunctive relief that would bar defendant ABC and non-party publicists from commenting on or publicizing the lawsuit without paying plaintiff.  Both are distinguishable from the preliminary injunction sought here, which merely seeks to enjoin Defendants' sales of flavored e-cigarettes into New York City, in accordance with federal, state and New York City law.

classifies the Hyde Defendants' products as "adulterated" does not constitute "enforcement" of that Act any more than a comment that a person is a plagiarist is an attempt to enforce the Copyright Act. The only statutes the City seeks to enforce are the PACT Act, RICO, the NYC Administrative Code, and state law.

The Hyde Defendants argue that the City is "indirectly enforcing" the FD&C Act through its public nuisance claim and that the City's references to the Hyde Defendants' violations should be ignored as "legally irrelevant" to an injunction. *Hyde Opp.*. at 21. In fact it is the Hyde Defendants' argument that is legally irrelevant. References to the FD&C Act in the City's moving papers are there not to "enforce" the Act, but to inform the Court that the *FDA* itself has determined that multiple Hyde products are "adulterated" under that Act. *See Pro. Dec.* Ex. B at 16 (Hyde Rebel, Hyde Retro, and Hyde Edge do not have an FDA marketing authorization order in effect under the FD&C Act and are not otherwise exempt from the marketing authorization requirement and are therefore "adulterated under section 902(6)(A) of the FD&C Act."). The FDA has further stated that:

> [Magellan] do[es] not dispute that Congress made marketing of non-tobacco-nicotine e-cigarettes unlawful absent marketing authorization from FDA, and … admit[s] that Magellan lacks FDA authorization for the products in question. It was therefore unlawful for Magellan to market its products.

*Defs*.' *Surreply in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj*. at 2, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Dec. 9, 2022)*, Dkt. No*. 30.

The City includes references to the FDA's determinations under the FD&C to establish the settled principle that "when the conditions giving rise to a nuisance are also a violation of a statutory prohibition, those conditions constitute a nuisance *per se*." *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 355 (E.D.N.Y. 2007) . Nothing cited by the Hyde Defendants requires the proponent of a nuisance *per se* claim to have standing *to enforce* the statute the violation of

which constitutes the nuisance *per se* – it is enough to show that a defendant's violation of a statute harms health and safety. A public nuisance claim stands on its own and is proven *by evidence of* a statutory violation, without the need *to enforce* the statute in question. *See, e.g*, *A-1 Jewelry & Pawn, Inc*., 247 F.R.D. at 343-344 (approving public nuisance claim premised on violations of federal criminal statutes that the City had no standing to enforce).

If in fact the City were "indirectly enforcing" the FD&C, a preemption analysis would be the relevant argument. The Hyde Defendants have not so argued, nor could they because public nuisance claims frequently co-exist with and indeed are premised on violations of federal statutes under which a state or local government has no standing to sue. *See, e.g*., *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 651-52 (N.D. Cal. 2020); *In re Opioid Litig*., 2018 N.Y. Misc. LEXIS 2428, *79 (Sup. Ct. Suffolk Cty. June 18, 2018). The City has standing to sue under the PACT Act, PHL 1399-*ll* and under common law. The City has no need to proceed under the FD&C Act nor does it intend to by referencing terms of art used in that statute. *Accord City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 355 (E.D.N.Y. 2007) (City's reliance on two New York State statutes …. serves as evidence of a nuisance *per se.*) (citing *Janik v. City of Dallas*, 1998 U.S. Dist. Lexis 7075 (N.D. Tex. May 12, 1998) (plaintiffs properly utilized statutory violations to aid in proving nuisance-related causes of action, "so that the Clean Water Act and/or RCRA statutory violations 'convert' the plaintiffs' common law nuisance claims into . . . nuisance per se claims.").

The City does not seek redress for FD&C Act violations, and in contrast to the cases cited

by the Hyde Defendants, the likelihood of success of the public nuisance claim does not hinge on

whether any Defendants violated the FD&C Act.[15]

**B. The Hyde Defendants Violate New York City Administrative Code § 17-715.**

**1. Defendants Magellan, Glauser, and Hashagen sell, or offer
for sale e-cigarette products or e-liquids to New York City Businesses.**

The Hyde Defendants contend that Magellan, Glauser, and Hashagen cannot violate Ad.

Code§ 17-715(b) or commit a public nuisance because they do not "personally engage in any sales

of e-cigarette or e-liquid products," as "such sales occur exclusively through Demand Vape.[16]

*Hyde Opp.* at 22.  This argument fails because "a corporate officer who controls corporate conduct

and thus is an active individual participant in that conduct is liable for the torts of the corporation."

*New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985). Courts have recognized this

principle in the specific context of public nuisance claims arising out of officers' "roles in creating

and maintaining the public nuisance of the youth vaping epidemic." *In re Juul Labs, Inc., Mktg.,*

*Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d at 651-52 ("A corporate officer or director

is, in general, personally liable for all torts which he authorizes or directs or in which he

---

[15] In *People v. JUUL Labs, Inc.* (cited by the Hyde Defendants), the court noted that "a state-law claim *may survive preemption* if the plaintiff sues for conduct that violates federal law but *is also actionable under state law independently of federal law*." No. 452168/2019, 2022 N.Y. Misc. LEXIS 11127, at *34 (N.Y. Cty. July 5, 2022) (citations omitted) (emphasis added). The court dismissed plaintiff's claim based on the theory that defendant JUUL failed to obtain FDA approval, as required in the FD&C Act. *Id.* at *31-*33. However, the court declined to dismiss plaintiff's state law claim based on the theory that JUUL violated the FTC Act § 5, which prohibits unfair acts and practices in marketing, because "[t]he same allegations form the basis for other traditional state-law claims that exist separately and parallel to the FTC Act § 5's fairness requirement." *Id.* at 34.

[16] As to Magellan, the City has already shown significant inconsistencies in the Hyde Defendants' representations as to that company's role in making retail sales, *supra* at 8, and as to Hashagen,  significant inconsistencies as to his role in the operations of Demand Vape, such that there is no basis to rely on the above statements, at least until discovery has been had.

participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.") (citation omitted); *see also Kopec v. Hempstead Gardens, Inc.*, 696 N.Y.S.2d 53, 55 (2d Dept. 1999) (affirming denial of defendants' summary judgment motion on nuisance claim under New York law because "[c]orporate officers may be held personally liable for torts committed in the performance of their corporate duties").

Here, the Individual Defendants' relevant personal conduct is considerable. Glauser is the Chief Strategy Officer (as well as co-owner and co-founder) of Demand Vape. According to Glauser, his experience in the e-cigarette industry dates back to 2009 when he spent six months in China conducting marketing research, before officially opening the business in 2011. *Proshansky Decl.* (*Dkt. No.* 42-1),Ex. F at 86:1-7. Indeed, Glauser maintains a close relationship with his suppliers overseas, testifying that he "know[s] and has a good relationship with every manufacturer" in Shenzhen, China, and has personally visited their facilities and seen "how they manufacture everything." *Id.* at 98:18-99:15; *see also id.* at 98:12-17 (testifying that he conducts his own due diligence with suppliers).

Glauser clearly has an intimate knowledge of Demand Vape's business, estimating that the company sells 30,000 skews (*i.e.*, individual products) in 49 states to about 5,000 retailers. *Id.* at 86:20-87:12; *see also id.* at 87:16-23 (testifying that Demand Vape forms a relationship with suppliers in Shenzhen as a master distributor or distributor and then sells directly to vape shops, smoke shops, and convenience stores). He has estimated that he visits up to 1,000 brick and mortar retail outlets that sell e-cigarettes in a given year, *id.* at 90:16-25, and that he deals with the FDA on a regular basis, *id.* at 100:18-24.

As to Hashagen, public records demonstrate that he has been an Executive Vice President of Magellan and is Magellan's registered agent. In certain filings, he is also included as a Director

of Magellan.  *See City Opp. to Hyde Mot. Dis.* at 57-58 (*Dkt. No. 70*).  Limited discovery is warranted to address the discrepancies in the description of his role at Magellan and to demonstrate his involvement with the company's activities.

### 2. Defendant Demand Vape Has Sold and Continues to Sell Flavored E-cigarettes and E-liquids in New York City.

The Hyde Defendants' primary argument concerning Ad. Code § 17-715(b) is that it does not apply to their sale of flavored e-cigarettes to Brooklyn-based Star Vape because (1) Magellan and Demand Vape are in Buffalo, and (2) Demand Vape's sales to customers in New York City "take place exclusively in Buffalo" as demonstrated by their invoices, which state that the sale "is completed" upon shipment.  *Hyde Opp.* at 22-24.  This argument fails for two principal reasons.

*First*, this case is not governed by the law of sales between private parties but by federal law governing e-cigarette sales, which the Hyde Defendants conveniently avoid mentioning. Under federal law, specifically the PACT Act, "a sale, shipment or transfer of e-cigarettes in interstate commerce made into a …. locality"  "shall be deemed to have been made into the … locality in which such cigarettes … are delivered."  15 U.S.C. § 375 (10)(B).  In addition, under the PACT Act, a delivery seller shipping e-cigarettes must "comply with—all State, local, tribal, and other laws generally applicable to sales of cigarettes as if the delivery sales occurred entirely within the specific State and place."  15 U.S.C. § 376a (a)(3).[17]

There can be no dispute that Demand Vape makes delivery sales and, therefore, must comply with Ad. Code § 17-715(b).  Under the PACT Act, a delivery sale is defined as any non-face-to-face "sale of cigarettes or smokeless tobacco to a consumer."  *Id.* § 375(5)(A)-(B).  A

---

[17] The City has already demonstrated that the Hyde Defendants' sales from Buffalo to the City are "made in interstate commerce." *City Opp. To Hyde Mot. Dis.* at 16, *Dkt. No.* 70.  Thus, those sales are governed by this provision.

"consumer" is "any person that purchases cigarettes or smokeless tobacco," except for "lawfully operating" manufacturers, distributors, wholesalers, and retailers.  *Id.* § 374(f). There is no question that Demand Vape sold thousands of flavored e-cigarettes to Star Vape in Brooklyn.  *See Proshansky Decl. Ex.* S at 43, *Dkt. No.* 42-2.  As a result, Star Vape possessed thousands of flavored e-cigarettes in New York City, a violation of Ad. Code § 17-715(b), which makes it "unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid."[18]   Because Star Vape's conduct violated New York City law (and also federal and state law), Star Vape was not "lawfully operating" and thus was a "consumer" under the PACT Act.[19]   As a result, because Demand Vape was making delivery sales, it was responsible itself for complying with Ad. Code 17-715(b), which it obviously did not do given that it sold flavored e-cigarettes.

     *Second*, even in the absence of the PACT Act's provision that Demand Vape's sales to Star Vape occur in New York City, the Hyde Defendants offer no effective support for why the Uniform Commercial Code displaces the Administrative Code in this context.  *Hyde Opp.* 13.

     The City has documented Demand Vape's sales of flavored e-cigarettes to Star Vape, a distributor located in Brooklyn.  *See Proshansky Decl. Ex.* S at 43, *Dkt. No.* 42-2.  Even if as a

---

[18] There is no question of Star Vape's sales, offers to sell or possession with intent to sell.  *Hyde Opp.* at 24 n.40 (acknowledging Star Vape is a wholesaler).

[19] Courts have recognized that Congress intended the term "consumer" to refer to "all unlawfully operating entities, including both businesses and natural persons." *City of N.Y. v. FedEx Ground Package Sys.*, 13 Civ. 9173 (ER), 2017 U.S. Dist. LEXIS 24733, at *20 (S.D.N.Y. Feb. 21, 2017). Courts have also recognized that whether a buyer is "lawfully operating" under the PACT Act is "properly determined by [the buyer's] compliance or lack thereof with New York . . . law." *New York v. Grand River Enters. Six Nations*, 2020 U.S. Dist. LEXIS 236928, at *35-40 (W.D.N.Y. Dec. 15, 2020) (denying motion to dismiss on PACT Act claim where complaint alleged that "Defendants operated as 'delivery sellers' when their customers received unstamped cigarettes from Defendants who, by failing to comply with New York Tax Law … were not 'lawfully operating' with respect to the cigarettes, nor were the asserted resellers lawfully operating given they also would have been in possession of the untaxed cigarettes"). *See also City Opp. To Hyde Mot. Dis.* (*Dkt. No*. 70) at 21-27.

matter of private contract law Demand Vape's sales did occur "in Buffalo," there is no significance to that contention under Ad. Code § 17-715 (b)(1). That provision is agnostic as to the location of a prohibited sale, *i.e.*, the statute does not prohibit sales of flavored e-cigarettes "*in New York City*" but makes it "unlawful for any person to sell or offer for sale" flavored e-cigarettes. Ad. Code § 17-715(b)(1). Citation to N.Y. U.C.C. § 2-401(1), *Hyde Opp.* at 23, is utterly unsupportive of the Hyde Defendants' position. That section itself provides that it addresses where title to goods passes, presumably to determine issues related to ownership as between a buyer and a seller. It says nothing about *where* a sale occurs. Where title passes might be relevant in a private contract dispute between a buyer and seller. It has no bearing, however, on the Hyde Defendants' liability to the City under Ad. Code § 17-715 (b)(1), which prohibits specific conduct – the occurrence of a sale to a New York City-based entity – without reference to where the conduct occurs. There is no impediment to requiring the Hyde Defendants to answer for their violation of a New York City statute in the course of making sales to a business in the City. *A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 349 (so long as personal jurisdiction exists, "defendants' conduct may be challenged in New York, under New York law, including New York law of common law nuisance and its statutory codification"). For this reason, the Hyde Defendants' citation to language on the invoices is equally irrelevant. Demand Vape's transactions with City entities and shipments of goods to them into New York City satisfies whatever due process is required and subjects Demand Vape to the City's laws.

It is undisputed that Demand Vape did sell flavored e-cigarettes to Star Vape, and thus did violate Ad. Code § 17-715(b).

**C.     The City Has Shown a Substantial Likelihood of Success on its Public Nuisance Claim.**

The Hyde Defendants do not dispute that a public nuisance is established by showing that the defendant engaged in "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to . . . endanger or injure the property, health, safety or comfort of a considerable number of persons." *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 101 (2d Cir. 2013) (quoting *Copart Indus. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977)); *see also City Mem.* (*Dkt. No.* 50) at 25-26.

Where, as here, "the conditions giving rise to a nuisance are also a violation of a statutory prohibition, those conditions constitute a nuisance *per se*." Intentionality and "the reasonableness of the defendant's conduct and the weighing of the relative interests of the plaintiff and defendant is precluded because the Legislature has, in effect, *already struck the balance in favor of the innocent party*." *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 355 (E.D.N.Y. 2007)(quoting *Branch v. W. Petro., Inc.*, 657 P.2d 267, 276 (Utah 1982)).

**1.   The Hyde Defendants' Conduct Constitutes Nuisance Per Se**

The Hyde Defendants incorrectly assert that "[b]ecause the City has not shown and cannot show a violation of Section 17-715, it cannot establish that any alleged conduct by Magellan or Demand Vape was nuisance *per se*." *Hyde Opp.* at 26. A nuisance *per se* is established  by showing that the "conditions" giving rise to the public nuisance are "also a violation of a statutory prohibition," *A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 343-344. Here, the "condition[] giving rise to the public nuisance" is the Hyde Defendants' sales of flavored e-cigarettes into the City, manifest as the flood of flavored e-cigarettes available for sale in from New York City stores. *See,*

*e.g.*, *Dkt. No.* 43 (*Berkman Decl.*) Ex. A; *Dkt. No.* 47 (*Lesnak Decl.*) Ex. A.[20]   The City has shown

that the Hyde Defendants' sell flavored e-cigarettes into the City and thus violate Ad. Code § 17-

715. *Proshansky Decl.* (*Dkt. No.* 42-2), Ex. S. *Supra* at 17.   That statutory violation constitutes a

nuisance per se.[21]   *See, e.g.*, *Shore Realty*, 759 F.2d at 1051 (continuing statutory violations

constitute nuisance *per se*).

       The Hyde Defendants' sales in fact violate many more statutory prohibitions than simply

Ad. Code § 17-715, and the Administrative Code is not the only predicate for finding their conduct

to be a nuisance *per se*.   As shown above, the Hyde Defendants are also operating in violation of

the Tobacco Control Act by selling flavored e-cigarettes without any pre-market authorization.

*Supra* 13.   The FDA itself has branded the Hyde Defendants' conduct as "unlawful" under the

Tobacco Control Act.   *Defendants' Surreply in Opposition to Plaintiffs' Motion for a Temporary*

*Restraining Order and Preliminary Injunction*, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex.

Dec. 9, 2022), *Dkt. No.* 30 at 2.   There is no requirement that to merit injunctive relief for a nuisance

---

[20] The Hyde Defendants argue that the City "artificially cabins the public health inquiry around [flavored e-cigarettes] to focus exclusively on (illegal) sales to and use by youth and ignores the public health benefits of use by adults (and even to youth who would otherwise smoke combustible cigarettes))." *Hyde Opp.* at 29.   The Hyde Defendants thus do not deny that an injury has occurred but argue that the injury is outweighed by other benefits.   But that balance has already been struck by the legislature's prohibitions on flavored e-cigarettes.   The FDA is expressly required to apply that balancing (net benefit) test as a prerequisite to the marketing approval of a new tobacco product. *See Proshansky Decl.* (*Dkt. No.* 42-1), Ex. A at JA-7.To date the FDA has not approved any flavored e-cigarette. The inquiry is not cabined by the City but by the fact that the net benefit standard that the Hyde Defendants refer to has never been met for a flavored e-cigarette.   The Hyde Defendants are not permitted to  second-guess the legislatures and the FDA.

[21] The Hyde Defendants' sales give rise to a host of violations of the Ad. Code § 17-715:

> Magellan's Hyde products are common at smoke shops and convenience stores in New York City. They have served as the predicate for numerous citations issued by City enforcement agents to retail stores in each of the five boroughs for violations of the New York City flavor ban, Ad. Code § 17-715.  *Hurst Decl.* ¶¶ 8, 9.

*See, e.g.*, *City Mem.* (*Dkt. No.* 50 at 6).

*per se* a plaintiff must have sought the injunction under the particular statute violated – showing the statutory violation simply serves to establish that the particular conduct at issue has been determined by the legislature to be unreasonable so that an individual plaintiff need not redundantly make that showing.

Separately, even in the absence of a statutory violation, where, as here, a public nuisance claim is brought by a government proof of intentional conduct is not required: "In public nuisance cases, in particular those brought by a public authority, allegations of fault have generally been found to be irrelevant under New York law." *A-1 Jewelry & Pawn*, 247 F.R.D. 296, 343-344 (E.D.N.Y. 2007) (collecting cases); *accord City of N.Y. v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 277 (E.D.N.Y. 2004). "The absence of a fault standard is appropriate in the public nuisance context" because "[t]he public should not be made to suffer an unreasonable interference with its rights merely because the entity responsible for the interference is acting non-negligently and without bad intent." *A-1 Jewelry & Pawn, Inc*., 247 F.R.D. at 343-344 (quoting Robert Abrams & Val Washington, *The Misunderstood Law of Public Nuisance: A Comparison with Private Nuisance Twenty Years After Boomer*, 54 Alb. L. Rev. 356, 370)).

Accordingly, the Hyde Defendants' conduct constitutes nuisance *per se*, and/or is a government action and no further showing of intentionality or unreasonableness is required for issuance of a preliminary injunction. *See A-1 Jewelry & Pawn, Inc*., 247 F.R.D. at 296, 355; *see also Branch v. Western Petroleum*, 657 P.2d 267, 276 (Utah 1982) ("Defendant's violation of [certain statutes] removed the issue of the reasonableness of its conduct compared with the nature of the injury inflicted from consideration in this case. *The declaration of the Legislature is conclusive, and its determination will not be second guessed*.") (emphasis added).

**2. The City Does Not Need to but Has Made a Substantial Showing of Intentional Conduct**

Having established a nuisance *per se*, the City need not demonstrate intentional or unreasonable conduct, but in fact the City has done just that. Intentional conduct is simply conduct that is not accidental or mistaken conduct. *United States v. Bell*, 584 F.3d 478, 484 (2d Cir. 2009); *see also Woods v. Town of Tonawanda*, 2020 U.S. Dist. LEXIS 61948, at *59-60 (W.D.N.Y. Apr. 8, 2020) ("A person acts intentionally with respect to a result … when his conscious objective is to cause such result or to engage in such conduct.") (quoting N.Y. Pen. L. § 15.05 (1)). "[A] defendant [that] becomes aware that harm is resulting and continues to act in the same manner it has acted intentionally to contribute to a public nuisance." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 488 (E.D.N.Y. 2003) (citing *Restatement (Second) of Torts* § 825 cmt. d & illus. ("The first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it further invasions are intentional"); *Suez Water*, 2023 U.S. Dist. LEXIS 48925, *34.

In arguing that the City has not made a substantial showing of intent the Hyde Defendants completely ignore that they possess *actual knowledge* that they violate New York City's flavor ban. The Hyde Defendants assert, without any offer of support, that the City must provide evidence demonstrating that "Magellan or Demand knew … their customers … purchased flavored e-cigarette products" and "would sell them to underage youth." *Hyde Opp*. at 27; *see also id.* ("Defendants … [do not] have any specific knowledge of illegal sales to youth by any of their customers in the City.").   But of course they do.

The City's moving papers in this action  (*Dkt. Nos*. 41–50) provide the Hyde Defendants with "specific knowledge" that their customers sell Hyde flavored e-cigarettes to youthful and underage customers.  Among other evidence of those sales the declaration of James Hurst, Deputy

Commissioner of the Department of Worker and Consumer Protection ("DWCP") ("*Hurst Decl.*")

provides:

> DCWP inspected a business called Flatbush Smoke Zone Corp., located at 393 Flatbush Ave., Brooklyn, NY 11238. As a result of such inspection, DCWP issued violations for engaging as an unlicensed electronic cigarette retail dealer, selling an electronic cigarette to a person under 21 years of age, and selling flavored electronic cigarettes, among other violations. Seven different illegal flavored electronic cigarettes were cited in the summons, including Hyde apple peach watermelon, Hyde Banana cherry, Hyde banana, Hyde peach, and Hyde strawberry orange.
>
> ***
>
> DCWP inspected a business called N and N Convenience Inc., located at 16 Beaver Street, New York, NY 10004. As a result of such inspection, DCWP issued violations for selling an electronic cigarette to a person under 21 years of age and selling a flavored electronic cigarette, among other violations. The product illegally sold to the person under 21 years of age was a Hyde brand "lush ice" electronic cigarette.

*Hurst Decl.* (*Dkt. No.* 46) at ¶¶ 10, 15.  The Hyde Defendants have, *inter alia*, that "specific

knowledge" of youth sales. Those incidents alone, coupled with the Hyde Defendants' knowledge

from public documents of the popularity among youth for Hyde Products and Elf Bar,[22] provides

sufficient knowledge of youth purchases.[23] The dispositive fact here is that having received from

the City actual knowledge of youth purchases the Hyde Defendants stubbornly continue to sell

flavored e-cigarettes into the City. Continuing to engage in conduct with knowledge that it gives

---

[22] In terms of popularity, the 2022 National Youth Tobacco Survey reported that among  current youthful users that had used a vape device at least once in the in the past 30 days and listed a brand, Hyde was the sixth most popular brand, at 7.3 percent of users.  Among current users, if the "use in past 30 days criterion was dropped, Hyde products were the third most popular brand. *See* Cooper M, Park-Lee E, Ren C, Cornelius M, Jamal A, Cullen KA. *Notes from the Field: E-cigarette Use Among Middle and High School Students - United States*, 2022. MMWR Morb Mortal Wkly Rep. 2022 Oct 7;71(40):1283-1285. doi: 10.15585/mmwr.mm7140a3. PMID: 36201370; PMCID: PMC9541029.

[23] Glauser – who owns both Magellan and Demand Vape – has stated his awareness that young people are avid consumers of flavored e-cigarettes.  *See Dkt. No.*42-1, Ex. D at 26 (Glauser understands the concern that sweet-flavored e-cigarettes appeal to teens).

rise to a public nuisance proves intent, *i.e.*, that a defendant "had knowledge that its product would be used in a manner that would create a nuisance, but that it also sold the product directly and continuously to the person engaged in the nuisance-creating activity even after acquiring the knowledge that the person was creating a nuisance," *Suez Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 2023 U.S. Dist. LEXIS 48925, *34, precisely the facts here. Magellan and Demand Vape are owned by the same individual, Glauser, and thus possess the same knowledge.

To the extent the Hyde Defendants are demanding that the City set forth the precise supply chain by which their products reached the City, that would be irrelevant to establishing their intentional conduct. As stated in *NAACP*, 271 F. Supp. 2d at 488, a public nuisance claim premised on the marketing practices of gun manufacturers, "'*[i]ntent' does not, ... require knowledge that a specific gun sold to a specific dealer will be diverted into the illegal market* and cause harm to the public" (emphasis added). Rather, intent requires that a defendant "... knows or is substantially certain that its ... practices have a significant impact on the likelihood that its [products] will be diverted into the illegal market ... , and that substantial harm to the public will result." *Id.*

In this case, the Hyde Defendants are well aware that their own practices will have "a significant impact on the likelihood" of their products being diverted to an illegal market. *NAACP*, 271 F. Supp. at 488. They are a principal creator of that market. *See Proshansky Decl.* (*Dkt. No.* 42-2), Ex. F at 87:5-12 (Demand Vape is one of the largest electronic cigarette distributors in the United States with 5000 retail customers). Magellan provides Hyde products to Demand Vape, which in turn sells a wide-variety of flavored e-cigarettes into the City to others operating in violation of New York City's flavor ban. *See Dkt. No.* 42-1, Ex. S (invoices to Star Vape).

The Hyde Defendants avoid the true issue here by asserting that they have no knowledge of their business customers selling to "underage youth," *Hyde Opp.* at 27, attempting to narrow

the scope of the knowledge from which their intentional conduct is inferred, They assert that the City must show that they "[know] … their customers … purchased flavored e-cigarette products" and "would sell them to underage youth." *Hyde Opp*. at 27.  This thoroughly understates the scope of the public nuisance described and documented by the City. The nuisance is sales made in violation of the City's flavor ban, whether to youth or not. [24]  Even if the Hyde Defendants were unaware of their customers' sales to youth consumers the Defendants have unequivocal knowledge from their own sales invoices that they sell and their customers buy products that violate New York City's flavor ban.  *See Proshansky Decl. Ex*. S at 43, *Dkt. No.* 42-2.  All of the knowledge required to support the conclusion that they act intentionally is contained in their own invoices. The Hyde Defendants act intentionally because they know that their customers are selling flavored e-cigarettes in the City.  The Hyde Defendants nonetheless continue to supply those customers with those products.[25]

The Hyde Defendants fail in arguing that they cannot be acting intentionally to cause a nuisance because the City distributors to whom they sells are purportedly permitted to possess and sell flavored e-cigarettes outside of the City, citing 24 R.C.N.Y. §28-02 (b) (1). The Hyde Defendants argue that they may sell into the City by anticipating in anticipation that those buying

---

[24] The City has emphasized the effect of the public nuisance on youth e-cigarette use, but the nuisance is far broader. As stated, "the City has demonstrated that it has – and is – suffering an injury to the public health *of its residents*." *City Mem*. (*Dkt. No*. 50) at 27 (emphasis added; *id.* at 34 ("The City seeks to protect the health and safety of *its residents* (emphasis added).  The Amended Complaint alleges hazardous waste contamination of the City caused by the Hyde Defendants' products, *Am. Compl.* ¶ 152; 153, 155,  and the violations of law and resulting public nuisance are repeatedly described as affecting the City's "residents," not merely youth. *Am Compl*. ¶¶ 133, 137, 140, 155, 168, 185.

[25] The Hyde Defendants' assertion that they have prohibited sales to *retailers* in the City concedes by negative inference that they are continuing to sell flavored e-cigarettes to City wholesalers or distributors.

from them will make "legal," out-of-City sales, and thus are not intending to create a nuisance. *Hyde Opp.* at 27.[26]

     First, the contention that the Hyde Defendants' creation or contribution to the nuisance is rendered unintentional by the possibility that every Hyde Defendant customer will sell all of their Hyde Defendant orders outside the City is too speculative (and contrary to common sense) to eliminate the Hyde Defendants' intentionality. The Hyde Defendants effectively seek to rely on an "intervening cause" defense to shed responsibility for their City sales by relying on intervening conduct, *i.e.*, sales to locations outside the City by their customers. But intervening cause defenses fail where the intervention is foreseeable – in this setting it is far more foreseeable that the Hyde Defendants' customers' purchases will supply City retailers rather than be redirected out of the City.

     Second, the Hyde Defendants' sales into the City are prohibited by and remain illegal under Ad. Code § 17-715. Those violations are not vacated by  Rule 28-02 (b) (1).  To the extent Hyde products and other flavored brands such as Elf Bar  distributed by Demand Vape are found in the City – and as shown, they are present in prodigious quantities (*Dkt. Nos*. 43, 47) --  the Hyde Defendants have violated that statute. The violation is not cured by what a Hyde Defendant customer may choose to do further down the supply chain.  The Hyde Defendants' sale remains an intentional violation of the Administrative Code.

     Third, federal law does not permit the out-of-city sales that the Hyde Defendants claim relieves them of liability because all sales of flavored e-cigarettes are unlawful nationwide. The dictates of the Supremacy Clause, to be addressed under the FDA's statement that "[i]t was …

---

[26] The Rules of the City of New York do state that "[f]lavored electronic cigarettes and flavored e-liquids may only be sold or offered for sale by wholesalers where the sale or offer of sale is made to an entity located outside the City of New York."  24 R.C.N.Y. § 28-02(b).

unlawful for Magellan to market its products both before and after FDA's refusal to accept Magellan's applications." *Defs.' Surreply in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj.*, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Dec. 9, 2022)*, Dkt. No*. 30 at 2, forces the conclusion that even if there were sale and possession exceptions under state and City law (*i.e.*, for out-of-city sales) those exceptions are overridden by federal law, which makes no exceptions for flavored e-cigarettes.  Neither the State nor the City has the power to enact legislation that would allow City sellers to make out-of-city sales that are barred by federal law. The Hyde Defendants cannot possibly defend their sales into the City by arguing that their customers *might* engage in sales purportedly permitted by the City's Rules but which are illegal under federal law.

Finally, 24 R.C.N.Y. §28-02 (b) on which the Hyde Defendants seek to rely is void. The Administrative Code of the City of New York § 17-715 b. 1. provides

> It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

*Id*.  By contrast the Rules of the City of New York, 24 R.C.N.Y. §28-02 (b) ("Sale or Offer for Sale of Flavored Tobacco Products, Flavored Electronic Cigarettes, and Flavored E-Liquids Restricted") provides

> Flavored electronic cigarettes and flavored e-liquids may only be sold or offered for sale by wholesalers where the sale or offer of sale is made to an entity located outside the City of New York.

*Id*.  Self-evidently, the Rule is inconsistent with the Administrative Code.  A City wholesaler may not sell, offer to sell or possess with intent to sell flavored e-cigarettes.  The Ad. Code provides no exceptions, not even "if otherwise provided by rule." The Rule is thus void. "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have

no authority to create a rule out of harmony with the statute." *People v. Balmuth*, 178 Misc. 2d 958, 966 (Crim. Ct. 1998) (citing *Matter of Jones v Berman,* 37 N.Y.2d 42, 53 (1975)), *aff'd* 189 Misc. 2d 243, 244 (App. Term 2001) ("Although administrative agencies have discretion to carry out their legislative mandates, they have no discretion to ignore those mandates or to alter the substantive standards set by the Legislature.").

### 3.   The Hyde Defendants' Conduct Unreasonably Interferes With A Public Right

The Hyde Defendants argue that to establish unreasonable conduct the City must show that "the gravity of the harm of the action outweigh[s] the utility of the actor's conduct," *Hyde Opp*. at 29 (quoting *Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co*., 2023 U.S. Dist. LEXIS 48925, *36 (Mar. 22, 2023)) by showing the harm of youth nicotine addiction to outweigh what they purport is "the public health benefits of use by adults." That ship has sailed; the City need make no such showing. The "net benefit" standard referenced by the Hyde Defendants is indeed the standard required by the Tobacco Control Act to approve the marketing of a flavored e-cigarette *See Proshansky Decl.* (*Dkt. No.* 42-1), Ex. A at JA-11 but the FDA has already applied that standard to deny the pre-market application for Hyde products. *See Proshansky Decl.* (*Dkt. No.* 42-1), Ex. A at JA-7 ("All of [Magellan's Premarketing Tobacco Authorizations] lack sufficient evidence demonstrating that your flavored [e-cigarettes] will provide a benefit to adult users that would be adequate to outweigh the risks to youth.")

The City has also shown – and the Hyde Defendants do not dispute – that the FDA has limited pre-market authorization to a handful of *tobacco-flavored* electronic cigarettes. *See Hyde Opp*. at 10.  The FDA has accepted applications for over 6.7 million e-cigarette products,  *id*. at 11 n.30, but has not granted a single marketing authorization for any non-tobacco flavored e-cigarette. *Id.* at 10.   To the contrary, the FDA has *denied* applications for over 1.24 million e-cigarette products,  *id*. at 11 n.30, including as shown above Hyde's own. The Hyde Defendants' attempts

to spin these statistics in their favor fail in the face of the reality that the FDA has not found *even one* flavored e-cigarette to provide "an added benefit for adults who smoke cigarettes—in terms of complete switch or significant smoking reduction—relative to that of tobacco-flavored products that is sufficient to outweigh the known risks to youth." *News Release, FDA, FDA Denies Marketing of Six Flavored Vuse Alto E-Cigarette Products Following Determination They Do Not Meet Public Health Standard* (Oct. 12, 2023), https://www.fda.gov/news-events/press-announcements/fda-denies-marketing-six-flavored-vuse-alto-e-cigarette-products-following-determination-they-do-not. The City need not make any showing related to net benefit because the FDA for now has spoken, resoundingly, on the issue.

So too have the New York State and City legislatures already determined that the sale of flavored e-cigarettes outweighs the utility of such products.  As acknowledged by Defendants (*Hyde Opp*. at 11-12), New York Public Health Law § 1399-mm-1(2) prohibits dealers in vapor products from "sell[ing] or offer[ing] for sale at retail in the state any flavored vapor product intended or reasonably expected to be used with or for the consumption of nicotine." [27] Ad. Code 17-715(b) likewise declares it "unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid."  A total of

---

[27] The Hyde Defendants take issue with the City's designation of their products as "intrinsically illegal," *Hyde Opp*. at 37, claiming that PHL § 1399-m-1 "allows the possession of flavored electronic cigarettes as well as their sale except at retail to individual consumers." *Hyde Opp*. at 37. The prohibition is broader than that, barring any

> vapor products dealer, or any agent or employee of a vapor
> products dealer, shall sell or offer for sale at retail in the state any
> flavored vapor product

N.Y. Pub. Health Law § 1399-mm-1. The provision thus bars "sales" and  "offers for sale at retail," not merely "retail sales to individual consumers." There in fact is no mention of "individual consumers." But the fact that exceptions can be found in one or another statutes is of no moment because when all statutes applicable to flavored e-cigarettes, including the federal statutes, there can be no legal sale of a flavored product, which makes them "intrinsically illegal."

378 jurisdictions have arrived at similar conclusions and imposed restrictions on the sale of flavored e-cigarettes. *See Am. Compl.* ¶ 54; *see also Hyde Opp.* at 5 ("[R]esearchers analyzed the effects in 7 states and 375 localities that banned flavored e-cigarette products."). The City need not repeat the work of the FDA and numerous legislatures for purposes of this motion.

The City has also provided ample evidence through declarations completely ignored by the Hyde Defendants of injuries suffered by City youth from flavored e-cigarettes. *See Morse Decl.* ¶¶ 5, 8, 9 (describing health impacts of e-cigarette use); *see generally Daniels Decl.*, *Hodgkins Decl.*, *Marais Decl.*. The Hyde Defendants argue that this evidence cannot constitute a substantial showing of unreasonableness because the "scientific consensus is that e-cigarettes are, as a category, far less harmful than cigarettes." *Hyde Opp.* at 29. First, that begs the question because it is not the applicable test – the test is "net benefit." *See Proshansky Decl.* (*Dkt. No.* 42-1), Ex. A at JA-7. Further, there is simply no law that permits the Hyde Defendants to violate the laws of multiple jurisdictions based on the academic literature, no matter how firm the consensus.

The scientific studies cited by Defendants cannot defeat the City's clear showing that that their conduct is unreasonable. Defendants' arguments were available to the New York State and City legislatures and have been made in millions of applications to the FDA, unsuccessfully. Indeed, on December 14, 2023, the FDA authorized its first seizure, in collaboration with U.S. Customs and Border Protection, of 1.4 million units of unauthorized flavored e-cigarette products "including brands such as Elf Bar, which according to the 2023 National Youth Tobacco Survey, is the most commonly used brand among youth e-cigarette users." *News Release, FDA, Joint Federal Operation Results in Seizure of More than $18 Million of Illegal E-Cigarettes* (Dec. 14,

2023).[28]   That same day, the World Health Organization (WHO) stated that "[e]-cigarettes as consumer products are not shown to be effective for quitting tobacco use at the population level," and that "[i]nstead, alarming evidence has emerged on adverse population health effects."  News Release, WHO, Urgent Action Needed to Protect Children and Prevent the Uptake of E-Cigarettes (Dec. 14, 2023), https://www.who.int/news/item/14-12-2023-urgent-action-needed-to-protect-children-and-prevent-the-uptake-of-e-cigarettes.   The WHO further stated that countries "permit[ting] the commercialization … of e-cigarettes as consumer products" should "ban[] all flavours."  *Id.*

Where the Hyde Defendants' arguments have been rejected by the New York State and City legislatures, the FDA, and the WHO, it is patently absurd to argue that they should carry the day here or question the City's substantial showing of an unreasonable interference with a public right.[29]

---

[28]   https://www.fda.gov/news-events/press-announcements/joint-federal-operation-results-seizure-more-18-million-illegal-e-cigarettes.  The Hyde Defendants are master distributors of Elf Bar. *See Proshansky Decl.* (*Dkt. No.* 42-1), Ex. G at ¶ 17.

[29] The Hyde Defendants raise irrelevant matters by asserting that "the City's memorandum contains errors related to FDA's implementation and enforcement of the FDCA and its premarket authorization requirement, including as to Magellan's products. *Hyde Opp*. at 18 n.36 (disputing the City's characterization of the FDA's marketing denial orders for Hyde e-cigarettes). The City concedes that the Hyde Defendants have far more experience than the City with FDA's practices by which Hyde products are barred from the marketplace.  But  the Hyde Defendants offer nothing to explain that the technical practices by which FDA denies marketing authorization have any bearing here, especially where the continued availability of Hyde products indicates that the Hyde Defendants ignore the effect of those practices anyway. The only FDA pronouncements of significance are that "[u]nless and until Magellan shows that its products meet the statutory public health standard, they are subject to Congress's decision to make them unlawful, …" *Defs.*' *Surreply in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj*., *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Dec. 9, 2022)*, Dkt. No*. 30 at 2  and that "[a]s of July 13, 2022, it is unlawful to market non-tobacco nicotine products like Magellan's without FDA authorization." *Defs.' Response in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj*., *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Nov. 25, 2022), *Dkt. No*. 19 at 8.  The City relies on the exhibits cited in its moving papers for a complete and accurate description of their contents.

## II.  THE BALANCE OF EQUITIES STRONGLY FAVORS THE CITY

The Hyde Defendants do not address or even cite well-settled law that mandates rejecting their assertion that the balance of equities favors them.  *Hyde Opp.* at 46.  To begin with, Second Circuit precedents provide that a plaintiff "may be able to show that a preliminary injunction is warranted on the strength of [irreparable harm and success on the merits] alone." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 n.38 (2d Cir. 2020). The City has likely accomplished that here by showing the Hyde Defendants' numerous statutory violations. Once a government has "successfully borne the considerable burden of establishing a violation of law…," all doubts as to the remedy are to be resolved in its favor." *F. Hoffmann-La Roche Ltd v. Empagran S.A.*, 542 U.S. 155, 170-71 (2004); *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015).  None of the Hyde Defendants' arguments respecting the balance of equities (*Hyde Opp.* at 37) are persuasive, especially because of the heavier burden they bear: that "The public interest … does not favor rewarding parties that eschew federal regulatory requirements" *Ex. G* at 28. The FDA itself points out that

> The public interest also weighs in favor of heeding Congress's unambiguous determination that non-tobacco nicotine products cannot be lawfully marketed unless and until they receive marketing authorization from FDA.

---

The Hyde Defendants complain of the City's statement that [the] FDA has 'banned flavored e-cigarette pods,'" and contend that the FDA has never enacted a tobacco product standard regulation banning flavored e-cigarettes as would be required under 21 U.S.C. § 387g(a)(3)-(4). *Hyde Opp.*. at 20-21. But as the City pointed out in opposing the Hyde Defendants' Motion to Dismiss, the FDA indeed has in effect "*banned"* all flavored e-cigarettes. Tobacco-flavored e-cigarettes are the only e-cigarettes to have obtained the FDA pre-market authorization required under the Tobacco Control Act. *See* 21 U.S.C. § 387(g)(a)(1)-(2); *see also Am. Compl*. ¶ 37. No flavored e-cigarette has obtained authorization; every flavored e-cigarette is an "unadulterated product," prohibited from "introduction or delivery for introduction into interstate commerce." *See* 21 U.S.C. 331(a), 387(6)(A).  The City's shorthand use of "banned" to mean that no flavored e-cigarette has obtained authorization and accordingly is an "unadulterated product," prohibited from "introduction or delivery for introduction into interstate commerce" (s*ee* 21 U.S.C. 331(a), 387(6)(A)) is sufficiently precise for present purposes.

*See Defs*.' *Surreply in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj*., *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Dec. 9, 2022)*, Dkt. No*. 30 at 3. The City nonetheless addresses the equities and does so under the standard that a government's request for a preliminary injunction includes consideration of the public interest. *Rural & Migrant Ministry v. United States EPA*, 565 F. Supp. 3d 578 (S.D.N.Y. 2021) (citing  *N.Y. v. DHS*, 969 F.3d at 86).

A. **The Hyde Defendants Cannot Suffer Irreparable Harm**

The Hyde Defendants assert they will sustain irreparable harm in the belief that sovereign immunity would bar recovery of damages from the City if the injunction were found to be wrongfully-issued. *Hyde Opp.* at 38.  Beyond the speculative nature and lack of immediacy that bars irreparable harm in that form, *see, e.g*., *Levola v. Fischer*, 403 F. App'x 564, 565 (2d Cir. 2010) (dismissing complaint for lack of allegations of immediate danger of irreparable harm); *Levinson v. Cello Music & Film Sys*., No. 98-9630, 1999 U.S. App. LEXIS 26871, at \*5 (2d Cir. Oct. 22, 1999) (vacating injunction where injury is remote and speculative, not actual and imminent), even the most superficial search through *Lexis* and *Westlaw* will show (and the Court can surely draw from its own experience), that far from possessing sovereign immunity, the City has been successfully sued for money damages on thousands of occasions. [e.g., cite]

Second, the Hyde Defendants' argument has again been anticipated and rebutted by the FDA; even if an injunction were later overturned, a court would likely provide no relief in damages:

> Congress has thus already determined that it is in the public interest to prohibit the marketing of a new tobacco product unless FDA finds that marketing the product would be appropriate for the protection of the public health. [Magellan's] asserted injury is the inability to profit from the marketing of such products in defiance of this Congressional
> judgment, ….

*Defs.' Response in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj.*, *Vapor Train 2 LLC*, No. 6:22-cv-00429 (E.D. Tex. Nov. 25, 2022), *Dkt. No.* 19 at 16.  Likewise

> …New York has long recognized the fundamental equitable principle,  that "no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime."

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 119 (1991) (citing *Riggs* v. *Palmer*, 115 N.Y. 506, 511-512 (1889)) (citations omitted); *accord 100,000 Victim Families Note Holders Owners of Sec. in Towers Fin. Corp. v. Schulte Roth & Zable*, 108 F. Supp. 2d 252 (S.D.N.Y. 2000) (plaintiff cannot sue to recover damages that his illegal actions brought about); *Alami v. Volkswagen of Am., Inc.*, 97 N.Y.2d 281, 286 (2002) (same).

If the Hyde Defendants believed in good faith that they would sustain compensable irreparable harm from an injunction, they would have sought the posting of a bond, but they did not.[30]

## III. DISCOVERY

The Hyde Defendants rely on a host of self-serving assertions in their opposition, all of which is information uniquely within the possession of the Hyde Defendants.[31]  Although the City

---

[30] The Hyde Defendants' offer a citation to *Axt v. Hyde Park Police Dep't*, 162 A.D.3d 728, 729 (2d Dept. 2018) (*Hyde Opp.* at 38) as insulating the City from a damages claim but the  case has no relevance here. *Axt* does no more than reference the rule in *H. R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160 (1928) known to every first-year torts student as barring the tort liability of a municipality to members of the general public absent a special relationship created by a course of dealing. That rule forecloses municipal tort liability to random members of the public caused by the municipality's failure to provide a public service, such as fire protection.  If the City were to obtain an injunction against the Hyde Defendants that is later declared to be wrongful those facts are precisely of the type from which a special duty would arise, permitting the recovery of damages.

[31] Including but not limited to that

> a. Magellan purchases electronic cigarette products from both US and foreign manufacturers and holds in inventory of those products at its warehouses in Buffalo. b. Magellan does not sell

35

believes the injunctive relief sought here can issue without further factual development, to the extent additional facts are deemed useful the City respectfully reserves the right to move for expedited, targeted discovery in advance of a hearing on the preliminary injunction. *See 3M Co. v. HSBC Bank USA, NA*, No. 16-5984, 2016 U.S. Dist. LEXIS 189249 (S.D.N.Y. Oct. 20, 2016) (granting expedited discovery related to plaintiff's motion for a preliminary injunction); *see also In re Madoff*, 590 B.R. 200, 207 (Bankr. S.D.N.Y. 2018) ("The Federal Rules Advisory Committee suggests that expedited discovery could be proper in connection with 'requests for a preliminary injunction or motions challenging personal jurisdiction.'") (quoting Fed. R. Civ. P. 26 Advisory Committee notes); *Russell Reynolds Assocs., Inc. v. Usina*, 2023 U.S. Dist. LEXIS 79149, at *2 (S.D.N.Y. May 5, 2023) ("Requests for expedited discovery are typically appropriate where they 'would better enable the court to judge the parties' interests and respective [chances] for success on the merits at a preliminary injunction hearing.'").

---

any e-cigarette products or e-liquids to any person other than Demand Vape. c. Demand Vape stores its inventory in Buffalo, sells from Buffalo, and ships from Buffalo. d. Demand Vape requires that, before any customer that is a retailer can place an order, the customer must provide Demand Vape with a copy of its active New York State vapor product dealer's registration certificate.  e. Demand Vape engages in the business-to-business sale of electronic cigarettes and e-liquids. It has not engaged in the sale to consumers or customers with residential addresses since 2020.  f. Demand Vape operates the website hydedisposables.com for informational purposes only and no sales are processed through that site.  g. Demand Vape invoices must be paid before Demand Vape will ship products to a consumer. h. Glauser does not personally engage in the sale of e-cigarette or e-liquid products, which is handled by Demand Vape's account representatives, and has never personally negotiated for or directed any specific sales of e-cigarette products to a customer of Demand Vape in NYC. i. Glauser's LLC, Firmitas, has no involvement in the sale or offer for sale of any e-liquid or other e-cigarette products to any customers in NYC. j. Hashagen has never had involvement in the activities of either Magellan or Demand Vape. k. Neither Magellan nor Demand Vape has ever sold any e-cigarette products to Yolo Smoke City, Convenience of Columbus, Morris Park Convenience Store, Garden Fresh Gourmet Deli, Hookah 2 Plus, LA Convenience Store, or XXX Vape Shop. l. Empire Vape was never a customer of Magellan or Demand Vape. m. Demand Vape instituted a company-wide policy prohibiting selling flavored e-cigarettes to any retailers based in NYC.

## <u>CONCLUSION</u>

For all of the reasons set forth above, the City of New York respectfully requests that the

Court issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining the

Hyde Defendants from selling and delivering flavored e-cigarettes in or into New York City.

Dated:          New York, New York
                December 29, 2023

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
    City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 20-099
New York, New York 10007
(212) 356-2032

By: _____

Eric Proshansky
Elizabeth Slater
Aatif Iqbal
Alexandra Jung
Assistant Corporation Counsels