**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE CITY OF NEW YORK,

Plaintiff,

-against-

MAGELLAN TECHNOLOGY, INC., ECTO WORLD, LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER, DONALD HASHAGEN, MAHANT KRUPA 56 LLC d/b/a Empire Vape Distributors, NIKUNJ PATEL, DEVANG KOYA, STAR VAPE CORP., NABIL HASSEN, DORBES LLC, d/b/a Hydevapeofficial.com, CHRISTIAN A. SMITH,

Defendants.

Case No. 23-cv-5880-LLS-OTW

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION BY MAHANT KRUPA 56 LLC, NIKUNJ PATEL & DEVANG KOYA**

Paul M. Eckles
Barry S. Zone
Philippe A. Zimmerman
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel. (212) 554-7800
Fax (212) 554-7700

*Attorneys for Defendants Mahant Krupa 56 LLC, Nikung Patel & Devang Koya*

# TABLE OF CONTENTS


| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| LEGAL STANDARD | 5 |
| ARGUMENT | 8 |
| I. THE CITY HAS FAILED TO STATE A CLAIM OR A BASIS FOR FEDERAL JURISDICTION | 8 |
| II. THE CITY HAS NOT SHOWN A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS | 9 |
| A. The City Has Not Shown a Clear or Substantial Likelihood of Success as to Administrative Code § 17-715 | 9 |
| B. The City Has Not Shown a Clear or Substantial Likelihood of Success on its Public Nuisance Claim | 11 |
| III. THE CITY HAS NOT SHOWN EMPIRE IS LIKELY TO CONTINUE ANY WRONGFUL CONDUCT | 15 |
| IV. THE CITY'S PROPOSED INJUNCTION IS NOT NARROWLY TAILORED TO PREVENT ANY PURPORTED IRREPARABLE HARM | 15 |
| V. THE BALANCE OF EQUITIES WEIGHS AGAINST AN INJUNCTION | 16 |
| VI. THERE IS NO BASIS FOR AN INJUNCTION AGAINST DEVANG KOYA OR NIKUNJ PATEL | 17 |
| CONCLUSION | 18 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
247 F.R.D. 296 (E.D.N.Y. 2007) ........ 11, 12, 13

*City of N.Y. v. Beam Bike Corp.*,
206 A.D. 3d (1st Dep't 2022) ........ 6

*City of New York v. Golden Feather Smoke Shop, Inc.*,
597 F.3d 115 (2d Cir. 2010)........ 5, 8

*City of New York v. Gordon*,
1 F.Supp.3d 94 (S.D.N.Y. 2013)........ 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)........ 5, 15

*In re MTBE Prods. Liab. Litig.*,
725 F.3d ........ 13

*JTH Tax, LLC v. Agnant*,
62 F.4th 658 (2d Cir. 2023) ........ 6

*Munaf v. Geren*,
553 U.S. 674 (2008)........ 8

*NAACP v. AcuSport, Inc.*,
271 F. Supp. 2d 435 (E.D.N.Y. 2003) ........ 12

*SEC v. Unifund SAL*,
910 F.2d 1028 (2d Cir. 1990)........ 6

*Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,
578 F. Supp. 3d 511 (S.D.N.Y. 2022)........ 13

*Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,
No. 20-cv-10731 (LJL), 2023 U.S. Dist. LEXIS 48925 (S.D.N.Y. Mar. 22, 2023)........ 12, 13

*Vis Vires Group, Inc. v. Endonovo Therapeutics, Inc.*,
149 F. Supp. 3d 376 (S.D.N.Y. 2016)........ 8

*Waldman Pub. Corp. v. Landoll, Inc.*,
43 F.3d 775 (2d Cir. 1994)........ 15

Statutes

N.Y. Public Health Law § 1399-mm-1 ........ 11

Regulations

24 R.C.N.Y. § 28-02(b) ........ 10
R.C.N.Y. § 28-02(b) ........ passim

Other Authorities

N.Y.C. Admin. Code § 17-715 ........ 2, 3, 6, 11
N.Y.C. Admin. Code § 19-151 ........ 6

**PRELIMINARY STATEMENT**

The City's motion for a preliminary injunction is largely directed at the Magellan Defendants, which own the rights to a popular brand of flavored e-cigarettes allegedly found throughout the City and act as a master distributor of the brand. Empire is neither an owner nor a master distributor of a brand; rather, it is a local wholesaler that does not sell to the general public, sells only to licensed e-cigarette dealers, and restricts its sale of flavored e-cigarettes to retailers located outside New York State in compliance with New York State and New York City law. While the City provides evidence of violations of New York law by unlicensed businesses selling e-cigarettes in New York City, the City offers no evidence connecting Empire to any of those violations, or otherwise showing how it has been a "substantial factor" in contributing to a public nuisance, or that it has acted intentionally and unreasonably.

The equities weigh in favor of denying the exceptional relief that the City seeks as applied to the Empire Defendants. Empire has adopted protocols to ensure its business complies with New York City law. Empire complies with the rule promulgated by the City that provides local wholesalers with a safe harbor allowing for the possession of flavored e-cigarettes for the purpose of sales to businesses outside New York City. R.C.N.Y. § 28-02(b). The City now outrageously argues that its own rule adopted to provide clarity to businesses like Empire is "void." Further, the City is imprecise and inconsistent in how it characterizes the injunctive relief it seeks. Indeed, at one point, the City requests a preliminary injunction requiring Empire to either shutdown or move its business outside New York City, which is well beyond the relief it seeks in its Amended Complaint. The City seeks this extraordinary relief with no explanation of how it is narrowly tailored to mitigate the purported problem of youth e-cigarette use stemming from sales to and by illegal businesses.

.

Finally, the City seeks this extraordinary relief without even establishing a basis for federal jurisdiction. As Empire demonstrated in its Motion to Dismiss, the City's federal claims all fail on their face and, indeed, the City does not rely on its federal claims in its preliminary injunction motion. Further, without seeking leave to amend, the City now improperly seeks rely based on a new claim under the N.Y.C. Administrative Code, which is not even mentioned in its Amended Complaint.

For all of these reasons, and as demonstrated further below, the Empire Defendants respectfully request that the City's motion be denied in its entirety as to the Empire Defendants.

## BACKGROUND[1]

**New York City's Safe Harbor for NYC Wholesalers**

The City seeks an injunction pursuant to N.Y.C. Admin. Code § 17-715. When § 17-715 was first enacted in 2009, it applied to flavored tobacco products. Local Law 69 of 2009 ("L.L. 69"). L.L. 69 delegated to the Department of Health and Mental Hygiene ("the Department") the authority to promulgate regulations necessary to carry out its provisions and to provide guidance to sellers so they would have clarity on what was prohibited. *See* § 17-718 ("The commissioner of the department, the commissioner of consumer and worker protection and the commissioner of finance shall promulgate any rules as may be necessary for the purposes of carrying out the provisions of this subchapter."). The Department published a proposed rule, held a public hearing on May 4, 2010, and received written comments. Following the public notice and comment process, the Department announced it had amended its proposed rule to specifically

[1] Empire incorporates by reference the Magellan Defendants' background information regarding e-cigarette use generally, including that e-cigarettes are less harmful than combustible cigarettes and have positive public health benefits in diverting tobacco users from combustible cigarettes. ECF 80 at 2-12.

provide wholesalers located in New York City a safe harbor in connection with the sale of flavored products to customers located outside New York City:

> Two comments requested that the proposed rule be amended to clarify that sales of flavored tobacco products to wholesalers located in New York City for distribution to entities located outside the City are permissible. The Department agrees that the Local Law was not intended to impact the availability of flavored tobacco products outside the City of New York and has amended §§28-02 and 28-04 to so clarify.

https://www.nyc.gov/assets/doh/downloads/pdf/smoke/flavored-law-implementing-rules.pdf

The Department's explanation is confirmed by the fact that §§ 17-715, *et seq*., repeatedly refer to "retailer dealers," with no mention of wholesalers or distributors.

On December 16, 2019, Local Law 228 was enacted to amend N.Y.C. Admin. Code § 17-715 to ban the sale of flavored *e-cigarettes* in New York City. Local Law 228 authorized the Department to promulgate rules for its implementation. The Department thereafter published proposed amendments to Chapter 28 of Title 24 of the Rules of the City of New York, held a public hearing on July 8, 2021, and ultimately amended its rules to explicitly extend the safe harbor to wholesalers of e-cigarettes, "Flavored electronic cigarettes and flavored e-liquids may only be sold or offered for sale by wholesalers where the sale or offer of sale is made to an entity located outside the City of New York." R.C.N.Y. § 28-02(b).

In sum, the New York City Department of Health and Mental Hygiene – the very department responsible for public health issues – was tasked with promulgating rules for the implementation of § 17-715 to provide businesses clarity on what is permitted and did so. More than a decade ago, following the City's enactment of a law banning the sale of flavored tobacco products, the Department published rules for public comment, held a public hearing, and ultimately adopted rules providing New York City wholesalers a safe harbor allowing them to possess flavored products in New York City for the purpose of distribution to retailers located

outside New York City. Then, after a ban on the sale of flavored e-cigarettes, following publication and public hearing, the Department issued a rule expressly confirming that the safe harbor was applicable to e-cigarettes. Indeed, the entire purpose of R.C.N.Y. § 28-02(b) is for the City to provide businesses with clarity on what is permitted. Now, however, seeking to ignore the explicit guidance of the Department that the safe harbor is applicable to e-cigarettes, the City argues that its own rule (which has not been repealed or otherwise limited) is "void as inconsistent with the Administrative Code, which provides no exceptions for out-of-city sales." ECF 94 (City Reply Mem. In Support of PI re: Magellan at 2.)[2]

**Empire Smoke Distributors**

Mahant Krupa 56 LLC is a licensed business formed under the laws of the State of New York doing business as Empire Smoke Distributors. Empire's facility is located at 56-01 Maspeth Avenue, Queens, NY 11378. Empire sells smoking and vaping related products to licensed retailers. Empire complies with New York State and New York City law relating to the sale of e-cigarettes, including flavored e-cigarettes. Empire does not sell to end users and, as permitted under R.C.N.Y. § 28-02(b), sells flavored e-cigarettes only to businesses located outside New York State. (Koya Decl. ¶¶ 4-5, 10.) Indeed, even before this litigation was filed, Empire had in place protocols to ensure that flavored e-cigarette products are sold only to retailers located outside of New York State and to comply with relevant laws. (*Id.* ¶¶ 5, 10.) New accounts must be approved before a business can order products and Empire specifically requests that businesses confirm they have a New York City e-cigarette retail dealer license. (*Id.* ¶ 6.) Empire also requests each new customer provide its company name, store name, business address, and Tax ID number. (*Id.*) Customers with an address located in New York State are

[2] R.C.N.Y. § 28-02(b) is consistent with New York State law, which prohibits only the "retail" sale of flavored e-cigarettes. N.Y. Public Health L. § 1399-mm-1.

precluded from purchasing flavored products, including purchases made in person at Empire's warehouse. (*Id.* ¶ 7.) Any flavored products listed on Empire's website are sold only to customers located outside New York State. (*Id.*)

While the City devotes copious space to addressing other defendants' roles in the chain of supply purportedly contributing to the prevalence of flavored e-cigarettes in New York City, the allegations are irrelevant to the request for preliminary injunctive relief against Empire. Empire does not (i) own any trademarks on any brands of e-cigarettes, (ii) contract for the manufacturing of e-cigarettes, (iii) act as a master distributor of any brands of e-cigarettes, such as Hyde or Juno, (iv) sell to other wholesalers who supply New York City businesses, (v) sell flavored products to New York City customers, or (vi) market or advertise vaping products to minors.

## LEGAL STANDARD

As conceded by the City, it is only entitled to a preliminary injunction if it establishes that (i) it is likely to succeed on the merits, (ii) defendants are likely to continue their purported violations, and (iii) the equities weigh in favor of injunctive relief.

There are two additional elements, however, that the City disputes it must satisfy. First, "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). The City argues that it does not need to prove irreparable harm because it is a government plaintiff. ECF (City Mem. at 20). However, a government plaintiff is only excused from establishing irreparable harm where it seeks a "statutory injunction," such as under the Contraband Cigarette Trafficking Act. *See City of New York v. Gordon*, 1 F.Supp.3d 94 (S.D.N.Y. 2013) ("unnecessary for 'a party seeking a statutorily-sanctioned injunction to

make an additional showing of irreparable harm'") (citation omitted); *City of New York v. Golden Feather Smoke Shop, Inc*., 597 F.3d 115 (2d Cir. 2010) ("In certain circumstances, generally when the party seeks a statutory injunction, we have dispensed with the requirement of showing irreparable harm, and instead employ a presumption of irreparable harm based on a statutory violation."). The City offers no authority for the proposition that irreparable harm is not a required element for a preliminary injunction based on the non-statutory injunction sought in its motion. Not only is there clearly no basis for a statutory injunction under a common law nuisance claim, but, as demonstrated below, there is also no basis for a "statutory injunction" under N.Y.C. Admin. Code § 17-715. *Infra* 9.[3]

Second, the City disputes whether it must satisfy a heightened standard by "showing a clear or substantial likelihood of success on the merits." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023). The heightened standard applies if the plaintiff seeks either (i) an injunction that provides it substantially all the relief the plaintiff seeks in the litigation, and the relief cannot be meaningfully undone in the event that the enjoined party prevails on the merits, or (ii) a "mandatory injunction" that alters the status quo. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1040 (2d Cir. 1990).

Here, the heightened standard is clearly applicable to the City's request for emergency injunctive relief against Empire. First, the City is seeking more and broader relief in its motion than it is in the Amended Complaint. In its Amended Complaint, the City seeks to enjoin delivery and remote sales that do not comply with the PACT Act or N.Y. Pub. Hlth. L. § 1399-*ll*.

---

[3] *Cf. City of N.Y. v. Beam Bike Corp.*, 206 A.D. 3d 44 (1st Dep't 2022) (dispensing with irreparable harm requirement where City sought injunction under N.Y.C. Admin. Code § 19-151, which expressly authorizes "corporation counsel to institute any action or proceeding that may be appropriate or necessary to restrain, correct or abate a violation of this subchapter").

The injunctive relief sought in its Notion of Motion is much broader -- it requests an order enjoining defendants from *all* types of sales of flavored products or even possessing flavored products with intent to sell "to any person within the City of New York."[4]

Second, the relief described in the Memorandum in Support of the City's Motion is broader still – the City states it is seeking to "preliminarily enjoin Empire Vape – located within New York City – from continuing to sell, offering to sell, possessing with intent to sell and possessing with intent to offer for sale flavored e-cigarettes and e-liquids." ECF 50 (City Mem. at 19-20). There is no mention of limiting the relief to sales to customers located in New York City."[5] For a business located in New York City, the difference between the two articulations is of profound importance. Empire does not sell flavored products to customers located in New York State. But if the City is seeking to prohibit Empire from even *possessing* flavored products within New York City that would effectively require Empire to either *shutdown* or *move* its business outside the City. Moreover, this is based on the City now claiming that its own rule that was in place at the time this lawsuit was filed is now "void." *Supra* 4. As shown by the City in its Memorandum, it is indisputably seeking to alter the "status quo" in ways that would fundamentally alter Empire's business and could not be undone if later overturned.

Empire submits that the relief sought by the City should be limited to the relief articulated in its Notion of Motion and the additional relief evidently sought in the City's Memorandum not be considered. In any event, the City should be required to meet the

---

[4] Both the Amended Complaint and Notice of Motion also seek an injunction to abate a public nuisance but provide no notice as to what that means.

[5] Empire's suspicion that this is the City's actual goal is heightened by the fact that the Order on Consent issued against Star Vape requires it "to transport all flavored electronic cigarette, flavored e-liquid, flavored vapor product or flavored electronic nicotine delivery system or any electronic cigarette, e-liquid, vapor product or electronic nicotine delivery system using a characterizing flavor from the City to a location outside the City and for no other purpose." ECF 57.

heightened standard of a "clear or substantial likelihood of success on the merits." While Empire's conduct was clearly permitted at the time of suit under R.C.N.Y. § 28-02(b), even if it was somehow unsettled, the Second Circuit has applied the heightened standard when the legality of the defendant's conduct was unresolved at the time the lawsuit was filed. *See Golden Feather Smoke Shop, Inc.*, 597 F.3d at 121 (applying "clear or substantial" likelihood of success standard because City of New York sought to halt conduct, the legality of which was unresolved at the time the lawsuit was filed).

## ARGUMENT

### I. THE CITY HAS FAILED TO STATE A CLAIM OR A BASIS FOR FEDERAL JURISDICTION

Empire has moved to dismiss the Amended Complaint for failure to state a claim. ECF 64. Empire demonstrated in its motion that the City relies on its federal PACT Act and RICO Act claims as the basis for federal jurisdiction. But both claims fail for a multitude of reasons. Further, the City does not cite either of its federal claims in its motion for a preliminary injunction, and, in fact, relies on a new state law claim not pled in its Amended Complaint. Even as to the City's public nuisance claim – the only legal theory set forth in the Amended Complaint that the City relies upon in its motion – the City has changed its theory. The Empire Defendants respectfully suggest that the Court first address whether the City has alleged a viable claim and a basis for federal jurisdiction before considering the City's motion for a preliminary injunction. *See Vis Vires Group, Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 383-4 (S.D.N.Y. 2016) (considering whether court has subject matter jurisdiction before addressing preliminary injunction motion).[6]

[6] *See generally Munaf v. Geren*, 553 U.S. 674, 691 (2008) ("Review of a preliminary injunction is not confined to the act of granting the injunction, but extends as well to determining whether there is any

## II. THE CITY HAS NOT SHOWN A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. The City Has Not Shown a Clear or Substantial Likelihood of Success as to Administrative Code § 17-715

NYC seeks an injunction based on a purported violation of §17-715 of the New York Administrative Code. NYC's motion fails for multiple independent reasons.

First, the City has not shown a clear or substantial likelihood of success on a §17-715 claim, because it has not even attempted to state a claim based on §17-715 in its Amended Complaint. The City's Amended Complaint includes five claims (PACT Act, RICO, RICO conspiracy, N.Y. Pub. Health Law, public nuisance), but does not even attempt to state a claim under N.Y. Admin. Code §17-715. Nor has the City moved to amend its complaint a second time to add such a claim. For that reason alone, the City's motion should be denied.

Second, there is a good reason the City did not attempt to plead a violation of N.Y. Admin. Code §17-715 -- there is no statutory basis for a claim under §17-715, which instead is to be enforced through the City's own administrative hearing process. In the City's Administrative Code, §17-715 falls under Subchapter 2 ["Regulation of the Sale of Flavored Tobacco Products, Flavored Electronic Cigarettes and Flavored E-liquid, and Regulation of Age of Entry to Non-Tobacco Hookah Establishments."] of Chapter 7 ["Regulation of Tobacco Products"]. Subchapter 2 addresses "Enforcement" in §17-717 and has a detailed description of how City departments "shall enforce the provisions of this subchapter" through "administrative trials and hearings." There is no mention of the City having the right to seek enforcement through proceedings in court. Conversely, Subchapter 1, which addresses other aspects of tobacco sales and deliveries, contains a provision specifically authorizing the City to seek injunctive relief.

---

insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it." (internal quotation marks, brackets, and citation omitted)).

§17-710(d) ("Whenever any person has engaged in any acts or practices which constitute a violation of any provision of this subchapter . . . the city may make application to a court of competent jurisdiction for any order enjoining such acts or practices and for an order granting a temporary or permanent injunction, restraining order or other order enjoining such acts or practices."). The case cited by NYC in which injunctive relief was awarded for a violation of the Administrative Code was under Subchapter 1 and specifically cited §17-710(d), as the basis for such a remedy. *See City of New York v. Artisan Vapor Franchise* LLC, No. 19-CV-5693 (E.D.N.Y. Nov. 2, 2020). The absence of a corresponding provision in Subchapter 2 demonstrates that the relief the City is seeking is beyond what was authorized in the NYC Administrative Code.

Third, as discussed above, a rule adopted by the City's Department of Health and Mental Hygiene to interpret and implement §17-715 specifically provides that flavored electronic cigarettes may be "sold or offered for sale by wholesalers where the sale or offer for sale is made to an entity located outside the City." 24 R.C.N.Y. § 28-02(b). As demonstrated in Mr. Koya's Declaration, that is exactly how Empire operates its business. Empire limits its sale of flavored e-cigarettes to retailers located outside New York State. (Koya Decl. ¶ 5, 7, 10.)

Fourth, there is a complete failure of proof as to Empire. The City cites a presumption regarding possession of a certain quantity of electronic cigarettes but that is applicable to "an electronic cigarette retail dealer," which is consistent with the fact that NYC has made the decision to exempt NYC wholesalers who sell only to retailers outside NYC. There is no evidence in the City's Motion demonstrating that Empire is selling flavored vape products to NYC customers in violation of § 17-715. In contrast to what was presented with respect to some other defendants, the City does not provide any evidence showing that it purchased flavored e-

cigarettes from Empire's website. This is because Empire has protocols in place to prohibit sales that would violate New York State and New York City law.

### B. The City Has Not Shown a Clear or Substantial Likelihood of Success on its Public Nuisance Claim.

The City's newly minted public nuisance theory is different than the nuisance theory in its Amended Complaint, which was predicated on defendants' purported violation of N.Y. Public Health Law § 1399-mm-1. Empire demonstrated in its motion to dismiss the Amended Complaint that the City does not have standing to assert a violation of § 1399-mm-1. ECF 64 at 17-18. Implicitly acknowledging the persuasiveness of Empire's argument on its motion to dismiss, the City does not mention § 1399-mm-1 in its motion for a preliminary injunction. Instead, the City tries to rely on a purported violation of N.Y.C. Admin. Code § 17-715.

Similarly, the City has repeatedly changed the harm that it is seeking to abate. The Amended Complaint seeks to abate a nuisance stemming from e-cigarette waste improperly disposed of in City parks. Confronted with Empire's motion to dismiss showing that the purported nuisance does not support the City's claim, the City pivoted in its opposition to claim that the harm stems from the Sheriff needing to seize and dispose of flavored e-cigarettes from New York City retailers. Now, it argues on this motion that the use of e-cigarettes and e-liquids by minors endangers "the health of the City's youth." ECF 50 (City Mem. at 26).[7] The City's new argument is no more persuasive that its now discarded prior arguments).

#### 1. The City Has Not Shown Empire Intended to Cause a Nuisance or Acted Unreasonably.

As demonstrated above, the City has not proven any violation of § 17-715 and hence

---

[7] Empire incorporates by reference the Magellan Defendants' arguments regarding the public health benefits of use of e-cigarettes by those who would otherwise smoke combustible cigarettes. ECF 80 (Mag. Opp. at 38-40).

cannot rely on a nuisance *per se* theory. The City cites *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296 (E.D.N.Y. 2007), for the proposition that proof of intentional conduct is not required when the purported nuisance is public, rather than private. ECF 94 (City Reply re Magellan at 22). But the court in *A-1 Jewelry & Pawn, Inc*. actually found that "the law of public compared to private nuisances is unclear and because the New York Court of Appeals has never spoken definitively on whether traditional fault concepts are applicable in public nuisance suits, the concepts of intentionality and negligence require examination." 247 F.R.D. at 344. Subsequent cases have concluded that a showing of intentional wrongdoing is required. *See, e.g., Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, No. 20-cv-10731 (LJL), 2023 WL 2601161, at *10 (S.D.N.Y. Mar. 22, 2023) ("Under New York law, a defendant who does not owe a duty to another and who does not engage in otherwise tortious conduct can still be liable for the harm caused to third parties if the defendant's actions were intentional and unreasonable."). Significantly, the *Suez Water* court found that when a plaintiff is relying upon activity by a downstream actor creating the actual nuisance, the requisite intent requires continual sales to the downstream party after acquiring knowledge that the person was engaging in wrongful behavior creating a nuisance. *Id.* at 9-10. "A defendant acts intentionally if it acts or fails to act with the purpose of interfering with a public right, knew that such interference was resulting or was substantially certain to result from is conduct, or became aware that its conduct was causing such interference and nevertheless continued it." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 448 (E.D.N.Y. 2003).

Here, the City offers no evidence that Empire's sales have led to use of flavored e-cigarettes by minors, much less that Empire consciously sells to businesses that it knows are illegally selling e-cigarettes to minors. Empire does not sell e-cigarettes to unlicensed

businesses, and does not sell flavored e-cigarettes to New York State businesses. (Koya Decl. ¶¶ 4, 5, 7, 10.) While against other defendants there is at least a theory for liability (e.g., owning the trademark to the brands found in New York City or acting as the master distributor of the brands found in New York City), the City offers no explanation as to how Empire could be a substantial factor in the purported prevalent use of flavored e-cigarettes in New York City by minors, much less evidence that it acted unreasonably and with a purpose of having its products illegally resold to minors.

**2. The City Has Not Proven Causation.**

The City admits that it must prove causation. ECF 50 (City Mem. at 28). The City cites authority addressing the "substantial participation" standard applicable to "an upstream manufacturer introducing a toxic substance into the stream of commerce." ECF 50 (City Mem. at 29-30). Under this standard, "substantial means that the act or omission had such an effect in producing the injury that reasonable people would regard it as a cause of the injury." *Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 539 (S.D.N.Y. 2022) (quoting *In re MTBE Prods. Liab. Litig.*, 725 F.3d at 116). The cause cannot be "slight or trivial." (*Id.*) Relevant factors in applying the test include (1) the number of contributing factors for which the defendant was not responsible and the effect which each has in producing it, (2) whether the defendant contributed continuously up to the time of harm, or whether the "situation was acted upon by other forces for which the defendant is not responsible," and (3) the lapse of time since the defendant's contribution. *Suez Water*, 2023 WL 2601161, at *6.

Here, in arguing that it has satisfied the "substantial factor" test, the City's focus is again overwhelmingly on the Magellan/Hyde defendants. As to Empire, it offers only the conclusory assertion that "Empire Vape distributes the products to retail stores in the City, from where they are sold to the public." ECF 50 (City Mem. at 31.) The City provides no evidence that Empire

is contributing to a public nuisance or that it is distributing flavored e-cigarettes to retail stores in the City. As to the "number of contributing factors for which the defendant was not responsible and the effect which each has in producing it," the City acknowledges in its motion that there is a problem with unlicensed, illegal retailers engaged in sales to minors. The City's motion claims it has issued approximately 7,400 summonses for retailers selling without the required license, and issued approximately 304 summonses for selling to minors, of which 214 occurred at unlicensed businesses. ECF 50 (City Mem. at 6). Mr. Koya's Declaration demonstrates that Empire does not sell to unlicensed businesses. (Koya Decl. ¶¶ 5-7.)

In addition to failing to show that Empire ever materially contributed to a public nuisance, the City provides no evidence of any recent or ongoing sales of flavored e-cigarettes by Empire into New York City. The City presents no evidence of an ongoing contribution by Empire to a public nuisance. Instead, the City offers only that on March 23, 2021 – i.e., over two years before the lawsuit was filed – an inspection of Empire's facility revealed an invoice addressed to a NYC retailer. The City offers no evidence refuting the fact that Empire now has in place protocols to prevent both sales to unlicensed businesses and sales of flavored e-cigarettes to New York State businesses. The City provides no evidence that Empire has even listed flavored e-cigarettes on its website after June 19, 2023. ECF 50 (City Mem. at 17.) Empire's purported involvement in contributing to the use of e-cigarettes by minors in New York City can, at best, be characterized as theoretical, indirect, and unintentional.

For the foregoing reasons, the City has failed to show a substantial likelihood of success on its public nuisance claim as to the Empire Defendants.

## III. THE CITY HAS NOT SHOWN EMPIRE IS LIKELY TO CONTINUE ANY WRONGFUL CONDUCT

The City admits that issuance of an injunction requires proof of a "reasonable likelihood that the wrong will be repeated." ECF 50 (City Mem. at 31.) As the City admits, there are four requirements in determining that future violations are likely: (1) the degree of scienter involved, (2) the recurring nature of the activity, (3) the defendant's appreciation of the wrongdoing, and (4) the defendant's opportunities to commit future violations. (*Id.* at 33.)

The City cannot satisfy any of these elements as to Empire. As to scienter, Empire does not sell to end users, much less minors, and has protocols in place to prevent unauthorized sales to businesses in New York State. Moreover, Empire has been operating under a safe harbor provision adopted by the City itself that allows wholesalers located in the City to sell to businesses outside the City. *Supra* 3-4. This is also consistent with New York State law, which prohibits only the "retail" sale of flavored e-cigarettes. N.Y. Public Health L. § 1399-mm-1. As to recurring activity, the City cannot point to any purported shipments of flavored e-cigarettes into New York City since March 2021, and Empire has protocols in place now to prevent such shipments. As to appreciation of wrongdoing and opportunities to commit future violations, the City has not demonstrated any reason to believe that Empire does not take its legal obligations seriously.

## IV. THE CITY'S PROPOSED INJUNCTION IS NOT NARROWLY TAILORED TO PREVENT ANY PURPORTED IRREPARABLE HARM

After arguing incorrectly that it is exempt from the irreparable harm requirement, the City argues that a threat to public health is "quintessentially irreparable harm." ECF 50 (City Mem. at 21). "To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to

resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). Further, any "[i]njunctive relief should be narrowly tailored to fit specific legal violations," and "should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc*., 43 F.3d 775, 785 (2d Cir. 1994); *see also Faiveley Transp. Malmo AB*, v. Wabtec Corp., 559 F.3d 110, 119 (2d Cir. 2009).

Here, the City has neither identified an imminent, irreparable harm, nor proposed an injunction narrowly tailored to remedy the purported harm. This lawsuit represents more of a broadside against the e-cigarette industry than an attempt to halt any sort of imminent injury. Indeed, the fact that the City has been so imprecise and inconsistent in articulating the relief it is seeking is indicative of the fact that the proposed injunction has little actual connection to the harm being alleged. Empire does not sell flavored e-cigarettes to New York State customers. An injunction requiring it to move its business outside New York City would be punitive and impose unnecessary burdens on Empire's lawful business that are completely unrelated to the purported harm of unlicensed businesses selling flavored e-cigarettes to minors.

**V. THE BALANCE OF EQUITIES WEIGHS AGAINST AN INJUNCTION**

As the moving party, the City has the burden of proving that the public interest and balance of equities weigh in favor of granting an injunction against Empire. It has utterly failed to do so as against the Empire Defendants. Empire has been operating its business lawfully pursuant to the City's own rule allowing the sale of flavored e-cigarettes to businesses located outside the City. R.C.N.Y. § 28-02(b). Empire's conduct is also consistent with New York State law, which prohibits only the "retail" sale of flavored e-cigarettes. N.Y. Public Health L. § 1399-mm-1. Empire also has protocols in place to prevent sales to end users, including minors, as well as unlicensed businesses. Further, the injunction would have no impact on the purported problem of youth e-cigarette use. Empire is not the master distributor of any of these products

and obviously other companies are illegally supplying unlicensed businesses, which are in turn illegally selling e-cigarettes to minors. While the requested injunction would have no impact on the purported problem, it would have a devastating impact on Empire's business. (Koya Decl. ¶ 10.) If the City is seeking to require Empire to transport all flavored e-cigarettes outside New York City, the "preliminary" injunction would essentially force Empire either to move its business or shutdown. (*Id.*)

## VI. THERE IS NO BASIS FOR AN INJUNCTION AGAINST DEVANG KOYA OR NIKUNJ PATEL

At a bare minimum, there is no basis for an injunction against Mr. Koya or Mr. Patel. The City seeks an injunction against them based on the argument that corporate officers who control corporate conduct and direct wrongful conduct can be held personally liable for the torts they direct. Of course, that is a limited exception to the rule that individuals are generally shielded from personal liability when doing business through a limited liability company.

Here, the evidence against Mr. Koya and Mr. Patel is non-existent. There is a passing reference to them in the City's memorandum -- that Empire is "owned and controlled at least in part by defendants Nikung Patel and Devang Koya." ECF 50 (City Mem. at 16.) There are no allegations whatsoever regarding their personal involvement in any purported tortious conduct, much less evidence sufficient to meet the City's burden to justify a preliminary injunction. As such, there is a clear failure of proof by the City related to its request for an injunction against Mr. Koya and Mr. Patel.

**CONCLUSION**

For the foregoing reasons, the Empire Defendants respectfully request that the Court deny the City's motion for a preliminary injunction as to Empire, Nikung Patel, and Devang Koya.

Dated: January 17, 2024
New York, New York

Respectfully Submitted,

MOSES & SINGER LLP

/s/ Paul M. Eckles

Paul M. Eckles
Barry S. Zone
Philippe A. Zimmerman
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800
peckles@mosessinger.com

*Attorneys for Defendants Mahant Krupa 56 LLC, Nikunj Patel & Devang Koya*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January 2024, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.

_/s/ Paul M. Eckles___