UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THE CITY OF NEW YORK,

                        Plaintiff,

           -against-

MAGELLAN TECHNOLOGY, INC., ECTO WORLD, LLC, d/b/a Empire, MATTHEW J. GLAUSER, DONALD HASHAGEN, MAHANT KRUPA 56 LLC d/b/a Empire Vape Distributors, NIKUNJ PATEL, DEVANG KOYA, STAR VAPE CORP., NABIL HASSEN, DORBES, LLC, d/b/a Empirevapeofficial.com, CHRISTIAN A. SMITH,

                    Defendants.

------------------------------------------------------------------------ x

Civil Action No. 23-5880 (LLS)

**REPLY MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK
IN SUPPORT OF A PRELIMINARY INJUNCTION**

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
 City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STANDARD OF REVIEW ................................................................................. 5

ADDITIONAL FACTS....................................................................................... 6

ARGUMENT

    I.    THE CITY NEED NOT BUT HAS SHOWN A
           SUBSTANTIAL LIKELIHOOD OF SUCCESS ON
           THE MERITS ......................................................................7

           A.  The Empire Defendants' Conduct Is to be Addressed
               As A Nuisance Per Se ...................................................7

           B.  R.C.N.Y § 28.02 (b)(1)) of the Rules of the City of
               New York Is Preempted by City and Federal Law
               and Is No Safe Harbor...................................................8

               1.  R.C.N.Y § 28.02 (b)(1) is Inconsistent With and
                    Hence Preempted By the City Administrative
                    Code ........................................................................8

               2.  R.C.N.Y § 28.02 (b)(1) Is Preempted By The
                    Tobacco Control Act………………………….............................11

               3.  R.C.N.Y § 28.02 (b)(1) Is Preempted Under
                    Conventional Preemption Principles .....................16

           C.  The Corporation Counsel Has Standing To Bring
               Claims Under Administrative Code § 17-715 For An
               Injunction....................................................................17

           D.  The City Need Not, But Has, Shown Irreparable
               Harm............................................................................19

           E.  The City Need Not, But Has, Shown Intentional
               Conduct.......................................................................24

    II.   THE BALANCE OF EQUITIES STRONGLY
           FAVORS THE CITY .......................................................25

    III.  EXPEDITED DISCOVERY MAY BE WARRANTED................................26

**Page**

CONCLUSION ........................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                                **Pages**

*23-34 94th St. Grocery Corp. v. N.Y. City Bd. of Health*,
685 F.3d 174 (2d Cir. 2012) ........................................................................ 11

*3M Co. v. HSBC Bank USA, NA*,
No. 16-5984, 2016 U.S. Dist. LEXIS 189249
(S.D.N.Y. Oct. 20, 2016) ............................................................................ 26

*Allstate Ins. Co. v. Drumheller*,
185 F. App'x 152 (3d Cir. 2006)................................................................... 10

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ...................................................................................... 12

*Ass'n of Int'l. Auto. Mfrs., Inc. v. Abrams*,
84 F.3d 602 (2d Cir. 1996)........................................................................... 12

*Broecker v. N.Y.C. Dep't of Educ.*,
585 F. Supp. 3d 299 (E.D.N.Y. 2022)........................................................... 20

*Cal. River Watch v. City of Vacaville*,
14 F.4th 1076 (9th Cir. 2021) ..................................................................... 10

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
247 F.R.D. 296 (E.D.N.Y. 2007).................................................................... 7

*City of N.Y. v. Chavez*,
2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012) ........................... 18

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*,
597 F.3d 115 (2d Cir. 2010) ........................................................................ 19

*City of N.Y. v. Lacroix*,
2022 N.Y. Misc. LEXIS 980 (Sup. Ct. N.Y. Co.) ...................................... 22

*City of N.Y. v. Metrobutler LLC*,
2022 N.Y. Misc. LEXIS 5535
(Sup. Ct. Sep. 27, 2022)............................................................................... 22

*City of N.Y. v. Milhelm Attea & Bros., Inc.*,
550 F. Supp. 2d 332 (E.D.N.Y. 2008).......................................................... 18

*City of N.Y. v. Nappi*,
2021 U.S. Dist. LEXIS 238140
(S.D.N.Y. Dec. 10, 2021).............................................................................. 23

**Cases**                                                                                         **Pages**

*City of New York v. 2465 Grand Concourse Prop., Inc.*
   2016 N.Y. Misc. LEXIS 17675
   (Sup. Ct. Bx Co.) ...................................................................................... 20-21

*City of New York v 330 Cont. LLC,*
   60 AD3d 226 (1st Dept 2009) ............................................................... 19

*City of New York v. Golden Feather Smoke Shop,*
   597 F.3d 115 (2d Cir. 2010) ...................................................... 5, 19, 20

*Concourse Rehab. & Nursing Ctr. Inc. v. Whalen,*
   249 F.3d 136 (2d Cir. 2001) ............................................................. 15-16

*CSX Transp. Inc. v. Easterwood,*
   507 U.S. 658 (1993) ........................................................................... 11-12

*EPA v. Envtl. Waste Control,*
   917 F.2d 327, 332 (7th Cir. 1990) ......................................................... 26

*F. Hoffmann-La Roche Ltd v. Empagran S.A.,*
   542 U.S. 155 (2004) ................................................................................ 25

*Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,*
   458 U.S. 141 (1982) ............................................................................ 15, 16

*Ford v. Mabus,*
   629 F.3d 198 (D.C. Cir. 2010) ............................................................... 10

*Freightliner Corp. v. Myrick,*
   514 U.S. 280 (1995) ................................................................................ 15

*Golden Krust Patties, Inc. v. Bullock,*
   957 F. Supp. 2d 186 (E.D.N.Y. 2013) ................................................... 26

*Johnson v. City of N.Y.,*
   109 A.D. 821 (2d Dept. 1905) ............................................................... 24

*Klay v. United Healthgroup, Inc.,*
   376 F.3d 1092, 1098 (11th Cir. 2004) .................................................. 20

*Lost Lake Holdings Ltd. Liab. Co. v. Town of Forestburgh,*
   2023 U.S. Dist. LEXIS 230517 (S.D.N.Y. Dec. 28, 2023) ................... 19

*Matter of Jones v Berman,*
   37 N.Y.2d 42, 53 (1975),
   *aff'd* 189 Misc. 2d 243, 244 (App. Term 2001) ............................... 10-11

**Cases**                                                                                                    **Pages**

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
    497 F. Supp. 3d ..................................................................................... 25

*In re Madoff*,
    590 B.R. 200 (Bankr. S.D.N.Y. 2018) ..................................................... 26

*NAACP v. AcuSport, Inc.*,
    271 F. Supp. 2d 435 (E.D.N.Y. 2003) ..................................................... 24

*Neth. Ins. Co. v. Macomb Cmty. Unit Sch. Dist. No. 185*,
    8 F.4th 505 (7th Cir. 2021) ..................................................................... 10

*New York City v. Arlene M. Tropp*,
    2023 NYLJ LEXIS 661
    (Sup. Ct. Kings Co.) ............................................................................... 22

*New York v. BB's Corner, Inc.*,
    2012 U.S. Dist. LEXIS 88542
    (S.D.N.Y. June 25, 2012) ...................................................................5, 23

*New York v. Shore Realty Corp.*,
    759 F.2d 1032 (2d Cir. 1985) ..............................................................7, 25

*New York v. United States Dep't of Homeland Sec.*,
    969 F.3d 42 (2d Cir. 2020) ..................................................................... 25

*P&G v. Ultreo, Inc.*,
    574 F. Supp. 2d 339 (S.D.N.Y. 2008) ..................................................... 23

*People v. Balmuth*,
    178 Misc. 2d 958 (Crim. Ct. 1998) ......................................................... 10

*Pinter v. City of N.Y.*,
    710 F. Supp. 2d 408 (S.D.N.Y. 2010) ..................................................... 21

*R.J. Reynolds Tobacco Co. v. Cty. of L.A.*,
    29 F.4th 542 (9th Cir. 2022) ..............................................................12, 13

*Russell Reynolds Assocs., Inc. v. Usina*,
    2023 U.S. Dist. LEXIS 79149
    (S.D.N.Y. May 5, 2023) ........................................................................... 26

*SEC v. Management Dynamics, Inc.*,
    515 F.2d 801 (2d Cir. 1975) ................................................................... 19

**Cases**                                                                                       **Pages**

*Sorenson v. Newark Star Ledger*,
    2004 U.S. Dist. LEXIS 14781
    (S.D.N.Y. July 30, 2004) ............................................................................... 24

*State v Fermenta ASC Corp.*,
    238 A.D.2d 400 (2d Dept),
    *lv denied* 90 N.Y.2d 810 (1997) ................................................................. 24

*Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,
    2023 U.S. Dist. LEXIS 48925
    (S.D.N.Y. Mar. 22, 2023) ............................................................................. 24

*U.S. Smokeless Tobacco Mfg. Co. LLC v. City of N.Y.*,
    708 F.3d 428 (2d Cir. 2013) ............................................................. 12, 13, 16

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015) ......................................................................... 25

*United States v. Ballistrea*,
    101 F.3d 827 (2d Cir. 1996) ......................................................................... 10

*United States v. Rare Breed Triggers, LLC*,
    2023 U.S. Dist. LEXIS 156379 (E.D.N.Y. Sep. 5, 2023) ......................... 26

*Vapor Train 2 LLC v. United States FDA*,
    2023 U.S. Dist. LEXIS 175979
    (E.D. Tex. Sep. 29, 2023) ............................................................................. 14

*Vapor Train 2 LLC v. United States FDA*,
    No. 6:22-cv-00429 (E.D. Tex. Nov. 25, 2022),
    *Dkt. No.* 19 ................................................................................... 2, 11, 16

*York Trap Rock Corp. v. Town of Clarktown*,
    299 N.Y. 77 (1949) ......................................................................................... 4

*Zv Ny v. Mark Propco Llc*,
    2022 N.Y. Misc. LEXIS 8294
    (Sup. Ct. Sep. 2, 2022) ................................................................................. 24

**Statutes**

21 U.S.C § 387g(a) ................................................................................................. 16

21 U.S.C. § 387j(a) ................................................................................................ 14

21 U.S.C. § 387j(a)(1)–(2) ...................................................................................... 3

**Cases**                                                            **Pages**

21 U.S.C. § 387j(c)(1)(A)(i) ................................................................................. 14

21 U.S.C. § 387p(a)(1) .................................................................................. 12, 13

21 U.S.C. § 387p(a)(2)(A) ......................................................................... 13, 14, 15

21 U.S.C. § 387p(a)(2)(B) .................................................................................. 13

FD&C Act § 902(6)(A) ............................................................................ 11, 14, 16

FD&C Act § 903(a)(6) ....................................................................................... 14

Fed. R. Civ. P. 26 ............................................................................................. 26

**Statutes**                                                                               **Pages**

Fed. R. Civ. P. 65 ........................................................................................................ 27

N.Y.C. Admin. Code § BC 501 ..................................................................................... 9

N.Y.C. Admin. Code § 7-703 .......................................................................... 20, 21, 22

N.Y.C. Admin. Code § 7-703(l) ........................................................................... 20, 21

N.Y.C. Admin. Code § 7-704 ................................................................................ 21, 22

N.Y.C. Admin. Code § 7-704(a) ................................................................................. 21

N.Y.C. Admin. Code § 7-706 ................................................................................ 21, 22

N.Y.C. Admin. Code § 7-707 ..................................................................................... 21

N.Y.C. Admin. Code § 7-710 ..................................................................................... 21

N.Y.C. Admin. Code § 7-714 ..................................................................................... 22

N.Y.C. Admin. Code § 17-506 ..................................................................................... 9

N.Y.C. Admin. Code § 17-715(b) ............................................................................ 9, 11

N.Y.C. Admin. Code § 17-715b1 ............................. 1, 3, 7, 8, 9, 10, 16, 18, 20, 22, 26

N.Y.C. Admin. Code § 17-716 ............................................................................. 18, 20

N.Y.C. Admin. Code § 17-717 ...................................................................... 16, 17, 18, 20

N.Y.C. Admin. Code § 27-3013 .................................................................................... 9

N.Y.C. Admin. Code § 28-02(b) ................................................................................... 8

N.Y.C. Admin. Code § 28-02(b)(1) ........................................................................... 3, 8

N.Y.C. Admin. Code § 28-216.11 ................................................................................. 9

N.Y.C. Admin. Code § 28.02 ..................................................................................... 26

N.Y.C. Admin. Code § 28.02(b) .......................................... 8, 9, 10, 11, 12, 13, 14, 15, 16, 24

N.Y.C. Admin. Code § 708 ......................................................................................... 22

N.Y.C. Charter § 394 ....................................................................................... 17, 18, 22

N.Y.C. Charter § 394(a) ............................................................................................. 17

**Statutes**                                                                                      **Pages**

N.Y.C. Charter § 555 ............................................................................................... 17

N.Y.C. Charter § 1503 ............................................................................................. 17

N.Y.C. Charter § 2203 ............................................................................................. 17

N.Y.C. Gen. L. § 20 ........................................................................................... 22, 23

N.Y.C. Gen. L. § 20(22) ..................................................................................... 22, 23

N.Y.C. Gen. L. § 22 ................................................................................................. 22

N.Y. Penal L. § 240.45 ....................................................................................... 20, 21

PHL § 1399-*ll* ........................................................................................................ 19

PHL § 1399-*ll*(6) .................................................................................................... 19

Plaintiff the City of New York (the "City") respectfully submits this reply memorandum of law in support of its motion to preliminarily enjoin defendants Mahant Krupa 56 LLC d/b/a Empire Vape Distributors, Nikunj Patel, and Devang Koya (collectively, the "Empire Defendants") from causing, contributing to and maintaining a public nuisance through their possession, distribution and sale of flavored e-cigarettes in New York City.

## INTRODUCTION

The opening lines of the Empire Defendants' memorandum of law provides the basis to preliminarily enjoin them from selling or offering for sale, or possessing with intent to sell or offer for sale flavored e-cigarettes in New York City. According to Empire, … [it sells] flavored e-cigarettes to retailers located outside New York State." *See Mem. of Law in Opp. to Mot. for Prelim. Inj. by Mahant Krupa 56 LLC, Nikunj Patel & Devang Koya* ("*Empire Opp.*") at 1.[1]  New York City law provides that "[i]t shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, *any* flavored electronic cigarette or flavored e-liquid." NYC Administrative Code ("Ad. Code") § 17-715(b)(1) (emphasis added).  The Federal Food & Drug Administration ("FDA") has also effectively banned flavored e-cigarettes because it is

---

[1] To the extent the Empire Defendants repeat  arguments offered by the Hyde Defendants, the City's arguments in rebuttal to the Hyde Defendants' positions are incorporated herein where indicated.  As to federal jurisdiction (*Empire Opp.* at 8), the City briefed its standing under the PACT and RICO Acts extensively in responding to both sets of defendants' motions to dismiss. *See Mem. of Law of The City of New York in Opp. to Mots. to Dismiss of Magellan Technology, Inc., Ecto World, LLC, d/b/a Demand Vape, Matthew J. Glauser, and Donald Hashagen*, Dkt. No. 72 at 7, 28; *Mem. of Law of the City of New York in Opp. to Mot. to Dismiss of Mahant Krupa 56 LLC, Nikunj Patel and Devang Koya, Dkt. No*. 74 at 2-11.  As set forth in those briefs, the City has adequately pleaded claims under both statutes, thereby securing federal jurisdiction.

As to the applicable standards for issuance of an injunction (*Empire Opp.*  at 5), the City has also already responded to those arguments in response to the Hyde Defendants and incorporates those arguments herein, *see Reply Mem. of Law of Pl. The City of New York in Supp. of a Prelim. Inj., Dkt. No*. 74 at 9, but provides additional argument below.

unlawful to market flavored e-cigarettes without FDA pre-market authorization and, to date, no flavored e-cigarettes or e-liquids have received that authorization. *See Mem. of Law of the City of New York in Opp. to Mots. to Dismiss of Magellan Technology, Inc., Ecto World, LLC, d/b/a Demand Vape, Matthew J. Glauser, and Donald Hashagen*, *Dkt. No*. 72 at 4-5.[2] Thus, the Empire Defendants' sales of flavored e-cigarettes to retailers located outside New York State violates New York City and federal law. By opposing an injunction, the Empire Defendants blandly ask the Court to allow their sales of flavored e-cigarettes to continue simultaneously with FDA seizures of massive quantities of "illegal flavored disposable e-cigarette products" that "could pose serious health risks to the public." [3]

The Empire Defendants principally argue that their sales of flavored e-cigarettes may continue from within a "safe harbor" of a New York City rule that they purport allows sales to entities outside New York City. *Empire Opp*. at 1 (citing R.C.N.Y. § 28.02(b)(1)). But that rule is subordinate to and preempted as a matter of law by a New York City *statute* prohibiting "*any*" sales or possession with intent to sell flavored e-cigarettes, without exception. The Rule is also preempted under federal law classifying sales of flavored e-cigarettes as "unlawful," and the product as "adulterated," "misbranded," and a public health threat no matter where they are sold.

---

[2] *See https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders* (no flavored e-cigarettes or e-liquids other than tobacco flavored have been granted marketing authorization).

The City does not seek to enforce the federal laws under which the FDA proceeds, but cites those laws in support of the settled law that evidence of statutory violations supports claims for nuisance *per se*. *See infra* at n. 19

[3] *News Release, FDA, Joint Federal Operation Results in Seizure of More than $18 Million of Illegal E-Cigarettes* (Dec. 14, 2023), https://www.fda.gov/news-events/press-announcements/joint-federal-operation-results-seizure-more-18-million-illegal-e-cigarettes.

The Empire Defendants' admitted sale of flavored e-cigarettes, wherever ultimately delivered, violates the plain language of the New York City Administrative Code, which prohibits sales or offers to sell "___any___ flavored electronic cigarette or flavored e-liquid." *Ad. Code* § 17-715 (b)(1) (emphasis added). Second, no matter their ultimate (purported) destination, out-of-city sales necessarily also violate the Administrative Code because such sales must be preceded by conduct amounting to "possession with intent to sell" and "possession to offer to sell flavored e-cigarettes" – conduct *within* the City expressly prohibited by Ad. Code § 17-715(b)(1). The Empire Defendants may well only sell e-cigarettes to entities outside the City, but preparation for those transactions occurs *in* the City. The Administrative Code's plain language does not limit its prohibitions to acts "in New York City," but is a blanket measure making it "unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale" flavored e-cigarettes, without geographic limitation. *See Ad. Code* § 17-715(b)(1). The two features of *Ad. Code* § 17-715(b)(1)'s prohibitions, barring both "any" sales and "possession with intent to sell" supersede contrary conduct purportedly permitted by R.C.N.Y. § 28.02(b)(1). That rule is accordingly preempted by the Administrative Code and cannot serve to shelter the Empire Defendants from liability.[4]

Even if not preempted by the Administrative Code, no mere City rule can purport to permit sales that violate federal law, here The Family Smoking Prevention and Tobacco Control Act ("Tobacco Control Act"), making unlawful the marketing or sale of any tobacco products without FDA authorization, 21 U.S.C. § 387j(a)(1)–(2), which no flavored e-cigarette sold by the Empire Defendants has received.

---

[4] The City's Department of Health and Mental Health is accordingly contemplating amending the Rule to eliminate the exception for sales to entities outside of the City.

Most of the remaining arguments by the Empire Defendants are premised on the City's "authority" to obtain injunctive relief under the statutes cited by the City in support of establishing a public nuisance, *see, e.g., Empire Opp.* at 11. The City's entitlement to injunctive relief is premised on two separate causes of action, one being the creation of a common law public nuisance and the other, violation of *Ad. Code* § 17-715(b)(1). The City's standing to bring the public nuisance claim requires no more than that the City be a government actor. The City, as a municipal corporation, may at common law "bring an action to restrain a public nuisance which allegedly has injured the health of its citizens." New *York Trap Rock Corp. v. Town of Clarktown,* 299 N.Y. 77, 83-84 (1949).   The Empire Defendants' assertion that City agencies, but not the Corporation Counsel, have sole authority to proceed under *Ad. Code* § 17-715(b)(1) is easily rejected by the City Charter, which provides the Corporation Counsel with authority over all of the legal affairs of the City, and appoints him or her as counsel for all City agencies.

The City cites the Empire Defendants' other statutory violations, for example under N.Y. Public Health Law. § 1399-*ll* – mm-(1), not to bring a claim under those statutes but as evidence of a common law public nuisance that is also a nuisance *per se*, established by proof of statutory violations connected to the conduct in question.  In generating that nuisance the Empire Defendants transgress federal, state and City statutes under which the City need not have a cause of action but for which the mere showing of a violation provides a required element of a nuisance *per se*.

The Empire Defendants secondary argument, that the City must prove irreparable harm because Ad. Code § 17-715 does not provide a basis for a statutory injunction is belied by State and City statutes granting the City plenary authority to enjoin violations of City laws and public nuisances through injunctions.

Finally, the Empire Defendants' assertion that the evidence against them is inadequate is wrong in the face of their admission to out-of-city sales and their Internet presence that *presently offers* flavored e-cigarettes and offers their customers "curbside pick-up" of purchases. *See generally Declaration of Eric Proshansky* dated January 27, 2024 (*Jan. 27 Proshansky Decl.*"). The Empire Defendants' assertion that they have not acted intentionally is entirely belied by their own words formerly displayed on the company website:

**"FLAVOR BAN? NO WORRIES. WE GOT YOU."[5]**

**STANDARD OF REVIEW**

The Empire Defendants follow the Hyde Defendants in seeking to impose incorrect standards to be met by the City in obtaining a preliminary injunction. *Empire Opp.* 5-6.  The City has already opposed the argument as to the imposition of a "clear and substantial" likelihood of success instead of a "likelihood of success," *City Reply Mem.* (*Dkt. No.* 94) at 9-12, and does not repeat that opposition here, except to add that the Empire Defendants' assertion that *City of New York v. Golden Feather* Smoke Shop, 597 F.3d 115 (2d Cir. 2010) imposed that higher standard is incorrect: "the Second Circuit's ruling in *Golden Feather Smoke Shop* … requires a showing of "likelihood of success." *New York v. BB's Corner, Inc.*, 2012 U.S. Dist. LEXIS 88542, at *10 n.2 (S.D.N.Y. June 25, 2012).

The Empire Defendants also contend that the presumption of irreparable harm exempting government plaintiffs from having to prove that element when seeking to enjoin statutory violations does not apply here, apparently because a statutory injunction requires that the

---

[5] *See Am. Compl.* ¶ 86. The statement appeared on the website as of June 19, 2023 and was removed subsequent to the filing of this action, suggesting knowledge of guilt.

prohibited conduct must expressly provide for the availability of injunctive relief within the same title, act or subchapter. *Empire Opp*. at 5. They cite no authority for such a rigid interpretation, and in any event, the City's power to obtain injunctive relief to abate a public nuisance ***is*** provided by statute.

**ADDITIONAL FACTS**

The Empire Defendants' numerous protestations of innocence, *see e.g.*, *Empire Opp*. at 4-5, require clarification through the facts set forth in the *Jan. 27, 2024 Proshansky Decl*.

The Empire Defendants assert that "The City provides no evidence that Empire has even listed flavored e-cigarettes on its website after June 19, 2023." *Empire Opp*. at 14 (citation omitted). It is true that the Empire Defendants largely sanitized their website after the City commenced this action by purging from the site the prior abundant offers to sell flavored e-cigarettes, itself an admission of liability. Even at that they were not completely successful. *See Jan. 27, 2024 Proshansky Decl*. ¶ 2. But they neglected to similarly purge their Facebook page:



https://www.facebook.com/empiresmokedist/ (visited January 27, 2024).[6] *See Jan. 27, 2024 Proshansky Decl.* ¶ 7; *see also id.* at ¶¶ 2, 4. Empire's Facebook page continues to advertise flavored cigarettes, complete with video presentations. *See id.,* ¶ 6.

Relevant to the Empire Defendants' claim that they sell only to out-of-city entities is their offer of "curbside pickup," *Jan. 27, 2024 Proshansky Decl.* ¶ 8, a fair indication that not only do those defendants offer and possess with intent to sell flavored e-cigarettes in the City, they also conduct transactions with flavored e-cigarettes in the City as well, even if only with out-of-city customers.

## ARGUMENT

## I.    THE CITY NEED NOT BUT HAS SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. The Empire Defendants' Conduct Is to be Addressed as a Nuisance Per Se

Where "the conditions giving rise to a nuisance are also a violation of a statutory prohibition, those conditions constitute a nuisance *per se*." *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 355 (E.D.N.Y. 2007); *see also Shore Realty*, 759 F.2d at 1051 (continuing statutory violations constitute nuisance *per se*). With a nuisance *per se* claim, intentionality and "the reasonableness of the defendant's conduct and the weighing of the relative interests of the plaintiff and defendant is precluded because the Legislature has, in effect, already struck the balance in favor of the innocent party." *Id.* (quoting *Branch v. W. Petro., Inc.*, 657 P.2d 267, 276

---

[6] The April 21, 2021 date at the top of the photograph is presumably the date of posting. As of January 27, 2024 the advertisement was present on the website, along with other advertisements for flavored e-cigarettes with earlier dates of posting but which remain on the site. *See Jan. 27, 2024 Proshansky Decl.* ¶¶ 4-7.

(Utah 1982)); *see also Reply Mem. of Law of Pl. The City of New York in Supp. of a Prelim. Inj.*, *Dkt. No.* 94 at 20.

Even crediting the untested assertion of sales to out-of-city entities only, *Empire Opp.* at 1, the "condition[] giving rise to the public nuisance" is the Empire Defendants' continuing offers to sell and possession with intent to sell flavored e-cigarettes in the City, in violation of Ad. Code § 17-715. Offers to sell and possession with intent to sell flavored e-cigarettes must necessarily accompany the Empire Defendants' admitted out-of-city sales. That conduct is a statutory violation and constitutes a nuisance *per se*.[7] And as shown below *all* sales by the Empire Defendants, wherever the buyer is located, violate Ad. Code § 17-715 and are to be weighed in considering whether a nuisance *per se* has been established.

**B.  R.C.N.Y. § 28.02(b) Is Preempted by City and Federal Law and Is No Safe Harbor**

The Empire Defendants rest much of their defense on an argument that they sell flavored e-cigarettes to those outside the City only and thus are within the purported "safe harbor" of R.C.N.Y. § 28-02(b)(1). *Empire Opp.* at 1-4, 10, 16.  Far from docking in a safe harbor, the Empire Defendants are wrecked on the rocks of the federal and City laws that preempt Rule 28.02 (b)(1).

**1.    R.C.N.Y. § 28-02(b) Is Inconsistent With and Hence Preempted by the Administrative Code**

The City has already pointed out in response to the Hyde Defendants that R.C.N.Y. § 28-02(b)(b) is fatally inconsistent with the Ad Code – it is not possible to comply with both – and the Rule is accordingly preempted, providing no defense to the Empire Defendants.  *See Reply Mem.*

---

[7]   The Empire Defendants violate statutory prohibitions other than merely Ad. Code § 17-715, and the Ad. Code is not the only predicate for finding their conduct to be a nuisance *per se*. The Empire Defendants also violate the Tobacco Control Act by selling flavored e-cigarettes that have not received pre-market authorization from the FDA.

*of Law of The City of New York in Supp. of a Prelim. Injun., Dkt. No. 94* at 27-29.  R.C.N.Y. § 28-02(b), titled "Sale or Offer for Sale of Flavored Tobacco Products, Flavored Electronic Cigarettes, and Flavored E-Liquids Restricted," provides:

> (b)   Flavored electronic cigarettes and flavored e-liquids may only be sold or offered for sale by wholesalers where the sale or offer of sale is made to an entity located outside the City of New York.

*Id*.  In sharp contrast, Ad. Code § 17-715, titled "Sale of Flavored Tobacco Products, Flavored Electronic Cigarettes and Flavored E-Liquid Prohibited," provides:

> b. 1. It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, ***any*** flavored electronic cigarette or flavored e-liquid.

*Id*. (emphasis added). The clash between the Administrative Code and R.C.N.Y. § 28-02(b) is facially apparent. A City wholesaler ("any person") "may not sell, offer to sell or possess with intent to sell *any* flavored e-cigarettes."  Ad. Code § 17-715 (b)(1) (emphasis added).  Ad. Code § 17-715 provides for no exceptions; its plain language, *i.e*., "may not sell," or "offer to sell," or "possess with intent to sell" belies any contention that Rule 28.02(b) permits a wholesaler to engage in any of those forms of conduct merely because the *buyer* happens to be an "entity located outside the City of New York." If the drafters of the Administrative Code had sought to exempt sales to out-of-city entities from its prohibitions they would have done so through the familiar phrase "except as otherwise provided by" some other law or rule.  Here, "except as provided by Rule 28.02(b)" would have sufficed.[8]  It is absent. That familiar drafting technique appears in sections of the Administrative Code, in sub-sections of single Administrative Code sections, and

---

[8] A Lexis search of the New York City Charter, Administrative Code and Rules of the City of New York yields 670 instances in which an exception to a provision – a "carve out" or savings clause – is created using the phrase "except as otherwise provided by….."

in subchapters of the same Administrative Code title in which Administrative Code § 17-715 (b) is situated. More precisely, Administrative Code and City Rule sections provide the specific carve-out that could have been but was not used here: "except as may otherwise be provided by rules promulgated by the commissioner" *See, e.g.,* Ad. Code §§ 17-506; "except as otherwise provided by rule," *see* Ad. Code § 27-3013; "except as otherwise provided by rule of the "affected agency," *see* Ad. Code § 28-216.11, or "except as provided otherwise by rule" (or "law"). *See Ad. Code* § BC 501. The drafters of the Administrative Code provided no carve-out for Ad. Code § 17-715(b)(1), and its language is accordingly without exception. No harbor, safe or otherwise, was constructed for sales to entities outside the City..

There is more. The language of Ad. Code § 17-715(b)(1) prohibits the sale of "*any* flavored e-cigarettes." Self-evidently a flavored e-cigarette sale (or offer to sell, *etc.*) even to an entity located outside the City is "a sale or offer to sell a flavored e-cigarette" that is included within the term "any." Numerous courts embrace the plain language principle that "any means any." *See United States v. Ballistrea*, 101 F.3d 827, 836 (2d Cir. 1996) ("[I]t is unnecessary to go beyond the plain language of the statute. 'Any' means any."); *Cal. River Watch v. City of Vacaville*, 14 F.4th 1076, 1082 (9th Cir. 2021) (We take "any" to mean "any."); *Neth. Ins. Co. v. Macomb Cmty. Unit Sch. Dist. No. 185*, 8 F.4th 505, 508 (7th Cir. 2021) ("Simply put, 'any' means 'any.' "); *Ford v. Mabus*, 629 F.3d 198 (D.C. Cir. 2010) (same); *Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152 (3d Cir. 2006) ("Any" means "any."). The Administrative Code prohibits the sale of "any" flavored e-cigarettes; flavored e-cigarette sales to out-of-city entities are any sales, prohibited by the plain language of the statute.[9]

---

[9] The City can discern no practical reason to depart from the settled principle that would apply "any" to include out-of-city sales. Barring "any" sale has a powerful purpose under the statute.

The Empire Defendants consider the City's position that R.C.N.Y. § 28.02(b)(1) is void to be "outrageous." *Empire Opp*. at 1. That outrage is better directed at the courts that hold that "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute." *People v. Balmuth*, 178 Misc. 2d 958, 966 (Crim. Ct. 1998) (citing *Matter of Jones v. Berman,* 37 N.Y.2d 42, 53 (1975)), *aff'd* 189 Misc. 2d 243, 244 (App. Term 2001) ("Although administrative agencies have discretion to carry out their legislative mandates, they have no discretion to ignore those mandates or to alter the substantive standards set by the Legislature."). Rule 28.02 (b)(1) is preempted.[10]

## 2.  R.C.N.Y. § 28-02(b)(1) Is Preempted by the Tobacco Control Act

R.C.N.Y. § 28.02(b) is also preempted by the Tobacco Control Act. The Empire Defendants appear to believe they can freely traffic in products that do not have an FDA marketing authorization order in effect and are not otherwise exempt from the Tobacco Control Act's marketing authorization requirement. It is undisputed that Congress made marketing of flavored e-cigarettes unlawful in the absence of a pre-marketing authorization from the FDA. It is undisputed that the FDA has not authorized any flavored e-cigarettes (other than tobacco flavored). *See Premarket Tobacco Product Marketing Granted Orders*, FDA, *https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-*

---

Permitting out-of-city sales provides an enormous loophole for in-city e-cigarette sellers to  sell to affiliated out-of-city entities that in turn funnel the products back into the City.  Allowing in-city stores to possess flavored e-cigarettes in the City also makes enforcement of statutory violations administratively costly and logistically complicated because the flavored product found in the City can always be represented as intended for future sale outside the City.

[10] It is also unclear why the City's position should spark "outrage."  The present motion seeks prospective relief in the form of an injunction and places the Empire Defendants on notice of the City's future position. In fairness, the City would not apply its view of Ad. Code § 17-715 (b) retroactively to seek penalties.

*granted-orders* (not listing a single flavored e-cigarette). It is accordingly "unlawful" under federal law when "Empire … [sells] flavored e-cigarettes to retailers located outside New York State." *Empire Opp.* at 1. The FDA expressly classifies items marketed without FDA pre-market authorization as "adulterated under section 902(6)(A) of the FD&C Act."[11]

"To determine whether a state or local law is preempted by federal law, we look to Congress's intent." *23-34 94th St. Grocery Corp. v. N.Y. City Bd. of Health*, 685 F.3d 174, 180 (2d Cir. 2012). If the federal statute contains an express preemption provision, the analysis begins with the language of that provision. *CSX Transp. Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). At the same time, consideration of the statute as a whole is necessary to determine whether the local ordinance actually conflicts with the overall federal regulatory scheme. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76-77 (2008).

In the Tobacco Control Act, Congress expressly addressed preemption, so the first task is to interpret the preemption provision. *See Ass'n of Int'l. Auto. Mfrs., Inc. v. Abrams*, 84 F.3d 602, 607 (2d Cir. 1996). The express preemption provisions of the Tobacco Control Act are nuanced, based on Congress's wish to create federal regulation while preserving the historic role of the States in regulating tobacco products. As distilled in the Second Circuit's analysis in *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of N.Y.*, 708 F.3d 428 (2d Cir. 2013), Congress balanced the federal and state roles through three sequential, interlocking provisions – the "preservation clause," the "preemption clause" and the "savings clause." *See R.J. Reynolds Tobacco Co. v. Cty. of L.A.*, 29 F.4th 542, 551 (9th Cir. 2022); *U.S. Smokeless Tobacco,* 708 F.3d at 431, 433-34.

---

[11] *FDA's Surreply in Opp. to Pls.' Mot. for a Temporary Restraining Order and Prelim. Inj.* at 2, *Vapor Train 2 LLC v. United States FDA*, No. 6:22-cv-00429 (E.D. Tex. Dec. 9, 2022)*, Dkt. No.* 30.

The preservation clause, so-called for preserving the traditional regulatory role of the states, provides that the Tobacco Control Act may not be construed to limit the authority of a state or local government to enact any law "that is in addition to, or more stringent than" the Act's requirements. *See* 21 U.S.C. § 387p(a)(1). The preservation clause allows state, local, and tribal governments to go beyond whatever federal standards may be set, including local enactments "relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products." *Id.*; *Reynolds*, 29 F.4th at 553.

The preservation clause is followed by the "preemption clause" which sets forth the scope of the exclusive federal regulatory role:

> No … political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter *relating to tobacco product standards*, *premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products*.

21 U.S.C. § 387p(a)(2)(A) (emphasis added).  The italicized subjects comprise exclusively federal fields of regulation.

The preemption clause is immediately followed by the "savings clause," a carve-out (beginning with the word "Exception") preserving certain state and local laws from the preemption provision, *i.e.*, "a savings clause then excepts various broadly defined categories from preemption." *Reynolds,* 29 F.4th at 555; *see* 21 U.S.C. § 387p(a)(2)(B).  The savings clause instructs that the preemption clause "does not apply to requirements relating to the sale, distribution, [or] possession, … of tobacco products."  21 U.S.C. § 387p(a)(2)(B).

The Second Circuit has succinctly synthesized these three intertwined provisions:

> [T]he preservation clause … expressly *preserves* localities' traditional power to adopt any "measure relating to or prohibiting the sale" of tobacco

> products. 21 U.S.C. § 387p(a)(1). That authority is limited only to the extent that a state or local regulation contravenes one of the specific prohibitions of the preemption clause. *Id*. Those prohibitions forbid local governments to impose any requirement … relating to tobacco product standards, [premarket review, adulteration, [and] misbranding… *Id*. § 387p(a)(2)(A). Even then, pursuant to the saving clause, local laws that would otherwise fall within the preemption clause are exempted if they constitute "requirements relating to the sale [and] distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products …". *Id*. § 387p(a)(2)(B).

*U.S. Smokeless*, 708 F.3d at 433-34; *accord Reynolds,* 29 F.4th at 555.

While R.C.N.Y. § 28.02(b) might superficially be viewed as a "requirement[] relating to the sale [and] distribution, … of tobacco products," 21 U.S.C. § 387p(a)(2)(B), that view would be wrong in the context of this case, which addresses products for which premarket review has not been obtained. R.C.N.Y. § 28.02(b) effectively treads upon the Tobacco Control Act's express preservation of federal regulation of *premarket review, adulteration, and misbranding*.  21 U.S.C. § 387p(a)(2)(A) ("No … political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter *relating to … premarket review, adulteration,* [and] *misbranding.*") (emphasis added).

Flavored e-cigarettes do not present the usual circumstance in which a state or local government enacts a "requirement[] relating to the sale [and] distribution, … of tobacco products" which implicitly must apply to products already authorized for sale. 21 U.S.C. § 387p(a)(2)(B). Here, none of the flavored e-cigarettes sold by the Empire Defendants have the FDA premarket authorization required for sale and distribution. Flavored e-cigarettes remain at the "premarket review" stage.  Moreover, "Tobacco products that are marketed without the required premarket authorization are misbranded under section 903(a)(6) and adulterated under section 902(6)(A) of the FD&C Act. *This means that, among other things, it is illegal to sell or distribute such products*

*in interstate commerce or import such products into the United States.*" *Marketed Tobacco Products that Receive an NSE*, *FDA*, https://www.fda.gov/tobacco-products/market-and-distribute-tobacco-product/marketed-tobacco-products-receive-nse* (emphasis added). *See also Vapor Train 2 LLC v. United States FDA*, 2023 U.S. Dist. LEXIS 175979, at *2 (E.D. Tex. Sep. 29, 2023) (Adulteration occurs if the product is required to have premarket review and does not have an approval-of-marketing order in effect).[12]

Any construction of R.C.N.Y. § 28.02(b) that would permit sales to out-of-city entities impinges on the FDA's regulatory role over premarket review, adulteration and misbranding reserved to the FDA by 21 U.S.C. § 387p(a)(2)(A). It would be absurd on its face to construe R.C.N.Y. § 28.02(b) as permitting the out-of-city distribution and sale of products that are "adulterated" and "misbranded" pursuant to federal law. To do so would allow R.C.N.Y. § 28.02(b)(1) to overrule the FDA's control over the appropriateness of marketing a particular product, and over a product's status as adulterated or misbranded. Simply put, the Empire Defendants' reading of R.C.N.Y. § 28.02 (b)(1) allows them to argue that "As long as we sell to entities outside New York City, we can sell and distribute in interstate commerce products that are unapproved, adulterated and misbranded under federal law," *i.e.*, that they may sell products that have no federal pre-market approval because a City rule permits distribution outside of the City. That position completely nullifies the FDA's statutory authority over the introduction of new tobacco products into interstate commerce, and its authority to determine whether a product is adulterated and misbranded, categories expressly reserved to the federal government under 21

---

[12] The prohibition against sales of unapproved products is enforceable by the seizure of adulterated products and the imposition of a sentence of imprisonment, a fine, and an injunction. *Vapor Train 2 LLC*, 2023 U.S. Dist. LEXIS 175979, at *2.

U.S.C. § 387p(a)(2)(A). R.C.N.Y. § 28.02(b)(1) is accordingly preempted by the Tobacco Control Act.

**3.      R.C.N.Y. § 28.02 (b)(1) Fails Under the Conventional Preemption Principles**

R.C.N.Y. § 28.02 (b)(1) is preempted even without reference to the express preemption regime of the Tobacco Control Act.  Under general rules of preemption, "state law is nullified to the extent that it *actually conflicts* with federal law. That conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982) (quotation marks and citation omitted) (emphasis added); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-90 (1995); *Concourse Rehab. & Nursing Ctr. Inc. v. Whalen*, 249 F.3d 136, 146 (2d Cir. 2001). Both forms of preemption are present here.  When the Empire Defendants make out-of-city sales of flavored e-cigarettes to locations outside of New York City they do not "physically comply" with the Tobacco Control Act's prohibition against selling adulterated and misbranded products under section 902(6)(A) of the FD&C Act.  R.C.N.Y. 28.02 (b)(1) also indisputably "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fidelity Fed. Sav.*, 458 U.S. at 153.  Congress "recognized that the purposes of the [Tobacco Control Act] would not be served by allowing unrestrained production of and access to all tobacco products. It therefore banned the use of flavoring additives in cigarettes ..." *U.S. Smokeless Tobacco*, 708 F.3d at 433 (citing 21 U.S.C § 387g(a)).  The flavor ban thus constitutes a measure intended to further one of "the purposes of the [Tobacco Control Act]." *Id.*  By purporting to permit the shipment of flavored e-cigarettes, R.C.N.Y. § 28.02 (b)(1) is an "obstacle

to the accomplishment and execution of the full purposes and objectives of Congress," *Fidelity Fed. Sav.*, 458 U.S. at 153, and is therefore preempted.

### C. The Corporation Counsel Has Standing To Bring Claims Under Ad. Code § 17-715 For An Injunction.

The Empire Defendants contend that the Corporation Counsel is precluded from bringing an action for violations of Ad. Code § 17-715, because Ad. Code § 17-717 assigns certain enforcement procedures to City agencies without expressly designating the Corporation Counsel as having an enforcement role. This argument fails for several reasons. First, Ad. Code § 17-717 provides:

> The department [of health and mental hygiene], the department of consumer and worker protection and the department of finance shall enforce the provisions of this subchapter.

*Id*. This provision must be read in connection with NYC Charter § 394, Powers and Duties, which provides that:

> a.   Except as otherwise provided in this chapter or other law, the corporation counsel shall be attorney and counsel for the city and *every agency thereof* and shall have charge and conduct of all the law business of the city *and its agencies* and in which the city is interested….
>
> ***
>
> c.   Except as otherwise provided in this chapter or other law, the corporation counsel shall have the right to institute actions in law or equity and any proceedings provided by law in any court, local, state or national, to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city or of any part or portion thereof, or of the people thereof, or to collect any money, debts, fines or penalties or to enforce the laws.

*Id*. (emphasis added). Nothing in the Charter or elsewhere provides a City agency with authority to bring any action in any court. *See NYC Charter* §§ 555, 1503, 2203 (detailing the powers of the commissioners, none of which include the power to prosecute judicial proceedings). This is made

clear by Charter § 394 (a), which provides that "the corporation counsel shall be attorney and counsel for the city and *every agency thereof* and shall have charge and conduct of all the law business of the city *and its agencies.*" *Id*. (emphasis added).  Thus, to the extent the Department of Health and Mental Hygiene, the Department of Consumer and Worker Protection and the Department of Finance enforce Ad. Code § 17-717, they must do so through the Corporation Counsel.  That is precisely the case here.  Each of these agencies have contributed materials in support of the City's motion for injunctive relief and thus are enforcing Ad. Code § 17-717 through the Office of the Corporation Counsel, consistent with the dictates of the City Charter.

Second, these three agencies have limited enforcement authority with respect to adjudicative proceedings.  After providing that the departments "shall enforce the provisions of this subchapter," Ad. Code § 17-717 continues:

> *A proceeding to recover any civil penalty* authorized pursuant to section 17-716 shall be commenced by the service of a notice of violation returnable to the office of administrative trials and hearings …

*Id*. (emphasis added). The instant proceeding is not one to recover the "any civil penalty," authorized by section 17-716 and is therefore outside of the scope of the limited adjudicatory authority delegated to those agencies.

Third, Administrative Code § 17-717 designates the Office of Administrative Trials and Hearings as having the "power to render decisions and to impose the remedies and penalties provided for in section 17-716."  *Id.*  However, that power is not exclusive, but is "*in addition to any other remedies or penalties provided for the enforcement of such provisions under any other law including, but not limited to, civil or criminal actions or proceedings.*" *Id*. (emphasis added) The Corporation Counsel is the only person that can enforce "any other law" through a civil or criminal proceeding, *see Charter* § 394, and is doing so here by "pursuing the "any other remedies

or penalties provided for the enforcement of such provisions," *i.e.,* the provisions of Ad. Code § 17-715[13]. *See also City of N.Y. v. Chavez*, 2012 U.S. Dist. LEXIS 42792, at *6-7 (S.D.N.Y. Mar. 26, 2012) (rejecting the contention that the police commissioner is the "chief law enforcement officer" and citing Charter § 394 to hold that the Corporation Counsel holds that title).

Finally, the Corporation Counsel certainly has standing to bring the common law public nuisance claim alleged here.  *See, e.g.*, *City of N.Y. v. Milhem Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 350 (E.D.N.Y. 2008).  Whether or not the Corporation Counsel can directly "enforce" Ad. Code §17-715 is immaterial.  That statute represents a legislative finding that the prohibited conduct injures the health and safety of a large number of persons; that finding provides the grounds for a common law nuisance action and for finding a nuisance *per se.  See Milhem Attea,* 550 F. Supp. at 350 (holding that the City stated a claim for public nuisance despite not having power to enforce PHL § 1399-*ll,* [14] based on legislative findings of injury to health and safety).

**D.  The City Need Not But Has Shown Irreparable Harm.**

,

The presumption that irreparable harm applies when a government entity seeks a statutory injunction is based on the principle that those circumstances differ from those in which a private litigant seeks an injunction.  With a statutory injunction, the statute at issue makes specific conduct unlawful; the statute itself serves as a legislative statement that the conduct prohibited is inherently harmful to the public.  *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010); *City of N. Y. v. 330 Cont. LLC,* 60 A.D.3d 226, 230 (1st Dept 2009) ("irreparable injury

---

[13] General City Law § 20(22) also discusses the plenary power of the Corporation Counsel to bring actions to enforce any local law or ordinance, notwithstanding that a "penalty, forfeiture and/or imprisonment" may have been provided for."  *See infra* at 22.

[14] PHL § 1399-*ll*  has since been amended to provide the City with standing.  *See* PHL § 1399-*ll* (6).

is presumed from the continuing existence of an unremedied public nuisance."). *See Lost Lake Holdings Ltd. Liab. Co. v. Town of Forestburgh*, 2023 U.S. Dist. LEXIS 230517, at *21 (S.D.N.Y. Dec. 28, 2023) (in *Golden Feather* "the court principally had in mind cases in which the government seeks to enjoin an ongoing public harm under a statutory remedial scheme." (citing *Golden Feather*, 597 F.3d at 120-21.

A government actor enforcing a statute is viewed "as a statutory guardian charged with safeguarding the public interest." *SEC v. Management Dynamics, Inc*., 515 F.2d 801, 808 (2d Cir. 1975). A separate showing of irreparable harm is unnecessary because the statutory prohibition of the conduct in question serves as a determination by the legislature of the public harm caused by the prohibited conduct. It is "enough if the statutory conditions for injunctive relief were made to appear." *Id*. Where a state and a federal statute each deem specific conduct unlawful, the statutes themselves establish that Congress and the New York Legislature have already determined the conduct in question is harmful to the public; a further showing of irreparable harm would be superfluous and unnecessary. *Golden Feather*, 597 F.3d at 120-21.

The City now seeks injunctive relief for a public nuisance pursuant to both its common law police powers and under Ad. Code § 17-715. The latter provision does extend to the City the right to a "statutory injunction," in which "a statute bans certain conduct or establishes certain rights, then specifies that a court may grant an injunction to enforce the statute." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1098 (11th Cir. 2004).

Administrative Code § 17-715 satisfies the element required for a statutory injunction that the statute make "specific conduct unlawful," *i.e*., the legislature's determination that certain conduct, here the sale of flavored e-cigarettes, is "in and of itself, is harmful to the public." *Golden Feather*, 597 F.3d at 120-21. But the Empire Defendants, without citation, argue that a statutory

injunction also requires an express grant of authority to obtain an injunction and suggest that it must be found in Ad. Code § 17-715 itself or other enforcement provisions of the subchapter governing flavored e-cigarettes, *e.g.*, Ad. Code §§ 17-716 and 17-717.

But there is no authority for the proposition that the grant of authority to seek an injunction must be found in the very same provision that outlaws the conduct in question or in related provisions. In this case, two different statutes – one State and one City – expressly provide the City with the power to obtain injunctive relief to abate specifically- defined public nuisances. First, the City's Nuisance Abatement Law, Administrative Code Chapter 7, defines particular public nuisances. *See* Ad. Code § 7-703. Among them is the public nuisance defined in section 7-703 (l), "Any … place wherein there is occurring a criminal nuisance as defined in section 240.45 of the penal law." *Id.; see City of New York v. 2465 Grand Concourse Prop., Inc*., 2016 N.Y. Misc. LEXIS 17675 (Sup. Ct. Bx. Co.) (sales of untaxed cigarette in violation of the Tax Law constitutes a criminal nuisance under Penal L. 240.45 and thus a public nuisance under Section 7-703 of the Ad. Code). N.Y. Penal Law § 240.45 in turn defines a public nuisance as circumstances in which a person "by conduct either unlawful in itself or unreasonable under all the circumstances, … knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons." *N.Y. Penal Law* § 240.45. Ad. Code § 7-704, "Remedies," provides in § 7-704 (a) that the Corporation Counsel may "on his or her own initiative bring actions" seek injunctive relief from the public nuisances defined in section 7-703, including that in § 7-703(l).[15] *Id.* Construing these statutes together, as is required, an injunction is available

---

[15] Ad. Code § 7-706 provides that "on his or her own initiative the corporation counsel may bring and maintain a civil proceeding in the name of the city in the supreme court to permanently enjoin a public nuisance within the scope of this subchapter [2], and the person or persons conducting,

upon a showing of "conduct unlawful in itself" – certainly true for the sale of flavored e-cigarettes – injuring public health and safety – also true of flavored e-cigarette sales. The City Nuisance Abatement Law thus empowers this Office to obtain a statutory injunction, as has been the case in numerous instances, without having to provide evidence of irreparable harm.[16]

Second, N.Y. General City Law provides in Section 22, "Grant of specific powers," that every city is empowered:

> 22. To regulate by ordinance or local law any matter within the powers of the city, and to provide penalties, forfeitures and imprisonment to punish violations thereof, and to maintain an action or special proceeding in a court of competent jurisdiction to compel compliance with *or restrain by injunction the violation of any such ordinance or local law*, notwithstanding that a penalty, forfeiture and/or imprisonment may have been provided to punish violations thereof.

---

maintaining or permitting the public nuisance from further conducting, maintaining or permitting the public nuisance."

Although the provision refers to actions in state court, that is not a mandatory command as evidenced by both by the reference to the Corporations Counsel's ability to bring the action on his or her own initiative and the stipulation that such actions "*may* be brought."

[16] The procedures for seeking injunctive relief are set forth in Chapter 2 of the Nuisance Abatement Law, and permit the Corporation Counsel to seek permanent injunctions, preliminary injunctions and temporary restraining orders. *See* Ad. Code § 7-706 ("Action For Permanent Injunction"); § 7-707 ("Preliminary Injunction"); § 7-710 (Temporary Restraining Order); *see also Pinter v. City of N.Y.*, 710 F. Supp. 2d 408, 423-24 (S.D.N.Y. 2010) (Ad. Code §§ 7-704 and 7-706 authorize the City to bring and maintain actions under the Nuisance Abatement Law). Subchapter 2 of the Nuisance Abatement Law is so explicit in its grant of power to the Corporation Counsel to seek injunctive relief that it even sets forth the necessary contents of the motion papers. Administrative Code § 708, "Motion papers for preliminary injunction," provides that "The corporation counsel shall show, by affidavit and such other evidence as may be submitted, that there is a cause of action for a permanent injunction abating a public nuisance within the scope of this subchapter." There is no requirement for a showing of irreparable harm. *See City of N.Y. v. Lacroix*, 2022 N.Y. Misc. LEXIS 980 (Sup. Ct. N.Y. Co.) ("While not necessary to do so, plaintiff has also established that the possibility of irreparable injury militates for the grant of a preliminary injunction.").

*Id*. § 22 (emphasis added).  The authority to move for injunctive relief is thus "built-in" to the City's powers when enforcing any ordinance or local law, as it is doing here. Again, this is a statutory injunction.[17]

In sum, the federal standard for issuing preliminary injunctive relief dispenses with a showing of irreparable harm i) where a statute designates specific conduct as injurious to public health and ii) when there is authority to seek injunctive relief for that conduct. Both elements are present here. Ad. Code § 17-715 prohibits possession of flavored e-cigarettes, demonstrating a public health injury. Ad. Code §§ 7-703, 7-704, and 7-706 declare violations of law that give rise to public nuisances and provide for injunctive remedies. Likewise, N.Y. General City Law provides that any ordinance or local law is enforceable by an injunction. *Gen. City L.* § 20 (22). Under the facts of this case, the City need not prove irreparable harm.

In any event, the facts set forth in the City's moving papers establish irreparable harm by clear and convincing evidence. To begin with, a ban on flavored e-cigarette sales in so many jurisdictions and under federal law alone is a testament to the public health injuries ascribed to those products.  *See Am. Compl*. (*Dkt. No*. 20) ¶¶ 3, 4.[18]  Mass injury to the public health qualifies as an irreparable injury.  *City of N.Y. v. Nappi*, 2021 U.S. Dist. LEXIS 238140, at *16 (S.D.N.Y.

---

[17] The City routinely uses both the Nuisance Abatement Law and Gen. City L. 20(22) to seek injunctive relief.  *See New York City v. Arlene M. Tropp*, 2023 NYLJ LEXIS 661, *4 (Sup. Ct. Kings Co.) (the City sought a permanent injunction pursuant to and by the authority of § 394 of the New York City Charter and §§ 7-703, 7-706, and 7-714 of the Administrative Code (the "Nuisance Abatement Law"), and §20(22) of the General City Law.); *City of N.Y. v. Metrobutler LLC*, 2022 N.Y. Misc. LEXIS 5535, at *5 (Sup. Ct. Sep. 27, 2022) (issuing a permanent injunction pursuant to § 20(22) of the New York General City Law).

[18] The government of the United Kingdom yesterday announced a ban on flavored disposable e-cigarettes, the same products at issue here, citing youth consumption and environmental  damage.  *See N.Y. Times*, January 30, 2034 at A10.

Dec. 10, 2021) ("Monetary damages and penalties are inadequate remedies given the public health risks associated with cigarettes…"); *New York v. BB's Corner, Inc.*, 2012 U.S. Dist. LEXIS 88542, at *10-11 n.3 (S.D.N.Y. June 25, 2012) (a potential impact on public health (*i.e.*, potentially catastrophic health consequences) is itself sufficient irreparable harm to support preliminary injunctive relief."); *cf. P&G v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) ("A presumption of irreparable harm may also apply where the 'false or misleading advertising claims create a danger to public health.'").

Although the Empire Defendants, like the Hyde Defendants, cite to academic research to suggest that flavored e-cigarettes are less dangerous than smoking combustible tobacco and hence not a source of irreparable harm, *Empire Opp.* n. 7, the argument is directed to the wrong branch of government:

> [S]cientific and medical information is for the government and its agencies—and not for this Court—to formulate into the policies the City and State consider to be in the best interest of the public health and safety.

*Broecker v. N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 323 (E.D.N.Y. 2022).

> **E.**     **The City Need Not, But Has, Shown Intentional Conduct.**

The Empire Defendants contend that the City must show intentional conduct in order to establish a public nuisance. *Empire Opp*. at 12.[19]  Whether or not this is correct,[20] the Empire Defendants themselves establish intentionality by citing the principle that "the requisite intent requires continual sales to the downstream party after acquiring knowledge that the person was engaging in wrongful behavior creating a nuisance." *Empire Opp*. at 12.  That standard is met here.  After being put on notice by the City that the Empire Defendants are causing a public nuisance by continuing to sell, offering to sell, and possessing with intent to sell flavored e-cigarettes, they have *continued* to offer flavored e-cigarettes for sale. *See generally Jan. 27, 2024 Proshansky Decl.*, at ¶¶ 4-7.  Moreover, the Empire Defendants' interpretation of R.C.N.Y. §28.02(b)(1) permits an inference that they intend to continue their sales.  Mr. Koya's declaration

---

[19] The Empire Defendants' insistence on asserting that a public nuisance requires intentional conduct, *Empire Opp.* at 12, misses the point: The facts here unequivocally point to a nuisance *per se,* which does not require a showing of intentional conduct. *See, e.g.*, *Sorenson v. Newark Star Ledger*, 2004 U.S. Dist. LEXIS 14781, at *4 (S.D.N.Y. July 30, 2004) (nuisance *per se* claim requires a party to establish a defendant violated the law creating a situation which endangers or injures the property, health, safety, or comfort of a considerable number of persons.). "Nuisance *per se* is a nuisance based on an act which is unlawful, even if performed with due care." *State v. Fermenta ASC Corp.*, 238 A.D.2d 400, 403 (2d Dept 1997); *Johnson v. City of N.Y.*, 109 A.D. 821, 825 (2d Dept. 1905) (the act committed was unlawful and inherently dangerous to the community, irrespective of "malicious or actual criminal intent" and constituted a nuisance *per se*). "In an action based on a theory of nuisance *per se*, the plaintiffs need only establish a violation of law, and need not show that the nuisance was intentional or negligent." *Zv Ny v. Mark Propco Llc*, 2022 N.Y. Misc. LEXIS 8294, at *19 (Sup. Ct. Sept. 2, 2022).

[20] The cases offered by the Empire Defendants on this subject are inapposite.  The *Suez Water* complaint alleges  both public and private nuisance claims.  It is unclear whether the fragments of the decision that are quoted in the Empire Defendants' opposition refer to private or public nuisance. *See  Empire Opp*. at 12 (citing *Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 2023 U.S. Dist. LEXIS 48925 , at *13-14 (S.D.N.Y. Mar. 22, 2023)).  *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003) was brought by a private plaintiff and the court expressly distinguished the requirement of intent in that case from a case brought by a government entity. *Id*. at 145-46.

contains abundant commentary on Empire's operations and surely would have noted if the company intended to cease sales of flavored e-cigarettes. *See Decl. of Devang Koya*, *Dkt. No.* 99.

Moreover, having boasted, "**FLAVOR BAN? NO WORRIES. WE GOT YOU,**" *Am. Compl.* ¶ 86, the Empire Defendants have provided ample evidence of intentionality.

## II.    THE BALANCE OF EQUITIES STRONGLY FAVORS THE CITY

The balance of equities applies no differently to the Empire Defendants than to the Hyde Defendants, which the City has already shown is strongly in the City's favor. *See Dkt. No.* 74 at 33.  The City again notes that Second Circuit precedent provides that a plaintiff "may be able to show that a preliminary injunction is warranted on the strength of [irreparable harm and success on the merits] alone." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 n.38 (2d Cir. 2020).  The City has accomplished that here by showing the Empire Defendants' flagrant violations of federal and City law. Once a government has "successfully borne the considerable burden of establishing a violation of law, all doubts as to the remedy are to be resolved in its favor." *F. Hoffmann-La Roche Ltd v. Empagran S.A.*, 542 U.S. 155, 170-71 (2004) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 334 (1961)); *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015).[21]  Finally, "[i]t is an accepted equitable principle that a court does

---

[21] The Empire Defendants contend that the individual defendants Patel and Koya cannot be liable for a public nuisance because they do not "personally engage in any sales of e-cigarette or e-liquid products." *Empire Opp.* at 4-5. This argument fails for the same reason as it did against the individual Hyde Defendants: "a corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation." *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985).  Courts have recognized this principle in the specific context of public nuisance claims arising out of officers' "roles in creating and maintaining the public nuisance of the youth vaping epidemic." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d at 651-52 ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.") (citation omitted).

not have to balance the equities in a case where the defendant's conduct has been willful," *EPA v. Envtl. Waste Control*, 917 F.2d 327, 332 (7th Cir. 1990), as the above-described showing of intent establishes.[22]

Empire's assertion that "the City is seeking more and broader relief in its motion than it is in the Amended Complaint," *Empire Opp.* at 7, is puzzling and incorrect, given the Amended Complaint's express demand for relief that the Empire Defendants "abate the nuisance" they have caused. *Am. Compl.* at *Wherefore clause, e.* Abatement is a term of art meaning to eliminate or mitigate the effects of the nuisance by whatever steps are required to do so.

### III.    EXPEDITED DISCOVERY MAY BE WARRANTED

Like the Hyde Defendants, the Empire Defendants rely on self-serving factual assertions in opposing entry of an injunction, principally the assertion that they only sell to entities outside of New York City.  *See, e.g. Empire Opp.* at 4-5, 14.  Documentation and other knowledge as to the truth of these assertions are uniquely within the Empire Defendants' possession.  The City has shown above that such sales also violate Ad. Code § 17-715 and must be enjoined. If the Court decides that Rule 28.02 is not preempted as a matter of law, the City respectfully reserve the right

---

[22] Empire speciously claims it will have to "shut down its business" if it is prohibited from possessing flavored e-cigarettes, (*Empire Opp.* at 7) but even a glance at Empire's website shows that it sells a vast array of products other than flavored e-cigarettes. *See* https://empiresmokedist.com/.  Moreover, where harm appears to stem from defendants' own wrongful conduct. . . .  the Court cannot say the harm to defendants outweighs the harm to plaintiffs." *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 199-200 (E.D.N.Y. 2013); *accord United States v. Rare Breed Triggers, LLC*, 2023 U.S. Dist. LEXIS 156379 at *147 (E.D.N.Y. Sep. 5, 2023) (court's concern over the equities :is mitigated by the fact that Defendants' entire business is built on the sale of an illegal product).

to move for expedited, targeted discovery in advance of a hearing on the preliminary injunction. *See 3M Co. v. HSBC Bank USA, NA*, 2016 U.S. Dist. LEXIS 189249 (S.D.N.Y. Oct. 20, 2016) (granting expedited discovery related to plaintiff's motion for a preliminary injunction); *see also In re Madoff*, 590 B.R. 200, 207 (Bankr. S.D.N.Y. 2018) ("The Federal Rules Advisory Committee suggests that expedited discovery could be proper in connection with 'requests for a preliminary injunction or motions challenging personal jurisdiction.'") (quoting Fed. R. Civ. P. 26 Advisory Committee notes); *Russell Reynolds Assocs., Inc. v. Usina*, 2023 U.S. Dist. LEXIS 79149, at *2 (S.D.N.Y. May 5, 2023) ("Requests for expedited discovery are typically appropriate where they 'would better enable the court to judge the parties' interests and respective [chances] for success on the merits at a preliminary injunction hearing.'").

## **CONCLUSION**

For the reasons set forth above, the City of New York respectfully requests that the Court issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining the Empire Defendants from selling or offering for sale, or possessing with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

Dated:      New York, New York
            January 31, 2023

                                        **HON. SYLVIA O. HINDS-RADIX**
                                        Corporation Counsel of the
                                            City of New York
                                        *Attorneys for Plaintiff The City of New York*
                                        100 Church Street, Rm. 20-099
                                        New York, New York 10007
                                        (212) 356-2032

                                        By: _____

                                            Eric Proshansky
                                            Elizabeth Slater
                                            Aatif Iqbal
                                            Alexandra Jung
                                            Assistant Corporation Counsels