ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONIC ALLY FILED
DOC #:
DATE FILED: 5/24/24

---

THE CITY OF NEW YORK,

Plaintiff,

- against -

MAGELLAN TECHNOLOGY, INC., ECTO
WORLD, LLC, d/b/a DEMAND VAPE,
MATTHEW J. GLAUSER, DONALD HASHAGEN,
MAHANT KRUPA 56 LLC d/b/a EMPIRE
VAPE DISTRIBUTORS, NIKUNJ PATEL,
DEVANG KOYA, STAR VAPE CORP., NABIL
HASSEN, DORBES LLC, d/b/a
HYDEVAPEOFFICIAL.COM,CHRISTIAN A.
SMITH,

Defendants.

23 Civ. 5880 (LLS)

**OPINION & ORDER**

---

Flavored Disposable Vaping Devices ("FDVs") are e-
cigarettes filed with nicotine. Plaintiff the City of New York
("the City"), through its Corporation Counsel, alleges that FDVs
are highly addictive, particularly to individuals under the age
of twenty-five, because they not only contain high levels of
nicotine, but also have a pleasant taste. The City alleges that
FDVs have created a public health crisis in New York, among
youth and the general public. Defendants in this action are
among the largest distributors of FDVs in New York City. The
City alleges those distributions violate several federal and
state laws and create a public nuisance in New York City.
Defendants contest the allegations and have filed Motions to
Dismiss the Amended Complaint for Failure to State a Claim under

1

Federal Rule of Civil Procedure 12(b)(6). For the following reasons, those motions are granted in part and denied in part. Individual defendant Donald Hashagen filed a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, that motion is granted.

## I. Background

### A. Flavored Disposable Vaping Devices

FDVs are a type of "e-cigarette" or "electronic nicotine delivery device" that uses a battery to heat a nicotine-containing solution (also known as an "e-liquid") to create an aerosol inhaled by the user. Amended Complaint ("Am. Comp.") (Dkt. No. 20) at ¶ 2. Those "e-cigarettes" are artificially flavored so that the aerosol tastes like fruit, candy, or dessert. Id. FDVs can be (and are often marketed as) a substitute for the conventional cigarette yet contain nicotine levels exceeding those in conventional cigarettes. Id. at ¶¶ 2, 4.

The Amended Complaint alleges that FDVs have become ubiquitous in New York City and are creating a public health crisis because the nicotine levels are dangerously high, leading to wide-spread nicotine addiction. Id. at ¶ 5. Individuals under the age of twenty-five are particularly vulnerable to nicotine

2

addiction, which is shown to hinder brain development. Id. at ¶
5. The City alleges that FDV manufacturers and distributors have
triggered the largest increase in youth nicotine use because
FDVs deliver dangerous nicotine but have pleasant tastes and
scientific evidence shows that younger people are more likely to
use e-cigarettes when they are flavored. Id. at ¶¶ 6, 51. The
Amended Complaint details several of the recent upward trends in
youth nicotine use and the corresponding dangers. Id. at ¶ ¶ 41-
50.

　　　In response to the rise of FDVs and the resulting health
issues, government agencies at all levels have taken action to
regulate the e-cigarette industry, specifically targeting FDVs.
In January 2020, the Food and Drug Administration banned
flavored e-cigarette "pods" (a part of FDVs) because the
products are "so appealing" to children, id. at ¶ 53, and the
United States Surgeon General warned that an "epidemic of youth
e-cigarette use" may condemn a generation to a "lifetime of
nicotine addiction and associated health risks." Id. at ¶ 5.
Several states, including New York, have banned the sale of
FDVs. Id. at ¶ 54. New York City has also banned the sale of
FDVs. Id.

　　　The major FDV manufacturers are principally located in
China. Id. at ¶ 7. For example, Shenzhen IVPS Technology, Co.,
Ltd., a manufacturer of the best-selling "Hyde" brand, is

3

located in Shenzhen, China. Id. at ¶ ¶ 7, 63. The Amended
Complaint alleges that defendants import the "Hyde" brand of
FDVs to the United States, often to their warehouses in New York
state, and then distribute them from their warehouses to retail
stores in New York City, among other places, and on the
internet. Id. at ¶ 8. Those retail stores then sell those FDVs
to the public, in violation of New York City's ban on the sale
of FDVs. Id. at ¶ 8.

**B. The Defendants[1]**

**i.    The "Hyde Defendants"**

The City alleges that Defendant Magellan Technology, Inc.
("Magellan") is a Buffalo corporation that sells Hyde-branded
FDVs and other flavored e-liquids to the public in New York
State and elsewhere, "and/or owns or controls other businesses
that do so." Id. at ¶ 23. Magellan sells FDVs to sub-
distributors and retailers operating brick-and-mortar stores in
New York City "and/or on the internet." Id. at ¶ 66. Magellan's
Hyde products have been spotted at several smoke shops and
convenience stores in New York City and named in hundreds of

---

[1] The suit was brought against several other defendants, id. at
¶¶ 31-34, who have entered consent decrees and are no longer
actively litigating the case. The Court retains jurisdiction
over those defendants for the sole purpose of enforcing the
terms of the consent orders. Dkt Nos. 57, 66.

4

citations issued to retail stores for violating the ban on flavored vaping products. Id. at ¶¶ 67, 69.

Individual defendant Matthew Glauser, a New York citizen, is the president of Magellan and the president, founder, and chief strategy officer of Demand Vape. Id. at ¶ 25. Glauser also co-owns Firmitas Solutions, LLC, a nicotine product manufacturing facility located in New York and Virginia with individual defendant Donald Hashagen, a Virginia resident. Id. at ¶¶ 25-27.

Magellan serves as the purchasing arm of Defendant Ecto World, LLC, d/b/a Demand Vape ("Demand Vape"), and is considered Demand Vape's "sister company." Id. at ¶ 81. Demand Vape, a Buffalo limited liability company, is one of the largest e-cigarette distributors in the United States, offering approximately 30,000 products and selling to approximately 5,000 retailers in 49 states and internationally. Id. at ¶ 81. It sells FDVs to the public in New York State and elsewhere, "and/or owns and controls other businesses that do so." Id. at ¶ ¶ 24, 81, 84. Demand Vape also sells FDVs directly to the public through its website, www.demandvape.com. Id. at ¶¶ 24, 80.

Together, Magellan, Glauser, Hashagen, and Demand Vape are referred to as the "Hyde defendants."

### ii.    The "Empire Defendants"

Defendant Mahant Krupa 56 LLC, d/b/a Empire Vape Distributors ("Empire Vape"), is a limited liability company located in Queens that sells FDVs to conventional smoke shops and convenience/grocery stores in New York City and at least thirteen states, "and/or owns and controls other businesses that do so." Id. at ¶¶ 28, 85. Those stores then sell the FDVs to the public. Id. at ¶ 85. The Amended Complaint lists several instances of buyers entering stores in New York City that are owned or affiliated with Empire Vape and purchasing FDVs or observing them for sale. Id. at ¶¶ 91-100. Empire Vape also sells FDVs directly to the public through the website empiresmokedist.com, which stated, as of June 2023, "FLAVOR BAN? NO WORRIES. WE GOT YOU." Id. at ¶ 86. Empire Vape sells Hyde products branded with Magellan's trademark on its website. Id. at ¶ ¶ 86-87. On March 23, 2021, the Office of the New York City Sheriff conducted a search of Empire Vape's warehouse in Maspeth, New York and discovered thousands of units of FDVS and invoices indicating that those FDVs were being shipped to New York City stores and elsewhere. Id. at ¶ 88.

Defendants Nikunj Patel and Devang Koya, New York citizens, own and control Empire Vape. Id. at ¶¶ 29-30, 85.

Together, Empire Vape, Patel, and Koya are referred to as the "Empire defendants."

6

**C. The City of New York's Claims**

The gravamen of the City's allegation is that the Hyde and
Empire defendants operate jointly as an association-in-fact
enterprise (the "FDV Enterprise") to distribute FDVs to
retailers in New York City, in violation of federal and city
statutes and common law. Id. at ¶ 129. The City claims
defendants violated several provisions of the Prevent All
Cigarette Trafficking Act (the "PACT Act"), the Racketeer
Influenced and Corrupt Organizations Act (RICO), RICO
conspiracy, New York Public Health Laws, and common law public
nuisance.

The City first claims several violations of the PACT Act,
which imposes numerous requirements on entities that ship
cigarettes or e-cigarettes (the "PACT Act claims"). The City
alleges that none of the defendants reported the sales to New
York State, the New York City Department of Finance, nor the
Corporation Counsel of New York City, as required under federal
law. Id. at ¶ 124. The City further alleges the defendants
distributed FDVs through remote deliveries, meaning that the
defendants were not in the physical presence of the buyers when
the orders for FDVs were placed or delivered. Id. at ¶ 119.
Under the PACT Act, those remote sales of FDVs trigger several
requirements the defendants failed to comply with, such as
registering as a "delivery seller" with the appropriate

7

government entities and ensuring that all applicable taxes had
been paid. Id. at ¶ ¶ 117, 124. Specifically, the City alleges
that the defendants mailed FDVs in packages that did not
identify the contents of the packages, the packages did not
require an adult signature upon delivery, and the packages
weighed more than ten pounds. Id. at ¶ 121-26.

    The City also claims a RICO violation. The City alleges the
defendants conspired among themselves and with unknown persons
to violate RICO, as an "FDV enterprise." Id. at ¶ 142. The City
alleges that the defendants' concealment of (1) their identities
as "delivery sellers," (2) the details of the FDV sales into New
York City, and (3) the presence of FDVs in packages they ship
into New York, constitute mail or wire fraud, and are therefore
acts of racketeering. Id. at ¶¶ 133-34. The City alleges that
those actions were concealed to earn money through the concealed
sales of FDVs to people in New York City. Id. at ¶ 136. The City
claims the defendants worked together to conceal their
identities, and it therefore also alleges RICO conspiracy. The
City alleges that it has sustained injury to its business or
property from the concealment of the FDV sales into New York
City due to a "growing hazardous waste problem caused by
defendants' improperly disposed-of FDVs in parks and other City
property." Id. at ¶ 141. Because the FDVs contain toxic
chemicals, the City is required by law to dispose of them by

special procedures, forcing the City to incur additional costs. Id. The City also claims it had to develop effective methods to address the toxic electronic waste generated by e-cigarette devices and batteries and to mitigate harms to the public health caused by the defendants' sale of FDVs into New York City. Id.

The City claims the defendants violated New York Public Health Law §1399-ll by selling FDVs remotely to entities that are not legally allowed to purchase those FDVS. Id. at ¶ 146.

The City claims defendants' conduct has created a public nuisance by "unreasonably injuring the property, health, safety or comfort of a considerable number of New York City residents" through the creation of "a public health and safety hazard in the City through the promotion, distribution, marketing and sale of products that cause persistent youth and rising young adult addiction to nicotine, and potentially or actually contaminates City parks and public places with hazardous wastes." Id. at ¶ 155.

The Hyde defendants moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Empire defendants also moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), raising several arguments similar to those made by the Hyde defendants. Defendant Hagashan joined the Hyde defendants' 12(b)(6) motion and also moved to

9

dismiss the Amended Complaint against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.  Motion to Dismiss for Failure to State a Claim

### Legal Standards

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. That requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal citations omitted). When evaluating a motion to dismiss, the Court construes the complaint liberally, drawing all reasonable inferences in the plaintiff's favor and accepting as true all factual allegations, except for any legal conclusions couched as factual allegations. E.g., Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015).

### Discussion

10

## A. PACT Act Claims

The PACT Act was enacted in 2010 to, inter alia, "require internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers," "provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling," and "prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal Internet or contraband sales." PREVENT ALL CIGARETTE TRAFFICKING ACT OF 2009, PL 111-154, March 31, 2010, 124 Stat 1087. The PACT Act was amended in 2020 to extend its reach to e-cigarettes, such as the FDVs at issue here. See 15 U.S.C. § 375. To meet those goals, the PACT Act requires entities involved in the shipments of e-cigarettes to comply with various regulations, which the City claims the defendants violated.

The Hyde and Empire defendants raise several challenges to the PACT Act claims.

### i. Standing

The Hyde and Empire defendants complain that the City does not have standing to sue under the PACT Act. They argue that only localities that impose an excise tax on e-cigarettes have standing to enforce the PACT Act for violations relating to e-cigarettes, and the City imposes no such excise tax. Therefore, the Hyde and Empire defendants argue that the PACT Act claims

11

must be dismissed in their entirety. The relevant portion of the
PACT Act states,

> A state, through its attorney general, or a local
> government or Indian tribe that levies a tax subject
> to section 376a(a)(3) of this title, through its chief
> law enforcement officer, may bring an action in a
> United States district court to prevent and restrain
> violations of this chapter by any person or to obtain
> any other appropriate relief from any person for
> violations of this chapter, including civil penalties,
> money damages, and injunctive or other equitable
> relief.

18 U.S.C. § 378(C)(1)(A). Section 376a(a)(3) states,

> All State, local, tribal, and other laws generally
> applicable to sales of cigarettes[2] or smokeless tobacco
> as if the delivery sales occurred entirely within the
> specific State and place, including laws imposing—
>
> (A)   Excise taxes;
> (B)   Licensing and tax-stamping requirements;
> (C)   Restrictions on sales to minors; and
> (D)   Other payment obligations or legal requirements
>      relating to the sale, distribution, or delivery of
>      cigarettes or smokeless tobacco

New York City imposes an excise tax on cigarettes and a
sales tax on both cigarettes and e-cigarettes. New York City,
N.Y., Code § 11-1302.1; § 11-2001(a). Both provide standing to
sue.

Though New York City's excise tax is only levied on
traditional cigarettes and not e-cigarettes, that distinction

---

[2] Under the PACT Act, a cigarette is defined to include "an
electronic nicotine delivery system." 15 U.S.C. § 375(2)(A);
375(7). A FDV is an electronic nicotine delivery system.

does not limit who can bring an enforcement action under the
PACT Act. The criterion of levying a tax subject to section
376a(a)(3) clarifies which governments have standing to bring an
enforcement action. It does not limit the type of enforcement
action brought. To the contrary, the statutes states that the
action may be brought for "violations of this chapter by any
person." There is no limiting language requiring the violation
of the chapter to be against the same type of cigarette as the
type of tax levied.

New York City also levies a tax on e-cigarettes subject to
section 376a(a)(3) by imposing a sales tax on e-cigarettes.
Defendants argue that "a tax subject to section 376a(a)(3)" can
only mean an excise tax because, of the four enumerated laws in
376a(a)(3), only subsection (A) "Excise taxes" clearly
references a tax. However, that interpretation would render the
remainder of section 376a(a)(3) meaningless. Subsection (D)
provides for laws imposing "other payment obligations or legal
requirements relating to the sale, distribution, or delivery of
cigarettes or smokeless tobacco." A sales tax on e-cigarettes is
a payment and legal obligation relating to the sale of
cigarettes that satisfies subsection (D) under a plain reading
of that statute.

Despite the plain language of the statute, the Hyde and
Empire defendants argue that standing must be limited to

13

localities that impose an excise tax on e-cigarettes because the purpose of the PACT Act is to address "the problem of cigarette shipments from low-tax states (or Native American reservations) to high-tax states intended to evade tax laws." Empire Motion to Dismiss ("Empire MTD") (Dkt. No. 64) at 4. The City responds that the PACT Act and its amendments also strive to prevent children from having access to e-cigarettes. Such a searching inquiry into the purpose of the PACT Act is unnecessary here because the statutory language is clear on its face. New York v. Mountain Tobacco Co., 942 F.3d 536, 546 (2d Cir. 2019) ("'Every exercise in statutory construction must begin with the words of the text.' If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words.") (quoting Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003)).

The City has standing to bring its PACT Act claims.

## ii. Reporting Requirements

The PACT Act requires certain e-cigarette sellers to file reports with state and local governments when they ship e-cigarettes into those jurisdictions through interstate commerce. The Hyde and Empire defendants argue that they are not subject to the PACT Act's various requirements because the Amended Complaint fails to allege that defendants ship FDVs in interstate commerce. The Hyde defendants argue that the Amended

14

Complaint instead alleges that the FDVs were shipped from their headquarters in Buffalo, New York into New York City, and the shipments are therefore purely intrastate. The Empire Defendants argue that their facilities are located in Queens, which is in New York City, and, therefore, the Empire defendants have not shipped anything "into" New York City.

The PACT Act specifies who is required to file reports with the local authorities regarding shipments of FDVs:

Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco, or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer or shipment,

15 U.S.C. § 376.

The PACT Act defines interstate commerce as: "commerce between a State and any place outside the State, commerce between a State and any Indian country in the State, or commerce between points in the same State but through any place outside the State or through any Indian country." 15 U.S.C. § 375(10)(A). That definition "sweeps broadly to encompass all commerce except that which is purely intrastate." Mountain Tobacco Co., 942 F.3d at 547 (analyzing the PACT Act's definition of "interstate commerce").

15

The Amended Complaint alleges the "major manufacturers of FDVs and the e-liquids with which they are filled are principally located in China," including the manufacturer of the Hyde brand of FDVs. Am. Comp. at ¶ 7. The Amended Complaint continues, "China-based manufacturers sell and ship their products directly or through middlemen to 'master distributors' or sub-distributors in the United States. The defendants[3] on information and belief import FDVs manufactured in China (and elsewhere), distributing the devices to retail stores that in turn sell FDVs to the Public." Id. at ¶ 8. "Magellan is the master distributor for all Hyde and Juno-branded products, some of which are manufactured for Magellan in China." Id. at ¶ 63.

Read in the light most favorable to the City, the allegations in the Amended Complaint satisfy the interstate commerce requirement for both the Hyde and Empire defendants because they allege that the FDVs were originally manufactured in China, a place outside of New York state, shipped by both the Hyde and Empire defendants into New York state, and then distributed by both the Hyde and Empire defendants into New York City for sale at a profit. That the FDVs distributed by the Hyde defendants paused in Buffalo does not remove them from the

---

[3] "Defendants" is not defined in the Amended Complaint. Making all inferences in the light most favorable to the City, the Court finds that the allegation is made against the Hyde and Empire defendants.

16

interstate commerce. See New York v. Grand River Enterprises Six Nations, Ltd., 2019 WL 516955, at *4 (W.D.N.Y. Feb. 11, 2019) (finding the "interstate commerce" requirement of the PACT Act met when cigarette shipments were shipped from Canada to an Indian Reservation in New York State and then to various locations in the state of New York). "Even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce." Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 223 (2d Cir. 2002) (quoting Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943)).

The Hyde defendants argue that interpreting "interstate commerce" in a manner that applies to them is contrary to principles of statutory interpretation. To the contrary, familiar principles of statutory interpretation support a finding that the FDVs traveled through interstate commerce. When analyzing the definition of interstate commerce under the PACT Act, the Second Circuit emphasizes that "a statute should be interpreted in a way that avoids absurd results." Mountain Tobacco Co., 942 F.3d at 547. If being re-distributed at a packaging center and then shipped locally could transform interstate commerce into purely intrastate commerce, companies

17

could easily avoid reporting requirements by simply depositing them with a middleman in the state of the locality where they would ultimately be sold

The defendants, having shipped FDVs in interstate commerce, were required to make certain reports, which the Amended Complaint alleges that they failed to do. The motion to dismiss the PACT Act reporting claims is therefore denied.

### iii. Delivery Sales

The Hyde and Empire defendants argue that the City has failed to allege the defendants violated the PACT Act's "delivery sales" requirements. Under the PACT Act, if an individual makes a "delivery sale," then that individual is required to comply with shipping, recordkeeping, and tax collection requirements. 15 U.S.C. § 376a.

The PACT Act defines a "delivery sale" as follows,

any sale of cigarettes or smokeless tobacco to a consumer if—

(A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or

(B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

18

15 U.S.C. § 375(5).

The Hyde and Empire defendants argue that the City has not alleged that they made a "delivery sale" because the City failed to allege that there was a sale of FDVs to a "consumer." Under the PACT Act, "consumer,"

    (A)  Means any person that purchases cigarettes or smokeless tobacco; and

    (B)  Does not include any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco.

15 U.S.C. § 375(4). Defendants say that because the purchasers of the FDVs sold by the defendants were "lawfully operating" as a manufacturer, distributor, wholesaler, or retailer, the purchasers were not consumers, and there was therefore no "delivery sale" and no resulting obligations.

The PACT Act does not define the phrase "lawfully operating," and the defendants urge this Court to define that phrase as "operating with any necessary state or local registration or license." Hyde Motion to Dismiss ("Hyde MTD") (Dkt. No. 53) at 11; Empire MTD at 7. Defendants argue that, should the Court apply that definition to the phrase "lawfully operating," the PACT Act "delivery sales" claims must be dismissed because the City has not alleged

that any purchaser lacked the proper registration. The City
responds that the defendants' definition is counter to the
PACT Act's plain meaning and instead urges the Court to
define "lawfully operating" as acting "not contrary to
law." City Opp. to Hyde MTD (Dkt. No. 70) at 22.
Defendants offer three arguments against that plain
language reading of the statute.

First, defendants fault the City's proposed definition
by arguing that Congress did not intend for the phrase
"lawfully operating" to be so expansive. The Jenkins Act,
the predecessor to the PACT Act, used the phrase "licensed"
to describe exempt consumers. Hyde MTD at 11 (citing 15
U.S.C. §§ 375(3), 376(a) (2009)). They argue that when
Congress amended the Jenkins Act to form the PACT Act,
there was no indication that it intended to change the
meaning of "consumers." That argument fails because there
was a clear indication that Congress intended to change who
qualified as a "consumer" under the PACT Act: Congress
altered the wording from "licensed" to "lawfully
operating." Had Congress intended to keep the same meaning,
there would have been no reason to make the change.

Second, defendants protest that the City's definition
of "lawfully operating" would lead to absurd results. For
example, how would defendants know if every purchaser was

20

complying with laws, such as locking certain containers? However, that reach for one absurd result does not change the plain meaning of the statute. Additionally, as the City points out, it would be clear when a purchaser requests FDVs that they were not lawfully operating because of the FDV ban.

Third, defendants argue that the Court should follow the "rule of lenity," which requires Courts to adopt the definition of an ambiguous statute put forth by the defendants. However, the "rule of lenity" applies when a statute is ambiguous, and the it is not here. Burgess v. United States, 553 U.S. 124, 135 (2008) ("'[T]he touchstone of the rule of lenity is statutory ambiguity.'") (alteration in the original) (quoting Bifulco v. United States, 447 U.S. 381, 387 (1980)).

The Court finds that the term "lawfully operating" means compliance with laws under the plain meaning of the statute. Black's Law Dictionary defines "lawful" as "not contrary to law; permitted or recognized by law; rightful." (11th ed. 2019). The plain meaning of "lawful" is not limited to "licensed."

As the City has alleged that the purchasers of the FDVs are not complying with local, state, and federal laws that ban FDVs, the purchasers are "consumers," and the

21

sales to them are "delivery sales." Therefore, the
defendants are required to comply with the resulting
requirements.

The PACT Act requires "delivery sellers" to comply
with applicable laws, clearly and conspicuously label
packages that contain cigarettes, ensure that no single
package weighs more than ten pounds, verify that the
receiver of the package is above a minimum age, and ensure
that the relevant excise taxes have been paid. The
Defendants argue that the City has not adequately alleged
violations of the labeling and weight restrictions.
Defendants are correct.

The City adequately alleges throughout the Amended
Complaint that the Hyde and Empire defendants do not comply
with applicable law by selling FDVs in violation of the
flavor ban and failing to pay all necessary taxes. See
generally Am. Comp. It also successfully alleges that the
defendants failed to file certain reports. Id. at ¶¶ 123-
24.

As to the other alleged violations, the Amended
Complaint alleges the following: the Hyde and Empire
defendants violate the PACT Act because (1) "in none of
their delivery sales of FDVs to consumers did Magellan,
Demand Vape, Empire Vape, or Star Vape identify the package

22

contents on the outside of the packages as cigarettes," Id.
at ¶ 120; (2) "in none of their delivery sales of FDVs to
consumers did Magellan, Demand Vape, Empire Vape, or Star
Vape utilize a method of delivery requiring an adult
signature upon delivery," Id. at ¶ 122;[4] and (3) "no
defendant made certain that the weight of FDVs sold,
delivered or caused to be delivered in a single sale or
delivery did not exceed ten pounds." Id. at ¶ 126.

The City argues that those allegations are all that
are needed to state a claim. But to survive a motion to
dismiss, the City must allege facts that violate the law
and not simply restate the elements of a cause of action.
Twombly, 550 U.S. at 555. In contrast to the reporting
requirements, under which the failure to act is a violation
of the PACT Act, the proper labeling, age requirements, and
weight requirements require the defendants to affirmatively
act improperly in order to violate the statute. The City
has not alleged even one instance of the defendants'
failure to comply with the shipping, labeling, and age

---

[4] The Amended Complaint makes specific allegations that two
defendants, Dorbes LLC and Christian A. Smith, did not
verify that the recipients of its FDVs products were over
the age of twenty one. See e.g., Am. Comp. at ¶¶ 73-79.
However, Dorbes LLC and Smith have entered consent degrees
with the City. Dkt. No. 66. The specific age restriction
allegations were not made against the Hyde or Empire
defendants.

requirements. The conclusory allegation that they failed to meet those requirements is not enough to allege that the defendants have affirmatively acted to violate the PACT Act. The claims for the PACT Act violations as they relate to the label, age, and weight requirements are therefore dismissed with leave to amend.

## B. RICO Claims

The Hyde and Empire defendants raise several objections to the City's RICO claims. They argue that (1) the City fails to allege that defendants engaged in a fraudulent scheme to obtain money or property from the City, (2) the City fails to allege that defendants' actions caused the City's claimed injuries, and (3) the City fails to specifically plead instances of defendants' alleged use of mail carrier or interstate wires. Hyde MTD at 14. Only the second argument need be addressed.

To establish a civil RICO claim, "'plaintiffs must show (1) a substantive RICO violation under [18 U.S.C.] § 1962, (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation.'" Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 83 (2d Cir. 2015) (alteration in the original) (internal citations omitted). The third element requires the City of New York to plead both but-for and proximate causation between the substantive RICO

24

violation (here the alleged fraudulent concealment of FDVs into New York City) and the City's injury. Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010).

When addressing proximate cause in a case that similarly alleged concealed shipments of cigarettes into the City of New York, the U.S. Supreme Court stated,

> Proximate cause for RICO purposes, we made clear, should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote," 'purely contingent,' or 'indirec[t]' is insufficient.

Id. (internal citations omitted) (alteration in the original). To determine whether a RICO violation was the proximate cause of the City's harm, Hemi Grp. instructs courts "not to go beyond the first step" of causation. Id. at 10. The causation requirement under RICO is necessarily strict because of the steep penalties that arise from a RICO violation, including treble damages and attorney's fees. Id. at 17.

The City has put forth two theories of injury that can be used to evaluate causation. In the Amended Complaint, the City alleges it was injured by spending extra money to clean up improperly disposed of FDVs and by addressing the public health risks caused by electronic cigarettes (the "cleanup cost"). In its oppositions to the motions to dismiss, the City alleges that it has met the proximate cause requirement through a different

injury: the cost the City expends when the "direct seizure by
the New York City Sheriff of e-cigarettes from retail stores
supplied by the Hyde defendants, not from City residents tossing
away e-cigarettes" (the "seizure cost"). Hyde Opp. at 34
(emphasis in the original).

Defendants argue that the "seizure cost" was not alleged in
the Amended Complaint. The Amended Complaint states that the
City Sheriff searched Empire Vape's[5] warehouse and found
thousands of units of FDVs and invoices indicating that the FDVs
were being shipped to retail stores in New York City. Am. Comp.
at ¶¶ 88-89. Although the City did not frame that seizure as an
injury, reading the Amended Complaint in the light most
favorable to the City and drawing all inferences its favor, the
Court will consider the injury that occurs from seizing FDVs in
Empire Vape's warehouse. However, the Court will not consider
the injury that occurs from seizing FDVs from retail stores in
New York City because that allegation is entirely absent from
the Amended Complaint.

Neither the cleanup cost nor seizure cost supports a
finding of proximate cause.

The City's cleanup cost is too attenuated to support a

---

[5] The Court notes that the "seizure cost" is alleged against only
the Empire defendants. As such, the proximate cause analysis of
the seizure cost is not applicable to the Hyde defendants.

finding of proximate cause. The City alleges that, if not for the concealed shipments of FDVs into the City, the New York City retailers would not sell FDVs, consumers would not purchase the FDVs and improperly dispose them, there would not be a public health crisis caused by the increased use of e-cigarettes and therefore the City would not then be required to spend money on cleanup costs. That theory of causation clearly goes far beyond "the first step" of causation. It also rests on the intervening actions of third and fourth parties—the New York City retailers who sell the FDVs and the consumers who chose to buy, use, and improperly dispose of e-cigarettes. The presence of third- and fourth-party intervenors weighs strongly against a finding of proximate cause. Hemi Grp., 559 U.S. at 11 (finding no proximate cause where the "theory of liability rests not just on separate actions, but separation actions carried out by separate parties") (alterations in the original). The causation theory also relies on the faulty assumption that consumers are only improperly disposing of FDVs distributed by the defendants. But the Amended Complaint contradicts that assumption—it instead points to harm from all e-cigarettes, not just FDVs and much less specific to the FDVs that defendants sell. "Because the City's theory of causation requires us to move well beyond the first step," the cleanup costs do not support the proximate

cause requirement.[6] See Hemi Grp, 559 U.S. at 10.[7]

The seizure cost fails to support even but-for causation; indeed, the City does not attempt to argue that it does. The seizures occurred at the Empire Vape warehouse, where the FDVs were stored before being fraudulently shipped into New York City. The City has made no showing of a link between the concealed shipment of the FDVs and the raid of the origin of those shipments.

Because the City fails to adequately allege proximate causation, the Court need not address the defendants' remaining arguments. The RICO claims are dismissed with leave to amend the complaint. The City's claim for RICO conspiracy is also necessarily dismissed with leave to amend.

---

[6] In opposition, the City points to several cases where courts have found the proximate cause requirement met for an injury caused by the concealment of cigarettes shipped into New York City. Those cases are easily distinguishable. In those cases, the City alleged that it was harmed by the failure of those defendants to pay taxes; here, the City's alleged injury is far more attenuated and insufficient to support a finding of proximate cause.

[7] The City cites In re JUUL to support a finding of proximate causation. See generally In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig., 497 F. Supp. 3d 552 (N.D. Cal. 2020). However, the government plaintiffs in In re JUUL alleged that the defendants were marketing their products directly to children in schools and made specific allegations of costs required to address the harm resulting from children smoking Juul's products in school. Id. Here, the City has not even alleged that FDVs are more difficult to clean up than the allowed, non-flavored e-cigarettes are.

## C. New York Public Health Law §§ 1399-ll Claim

The Hyde and Empire defendants argue that the City's claim

under § 1399-ll of the New York Public Health Law, which

prohibits remote sales of vapor products to certain unauthorized

buyers, fails because the City does not have standing to enforce

the vapor-product-specific provisions of the Public Health Law.

The City lacks standing, defendants argue, because it taxes only

cigarettes and does not impose an excise tax on vapor products.

Hyde MTD at 23.

New York Public Health Law § 1399-ll states in relevant

part,

> In addition, the corporation counsel of any political
> subdivision that imposes a tax on cigarettes or vapor
> products intended or reasonably expected to used with
> or for the consumption of nicotine may bring an action
> to recover the civil penalties provided by subdivision
> five of this section and for such other relief as may
> be deemed necessary with respect to any cigarettes or
> vapor products intended or reasonably expected to be
> used with or for the consumption of nicotine shipped,
> caused to be shipped or transported in violation of
> this section to any person located within such
> political subdivision.

N.Y. Pub. Health Law § 1399-ll(6). Under a plain reading of

the statute, the City has standing to enforce the Public Health

Law if the City taxes cigarettes or vapor products. Therefore,

the City, which taxes cigarettes, has standing. The word "or"

means that either a tax on cigarettes or vapor products will

suffice to provide standing, and there is no indication that the

legislature intended for the type of tax imposed to limit the underlying conduct that can be enforced under the statute.

The defendants next argue that the City has not properly alleged a violation of the New York Public Health Law because the subdivision of the Public Health Law cited in the Amended Complaint, § 1399-ll(1), refers to cigarettes and not vapor products, which are in § 1399-ll(1-a). The City responds that this was an inadvertent mistake and it intended to claim a violation of the subdivision of the statute addressing vapor products in the Amended Complaint. That mislabeling of a subdivision does not require dismissal of the Public Health Law claim. The federal rules "'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" Quinones v. City of Binghamton, 997 F.3d 461, 468 (2d Cir. 2021) (quoting Johnson v. City of Shelby, 574 U.S. 10, 11-12 (2014)). The Amended Complaint is replete with allegations relating to flavored vaping products. Defendants were on notice that the Public Health Law related to the vaping products, and that is all that is required under Federal Rule of Civil Procedure 8. See Smith v. Campbell, 782 F.3d 93, 99 (2d Cir. 2015).

The Motion to Dismiss the Public Health Law claim is denied.

30

**D. Public Nuisance Claim**

"A public nuisance is generally defined as 'an unreasonable interference with a right common to the general public.'" In re JUUL, 497 F. Supp. 3d at 647 (quoting Restatement (Second) of Torts § 821B (1979)) (applying New York law); see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 121 (2d Cir. 2013). To prevail on a public nuisance claim, the City "must show that the defendant's conduct 'amounts to a substantial interference with the exercise of a common right of the public,' thereby 'endangering or injuring the property, health, safety or comfort of a considerable number of persons.'" In re MTBE, 725 F.3d at 121 (quoting 532 Madison Ave. Gourmet Foods v. Finlandia Ctr., 96 N.Y.2d 280, 292 (2001)).

The Hyde defendants say that the City's public nuisance claim "is rooted in the assertion that Magellan and/or Demand Vape violated New York Public Health law § 1399-mm-1 by engaging in the retail sale of flavored vapor products to individual consumers." Hyde MTD at 25 (emphasis in the original). The Hyde defendants argue that because the City fails to allege the Hyde defendants engage in the retail sale of flavored vapor products, the public nuisance claim fails.

The Empire defendants make a related argument, stating that because the City does not have standing to bring a claim under New York Public Health Law, 1399-mm, the City is reframing its

31

claim for the same underlying conduct as a public nuisance. The Empire defendants claim that the New York Court of Appeals forecloses this "attempt to evade" regulations in City of New York v. Smokes-Spirits.com, Inc., which, in defendants' view, holds that the City cannot maintain a public nuisance claim that is "predicated" on Public Health Law § 1399-mm-1. The Empire defendants misread Smokes-Spirits. There, the City put forth an injury theory relating to tax evasion and claimed that because the legislature had the authority to enact laws deeming certain activities to be public nuisances, Public Health Law 1399-11, which prevented certain shipments of cigarettes without paying taxes, made that specific tax evasion a public nuisance. The New York Court of Appeals said that conclusion was contrary to the Legislature's intent, stating that the "presence of such a scheme here, when coupled with the Legislature's clear expressions that the public health thrust of section 1399-11 was related to the prevention of underage smoking, persuades us that the Legislature did not intend its findings to authorize a public nuisance claim based primarily upon alleged tax evasion." Smokes-Spirits, 12 N.Y.3d at 616, 629 (2019).

The flaw with both the defendants' theories is simple. The City is claiming a public nuisance arising as a result of the public smoking FDVs. It is not claiming that New York Public Health law § 1399-mm-1's prohibition on the sale of FDVs created

a public nuisance. Nor is it claiming, like in Smokes-Spirits,

that tax evasion is a public nuisance created by Public Health

Law § 1399. Smokes-Spirits is inapposite on its facts and

therefore does not bar the City's standing to bring a public

nuisance claim.[8]

Having established the City's theory of public nuisance,

the Court now turns to defendants' argument that the City has

still failed to allege facts supporting a claim for public

nuisance.

The Hyde and Empire defendants first argue that there is no

public nuisance because smoking FDVs is not causing public

health crisis; however, that argument goes to the veracity of

the facts alleged in the Amended Complaint. At the motion to

dismiss phase, the facts alleged in the Amended Complaint are

accepted as true. Defendants will have the opportunity to

dispute those facts at trial. The Amended Complaint alleges

repeatedly that smoking FDVs is creating a public health crisis,

especially among young people. Public health crises are

routinely upheld as a "substantial interference with a public

right" and "injurious to the health of a considerable number of

---

[8] The Empire defendants' reliance on City of New York v. FedEx
Ground Package Sys., Inc. is similarly misplaced because the
injury alleged there was also one of tax evasion. 91 F. Supp. 3d
512, 530 (S.D.N.Y. 2015) ("After all, this action—like Smokes-
Spirits—primarily involves alleged tax evasion.").

people." See, e.g., In re Opioid Litigation, 2018 WL 3115102, at
*22 (N.Y. Sup. Ct. June 18, 2018).

The Hyde defendants then argue they are not liable for a
public nuisance because they are not the "substantial cause" of
the public nuisance and several other entities were involved in
the creation of the alleged public nuisance. The causation
analysis required for a public nuisance differs significantly
from the causation analysis required for the City's RICO claim.
To state a claim for public nuisance, the City need only allege
that the Hyde defendants contributed to or maintained the public
nuisance. City of New York v. Beretta U.S.A. Corp., 315 F. Supp.
2d 256, 281 (E.D.N.Y. 2004) ("Satisfaction of the causation
requirement for liability in public nuisance actions requires
proof that a defendant, alone or with others, created,
contributed to, or maintained the alleged interference with the
public right.") In contrast to RICO causation, New York courts
have found that the suppliers of an item that causes a public
nuisance may be liable for a public nuisance for "setting in
motion or being a force in the sequence of events resulting in
injury to the public." Id. "Intervening actions, even multiple
or criminal actions taken by third parties, do not break the
chain of causation if a defendant could reasonably have expected
their nature and effect." Id. (citing State v. Schenectady
Chems. Inc., 103 A.D.2d 33 (N.Y.App.Div.1984)). "Under New York

34

law, '[e]very one who creates a nuisance or participates in the creation or maintenance thereof is liable for it.'" In re MTBE, 725 F.3d at 121 (quoting Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp., 86 A.D.2d 826, 826 (1st Dep't 1982)) (rejecting defendant's argument that its conduct as a supplier of gasoline was too remote to support a public nuisance claim) (alteration in the original).

The Amended Complaint alleges repeatedly that the defendants supplied FDVs to retail stores that sold them to the public, creating a public health crisis. The City has sufficiently alleged that defendants contributed to the public nuisance. The motion to dismiss the public nuisance claim is denied.

**III. Motion to Dismiss for Lack of Personal Jurisdiction**

**Legal Standards**

Individual defendant Hashagen, a citizen of the state of Virginia, challenges this Court's personal jurisdiction over him. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2011) (internal citations and quotations omitted). That showing requires the City to make "'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would

35

suffice to establish jurisdiction over the defendant.'" Id. (quoting In re Magnetic Audiotape, 334 F.3d 204, 206 (2d Cir. 2003)) (alterations in the original). When, as here, no jurisdictional discovery has occurred, the Court is required to construe the pleadings and affidavits in the light most favorable to the City and accept all alleged facts as true. Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013).

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis."[9] Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010). The Court first applies the long-arm statute of the forum state, here New York. Id. at 163. If the long-arm statute applies, the Court then analyzes "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id. at 164.

The City alleges it satisfies New York's long-arm statute because Hashagen transacted business in the state. New York's long arm statute permits personal jurisdiction "over any non-domiciliary ... who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply

---

[9] The City argues in the alternative that it has personal jurisdiction over Hashagen because RICO provides for national service of process. However, because the RICO claim has been dismissed, it cannot provide a basis for personal jurisdiction.

goods or services in the state." Id. at 163-64 (citing N.Y
C.P.L.R. § 302(a)) (alteration in the original). The City
alleges that it meets this test under the "agency theory" of
jurisdiction, which provides jurisdiction over an out-of-state
corporate officer if the corporation transacted business in New
York as the officer's agent. Karabu Corp. v. Gitner, 16 F. Supp.
2d 319, 323 (S.D.N.Y. 1998). "At the heart of this inquiry is
whether the out-of-state corporate officers were 'primary
actor[s] in the transaction in New York' that gave rise to the
litigation, and not merely 'some corporate employee[s] ... who
played no part in' it." Id. (alterations in the original)
(internal citations omitted).

## Discussion

The Amended Complaint makes only quick mention of Hashagen
and the company he allegedly leads, Firmitas. It states, "Donald
Hashagen is a principal and part owner of Firmitas and is a
citizen of the state of Virginia with a business address of 5604
Charles City Circle, Henrico, VA 23231." Am. Comp. at ¶ 27.
"Firmitas is a nicotine product manufacturing facility and co-
packer of bottled e-liquids and e-liquid 'pods' for major e-
cigarette brands. Firmitas has a business address of 2225
Kenmore Ave Ste 110, Buffalo, New York 14207-1359 and 5604
Charles City Circle, Henrico, VA 23231." Id. at ¶ 26. "At all
times relevant to this complaint, Matthew J. Glauser, Donald

37

Hashagen, Nikunj Patel, Devang Koya, Nabil Hassen, and Christian

A. Smith (when referred to collectively, the 'Individual

Defendants') have each been a 'person' associated with or a

member of one or more of Magellan, Demand Vape, Empire Vape,

Star Vape, or the FDV Enterprise." Id. at ¶ 130. "Each

individual Defendant has operated or managed one or more of

Magellan, Demand Vape, Empire Vape, Star Vape, Dorbes, and/or

the FDV Enterprise through a pattern of racketeering activity."

Id.

The City also puts forth several declarations in connection

with its opposition to Hashagen's Motion to Dismiss for Lack of

Personal Jurisdiction, which are properly considered on a motion

to dismiss for personal jurisdiction. Dorchester, 722 F.3d at

85. Those declarations state that Hashagen is an Executive Vice

President of Magellan, which has a business address in New York.

The City also points out that Hashagen "avers that Firmitas

transacts business in New York as 'a contract manufacturer of

nicotine-containing e-liquids' for Magellan." Hyde Opp. at 55,

Proshanksy Declaration (Dkt. No. 69).

The City argues those facts are sufficient to establish

jurisdiction over Firmitas and Hashagen because Firmitas, and

"perhaps Magellan," acted as Hashagen's agents when the

organizations conducted business in New York City.

38

The agency theory of personal jurisdiction fails because
the City puts forward no specific facts to show that Hashagen
controlled the actions of Firmitas or Magellan in New York. In
its opposition to Hashagen's Motion to Dismiss, the City claims
that Hashagen "could have operated or managed Firmitas and
Magellan and would have had knowledge of and consented to such
company actions as the sale of e-cigarettes or e-liquids by
Magellan or Firmitas to New York City" and that those facts
entitle the City to, at a minimum, jurisdictional discovery.
Hyde Opp. at 60. However, such a "general allegation that an
officer controls a corporation is not sufficient to establish
personal jurisdiction on an agency theory." Ramiro Aviles v. S &
P Glob., Inc., 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019)
(internal citations and quotations omitted). Those statements
are not "good faith, legally sufficient allegations of
jurisdiction;" they are merely speculation. Dorchester, 722 F.3d
at 85. "'Courts have ... routinely granted 12(b)(2) motions for
lack of personal jurisdiction where the plaintiff made only
broadly worded and vague allegations about a defendant's
participation in the specific matter at hand.'" Cullum v.
Wyndham Hotels & Resorts Corp., 2024 WL 552494, at *9 (S.D.N.Y.
Feb. 12, 2024) (quoting Karabu Corp., 16 F. Supp. 2d at 324)
(alteration in the original). The City has not sufficiently

alleged facts to support jurisdiction over Hashagen at this
time.

The City asks the Court to order jurisdictional discovery
to determine whether there is jurisdiction over Hashagen. The
Court has considerable discretion to determine whether the
plaintiff should be entitled to jurisdictional discovery.
Dorchester, 722 F.3d at 85. While the "bar for granting
'jurisdictional discovery' is low," jurisdictional discovery is
not warranted here because the City has failed to make a
sufficient prima facie case for personal jurisdiction showing to
justify the great expense of discovery. See Reed Int'l, Inc. v.
Afghanistan Int'l Bank, 657 F. Supp. 3d 287, 298 (S.D.N.Y.
2023).

The motion to dismiss for lack of jurisdiction is granted.
The City has leave to amend the complaint.


So ordered.

Dated:    New York, New York
          May 24, 2024

                              _Louis L. Stanton_
                              LOUIS L. STANTON
                              U.S.D.J.