UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X:
The City of New York,                                   :
                                                        :
                          Plaintiff,                    :
                                                        :
            -against-                                   :
                                                        :        Case No. 1:23-cv-05880-LLS-OTW
                                                        :
Magellan Technology, Inc., et al.,                      :
                                                        :
                          Defendants.                   :
                                                        :
------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MAGELLAN TECHNOLOGY, INC.'S, ECTO WORLD, LLC'S, AND
MATTHEW J. GLAUSER'S MOTION FOR RECONSIDERATION OF
<u>OPINION & ORDER (ECF NO. 103) ON DEFENDANTS' MOTION TO DISMISS</u>**

Eric N. Heyer (admitted *pro hac vice*)
James C. Fraser (admitted *pro hac vice*)
Joseph A. Smith (admitted *pro hac vice*)
Anna Stressenger (admitted *pro hac vice*)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
eric.heyer@thompsonhine.com
james.fraser@thompsonhine.com
joe.smith@thompsonhine.com
anna.stressenger@thompsonhine.com

Richard De Palma
THOMPSON HINE LLP
300 Madison Avenue
27th Floor
New York, NY 10017
Phone: 212.908.3969
Fax: 212.344.6101
richard.depalma@thompsonhine.com

*Counsel for Defendants Magellan Technology, Inc.,
Ecto World, LLC, and Matthew J. Glauser*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ..................................................................................................... 2

ARGUMENT .................................................................................................................. 3

    A.    The Court Committed Clear Error When It Concluded that Defendants Subject Themselves to the PACT Act's Registration and Reporting Requirements Merely by Receiving ENDS Products that Originate Overseas and Then Selling Those Products in Purely Intrastate Transactions ...................................................................................... 3

    B.    The Court Overlooked the Federal Government's Views and the Hyde Defendants' Reasonable Reliance Thereon When It Concluded that the PACT Act Requires Companies to File Reports in Jurisdictions that Do Not Levy Excise Taxes on ENDS Products ................................................................................................................... 11

    C.    The Court Committed Clear Error in Interpreting the Term "Lawfully Operating" ...... 17

CONCLUSION ............................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Barron v. Helbiz, Inc.*,
   No. 20-cv-04703, 2023 U.S. Dist. LEXIS 213406 (S.D.N.Y. Nov. 30, 2023) ......................... 2

*Bilyou v. Dutchess Beer Distributors, Inc.*,
   300 F.3d 217 (2d Cir. 2002) .............................................................................................. 8

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ...................................................................................................... 22

*Chevron v. National Resources Defense Council*,
   467 U.S. 837 (1984) ...................................................................................................... 12

*City of Almaty v. Sater*,
   No. 18-cv-3440, 2022 U.S. Dist. LEXIS 122163 (S.D.N.Y. July 11, 2022) ................... 2, 3

*DPWN Holdings (USA), Inc. v. United Airlines, Inc.*,
   747 F.3d 145 (2d Cir. 2014) ......................................................................................... 4, 5

*Dunn v. United States*,
   442 U.S. 100 (1979) ...................................................................................................... 15

*ExxonMobil Pipeline Co. v. United States DOT*,
   867 F.3d 564 (5th Cir. 2017) ......................................................................................... 14

*Grand River Enters. Six Nations Ltd. v. Sullivan*,
   No. 3:16-cv-01087-WWE, 2018 U.S. Dist. LEXIS 165114 (D. Conn. Sept. 26,
   2018) ............................................................................................................................. 9

*Grand River Enters. Six Nations v. Boughton*,
   988 F.3d 114 (2d Cir. 2021) ............................................................................................ 9

*Griffin Indus. v. Petrojam, Ltd.*,
   72 F. Supp. 2d 365 (S.D.N.Y. 1999) ................................................................................ 3

*Griffin v. Oceanic Contractors*,
   458 U.S. 564 (1982) ...................................................................................................... 16

*Herschaft v. N.Y.C. Campaign Fin. Bd.*,
   139 F. Supp. 2d 282 (E.D.N.Y. 2001) .............................................................................. 2

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) .......................................................................................................... 15

*Montilla v. INS*,
  925 F.2d 162 (2d Cir. 1991) ..............................................................................14

*Morton v. Ruiz*,
  415 U.S. 199 (1974) ..........................................................................................14

*NCUA Bd. v. United States Bank N.A.*,
  No. 18-cv-11366, 2023 U.S. Dist. LEXIS 129433 (S.D.N.Y. Jul. 26, 2023) ..........................2

*New York v. Grand River Enters. Six Nations, Ltd.*,
  2019 WL 516955, 2019 U.S. Dist. LEXIS 21558 (W.D.N.Y. Feb. 11, 2019) ..................5, 7

*New York v. Mt. Tobacco Co.*,
  942 F.3d 536 (2d Cir. 2019) ........................................................................5, 9

*PHH Corp. v. CFPB*,
  839 F.3d 1 (D.C. Cir. 2016), *reinstated in relevant part en banc*, 881 F.3d 75
  (D.C. Cir. 2018) ................................................................................................14

*Salute v. Stratford Greens Garden Apts.*,
  135 F.3d 293 (2d Cir. 1998) ..............................................................................16

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ..........................................................................................12

*Troll Co. v. Uneeda Doll Co.*,
  483 F.3d 150 (2d Cir. 2007) ..............................................................................16

*United States v. Figueroa*,
  165 F.3d 111 (2d Cir. 1998) ..............................................................................15

*United States v. Lanier*,
  520 U.S. 259 (1997) ..........................................................................................15

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ..........................................................................................12

*United States v. One Big Six Wheel*,
  987 F. Supp. 169 (E.D.N.Y. 1997) ....................................................................15

*United States v. Thompson/Center Arms Co.*,
  504 U.S. 505 (1992) ..........................................................................................15

*Wages & White Lion Investments, LLC v. FDA*,
  90 F.4th 357 (5th Cir. 2024) ..............................................................................14

*Walling v. Jacksonville Paper Co.*,
  317 U.S. 564 (1943) ......................................................................................8, 9

## STATUTES

15 U.S.C. § 375 ............................................................................................... *passim*

15 U.S.C. § 375(3) (2009) ........................................................................... 17, 18

15 U.S.C. § 375(4) ....................................................................................... 17, 19

15 U.S.C. § 375(5) ............................................................................................. 17

15 U.S.C. § 375(10)(A) ..................................................................................... 15

15 U.S.C. § 376 ............................................................................................... *passim*

15 U.S.C. § 376(a) ......................................................................................... *passim*

15 U.S.C. § 376(a) (2009) ..................................................................... 17, 18, 20

15 U.S.C. § 376(a)(3) ....................................................................................... 3, 4

15 U.S.C. § 376a ............................................................................................ *passim*

15 U.S.C. § 376a(b)(3) ..................................................................................... 21

15 U.S.C. § 376a(b)(4)(A)(iii)(I) ..................................................................... 22

15 U.S.C. § 377 ................................................................................................. 21

15 U.S.C. § 377(a) ...................................................................................... 14, 21

15 U.S.C. § 377(b) ...................................................................................... 14, 21

15 U.S.C. § 378(b) ............................................................................................. 11

21 U.S.C. § 331(a) ............................................................................................ 22

21 U.S.C. § 337(a) ............................................................................................ 22

21 U.S.C. § 387b(6)(A) ..................................................................................... 22

49 U.S.C. § 13501 ............................................................................................... 8

N.J. Rev. Stat. § 54:40B-6 ................................................................................ 20

N.M. Stat. Ann. § 7-12A-7 ............................................................................... 20

N.Y. Tax Law § 470 .......................................................................................... 20

N.Y. Tax Law § 480 .......................................................................................... 20

New York Public Health Law § 1399-*ll* .................................................................................23, 24

New York Public Health Law § 1399-mm-1 ........................................................................22, 23

**OTHER AUTHORITIES**

New York City Administrative Code § 17-715(b)(1) ..................................................................23

24 R.C.N.Y. 28-02(b) .................................................................................................................23

ATF, Prevent All Cigarette Trafficking (PACT) Act Information Guide, available
    at https://www.atf.gov/alcohol-tobacco/docs/guide/prevent-all-cigarette-
    trafficking-pact-act-information-guide/download ..................................................................11

ATF, PACT Act FAQs, https://www.atf.gov/alcohol-tobacco/qa/do-we-need-file-
    monthly-pact-act-report-states-do-not-apply-taxes-ends-products........................................12

CDC, Current Cigarette Smoking Among Adults in the United States,
    https://www.cdc.gov/tobacco/data_statistics/fact_sheets/adult_data/cig_smoki
    ng/index.htm#:~:text=Current%20smoking%20has%20declined%20from,ever
    y%20100%20adults)%20in%20202 ...............................................................................16, 17

New York State Department of Public Health, Guidance for Vapor Product Manufacturers,
Wholesalers, Distributors, and Retailers Regarding New Shipping Restrictions, available at
https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ba
    n_guidance.pdf .....................................................................................................................24

## INTRODUCTION

On May 24, 2024, the Court denied Defendants' motion to dismiss the City's Prevent All Cigarette Trafficking ("PACT") Act claim on the ground that the City of New York adequately pleads that Defendants violated the PACT Act by failing to file monthly reports with the City of shipments of ENDS products into the City and by selling flavored electronic nicotine delivery systems ("ENDS") products to customers in the City. *See* Opinion & Order, ECF No. 103 at 11-18, 22. The Court's ruling contradicts longstanding government representations and well-established industry understandings and expectations regarding the proper interpretation, scope, and requirements of the PACT Act. If not revisited, the Court's ruling has the potential to massively and adversely impact the way that thousands of companies that sell both ENDS products and traditional tobacco products have done business nationwide for decades.

As explained more fully herein, Defendants Magellan Technology, Inc. ("Magellan"), Ecto World LLC d/b/a Demand Vape ("Demand Vape"), and Matthew J. Glauser ("Glauser") (collective, the "Hyde Defendants"), respectfully submit that the Court's Opinion & Order both overlooks controlling authority and important information and engages in "clear error" in several respects. First, the Court rests its determination that the Hyde Defendants are required to submit monthly PACT Act reports to New York City on unreasonable factual inferences that run contrary to the City's actual allegations in its Amended Complaint and misconstrues the scope of "interstate commerce" as defined by Congress in the PACT Act.

Second, in concluding that the PACT Act requires distributors of ENDS products to file monthly reports in jurisdictions that do not levy excise taxes on ENDS products, the Court overlooks both the Federal Government's longstanding interpretation of the PACT Act on that issue and Defendants' reasonable reliance interests thereon.

1

Third, the Court errs in concluding that the term "lawfully operating" means full compliance with all federal, state, and local requirements applicable to a wholesaler or retailer of ENDS products because, *inter alia*, (i) such an interpretation is contradicted in multiple respects by the PACT Act's legislative history; (ii) such an interpretation would allow a state or locality to enforce the Federal Food, Drug, and Cosmetic Act ("FDCA") in express violation of Congress's direction in the FDCA itself and longstanding, binding precedent, and (iii) New York State and New York City have enacted and/or interpreted their own laws to *not* prohibit the types of business-to-business sales of flavored ENDS products that these Defendants are accused of making.

For these reasons, Defendants respectfully request that the Court grant their motion for reconsideration, vacate that portion of its May 24, 2024 Opinion & Order denying Defendants' motion to dismiss the City's PACT Act claims, and dismiss the City's PACT Act claims as to these Defendants.

## **LEGAL STANDARD**

A court may grant a motion for reconsideration where the movant shows the court committed a "clear error," *Barron v. Helbiz, Inc.*, No. 20-cv-04703, 2023 U.S. Dist. LEXIS 213406, *4 (S.D.N.Y. Nov. 30, 2023), or "overlooked" controlling authority or important information, *NCUA Bd. v. United States Bank N.A.*, No. 18-cv-11366, 2023 U.S. Dist. LEXIS 129433, *2 (S.D.N.Y. Jul. 26, 2023). "A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion and which, had they been considered, might have reasonably altered the result before the court." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal citations and quotations omitted); *see also City of Almaty v. Sater*, No. 18-cv-3440, 2022 U.S. Dist. LEXIS 122163, *2 (S.D.N.Y. July 11, 2022) (granting motion for

reconsideration because court overlooked applicable law). Finally, courts should grant a motion for reconsideration when doing so will "prevent manifest injustice." *Griffin Indus. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). The foregoing principles require reconsideration of the Court's Opinion & Order with respect to the City's PACT Act claims here.

## ARGUMENT

A.     **The Court Committed Clear Error When It Concluded that Defendants Subject Themselves to the PACT Act's Registration and Reporting Requirements Merely by Receiving ENDS Products that Originate Overseas and Then Selling Those Products in Purely Intrastate Transactions**

In its Opinion & Order, the Court holds that the City adequately pleads that the Hyde Defendants are required to file PACT Act reports with the City under 15 U.S.C. § 376(a)(3) because the City alleges that Defendants receive ENDS products from China in the State of New York and then distribute them to businesses in the City. Opinion & Order, ECF No. 103 at 16-17. Defendants respectfully submit that the Court's conclusion is clearly erroneous because it both (i) rests on unreasonable factual inferences to which the City is not entitled and which run contrary to the City's actual allegations and (ii) misconstrues the scope of "interstate commerce" as defined by Congress in the PACT Act.

First the unreasonable factual inferences. In analyzing the City's PACT Act claims, the Opinion & Order states as follows:

> Read in the light most favorable to the City, the allegations in the Amended Complaint satisfy the interstate commerce requirement for both the Hyde and Empire defendants because they allege that the FDVs were originally manufactured in China, a place outside of New York state, ***shipped by both the Hyde and Empire Defendants into New York state***, and then distributed by both the Hyde and Empire defendants into New York City for sale at a profit. That the FDVs distributed by the Hyde defendants paused in Buffalo does not remove them from the interstate commerce.

Opinion & Order at 16-17 (emphasis added).

However, nowhere in the Amended Complaint does the City allege that any of the Hyde Defendants were the party that "shipped" the ENDS products at issue from China into New York State. Rather, as recounted immediately before the above excerpt in the Court's Opinion & Order, the Amended Complaint alleges only that the "major manufacturers" of the ENDS products at issue are "principally located in China," Am. Compl. at ¶ 7, and that "Magellan is the master distributor for all Hyde and Juno-branded products, some of which are manufactured for Magellan in China," *id*. at ¶¶ 8, 63. Indeed, the Amended Complaint specifically identifies several Chinese manufacturers, including a Chinese manufacturer of Magellan's Hyde-branded products. *Id*. at ¶¶ 7, 63.

The Amended Complaint contains no allegation that Defendants Glauser or Demand Vape have any role whatsoever with respect to any shipments originating from China. *See*, *e.g.*, *id.* at ¶ 81 ("Demand Vape is a sister company to Magellan, which serves as Demand Vape's purchasing arm."). And, even as to Magellan, the Amended Complaint does not allege that Magellan was the party that "shipped" the products into New York State. Rather, the Amended Complaint suggests exactly the opposite; it identifies Magellan not as a China-based manufacturer, but as a Buffalo, New York-based "master distributor," *id*. at ¶¶ 23, 63, and alleges that: "***China-based manufacturers*** sell and ***ship*** their products directly or through middlemen to 'master distributors' or sub-distributors in the United States," *id*. at ¶ 8.

This distinction is, of course, important, because the operative verbs that trigger the reporting requirement under 15 U.S.C. § 376(a)(3) are "sells, transfers, or ships for profit . . . in interstate commerce." While plaintiffs are entitled to the benefit of factual inferences in their favor at the motion to dismiss stage, inferences that contradict the plaintiff's own allegations are unreasonable and so are improper. *See, e.g., DPWN Holdings (USA), Inc. v. United Airlines, Inc.*,

4

747 F.3d 145, 151-52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint.") (citations and quotation marks omitted). Because the Amended Complaint fails to allege or make allegations that reasonably allow the inference that any of Magellan, Demand Vape, or Glauser "ships" ENDS products from China or other locations overseas into New York State and, if anything, implies that it is Magellan's suppliers, the "China-based manufacturers," that do so, the Court erred in granting the City the benefit of that factual inference.

Nor does the City's conclusory allegation that Defendants "on information and belief import FDVs manufactured in China (and elsewhere)," Am. Compl., ¶ 8, cure this defect. As the above suggests, the PACT Act's text does not say that the reporting requirements apply to any person who "imports" tobacco products into certain jurisdictions; it says the reporting requirements apply to any person who "sells, transfers, or ships for profit" tobacco products into certain jurisdictions. 15 U.S.C. § 376(a). The verb "import" is not synonymous with "ship," but the Court's reasoning conflated the two terms and, in so doing, committed clear error.[1]

---

[1] Likewise, the PACT Act cases the Court cites do not hold that the person *receiving* the tobacco products in interstate commerce was responsible for fulfilling the PACT Act's requirements. Instead, those cases hold that the person *shipping* the products to a person in the relevant jurisdiction was responsible for fulfilling the PACT Act's requirements. *See New York v. Mt. Tobacco Co.*, 942 F.3d 536 (2d Cir. 2019) (holding tobacco manufacturer in Washington State responsible for fulfilling PACT Act requirements for products it shipped to an Indian reservation in New York State); *New York v. Grand River Enters. Six Nations, Ltd.*, 2019 WL 516955, 2019 U.S. Dist. LEXIS 21558 (W.D.N.Y. Feb. 11, 2019) (holding complaint alleged plausible claim that defendant that took title to untaxed cigarettes in Canada and then shipped them to Indian reservation in New York State had responsibility for fulfilling PACT Act requirements). The plain language of 15 U.S.C. §376 suggests a firm conceptual distinction between persons that "push out" shipments of "cigarettes" and persons that "pull in" those shipments.

The Court's reasoning also relies on a second factual inference that is likewise unsupported by the City's allegations in the Amended Complaint. The Opinion & Order notes: "That the FDVs distributed by the Hyde defendants paused in Buffalo does not remove them from the interstate commerce." Opinion & Order at 16-17. The Opinion & Order goes on to state: "If being re-distributed at a packaging center and then shipped locally could transform interstate commerce into purely intrastate commerce, companies could easily avoid reporting requirements by simply depositing them with a middleman in the state of the locality where they would ultimately be sold." *Id*. at 17-18. Through these statements, the Court appears to be treating what are alleged to be at least two completely separate, distinct sales and shipment transactions—one involving a Chinese manufacturer and Magellan (which is based in Buffalo) and another involving either Magellan or Demand Vape (both of which are based in Buffalo) and a customer in New York City—as a single, continuous sale, transfer, and shipment under 15 U.S.C. § 376(a). *See*, *e.g.*, Am. Compl. at ¶¶ 7, 8, 23, 24, 66, 80, 81, 84 (collectively alleging that Magellan purchases flavored ENDS products from Chinese manufacturers, that Magellan is Demand Vape's "purchasing arm," and that both Magellan and Demand Vape, including through Demand Vape's website, in turn make sales to "subdistributors and retailers . . . in New York City."). Treating what are alleged to be at least two (if not more) separate, distinct transactions involving completely different counterparties (i.e., Chinese manufacturers and New York City-based subdistributors and retailers) as a single, continuous transaction is entirely unsupported by the Amended Complaint's factual allegations and constitutes an unreasonable inference to which the City is not entitled.

Not only is this inference counterfactual and unreasonable in light of the Amended Complaint's allegations, but the case that the Court then cites likewise provides no legal support for the conclusion that two such distinct transactions can or should be treated as a single,

continuous transactions for purposes of determining whether a shipment occurs in "interstate commerce." In *New York v. Grand River Enters. Six Nations, Ltd.*, 2019 WL 516955, 2019 U.S. Dist. LEXIS 21558 (W.D.N.Y. Feb. 11, 2019), the case the Court cites, the complaint specifically alleged that the Canadian manufacturer sold the cigarettes at issue on terms to the U.S. defendant that were "FOB Canada," that title to the cigarettes transferred from the manufacturer to the U.S.-based defendant in Canada, and that the U.S.-based defendant, "holding title for the cigarettes . . . then imports and distributes the cigarettes inside the United States, including into and throughout New York State." *Id.* at *3. There, the court concluded that the definition of "interstate commerce" found in 15 U.S.C. § 375 was satisfied because the complaint plausibly alleged "that the cigarette shipments initially occur between Canada, a 'place outside the State,' and 'a State,' i.e., New York State (as well as Indian reservations within the State)." *Id.* at *13. Contrary to what the Court's Opinion & Order seems to imply, the *Grand River* court did *not* reach the conclusion that the PACT Act's "interstate commerce" definition was satisfied because the U.S.-based defendant went on to distribute the products to customers in New York State in a second transaction and shipment after receiving them from Canada as part of a first transaction and shipment. Rather, the court concluded that the definition of "interstate commerce" was satisfied entirely because of the U.S. defendant's initial movement of the goods from Canada to tribal lands located in New York State. *Id.* at **12-18. Because the terminus for the shipments originating in Canada was tribal lands located within the geographical boundaries of New York State, and "Indian country" within the geographical boundaries of New York State constitutes part of the "State," the first shipments alone satisfied the "interstate commerce" definition: "In sum, the Court funds that for purposes the PACT Act's definition of 'interstate commerce,' Indian reservations can be both located in 'Indian country' and in a 'a State.' Therefore, the Court rejects the R&R's finding that the SAC did not

sufficiently allege that the cigarette shipments at issue occurred in 'interstate commerce.'" *Id*. at *17-18.

Thus, to the extent that the Court's conclusion that the alleged sales and shipments from Magellan and Demand Vape trigger the PACT Act's "interstate commerce" definition rests on a conclusion that a "pause" in Buffalo (which the Amended Complaint actually describes as an interlude between two completely separate transactions involving different parties) can be ignored or is part of some nefarious scheme to circumvent the PACT Act's requirements by "transform[ing] interstate commerce into purely intrastate commerce," Opinion & Order at 17, this factual inference is also unreasonable and constitutes clear error.

Additionally, the Court's conclusion that the Amended Complaint alleges sales and shipments involving the Hyde Defendants "in interstate commerce" also appears to rest on an erroneous conflation of the broad concept of "interstate commerce" that marks the outer bounds of Congress's authority to enact laws under the Commerce Clause found in Article I, Section 8, clause 3 of the Constitution, and the extremely narrow, specific definition of "interstate commerce" demarcated by Congress in the PACT Act. The Court's Opinion & Order states that "[e]ven if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce. *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2d Cir. 2002) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943))." Opinion & Order at 17. *Bilyou*, however, did not deal with the PACT Act, but rather with 49 U.S.C. § 13501, which defines the jurisdiction of the Secretary of Transportation. 300 F.3d at 223. And *Walling*, to which *Bilyou* cites, observed, in discussing the Fair Labor Standards Act, *not* the PACT Act or its predecessor, the Jenkins Act, that "[i]t is clear that the purpose of the Act

8

was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce." 317 U.S. at 567.

In the PACT Act, Congress consciously elected to *not* define "interstate commerce" in a way that extended to the outer bounds of its constitutional authority. Rather, the PACT Act's definition of interstate commerce is strictly limited to "commerce between a State and any place outside the State, commerce between a State and any Indian country in the State, or commerce between points in the same State but through any place outside the State or through any Indian country." 15 U.S.C. § 375(10)(A). As the Second Circuit has noted, the definition's inclusion of "commerce between a State and any place outside the State" may "sweep[] broadly," but it "except[s]" commerce that is "purely intrastate." *New York v. Mt. Tobacco Co.*, 942 F.3d 536, 547 (2d Cir. 2019); *see also Grand River Enters. Six Nations v. Boughton*, 988 F.3d 114, 123 (2d Cir. 2021) (noting that "PACT Act filings exclude intrastate sales"); *Grand River Enters. Six Nations Ltd. v. Sullivan*, No. 3:16-cv-01087-WWE, 2018 U.S. Dist. LEXIS 165114 (D. Conn. Sept. 26, 2018) (observing that the PACT Act requires "reporting of tobacco products shipped or sold nationwide in 'Interstate Commerce,' which does not include products shipped intrastate . . . after importation into the United States."). Consistent with the Second Circuit's interpretation, guidance on the PACT Act provided by many state governments has also long confirmed that no registration or reporting is required for sales or shipments that are entirely intrastate in nature.[2]

---

[2]  *See, e.g.*, California Dep't of Tax and Fee Admin., PACT Act & Consumer, https://tinyurl.com/3et3wnpy ("Generally, businesses located in California do not have a PACT Act registration and reporting requirement with us, unless you are doing business with Native American reservations within the exterior limits of California, or you are using a drop shipper located outside this state.") (last visited June 21, 2024); Tennessee Dep't of Revenue, Tobacco Tax Notice, Notice #21-01, Delivery Sales of Electronic Nicotine Delivery Systems, March 2021, https://perma.cc/NZD6-8HSM ("Anyone located in Tennessee and shipping ENDS within state lines is not required to file PACT Act reports regarding these shipments with the Department."); *see also* Arizona Dep't of Revenue, PACT Act Statement, https://perma.cc/6J2W-NDUT

The Court appears to conclude that the mere fact that the "FDVs traveled through interstate commerce" at some point in their journey down the supply chain from the Chinese manufacturer to a subdistributor or retailer in New York City is sufficient to subject the Hyde Defendants to the PACT Act's reporting requirements. As the foregoing suggests, however, this conclusion contradicts both the plain language of the PACT Act and binding authority from the Second Circuit. Because the alleged sales and shipments from Magellan and Demand Vape to subdistributors and retailers in New York City were "purely intrastate" commerce, they do not trigger 15 U.S.C. §376(a)'s reporting requirement as to New York City (or New York State, either).

The Court should vacate that portion of its Opinion & Order that concludes that the Hyde Defendants are subject to the PACT Act's reporting requirements as to New York City and grant the Hyde Defendants' motion to dismiss that remaining portion of the City's PACT Act claim.

---

("Federal law requires filing of this form by any person who intends to sell, transport, or ship cigarettes or smoking tobacco into Arizona (or who advertises or offers to do so) *from outside the state*, from Indian country, or from within Arizona if passing through points outside the state or in Indian country" (emphasis added).); Illinois Attorney General, 24Q1 Tobacco Product Distributor Quarterly Mailing Packet, March 19, 2024, available at https://perma.cc/3ZP4-GJTC ("Under the [PACT ACT], individuals and businesses **outside of the state of Illinois** that sell cigarettes, RYO, and smokeless tobacco products within Illinois must file reports with **IDOR**" (emphasis in original).); Kentucky Dep't of Revenue, New [PACT] Act Reporting Requirements for Electronic Nicotine Delivery Systems (ENDS), March 22, 2021, https://perma.cc/D95C-MC9V ("If you sell, transfer, or ship for-profit [ENDS] into Kentucky *from outside the state*, you are required to register and file monthly reports with the Department of Revenue" (emphasis added).); Ohio Dep't of Taxation, Update to the Prevent All Cigarette Trafficking (PACT) Act, 15 U.S.C. §§ 375, *et. seq.*, https://perma.cc/22W2-39YC ("The changes to the [PACT ACT] apply to all manufacturers, sellers, wholesalers, and distributors (*located outside the boundaries of Ohio*) who sell, transfer, ship, advertise, or offer for sale [ENDS]" (emphasis added).); Michigan Dep't of Treasury, PACT Act Notice, April 1, 2021, https://perma.cc/UR86-E5TC ("All tobacco product manufacturers and *out-of-state* distributors and unclassified acquirers that sell, transfer, or ship cigarettes or smokeless tobacco for profit into the State of Michigan must register . . . and file monthly PACT Act reports" (emphasis added).).

**B.      The Court Overlooked the Federal Government's Views and the Hyde Defendants' Reasonable Reliance Thereon When It Concluded that the PACT Act Requires Companies to File Reports in Jurisdictions that Do Not Levy Excise Taxes on ENDS Products**

The Court also erred by overlooking the Federal Government's stated guidance on whether companies are required to file reports in jurisdictions that do not levy an excise tax on ENDS products and the Hyde Defendants' reasonable reliance thereon. The PACT Act's reporting requirements apply to persons who sell, transfer, or ship for profit "cigarettes or smokeless tobacco in interstate commerce" into jurisdictions "taxing the sale or use of cigarettes or smokeless tobacco." 15 U.S.C. § 376(a). The Court agreed with the City's position that the PACT Act's reporting requirements apply to persons shipping ENDS products into New York City, even though New York City does not levy an excise tax on ENDS products, because New York City levies an excise tax on traditional (combustible) cigarettes. *See, e.g.*, City's Opp., ECF No. 72 at 12 (arguing that the PACT Act authorizes "enforcement against any nicotine purveyor, even when a jurisdiction taxes conventional cigarettes but not e-cigarettes"); Opinion & Order at 12-13 ("Though New York City's excise tax is only levied on traditional cigarettes, that distinction does not limit who can bring an enforcement action under the PACT Act.").

But as Defendants noted in their reply in support of their motion to dismiss, ECF No. 92 at 5, the federal agency Congress has directed to administer and enforce the PACT Act—the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")[3]—has represented on its website since shortly after the PACT Act was amended to cover ENDS products in 2021 that the PACT Act's

---

[3] *See* 15 U.S.C. § 378(b) ("The Attorney General of the United States shall administer and enforce this chapter."). The Attorney General has delegated this function to ATF. *See* ATF, Prevent All Cigarette Trafficking (PACT) Act Information Guide, 1, available at https://www.atf.gov/alcohol-tobacco/docs/guide/prevent-all-cigarette-trafficking-pact-act-information-guide/download.

reporting requirements do *not* apply to shipments into jurisdictions that do not tax ENDS products.[4]
A screenshot of the relevant page is shown below.



Although courts do not necessarily give "*Chevron* deference"[5] to all forms of agency guidance, courts can look to such guidance when determining the proper interpretation of a statute. *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (stating that "agencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all choices bind judges to follow them, they certainly may influence courts facing questions the agencies have already answered"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the "interpretations and opinions" of the agency that administers a federal statute, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). In its Opinion & Order, however, the Court makes no mention of ATF's longstanding interpretation of the reporting requirement and the consistency of the Hyde Defendants' position therewith.

---

[4] *See* https://www.atf.gov/alcohol-tobacco/qa/do-we-need-file-monthly-pact-act-report-states-do-not-apply-taxes-ends-products (last accessed June 21, 2024).

[5] *See Chevron v. National Resources Defense Council*, 467 U.S. 837 (1984) (holding that courts should defer to a federal agency's reasonable construction of an ambiguous statute, even when the court does not believe that agency's construction is the best one).

Given the fact that the ATF's guidance was the only authority that the Hyde Defendants could (and did) look to on this issue from 2021 until the Court's Opinion in this case, and given the fact that ATF's position is entirely reasonable because Congress adopted the PACT Act's reporting requirements to help state and local jurisdiction collect excise taxes on tobacco products,[6] Defendants respectfully submit that the Court should defer to ATF's position.

The resolution of the issue of the scope of the PACT Act's reporting requirements is an important one for several reasons. For example, the ENDS industry is not limited to this District; it is a national industry. But because of this Court's Opinion & Order, members of that industry now face directly conflicting views of the scope of PACT Act's reporting requirements—ATF's view and this Court's view.

As another example, even before this Court issued its Opinion & Order, "Big Tobacco" companies began filing PACT Act litigation against manufacturers and distributors of ENDS products in an effort to protect their sales of combustible cigarettes against substantially less harmful ENDS products like those sold by Demand Vape. *See, e.g.*, *NJOY, LLC v. iMiracle (HK) Ltd., et al.*, No. 23-08798-TJH-SSC, 2024 WL 112342 (C.D. Cal. Jan. 18, 2024) (subsidiary of the largest combustible cigarette manufacturer in the United States brought PACT Act and other claims against 51 members of the ENDS industry); *In the Matter of Certain Disposable Vaporizer Devices and Components and Packaging Thereof*, Inv. No. 337-TA0138, Doc. 1 (U.S. Int'l Trade Commission Oct. 13, 2023) (R.J. Reynolds—the second largest combustible cigarette manufacturer in the United States—filed complaint asking the International Trade Commission to

---

[6] *See* P.L. 111-154, § 1(c)(5) (noting that one of the PACT Act's "purposes" is to increase collections of Federal, state, and local excise taxes on cigarettes and smokeless tobacco").

initiate an investigation of several ENDS manufacturers and distributors for alleged PACT Act violations).[7]

Finally, even if the Court is ultimately not convinced that it should revisit its view on whether companies are required to submit PACT Act reports to jurisdictions—like the City of New York—that do not levy an excise tax on ENDS products, the Hyde Defendants were certainly entitled to reasonably rely on ATF's contradictory interpretation even though it was not part of a formal notice-and-comment regulation. *See Montilla v. INS*, 925 F.2d 162 (2d Cir. 1991) (holding reliance on agency internal policies or procedures justified even though not embodied in a formal regulation); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (internal agency procedures); *PHH Corp. v. CFPB*, 839 F.3d 1, 48 (D.C. Cir. 2016), *reinstated in relevant part en banc*, 881 F.3d 75, 83 (D.C. Cir. 2018) (agency letter guidance); *ExxonMobil Pipeline Co. v. United States DOT*, 867 F.3d 564, 579-80 (5th Cir. 2017) (statements of "extra-regulatory" source that agency had previously endorsed); *Wages & White Lion Investments, LLC v. FDA*, 90 F.4th 357, 384-85 (5th Cir. 2024) (agency guidance and public statements). Indeed, the fact that ATF's interpretation for more than three years has been exactly the opposite of the Court's interpretation is itself strong evidence that 15 U.S.C. § 376(a) is ambiguous when applied to ENDS products. And, particularly given that "knowing" violations of the PACT Act can be prosecuted as federal felonies, 15 U.S.C. § 377(a), and that even innocent civil violations are subject to substantial monetary penalties, 15 U.S.C. § 377(b), due process requires that the Court not only account for the Hyde Defendants' reasonable reliance on ATF's longstanding interperetation, but that the Court apply the "rule of lenity" to construe Section 376(a)'s "taxing the sale or use" language to not require the submisison

---

[7] Upon information and belief, the City has coordinated with R.J. Reynolds ("RJR") with respect to RJR's and the City's PACT Act claims against the Hyde Defendants.

of reports to jurisdictions—including the City of New York—that do not impose their own excise tax on ENDS products. *See United States v. Figueroa*, 165 F.3d 111, 119 (2d Cir. 1998) (providing that "ambiguities concerning legislative intent in criminal statutes should be resolved in favor of the [defendant]); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we interpret [a criminal] statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-518 (1992) (plurality opinion) (applying rule of lenity to a tax statute, in a civil setting, because the statute had criminal applications); *Dunn v. United States*, 442 U.S. 100, 112 (1979) (observing that the rule of lenity "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited"); *United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[A]lthough clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, . . . due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope" (citations and quotation marks omitted).); *United States v. One Big Six Wheel*, 987 F. Supp. 169, 180 (E.D.N.Y. 1997) ("The lenity principle is closely related to the constitutional promise of due process, as both are 'manifestations of the fair warning requirement'" (quoting *Lanier*, 520 U.S. at 266)).

Finally, the Court's interpretation of Section 376(a) would have drastic and far-reaching implications for all sellers of ENDS products if not revisited. ENDS products are only currently subject to state excise taxes in fewer than 35 states nationwide, only a very limited number of localities impose excise tax on ENDS products, and many distributors and wholesalers of ENDS products do not even sell combustible cigarettes. However, under the Court's interpretation, every distributor and wholesaler of ENDS products—regardless of whether it was a business-to-business

or business-to-consumer transaction—would be required to thoroughly research all local, municipal, county, and state laws and regulations for *every* location where that seller shipped ENDS products to a customer to determine whether any level of government imposes an excise tax on *traditional combustible cigarettes* and, if so, register and provide a PACT Act report for *every* month with each level of government that does so, even if there were no sales or shipments to that customer in a given month and even though no excise tax was due or payable on those sales. This would also have the effect of flooding local government tax departments around the country with potentially hundreds, if not thousands, of reports every month that they do not need and likely do not want. *See Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007) ("[I]t is an elemental principle of statutory construction that an ambiguous statute must be construed to avoid absurd results."); *Salute v. Stratford Greens Garden Apts.*, 135 F.3d 293, 297 (2d Cir. 1998) (stating that a court "may adopt a restricted rather than literal or usual meaning of a statute 'where acceptance of that literal meaning would lead to absurd results'") (quoting *Helvering v. Hammell*, 311 U.S. 504, 510-11 (1941)). The extraordinary regulatory and administrative burdens this would place on sellers of ENDS products could very well prove fatal to much of an industry that sells products which are substantially less harmful than traditional cigarettes and are likely responsible for dramatic declines in cigarette smoking rates over the last ten to fifteen years.[8] The public health outcome for smokers of combustible cigarettes who may successfully switch to ENDS products would be nothing short of disastrous.

---

[8]    *See* CDC, Current Cigarette Smoking Among Adults in the United States, https://www.cdc.gov/tobacco/data_statistics/fact_sheets/adult_data/cig_smoking/index.htm#:~:te xt=Current%20smoking%20has%20declined%20from,every%20100%20adults)%20in%202021

For these reasons, the Court should also vacate that portion of its Opinion & Order that holds that, merely because New York City imposes an excise tax on combustible cigarettes, businesses shipping ENDS products into the City must also register with and submit monthly PACT Act reports to the City under 15 U.S.C. § 376(a).

### C.   The Court Committed Clear Error in Interpreting the Term "Lawfully Operating"

The PACT Act applies certain requirements to non-face-to-face sales of tobacco products to "consumers." *See* 15 U.S.C. § 375(4), (5); 15 U.S.C. § 376a. Of course, the term "consumer" traditionally refers to the end-user of a product, not the seller of a product. *See, e.g.*, Black's Law Dictionary 316 (6th ed. 1990) (defining "consumer" as those "who purchase, use, maintain, and dispose of products" and stating that "[c]onsumers are to be distinguished from manufacturers (who produce goods), and wholesalers or retailers (who sell goods)").

The PACT Act's definition of "consumer" includes persons who fall within the traditional definition of "consumer," *see* 15 U.S.C. § 375(4)(A) (stating that "consumer" means "any person that purchases cigarettes or smokeless tobacco"), but then excludes "any person *lawfully operating* as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco," 15 U.S.C. § 375(4)(B) (emphasis added). Defendants' position is that "lawfully operating" means operating with any required licenses because the Jenkins Act, which was revised by the PACT Act in 2010, excluded from the requirement to register with, and submit monthly reports to, state tobacco tax administrators sales to distributors who had any license required by the state. *See* 15 U.S.C. §§ 375(3), 376(a) (2009).[9]

_____

(last visited June 21, 2024) (stating that "[c]urrent smoking has declined from 20.9% . . . in 2005 to 11.5% in 2021").

[9] 15 U.S.C. § 376, prior to the 2010 amendments, read as follows:

The Court adopted the City's position, which is that the term "lawfully operating" means

more than just operating with any required licenses, and requires full compliance with *all* federal,

---

§ 376. Reports to State tobacco tax administrator.

(a) Contents. Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such sale or transfer and shipment, shall—

    (1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and

    (2) not later than the 10th day of the calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

(b) Presumptive evidence. The fact that any person ships or delivers for shipment any cigarettes shall, if such shipment is into a State in which such person has filed a statement with the tobacco tax administrator under subsection (a)(1) of this section, be presumptive evidence (1) that such cigarettes were sold, or transferred for profit, by such person, and (2) that such sale or transfer was to other than a distributor licensed by or located in such State.

15 U.S.C. § 376 (2009). Prior to the 2010 amendments, 15 U.S.C. § 375(3) defined the term "distributor licensed by or located in such State" to mean:

(A) in the case of any State which by State statute or regulation authorizes the distribution of cigarettes at wholesale or retail, any person so authorized, or

(B) in the case of any other State, any person located in such State who distributes cigarettes at wholesale or retail;

but such term in no case includes a person who acquires cigarettes for purposes other than resale.

15 U.S.C. § 375(3).

state, and local requirements that may apply to a wholesaler or retailer of ENDS products. Opinion & Order at 20-21. But that was clear error.

As an initial matter, the Court appears to have misapprehended the legislative history of the PACT Act.  The Court's Opinion & Order states:

> . . . The Jenkins Act, the predecessor to the PACT Act, used the phrase "licensed" to describe exempt consumers. . . . [Defendants] argue that when Congress amended the Jenkins Act to form the PACT Act, there was no indication that it intended to change the meaning of "consumers." That argument fails because there was a clear indication that Congress intended to change who qualified as a "consumer" under the PACT Act: Congress altered the wording from "licensed" to "lawfully operating." Had Congress intended to keep the same meaning, there would have been no reason to make the change.

Opinion & Order at 20.

Contrary to the Court's apparent understanding as explained in the foregoing paragraph, the term "consumer" was not included or defined in the pre-2010 Jenkins Act. *See* 15 U.S.C. § 375 (2009) (defining only the terms "person," "cigarette," "distributor licensed by or located in such State," "use," "tobacco tax administrator," "State," and "transfers for profit"). Rather, the very concepts of a "delivery sale" and the definition of a "consumer" were only added through the 2010 Pact Act Amendments to the Jenkins Act. *See* 15 U.S.C. § 375(4). It thus simply was not the case that the 2010 amendments to the Jenkins Act "change[d] who qualified as a 'consumer.'" Opinion & Order at 20. Instead, as Defendants previously argued, the 2010 amendments gave no indication that the term "lawfully operating" was meant to be more expansive than the term "licensed" as previously used in the Jenkins Act, which excluded sales to "licensed" distributors from the existing state registration and reporting requirements. *See* 15 U.S.C. § 375 (2009), *supra* n.9. Indeed, the terms "manufacturer," "distributor," "wholesaler," and "retailer" found immediately after the term "lawfully operating" in the definition of "consumer" in 15 U.S.C. § 375(4)(B) are references to a variety of tobacco supply chain roles that are specifically defined and for which

licenses are issued under many states' tobacco tax and licensing statutes. *See*, *e.g.*, N.Y. Tax Law §§ 480 (imposing licensing requirements on "wholesale dealers" of cigarettes); 470(8), (9), (12) (defining "wholesale dealer," "retail dealer," and "distributor" with respect to cigarettes and tobacco products).

Indeed, additional aspects of the legislative history of the PACT Act further support Defendants' interpretation. Prior to the enactment of legislation in 2009 that established the original version of the PACT Act, the Jenkins Act did not cover "smokeless tobacco." *See* 15 U.S.C. § 376 (2009), *supra* n.9. The PACT Act included "smokeless tobacco" for the first time in 2010. As noted in Defendants' original motion to dismiss, prior to the 2010 amendments, the Jenkins Act excluded from its State registration and reporting requirements any "person" that was a "distributor licensed by or located in such State." 15 U.S.C. § 376(a) (2009). When the 2010 amendments enacting the PACT Act inserted for the first time the definitions of "consumer" and "lawfully operating," at least four states did not require a "license" to engage in sales of smokeless tobacco products. New Mexico and West Virginia instead required a business registration certificate. *See*, *e.g.*, N.M. Stat. Ann. § 7-12A-7. The District of Columbia issued a business tax registration with a "tobacco tax account," and New Jersey issued a "certificate of authority" under N.J. Rev. Stat. § 54:40B-6. It thus stands to reason that Congress removed the term "distributor licensed by or located in such State" and replaced it with the concept of "lawfully operating" to ensure that persons selling smokeless tobacco products on a business-to-business basis to distributors in those states that were properly registered but did not have a "license" because their state did not require one would not be subjected to the highly restrictive delivery sale requirements found in newly enacted 15 U.S.C. § 376a.

Defendants' interpretation is further supported by the reality that it would be impossible for any ENDS manufacturer or distributor to know if its wholesaler or retailer customers are in full compliance with all federal, state, and local laws applicable to those businesses. For example, although a wholesaler that sells ENDS to a licensed retailer can put systems in place to guard against the retailer violating state or local age restrictions on sales of tobacco products, it would be impossible for the wholesaler to ensure that the retailer never accidentally sells a tobacco product to an underage purchaser. Yet the City's position, which the Court adopted, would mean that a wholesaler who sells tobacco products to a licensed retailer who accidentally sells tobacco products to an underage user could be on the hook for civil and criminal penalties because the retailer would be deemed a "consumer." *See* 15 U.S.C. § 377. Particularly because Congress made "knowing" violations of the PACT Act a felony crime punishable by a prison term of up to three years, 15 U.S.C. § 377(a)(1), and assigned substantial civil penalties to violations of the Act that fail to satisfy that scienter requirement, 15 U.S.C. § 377(b), there is no reason to think that Congress intended to define "consumer" in a way that would render it impossible for companies that sell tobacco products to licensed wholesalers and retailers to know definitively whether, in so doing, they are satisfying the PACT Act's requirements.

Common sense further supports this reading of "lawfully operating." The PACT Act's requirements applicable to "delivery sales" under 15 U.S.C. § 376a are clearly aimed at *retail* sales to individuals. Thus, "delivery sales" are limited to packages that do not weigh more than 10 pounds, which precludes large, palletized freight shipments of the type normally transferred between distributors and wholesalers. 15 U.S.C. § 376a(b)(3). Similarly, persons engaged in delivery sales must obtain the *full name*, *birth date*, and *residential* address of the purchaser and verify the age and identity of the purchaser through a third-party commercially available database

to ensure the purchaser is legally able to purchase ENDS products. 15 U.S.C. § 376a(b)(4)(A)(iii)(I). It is nonsensical to suggest that a business engaged in the sale of cigarettes, smokeless tobacco, or ENDS products would provide its "full name," "birth date," or "residential address," much less be put through a third-party age and identity verification process. The plain text of the PACT Act thus further supports a reading that "lawfully operating" means holding all required licenses or permits, not requiring compliance with *all* applicable federal, state, and local laws.

In adopting the City's position on this issue, the Court noted that "it would be clear when a purchaser requests FDVs that they were not lawfully operating because of the FDV ban." Opinion & Order at 20-21. If, by "FDV ban," the Court was referring to the fact that FDA has not authorized the marketing of any flavored ENDS products, this point undermines, instead of supports, the City's position. Congress has explicitly *precluded* any parties other than the federal government from enforcing the Food, Drug, and Cosmetic Act ("FDCA"), *see* 21 U.S.C. § 337(a), and it is the FDCA that prohibits the sale of unauthorized ENDS products, *see* 21 U.S.C. §§ 331(a), 387b(6)(A). So, it *cannot* be the case that Congress intended for state or local governments to bring PACT Act claims that are based on alleged violations of the FDCA, as that would intrude on the federal government's exclusive role in enforcing the FDCA. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (stating that the "FDCA leaves no doubt that it is the Federal Government rather than [other] litigants who are authorized to file suit for not compliance with [its provisions]").

If, instead, by "FDV ban," the Court was referring to New York State or City flavor restrictions, these, too, do not support the interpretation of "lawfully operating" that the Court has adopted. New York State's "flavor ban," found in New York Public Health Law §1399-mm-1,

merely provides that "no vapor products dealer, or any agent or employee of a vapor products dealer, shall sell or offer for sale ***at retail*** in the state any flavored vapor product intended or reasonably expected to be used with or for the consumption of nicotine."  N.Y. Pub. Health L. § 1399-mm-1(2) (emphasis added). The State's flavor ban is thus facially inapplicable to the wholesale or distribution sales to businesses that the City accuses Defendants of making. New York City's flavor ban is similarly problematic. While New York City Administrative Code §17-715(b)(1) provides that "[i]t shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid," the City's own regulations also provide that "[f]lavored electronic cigarettes and flavored e-liquids may . . . be sold or offered for sale by wholesalers where the sale or offer of sales is made to an entity located outside the City of New York." *See* 24 R.C.N.Y. 28-02(b). The City's own regulations thus imply that the City's "flavor ban" does not, in fact, prohibit the possession of flavored electronic cigarettes by subdistributors and wholesalers located in the City of New York, so long as they possess those flavored products for sale to customers *outside* the City.

In light of the State's and the City's own statutes and regulations, then, it is simply not the case that, as the Court erroneously supposed, "it would be clear when a purchaser [located in the City] requests FDVs that they were not lawfully operating because of the FDV ban." Opinion & Order at 21; *see also id.* at 22 ("The City adequately alleges throughout the Amended Complaint that the Hyde . . . . defendants do not comply with applicable law by selling FDVs in violation of the flavor ban.").[10]

---

[10] Nor is it the case that New York Public Health Law § 1399-*ll* prohibits the shipping of ENDS products to customers other than retailers that are "registered dealers." From even before Section 1399-*ll* took effect in 2020, and up to the present, the New York Department of Public Health—the State agency charged with enforcing the Public Health Law—has had in effect guidance clarifying that Section 1399-*ll* does ***not*** prohibit distributor-to-wholesaler shipments of electronic

Finally, Defendants note that ATF has never publicly adopted the City's interpretation of the term "lawfully operating." In fact, in a 2015 publication, the ATF itself interpreted "lawfully operating" consistently with Defendants' interpretation; ATF indicated that "lawfully operating" means operating with any required license. *See* ATF Tobacco Enforcement Fact Sheet (Feb. 2015) (stating "Title 15, United States Code, Section 375 – the Prevent All Cigarette Trafficking (PACT Act) (the amended Jenkins Act) makes it illegal to ship cigarettes to a non-licensee in a state without notifying the state taxation authority").

Finally, as with the definition of "interstate commerce" discussed above, the Court's interpretation of "lawfully operating" would have drastic consequences. Because FDA has only authorized a handful of ENDS products and continues to allow hundreds, if not thousands, of other ENDS products to remain on the market through an implicit exercise of deferred enforcement, almost no ENDS products could be shipped between two parties in any manner other than in 10-pound boxes to comply with the requirements of 15 U.S.C. §376a. This is exactly the opposite of current industry practices and would require large-scale distributors and wholesalers to hire hundreds more employees to constantly break down master cases of products received from manufacturers overseas into massive quantities of 10-pound packages to comply with the Act's package size requirement. Moreover, every major Big Tobacco manufacturer or national convenience store distributor that sells to a convenience store that has ever inadvertently sold a

---

cigarettes. According to the Department of Public Health's guidance, "[a]ll shipments between . . . wholesalers[] and distributors within New York" will "continue to be permitted" because "[s]uch entities are not required to register as vapor product dealers to send or receive shipments of vapor products." *See* New York State Department of Public Health, Guidance for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers Regarding New Shipping Restrictions, available at https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf (last visited June 21, 2024).

cigarette to an underage customer would be inadvertently engaging in a "delivery sale" and violating the PACT Act if it shipped cigarettes, smokeless tobacco, or ENDS products to such a store in anything larger than a 10-pound box, failed to engage in age and identify verification of the convenience store business, or obtain the convenience store business's "residential address." These absurd and absurdly burdensome results cannot be what Congress intended when it authored the PACT Act's definitions of "consumer" and "lawfully operating."

The Court engaged in clear error when it adopted the City's proposed definition of "lawfully operating" and should also vacate that portion of its Opinion & Order.

## CONCLUSION

For the reasons discussed above and in Defendants' previous briefing on their motion to dismiss, the Court should grant Defendants' motion for reconsideration, vacate that portion of its May 24, 2024 Opinion & Order denying Defendants' motion to dismiss the City's PACT Act claim, and dismiss the City's PACT Act claim.

Respectfully submitted,

THOMPSON HINE LLP

Dated: June 21, 2024,                     By: _____/s/ Eric N. Heyer_____
                                          Eric N. Heyer (admitted *pro hac vice*)
                                          James C. Fraser (admitted *pro hac vice*)
                                          Joseph A. Smith (admitted *pro hac vice*)
                                          Anna Stressenger (admitted *pro hac vice*)
                                          1919 M Street, N.W., Suite 700
                                          Washington, DC 20036
                                          Phone: 202.331.8800
                                          Fax: 202.331.8330
                                          eric.heyer@thompsonhine.com
                                          joe.smith@thompsonhine.com
                                          anna.stressenger@thompsonhine.com


                                          Richard De Palma
                                          300 Madison Avenue

27th Floor
New York, NY 10017
Phone: 212.908.3969
Fax: 212.344.6101
richard.depalma@thompsonhine.com

*Counsel for Defendants Magellan Technology, Inc.,*
*Ecto World, LLC, and Matthew J. Glauser*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.


                                 /s/ Eric N. Heyer