UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------  x

THE CITY OF NEW YORK,

                                    Plaintiff,

                    -against-

MAGELLAN TECHNOLOGY, INC., ECTO WORLD,
LLC, d/b/a Demand Vape, MATTHEW J. GLAUSER,
DONALD HASHAGEN, MAHANT KRUPA 56 LLC d/b/a
Empire Vape Distributors, NIKUNJ PATEL, DEVANG
KOYA, STAR VAPE CORP., NABIL HASSEN, DORBES,
LLC, d/b/a Hydevapeofficial.com, and CHRISTIAN A. SMITH,

                                    Defendants.

------------------------------------------------------------------------  x

Civil Action No. 23-5880 (LLS)

**MEMORANDUM OF LAW OF THE CITY OF NEW YORK
IN OPPOSITION TO DEFENDANTS' MOTIONS FOR RECONSIDERATION**


**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel of the
 City of New York
*Attorney for Plaintiff the City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032


Of counsel:

Eric Proshansky
Aatif Iqbal
Alexandra Jung
Elizabeth Slater

Assistant Corporation Counsels

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ...................................................................................................... i

Preliminary Statement .................................................................................................. 1

Legal Standards ........................................................................................................... 3

Argument ..................................................................................................................... 5

I.    The Court's Determination of the Meaning of "Lawfully Operating" as Used in the PACT Act Is Correct ............................................................................. 5

    A.    The Court's Determination on the Meaning of "Lawfully Operating" Accords With Prior Decisions and Agency Interpretations ................................................................................... 5

    B.    The Court's Rejection of Defendants' Arguments on the Meaning of "Lawfully Operating" Was Not "Dead Wrong" ...................... 7

    C.    The Court's Construction of "Lawfully Operating" Is Confirmed by PACT Act Provisions that Impose the Same Conditions .................................................................................. 11

    D.    The PACT Act Is Not Directed at Retail Sales Alone .............................. 14

    E.    Even under Their Own Definition of "Consumer" as Meaning "Unlicensed Entities," Defendants Made Delivery Sales in Violation of the PACT Act ......................................................... 15

II.    Reconsideration Is Unwarranted as to the Court's Original Determination that the City Plausibly Alleged that Defendants Must Comply with the PACT Act's Reporting Requirements ............................................................................... 16

    A.    Defendants Do Not Dispute that the City Has Plausibly Alleged They Failed to Comply with the Delivery Sales Requirements in 15 USC § 376a ................................................. 17

    B.    Reconsideration Is Unwarranted as to the Court's Original Determination that Defendants Are Persons who Ship in Interstate Commerce .................................................................. 20

III.    The Court Correctly Held that the City Has Standing Due to Its Excise Tax on Cigarettes and Its Sales Tax on Cigarettes and e-Cigarettes ................................ 29

    A.    ATF's Comment as to Reporting Requirements Is Entirely Consistent with this Court's Ruling ........................................... 31

**Page**

B.      *Skidmore* Deference Is Inapplicable ........................................................... 31

C.      Defendants' "Reasonable Reliance" is Irrelevant ..................................... 33

Conclusion ................................................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*,
    485 F.3d 855 (2d Cir. 2007)...................................................31

*Asgrow Seed Co.* v. *Winterboer*,
    513 U.S. 179 (1995).........................................................9

*Bates* v. *United States*,
    522 U. S. 23 (1997)...........................................................9

*Bostock v. Clayton Cty.*,
    590 U.S. 644 (2020)...........................................................9

*Brown v. Barnes & Noble, Inc.*,
    474 F. Supp. 3d 637 (S.D.N.Y. 2019)...................................................33

*California v. Azuma Corp.*,
    2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sep. 7, 2023)..................................5, 17

*Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*,
    846 F.3d 492 (2d Cir. 2017)..............................................10, 31

*Christianson v. Colt Industries Operating Corp.*,
    486 U.S. 800 (1988).........................................................3

*City of N.Y. v. Chavez*,
    2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012) ..........................26

*City of N.Y. v. Hatu*,
    2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019)...........................6, 7, 19

*City of N.Y. v. Magellan Tech., Inc.*,
    2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024)..........................1

*City of N.Y. v. United States Postal Serv.*,
    519 F. Supp. 3d 111 (E.D.N.Y. 2021) .................................7, 10

*City of N.Y. v. Wolfpack Tobacco*,
    2013 U.S. Dist. LEXIS 129103 (S.D.N.Y. Sep. 9, 2013)..........................5, 10

*Corpac v. Does*,
    10 F. Supp. 3d 349 (E.D.N.Y. 2013) ....................................5

*Davidson v. Scully*,
    172 F. Supp. 2d 458 (S.D.N.Y. 2001)....................................................................28

*Dean* v. *United States*,
    556 U. S. 568 (2009)....................................................................................9, 26

*Duryea v. County of Livingston*,
    2007 U.S. Dist. LEXIS 30908 (W.D.N.Y. Apr. 26, 2007) .....................................31

*EEOC v. Home Ins. Co.*,
    672 F.2d 252 (2d Cir. 1982)................................................................................33

*Forman v. City of N.Y.*,
    2017 U.S. Dist. LEXIS 45538 (S.D.N.Y. Mar. 27, 2017) .....................................33

*In re Furstenburg Finance SAS*,
    785 F. App'x 882 (2d Cir. 2019) ............................................................................4

*Gerritsen v. Warner Bros. Entm't Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) ...............................................................16

*Grand River Enters Six Nations Ltd. v. Sullivan*, No. 3:16-cv-010870WWE,
    2018 U.S. Dist LEXIS 165114 (D. Conn. Sept. 26, 2018) .....................................27

*Grand River Enters. Six Nations v. Boughton*,
    988 F.3d 114 (2d Cir. 2021)................................................................................27

*Green v. Humana at Home, Inc.*,
    380 F. Supp. 3d 400 (S.D.N.Y. 2019)....................................................................33

*Griffin Ins., Inc. v. Petrojam, Ltd.*,
    72 F. Supp. 2d 365 (S.D.N.Y. 1990)........................................................................4

*In re Health Management Sys. Inc. Secs. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)......................................................................3

*Jones v. Cty. of San Bernardino*,
    2022 U.S. Dist. LEXIS 141961 (C.D. Cal. May 12, 2022) ...................................16

*Lichtenberg v. Besicorp Grp. Inc.*,
    28 F. App'x 73 (2d Cir. 2002) ..............................................................................4

*Lomax v. Ortiz-Marquez*,
    140 S. Ct. 1721 (2020)..........................................................................................9

*Meyer v. Kalanick*,
    185 F. Supp. 3d 448 (S.D.N.Y. 2016)....................................................................27

*Montanile v. Nat'l Broad. Co.*,
   216 F. Supp. 2d 341 (S.D.N.Y. 2002)......................................................................4

*Montilla v. INS*,
   926 F.2d 162 (2d Cir. 1991)...............................................................................33

*Nat. Res. Def. Council v. Muszynski*,
   268 F.3d 91 (2d Cir. 2001)................................................................................32

*New York v. Grand River Enters. Six Nations Ltd.*, No. 1:14-cv-00910-MAT-LGF,
   2020 U.S. Dist. LEXIS 236928 (W.D.N.Y. Dec. 15, 2020)................................6, 28

*New York v. Grand River Enters. Six Nations, Ltd.*, No. 1:14-cv-00910-MAT-LGF,
   2019 U.S. Dist. LEXIS 21558 (W.D.N.Y. Feb. 11, 2019) ........................21, 27, 28

*New York v. Mt. Tobacco Co.*,
   942 F.3d 536 (2d Cir. 2019)...........................................................................21, 27

*Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*,
   2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007) .......................................4

*Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*,
   866 F.2d 228 (7th Cir. 1988) ...........................................................................4

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006)............................................................................31

*Perkins v. Comm'r*,
   970 F.3d 148 (2d Cir. 2020).............................................................................16

*Pub. Citizen v. U.S. Dep't of Justice*,
   491 U.S. 440 (1989)........................................................................................10

*Ralph Oldsmobile v. GMC*,
   2003 U.S. Dist. LEXIS 115 (S.D.N.Y. Jan. 6, 2003).........................................28

*Russello v. United States*,
   464 U.S. 16 (1983).........................................................................................18

*S.E.C v. Stewart*,
   2024 U.S. Dist. LEXIS 17903 (S.D.N.Y. Feb. 1, 2024).......................................5

*Scaminaci v. Jaffrey*,
   2022 U.S. Dist. LEXIS 60966 (S.D.N.Y. Mar. 31, 2022),
   *rev'd on other grounds*, 2023 U.S. App. LEXIS 2016 (2d Cir. Jan. 26, 2023) .......................16

*SEC v. Ashbury Capital Partners, L.P.*,
   2001 U.S. Dist. LEXIS 7094 (S.D.N.Y. May 31, 2001)........................................4

*SEC v. Norstra Energy Inc.,*
    202 F. Supp. 3d 391 (S.D.N.Y. 2016) ..................................................................18

*Shrader v. CSX Transp., Inc.,*
    70 F.3d 255 (2d Cir. 1995) ..................................................................................4

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .......................................................................................31, 32

*United States v. Elshenawy,*
    801 F.2d 856 (6th Cir. 1986) ..............................................................................11

*United States v. International Minerals & Chemical Corp.*
    402 U.S. 558 (1971) ...........................................................................................11

*Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992) ...............................................................................4

*Young v. Selsky,*
    41 F.3d 47 (2d Cir. 1994) ....................................................................................16

**Statutes**

15 USC § 375 ........................................................................................... *passim*

15 USC § 376 ........................................................................................... *passim*

15 USC § 376a .......................................................................................... *passim*

15 USC § 378(c)(1)(A) .......................................................................29, 30, 32

16 USC § 1532 ..................................................................................................27

29 USC § 259 ....................................................................................................33

N.Y. Pub. Health L. §1399-*ll* ...........................................................................1

**Other Authorities**

S.D.N.Y. L. Civ. R. 6.3 (effective July 1, 2024) .........................................1

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in opposition to Defendants' motions for reconsideration of the Court's decision in *City of N.Y. v. Magellan Tech., Inc.*, 2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024) ("Dec.").

## PRELIMINARY STATEMENT

Having no issue with the Court's rulings on the City's claims under Public Health Law §1399-*ll* (1-a) and for public nuisance, Defendants seek reconsideration only of some PACT Act rulings that they brand as "erroneous." The arguments set forth in Defendants' memoranda of law (*Dkt. Nos*. 120, 118) ("*Rec. Mem.*" and "*Empire Rec. Mem.*", respectively[1]) should be rejected either as not cognizable on a motion for reconsideration, as substantively wrong (again), or as both. Indeed, this forced second look at Defendants' original arguments for dismissal reveals flaws in those arguments not originally addressed by the City that would have then independently required denial of Defendants' motions to dismiss.

Reconsideration is so disfavored a practice that Defendants have just squeaked by the ten-page limitation applicable to motions for reconsideration since July 1, 2024.[2] That severe restriction reflects the courts' consensus that the few permissible grounds for seeking reconsideration—a "dead wrong" decision, a "direct, obvious, and observable" error, or newly available facts or controlling law—lend themselves to simple, straightforward argument, not the convolutions offered here.

---

[1] The moving papers of Defendants Magellan Technology, Inc., Ecto World, LLC, d/b/a Demand Vape and Matthew J. Glauser (the "Hyde Defendants") are found at *Dkt. Nos*. 119-120. Those of Mahant Krupa 56 LLC d/b/a Empire Vape Distributors, Nikunj Patel, and Devang Koya (the "Empire Defendants") are found at *Dkt. Nos*. 117-118. Having advanced the same arguments—*compare Rec. Mem. with Empire Rec. Mem.*—all of the defendants herein are collectively referred to as "Defendants."

[2] *See* S.D.N.Y. L. Civ. R. 6.3 (effective July 1, 2024) (requiring "a memorandum, no longer than 10 pages in length, setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked").

Defendants principally take issue with three of the Court's PACT Act rulings: (i) that Defendants' sales to other than "lawfully operating" tobacco businesses are delivery sales to consumers, *Dec.* at 21; (ii) that Defendants' sales are "in interstate commerce," requiring PACT Act registration and reporting, *Dec.* at 16–17; and (iii) that the PACT Act's reporting requirements apply to persons shipping e-cigarettes products into New York City, *Dec.* at 11–17.

As to (i) "lawfully operating," three different district courts and the ATF (repeatedly) have held that cigarette sales made to tobacco businesses that do not operate in compliance with the law are "delivery sales" to "consumers"—and are therefore, under 15 USC § 376a, sales that must comply with all federal, state and local laws related to tobacco.

In addition to that wall of authority, two other provisions of the PACT Act establish that the Court's construction of the term "lawfully operating" requires delivery sellers' to comply with "all laws." First, section 376a(a)(3) expressly enumerates the scope of the laws to be complied with in making delivery sales and in effect expressly defines the compliance necessary to be "lawfully operating." Second, section 376a(e)(2)(A)(ii), governing common carrier deliveries of e-cigarettes, requires common carriers to determine that certain persons to whom they deliver cigarettes are "*lawfully engaged*" in the tobacco business. Neither section 376a(e)(2)(A)(ii) nor section 375(4) contains any exception related to a "licensed" or "registered" entity, as Defendants would have it.

As to (ii) interstate commerce, Defendants' arguments that "in interstate commerce" requires a single continuous transaction in which they serve as the "shipper," *Rec. Mem.* at 6, has no case law or statutory support. And even if it did, the City's pleadings effectively so allege.

Defendants never recognized in their original briefing, nor do they do so here, that the requirement of sales "in interstate commerce" applies only to the PACT Act's registration and

report-filing obligations. *See* 15 USC § 376. The "delivery sales" provision of the PACT Act, which Defendants are alleged to have violated, does not require delivery sales to be in interstate commerce. *See* 15 USC § 376a. Having not challenged the allegations of PACT Act delivery sale violations in their motions to dismiss, Defendants cannot do so on reconsideration and thus City's claims of PACT Act delivery sales violations will proceed.

As to (iii) the PACT Act's required reporting to the City, Defendants challenge the Court's conclusion that "the PACT Act's reporting requirements apply to persons shipping ENDS products into New York City," but they both mischaracterize the Court's holding[3] and otherwise simply reiterate an argument previously raised for the first time in their reply brief and premised on a screenshot from the ATF website that in actuality does not contradict the Court's Decision.

## LEGAL STANDARDS

The well-settled standards for motions for reconsideration—which Defendants barely address—strongly discourage this presumptively wasteful process. *See Rec. Mem.* at 2. Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly," *In re Health Management Sys. Inc. Secs. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000), and "as a rule courts should be loath to [reconsider past decisions] in the absence of *extraordinary circumstances.*" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (emphasis in original). Other than the purported "burdens" imposed by the Court's

---

[3] As detailed further *infra* at 29, Defendants move to "vacate that portion of its Opinion & Order that holds that, merely because New York City imposes an excise tax on combustible cigarettes, businesses shipping ENDS products into the City must also register with and submit monthly PACT Act reports" (*Rec. Mem*. at 17), but there is no such portion of the Court's Decision. The pages cited by Defendants (*see Rec. Mem*. at 11 (citing *Dec*. at 12–13)) hold that the City has standing to enforce the PACT Act—a holding that Defendants do not appear to challenge. Moreover, the Court's holding was not premised solely on the City's excise tax on combustible cigarettes. *Dec*. at 12 (standing based on the City's "excise tax on cigarettes and [] sales tax on both cigarettes and e-cigarettes").

rulings on an entirely illegal industry, *Rec. Mem.* at 15, Defendants offer nothing "extraordinary" that might support reconsideration.

Reconsideration is limited to (i) the correction of clear error; (ii) the prevention of manifest injustice; or (iii) review of a decision in light of newly available evidence or an intervening change of controlling law. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992). Absent those elements, "reconsideration will generally be denied." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Defendants cite neither newly available evidence nor an intervening change of controlling law, and so they "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion," *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002), and demonstrate that the controlling law or factual matters "might reasonably be expected to alter the court's decision." *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); *accord SEC v. Ashbury Capital Partners, L.P.,* 2001 U.S. Dist. LEXIS 7094 (S.D.N.Y. May 31, 2001). Disappointed parties "may not advance new arguments or requests for relief in a motion for reconsideration if they were not previously presented to the Court." *In re Furstenburg Finance SAS*, 785 F. App'x 882, 886 (2d Cir. 2019) (quotation marks omitted)). Reconsideration is not a vehicle for a dissatisfied party to advance new theories that the party failed to advance in connection with the underlying motion. *Griffin Ins., Inc. v. Petrojam, Ltd.,* 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1990).

Of the three permissible grounds for reconsideration, new evidence means just that— facts or law coming into existence since the date of the original decision. "Clear error" means the prior decision is 'dead wrong.'" *Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, 2007 U.S. Dist. LEXIS 74180, at *3 n.1 (S.D.N.Y. Oct. 4, 2007) (quoting *Parts & Elec. Motors, Inc. v.*

*Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). "Manifest injustice" means "an error committed by the trial court that is direct, obvious, and observable." *S.E.C v. Stewart*, 2024 U.S. Dist. LEXIS 17903 (S.D.N.Y. Feb. 1, 2024) (citing *Corpac v. Does*, 10 F. Supp. 3d 349 (E.D.N.Y. 2013)), a high burden. Defendants meet none of these standards.

## ARGUMENT

### I. The Court's Determination of the Meaning of "Lawfully Operating" as Used in the PACT Act Is Correct

An analysis of the PACT Act must begin by understanding the Act's multiple purposes: "Congress ha[s] found that remote sales of cigarettes are a serious public health threat, deprive governments of significant tax revenue, harm competition, and increase the likelihood that cigarettes will wind up in the hands of children." *City of N.Y. v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103, at *18 (S.D.N.Y. Sep. 9, 2013). As shown below, Congress sought to address this array of different problems by insisting—in multiple PACT Act provisions addressed to different types of tobacco industry transactions—that the participants in those transactions comply with all applicable laws.

#### A. The Court's Determination on the Meaning of "Lawfully Operating" Accords With Prior Decisions and Agency Interpretations

The Court held that Defendants sell to "consumers" in "delivery sales" for the simple reason that, by virtue of having purchased flavored e-cigarettes from Defendants, Defendants' customers could not be "lawfully operating" as the term is used in 15 USC § 375(4)(B). *Dec.* at 23-24. Defendants take issue, *Rec. Mem.* at 17, but it is almost unnecessary to detail the errors in Defendants' critique of the Court's holding because three other district courts and the ATF have reached the same understanding of the meaning of the term "lawfully operating." *See California v. Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, at *31 (E.D. Cal. Sep. 7, 2023) (to avoid PACT Act liability for making delivery sales, defendant must show its customers "are engaged in the

cigarette business in a way that is not contrary to law"); *New York v. Grand River Enters. Six Nations Ltd.*, 2020 U.S. Dist. LEXIS 236928, at \*40 (W.D.N.Y. Dec. 15, 2020) (failure to comply with New York's cigarette excise tax scheme was sufficient to plead that defendants engaged in "delivery sales" to "consumers"); *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at \*47 (S.D.N.Y. May 31, 2019) ("the PACT Act exempts only those who are operating lawfully, and the [complaint] squarely alleges that [Hatu's customers] were not doing so …. therefore adequately alleging Hatu distributed the cigarettes to consumers").[4]

These decisions, and this Court's, conform to the meaning of "lawfully operating" held by ATF: to be "lawfully operating" (and therefore exempt from the requirements applicable to "delivery sales"), a person must be in "compliance with applicable Federal, State, and Tribal Laws." *ATF, Implementation of the Prevent All Cigarettes Trafficking Act of 2009* (PACT Act)-*Tribal Consultation Process*, at 3, 6 (Nov. 18, 2010) (annexed as Exhibit A to the *Declaration of Eric Proshansky ("Proshansky Decl.")*). Defendants "note" that "ATF has never publicly adopted the City's interpretation of the term "lawfully operating," *Rec. Mem*. at 24, but the foregoing citation shows this to be utterly false. ATF has in fact many times publicly reiterated agreement with the City's and the Court's understanding of "lawfully operating."[5]

---

[4] Defendants have previously sought to distinguish *Hatu* as not "involv[ing] properly registered/licensed cigarette businesses." *Dkt. No*. 92 at 12. But *Hatu* expressly pointed out that "*even if Ammar and Alsaidi qualified as [licensed] retailers*, the PACT Act exempts only those who are operating lawfully, and the [complaint] squarely alleges that Ammar and Alsaidi were not doing so." *Hatu*, 2019 U.S. Dist. LEXIS 91576 at \*47 (citing 15 USC § 375(4)). This is an express rejection of Defendants' argument that a license is all that is needed to operate lawfully.

[5] ATF has reiterated this understanding of "lawfully operating" in several enforcement actions, maintaining that, because a cigarettes seller's "customers are not lawfully operating under applicable New York and Federal laws… sales to these customers are considered delivery sales to consumers under the PACT Act." *Proshansky Decl*. Ex. B at 5 (quoting *City of New York v. Hatu,* 2019 U.S. Dist. LEXIS 91576, at \*47-48 ("distributors who are not lawfully operating are consumers under the PACT Act")). In an enforcement letter directed to a tribal cigarette seller, ATF stated:

### B. The Court's Rejection of Defendants' Arguments on the Meaning of "Lawfully Operating" Was Not "Dead Wrong"

In the PACT Act, Congress imposed new restrictions on "delivery sales"—*i.e.*, sales that do not involve face-to-face transactions. These sales must now comply with excise tax, licensing and tax-stamping requirements, restrictions on sales to minors, and other legal requirements "as if the delivery sales occurred entirely within the specific state and place" where the cigarettes are delivered. *City of N.Y. v. United States Postal Serv.*, 519 F. Supp. 3d 111, 116 (E.D.N.Y. 2021) (citations omitted); *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *46-47 (S.D.N.Y. May 31, 2019) ("A delivery seller must comply with the tobacco laws, including the tax laws, of the State into which the products of a delivery sale are physically delivered.") (citing 15 USC § 376a). In the face of these rulings on the meaning of "lawfully operating," Defendants maintain the flawed contention that Congress was willing to allow cigarette sellers to ignore completely the restrictions imposed by the PACT Act, as long as the delivery sellers were "licensed." *Rec. Mem.* at 19–22.

Defendants offer no new facts or law that has come into being since the original briefing on the issue of "lawfully operating." *See Rec. Mem.* at 18–24. Accordingly, the sole permissible grounds for reconsideration are either "clear error" or "manifest injustice." In considering whether a "lawfully operating" tobacco business could be anything other than a tobacco business operating in compliance with laws applicable to tobacco sales, the Court noted that '[t]he PACT

---

Distributors who are depriving California of tobacco taxes by distributing untaxed cigarettes to non-Tribal members in violation of California law; selling brands of cigarettes that are in violation of California complimentary statutes and California State safety laws; operating in violation of California State tax and regulatory statutes, and possessing and distributing untaxed and unstamped cigarettes in violation of the CCTA, those entities are not "lawfully operating" simply because they may possess the appropriate tribal license.

*Proshansky Decl*. Ex. C (Azuma Letter).

Act does not define the phrase "lawfully operating," and undertook the accepted practice in that circumstance of applying the "plain" or dictionary meaning of the words used. *Dec.* at 19–20. After looking to the dictionary definition, the Court held that "lawfully operating" meant operating "not contrary to law" or "in compliance with laws," because the "plain meaning of 'lawful' is not limited to 'licensed.'" *Dec.* at 21.

The Court so ruled after rejecting Defendants' three opposing arguments: (i) that "lawfully operating" meant "operating with any necessary state or local registration or license" (which was the language used in the Jenkins Act to identify in-state tobacco businesses whose purchases need not be reported by out-of-state sellers); (ii) that the Court's interpretation was "absurd" because a seller could never know whether its purchasers were in compliance with the law; and (iii) that the rule of lenity required the Court to adopt the interpretation of an ambiguous statute put forth by the defendants. *Dec*. at 20–21.

The Court disposed of Defendants' first argument by pointing out that Congress expressly *removed* the language "operating with any necessary state or local registration or license," replacing it with the term "lawfully operating." *Dec.* at 20. The legislative history of the PACT Act, set forth in the notes for 15 USC § 375, reports that change by showing that the definitions in 15 USC § 375 enacted by the 2010 amendments to the then-renamed Jenkins Act—the PACT Act—*eliminated* the reference to licenses or registration in the Jenkins Act's definition of "consumer." The Jenkins Act stated originally, before amendment, that:

> "(3) The term 'distributor licensed by or located in such State' means—
>
> "(A) in the case of any State which by State statute or regulation authorizes the distribution of cigarettes at wholesale or retail, any person so authorized, or
>
> "(B) in the case of any other State, any person located in such State who distributes cigarettes at wholesale or retail….

15 USC § 375(3) (2009); *see also* 15 USC § 376 note ("Act March 31, 2010 … *deleted* 'to other than a distributor licensed by or located in such State'"). The Court concluded that the change in language was too great to support a contention that Congress intended the earlier definition of "consumer" in the Jenkins Act to have the same meaning as "consumer" in the PACT Act. *Dec.* at 20.[6] Defendants never explain why Congress would affirmatively *delete* a reference to a "distributor licensed by or located in such State" and yet somehow impliedly incorporate that same element into the amended definition of "consumer" in the PACT Act. Defendants' reading requires violation of a fundamental principle of statutory construction: "'[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.'" *Dean* v. *United States*, 556 U. S. 568, 572 (2009) (quoting *Bates* v. *United States*, 522 U. S. 23, 29 (1997)). To hold that "lawfully operating" meant "operating with any necessary state or local registration or license" self-evidently violates that rule.

Defendants' argument that "lawfully operating" means operating "with any required licenses," is also wrong because it runs afoul of the general rule that to interpret a statute one "may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020). "[W]hen Congress chooses not to include any exceptions to a broad rule, this Court applies the broad rule." *Bostock v. Clayton Cty.*, 590 U.S. 644, 646-47 (2020). Here, Congress provided a broad rule that a person must be "lawfully operating" to avoid classification as a consumer. Defendants offer no textual basis for narrowing

---

[6] Defendants irrelevantly look to the dictionary definition of "consumer" in addressing the definition of "consumer," which is an expressly defined term in the PACT Act. *Rec. Mem.* at 17. This is of course the exact reverse of the correct procedure for interpreting statutory language. "*When a term goes undefined in a statute*, we give the term its ordinary meaning." *Asgrow Seed Co.* v. *Winterboer*, 513 U.S. 179, 187 (1995) (emphasis added). Defendants' customers are "consumers" because the statute says they are, regardless of anything a dictionary might provide.

the meaning of lawfully operating" to "licensed." *See City of N.Y. v. United States Postal Serv.*, 519 F. Supp. 3d 111, 120 (E.D.N.Y. 2021).

Defendants repeat their previously-discredited argument that restricting the delivery sales exemption to "lawfully operating" entities is unworkable because distributors could not know whether their customers were legally compliant or not. *Rec. Mem*. at 21. The Court easily disposed of that argument by concluding that distributors would have incontrovertible knowledge of a customer's unlawful operation simply by the receipt of customer orders for products prohibited within the customers' jurisdiction, such as flavored e-cigarettes. Any New York City customer that ordered flavored e-cigarettes from the Defendants could not have been "operating lawfully" and Defendants would have known that from the order itself. *Dec.* at 21. The Court certainly did not "miss" this argument but flatly rejected it, correctly observing "it would be clear when a purchaser requests [flavored e-cigarettes] that they were not lawfully operating because of the [flavor] ban." *Dec*. at 21.[7] An e-cigarette distributor is charged as a matter of law with knowledge of the laws governing that industry and accordingly knows that

---

[7] On this issue, Defendants misapply the principle against a statutory interpretation yielding an absurd result. "A statute is not 'absurd' merely because it produces results that a court or litigant finds anomalous or perhaps unwise." *Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*, 846 F.3d 492, 517 (2d Cir. 2017) (quoting *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470-71 (1989) (Kennedy, J., concurring in the judgment)). Courts should look beyond a statute's text under the canon against absurdity "only 'where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone.'" *Id*.

Here, it is not "impossible" that Congress intended compliance with all laws governing tobacco and e-cigarette sales, particularly where Congress emphasized the variety of harms caused by illegal cigarette sales, *see City of N.Y. v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103, at *18 (S.D.N.Y. Sep. 9, 2013), and where, as will be shown below, Congress endowed two other PACT Act provisions with similar provisions requiring global compliance with tobacco laws. *See* 15 USC §§ 376a(a)(3), (e)(2)(A)(ii). The only absurdity here is the Defendants' argument that they cannot detect unlawful conduct when it stares them in the face.

flavored e-cigarettes are illegal under federal, New York State, and New York City law.[8] Defendants' argument is that "despite doing business in a jurisdiction in which flavored e-cigarettes are illegal to possess or sell or offer for sale, how could I possibly know that customers that buy thousands of flavored e-cigarettes from me are not 'lawfully operating'?" Defendants' belief that "common sense" supports that argument, *Rec. Mem.* at 21, itself flies in the face of "common sense."

The Court disposed of Defendants' "rule of lenity" argument by correctly pointing out that the rule applies to ambiguous statutes and there is nothing ambiguous about the term "lawfully operating." *Dec.* at 21. Defendants again offer nothing to show ambiguity in the use of the term "lawfully operating" in 15 USC § 375(4).

Defendants offer nothing to show the Court to have been either "dead wrong" or to have erred in a "direct, obvious and observable" fashion in rejecting even one of these arguments. *Rec. Mem.* at 17.

### C. The Court's Construction of "Lawfully Operating" Is Confirmed by PACT Act Provisions that Impose the Same Conditions

Defendants' notion that "lawfully operating" could not mean "in compliance with all laws" is refuted definitively by other provisions of the PACT Act, including the Act's restriction on delivery sales in 15 USC § 376a(a)(3). That provision effectively explains the meaning of "lawfully operating":

> (a) With respect to delivery sales into a specific State and place, each delivery seller shall comply with—

---

[8] *See United States v. International Minerals & Chemical Corp.* 402 U.S. 558, 565 (1971) (in regard to dangerous or obnoxious products, "the probability of regulation is so great that anyone who is aware that he is … dealing with them must be presumed to be aware of the regulation."); *accord United States v. Elshenawy*, 801 F.2d 856, 858 (6th Cir. 1986)(applying the principle to cigarettes)

\*\*\*

> (3) *all State, local, tribal, and other laws generally applicable to sales of cigarettes* or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place, including laws imposing—

15 USC § 376a(a)(3) (emphasis added). This section provides that a distributor like the Defendants that sells to a "consumer" in a delivery sale must "comply with all State, local, tribal, and other laws generally applicable to sales of cigarettes," thereby more sharply specifying what it means to be "lawfully operating," *i.e.*, to be "comply[ing] with all State, local, tribal, and other laws generally applicable to sales of cigarettes." Congress certainly did not hesitate in requiring compliance by delivery sellers with a broad array of laws of the jurisdiction into which a delivery seller sells—"all… laws generally applicable to sales of cigarettes"—and hence would have not hesitated in requiring delivery sellers to know that the persons to whom they sold were (or were not) in compliance with those same laws. The requirement in 15 USC § 376a(a)(3) that *sellers* comply with the cigarette-related laws of a jurisdiction is the mirror image of requiring the seller to know that its *purchasers* in that same jurisdiction (*i.e.*, the sellers' *customers*) are in compliance, *i.e.*, are "lawfully operating," to gain exemption from the delivery sales requirements. Congress in 15 USC § 376a(a) in effect detailed the meaning of "lawfully operating" that appears in 15 USC § 375(4): as "compl[iance] with… (3) *all State, local, tribal, and other laws generally applicable to sales of cigarettes*…" 15 USC § 376a(a).

There is yet a third PACT Act provision requiring global legal compliance by entities involved in cigarette commerce: in this case, common carriers. The PACT Act regulates cigarette shipments by common carriers and imposes prohibitions against pick-up or delivery from entities that have been placed on a list of unlawfully operating entities compiled and maintained by the U.S. Attorney General. *See* 15 USC § 376a(e). Common carriers are prohibited from delivering packages tendered to or for persons that are not lawfully operating and placed on that list.

However, this broad prohibition includes three narrow exceptions, one of which requires the common carrier to show that the entity on the list is *lawfully engaged* in the tobacco business:

> 2) Prohibition on delivery.
>
> (A) In general. … no person who receives the list under paragraph (1), and no person who delivers cigarettes or smokeless tobacco to consumers, shall knowingly complete, cause to be completed, or complete its portion of a delivery of any package for any person whose name and address are on the list, unless—
>
> ***
>
> (ii) *the delivery is made to a person lawfully engaged* in the business of manufacturing, distributing, or selling cigarettes or smokeless tobacco;

15 USC § 376a(e)(2) (emphasis added). To benefit from this exception, common carriers must acquire knowledge of facts comparable to that of distributors—they must determine that persons to whom they deliver are in compliance with laws pertaining to cigarettes. The prohibition on delivery services from making deliveries except to cigarette businesses "lawfully engaged" in that business accordingly parallels and serves a comparable purpose as the responsibilities placed on distributors, who also must determine that their customers are "lawfully operating."

In sum, Congress has imposed on the e-cigarette industry a set of provisions requiring industry participants to know and conform their conduct to the law: (i) delivery sellers "shall comply with… all State, local, tribal, and other laws generally applicable to sales of cigarettes," 15 USC § 376a(a)(3); (ii) common carriers may only deliver cigarettes to persons "lawfully engaged" in the tobacco business (15 USC § 376a(e)(2)(A)(ii)); and (iii) all sales except to "lawfully operating" tobacco businesses (15 USC § 375(5)) must be made in compliance with 15 USC § 376a(a)(3). Construing these provisions in harmony makes it evident that Congress sought to assure that e-cigarette sales are made in compliance with "*all State, local, tribal, and other laws generally applicable to sales of cigarettes*," 15 USC § 376a(a)(3) (emphasis added),

not merely that sales are made to "licensed dealers." As the Court found, all of Defendants' sales to entities purchasing flavored e-cigarettes are delivery sales that do not comply with federal, state, and City law.

### D.  The PACT Act Is Not Directed at Retail Sales Alone

The Defendants argue that, as distributors, they are not a target of PACT Act regulation because the PACT Act is "clearly aimed at *retail* sales." *Rec. Mem*. at 21. However, that statement is meaningless when it comes to assessing the responsibilities to be imposed on the Defendants by the PACT Act. The PACT Act may well have an ultimate goal of interfering with (*i.e*., is "aimed at") retail sales, but the most effective manner of regulating retail sales is to regulate their source, *i.e*., the sales by distributors to retailers and to other distributors. There would be little logic, and little effectiveness, in merely regulating retail sales to consumers while ignoring the fact that it is distributors like the Defendants that supply those retailers with the inventory that is sold to the public at retail. Congress would not have been as short-sighted as Defendants propose.

The notion that the PACT Act is limited to retail regulation, beyond making no sense, is also flatly refuted by several provisions of the PACT Act. First, the PACT Act's reporting requirement is directed at:

> *Any person* who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless tobacco for such sale, transfer, or shipment, …

15 USC § 376(a) (emphasis added). A reference to "all persons" self-evidently includes entities that are "distributors and wholesalers," *i.e.*, Defendants.[9] If the PACT Act were "clearly aimed" only at retail sales (as Defendants suggest), its reporting requirement would say so, and would not apply to "any person," about as broad an application as possible. Defendants' purported "clear aim" would instead reference "any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce *intended for retail sale*." The PACT Act does not so read, for the simple reason that the Act is intended to regulate commerce in cigarettes generally, not merely retail commerce.

### E. Even under Their Own Definition of "Consumer" as Meaning "Unlicensed Entities," Defendants Made Delivery Sales in Violation of the PACT Act

Defendants originally argued that

> It is Defendants' position that the Court should interpret the term "lawfully operating" as meaning operating with any necessary state or local registration or license. … Under that interpretation, the Court should dismiss the City's PACT Act claim because the City has not alleged facts demonstrating that Defendants sold electronic cigarettes to a distributor or retailer that lacked the required registration or license for selling electronic cigarettes.

*Dkt. No*. 53 at 11. But contrary to Defendants' contention, the Amended Complaint *did* even then allege "facts demonstrating that Defendants sold electronic cigarettes to a distributor or retailer that lacked the required registration or license for selling electronic cigarettes":

> 16. The defendants offer for sale and sell, possess with intent to offer for sale or with intent to sell FDVs that they ship to persons in New York City who are not licensed to receive vapor product shipments.

* * *

---

[9] ATF is of the same view: "The reporting requirement in section 376(a)(2) is not limited to delivery sellers. Under the plain language of the introductory text of 15 USC § 376(a) reporting applies to 'any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce.'" *See Proshansky Decl.* Ex. B at 2.

148. The defendants knowingly distributed FDVs to persons that do not hold Vape Certificates and/or that are not permitted by N.Y. PHL 1399-*ll* to receive remote cigarette deliveries.

\* \* \*

180. Defendants knowingly shipped and/or caused to be shipped FDVs to persons in New York City whom those defendants knew were not (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers.

*Am. Compl.* ¶¶ 16, 148, 180. These are allegations of fact, not legal conclusions.

Even if these pre-discovery allegations were to be deemed insufficient, the City's motion for a preliminary injunction, *Dkt. Nos.* 41–50, includes a declaration and exhibits setting forth facts showing that the great majority—approximately 93% of stores displaying flavored e-cigarettes—were either unlicensed to sell e-cigarettes or completely unlicensed to sell any tobacco products at all. *Dkt. No.* 50 at 19 (citing *Dkt. No.* 43).[10] These statements suffice as allegations of unlawful operation. Even accepting Defendants' incorrect formulation of "lawfully operating," Defendants' sales are to consumers because they are to entities that are not lawfully operating under Defendants' own definition—they are unlicensed.

## II. Reconsideration Is Unwarranted as to the Court's Original Determination that the City Plausibly Alleged that Defendants Must Comply with the PACT Act's Reporting Requirements

Defendants ask the Court to reconsider its ruling that the City has adequately alleged that they must comply with the reporting requirements in 15 USC § 376(a) because they operate in

---

[10] The abundant filings accompanying the City's motion for a preliminary injunction is of record in this case. *See Dkt. Nos.* 41–50. Courts may consider facts of record between the *same* parties in the *same* case. *See, e.g., Scaminaci v. Jaffrey*, 2022 U.S. Dist. LEXIS 60966, at \*1 n.1 (S.D.N.Y. Mar. 31, 2022) ("The Court also takes judicial notice of certain earlier filings and undisputed facts that came before the Court in connection with Scaminaci's earlier motion for a preliminary injunction."), *rev'd on other grounds*, 2023 U.S. App. LEXIS 2016 (2d Cir. Jan. 26, 2023). A party "need not seek judicial notice of documents filed in the same case." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); *Jones v. Cty. of San Bernardino*, 2022 U.S. Dist. LEXIS 141961, at \*6-7 (C.D. Cal. May 12, 2022). Materials filed in support of the City's motion for a preliminary injunction can therefore be used to reject Defendants' arguments on reconsideration. *See Perkins v. Comm'r*, 970 F.3d 148, 152 n.2 (2d Cir. 2020); *Young v. Selsky*, 41 F.3d 47, 50-51 (2d Cir. 1994).

interstate commerce as defined in that statute. *Dec.* at 3–10. As an initial matter, Defendants do not dispute that the City has adequately alleged that they meet the PACT Act requirements for delivery sales in 15 USC § 376a (which has no interstate commerce requirement), as the Court correctly ruled. *Id.* Thus, to a certain extent, Defendants' "interstate commerce" argument is an academic exercise: regardless of whether Defendants act "in interstate commerce" for purposes of 15 USC § 376(a), they are still in violation of the PACT Act for failure to comply with the delivery sales requirements. In any event, the Defendants present no reason why the Court's ruling that they meet the interstate commerce requirement in 15 USC § 376(a) should be reconsidered.

### A.  Defendants Do Not Dispute that the City Has Plausibly Alleged They Failed to Comply with the Delivery Sales Requirements in 15 USC § 376a

The PACT Act has an interstate commerce element in 15 USC § 376, titled "Reports to State tobacco tax administrator":

> a) Contents. Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco *in interstate commerce*, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless tobacco for such sale, transfer, or shipment, [must file certain reports].

15 USC § 376 (emphasis added); *see California v. Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, at *6–7 (E.D. Cal. Sep. 7, 2023) ("Under the PACT Act, persons who sell cigarettes in interstate commerce must file reports "with the Attorney General of the United States and with the tobacco tax administrators of the State and place into which such shipment is made[.]"). In contrast, there is no interstate commerce element for PACT Act "delivery sales"—*i.e.*, there is no requirement that a delivery sale be made "in interstate commerce":

> 5) Delivery sale. The term "delivery sale" means any sale of cigarettes or smokeless tobacco to a consumer if—

- 17 -

(A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or

(B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15 USC § 375(5).[11] The difference in the language of 15 USC § 375(5) and 15 USC § 376 is significant. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). Congress may well have understood that an interstate commerce requirement was unnecessary for every type of transaction regulated by the PACT Act because, as stated in Congress's PACT Act "Findings":

(10) the *intrastate* sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate commerce.

15 USC § 375 note (emphasis added).

ATF, citing applicable caselaw, has confirmed that interstate commerce plays a different role in the PACT Act depending on whether the issue is registration and reporting on the one hand or the making of delivery sales:

---

[11] Congress may well have recognized that an express interstate commerce requirement was unnecessary in the definition of delivery sales in 15 USC § 375(5) because a delivery sale is one in which "the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service." Transactions that use the mails or the wires are by definition "in interstate commerce." *See, e.g., SEC v. Norstra Energy Inc.*, 202 F. Supp. 3d 391, 398-99 (S.D.N.Y. 2016) ("Inherently interstate methods of communication, such as the Internet or e-mail, constitute 'instrumentalities' of interstate commerce."). Because delivery sales by definition take place in interstate commerce, there was no need to so specify expressly.

> Unlike 15 USC § 376(a) there is no requirement that these [delivery] sales
> must be in interstate commerce, *see* 15 USC § 375(5) (definition of
> delivery sale does not use term interstate commerce, but references orders
> placed not in the presence of a person through telephone, internet, voice
> transmission or other means). *See City of New York* v. *Hatu,* 2019 U.S.
> Dist. LEXIS 91576 (S.D.N.Y. 2019) at *46-47 (no requirement of
> establishing interstate commerce necessary to establish delivery sales and
> intrastate transaction is a delivery sale).

*Letter from ATF to Azuma Corp. dated November 19, 2019* (*Proshansky Decl*. Ex. C). ATF's

citation to *Hatu* is instructive here, if not dispositive. Hatu, a North Carolina distributor, sold

cigarettes to traffickers present in North Carolina, who later transported them to New York City.

Hatu argued against his liability under the PACT Act, claiming "that the cigarettes must have

been distributed 'in interstate commerce,' whereas as alleged, he delivered cigarettes to scheme

participants who, at that time, were in North Carolina." The *Hatu* court rejected this argument:

> Hatu misstates the law. *The PACT Act does not require delivery sales to
> have occurred in interstate commerce. See* 15 USC § 375(5)(A).

*City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *47-48 (S.D.N.Y. May 31, 2019)

(emphasis added). The facts in *Hatu* are on all fours with the present facts: Defendants are

alleged to be liable for their delivery sales into New York City, made either from their places of

business in Buffalo (Hyde Defendants) or in New York City itself (Empire Defendants), just like

Mr. Hatu faced PACT Act liability for his sales entirely within North Carolina.

Defendants only challenge the Court's interstate commerce ruling as to registration and

reporting. *See Dkt. No*. 53 at 9–13; *Rec. Mem*. at 3–10. They make no argument that there is an

interstate commerce requirement for delivery sales. The Amended Complaint alleges both

(i) violations of the reporting requirements (15 USC § 376) and (ii) violations of the delivery

sales requirements (15 USC § 376a)—*see Am. Compl*. ¶¶ 113, 114 (reporting violations) &

¶¶ 117a, 121 (failures to comply with delivery sales violations)—but Defendants address only

the former. *Rec. Mem*. at 3–10. Accordingly, even if Defendants had a meritorious argument as to interstate commerce—as shown below, they do not—they did not move to dismiss the City's allegations of PACT Act delivery sales violations on interstate commerce grounds. The Amended Complaint alleges viable PACT Act claims, and those claims will proceed regardless of the fate of the PACT Act registration and reporting issues. Defendants remain liable to the City for their delivery sales violations.

In any event, the Court correctly ruled that the Amended Complaint alleges sales "in interstate commerce," and Defendants arguments offer no extraordinary reason for reconsideration.

### B. Reconsideration Is Unwarranted as to the Court's Original Determination that Defendants Are Persons who Ship in Interstate Commerce

In holding that the City plausibly stated a claim for violation of the PACT Act's reporting requirements, 15 USC § 376a, the Court correctly concluded that the allegations in the Amended Complaint "satisfy the interstate commerce requirement for both the Hyde and Empire defendants." *Dec*. 16. Specifically, the Court correctly held that "the allegations in the Amended Complaint satisfy the interstate commerce requirement … because they allege that [e-cigarettes] were originally manufactured in China, a place outside of New York state, shipped by both the Hyde and Empire defendants into New York state, and then distributed by both the Hyde and Empire defendants into New York City for sale at a profit." *Id*. at 16-17. The Court also correctly concluded that simply pausing e-cigarettes distributed by the Hyde Defendants in Buffalo "does not remove them from interstate commerce." *Id*. at 17. In addition, as shown below, even without their extensive international ties, the Defendants are so widely immersed in interstate commerce within the United States that they unquestionably are "person[s] who sell[], transfer[], or ship[]

for profit cigarettes or smokeless tobacco in interstate commerce," 15 USC 376(a), which is all that is necessary to satisfy the PACT Act's commerce requirement.

In asserting that as importers of e-cigarettes they are not engaged in "interstate commerce" under 15 USC 376(a), Defendants ignore the language of the PACT Act, Congress's intent, and the allegations in the Amended Complaint. Understanding the interstate commerce requirements of the PACT Act must begin with the statutory text and the congressional findings underlying the statute. As relevant here, the PACT Act defines "interstate commerce" as "commerce between a State and any place outside the State." 15 USC § 375(10)(a).

Defendants begin by blatantly mischaracterizing the caselaw interpreting this language, incorrectly asserting that the interstate commerce requirement for the filing of PACT Act reports is "extremely narrow." *Rec. Mem.* at 8. That argument is flatly wrong; the very cases Defendants cite say just the opposite. *See*, *e.g.*, *New York v. Mt. Tobacco Co.*, 942 F.3d 536, 547 (2d Cir. 2019) (the interstate commerce language "*evidences Congressional intent to expand the traditional understanding of 'interstate commerce' rather than narrow it*") (emphasis added); *New York v. Grand River Enters. Six Nations, Ltd.*, No. 1:14-cv-00910-MAT-LGF, 2019 U.S. Dist. LEXIS 21558, at *16–17 (W.D.N.Y. Feb. 11, 2019) (concluding that "the PACT Act expands the definition of 'interstate commerce' to include *intra*state shipments of cigarettes that travel through Indian country," which "evidences the intent to *expand* the traditional understanding of interstate commerce rather than to narrow it") (emphases in original). Defendants cite not a shred of evidence to show that Congress sought to narrow the definition of interstate commerce, either generally or in relation to e-cigarettes specifically.

Repeating the argument in their original motion, Defendants again take the position that to state a claim based on a violation of the PACT Act's reporting requirements, the City must

allege that Defendants "were the party that 'shipped' the ENDS products at issue from China into New York State." *Rec. Mem.* at 4; *Empire Rec. Mem.* at 1–2. Defendants thus contend that the City has alleged only that Defendants are "distributors" of imported e-cigarettes, not that Defendants themselves shipped e-cigarettes from abroad into New York State. *Rec. Mem.* at 4. They assert that the City's allegations are insufficient to demonstrate that Defendants engaged in anything other than intrastate sales and, as a result, Defendants are exempt from the PACT Act's reporting requirements. *Id.* They also again argue that the City's allegations fail to allege a "single, continuous sale, transfer and shipment under 15 USC § 376(a)." *Rec. Mem.* at 6. Defendants cite neither caselaw nor statutory language suggesting that either of their two purported nuances with respect to interstate commerce are required.

Defendants' arguments fail for two primary reasons. *First*, as the City asserted in its opposition to the Hyde and Empire Defendants' motions to dismiss, 15 USC § 376(a) "appl[ies] *generally* to entities engaged in interstate commerce, not to particular shipments." *Am. City Opp. to Hyde Defs.' Mot. to Dismiss* (Dkt. No. 72) at 18. 15 USC § 376(a) states:

> Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco, or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment, shall [register with and file shipping reports to federal, state and local officials].

15 USC § 376(a). It is well understood that Congress includes an "interstate commerce" requirement in its statutes to provide the jurisdictional element under the Constitution required for the assertion of congressional powers, not as a means of specifying the individual transactions that are to be regulated. The plain fact here is that Defendants are "person[s] who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce" and thus must register. Nothing in the above language suggests that the filing requirement is

applicable only to particular transactions such that a person routinely selling to other states would not have to report a particular sale that happens to be within the seller's own state.[12]

The Amended Complaint is replete with detailed allegations demonstrating the Defendants' general operation "in interstate commerce," such as:

> 8…. The defendants on information and belief import e-cigarettes manufactured in China (and elsewhere), distributing the devices to retail stores that in turn sell e-cigarettes to the public.
>
> * * *
>
> 63…. Magellan is the master distributor for all Hyde and Juno-branded products, some of which are manufactured for Magellan in China by Shenzhen IVPS Technology Co., Ltd.
>
> * * *
>
> 81. Demand Vape in its own words is one of the largest, if not the largest, electronic cigarette distributor in the United States, offering approximately 30,000 products and selling to approximately 5,000 retailers in 49 states and internationally…. Demand Vape is a sister company to Magellan, which serves as Demand Vape's purchasing arm.

*Am Compl.* ¶¶ 8, 63, 81. As to Empire, the Amended Complaint alleges:

> 85…. Empire Vape distributes [e-cigarettes] at wholesale to conventional smoke and vape shops and convenience/grocery stores in New York City… and in Connecticut, Delaware, Kentucky, Maryland, Massachusetts, New Hampshire, New Jersey, Ohio, Rhode Island, Southern Carolina, Tennessee, Texas, and Virginia…

*Id.* ¶ 85.

The Court can also consider other filings in this case to analyze Defendants' arguments. *See supra* at n.10. Those filings make clear Defendants' extensive involvement in interstate commerce within the U.S. *See Dkt. No.* 42-1 at 17 (noting sales by a third-party web-seller of

---

[12] Nor would such a reading make sense in the context of the PACT Act, where Congress was well aware that purely intrastate sales through Indian reservations were a major source of cigarette trafficking and tax avoidance. *See* 15 USC § 375 note ("the intrastate sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate commerce").

Hyde products distributed by master distributors Magellan and Demand Vape); *Dkt. No*. 42-1 at 19 (noting a "nationwide blitz" by the FDA against retail sellers of Hyde products, which would have been master distributed by Magellan or Demand Vape); *Dkt. No*. 42-1 at 39 ("Demand Vape sells to 5,000 retailers '*nationwide*'") (emphasis added); *Dkt. No*. 42-1 at 95 ¶ 20 (Demand Vape sells "to approximately 5,000 retailers in 49 states").

Demand Vape's extensive commerce with China has been described by owner Matthew J. Glauser under penalty of perjury as follows:

> 14. As a Super VIP customer and/or master distributor Demand Vape's relationship with [Chinese company] G.D. Sigelei has been, and currently remains, *akin to a partnership* in that Demand Vape has helped G.D. Sigelei design products, packaging and the like, by providing its input and has played a critical role in launching, developing, and fostering the growth and development of G.G. Sigelei's brands and products [of e-cigarettes]"

*Dkt. No.* 42-1 at 127 ¶ 14 (emphasis added). Magellan/Demand Vape's description of its participation in interstate commerce continues:

> 16.    GD Sigelei also shares with us product samples, product images, and marketing and promotional materials to allow us to promote its SIGELEI branded products to our extensive customer base.

> 17.    Beginning in 2016, Demand Vape, through its sister company, Magellan Technology Inc. (the purchasing arm of Demand Vape), purchased ELF branded electronic cigarettes, and accessories ("ELF Products") from GD Sigelei .

> * * *

> 19.    In 2016, Demand Vape purchased $13,850 of ELF Products.

> 20.    Demand Vape has made sales of ELF [e-cigarette] Products in each year from 2016 through 2023, except 2018.

> 21.    Demand Vape has continuously held inventory of ELF Products from 2016-2023.

- 24 -

> 22.    Demand Vape has continuously offered for sale ELF [e-cigarette] Products from 2016-2023 to sub-distributors, retailers and direct to consumers through our company sales team and through our website ….

*Dkt. No.* 42-1 at 128–29 ¶¶ 16–17, 19–22. Magellan/Demand Vape cannot on the one hand operate in a manner "*akin to a partnership*" with a Chinese manufacturer of e-cigarettes and yet claim that they are only "importers" but not shippers, *Rec. Mem.* at 5–7, or that there is not "a single, continuous transaction" at issue here, even if that were a requirement.

The Amended Complaint also alleges that Demand Vape and Empire Vape sell electronic cigarettes through their websites. *Am. Compl.* ¶¶ 80–82, 85–87. The exhibits to the City's motion for a preliminary injunction show a Hyde website and a Demand Vape website that (at the very least) advertise (and likely sell) Hyde products. *See, e.g., Dkt. No.* 42-1 at 22, 29, 32. That alone is sufficient to allege, if not in fact establish, that Magellan and Demand Vape "sell[], transfer[], or ship[] for profit cigarettes or smokeless tobacco in interstate commerce," as well as "advertise[] or offer[] cigarettes or smokeless tobacco for such a sale, transfer, or shipment." 15 USC § 376(a). As noted *supra* at n.11, commerce over the internet is by definition interstate commerce because it uses the national wire system. As alleged in the Amended Complaint, simply by virtue of their use of the internet, Defendants offer for sale and sell for profit electronic cigarettes "between a State and any place outside the state" through an interstate instrumentality. Therefore they must comply with the federal reporting requirements. 15 USC § 375(10)(a).

Defendants' notion that "the City must allege that they "were the party that 'shipped' the ENDS products at issue from China into New York State" in "a single, continuous sale, transfer and shipment" (*Rec. Mem.* at 4) is demonstrably wrong simply by considering the language of 15 USC § 376(a). That section applies to "[a]ny person who sells, transfers, or ships for profit

- 25 -

cigarettes… in interstate commerce, *whereby such cigarettes or smokeless tobacco are shipped into a State [or] locality.*" *Id*. (emphasis added). It is clear from that language that the transactions need not even involve a shipper, because it applies to "a person who transfers"— language broad enough to include an "importer." Moreover, the language allows for the involvement of two separate entities: (1) the entity that "sells," "transfers" or "ships" and (2) the unnamed entity "whereby the cigarettes are shipped." Notably, the first sentence uses the active tense, whereas the second uses the passive tense. The use of the passive voice requires an analysis that "focuses on an event that occurs without respect to a specific actor." *Dean v. United States*, 556 U.S. 568 (2009); *City of N.Y. v. Chavez,* 2012 U.S. Dist. LEXIS 42792, at *11 (S.D.N.Y. Mar. 26, 2012). The point here is that the language demonstrates that Congress contemplated that two (or more) actors could be involved in the shipment into a locality: the one that sells, transfers or ships for profit, and a second undesignated entity "whereby" the cigarettes are shipped into a state or locality. The notion of "a single, continuous sale, transfer and shipment," *Rec. Mem.* at 4, is wrong based on that language.

*Second*, even under Defendants' narrow interpretation of the statute that incorrectly looks solely at individual shipments, the allegations in the Amended Complaint are sufficient. The Amended Complaint alleges, and even prior to discovery the facts already show, that Defendants are master distributors, importing e-cigarettes from abroad in "partnership" with at least one Chinese company and sending that product to New York City. *See, e.g*., *Am. Compl.* ¶ 8. The Amended Complaint goes even further for Magellan, asserting that "Magellan is the master distributor for all Hyde and June-branded products, some of which are manufactured for Magellan in China." *Id.* ¶ 63. Defendants assert that "importing" and "shipping" are not synonymous, but they cite no case law that supports this, particularly where an importer has

directed products to be manufactured and sent to its distribution centers, as is the case for Magellan. *Rec Mem.* at 5.[13] The cases they do cite involve defendants who shipped products into a jurisdiction from outside that jurisdiction. *See New York v. Mt. Tobacco Co.*, 942 F.3d 536 (2d Cir. 2019); *New York v. Grand River Enters. Six Nations, Ltd.*, 2019 U.S. Dist. LEXIS 21558 (W.D.N.Y. Feb. 11, 2019). Simply because those defendants were not located within the jurisdiction to which they were sending products, however, does not mean that importers who are—especially those who direct their suppliers as to how much product to make and send—are exempt from having to file PACT Act reports.[14]

Defendants assert that it was also clear error for the Court to treat shipments from their distribution centers into New York City as part of a single transaction involving the products initially sent from China. *Rec. Mem.* at 6. But, again, they cite no cases in support of this argument. Instead, they challenge the Court's reliance on *New York v. Grand River Enters. Six*

---

[13] Given a typical definition of the term "import"—"to land on, bring into, or introduce into, or attempt to land on, bring into, or introduce into, any place…[a product]" (16 USC § 1532) or "to bring (something, such as merchandise) into a place or country from another country" (*Import*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/import), it is obvious that importing necessarily includes "shipping" and indeed is simply a specialized form of "shipping." Moreover, importing" certainly includes the "transfer" of goods, which also brings Defendants with the broad sweep of "Any person who … transfers … cigarettes…" under 15 USC § 376a.

[14] Defendants also cite two cases that purport to state that PACT Act reports do not include intrastate sales. *See Rec. Mem.* at 9 (citing *Grand River Enters. Six Nations v. Boughton*, 988 F.3d 114, 123 (2d Cir. 2021) and *Grand River Enters Six Nations Ltd. v. Sullivan*, No. 3:16-cv-010870WWE, 2018 U.S. Dist LEXIS 165114 (D. Conn. Sept. 26, 2018)). The courts in these cases were not confronted with the issue of whether master distributors, who import product from abroad into a jurisdiction, should be required to file PACT Act reports in that jurisdiction if they are located there. Instead, they were confronted with the separate issue of whether state laws aimed at curbing the sale of tobacco by manufacturers who chose not to participate in a nation-wide settlement agreement were unconstitutional. *See Boughton*, 988 F.3d at 119-120; *Sullivan*, 2018 U.S. Dist LEXIS 165114, at *3-4. Any remarks regarding intrastate sales are, therefore, dicta. These cases were also not raised in Defendants' motion to dismiss below and, because they purport to stand for the same proposition that Defendants argued in the motions to dismiss, are inappropriately raised on this motion. *See Meyer v. Kalanick*, 185 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (denying a motion for reconsideration because "defendant's arguments on the motion… essentially accord with those made, albeit much more briefly, in defendant's motion to dismiss" and all the defendant did was "expand[] its argument and cite[] several new cases.").

*Nations, Ltd.*, 2019 U.S. Dist. LEXIS 21558 (W.D.N.Y. Feb. 11, 2019). That case, however, supports the City's position that Defendants must file PACT Act reports. As Defendants admit (*Rec. Mem.* at 7), *Grand River* held that an importer bringing in product from Canada to an Indian reservation in New York State was required to file PACT Act reports because that importer was engaged in "interstate commerce." *Grand River*, 2019 U.S. Dist. LEXIS 21558, at *6-7, 14. Defendants are no differently positioned than the U.S.-based importer in *Grand River*; at the importer's behest, product is brought into New York State, and later shipped customers in New York City. Defendants are, therefore, responsible for registering and filing reports documenting those shipments and their ultimate destinations. 15 USC § 375(a)(1)-(3).[15]

As the Court correctly pointed out, excluding Defendants from the PACT Act's reporting requirements because they are located in New York State would lead to an absurd result: "[i]f being re-distributed at a packaging center and then shipped locally could transform interstate commerce into purely intrastate commerce, companies could easily avoid reporting requirements by simply depositing [e-cigarettes] with a middleman in the state of the locality where they would ultimately be sold." *Dec.* at 17-18. The Court did not commit clear error by avoiding such a result.[16]

---

[15] Given the Court's explicit reliance on *Grand Rivers*, all Defendants are doing on reconsideration is trying for a "second bite at the litigation apple." *Ralph Oldsmobile v. GMC*, 2003 U.S. Dist. LEXIS 115, at *5 (S.D.N.Y. Jan. 6, 2003). The Court's decision should not be treated, as Defendants are doing here, as "the opening of a dialogue in which [a] party may then use [a motion for reconsideration] to advance new theories or adduce new evidence in response to the court's rulings." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (cleaned up).

[16] The state government websites cited to by Defendants, *Rec. Mem.* at 9, do not dictate a different holding. Those websites offer general guidance to in-state and out-of-state distributors, without addressing what is required of in-state distributors importing products manufactured abroad. Moreover, any inconsistency between guidance from state governments and the language of the PACT Act would simply show that some state governments do not want all of the reports they are entitled to under the PACT Act. Notably, Defendants cite no guidance from New York State in this matter.

The Amended Complaint's allegations are sufficient to allege that Magellan and Demand Vape are persons that "sell[], transfer[], or ship[] for profit cigarettes or smokeless tobacco in interstate commerce," or "advertise[] or offer[] cigarettes or smokeless tobacco for such a sale, transfer, or shipment," 15 USC § 376(a), and hence they must file reports PACT Act reports with New York City officials.

### III.    The Court Correctly Held that the City Has Standing Due to Its Excise Tax on Cigarettes and Its Sales Tax on Cigarettes and E-Cigarettes

Defendants also ask the Court to "vacate that portion of its Opinion & Order that holds that, merely because New York City imposes an excise tax on combustible cigarettes, businesses shipping ENDS products into the City must also register with and submit monthly PACT Act reports," arguing that "the Court should defer to ATF's position" and that the Court "erred by overlooking…the Hyde Defendants' reasonable reliance thereon." *Rec. Mem*. at 17, 13, 11. For multiple reasons, this argument fails to justify reconsideration.

As an initial matter, there is no portion of the Court's Opinion that "holds that, merely because New York City imposes an excise tax on combustible cigarettes, businesses shipping ENDS products into the City must also register with and submit monthly PACT Act reports." The pages of the Court's Opinion that Defendants cite address not whether Defendants must file PACT Act reports under 15 USC § 376, but whether the City has standing to enforce the PACT Act under 15 USC § 378(c)(1)(A). *Rec. Mem*. at 11 (citing *Dec*. at 12–13). These questions are similar—and have the same answer in this case—but they involve different statutory provisions.[17]

---

[17] As relevant here, PACT Act reports must be filed in states "taxing the sale or use of cigarettes" and in "local governments…that apply their own local…taxes on cigarettes." 15 USC § 376. In contrast, a local government has PACT Act standing if it "levies a tax subject to [15 USC § 376a(a)(3)]." 15 USC § 378(c)(1)(A); *see* 15 USC § 376a(a)(3) (mentioning "excise taxes" and "other payment obligations… relating to the sale… of cigarettes").

Moreover, the Court's premise was not "merely because New York City imposes an excise tax on combustible cigarettes"; rather, the Court recognized that "New York City imposes an excise tax on cigarettes *and a sales tax on both cigarettes and e-cigarettes,*" both of which "provide standing to sue" (*Dec.* at 12 (emphasis added)) because the former is an "excise tax[]" and the latter is an "other payment obligation[]…relating to the sale…of cigarettes" under 15 USC 376a(a)(3). The same logic applies just as strongly with respect to PACT Act reporting under 15 USC § 376: because New York City imposes an excise tax on cigarettes and a sales tax on both cigarettes and e-cigarettes, New York City is a "local government[]… that appl[ies] [its] own local…taxes on cigarettes." And just as 15 USC § 378(c)(1)(A) contains "no limiting language requiring the violation of the chapter to be against the same type of cigarette as the type of tax levied" (*Dec.* at 13), section 376 requires reporting of "each and every shipment of cigarettes…made during the previous calendar month" and contains no language limiting this requirement to only the types of cigarettes on which the "local government… appl[ies] [its] own local…taxes".

Nevertheless, as an argument for reconsideration, Defendants offer ATF's response to a question on the ATF website. Under the heading "Alcohol and Tobacco Q&As," subheading "Electronic Nicotine Delivery Systems (ENDS)," ATF responds to a question asking: "Do we need to file a monthly PACT Act report in states that do not apply taxes to ENDS products?" ATF responds, "No. Monthly reports for electronic nicotine delivery systems (ENDS) only need to be filed in states, localities and Indian territories that tax the sale or use of ENDS, not with ATF." *Proshansky Decl.* ¶¶ 2–4.[18] Defendants assert that the Court should "defer to ATF's

---

[18] *See* U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, *Alcohol and Tobacco Q&As,* https://www.atf.gov/alcohol-tobacco/qa/do-we-need-file-monthly-pact-act-report-states-do-not-apply-taxes-ends-products (last reviewed Oct. 28, 2021).

position" and reconsider its decision with respect to the PACT Act's reporting requirement. *Rec. Mem.* at 11–17. There are a host of reasons that Defendants are wrong.[19]

### A. ATF's Comment as to Reporting Requirements Is Entirely Consistent with this Court's Ruling

Most significantly, ATF's comment helps Defendants not at all because the dispositive issue is whether reports "need to be filed in states, localities and Indian territories that tax the sale or use of ENDS." *Proshansky Decl.* ¶ 4. As the Court has recognized, the City does tax the sale of ENDS. *See Dec.* at *14-15 ("New York City … levies a tax on e-cigarettes subject to section 376a(a)(3) by imposing a sales tax on e-cigarettes."). The City thus falls comfortably within ATF's advice that reporting is required in "localities … that tax the sale … of ENDS." ATF certainly does not opine that excise taxes alone qualify as "taxes on cigarettes"—its advice expressly references "territories that tax the sale."

### B. *Skidmore* Deference Is Inapplicable

Defendants argue that the Court should apply *Skidmore* deference here, *Rec. Mem.* at 12–13, but the foregoing makes consideration of agency deference unnecessary: where ATF and the Court concur, there is nothing for the Court to defer to. Even if there were, courts "defer to the agency's interpretation under the *Skidmore* standard only when the statutory language at issue is ambiguous." *Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*, 846 F.3d 492, 509 (2d Cir. 2017). But as the Court recognized, the "statutory language [of 15 USC

---

[19] As shown below, Defendants' argument based on the ATF's comment fails for multiple reasons. But in fact Defendants are foreclosed from making this argument because they originally raised the ATF comment for the first time in their reply brief. *Compare Dkt. Nos.* 53, 64 *with Dkt. Nos.* 81, 92. As such, they waived this argument. *See ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.,* 485 F.3d 855, 97 n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief"); *Patterson v. Balsamico,* 440 F.3d 104, 114 (2d Cir. 2006) ("This Court generally will not consider arguments raised for the first time in a reply brief"); *Duryea v. County of Livingston,* 2007 U.S. Dist. LEXIS 30908, at *20 (W.D.N.Y. Apr. 26, 2007). Although Defendants charge that the Court "erred by overlooking… the Hyde Defendants' reasonable reliance" on ATF's position (*Rec. Mem.* at 11), because the argument was offered only on reply the Court had no obligation to consider it in the first place.

§§ 376a(a)(3) & 378(c)(1)(A)] is clear on its face." *Dec.* at 14.[20] It is equally clear that New York City "appl[ies] [its] own local…taxes on cigarettes" under 15 USC § 376, because it imposes an excise tax on cigarettes and a sales tax on both cigarettes and e-cigarettes.

Defendants do not even set forth the *Skidmore* factors for weighing when agency's informal opinion deserves deference: (1) "the thoroughness evident in its consideration, [(2)] the validity of its reasoning, [(3)] its consistency with earlier and later pronouncements, and [(4)] all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Here, none of these even suggest deference. The ATF's opinion consists of two sentences that do not even address the types of taxes that qualify as a tax on ENDS products. The two-sentence response to a poorly framed "question" is not indicative of "thoroughness," the opinion contains no reasoning at all, valid or otherwise, there are no earlier or later pronouncements offered with which to adjudge consistency, and all of those factors result in an opinion that is pure *ipse dixit* and hence not persuasive. Indeed, ATF itself appears to recognize that courts, not the agency, have the upper hand with respect to statutory interpretation—with respect to another PACT Act provision, ATF has stated that it "will reevaluate and adjust our actions accordingly" if court decisions disagree with the ATF's analysis. *Proshansky Decl.* Ex. A at 2. In accord with this statement, ATF is now in fact reconsidering the position on its website in light of this Court's analysis of and ruling on the PACT Act's reporting requirements. *Proshansky Decl.* ¶¶ 7–8.

---

[20] If Defendants seek to claim ambiguity, it is their burden to show that the language of the statute is susceptible to two or more reasonable meanings. *Nat. Res. Def. Council v. Muszynski,* 268 F.3d 91, 98 (2d Cir. 2001). They have not done so. Instead, all they have done is to propose additional language ("licensed or registered") to an already plain provision.

### C.  Defendants' "Reasonable Reliance" is Irrelevant

Defendants also argue that that the Court "erred by overlooking…the Hyde Defendants' reasonable reliance" on ATF's position, *Rec. Mem*. at 11, insisting that they "were certainly entitled to reasonably rely on ATF's contradictory interpretation" as to whether companies must submit PACT Act reports to jurisdictions that do not levy an excise tax on ENDS products. *Rec. Mem*. at 14. However, as shown above, there is no "contradictory interpretation"—ATF's position and the Court's position are the same. If indeed Defendants had relied on ATF's position (of which there is no proof[21]), they would have filed PACT Act reports because ATF's advice provides that reporting is required in "localities … that tax the sale … of ENDS."

Moreover, Defendants nowhere specify what significance or weight their "reasonable reliance" should have, or cite any legal standard under which such reliance might be relevant.[22] Instead, Defendants simply string cite a series of cases requiring agencies to follow their own stated procedures. *See, e.g.*, *Montilla v. INS*, 926 F.2d 162, 166 (2d Cir. 1991) (discussing "the long-settled principle that the rules promulgated by a federal agency, which regulate the rights

---

[21] Reasonable reliance is a question of fact which requires factual support by a person with knowledge of that reliance, not a bald statement by counsel in a memorandum of law. *See Rec. Mem*. at 13 ("the ATF's guidance was the only authority that the Hyde Defendants could (and did) look to on this issue"). The Hyde Defendants have provided no factual declaration of reliance by anyone at Demand Vape or Magellan—which in any event could not be considered on a motion to dismiss. *See, e.g., Forman v. City of N.Y.*, 2017 U.S. Dist. LEXIS 45538, at *12-13 (S.D.N.Y. Mar. 27, 2017) (refusing to consider documents where "[t]he Amended Complaint does not refer to these documents, nor does it appear that[the plaintiff] relied on them in drafting the complaint").

[22] For example, the Fair Labor Standards Act provides a statutory good faith defense whereby an employer can avoid liability if it "'pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation' of the administrator of the Wage and Hour Division of the Department of Labor." *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 652 (S.D.N.Y. 2019) (quoting 29 USC § 259). However, even in that context, the good faith defense is only available in "those situations in which 'the agency advice was specific and left no room for interpretation.'" *Green v. Humana at Home, Inc.*, 380 F. Supp. 3d 400, 413 (S.D.N.Y. 2019) (quoting *EEOC v. Home Ins. Co.*, 672 F.2d 252, 266 (2d Cir. 1982)). Regardless, Defendants point to no analogous provision of the PACT Act.

and interests of others, are controlling *upon the agency*") (emphasis added) (cited in *Rec. Mem.*at

14). Defendants never explain the relevance of the cited cases here.

## CONCLUSION

For all the reasons set forth above, the City of New York respectfully requests that the

Court deny Defendants' motions for reconsideration in their entirety.

Dated: New York, New York
      July 18, 2024

                                      **MURIEL GOODE-TRUFANT**
                                      Acting Corporation Counsel of the
                                       City of New York
                                      *Attorneys for Plaintiff The City of New York*
                                        100 Church Street, Rm. 20-099
                                        New York, New York 10007
                                        (212) 356-2032

                        By:      */s/ Eric Proshansky*
                                        Eric Proshansky

                                      Aatif Iqbal
                                      Alexandra Jung
                                      Elizabeth Slater

                                      Assistant Corporation Counsels