

# THE CITY OF NEW YORK
## LAW DEPARTMENT

**MURIEL GOODE-TRUFANT**
*Acting Corporation Counsel*

100 CHURCH STREET
NEW YORK, NEW YORK 10007

**Eric Proshansky**
Assistant Corporation Counsel
212.356.2032
eproshan@law.nyc.gov

June 10, 2025

**By ECF**
The Hon. Louis L. Stanton
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *The City of New York v. Magellan Technology, et al.*, Case No. 23-5880 (LLS)

Dear Judge Stanton:

This office represents plaintiff the City of New York (the "City") in the above-referenced matter. By this letter-motion the City moves for an order permitting the City's disclosure to the United States Postal Inspection Service ("USPIS") of evidence of criminal violations by defendant Ecto World LLC d/b/a Demand Vape.

**Introduction** – The PACT Act, in 18 U.S.C. § 1716E, prohibits the use of the United States mails to carry and deliver e-cigarettes; violations constitute a felony. 15 U.S.C. § 377. Discovery in this action reveals Demand Vape's extensive use of the mails to deliver e-cigarettes, which Demand Vape incorrectly asserts is permitted by USPS under an exception to section 1716E's otherwise near-total ban on mailing e-cigarettes. *See Demand Vape's Letter to the Court dated May 6, 2025* ("*Demand Vape Letter*"), at 2 (*Dkt. No.* 147). The USPIS has requested that the City disclose evidence of Demand Vape's illegal use of the mails, which, if substantiated, is grounds for USPS to revoke Demand Vape's use of the mailing exception.

Demand Vape objects, presumably on grounds that disclosure to USPIS would reveal proprietary information protected by the confidentiality order in place in this action. That objection is baseless. In applying for the exemption, (i) Demand Vape long ago produced to the Postal Service elements of the material now proposed for disclosure; (ii) the remainder of the information to be disclosed is of no proprietary significance; and (iii) the Court has already rejected Demand Vape's attempt to seal information similar to that which the City now proposes to disclose. More to the point, civil confidentiality orders are intended to protect competitive business information or trade secrets, not to serve as devices to conceal evidence from a law enforcement agency tasked

with investigating crimes that the agency is charged with pursuing.  Moreover, Demand Vape avers that:

> [I]t is the responsibility of "the United States Postal Service to ensure that any recipient of an otherwise nonmailable tobacco product . . . may lawfully receive the product.

*Demand Vape Letter*, at 2 (*Dkt. No*. 147) (citing 18 U.S.C. § 1716E(b)(3)(B)(ii)(II)).  Having taken that position, Demand Vape can have no principled objection to the Postal Service having access to information allowing the agency to meet its responsibility to ensure that any recipient of an otherwise nonmailable tobacco products may lawfully receive the product.  Demand Vape is not now and never has been eligible to mail e-cigarettes under the exception to which it now lays claim and no recipient of those products may lawfully receive them.

**Applicable Law** -- As the Court may recall, the City alleges Demand Vape's violation of the Prevent All Cigarettes Trafficking ("PACT") Act, 15 U.S.C. §375 *et seq*., by its deliveries of e-cigarettes into New York City.

The PACT Act "was aimed primarily at eliminating deliveries of *illegal* … cigarettes by the U.S. Postal Service." *City of N.Y. v. United States Postal Serv.*, 519 F. Supp. 3d 111, 121 (E.D.N.Y. 2021) (emphasis added) (quoting *New York v. United Parcel Serv., Inc.*, 131 F. Supp. 3d 132, 142 (S.D.N.Y. 2015) (quoting 156 *Cong. Rec*. H1526-01, 2010 WL 956208, at *27 (March 17, 2010) (statement of Rep. Weiner, House sponsor of the PACT Act) ("There's only one common carrier that today still delivers tobacco through the mail — the United States Postal Service.")).

The PACT Act sought to close off that delivery channel by declaring cigarettes to be unmailable:

> **(a) Prohibition.**
>
> **(1)** In general. All cigarettes and smokeless tobacco (as those terms are defined in section 1 of the Act of October 19, 1949 [15 USCS § 375], commonly referred to as the Jenkins Act) are nonmailable and shall not be deposited in or carried through the mails. The United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes or smokeless tobacco made nonmailable by this paragraph.

18 U.S.C. § 1716E (a)(1). The narrow exceptions to non-mailability are intended to accommodate limited types of legitimate cigarette mailings, for example by manufacturers performing consumer testing.  *See* 18 U.S.C. § 1716E (b).  The exception that Demand Vape incorrectly claims as cover for its mailings is 18 U.S.C. § 1716E (b)(3):

> **(3) Business purposes**.
>
>> **(A)** In general. Subsection (a) [*i.e.*, 18 U.S.C. § 1716E (a)(1), non-mailability] shall not apply to tobacco products mailed only—
>>
>>> **(i)** for business purposes between *legally operating* businesses that have all applicable State and Federal Government licenses or permits and are engaged in tobacco product manufacturing, distribution, wholesale, export, import, testing, investigation, or research; …

18 U.S.C. § 1716E (b)(3)(A)(i) (hereafter the "Business Exception") (emphasis added).[1]

    Beyond the requirement that mailings be between "legally operating businesses," the Business Exception is subject to further eligibility requirements, specifically Postal Service rules that require Business Exception mailings to comply with "all other" and "any" federal, state and local laws. Demand Vape's mailings violate many "other" federal, state and City laws.

    The USPS rules pertaining to the Business Exception derive from 15 U.S.C. § 1716E (b)(3)(B)(i):

> **(B)** Rules.
>
>> **(i)** In general. Not later than 180 days after the date of enactment of the Prevent All Cigarette Trafficking Act of 2009 [enacted March 31, 2010], the Postmaster General shall issue a final rule which shall establish the standards and requirements that apply to all mailings described in subparagraph (A) [*i.e.*, the Business Exception].
>>
>> **(ii)** Contents. The final rule issued under clause (i) shall require—

---

[1] Demand Vape has previously argued that a term similar to "legally operating," *i.e.*, 'lawfully operating," meant only that the businesses possessed the necessary licenses and permits. *See City of N.Y. v. Magellan Tech., Inc.*, 735 F. Supp. 3d 312, 323 (S.D.N.Y. 2024). The Court rejected the argument under the plain language of the provision at issue (15 U.S.C. § 375(4) and can reject it again under the rule against redundancy. It is redundant to refer to "legally operating businesses that have all applicable State and Federal Government licenses or permits" if the meaning of "legally operating" is restricted to "hav[ing] all applicable State and Federal Government licenses or permits." A "legally operating" business must be one is more broadly compliant that simply having licensed and permits. *See Sacirbey v. Guccione*, 589 F.3d 52, 66 (2d Cir. 2009) (quoting *Filler v. Hanvit Bank*, 378 F.3d 213, 220 (2d Cir. 2004)) ("A basic canon of statutory interpretation . . . is to avoid readings that 'render [**18] statutory language surplusage' or 'redundant.'").

>> **(I)** the United States Postal Service to verify that any person submitting an otherwise nonmailable tobacco product into the mails as authorized under this paragraph is a business or government agency permitted to make a mailing under this paragraph;
>
>> **(II)** the United States Postal Service to ensure that any recipient of an otherwise nonmailable tobacco product sent through the mails under this paragraph is a business or government agency that may *lawfully receive* the product;

18 U.S.C. § 1716E(b)(3)(B) (emphasis added).  This section provides the Postal Service with the necessary delegation of authority to issue a final rule that will "establish standards and requirements applicable to subparagraph A," *i.e.*, applicable to the Business Exception. Those standards and requirements enable the Postal Service to i) verify that an otherwise nonmailable tobacco product is mailed by an eligible business (or government entity) and ii) ensure that the recipient business can "lawfully receive" the product.[2]

To begin with, the Business Exception provides that USPS must ensure that the recipients of e-cigarettes sent through the mails must be able to "lawfully receive" the cigarettes.  The Court has already determined that "lawful" receipt is receipt that complies with all applicable laws. *City of N.Y. v. Magellan Tech., Inc.*, 735 F. Supp. 3d 312, 323 (S.D.N.Y. 2024).  The requirement of "lawful receipt" of mailed e-cigarettes assures that mailings allowed under the Business Exception comply with other, non-postal tobacco laws, not serve as a loophole by which Business Exception mailers receive *carte blanche* to violate non-postal tobacco laws merely because cigarettes are mailed under the Business Exception.  This is further assured by the rules promulgated by the Postal Service, that place the responsibility *on the mailer* using the Business Exception to comply with "all" laws and allow for USPS to revoke a permit to mail under the Business Exception for violation of "any" law.

The USPS rules promulgated pursuant to the authority of 18 U.S.C. § 1716E(b)(3)(B) applicable to the Business Exception are set forth in *Publication 52 - Hazardous, Restricted, and Perishable Mail* ("Publication 52").  The first such rule provides under the heading "*Mailer Responsibility*," that:

>> All mailers, including mail service providers and other mailer agents, *must comply* with applicable Postal Service laws and regulations governing

---

[2] Demand Vape's contention that [I]t is the responsibility of "the United States Postal Service to ensure that any recipient of an otherwise nonmailable tobacco product . . . may lawfully receive the product" does not fully and accurately describe the Postal Service's rule-making authority granted by 18 U.S.C. § 1716E(b)(3)(B).  The requirement that the USPS "verify" and "ensure" sender and recipient qualifications necessarily authorizes the Postal Service to promulgate rules that will permit USPS to meet those responsibilities.  Those rules are described above.

4

> mailability and preparation for mailing, *as well as nonpostal laws and regulations on the shipment of particular matter*.

*Publication 52* § 212 (emphasis added). A Business Exception mailer thus "must comply" with non-postal laws applicable to tobacco, the "particular matter" to be mailed. Publication 52 § 212 essentially incorporates 15 U.S.C. § 376a (a)(3) of the PACT Act, requiring "delivery sellers" to comply with—"all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place" *Id*.[3]

Publication 52 § 212, *Mailer Responsibility*, does not exhaust the rules applicable to the Business Exception. Publication 52 § 472.4, *Applicability of Other Laws and Regulations* provides:

> Shipments permitted under [the Business Exception] <u>are subject to all other applicable federal, state, and local laws and regulations</u>.

*Id*. (emphasis added) Section 472.4 amplifies § 212, *Mailer Responsibility*, (and is again consistent with 15 U.S.C. § 376a (a)(3)), by more specifically identifying the "non-postal" laws to be complied with as "*all other applicable federal, state, and local laws and regulations.*" Those " other applicable laws" include the Family Smoking Prevention and Tobacco Control Act , Pub. L. No. 111-31, 123 Stat. 1776 (2009) ("Tobacco Control Act"), the PACT Act itself, New York Public Health Law § 1399-mm and NYC Administrative Code § 17-715. This extensive compliance obligation is again emphasized in Publication 52 § 473.7, *Suspension or Revocation of Eligibility,* in which the USPS reserves the right to revoke the use of the Business Exception:

> Eligibility to mail under [the Business Exception] may be suspended or revoked by the director, PCSC, in the event of failure to comply with *<u>any</u>* applicable law or regulation

*Publication 52* § 473.7 (emphasis added).

The above-cited sections of Publication 52 have the force and effect of law, pursuant to 39 C.F.R. § 211.2 (a)(2). A regulation by a government agency addressed to and reasonably related to the enforcement of an act of Congress confided to the agency "has the force and effect of law" unless it conflicts with an express statutory provision. *Md. Cas. Co. v. United States*, 251 U.S. 342, 349 (1920); *United States v. Santiago,* 1988 U.S. Dist. LEXIS 4380, at *8 (S.D.N.Y. May 13, 1988).[4]

---

[3] Demand Vape is unquestionably a delivery seller. This Court has held that Demand Vape's customers that sell flavored e-cigarettes in New York City are not "lawfully operating," and hence are PACT Act "consumers." *See* 15 U.S.C. § 375 (4). Demand Vape's mailings are a form of remote delivery and delivery sales are simply non-face-to-face (remote) sales or deliveries made to consumers, 15 U.S.C. § 375 (5), made by "delivery sellers." 15 U.S.C. § 375 (6)

[4] USPS regulations are incorporated into the Code of Federal Regulations. *See* 39 CFR § 211.2.

**Demand Vape's Violation of Other, Non-Postal Laws** – Ultimately it will be the USPIS that determines through the materials disclosed by the City whether Demand Vape has complied with the rules applicable to the Business Exception.  But briefly noted here are the "applicable non-postal laws" with which Demand Vape must comply to qualify for use of the Business Exception. Demand Vape violates each of:

    **i)**    **New York City Administrative Code § 17-715**, providing

> 1. It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

*NYC Admin. Code* 17-715 (b).  The disclosures to USPIS proposed by the City will document hundreds of Demand Vape's sales of flavored e-cigarettes to City distributors, demonstrative of Demand Vape's failure to comply with the Administrative Code when using the Business Exception.

    **ii)**    **The Family Smoking Prevention and Tobacco Control Act** (the **"Tobacco Control Act"**)[5] – The Tobacco Control Act is surely a "law[] generally applicable to sales of cigarettes."  As such, Demand Vape's mailings must, but do not, comply with that law when using the Business Exception.  The Tobacco Control Act requires pre-market approval by the FDA before any "new" tobacco product, including e-cigarettes, may be placed on the market.  21 U.S.C. § 387j(a)(2); every single brand of flavored e-cigarette that Demand Vape has delivered into the City is a "new" tobacco product requiring FDA approval. 21 U.S.C. § 387j(a)(1).  To date, the FDA has not provided pre-market authorization for any flavored e-cigarette; no flavored e-cigarette Demand Vape mails anywhere in the United States is compliant with the Tobacco Control Act.[6]  E-cigarettes without pre-market approval are illegal and deemed "misbranded" and

---

> It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law." This doctrine is so well established that agency regulations implementing federal statutes have been held to pre-empt state law under the Supremacy Clause.

*Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979) (citing *Paul* v. *United States*, 371 U.S. 245 (1963); *Free* v. *Bland*, 369 U.S. 663 (1962); *Public Utilities Comm'n of California* v. *United States*, 355 U.S. 534 (1958). *Accord Greater Buffalo Press, Inc. v. Fed. Res. Bank*, 866 F.2d 38, 44 (2d Cir. 1989) ("[A]s a properly promulgated substantive regulation, Regulation J must be given the force and effect of federal law.").

[5] Pub. L. No. 111-31, 123 Stat. 1776 (2009), *codified at* 21 U.S.C. § 387 *et seq.*

[6]*See* https://www.fda.gov/news-events/press-announcements/fda-denies-marketing-two-vuse-solo-menthol-e-cigarette-products (the only e-cigarette devices that may be lawfully sold in the United States are tobacco-flavored).

"adulterated" under the Food, Drug & Cosmetics Act *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 914 (2025).

iii) **PACT Act § 376a (a)(3) --** PACT Act section §376a governing delivery sales is surely a "nonpostal law on the shipment of particular matter" as well as an "applicable federal law." The proposed disclosures showing Demand Vape's violations of the Administrative Code and the Tobacco Control Act demonstrate separate violations of the PACT Act itself, by reason of the failure to comply with "**(**3) all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco." *See* 15 U.S.C. § 376a (a)(3).

To the extent Demand vape mails flavored e-cigarettes to states other than New York that also have flavor bans, the company also violates those "other" non-postal tobacco laws.

**The Proposed Disclosures --** The City seeks to provide USPIS with information that actually documents identified e-cigarette sales to identified City businesses in the form represented by the placeholders below:

| Demand Vape **Buyer** | Buyer Location | Product Mailed | Aggregate Sales/Date | USPS Tracking No. |
|---|---|---|---|---|
| ABC Vape Store | Brooklyn, NY | Brand X LemonVapes | X units 1/2019-1/2025 | ----------- |
| DEF Vape Store | Bronx, NY | Brand Y Cherry Vapes | Y units 2/2020-5/2025 | ----------- |
| GHI Vape Dist. | Queens, NY | Brand Z Banana Vapes | Z units 2/2023-5/2024 | ----------- |

None of the information documenting flavored e-cigarettes mailed to identified City distributors qualifies as confidential information protected by the confidentiality order in this case. To qualify for the Business Exception, Demand Vape was required by the USPS to submit an application listing the name and address of every proposed recipient of Demand Vape's mailed e-cigarettes. *See Demand Vape Ltr.*, at 2 (*Dkt. No*. 147). Demand Vape accordingly has long since identified to USPS the recipients of Demand Vape's mailings. The brand names of Demand Vape's mailed products are not confidential because nearly all products sold by Demand Vape have been openly advertised on Demand Vape's website for years, available to anyone with an internet browser. The aggregated sales volume of a particular brand of e-cigarette is not deserving of confidentiality as shown by the fact that the Court has previously ruled that it was unnecessary to seal aggregate information of this type. *See Dkt. No*. 147. There is nothing commercially sensitive in the Postal Service tracking numbers used by Demand Vape. In short, there is nothing that would place Demand Vape at a competitive disadvantage and certainly no trade secrets that would be disclosed. Even if there were, the purpose of a confidentiality is to protect competitive information, not evidence of felonies.

In sum, the City seeks to provide USPIS with information identifying Demand Vape's flavored e-cigarette mailings into the City. The mailings violate the PACT Act, the Tobacco Control Act, and the City Administrative Code and fail to comply with Postal Service rules

governing Business Exception mailings. The information will permit USPIS to determine whether Demand Vape's violations are a basis to revoke Demand Vape's permit to mail e-cigarettes under the Business Exception, as provided by Publication 52 § 473.7.  T

The City respectfully requests that the Court issue an order permitting the described disclosures. In the face of the PACT Act's intended purpose of eliminating USPS deliveries of *illegal* cigarettes, 519 F. Supp. 3d at 121, an assertion that the evidence of those very deliveries may not be disclosed to the Postal Inspection Service as confidential commercial information is meritless.

Thank you for your attention to this matter.

Sincerely,

Eric Proshansky
Assistant Corporation Counsel