

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Corporation Counsel* | 100 CHURCH STREET<br>NEW YORK, NEW YORK 10007 | **Eric Proshansky**<br>Assistant Corporation Counsel<br>212.356.2032<br>eproshan@law.nyc.gov |

February 11, 2026

**VIA ECF**

The Honorable Louis L. Stanton
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *The City of New York v. Magellan Technology, et al.*, Case No. 23-cv-5880 (LLS)

Dear Judge Stanton :

      We write in further support of Plaintiff the City of New York's (the "City") January 29, 2026 letter motion seeking to compel Defendants to comply with discovery (ECF No. 172) and in response to the Demand Vape and Magellan Defendants' February 5, 2026 letter opposing the City's motion (ECF No. 173).

      As an initial matter, the Empire Defendants have not responded to the City's letter motion. Accordingly, this Court should issue an order requiring them to comply with discovery in this case. In the event the Empire Defendants fail to respond to that order, the City will move for sanctions and seek a default judgment under Federal Rule of Civil Procedure 37(b)(2)(A)(vi) for failure to proceed.

      Magellan and Demand Vape have agreed to produce their communications with the FDA, communications from New York State, and documents produced by Magellan and Demand Vape to the State in response to the State's subpoena. *See* Feb. 5, 2026 Ltr., ECF No. 173, at 1. Magellan and Demand Vape continue to object, however, to producing (a) internal or intercompany communications concerning the sale of flavored e-cigarettes; (b) documents and communications with foreign manufacturers and suppliers; and (c) documents and transcripts produced in the International Trade Commission proceeding entitled *Certain Disposable Vaporizer Devices and Components and Packaging Thereof*, Inv. No. 337-TA-1381.

1

The City is entitled to relevant information—that is information that "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401. "[D]iscovery should be broad, and all relevant materials . . . should be discoverable." *Mandarin Oriental, Inc. v. HDI Glob. Ins. Co.*, No. 23-cv-4951, 2025 U.S. Dist. LEXIS 219184, *11 (S.D.N.Y. Nov. 6, 2025) (cleaned up). This standard defeats Magellan and Demand Vape's objections to discovery of all three categories of documents necessary to the City's case, as established by the fact that Magellan and Demand Vape cannot cite a single supporting case. Magellan and Demand Vape's omission of even a single reference to the City's claims here, including the City's public nuisance claim, is telling. Any reasonable argument here would require Magellan and Demand Vape to explain with specificity how the documents sought by the City are irrelevant to the present claims. But those defendants rely on boilerplate recitations of "burden" and "proportionality" that are especially hollow coming from a company with $500-600 million in annual revenues. *Am. Compl.* (ECF No. 20) ¶ 81. Arguments of that nature are resolved by negotiated limitations on scope, not a blanket refusal to produce anything. As explained further below, the Court should grant the City's motion to compel.

### A.   Communications Concerning the Sales of Flavored E-cigarettes

As the City has explained, the City's request for communications involving the sales of flavored e-cigarettes is targeted at obtaining self-evidently relevant information. *See* Jan. 29, 2026 Ltr., ECF No. 172, at 4. As just one example, communications would reveal what Magellan and Demand Vape knew about whether their customers were "lawfully operating" or selling flavored e-cigarettes in violation of New York State and City laws. In other words, communications would help the City establish PACT Act violations by Magellan and Demand Vape. As a second example, communications would reveal what Magellan and Demand Vape knew about the extent to which their sales reached New York City consumers and what they knew about the health impacts of their products—both relevant to prove the City's public nuisance claim. Indeed, public nuisance cases routinely involve the production of communications. *See, e.g.*, *City of Huntington v. AmerisourceBergen Drug Corp.*, 2020 U.S. Dist. LEXIS 113010, *11 (S.D. W. Va. June 28, 2020 (describing, in a public nuisance case involving the opioid epidemic, how defendant pharmaceutical distributor produced "employees and company executives responsible for diversion control, regulatory issues, government affairs" for depositions "and communications").

The City has alleged a network of manufacturers, distributors, sub-distributors and retailers that have contributed to a public nuisance consisting of the proliferation of flavored e-cigarettes damaging to the public health. *See Am. Compl.* (ECF No. 20) ¶¶ 7-8, 66, 67, 69, 84. Proving the existence of a public nuisance often depends upon establishing supply chains much like those here. *See, e.g.*, *Suez Water N.Y., Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 545-546 (S.D.N.Y. 2022). Creators of public nuisances commonly defend by pointing to others as the cause. Communications would establish that these actors operate in concert with each other, know about each practices, can control one another and are all substantial contributors to the public nuisance. The Court should not allow Magellan and Demand Vape to impermissibly curtail discovery relevant to City's claims.

Magellan and Demand Vape argue that the City is not entitled this information because the City's "stated grounds for relevance are addressed by documents already produced by Defendants." *Feb. 5, 2026 Ltr*. at 2. This is conclusory, unsupported by example, and simply not

2

so. Although the City has obtained spreadsheets with sales information from Demand Vape, it is still entitled to communications that could shed light on Magellan and Demand Vape's knowledge that their customers were operating in violation of New York City and State law, and Magellan and Demand Vape's awareness of the extent to which they were contributing to a public nuisance. This is also why Magellan and Demand Vape's communications with regulatory agencies are relevant—a point they have conceded by agreeing to produce those documents.

Magellan and Demand Vape have also described producing communications as "unduly burdensome." *Id.* The Court should not countenance this argument. Magellan and Demand Vape never negotiated possible search terms, custodians or date limits with the City, or even offered to do so. Instead, during numerous meet-and-confers, they objected to producing communications *entirely*. Because Magellan and Demand Vape never ran any search terms across any database, they never provided the City with hit counts or explanation as to why producing emails would be burdensome. Accordingly, they cannot "substantiat[e] [their] burden claim." *Felder v. Warner Bros. Discovery, Inc.*, 2025 U.S. Dist. LEXIS 117479, *29 (S.D.N.Y. June 20, 2025). Incredibly, in *New York v. Puff Bar*, No. 25-cv-1445-MMG (S.D.N.Y. filed Feb. 20, 2025), an e-cigarette case against Magellan and Demand Vape in which discovery is coordinated with another City Action, *City v. Puff Bar*, No. 25-cv-2850-MMG (S.D.N.Y. filed Apr. 7, 2025), Demand Vape *has agreed* to provide the State with search terms and custodians for document and email searches. Demand Vape cannot credibly adopt a different approach here, especially on grounds of burden, where the same documents Demand Vape provides to the State can be copied to the City. The City requests that this Court order Magellan and Demand Vape to discuss search terms and custodians with the City and to provide hit counts if they contend that producing documents is too burdensome.

### B.   Communications with Foreign Manufacturers

The City has explained that communications with foreign manufacturers aim at relevant information, as Magellan and Demand Vape's participation with suppliers is critical in understanding the scope and responsibility for the public nuisance they have assisted in creating with others. *See* Jan. 29, 2026 Ltr., ECF No. 172, at 6. As with sales-related communications, communications with manufacturers and suppliers will bear directly on what Magellan and Demand Vape knew about the public nuisance they were creating. For example, such communications could show whether Demand Vape and Magellan colluded with manufacturers to hide any vaping-related harms from the public. Relegating their response to this argument to a footnote (*see* Feb. 5, 2026 Ltr. at 3 n.2) demonstrates that Magellan and Demand Vape know there is no support for their refusal to produce these relevant documents.

Magellan and Demand Vape assert that "a search of emails would result in tens or hundreds of thousands of irrelevant emails such as communications outside of and unrelated to New York City." *Id.* at 3. Defendants' position that communications outside of New York City are "unrelated to New York City" is nonsensical. Evidence already in the City's hands from other sources than Demand Vape shows that Demand Vape's sales both to far-flung states (Florida) and adjacent states (New Jersey) are then sold into New York City. Demand Vape is by its own admission a national distributor, and its sales enter the City from many other states. In any event, it was Magellan and Demand Vape—not the City—who declined to negotiate custodians, search terms, and date ranges. Magellan and Demand Vape cannot make a blanket refusal to produce communications and then blame the City for failing to negotiate search parameters. Their actions

make clear that they are intent on skirting their discovery obligations in this case, and the Court should compel them to negotiate search parameters with the City and produce documents according to those parameters. Again, if they prove burdensome, Magellan and Demand Vape can explain why that is by producing hit counts.

        **C.    Documents and Transcripts Produced in *Certain Disposable Vaporizer Devices and Components and Packaging Thereof,* Inc. 337-TA-1381**

The City has explained the relevance of the documents and transcripts produced in the International Trade Commission proceeding entitled *Certain Disposable Vaporizer Devices and Components and Packaging Thereof*, Inv. No. 337-TA-1381 (filed Oct. 13, 2023): they would provide information that Magellan and Demand Vape are providing product to distributors who sell into the City. *See Jan. 29, 2026 Ltr.* (ECF No. 172) at 6. Magellan and Demand Vape, tellingly, do not respond to the City's point that this material is also relevant for impeachment purposes. Finally, Magellan and Demand Vape are constantly marketing new products under different names, making it difficult to track their sales into the City. The ITC litigation could illuminate the full list of their products—information relevant to all of the City's claims in this litigation.

Magellan and Demand Vape argue that "the City is seeking documents produced by other parties," which are prohibited from disclosure under a protective order. *See Feb. 5, 2026* Ltr. at 3. The City would be pleased to negotiate with Magellan and Demand Vape over which documents from the ITC case the City would like produced in this litigation. This should limit the permission that Magellan and Demand Vape would need to seek from other parties in the ITC litigation and would ameliorate concerns about violating the protective order. Accordingly, at a minimum, this Court should order Magellan and Demand Vape to negotiate with the City over this request.

        Respectfully submitted,

        MURIEL GOODE-TRUFANT
        Corporation Counsel of the
          City of New York
        *Attorney for Plaintiff The City of New York*
        100 Church Street, Rm. 3-211
        New York, NY 10007
        (212) 356-2032

By: /s/

        Eric Proshansky
        Elizabeth Slater
        Aatif Iqbal

        Assistant Corporation Counsels